UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Cartagena,<br><br>    *Plaintiff*,<br><br>  v.<br><br>Terrance Dixon, Tyrone Blackburn, and T.A. Blackburn Law, PPLC,<br><br>    *Defendants*. | No. 1:25-cv-03552 (JLR) |
| Terrance Dixon, a/k/a "TA,"<br><br>    *Plaintiff*,<br><br>  v.<br><br>Joseph Antonio Cartagena p/k/a "Fat Joe,"<br>Peter "Pistol Pete" Torres,<br>Richard "Rich Player" Jospitre,<br>Erica Juliana Moreira,<br>Sneaker Addict Touring LLC,<br>Slate, Inc.,<br>Roc Nation, LLC,<br>John Does 1–10, and Jane Does 1–10, and ABC Corporations 1–10,<br><br>    *Defendants*. | No. 1:25-cv-05144 (JLR) |

**DEFENDANT ROC NATION, LLC'S REPLY MEMORANDUM OF LAW
<u>IN FURTHER SUPPORT OF ITS MOTION FOR SANCTIONS</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.   MR. BLACKBURN'S CONDUCT IS SANCTIONABLE UNDER RULE 11 ..................2

   A.   Mr. Blackburn violated Rule 11(b)(1) by filing this lawsuit for an improper purpose. ...............................................................................................2

   B.   Mr. Blackburn violated Rule 11(b)(2) and (b)(3) by filing a knowingly false Complaint against Roc Nation and failing to conduct a reasonable inquiry into the law. ...............................................................................................4

II.  MR. BLACKBURN'S CONDUCT IS SANCTIONABLE UNDER SECTION 1927 AND THE COURT'S INHERENT AUTHORITY ......................................................7

   A.   Mr. Blackburn's conduct amounts to bad faith and vexatious tactics that have multiplied the proceedings. ...............................................................................7

   B.   Sanctions are required to deter Mr. Blackburn's pattern of abusing the judicial system. ...............................................................................8

III. THE COURT SHOULD AWARD COSTS AND ATTORNEYS' FEES AND DISMISS THE COMPLAINT WITH PREJUDICE ..........................................................8

IV.  ROC NATION COMPLIED WITH RULE 11'S SAFE-HARBOR REQUIREMENT ...............................................................................................................9

CONCLUSION ..............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

### Cases

*In re 60 E. 80th St. Equities, Inc.*,
 218 F.3d 109 (2d Cir. 2000)..................................................................................................8

*Byrne v. Nezhat*,
 261 F.3d 1075 (11th Cir. 2001) ............................................................................................3

*Canosa v. Ziff*,
 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) .........................................................................6

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ...............................................................................................................9

*Geiss v. Weinstein Co. Holdings LLC*,
 383 F. Supp. 3d 156 (S.D.N.Y. 2019) ..................................................................................6

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
 243 F.R.D. 322 (N.D. Iowa 2007) ......................................................................................10

*Keister v. PPL Corp.*,
 318 F.R.D. 247 (M.D. Pa. 2015)...........................................................................................3

*Kiobel v. Millson*,
 592 F.3d 78 (2d Cir. 2010)....................................................................................................5

*Mueller v. Deutsche Bank Aktiengesellschaft*,
 777 F. Supp. 3d 329 (S.D.N.Y. 2025)...................................................................................4

*Noble v. Weinstein*,
 335 F. Supp. 3d 504 (S.D.N.Y. 2018) ..................................................................................6

*O'Brien v. Alexander*,
 101 F.3d 1479 (2d Cir. 1996)................................................................................................4

*Rankin v. City of Niagara Falls*,
 293 F.R.D. 375 (W.D.N.Y. 2013).......................................................................................10

*Related Cos., L.P. v. Ruthling*,
 2019 WL 10947100 (S.D.N.Y. July 23, 2019) .....................................................................4

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
 682 F.3d 170 (2d Cir. 2012)............................................................................................9, 10

*Storey v. Cello Holdings, L.L.C.*,
    347 F.3d 370 (2d Cir. 2003) .................................................................................4, 5

*Usherson v. Bandshell Artist Mgmt.*,
    2020 WL 3483661 (S.D.N.Y. June 26, 2020) ........................................................8

## **Rules/Statutes**

28 U.S.C. § 1927 ..............................................................................................1, 7, 8, 10

F.R.C.P. Rule 11 ......................................................................................................*passim*

F.R.C.P. Rule 11(b)(1) ...........................................................................................2, 3, 4

F.R.C.P. Rule 11(b)(2) .................................................................................................4, 6

F.R.C.P. Rule 11(b)(3) ....................................................................................................4

F.R.C.P. Rule 12(f) ..........................................................................................................7

Racketeer Influenced and Corruption Organizations Act ....................................... *passim*

Trafficking Victims Protection Reauthorization Act ............................................4, 6, 7

## **Other Authorities**

Ad. Comm. Notes, Rule 11 Am. (1993) .......................................................................3

# PRELIMINARY STATEMENT

Mere hours after Roc Nation filed its motion to dismiss, Mr. Blackburn sent an unsolicited email to counsel proclaiming: "it is evident from the evidence that your client may have been defrauded by Fat Joe as well." (Blackburn Email.) The Blackburn Email is devastating evidence of Mr. Blackburn's and Plaintiff's bad faith and improper motive. So devastating that Mr. Blackburn has no response to it: he does not even *reference* the email in his opposition (the "Opp" or "Opposition"), let alone defend his words or try to rebut their necessary implication. Nor could he. By its own terms, the Blackburn Email concedes that neither Plaintiff nor his counsel believe the prefiling inquiry revealed any basis to sue Roc Nation. Plaintiff's decision to double down on accusations that Roc Nation participated in reprehensible crimes, despite this concession, confirms that this lawsuit was intended to harass and embarrass Roc Nation on the public stage to leverage a quick and outsized settlement.

The Opposition otherwise does not address any of Roc Nation's arguments—or the authority that supports them—or cite a single paragraph of the Complaint that justifies the Opposition's generous interpretation of its allegations. Instead, it repeatedly references new, unpleaded allegations in support of Mr. Blackburn's claim that he complied with his Rule 11 obligations. But none of these efforts moves the needle: the Complaint fails to allege any factual basis that would support a nonfrivolous claim of racketeering or human trafficking against Roc Nation.

The Court has at its disposal the tools sufficient to remedy this misconduct: Rule 11, Section 1927, and its own inherent authority. In light of the relevant history preceding this lawsuit, Mr. Blackburn's conduct since it was commenced, and his pattern of engaging in the litigation tactics he has here, the Court should use those tools to impose sanctions, dismiss the Complaint, and award Roc Nation its attorneys' fees and costs.

# ARGUMENT

I. **MR. BLACKBURN'S CONDUCT IS SANCTIONABLE UNDER RULE 11**

A. **Mr. Blackburn violated Rule 11(b)(1) by filing this lawsuit for an improper purpose.**

Contrary to the Opposition's suggestion (Opp. 10-11), Roc Nation demonstrated that the claims against it were filed for an improper purpose in violation of Rule 11(b)(1). The history predating this lawsuit, compounded by the Blackburn Email, demonstrates that Mr. Blackburn and his client know the claims against Roc Nation are bogus. Mr. Blackburn's vague references to a "substantial pre-suit investigation" (Opp. 10) do not alter that outcome.

The sequence of events leading to this lawsuit demonstrates it is based solely on Mr. Cartagena's alleged acts—not Roc Nation's. The Complaint's failure to assert a single fact that would lead to a plausible inference that Roc Nation participated in or had knowledge of and benefited from a RICO enterprise or trafficking venture only underscores that conclusion. And Mr. Blackburn admitted as much when—within hours of Roc Nation filing its motion to dismiss—he sent an email stating that, in his and his client's view, "it is evident from the evidence that [Roc Nation] may have been defrauded by Fat Joe as well." (Blackburn Email.)

Unable to refute the obvious implications of the Blackburn Email, the Opposition whistles past the graveyard. It ignores the email entirely. That must be because Plaintiff and Mr. Blackburn recognize there is no way to square their decision to allege Roc Nation engaged in a RICO and human trafficking conspiracy with Mr. Cartagena with the Blackburn Email's characterization of Roc Nation as a victim of fraud that had no knowledge of Mr. Cartagena's alleged misconduct. (*See* Blackburn Email.) The Blackburn Email thus did not simply reveal "the filer's subjective intent" (Opp. 10); it demonstrated *why* it was objectively unreasonable to assert claims against Roc Nation in the first place, regardless of any supposedly "diligent" prefiling inquiry. Viewed in its

proper context—sent months after Plaintiff unsuccessfully attempted to extract a settlement from Mr. Cartagena without so much as a phone call to Roc Nation's counsel suggesting it had any involvement in the alleged conduct—the Blackburn Email shows that asserting claims against Roc Nation was not to "vindicate legitimate legal claims." (Opp. 10.) Rather, the goal was to garner media attention and goad Roc Nation into paying a quick settlement. That is not proper. And it violates Rule 11(b)(1). *See, e.g.*, *Byrne v. Nezhat*, 261 F.3d 1075, 1115-17 (11th Cir. 2001) (sanctions warranted where "garden variety medical malpractice claim" transformed into a baseless RICO claim demonstrating that it was "a frivolous lawsuit, [filed] in bath faith, for the purpose of extorting a settlement from the defendants").

Mr. Blackburn's conduct is consistent with his *modus operandi* in prior cases—which has not gone unnoticed in this District—and only brings his Rule 11 violations into sharper focus. That conduct is not, as Mr. Blackburn claims, "legally irrelevant." (Opp. 10.) Far from it. Courts routinely consider prior conduct of the nonmovant if it is "reflective of [a] larger pattern of litigation." *See Keister v. PPL Corp.*, 318 F.R.D. 247, 270-71 (M.D. Pa. 2015). The Advisory Committee notes even encourage courts to do so. Ad. Comm. Notes, Rule 11 Am. (1993) (whether conduct was "part of a pattern or activity" and "whether the person has engaged in similar conduct in other litigation" are factors relevant to whether sanctions are warranted). The Court thus is permitted to consider—and should give substantial weight to—Mr. Blackburn's demonstrated history of filing frivolous lawsuits to obtain media attention to exert pressure on deep-pocketed defendants to leverage a settlement. (*See* Mot. 6-8.)

With no response to the Blackburn Email and a baseless argument that the Court should ignore Mr. Blackburn's long history of similar misconduct, the main thrust of the Opposition is that Mr. Blackburn's prefiling investigation inoculates him and Plaintiff from sanctions. (*See* Opp.

3

7, 10, 14.) Roc Nation addresses that argument in more detail immediately below, but as to improper purpose under Rule 11(b)(1), the argument is irrelevant. Mr. Blackburn cites *O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996), (Opp. 10), but that decision did not address improper purpose. *See id.* at 1490–91. And the Opposition cites no basis to conclude that Mr. Blackburn's self-proclaimed diligent prefiling investigation is probative of whether he had a legitimate purpose to sue Roc Nation.

> **B.    Mr. Blackburn violated Rule 11(b)(2) and (b)(3) by filing a knowingly false Complaint against Roc Nation and failing to conduct a reasonable inquiry into the law.**

Roc Nation has shown that Mr. Blackburn violated Rule 11(b)(2) and (b)(3). Though he claims to have conducted an adequate prefiling investigation, his summary of that inquiry merely describes facts that are either: (1) routine in a manager-artist relationship; or (2) not pleaded in the Complaint. Either way, none of them plausibly gives rise to nonfrivolous claims against Roc Nation.

*Rule 11(b)(3)*: As Roc Nation has explained (and Mr. Blackburn has ignored), allegations of ordinary-course business dealings—the only type alleged in the Complaint—such as the receipt of a management fee for management services, do not support an inference of trafficking or involvement in a RICO enterprise. (Mot. 15-16); *Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 338-39 (S.D.N.Y. 2025) (routine financial services-related allegations warranted TVPRA dismissal); *Related Cos., L.P. v. Ruthling*, 2019 WL 10947100, *5 (S.D.N.Y. July 23, 2019) (even knowing receipt of fraudulently obtained assets insufficient for a RICO claim).

Mr. Blackburn's claim that Roc Nation seeks sanctions based on contradictory inferences and disputed facts (Opp. 7, 9) misses the mark. Preliminarily, the authorities he relies on for this proposition are inapposite. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388-92 (2d Cir. 2003)

4

(vacating Rule 11 sanctions because notice did not include multiple legal and factual contentions later raised before the court and factual contentions were not "utterly lacking in support"); *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (reversing "decision to impose sanctions based on [challenged] statements" as it "ha[d] no support in law or logic"). Unlike in *Kiobel* or *Storey*, the overstatements in the Complaint are not "isolated factual errors, committed in good faith" based on disputes over accounting determinations, *Kiobel*, 592 F.3d at 83, but allegations "utterly lacking in support." *Storey*, 347 F.3d at 388. In any event, the Motion did not identify a "competing inference:" it argued that the *only* plausible inference from the facts alleged in the Complaint is that Roc Nation engaged in run-of-the-mill management services for Mr. Cartagena. And the Blackburn Email (which the Opposition conspicuously ignores) confirms that Mr. Blackburn has not uncovered any additional facts that would warrant a contrary one.

Rather than address his own statements head-on, Mr. Blackburn deflects, arguing that the RICO and human trafficking claims are nonfrivolous because they are "anchored in direct witness testimony" and documentary evidence resulting from his pre-filing inquiry. (Opp. 7, 10, 12). He claims that a "former Roc Nation accountant" provided information about "fraud, unreported transactions, and direct communications between Roc Nation executives and Defendant Cartagena to protect him from legal exposure." (Opp. 6.) But the Complaint pleads the accountant operated at Mr. Cartagena's instruction. (Compl. ¶ 618.) And it does not allege any facts concerning the purported "direct communications" exchanged to allegedly "protect" Mr. Cartagena. Similarly, though, the Opposition references "evidence" from *Mr. Cartagena's* "former managers" about *Mr. Cartagena's* "intentional and criminal deceptive acts," asserting "Roc Nation and their executives were fully aware of this." (Opp. 6.) But the Complaint is conspicuously silent about which facts Roc Nation was aware of, what its executives supposedly knew, how they knew it, or any other

5

detail that would make the Opposition's bare legal conclusions even remotely plausible. And as if to confirm their awareness that what they have alleged is insufficient, Plaintiff and Mr. Blackburn lob in a Hail-Mary pass in the form of the inscrutable allegation that Roc Nation "employs the same voodoo accounting principles to evade taxes" with "many other[]" clients. (Opp. 6.) But neither the Opposition nor the Complaint provides any basis to understand what that even means, let alone to credit it.

*Rule 11(b)(2)*: As to the legal theories, Mr. Blackburn's attempts to salvage the TVPRA claim fall short. While he concedes that "there must be a causal relationship" for a human trafficking claim (Opp. 8), he brushes past the law's requirement that a defendant must have *actively engaged* in the venture—it "cannot be established by association alone." *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). The Complaint, however, seeks liability by association only. And the Opposition merely reasserts the unsupported argument that "Roc Nation benefited from Defendant Cartagena's continued commercial viability while being aware of his underlying conduct, and its executive undertook affirmative acts…that further[ed] the venture's sex-trafficking activities." (Opp. 9.) Even if the Complaint plausibly alleged this (it doesn't), it still would not suffice to state a TVPRA claim. That follows directly from *Noble*, F. Supp. 3d at 524—which dismissed TVPRA claims premised on passive facilitation—as well as the other *Weinstein* decisions the Opposition cites. *Compare Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019) (*dismissing* TVPRA claim against corporate defendants where complaint failed to allege that "Weinstein provided any…benefits to [defendants] *because of* [defendants'] facilitation of…sexual misconduct"), *with Canosa v. Ziff*, 2019 WL 498865, *23 (S.D.N.Y. Jan. 28, 2019) (denying motion to dismiss as to *Harvey Weinstein's company* where complaint plausibly alleged that the company facilitated Weinstein's

sex-trafficking by "maintain[ing] women on their payroll whose responsibilities includ[ed] introducing Weinstein to young women and covering up his assaults" and "continu[ing] to pay for and facilitate Weinstein's interstate and foreign travel" despite knowing assaults occurred on those trips). This is not controversial—it is fundamental TVPRA jurisprudence that Mr. Blackburn has no excuse for getting wrong in the Complaint.

Finally, as detailed in the Motion, there is no nonfrivolous argument that the Complaint's RICO claim is timely. The Complaint's own allegations demonstrate that the latest Plaintiff could have brought this claim was 2021. (Mot. 17.) And there is nothing in the Complaint that warrants equitable tolling. The Opposition has no response to this.

## II. MR. BLACKBURN'S CONDUCT IS SANCTIONABLE UNDER SECTION 1927 AND THE COURT'S INHERENT AUTHORITY

### A. Mr. Blackburn's conduct amounts to bad faith and vexatious tactics that have multiplied the proceedings.

The Opposition does nothing to rebut Roc Nation's showing that Mr. Blackburn has acted in bad faith. Mr. Blackburn baldly proclaims that his actions amount to nothing more than "zealous advocacy" that is "consistent with the Federal Rules of Civil Procedure." (Opp. 12, 14.) Not so.

In the Motion, Roc Nation identified numerous instances of vexatious conduct: (1) filing a meritless complaint; (2) sending an email hours after Roc Nation filed its motion to dismiss that effectively conceded the claims against it were bogus; and (3) filing an opposition to the motion to dismiss that did not identify any act or omission that would support an inference that Roc Nation was involved in human trafficking or racketeering (or any additional allegations that could do so) and contained a frivolous Rule 12(f) motion to strike. (Mot. 18.) Each step of the way, Mr. Blackburn's actions have necessarily multiplied the proceedings by requiring Roc Nation to expend considerable resources and attorneys' fees briefing a motion to dismiss, opposing a meritless Rule 12(f) motion, and briefing a motion for sanctions. Rather than address any of these

7

arguments, however, Mr. Blackburn falls back on his contention that the Complaint "contains granular details of Roc Nation's involvement in specific predicate acts, supported by witness statements and documentary references." (Opp. 14.) But he does not cite a single paragraph from the 775-paragraph Complaint to support that claim—which is not surprising given the Complaint contains no identifiable witness statements or documentary references regarding Roc Nation. Filing and maintaining a meritless action is paradigmatic of bad faith. *See In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000).

### B. Sanctions are required to deter Mr. Blackburn's pattern of abusing the judicial system.

Mr. Blackburn insists that his sanctionable conduct in other cases is "legally irrelevant" to Roc Nation's sanctions motion. (Opp. 10.) Not so. It is no less relevant to sanctions under Section 1927 and the Court's inherent authority than it is under Rule 11. *See supra* at 3. Where, as here, the misconduct is representative of a broader pattern of litigation misconduct *and* efforts by others to deter that misconduct have not been sufficient, the Court may consider that prior conduct in assessing the propriety of sanctions. *See Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, *1, *19 (S.D.N.Y. June 26, 2020) (awarding sanctions, based in part on counsel's history of being "repeatedly chastised, warned, ordered to complete ethics courses, fined, and even referred to the Grievance Committee" while evading the most severe consequences). The history of this case and Mr. Blackburn's history of litigation misconduct demonstrate that the Court should impose sanctions to deter Mr. Blackburn from continuing his improper style of litigation.

## III. THE COURT SHOULD AWARD COSTS AND ATTORNEYS' FEES AND DISMISS THE COMPLAINT WITH PREJUDICE

As the Motion demonstrated, the circumstances here warrant the imposition of costs, attorneys' fees, and terminating sanctions with prejudice. Mr. Blackburn effectively conceded that neither he nor his client has a valid basis to include Roc Nation in this litigation. (Blackburn

Email.) The Opposition's silence on the Blackburn Email confirms that there is no other reasonable interpretation. By persisting in this litigation notwithstanding this concession, Mr. Blackburn and Plaintiff are subjecting Roc Nation to continued and intense public scrutiny and reputational harm that Roc Nation must expend considerable resources to combat. Roc Nation does not seek to "chill[] advocacy." (Opp. 14-15.) The only thing Roc Nation seeks to "chill" is the distorted version of "zealous advocacy" that involves pursuing lawsuits for an improper purpose. Imposing sanctions will promote advocacy grounded in ethical rules and law, while deterring baseless suits and providing redress for litigants who bear the brunt of a party's bad-faith acts. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

## IV. ROC NATION COMPLIED WITH RULE 11'S SAFE-HARBOR REQUIREMENT

Finally, the Opposition argues (Opp. 6-7) that Roc Nation's motion should be denied for failure to satisfy Rule 11's safe-harbor requirement, but the very authority the Opposition cites demonstrates that the argument is baseless. Second Circuit precedent does not require service of the memorandum of law in support of a Rule 11 motion to satisfy the safe-harbor requirement. A letter detailing the grounds on which the motion will be based, accompanied by a notice of motion, is sufficient. In *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, on which the Opposition repeatedly relies, the defendant served a notice of motion and a Rule 11 letter without an accompanying memorandum of law, as Roc Nation did here. 682 F.3d 170, 176 (2d Cir. 2012). The Second Circuit held that this process was procedurally sufficient and aligned with the "spirit of Rule 11 as it gave notice that it would be seeking sanctions under Rule 11 and identified six reasons why it believed Rule 11 had been violated." *Id.* at 177. Contrary to the Opposition's suggestion, the court explicitly "decline[d]…to read into [Rule 11] a requirement that a motion served for purposes of the safe harbor period must include supporting papers such

9

as a memorandum of law and exhibits." *Id.* at 176.[1]  Here, on June 30, 2025, Roc Nation served on Mr. Blackburn a Rule 11 letter and a notice of motion identifying the grounds and bases for which it would seek sanctions if the Complaint were not withdrawn before July 21, 2025. (Menillo Decl. Ex. A (Rule 11 Ltr.).)  When Mr. Blackburn failed to withdraw the Complaint, Roc Nation filed its sanctions motion, raising the very arguments asserted in its June 30 letter and notice of motion.  That process complies with the Rule 11 safe harbor.  *See Star Mark*, 682 F.3d at 176–77.

---

[1] *See also Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 385–86 (W.D.N.Y. 2013) (Rule 11 requires that "the subject of a sanctions motion" receive notice of "the source of authority for the sanctions being considered" and "the specific conduct…for which the sanctions are being considered."), *aff'd*, 569 F. App'x 25 (2d Cir. 2014); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 339 (N.D. Iowa 2007) ("Rule 11 says nothing about requiring service of the brief in support of a Rule 11 motion to trigger the twenty-one day 'safe harbor.'").

## CONCLUSION

For the reasons set forth in Roc Nation's opening brief and those contained herein, Roc Nation respectfully requests that Court impose sanctions under Rule 11, 28 U.S.C. § 1927, or its inherent authority, dismiss this case, and direct the parties to confer regarding a briefing schedule for the calculation of attorneys' fees and costs.

DATED: August 15, 2025
         New York, New York

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:   */s/ Alex Spiro*
     Alex Spiro
     Joanna Menillo
     295 5th Avenue, 9th Floor
     New York, New York 10016
     Phone: (212) 849-7000
     alexspiro@quinnemanuel.com
     joannamenillo@quinnemanuel.com

*Attorneys for Defendant Roc Nation, LLC*

# CERTIFICATE OF WORD COUNT COMPLIANCE

I, Alex Spiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule III(C) of Hon. Jennifer L. Rochon Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 3,142 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule III(C) of Judge Rochon's Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 15 day of August, 2025 in New York, New York.

                                                 */s/ Alex Spiro*
                                                 Alex Spiro