UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH CARTAGENA,
                                   *Plaintiff*,
v.
TERRANCE DIXON,
TYRONE BLACKBURN, and
T.A. BLACKBURN LAW, PLLC,
                                   *Defendants*.

Civil Action No. 25-cv-03552

MEMORANDUM OF LAW IN SUPPORT OF
THE DEFENDANT'S MOTION TO DISMISS

**MEMORANDUM OF LAW IN SUPPORT OF
THE DEFENDANTS' MOTION TO DISMISS**

**By**:

Tyrone A. Blackburn

## TABLE OF CONTENTS

- Preliminary Statement
- Legal Standard
- Plaintiff's Defamation Claim Fails As A Matter Of Law
  I. Plaintiff Fails to Plead Actual Malice
  II. The Challenged Statements Are Non-Actionable Opinion or Rhetoric
  III. Plaintiff Fails to Plausibly Plead Falsity
  IV. The Pre-Litigation and Litigation Privileges Bar the Defamation Claim
- Plaintiff's IIED Claim Fails As a Matter of Law
  I. The Alleged Conduct Is Not "Extreme and Outrageous"
  II. The IIED Claim Is Duplicative of the Defamation Claim
  III. Plaintiff Fails to Plead Severe Emotional Distress or Malice
- Conclusion

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
- *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)
- *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989)
- *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)
- *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)

**United States Court of Appeals**
- *Chandok v. Klessig*, 632 F.3d 803 (2d Cir. 2011)
- *Celle v. Filipino Reporter Enters.*, 209 F.3d 163 (2d Cir. 2000)
- *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92 (2d Cir. 2000)
- *Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019)
- *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012)

**U.S. District Courts**
- *Biehner v. City of New York*, No. 19 Civ. 9646, 2021 U.S. Dist. LEXIS 44003 (S.D.N.Y. Mar. 9, 2021)
- *Flaherty v. Dixon*, 2023 U.S. Dist. LEXIS 26876 (S.D.N.Y.)
- *McNamee v. Clemens*, 762 F. Supp. 2d 584 (E.D.N.Y. 2011)
- *NOVAGOLD Res., Inc. v. J Capital Rsch. USA LLC*, 2022 U.S. Dist. LEXIS 55734 (E.D.N.Y. Mar. 28, 2022)
- *Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403 (S.D.N.Y. 2022)
- *Pateman v. City of White Plains*, No. 17-CV-6156 (KMK), 2020 U.S. Dist. LEXIS 48191 (S.D.N.Y. Mar. 25, 2020)
- *Suarez v. Bakalchuk*, 66 A.D.3d 419, 887 N.Y.S.2d 6 (1st Dep't 2009)

**New York Court of Appeals**
- *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115 (1993)
- *Liberman v. Gelstein*, 80 N.Y.2d 429 (1992)
- *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359 (2007)
- *Wiener v. Weintraub*, 22 N.Y.2d 330 (1968)

**New York Appellate Division Cases**
- *Abitbol v. Rice*, 2024 N.Y. Misc. LEXIS 4886 (Sup. Ct. N.Y. Cnty. 2024)
- *Brian v. Richardson*, 87 N.Y.2d 46 (1995)
- *Drimer v. Zionist Org. of Am.*, 194 A.D.3d 641 (1st Dep't 2021)
- *Fleischer v. NYP Holdings, Inc.*, 104 A.D.3d 536 (1st Dep't 2013)
- *Julien J. Studley, Inc. v. Lefrak*, 50 A.D.2d 162 (2d Dep't 1975), aff'd 41 N.Y.2d 881 (1977)
- *Kaye v. Trump*, 58 A.D.3d 579 (1st Dep't 2009)
- *Lieberman v. Hoffman*, 239 A.D.2d 273 (1st Dep't 1997)
- *Mann v. Abel*, 10 N.Y.3d 271 (2008)
- *Rockwell Capital Partners, Inc. v. HempAmericana, Inc.*, 173 A.D.3d 639 (1st Dep't 2019)
- *Sexter & Warmflash, P.C. v. Margrabe*, 38 A.D.3d 163 (1st Dep't 2007)
- *Sklover v. Sack*, 102 A.D.3d 855 (2d Dep't 2013)
- *Schnur v. Balestriere*, 208 A.D.3d 1117 (1st Dep't 2022)
- *Vodopia v. Ziff-Davis Publ. Co.*, 243 A.D.2d 368 (1st Dep't 1997)

**Other New York State Courts**
- *Jinkyu Chang v. Arroyave*, 2022 N.Y. Misc. LEXIS 49561 (Sup. Ct., Westchester Cnty. Apr. 7, 2022)

## **Preliminary Statement**

This case must be dismissed because it fails as a matter of law under Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b). Plaintiff Joseph Cartagena—also known as "Fat Joe"—is a Grammy-nominated public figure who filed this lawsuit as retaliation after Defendant Dixon exercised their right to speak out regarding allegations of exploitation, fraud, and abuse. The Complaint is nothing more than a constitutionally impermissible effort to silence criticism through aggressive and meritless litigation.

The claims are legally deficient in several ways. First, the defamation claim fails because Plaintiff—undisputedly a public figure—has not alleged any facts showing actual malice, as required under *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). In that landmark decision, the Supreme Court held that defamation is not a strict liability tort and that public figure plaintiffs must establish, by clear and convincing evidence, that the allegedly defamatory statement was made with "actual malice"—that is, with knowledge of its falsity or reckless disregard for its truth. *See also James v. Gannett Co.*, 40 N.Y.2d 415, 421 (1976). Plaintiff fails to do so.

Second, the intentional infliction of emotional distress (IIED) claim is both duplicative and independently deficient. It is well-settled that "defamatory statements generally cannot constitute the extreme and outrageous behavior required for an intentional infliction of emotional distress claim." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). New York courts routinely dismiss IIED claims when the underlying allegations are already actionable under traditional tort theories such as defamation. *See Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 15-CV-4535, 2017 WL 823583, at *10 (S.D.N.Y. Jan. 17, 2017); *Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 206 (E.D.N.Y. 2014); *Paravas v. Long Tran*, No. 20-CV-9145, 2022 U.S. Dist. LEXIS 31151, at *29 (S.D.N.Y. Feb. 22, 2022). Courts have consistently held that emotional distress stemming from defamatory speech must be addressed within the confines of a libel claim—not through IIED.

Moreover, even if considered independently, Plaintiff's IIED claim fails on its merits. To prevail, a plaintiff must establish four elements: (1) extreme and outrageous conduct; (2) intent to cause or reckless disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). Courts evaluating such claims typically focus on the first element—whether the conduct alleged is so outrageous as to go beyond all bounds of decency. *Stuto*, 164 F.3d at 827.

4

Here, Plaintiff identifies nothing more than social media accusations and litigation threats. These are not even close to the type of conduct deemed sufficiently outrageous under New York law. *See Howell*, 81 N.Y.2d at 122 (noting that the standard for IIED is "rigorous and difficult to satisfy").

Third, Plaintiff's allegations lack the specificity and plausibility required by Rules 8(a) and 9(b). The Complaint is replete with conclusory allegations, speculative inferences, and irrelevant material. It reads as a retaliatory narrative aimed at discrediting Defendant Dixon and his attorney, Tyrone Blackburn, not as a good-faith effort to seek judicial redress.

In fact, the context surrounding this case—including Dixon's parallel lawsuit filed on June 19, 2025, against Cartagena (*Dixon v. Cartagena*, Case No. 25-cv-5144)—confirms that the statements at issue arose directly in response to serious allegations of trafficking, labor exploitation, and sexual abuse, many of which are supported by detailed factual assertions, corroborating witness statements, and documentary evidence. Dixon's Complaint, filed in good faith, includes well-supported RICO and TVPA claims, which are now pending in this very District before this very Court. Plaintiff's attempt to retaliate against that filing by rebranding it as defamation and IIED should not be entertained by this Court.

The Complaint must be dismissed with prejudice.

## Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive dismissal, a plaintiff must plead "a plausible set of facts sufficient to raise a right to relief above the speculative level." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010). A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor is it enough for a plaintiff to allege facts that are merely "consistent with liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must "nudge" a claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief. This rule demands clarity and coherence. Complaints that are vague, sprawling, or filled with speculative assertions do not provide fair notice to the Defendant and violate Rule 8.

Federal Rule of Civil Procedure 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although conditions of mind (such as malice or intent) may be averred generally, the underlying circumstances must be alleged with specificity. Courts in this Circuit have applied Rule 9(b) not only to formal fraud claims but to claims that are "sound in fraud," including those based on allegations of deceit, extortion, or fabricated pretext. See *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

As explained below, Plaintiff's claims fail under all three rules. His Complaint lacks plausibility under Rule 12(b)(6), fails to provide a coherent or concise narrative under Rule 8(a), and fails to allege with particularity the factual basis for accusations of extortion, malice, or deception under Rule 9(b).

### <u>Argument</u>

## I.    THE DEFAMATION CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6).

To state a claim for defamation under New York law, a plaintiff must allege: "(1) a false statement of fact, (2) published to a third party without privilege or authorization, (3) with the requisite level of fault, and (4) that causes harm, unless the statement is defamatory *per se* (in which case harm is presumed)". Where the Plaintiff is a public figure, the "requisite level of fault" is *actual malice* – meaning the Plaintiff must ultimately prove the statement was made with knowledge of its falsity or with reckless disregard for the truth. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Moreover, a public-figure plaintiff must plead sufficient facts to make it at least plausible that this demanding standard could be met.

Plaintiff Cartagena is unquestionably a public figure: he is described in his Complaint (and in the press) as a famous rapper since the 1990s and a "legend" in his genre. Thus, to avoid dismissal, he must have alleged facts that, if true, would allow a reasonable inference that Defendants made the challenged statements with actual malice. As shown below, he has not done so. Additionally, many of the statements at issue are not actionable as defamation because they are protected opinions, rhetorical hyperbole, or otherwise not plausible assertions of fact. Finally, the Complaint fails to adequately plead the element of falsity with the required specificity and plausibility. Any one of these defects warrants dismissal of the defamation count; together, they leave the claim utterly deficient.

### A.    <u>Plaintiff's Defamation Claim Fails As A Matter Of Law</u>

#### a.    *Plaintiff Fails to Plead Actual Malice, Which Is Required Because He Is a Public Figure*

There is no serious dispute that Plaintiff Joseph Cartagena—a Grammy-nominated rap artist and media figure with decades of international recognition—is a public figure under any recognized legal standard. As such, the heightened constitutional requirement of actual malice squarely applies. And yet, Plaintiff's Complaint fails entirely to satisfy that standard.

Rather than allege any concrete facts showing that Defendants knew the statements were false or entertained serious doubts as to their truth, Plaintiff relies exclusively on vague, conclusory assertions that the statements were "fabricated," "malicious," and part of a broader extortion scheme. These allegations are devoid of specific factual support. For example, the Complaint fails to identify any contemporaneous communication, contradictory evidence, or other material that would plausibly suggest that Defendants knew the statements were false at the time of publication. There is no reference to any witness recantations, discredited sources, or admissions by Defendants. Plaintiff does not even allege that he informed Defendants before publication that the statements were false.

Such boilerplate accusations are patently insufficient. Courts in this Circuit and across the country have repeatedly made clear that a public figure must allege more than mere disagreement or reputational harm—he must present well-pleaded, fact-specific allegations that demonstrate a plausible inference of actual malice. See *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (affirming dismissal because the plaintiff "failed to plead sufficient facts to give rise to a plausible inference of actual malice").

Actual malice is "a subjective standard" requiring proof that a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Reckless disregard of the truth is a term of art requiring "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" and yet published with such doubts. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); see also *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). The Supreme Court has further cautioned that actual malice "should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991); see also *Biro*, 807 F.3d at 546. The governing standard focuses not "on the defendant's attitude toward the plaintiff," but rather "on the defendant's attitude toward the truth." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 99 (2d Cir. 2000). Because actual malice is a subjective standard, "[m]ere negligence does not

7

suffice" to prove a claim. *Masson*, 501 U.S. at 510. The "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Harte-Hanks*, 491 U.S. at 688, 692; *St. Amant*, 390 U.S. at 731.

The Second Circuit reaffirmed these principles in *Brimelow v. New York Times Co.*, 2021 U.S. App. LEXIS 31672, at *5–6, holding that actual malice requires that the Complaint plausibly allege that the Defendant published the defamatory statements "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." The Court emphasized that "[t]he reckless conduct needed to show actual malice is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing, but by whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Id. (citing *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001)). Actual malice can be shown through "the defendant's own actions or statements, the dubious nature of his sources, [and] the inherent improbability of the story [among] other circumstantial evidence." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000). The Second Circuit has emphasized that the actual malice standard imposes a "heavy burden of proof, a burden that is designed to assure to the freedoms of speech and press that breathing space essential to their fruitful exercise." *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988).

Here, Plaintiff offers no factual content to meet this burden. Instead, he improperly relies on speculative inferences and inflammatory language in an effort to manufacture a defamation claim where none exists. He does not indicate that Defendants doubted the veracity of their statements, no factual allegations of falsity communicated to Defendants before publication, and no basis to infer that Defendants were acting with anything other than belief in the truth of what was expressed. That is precisely what the actual malice standard is intended to preclude. As courts in this Circuit have repeatedly held, the absence of such factual specificity is fatal at the pleading stage, particularly where—as here—the Plaintiff is an undisputed public figure seeking to weaponize defamation law against constitutionally protected speech.

In reality, the record before this Court demonstrates the opposite. Defendant Dixon's statements were not random attacks but rather were direct responses to a documented and serious dispute, memorialized in **Dixon v. Cartagena, No. 25-cv-5144 (S.D.N.Y.)**—a civil RICO and TVPA action filed on June 19, 2025. In that lawsuit, Dixon details a sixteen-year pattern of

financial coercion, forced labor, and sexual manipulation perpetrated by Plaintiff and his enterprise. The Complaint includes corroborated witness accounts, financial evidence, audio recordings, and extensive factual detail. These allegations were not only made under penalty of perjury but were first introduced in pre-litigation negotiations with the Plaintiffs' Counsel protected by the litigation privilege.

Thus, even if Plaintiff could somehow survive the privilege barrier (he cannot), the public record fatally undermines any plausible inference of actual malice. Dixon's parallel litigation establishes that he held a genuine, subjectively honest belief in the truth of his assertions—negating the "reckless disregard" component of the *Sullivan* standard. Courts have routinely dismissed defamation claims under these circumstances, particularly where the speaker's statements reflect the same content presented in judicial filings backed by documentation and first-hand observation. *See Yeghiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 502–04 (S.D.N.Y. 2012) (dismissing public figure's claim where Defendant's statements were supported by substantial sourcing and grounded in prior investigations, even if ultimately unproven).

In short, Plaintiff's allegations fall woefully short of what is required to plead actual malice. The Court is not required to credit bare assertions of "malicious intent" where the Complaint fails to allege any supporting facts. The Plaintiff cannot transform reputational embarrassment into a federal cause of action by simply declaring himself defamed. The First Amendment does not permit a public figure to use defamation law as a cudgel to silence uncomfortable or accusatory speech—especially when that speech arises from protected legal advocacy and detailed factual grievance. Plaintiff's failure to plausibly allege actual malice is dispositive and his defamation claim must be dismissed with prejudice.

B. Many of the Alleged Statements Are Non-Actionable Opinions or Rhetorical Hyperbole
Even if Plaintiff had sufficiently pleaded actual malice—which he has not—his defamation claim must still be dismissed because the challenged statements are, as a matter of settled law, non-actionable expressions of opinion, rhetorical hyperbole, or statements protected by the litigation privilege.

Courts do not assess statements in a vacuum. Rather, they evaluate the full context of the communication—including its tone, platform, audience, and purpose—to determine whether a reasonable reader would interpret the statement as an assertion of fact or as a protected opinion. See *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20–21 (1990); *Gross v. N.Y. Times Co.*, 82 N.Y.2d

146, 154–55 (1993). When a statement cannot be proven true or false, or when it appears as part of heated, informal, or expressive commentary, courts routinely find it non-actionable as a matter of law.

This principle applies squarely here. The statements at issue were made on Instagram—a digital platform known for informal, exaggerated, and often hyperbolic discourse. Defendant Dixon's remarks were posted amid a public dispute with a former collaborator and contemporaneous with allegations he formally raised in a pending federal RICO and TVPA lawsuit (*Dixon v. Cartagena*, No. 25-cv-5144). Courts recognize that the social media context, combined with ongoing legal proceedings, shapes how reasonable readers interpret such speech.

New York courts have long held that "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation" (*Mann v. Abel*, 10 N.Y.3d 271, 276 [2008]). As the Court of Appeals reaffirmed, "'[h]owever pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact'" (*Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 380 [1977], quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 [1974]). A statement of opinion consisting of language that is "loose, figurative or hyperbolic and lack[ing] a precise meaning" is non-actionable. See *Rockwell Capital Partners, Inc. v. HempAmericana, Inc.*, 173 A.D.3d 639, 639 (1st Dep't 2019).

Courts must look to the broader communicative setting to determine how a reasonable reader would construe a statement. "[R]ather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made" to determine whether they convey factual assertions or opinions. *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995). "Even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 294 (1986). See also *Abrams v. Durst*, 2021 N.Y. Misc. LEXIS 2543, *11–12 (recognizing hyperbolic and opinion-laden statements as non-actionable).

In this case, references to Plaintiff as a "pedophile," accusations that he was "dating a minor," or suggestions that he "took advantage of underage girls" fall within the realm of fiery

10

rhetoric. These comments, while offensive, are plainly subjective moral condemnations made in the course of public controversy. They lack the specificity, factual verifiability, and objective grounding necessary to render them actionable as false statements of fact. The Supreme Court's holding in *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 13–14 (1970), which protected the word "blackmail" as non-defamatory in the context of public discourse, applies with equal force here.

Moreover, Plaintiff's claims are further undermined by the absolute litigation privilege. Many of the statements Plaintiff challenges closely track or explicitly reference allegations made in Dixon's federal Complaint. Under New York law, "[s]tatements made by parties, attorneys, and witnesses in the course of judicial or quasi-judicial proceedings are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *Gottwald v. Sebert*, 40 N.Y.3d 240, 253 (2023) (emphasizing that "the litigation privilege, being absolute, confers immunity from liability regardless of motive").

To hold otherwise would impermissibly chill the exercise of First Amendment rights and the pursuit of judicial remedies. A defendant cannot be subjected to liability merely for echoing, in a public forum, the substance of allegations raised in a legitimate legal filing. That principle protects both advocacy and expressive freedom—especially in matters of public interest involving high-profile figures.

Accordingly, even if Plaintiff had adequately pled falsity and actual malice (which he has not), the defamation claim would still fail because the statements at issue are non-actionable as a matter of law under both constitutional and New York defamation standards.

C.  Statements Made in Anticipation of Litigation Are Protected by Absolute or Qualified Privilege

Plaintiff's defamation claim fails for the additional reason that the challenged statements were made in anticipation of litigation and are therefore protected by well-established privileges under New York law.

New York courts have long recognized that communications made by attorneys and parties in connection with contemplated or prospective litigation are privileged. The Court of Appeals in *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718–19 (2015), expressly held that such communications— particularly cease-and-desist letters and similar demands—enjoy an absolute privilege, stating:

> "Attorneys often send cease and desist letters to avoid litigation. Applying privilege to such preliminary communication encourages potential defendants to negotiate with potential plaintiffs in order to prevent costly and time-consuming judicial intervention. Communication during this pre-litigation phase should be encouraged and not chilled by the possibility of being the basis for a defamation suit."

Three of the four Appellate Division Departments have directly addressed this issue. The First Department has squarely held that an absolute privilege attaches to pre-litigation statements by counsel. See *Sexter & Warmflash, P.C. v. Margrabe*, 38 A.D.3d 163, 174 (1st Dep't 2007) ("a letter among parties and counsel on the subject of pending or prospective litigation . . . enjoys the protection of the absolute privilege"); *Vodopia v. Ziff-Davis Publ. Co.*, 243 A.D.2d 368 (1st Dep't 1997); *Lieberman v. Hoffman*, 239 A.D.2d 273 (1st Dep't 1997).

Although the Second Department had previously declined to apply an absolute privilege in *Kenny v. Cleary*, 47 A.D.2d 531 (2d Dep't 1975), it subsequently clarified its position in *Sklover v. Sack*, 102 A.D.3d 855, 856 (2d Dep't 2013), holding that absolute privilege applied to a pre-litigation malpractice dispute.

Furthermore, the Court of Appeals has extended absolute privilege to preliminary or investigative stages of quasi-judicial proceedings when strong public policy interests are implicated. In *Wiener v. Weintraub*, 22 N.Y.2d 330, 332 (1968), the Court emphasized the need to protect parties who lodge complaints with regulatory bodies such as bar grievance committees— even if those complaints later prove to be unfounded:

> "If a complainant were to be subject to a libel action by the accused attorney, the effect in many instances might well be to deter the filing of legitimate charges."

That rationale applies with equal force here. The challenged statements were issued by counsel in the context of active and imminent litigation and relate directly to the factual basis of the claims now before the Court. They are not extrajudicial attacks or public smears—they are litigation-directed communications that fall squarely within the bounds of protected speech.

Accordingly, Plaintiff's defamation claim is barred in its entirety by the doctrines of absolute privilege or, at a minimum, qualified privilege and must be dismissed.

D.  Plaintiff Fails to Allege Falsity with the Requisite Plausibility

Even if Plaintiff's defamation claim were viable—which it is not—his claim for intentional infliction of emotional distress ("IIED") must also be dismissed. Under New York law, the elements of an IIED claim are: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection

12

between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).

New York courts have repeatedly emphasized that the standard for IIED is "rigorous, and difficult to satisfy." The alleged conduct must be "so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005) (citation omitted); see also *Seward v. Antonini*, 2023 U.S. Dist. LEXIS 177138, at *90.

Here, Plaintiff fails to plead any facts that approach this demanding threshold. He alleges no physical confrontation, no sustained pattern of harassment, and no conduct that remotely approximates the level of outrageousness required under New York law. The statements he complains of were posted in the context of a public dispute, using expressive and hyperbolic language, and were drawn mainly from allegations asserted in a federal court complaint. As such, they are not only protected as opinion and litigation-related speech but also fall far short of the kind of truly egregious conduct courts have found actionable under an IIED theory.

Moreover, Plaintiff fails to allege any facts showing that he suffered "severe emotional distress" as a result of the statements. There is no medical documentation, no factual support for the alleged distress, and no connection plausibly drawn between the online statements and any actionable injury. The absence of both outrageous conduct and concrete injury renders Plaintiff's IIED claim deficient as a matter of law.

For instance, if Dixon alleged that Plaintiff "flew a 16-year-old girl across state lines for sexual purposes," Plaintiff could rebut that with specific, exculpatory facts—such as identifying his whereabouts during the alleged event, producing travel records, or denying any connection to the individual at issue. If Dixon claimed Plaintiff had sexual contact with a minor in a particular city or during a tour, Plaintiff could demonstrate impossibility or provide conflicting records. Yet the Complaint is devoid of any such rebuttal or contextual clarification. Rather than refute specific factual claims, Plaintiff adopts a litigation strategy grounded in general denials and rhetorical indignation, which cannot meet the burden imposed by federal pleading standards.

Moreover, to the extent the Complaint seeks to attribute defamatory meaning to pre-litigation emails or settlement demands transmitted by Defendant Blackburn—an attorney—such communications are plainly protected by the qualified litigation privilege and are not considered defamatory "publications" under New York law. In *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 720 (2015),

the Court of Appeals held that even statements made in demand letters threatening litigation enjoy qualified immunity so long as they are made in good faith and reasonably related to the contemplated legal proceeding.

Plaintiff concedes in his own Complaint that many of the statements were made directly to him or his legal counsel in the context of settlement negotiations or pre-suit discussions. These communications are not actionable. Indeed, to hold otherwise would expose virtually every demand letter or pre-litigation threat to potential liability and chill legitimate legal advocacy. And even if such privilege were not absolute in this context, Plaintiff fails to plead facts that would overcome it—he does not allege that the statements were irrelevant, gratuitous, or made in bad faith.

Taken together, the Complaint falls far short of alleging falsity with the "factual heft" necessary to withstand a motion to dismiss. Plaintiff's approach—asserting the falsity of explosive accusations without addressing their substance—is both procedurally inadequate and substantively unpersuasive. The Court need not (and should not) credit naked denials as sufficient to state a claim, particularly where the stakes involve speech concerning public figures and matters of substantial public concern.

Accordingly, for this reason, as well, the defamation claim must be dismissed.

## II.    THE PLAINTIFF'S IIED CLAIM IS DUPLICATIVE OF HIS DEFAMATION CLAIM

The principle of dismissal for duplication applies here. "[P]laintiff[s] cannot press both direct and supervisory claims against a single defendant, with both claims premised 'on the same conduct.'" *Martinez v. City of New York*, 564 F. Supp. 3d 88, 105 (E.D.N.Y. 2021) (citation omitted). The courts have consistently held that when a supervisory liability claim is based on the same facts as an underlying direct claim, it is redundant and must be dismissed. See *Burch v. City of New York*, No. 11-CV-2841 (CBA) (VMS), 2016 U.S. Dist. LEXIS 195623, 2016 WL 11430773, at *16 (E.D.N.Y. Apr. 22, 2016) ("To the extent [plaintiff's] supervisory claim is premised on [a defendant's] participation in the alleged constitutional[] violation…it is duplicative" of the underlying claim).

### A.    The IIED Claim Is Barred as Duplicative of the Defamation Claim

Under well-established New York law, a plaintiff may not bootstrap an otherwise deficient defamation claim into an intentional infliction of emotional distress ("IIED") claim based on the same facts. Courts have consistently held that where the alleged conduct forming the basis of the

IIED claim is identical to the allegedly defamatory statements, the IIED claim must be dismissed as duplicative. See *Fleischer v. NYP Holdings, Inc.*, 104 A.D.3d 536, 538–39, 961 N.Y.S.2d 393 (1st Dep't 2013), *lv denied*, 21 N.Y.3d 858, 992 N.E.2d 423, 970 N.Y.S.2d 495 (2013) (affirming dismissal of IIED claim as duplicative of defamation claim arising from same statements); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 600 (E.D.N.Y. 2011) ("Where, as here, the injuries allegedly caused by the defamatory statements are the same whether brought under the defamation claim or the IIED claim, the latter claim is duplicative and must be dismissed.").

Most recently, the First Department reaffirmed this rule in *Reeves v. Associated Newspapers, LTD.*, 210 N.Y.S.3d 25 (1st Dep't 2024), citing *Fleischer* and *Schnur v. Balestriere*, 208 A.D.3d 1117, 1118–19, 175 N.Y.S.3d 50 (1st Dep't 2022), in holding that an IIED claim resting on the same core allegations as a defamation cause of action must be dismissed as a matter of law. The same principle applies to declaratory judgment claims that merely duplicate a defamation theory under a different label. See *Abitbol v. Rice*, 2024 N.Y. Misc. LEXIS 4886, at *2–3 (N.Y. Sup. Ct.) (dismissing IIED and declaratory judgment claims that simply repackaged defamation allegations).

Here, Plaintiff's IIED claim is entirely derivative of his defamation allegations. He does not cite any distinct conduct separate from the alleged public statements that form the basis of his defamation claim. Indeed, the IIED claim merely recharacterizes those same statements—accusations posted on social media and conveyed in legal correspondence—as "outrageous" conduct. But New York courts have made clear that a plaintiff cannot circumvent the constitutional and common law limitations on defamation claims by simply relabeling them as emotional distress claims. See also *Barbash v. STX Fin., LLC*, 2020 U.S. Dist. LEXIS 210331, at *10–11 (noting that courts will dismiss overlapping IIED claims where defamatory allegations and purported emotional harm are one and the same).

Nor can Plaintiff rely on authorities like *Fleischer* or *Birkenfeld v. UBS AG*, 172 A.D.3d 566, 100 N.Y.S.3d 23 (1st Dep't 2019), both of which underscore the high bar for actionable defamation or derivative emotional distress claims. In *Fleischer*, the Court found the challenged statement to be a non-actionable opinion. And in *Birkenfeld*, the Court found that the plea allocution and allegedly defamatory statements were substantially identical—an alignment that is clearly lacking here.

Accordingly, Plaintiff's IIED claim must be dismissed in its entirety as duplicative of his defamation cause of action and legally insufficient under controlling New York precedent.

B. Plaintiff Fails to Allege Conduct That Is "Extreme and Outrageous" as Required by New York Law

Even if the claim were not duplicative, it would still fail independently because the conduct alleged does not come close to satisfying New York's high threshold for IIED liability. To state a viable IIED claim, Plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and [to] be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993). This standard is deliberately exacting. Courts have repeatedly emphasized that IIED is a highly disfavored tort reserved for the most egregious cases involving sustained harassment, coercion, or abuse of power.

The conduct Plaintiff complains of—namely, public accusations made in the course of a personal and legal dispute and the issuance of demand letters threatening litigation—is simply not the type of behavior that New York courts have found sufficient to support an intentional infliction of emotional distress ("IIED") claim. Even harsh, unfair, or reputationally damaging accusations, without more, do not rise to the level of "extreme and outrageous" conduct. See *Chanko v. Am. Broad. Cos., Inc.*, 27 N.Y.3d 46, 57, 29 N.Y.S.3d 879, 49 N.E.3d 1171 (2016) (publication of a deceased man's final moments on television, though disturbing and insensitive, was not sufficiently outrageous to sustain an IIED claim).

New York courts impose an exceedingly high threshold for IIED claims, demanding that the alleged conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kaye v. Trump*, 58 A.D.3d 579, 579–80, 873 N.Y.S.2d 5 (1st Dep't 2009). The Court of Appeals has candidly acknowledged that virtually every IIED claim reviewed by the high Court has failed for want of outrageousness. *Chanko*, 27 N.Y.3d at 57.

That standard is not met here. Courts routinely dismiss IIED claims arising from allegations of false accusations, legal threats, or even retaliatory workplace conduct. In *Biehner v. City of New York*, No. 19 Civ. 9646, 2021 U.S. Dist. LEXIS 44003, at *26, 2021 WL 878476 (S.D.N.Y. Mar. 9, 2021), the Court reiterated that conclusory allegations of distress and harassment fall well short of the high bar for IIED. In *Drimer v. Zionist Org. of Am.*, 194 A.D.3d 641, 150 N.Y.S.3d 48, 50 (1st Dep't 2021), the Plaintiff's claim—alleging anxiety and a cardiac event resulting from a

pattern of harassment—was still deemed legally insufficient. And in *Suarez v. Bakalchuk*, 66 A.D.3d 419, 887 N.Y.S.2d 6, 7 (1st Dep't 2009), the Court rejected an IIED claim where the conduct, though "extremely offensive and bizarre," was not legally outrageous.

Likewise, in *Flaherty v. Dixon*, 2023 U.S. Dist. LEXIS 26876, at *20–22, the Court found that even where the Plaintiff alleged defamatory statements that cost him employment and damaged his reputation, those actions did not meet the requisite standard for outrageousness under New York law. The Court emphasized that even if such statements are false, hurtful, or career-ending, they do not satisfy the strict legal requirements for IIED.

Indeed, the conduct Plaintiff describes here—posts on Instagram and alleged threats of litigation—are routine in contentious public disputes, particularly where, as here, Defendant (Dixon) had already filed a civil complaint asserting RICO and TVPA claims against Plaintiff. Courts have consistently held that such conduct, even if emotionally distressing, is not actionable under the exacting standards of New York tort law. *See Walentas v. Johnes*, 257 A.D.2d 352, 353 (1st Dep't 1999) (litigation-related conduct, even if malicious or retaliatory, does not satisfy IIED threshold).

In short, the statements and conduct alleged by Plaintiff—public criticisms, social media accusations, and pre-litigation threats—are paradigmatic examples of conduct that courts have repeatedly deemed insufficient to sustain an IIED claim. As such, this cause of action must be dismissed as a matter of law.

C.  Plaintiff Fails to Allege Severe Emotional Distress

In addition to alleging extreme and outrageous conduct, a viable IIED claim must plead severe and debilitating emotional distress—not merely anger, indignation, or generalized reputational harm. See *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121–22 (1993). A plaintiff must allege that the distress suffered was "so serious that no reasonable person could be expected to endure it." *Id.* Courts consistently reject IIED claims where the alleged emotional harm is vague, conclusory, or entirely derivative of reputational injuries.

Moreover, as a public figure, Plaintiff must meet the heightened burden of pleading actual malice with particularity. That is, he must allege facts showing that Defendants either knew their statements were false or acted with reckless disregard for their truth. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 410 (S.D.N.Y. 2022) ("A plaintiff must allege facts giving rise to a plausible inference that the

defendant knowingly published false information or acted with reckless disregard."). Bare assertions that Defendants acted maliciously or with bad intent are legally insufficient. See *NOVAGOLD Res., Inc. v. J Capital Rsch. USA LLC*, No. 20-CV-2875 (JMF), 2022 U.S. Dist. LEXIS 55734, at *16 (E.D.N.Y. Mar. 28, 2022) ("Naked assertions of malice will not suffice to survive dismissal.").

A qualified privilege, such as the litigation privilege or the fair comment privilege, may only be overcome by a showing of either actual malice or common law malice. *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011); *Liberman v. Gelstein*, 80 N.Y.2d 429, 437–38 (1992); *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365 (2007). To show actual malice, Plaintiff must prove that Defendants either knew the statements were false or published them while harboring serious doubts as to their truth. See *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667 (1989). Reckless disregard is not simply a failure to investigate; it requires a high degree of awareness of probable falsity. Although actual malice is a subjective inquiry, courts may infer it from objective facts. See *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (quoting *Bose Corp. v. Consumers Union*, 692 F.2d 189, 196 (1st Cir. 1982)).

By contrast, common law malice focuses on the speaker's attitude toward the Plaintiff rather than the truth of the statement. It requires proof that the Defendant was motivated solely by "spite or ill will." *Liberman*, 80 N.Y.2d at 437–38. As the Second Circuit explained in *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 99 (2d Cir. 2000), the "critical difference" between the two forms of malice is that actual malice targets truthfulness, while common law malice targets the speaker's animus toward the Plaintiff.

Here, Plaintiff offers no factual allegations—beyond conclusory invocations of "malice"—that would plausibly support either standard. There are no well-pled facts showing that Defendants entertained serious doubts about the veracity of their statements, nor are there allegations establishing that Defendants acted solely out of spite. Indeed, the challenged statements arise in connection with sworn legal proceedings and personal experiences recounted in connection with a broader pattern of alleged misconduct. Without more, Plaintiff fails to meet either the constitutional or common law thresholds required to overcome privilege or sustain an IIED claim.

Plaintiff's Complaint is silent on this requirement. He does not claim to have suffered psychological breakdowns, sought mental health treatment, been diagnosed with a condition, or experienced any lasting functional impairment. Instead, he vaguely alleges that the statements

caused emotional distress. These kinds of vague, conclusory allegations are insufficient as a matter of law. *See Chanko*, 27 N.Y.3d at 57 (rejecting IIED claim where plaintiffs failed to demonstrate that the alleged emotional distress was severe).

In sum, Plaintiff's IIED claim is both procedurally barred as duplicative and substantively deficient under the controlling case law. It should be dismissed with prejudice.

## III.   THE COMPLAINT SHOULD BE DISMISSED UNDER RULES 8 AND 9(B) FOR FAILURE TO PLEAD WITH SUFFICIENT CLARITY AND PARTICULARITY

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 is violated when a complaint is vague, conclusory, or so disorganized that it fails to provide defendants with fair notice of the claims. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts dismiss complaints under Rule 8 where allegations are "so vague or conclusory that [they] fail to give the defendant fair notice." See *Kraft v. City of New York*, 696 F. Supp. 2d 403, 424 (S.D.N.Y. 2010).

The Complaint here fails to clearly identify which statements are alleged to be false, why they are false, and how each Defendant individually is liable. The allegations are riddled with vague references to "harassment," "malicious intent," and "defamatory conduct," without linking such phrases to actual, verifiable events. These defects deprive Defendants of the ability to meaningfully respond or prepare a defense. The pleading thus violates Rule 8 and should be dismissed on that basis alone.

Finally, beyond the substantive deficiencies of each cause of action, the Complaint as a whole should be dismissed for failing to comply with fundamental pleading rules. Rule 8 requires a short, plain, and plausible statement of the claim. As discussed above, Plaintiff's pleading is anything but short or plain—it is a sprawling narrative that drags in the extraneous matter (for example, references to other lawsuits and third parties like "Desiree Perez" and "Roc Nation" in an apparent attempt to suggest a conspiracy, without any coherent, factual link to the case at bar). These side allegations do not belong in a well-pleaded complaint and highlight its implausible, speculative nature. The inclusion of such material tends to confirm that the Plaintiff is using this lawsuit to fight a broader battle or agenda rather than to resolve a concrete legal injury. That is improper under Rule 8, which is designed to focus the litigation on specific, actionable events. When one strips away the colorful but irrelevant commentary, one is left with a relatively simple dispute: Dixon made accusations; Plaintiff says they are false. That could have been pleaded in a few paragraphs. Instead, we have a convoluted pleading that obscures the core facts and forces

Defendants (and the Court) to sift the wheat from the chaff. Dismissal is warranted on this ground alone, with leave (perhaps) to replead in a coherent fashion—though in this case, repleading would not cure the substantive problems identified in Sections I and II, so dismissal with prejudice is appropriate.

Additionally, as noted, Rule 9(b)'s particularity requirement applies to any allegations of fraudulent misrepresentation or deceit in the Complaint. Plaintiff insinuates that Defendants engaged in a form of extortionate fraud—essentially that they fabricated heinous allegations to extort money from him. While Plaintiff has not labeled a count "fraud," this allegation pervades his narrative and even underpins the claim of malice. Such allegations must be pleaded with particularity. See *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (Rule 9(b) applies when the gravamen of the Complaint is plainly fraud). Here, Plaintiff fails to identify with specificity any misrepresentation beyond the defamatory statements themselves (which we've addressed). If Plaintiff means to allege that Defendants falsely represented an intention to sue (without actually planning to) or falsely represented that they had evidence (when they did not), those are species of fraudulent inducement or false pretenses that require detail. None is provided. Thus, to whatever extent Plaintiff's claims rely on a "fraudulent demand" theory, they should be dismissed under Rule 9(b).

Moreover, as the Second Circuit explained in *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), even though Rule 9(b) allows malice to be alleged generally, that does not save a public-figure plaintiff from the obligation to plead a plausible factual basis for malice under Rule 8. The Plaintiff's attempt to generally aver malice without facts fails, as discussed. In short, the pleading does not pass muster under either Rule 8 or Rule 9(b).

In sum, this Complaint is an archetype of the kind of case that warrants dismissal at the threshold. It is legally insufficient in multiple independent respects and appears to be fueled by ulterior motives rather than a genuine belief in a viable claim. Allowing it to proceed would subject Defendants to costly discovery and protracted litigation over what is, at its heart, an interpersonal feud and smear campaign—the sort of dispute that our courts (and First Amendment jurisprudence) vigilantly guard against turning into a federal case absent compelling circumstances. No such circumstances are present here.

As this very Court has emphasized, "allegations of fraud or malice must be supported by concrete facts, not by conclusory assertions or narrative framing." *Heilbut v. Cassava Scis., Inc.*,

2025 U.S. Dist. LEXIS 56283, at *17–18 (S.D.N.Y. Mar. 31, 2025) (Rochon, J.). In *Heilbut*, the Court denied the Defendant's motion to dismiss an ANTI SLAPP-based claim where the Defendant's defamation lawsuit was dismissed due to their failure to plausibly allege actual malice beyond conclusory speculation. The same deficiency applies here. Plaintiff's failure to plead falsity, intent, and personal knowledge of wrongdoing renders the Complaint deficient under Rules 8 and 9(b) and warrants dismissal on those grounds alone.

## IV.    THE COMPLAINT IS BARRED BY NEW YORK'S ANTI-SLAPP STATUTE

Plaintiff's defamation and emotional distress claims are also barred under New York's anti-SLAPP statute, Civil Rights Law §§ 70-a and 76-a. As amended in 2020, § 76-a provides that a "claim based upon… any communication in a place open to the public or a public forum in connection with an issue of public interest" must be dismissed unless the Plaintiff can establish "actual malice" by clear and convincing evidence. The statute was specifically enacted to deter meritless defamation lawsuits that aim to chill protected speech in matters of public concern.

Here, Plaintiff is a Grammy-nominated celebrity alleging reputational harm from public statements made in connection with litigation and public allegations of sexual abuse, labor exploitation, and trafficking. These are matters of indisputable public interest. The statements at issue were made by a former long-time associate (Defendant Dixon) on Instagram and in legal filings, which constitute "public forums." See *Abitbol v. Rice*, No. 21-cv-7447, 2023 N.Y. Misc. LEXIS 4886, at *30–33 (Sup. Ct. N.Y. Cnty. Feb. 24, 2023) (social media qualifies as a public forum; speech regarding public figures and alleged abuse falls within the statute); see also *Gu v. Verge*, No. 20-CV-7479 (JPC), 2022 NYLJ LEXIS 1843, at *7 (Sup. Ct. N.Y. Cnty. Mar. 25, 2022) (same).

Further, the speech was made in connection with a civil RICO and TVPA lawsuit—*Dixon v. Cartagena*, No. 25-cv-5144 (S.D.N.Y.)—which itself alleged systemic abuse and forced labor. Under settled law, speech related to legal proceedings and matters of social consequence constitutes protected speech under § 76-a. See *Dfinity Found. v. N.Y. Times Co.*, 2024 U.S. App. LEXIS 18619, at *7 (2d Cir. July 15, 2024) (affirming dismissal under anti-SLAPP law where speech was part of "robust public debate on a matter of political, legal, and scientific importance").

Plaintiff, as a public figure, cannot escape the requirement of alleging and ultimately proving actual malice by clear and convincing evidence. He has failed to do so. As explained above, the Complaint is devoid of non-conclusory factual allegations showing that Defendants

knew the challenged statements were false or recklessly disregarded their truth. At most, Plaintiff claims the allegations were false and damaging—but that is not enough under *New York Times Co. v. Sullivan* and its progeny.

Moreover, the case of *Heilbut v. Cassava Scis., Inc.*, 2025 U.S. Dist. LEXIS 56283, at *17–18 (S.D.N.Y. Mar. 31, 2025) (Rochon, J.), reinforces this point. There, this very Court dismissed defamation and fraud claims because the plaintiff "failed to link any specific falsehood to any identified defendant, or to plausibly allege actual malice beyond conclusory speculation." The same reasoning applies here: Plaintiff has not identified specific falsities or alleged actual malice in a non-speculative, plausible manner. Indeed, as in *Heilbut*, the Complaint's failure to isolate actionable statements from constitutionally protected opinion and legal advocacy is fatal.

In light of the above, and consistent with the anti-SLAPP framework adopted in this District, Plaintiff's Complaint must be dismissed in its entirety. Furthermore, Defendants intend to seek recovery of attorneys' fees and costs as permitted under Civil Rights Law § 70-a(1)(a), which allows prevailing defendants in anti-SLAPP proceedings to recover mandatory costs upon dismissal.

<u>**Conclusion**</u>

For the foregoing reasons, Defendants Terrance Dixon, Tyrone Blackburn, and T.A. Blackburn Law, PLLC respectfully request that the Court dismiss the Complaint in its entirety, with prejudice, according to Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b).

The Plaintiff's claims are facially and fatally defective. He fails to plausibly allege actual malice as required for defamation claims by a public figure. The First Amendment protects the statements at issue as non-actionable opinion, rhetorical hyperbole, or privileged litigation-related speech. The intentional infliction of emotional distress claim is duplicative and, in any event, does not allege conduct remotely approaching the "extreme and outrageous" standard required by New York law. Furthermore, the Complaint is rife with conclusory allegations, speculative insinuations, and irrelevant material that fails to meet even the minimal pleading standards of Rules 8 and 9(b).

In short, this lawsuit is not a good-faith invocation of the judicial process but an attempt to chill protected speech and retaliate against Dixon's and his counsel's legitimate legal claims. Allowing this case to proceed would subvert fundamental First Amendment protections and subject the judicial system to abuse.

Accordingly, the Complaint should be dismissed with prejudice, and such other and further relief granted to Defendants as the Court deems just and proper.

Dated: June 23, 2025
Brooklyn, New York

Respectfully submitted,

*/s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Telephone: (347) 342-7432
Email: tblackburn@tablackburnlaw.com