UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Terrance Dixon, a/k/a "TA",<br><br>           Plaintiff,<br><br>v.<br><br>Joseph Antonio Cartagena p/k/a "Fat Joe,"<br>Pete "Pistol Pete" Torres,<br>Richard "Rich Player" Jospitre,<br>Erica Juliana Moreira,<br>Sneaker Addict Touring LLC,<br>Slate, Inc.,<br>Roc Nation, LLC,<br>John Does 1–10, Jane Does 1–10, and<br>ABC Corporations 1–10,<br><br>           Defendants. | Case Number: 25-5144<br><br>**Memorandum of Law In Opposition to Defendant Roc Nations Motion For Sanctions** |

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ROC NATIONS MOTION FOR SANCTIONS

Brief by:
Tyrone A. Blackburn, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT
I. ROC NATION FAILS TO MEET THE HEAVY BURDEN FOR RULE 11 SANCTIONS
   A. Legal Standard Under Rule 11
   B. Roc Nation's Misapplication of the "Frivolousness" Standard
   C. The Safe Harbor Requirement Was Not Met
II. THE COMPLAINT IS NOT FACTUALLY OR LEGALLY FRIVOLOUS
   A. The Factual Allegations Are Supported by a Reasonable Pre-Filing Investigation
   B. Roc Nation's Attempt to Characterize the Claims as "Legally Baseless" Misstates the Law
   C. Disputed Facts Cannot Support Sanctions
III. THE COMPLAINT WAS NOT FILED FOR AN IMPROPER PURPOSE
   A. Filing a Complaint to Seek Redress for Cognizable Legal Wrongs Is Not Improper
   B. The Good-Faith Investigation Undermines Any Inference of Harassment
   C. The Litigation History of Plaintiff's Counsel Is Irrelevant to Rule 11
   D. The Allegations Target Specific Conduct, Not Public Relations Objectives
IV. SANCTIONS UNDER 28 U.S.C. § 1927 ARE UNWARRANTED
   A. The Statute Imposes a High Standard, Not Met Here
   B. Initiating and Maintaining a Lawsuit Supported by a Good-Faith Basis Does Not Constitute "Vexatious" Conduct
   C. The Case's Procedural History Refutes Any Claim of Unnecessary Multiplication of Proceedings
   D. The Presence of Disputed Facts Confirms the Inappropriateness of § 1927 Sanctions
V. THE COURT'S INHERENT AUTHORITY DOES NOT SUPPORT SANCTIONS IN THIS CASE
   A. Inherent Power Sanctions Require a Specific Finding of Bad Faith
   B. The Record Demonstrates Legitimate Litigation Conduct
   C. Public Interest in the Case Does Not Equate to Bad Faith
   D. Using Inherent Power to Sanction Here Would Improperly Chill Legitimate Advocacy
CONCLUSION

# TABLE OF AUTHORITIES

**Cases**

- *Canosa v. Ziff*, 2019 U.S. Dist. LEXIS 13263, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019).
- *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).
- *Egerique v. Chowaiki*, No. 19 Civ. 3110 (KPF), 2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020).
- *Eisemann v. Greene*, 204 F.3d 393 (2d Cir. 2000).
- *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985).
- *Fishoff v. Coty Inc.*, 634 F.3d 647 (2d Cir. 2011).
- *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019).
- *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995).
- *Hough v. Maraj*, 2023 U.S. Dist. LEXIS 207091 (E.D.N.Y. 2023).
- *Huett v. Weinstein Co. LLC*, No. 2:18-cv-6012 (SVW), 2018 U.S. Dist. LEXIS 223736, 2018 WL 6314159 (C.D. Cal. Nov. 5, 2018).
- *In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003).
- *Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010).

- *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002).
- *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34 (2d Cir. 1995).
- *Mir v. Bogan*, 2015 U.S. Dist. LEXIS 39511 (E.D.N.Y. Mar. 27, 2015).
- *Morales v. City of New York*, 2021 WL 8317096 (E.D.N.Y. 2021).
- *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21 (2d Cir. 1995).
- *O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996).
- *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986).
- *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132 (2d Cir. 2002).
- *Quinby v. WestLB AG*, 2005 U.S. Dist. LEXIS 35583 (S.D.N.Y. Dec. 28, 2005).
- *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir. 2000).
- *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999).
- *Simpson v. Putnam Cnty. Nat'l Bank of Carmel*, 112 F. Supp. 2d 284 (S.D.N.Y. 2000).
- *Sorenson v. Wolfson*, 683 F. App'x 33 (2d Cir. 2017).
- *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012).
- *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003).
- *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016).
- *United States v. Applins*, 637 F.3d 59 (2d Cir. 2011).
- *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338 (2d Cir. 1991).
- *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468 (S.D.N.Y. 2018).
- *United States v. Turkette*, 452 U.S. 576 (1981).
- *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009).

**Statutes**
- 18 U.S.C. § 1591(a)(2).
- 18 U.S.C. § 1595(a).
- 28 U.S.C. § 1927.

**Rules**
- Fed. R. Civ. P. 11.
- Fed. R. Civ. P. 11(b).
- Fed. R. Civ. P. 11(c).
- Fed. R. Civ. P. 5.

**PRELIMINARY STATEMENT**

Roc Nation, LLC's motion for sanctions is a transparent attempt to shift the focus from its own alleged misconduct to an unwarranted attack on Plaintiff's counsel. The motion misstates the law, distorts the factual record, and seeks to weaponize Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority as premature substitutes for a merit's determination.

The Complaint in this action—filed after an extensive pre-suit investigation—sets forth detailed, corroborated allegations of Roc Nation's knowing participation in and benefit from an enterprise engaged in racketeering, trafficking, and related unlawful activity. These allegations are supported by multiple witness statements, financial records, and public filings linking Roc Nation and its leadership to the facilitation and concealment of Defendant Cartagena's criminal conduct, which includes, but are not limited to: tax fraud, money laundering, organized crime activities through Terror Squad and closely affiliated groups, sex trafficking, theft of wages and theft of intellectual property.  At minimum, they are more than sufficient to satisfy the "colorable basis" standard that forecloses sanctions at this stage.

Sanctions are an extraordinary remedy, to be exercised with extreme caution and only upon a clear showing of bad faith or objectively unreasonable conduct. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). Roc Nation makes no such showing. Instead, it relies on disputed facts, selective omissions, and ad hominem attacks on counsel—none of which have any bearing on whether the claims themselves are supported by a reasonable factual and legal foundation.

The Second Circuit has made clear that Rule 11 is not a vehicle for resolving factual disputes, § 1927 is not triggered by zealous advocacy, and inherent authority sanctions are reserved for truly egregious abuses of the judicial process. None of those conditions are present here. What is present is a high-profile defendant seeking to chill litigation by punishing its opponent for bringing serious allegations into a public forum. That is precisely what the sanctions rules are designed to prevent.

For the reasons set forth below, the Court must deny Roc Nation's motion in its entirety.

**I.  ROC NATION FAILS TO MEET THE HEAVY BURDEN FOR RULE 11 SANCTIONS**
    A.  <u>Legal Standard Under Rule 11</u>

Rule 11 sanctions are a drastic remedy, reserved for those rare cases in which a pleading is patently frivolous" and "utterly lacking in evidentiary support. *Eastway Constr. Corp. v. City of*

4

*New York*, 762 F.2d 243, 254 (2d Cir. 1985). *Eastway* emphasized that sanctions are not appropriate where a claim has any colorable legal or factual basis.

The Second Circuit has provided clear guidance on the narrow scope of Rule 11. A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification[,] or reversal of existing law. *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal quotation marks omitted). Rule 11 is violated where it is patently clear that a claim has absolutely no chance of success under the existing precedents. *Eastway*, 762 F.2d at 254, superseded on other grounds by rule; see also *Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017) (summary order); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (per curiam) (applying an objective unreasonableness standard). As the Second Circuit has further explained, [t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable. The operative question is whether the argument is frivolous, i.e., the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.' *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (first citing *Kropelnicki*, 290 F.3d at 131, and then quoting *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)).

The Complaint in this case is the product of an extensive, good-faith pre-suit investigation. It contains detailed factual allegations supported by specific names, dates, locations, witness accounts, and corroborating documents. As it pertains to Roc Nation, Plaintiffs' counsel spoke with and retained Roc Nations former accountant who corroborated Plaintiff's claim that Roc Nation, and its CEO, Desiree Perez, was directly involved in all aspects of Joseph Cartagena's business, controlled his tours and bookings, negotiated the price for his appearances, and even assigned a manager whom Plaintiff, and the other Roc Nation employees had to report to.

Roc Nation was aware of Defendant Cartagena's intentional theft of Plaintiffs wages. So much so, that their employee called plaintiff informing him of a $30,000 per performance contract Plaintiff was supposed to be paid. Plaintiff informed him that he had never received the payments and was paid less than $1000.00 per show. These particulars demonstrate far more than the conclusory or speculative pleading that Rule 11 seeks to deter. In addition, Rule 11(b)(3) expressly permits allegations that will likely have evidentiary support after a reasonable opportunity for

5

further investigation or discovery. Courts in this Circuit routinely deny sanctions when, as here, the allegations are credibly grounded and await confirmation through discovery.

Moreover, sanctions may not be imposed under Rule 11 unless the nonmovant has been given the opportunity … to correct or withdraw the challenged submission. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003). This opportunity is guaranteed by the "safe harbor" provision of Rule 11, which requires initial service of the motion but delays filing or presentation of the motion to the court for 21 days, permitting filing only if the challenged submission has not been withdrawn or adequately corrected within that period. Id. at 89; see also *Star Mark Mgmt.*, 682 F.3d at 175; *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995). The Second Circuit has deemed this a strict procedural requirement, the violation of which mandates denial of sanctions. See *Egerique v. Chowaiki*, No. 19 Civ. 3110 (KPF), 2020 WL 1974228, at *29 (S.D.N.Y. Apr. 24, 2020) (citing *Star Mark Mgmt.*, 682 F.3d at 175). Defendant Roc Nation failed to sever the memorandum of law for their motion for sanctions prior to filing, therefore they failed to meet their Rule 11 safe harbor requirements.

B.  Roc Nation's Misapplication of the "Frivolousness" Standard

Roc Nation's claim that the Complaint is "frivolous" rests on the flawed premise that its connection to the alleged RICO enterprise is implausible. The pleading sets forth specific acts by Roc Nation personnel, including the coordination of financial cover-ups, the laundering of illicit proceeds through corporate accounts, and the provision of resources to conceal ongoing criminal conduct.

Multiple witnesses corroborate Roc Nation's role. These include a former Roc Nation accountant who provided firsthand information of financial fraud, unreported transactions, and direct communications between Roc Nation executives and Defendant Cartagena to protect him from legal exposure. This also include direct statements and evidence from multiple former managers of Defendant Cartagena who provided evidence and information concerning his intentional and criminal deceptive acts, including but not limited to lying to the IRS after serving time in prison for tax fraud by intentionally omitting assets and cash from his mandatory disclosures. Roc Nation and their executives were fully aware of this at the time. In fact, and upon information and belief, Defendant Cartagena is not the only client or employee of Roc Nation who employs the same voodoo accounting principles to evade taxes – there are many others! The Second Circuit has made clear that sanctions are not a vehicle for resolving factual disputes or

6

weighing competing inferences. See *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003). Roc Nation's contrary interpretation of the facts is a merits defense which warrants discovery (something Roc Nation should want to avoid at all costs), not a basis for sanctions.

    C. <u>The Safe Harbor Requirement Was Not Met</u>

Rule 11(c)(2) requires that a sanctions motion be served under Rule 5 and not filed if the challenged paper is withdrawn or corrected within 21 days. Compliance with this "safe harbor" provision is mandatory. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012). Roc Nation failed to satisfy this prerequisite.

The motion was not served twenty-one days before filing, depriving Plaintiff of the statutory opportunity to amend or withdraw the challenged pleading. This procedural defect is independently fatal to the motion. See *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002). The Court need not reach Roc Nation's substantive arguments because its failure to comply with the safe harbor provision compels denial.

II. **<u>THE COMPLAINT IS NOT FACTUALLY OR LEGALLY FRIVOLOUS</u>**
    A. <u>The Factual Allegations Are Supported by a Reasonable Pre-Filing Investigation</u>

The allegations against Roc Nation are not speculative conjecture, but the product of a targeted investigation yielding specific, corroborated facts. The Complaint details how Roc Nation, through its leadership and personnel, coordinated with Defendant Cartagena to launder illicit proceeds, shield criminal activity from law enforcement scrutiny, and provide operational cover for the enterprise.

These allegations are anchored in direct witness testimony, including statements from Roc Nation's former in-house accountant, who personally observed unreported transactions, off-book payments, shell companies created by lawyers who are not authorized to practice law in any jurisdiction, and deliberate financial maneuvers designed to conceal illicit income. Multiple other witnesses have corroborated the same pattern of conduct, providing details of meetings, communications, and financial transfers of which we have the account numbers.

Rule 11 is not violated where a plaintiff relies on credible witness accounts and available documentation, even if some details remain to be confirmed through discovery. See *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (sanctions inappropriate where allegations are based on evidence reasonably believed to be true). The facts alleged here not only satisfy that standard—they exceed it.

B.  Roc Nation's Attempt to Characterize the Claims as "Legally Baseless" Misstates the Law

The Complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act, the Trafficking Victims Protection Act, and related state-law theories. Each of these statutes has been interpreted broadly to encompass indirect participants who facilitate the enterprise's illegal objectives. See *United States v. Turkette*, 452 U.S. 576, 583 (1981) (RICO applies to both legitimate and illegitimate enterprises); *United States v. Applins*, 637 F.3d 59, 74 (2d Cir. 2011) (RICO liability extends to those who play a part in directing enterprise affairs).

The factual allegations place Roc Nation squarely within the scope of potential liability by alleging that its executives knowingly engaged in conduct designed to further the enterprise's goals, including financial structuring, concealment of proceeds, and facilitation of cover-ups following acts of trafficking and exploitation. Roc Nation's position—that only direct perpetrators can be liable—is contrary to established law.

Unlike direct perpetrators of sex trafficking, aiders and abettors of sex trafficking are liable under the TVPA only if they knowingly benefit, financially or by receiving anything of value, from participation in a venture which has engaged in sex trafficking. 18 U.S.C. §§ 1591(a)(2), 1595(a) (emphasis added). The participation giving rise to the benefit must be participation in a sex-trafficking venture—not participation in other activities engaged in by the traffickers that do not further the sex-trafficking aspect of their venture. *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (§ 1591(a)(2) targets those who participate in sex trafficking; it does not target [those] who turn a blind eye to the source of their financial sponsorship). In other words, there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship.

Similarly, the TVPA's civil remedy provisions reach those who knowingly benefit, financially or otherwise, from participation in a venture that engages in trafficking, provided they knew or should have known of the venture's conduct. 18 U.S.C. § 1595(a). In *Canosa v. Ziff*, the court held that allegations that corporate defendants facilitated Harvey Weinstein's misconduct as a means of keeping him happy, productive, and employable adequately alleged that the companies achieve[d] fame and reap[ed] financial benefits by keeping him as an employee. 2019 U.S. Dist. LEXIS 13263, 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019). By contrast, in *Huett v. Weinstein Co. LLC*, No. 2:18 Civ. 6012 (SVW), 2018 U.S. Dist. LEXIS 223736, 2018 WL

8

6314159, at *2–3 (C.D. Cal. Nov. 5, 2018), the court allowed a similar TVPA claim to proceed against TWC without needing to parse the benefits element because plaintiff alleged direct perpetrator liability under § 1591(a)(1). *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019), likewise recognized the viability of such claims when the factual allegations plausibly connect a defendant's conduct to a sex-trafficking venture's ongoing operations and financial benefits.

The Complaint here alleges precisely that: Roc Nation benefited from Defendant Cartagena's continued commercial viability while being aware of his underlying conduct, and its executives undertook affirmative acts—financial, structural, and reputational—that furthered the venture's sex-trafficking activities. These allegations state a legally cognizable claim under §§ 1591(a)(2) and 1595(a) and are far from frivolous.

 C. <u>Disputed Facts Cannot Support Sanctions</u>

Roc Nation's argument relies heavily on disputing Plaintiff's version of events. Such disputes are matters for discovery and trial, not sanctions. The Second Circuit has repeatedly cautioned that Rule 11 does not permit district courts to resolve factual disputes or assess the credibility of a party's evidence. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003). With regard to factual contentions, sanctions may not be imposed unless a particular allegation is utterly lacking in support. *Id.* (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (interpreting the 1993 amendment to Rule 11(b))). Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement. *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) (citations omitted).

Moreover, the Second Circuit has instructed that factual contentions should not be read in isolation. Rather, they must be considered together to avoid drawing an improper inference of an unwarranted contention from fragmented facts. *Storey*, 347 F.3d at 388 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (reviewing sanctions under inherent power and § 1927 and noting that "the facts in their totality belie the conclusion that [plaintiffs'] claim lacked a colorable basis")).

The existence of competing narratives does not render a claim frivolous. To the contrary, it confirms the appropriateness of allowing the case to proceed through the normal adversarial process. Sanctions are not a substitute for summary judgment, and Rule 11 should not be weaponized as a premature merit's determination.

III. **THE COMPLAINT WAS NOT FILED FOR AN IMPROPER PURPOSE**
    A. Filing a Complaint to Seek Redress for Cognizable Legal Wrongs Is Not Improper

Roc Nation asserts that the Complaint was filed to harass or embarrass rather than to vindicate legitimate legal claims. This contention is both unfounded and contrary to the record. The Second Circuit has consistently held that [t]he mere fact that an action is filed against a party, even where hostility exists between the parties, does not establish an improper purpose under Rule 11. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003). The relevant inquiry is whether the filing was objectively unreasonable in light of the facts and law, not the filer's subjective intent.

The Complaint in this case is grounded in well-supported allegations of racketeering, trafficking, and related misconduct that fall squarely within the jurisdiction of this Court and the scope of the cited statutes. Seeking judicial redress for such harms is precisely the purpose for which civil litigation exists.

    B. The Good-Faith Investigation Undermines Any Inference of Harassment

Before filing, Plaintiff's counsel undertook a substantial pre-suit investigation that included:

- Interviews with multiple witnesses possessing direct knowledge of the events;
- Review of financial documents, public records, and corporate filings; and
- Corroboration of factual allegations through independent sources.

This diligence is inconsistent with any suggestion that the lawsuit is a baseless attack. Courts have found that such efforts demonstrate good faith and defeat improper purpose claims. See *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (reversing sanctions where allegations followed a reasonable investigation).

    C. The Litigation History of Plaintiff's Counsel Is Irrelevant to Rule 11

Roc Nation attempts to bolster its improper purpose theory by referencing other cases involving Plaintiff's counsel. This is legally irrelevant. Rule 11 focuses on the conduct in the case at bar, not on generalized characterizations of counsel's practice. See *Simpson v. Putnam Cnty. Nat'l Bank of Carmel*, 112 F. Supp. 2d 284, 291 (S.D.N.Y. 2000) (declining to impose sanctions based on unrelated matters).

Moreover, courts in this Circuit have cautioned against allowing ad hominem attacks on counsel to substitute for substantive legal analysis. The merits of the claims here must be judged on the pleadings and facts in this action alone. Roc Nation knows they cannot defend the illegal

accounting principles they pedal for themselves, their clients and their employees, so rather than address the substantive claims in the compliant, they spend their time scouring pacer to dig up dirt on plaintiffs' counsel. The Court should not be fooled by this.

### D. The Allegations Target Specific Conduct, Not Public Relations Objectives

Roc Nation's insinuation that the Complaint was intended to generate media coverage or inflict reputational harm ignores the targeted, fact-specific nature of the allegations. Each claim corresponds to a defined statutory cause of action and is supported by detailed factual averments. The presence of public interest in a case does not make its filing improper; if it did, civil rights and high-profile corporate misconduct suits would routinely be chilled.

Finally, Roc Nation need not look too far to figure out who ginned up the publicity for this case. Defendants counsel, Joeseph Tacopina and his partner, Harvey from TMZ orchestrated a baseless media campaign surrounding this case, not Plaintiff counsel.

## IV. SANCTIONS UNDER 28 U.S.C. § 1927 ARE UNWARRANTED

### A. The Statute Imposes a High Standard, Not Met Here

Section 1927 is highly punitive and is to be strictly construed. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1344 (2d Cir. 1991). Under 28 U.S.C. § 1927, [a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

To impose sanctions under this provision, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith — that is, 'motivated by improper purposes such as harassment or delay.' *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)); see also *Int'l Bhd.*, 948 F.2d at 1345 (holding that § 1927 looks to unreasonable and vexatious multiplications of proceedings and imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics).

A claim is brought in bad faith only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (reversing sanctions award; quotation omitted). The bad faith standard is interpreted restrictively: To ensure … that fear of an award of attorneys' fees against them will not deter persons with colorable claims from

11

pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts.

The Second Circuit has held that an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay. *Id.* (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)); see also *Mir v. Bogan*, 2015 U.S. Dist. LEXIS 39511, at *62 (E.D.N.Y. Mar. 27, 2015).

Negligence, poor judgment, or even weak claims are insufficient. The record here contains no such clear showing. Plaintiff's counsel pursued claims based on substantial factual detail, corroborating witness statements, and documentary evidence. There is no indication that the litigation was intended to cause unnecessary delay or that counsel engaged in any multiplication of proceedings prohibited by § 1927.

    B. <u>Initiating and Maintaining a Lawsuit Supported by a Good-Faith Basis Does Not Constitute "Vexatious" Conduct</u>

Courts in this Circuit have repeatedly rejected § 1927 sanctions where counsel merely advocates for their client's position, even aggressively, so long as the claims have a colorable basis. See *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (An attorney's conduct is not 'vexatious' within the meaning of § 1927 simply because it results in costs to the opposing party.). The detailed RICO and TVPA allegations in the Complaint—supported by named witnesses, specific dates, and financial transaction evidence—are far from meritless.

    C. <u>The Case's Procedural History Refutes Any Claim of Unnecessary Multiplication of Proceedings</u>

Roc Nation identifies no frivolous motions, baseless discovery demands, or dilatory tactics that would qualify as an unreasonable and vexatious multiplication of proceedings. This action was filed in federal court, proceeded under the standard litigation schedule, and has not been the subject of repetitive or obstructive motion practice. Absent such a record, § 1927 sanctions are unavailable. See *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (no sanctions absent evidence that counsel acted in bad faith to multiply proceedings).

D. <u>The Presence of Disputed Facts Confirms the Inappropriateness of § 1927 Sanctions</u>

Where the case turns on factual disputes—particularly those involving witness credibility and intent—courts are especially reluctant to impose § 1927 sanctions. This case presents precisely those disputes: whether Roc Nation knowingly facilitated the enterprise's activities is a quintessential question of fact for discovery and trial, not a predicate for punitive sanctions.

V. **<u>THE COURT'S INHERENT AUTHORITY DOES NOT SUPPORT SANCTIONS IN THIS CASE</u>**

A. <u>Inherent Power Sanctions Require a Specific Finding of Bad Faith</u>

Sanctions imposed under the Court's inherent authority are appropriate only when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose. *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). This power is to be exercised with "restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78–79 (2d Cir. 2000). The question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (emphasis in original); see also *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 479 (S.D.N.Y. 2018). An attorney has made a "reasonable inquiry" so long as the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. *Quinby v. WestLB AG*, 2005 U.S. Dist. LEXIS 35583, at *13–14 (S.D.N.Y. Dec. 28, 2005). Furthermore, a showing of bad faith is required to impose sanctions under Section 1927. *Id.* (citing *Oliveri*, 803 F.2d at 1265) ([I]mposition of a sanction under Section 1927 requires a clear showing of bad faith.).

The Second Circuit notes that it has declined to uphold awards under the bad-faith exception absent both 'clear evidence' that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' and a high degree of specificity in the factual findings of [the] lower courts. *Id*. at 1272. W*olters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114-15 (2d Cir. 2009) (absent other specific evidence of Dorsey's bad faith, a sanction under the court's inherent power is unjustified); *Milltex Indus. Corp. v.*

13

*Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir.1995) ([T]he court's factual findings of bad faith must be characterized by a high degree of specificity.) (internal quotation marks omitted).

Here, there is no factual or legal basis for a finding of bad faith. The Complaint is not a collection of conclusory accusations—it contains granular details of Roc Nation's involvement in specific predicate acts, supported by witness statements and documentary references. Filing a well-supported complaint to vindicate statutory rights is the antithesis of bad faith, and the record provides no basis for concluding that counsel acted with any improper purpose.

B. <u>The Record Demonstrates Legitimate Litigation Conduct</u>

Every procedural step in this case has been consistent with the Federal Rules of Civil Procedure and with counsel's duty of zealous advocacy. The action was filed after a thorough pre-suit investigation, including corroborated witness interviews, review of corporate records, and analysis of financial transactions linked to illicit conduct. Such diligence is inconsistent with the abuse of process that inherent power sanctions are designed to deter.

Courts in this Circuit have repeatedly refused to use inherent authority where Rule 11 or § 1927 sanctions are unwarranted, recognizing that inherent power is not a fallback sanctioning device. See *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).

C. <u>Public Interest in the Case Does Not Equate to Bad Faith</u>

Roc Nation's suggestion that the Complaint was filed to generate media attention misapprehends the law. Public interest often accompanies litigation involving high-profile parties or allegations of systemic misconduct, but this does not imply an improper motive. See *Int'l Bhd. of Teamsters*, 948 F.2d at 1345 (declining to infer bad faith from the high-profile nature of the case). The attention here is a natural consequence of the serious allegations, not evidence of sanctionable intent.

D. <u>Using Inherent Power to Sanction Here Would Improperly Chill Legitimate Advocacy</u>

The Second Circuit has cautioned that overuse of inherent authority sanctions risks chilling advocacy, particularly in cases alleging corporate or institutional misconduct. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999). The court has described the determination as to whether to impose sanctions as one of the most difficult and unenviable tasks for a court. *Id.* at 341. On the one hand, a court should discipline those who harass their opponents and waste judicial resources by abusing the legal process. On the other hand, in our adversarial

system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules. *Id.*

It is in keeping with this high bar—one that disallows sanctions absent clear, direct evidence of intentional abuse—that courts decline to impose such measures. See *Hough v. Maraj*, 2023 U.S. Dist. LEXIS 207091, at *17 (E.D.N.Y. 2023) (quoting *Morales v. City of New York*, 2021 WL 8317096, at *6, for the principle that it is in keeping with the high bar disfavoring the award of sanctions that the court denied sanctions). Imposing sanctions here, in the absence of unambiguous proof of bad faith, would deter attorneys from pursuing factually supported but contested claims—a result wholly at odds with the function of the courts.

## CONCLUSION

Roc Nation's motion for sanctions rests on a fundamental mischaracterization of the Complaint and an improper attempt to convert vigorously disputed factual and legal issues into a basis for punishment. Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority each impose stringent standards—requiring clear evidence of frivolousness or bad faith—that are wholly absent here.

The Complaint is grounded in substantial factual investigation, including corroborated witness statements, financial documentation, and detailed allegations tying Roc Nation to the enterprise's unlawful conduct. Every claim asserted is supported by a good-faith basis in fact and law, and the litigation has been conducted in accordance with the Federal Rules. The mere fact that Roc Nation disputes the allegations or resists the litigation's implications does not transform this action into a sanctionable abuse of process.

To grant sanctions under these circumstances would not only contravene controlling precedent but would also risk chilling legitimate advocacy in cases alleging serious corporate misconduct. The Court should decline to wield its sanctioning powers where the record demonstrates diligent investigation, colorable legal theories, and active disputes requiring resolution through the adversarial process.

For these reasons, Plaintiff respectfully requests that the Court deny Roc Nation, LLC's motion for sanctions in its entirety.

Dated: August 8, 2025
Brooklyn, New York

*/s/Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.

15