

# T. A. Blackburn Law

**TYRONE A. BLACKBURN**
_____
MEMBER OF
NY & NJ BAR
_____
FEDERAL MEMBERSHIP
EDNY, SDNY, NDNY & DNJ
_____
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

October 2, 2025

VIA ECF
The Honorable Jennifer L. Rochon, USDJ
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

**Re:** *Joseph Cartagena v. Terrance Dixon, Tyrone Blackburn, and T.A. Blackburn Law, PLLC*
Case No. 1:25-cv-03552 (JLR)

Dear Judge Rochon:

Defendants Terrance Dixon, Tyrone Blackburn, and T.A. Blackburn Law, PLLC respectfully submit this response to Plaintiff's September 18, 2025, letter (ECF 57), which is nothing more than an improper sur-reply cloaked as a sanctions request. The letter should be disregarded in its entirety.

1. **Improper Sur-Reply.**
Plaintiff's submission is procedurally improper. The Federal Rules of Civil Procedure and this Court's Individual Practices do not permit sur-replies absent leave of Court. Plaintiff's letter reargues the merits of Defendants' Reply, disparages defense counsel, and improperly seeks to expand the record. Courts in this District routinely reject such back-door sur-replies, and the Court should do so here.

2. **Compliance with the Court's Directive and Continuing Duty to Correct.**
Defendants complied with this Court's September 10, 2025, Order (ECF 55), which directed that inaccuracies in the Opening Brief be addressed in reply. Defendants did exactly that, explaining the citation errors, identifying the necessary corrections, and clarifying the record so that the Court could evaluate the motion to dismiss on an accurate basis.

 347-342-7432    ✉ tblackburn@tablackburnlaw.com    🌐 TABlackburnlaw.com



Defendants researched more than 30 cases to support their motion to dismiss. As explained below, defense counsel had recently renewed his LexisNexis subscription, which included upgraded AI-assisted features, as explained in counsel's affidavit. Unfortunately, those new features mismatched several of the selected cases with incorrect reporters and citations. Once these discrepancies came to light, I acted promptly: I identified the errors and wrote a letter to the Court explaining the same. Following the Court's directive, the explanation was provided in Defendant Counsel's Reply brief affidavit. I also provided the Court with a corrected Memorandum of Law and have now supplemented the record with copies of the correct cases, which are attached to this letter. A hard copy of the corrected authorities will also be delivered to chambers. (**Exhibit A**).

Furthermore, Defendants acted in accordance with well-established precedent, which holds that attorneys are under a continuing duty to correct erroneous filings. *In re Green*, 422 B.R. 469, 472 (Bankr. S.D.N.Y. 2010). As this Court has emphasized, "[l]awyers are under a continuing duty to correct or withdraw litigation positions based on matters that subsequently come to their attention." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 482 (S.D.N.Y. 2003), aff'd, 426 F.3d 549 (2d Cir. 2005). Thus, the appropriate time to correct the record was as soon as counsel learned of any mistake, not at oral argument. See *Google LLC v. Starovikov*, 2022 U.S. Dist. LEXIS 207437, 2022 WL 16948296, at *13 (SDNY 2022) (attorney must "promptly correct any unintentional misrepresentations made to the court").

The Supreme Court has similarly recognized that an attorney has a "'continuing duty to inform the Court of any development which may conceivably affect the outcome' of the litigation." *Bd. of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (quoting *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring)); see also *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 197, 202 (S.D.N.Y. 2007). The defendants' corrective filing was not only appropriate but also required by these authorities.

3. **Copyright Records Are Relevant.**

Plaintiff's assertion that the U.S. Copyright Office records (ECF 56-3) are "wholly irrelevant" is incorrect. Plaintiff's complaint alleges that Defendant Dixon defamed him by falsely claiming authorship and performance credit on three songs. The Copyright Office records directly





refute that allegation and confirm Dixon's co-authorship and performance rights. Such records are properly considered at the motion to dismiss stage because they are official public records that directly undermine Plaintiff's claim.

4. **Sanctions Are Unwarranted.**

Plaintiff's attempt to relitigate unrelated matters and recycle accusations about defense counsel's conduct in other cases is improper and irrelevant. The record here demonstrates the Defendants' good-faith effort to correct technical errors and present documentary evidence that disproves the Plaintiff's claims. There is no basis for sanctions, let alone an award of attorneys' fees.

5. **Explanation of Citation Errors.**

I recently adopted upgraded legal research tools, including LexisNexis Protege and Westlaw CoCounsel. The Protege tool generated suggestions and citation fields that I mistakenly incorporated without fully verifying the quotation formatting and attribution. Unwisely, I had unquestioningly trusted the accuracy of these platforms, having used them throughout my law school and professional career. I had no reason to doubt the accuracy of this product.

Since discovering these issues in *Jakes v. Youngblood*, I have conducted a thorough audit of all active case filings generated since using these upgraded subscriptions and have begun correcting any citation or formatting errors identified through those audits.

In addition to these audits and corrections, I have completed continuing legal education (CLE) courses to better understand the implications of artificial intelligence in legal drafting, including:

| Course Title | Date Completed | CLE Credits | Category |
|---|---|---|---|
| Catching Up to AI Ethically: How the Existing Ethics Rules Apply to Artificial Intelligence | 7/18/2025 | 1 | Ethics & Professionalism |
| Artificial Intelligence and Legal Practice | 7/18/2025 | 1.25 | Areas of Professional Practice |
| AI is Changing the Legal Profession but not Your Ethical Duties [CC] | 7/18/2025 | 1 | Ethics & Professionalism |





| Generative Artificial Intelligence and Legal Ethics | 8/5/2025 | 1 | Ethics & Professionalism |
| --- | --- | --- | --- |
| Ethical Use of AI: Risks, Responsibilities, and Realities for Lawyers | 8/6/2025 | 1 | Ethics & Professionalism |
| The Impact of Artificial Intelligence on Employment Litigation | 8/6/2025 | 1 | Areas of Professional Practice |
| ChatGPT Demystified: Understanding the AI Revolution in the Legal Profession | 8/8/2025 | 1 | Areas of Professional Practice |
| ChatGPT Generative AI and the Transformation of the Practice of Law | 8/8/2025 | 1 | Law Practice Management |
| Ethics for Small Firm & Solo Practitioners: Common Challenges and Careful Compliance | 8/8/2025 | 1 | Ethics & Professionalism |
| GDPR Compliance for Law Firms and Solo Practitioners | 8/8/2025 | 1.5 | Cybersecurity, Privacy & Data Protection-General |
| Artificial Intelligence and ChatGPT: Uses, Abuses, and Ethical Standards | 8/7/2025 | 1 | Cybersecurity, Privacy & Data Protection-General |

**Total Credits Earned: 11.75**

I have also registered for additional CLEs addressing AI ethics, legal research accuracy, and best practices for solo practitioners. What happened in this filing is that I pulled the correct cases, as evidenced by the corrections provided in my Reply affidavit, but the Protege app attributed the wrong case with the wrong citation.

This is a developing issue in the legal profession. Even respected judges have withdrawn rulings after unknowingly relying on AI-generated citations—such as Judge Julien Neals in *In re CorMedix Securities Litigation* and Judge Henry Wingate in the Southern District of Mississippi. To date, nearly 400 documented incidents of AI-generated citation errors have been reported, affecting judges, experts, counsel, and pro se litigants alike. These incidents demonstrate that such



errors are not acts of misconduct, but challenges emerging from rapidly evolving technology. There is no escaping AI, as I have even attempted to revert my subscriptions back to pre-AI platforms without success.

I do not raise this to deflect blame, but to provide context. I did not willfully submit false citations.

6. **Mischaracterization of Facey v. Fisher.**
Plaintiff has implied to this Court that I was sanctioned in *Facey v. Fisher* for citation or quotation errors similar to those raised here—an insinuation that is false.

In *Facey v. Fisher*, one of my pro bono cases, I represent an African American woman who credibly accused her former counsel, Liane Fisher, of fraud, negligence, and conversion of her $89,000 settlement. Defendant Fisher gave Plaintiff Facey a check that bounced, made a wire transfer that was rejected due to insufficient funds, and caused Ms. Facey to be surrounded by law enforcement in her bank as they suspected her of attempting to cash a stolen check. While in the bank, Ms. Facey called Ms. Fisher begging for help. Ms. Fisher yelled at her to try cashing the check again (which was rejected again) and hung up when Ms. Facey explained it had failed a second time.

This was not an isolated error but intentional misconduct: Ms. Fisher knowingly rejected a bank alert confirming whether the check was authorized. Her conduct was so egregious that the bank branch manager, who had called law enforcement, instead instructed Ms. Facey to make a police report against Ms. Fisher. When Fisher later attempted a wire transfer, it was again rejected for insufficient funds—freezing Ms. Facey's account for nearly 60 days under suspicion of money laundering. During this time, in the middle of winter, Ms. Facey was unemployed, unable to pay rent or purchase food, and could barely care for her three adolescent children. Tragically, Ms. Facey, who was pregnant, suffered a miscarriage that her medical provider attributed to the stress caused by Fisher's actions.

The *Facey* sanctions order did not rest on citation or quotation issues. Instead, the Court imposed sanctions because: (a) I did not withdraw the complaint after my client was eventually compensated; (b) I did not affirmatively notify the Court of a federal judge's order compelling Fisher to deliver the settlement check; and (c) the Court concluded the complaint was "malicious"



and aimed at embarrassing Fisher. I vehemently refute these conclusions and have initiated the appeal process. I was under no obligation to withdraw a lawsuit where Ms. Fisher's misconduct caused damages well beyond the $89,000 settlement, including the miscarriage.

By misrepresenting the basis of the *Facey* sanctions—and suggesting the alleged misconduct in that case was analogous to citation issues here—Plaintiff distorts the record and attempts to leverage an intentionally deceptive comparison.

**Conclusion**

For these reasons, Defendants respectfully request that the Court deny Plaintiff's request to strike Defendants' Reply attachments, disregard Plaintiff's improper sur-reply, and reject Plaintiff's request for sanctions.

Respectfully,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

CC: All attorneys of record via ECF.




347-342-7432    tblackburn@tablackburnlaw.com    TABlackburnlaw.com