1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK

2    ------------------------------x

3    JOSEPH CARTAGENA,

4                    Plaintiff,

5            v.                           25 CV 3552 (JLR)

6    TERRANCE DIXON, et al.,

7                    Defendants.          Conference
                                          (via Microsoft Teams)

8    ------------------------------x
     TERRANCE DIXON, also known

9    As TA,

10                   Plaintiff,

11           v.                           25 CV 5144 (JLR)

12   JOSEPH ANTONIO CARTAGENA,
     Personally known as Fat Joe,

13   Et al.,

14                   Defendants.
     ------------------------------x

15

16
                                          New York, N.Y.
17                                        August 1, 2025
                                          9:30 a.m.
18
     Before:
19
                     HON. JENNIFER L. ROCHON,
20
                                          District Judge
21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

1                          APPEARANCES

2    TACOPINA SEIGEL & DeOREO P.C.
          Attorneys for Plaintiff Cartagena
3    BY:  CHAD SEIGEL
          MATTHEW DeOREO
4         -and-
     REED SMITH LLP
5    BY:  JORDAN W. SIEV
          IAN M. TURETSKY
6
     TYRONE BLACKBURN
7         Attorney for Defendants

8    QUINN EMANUEL URQUHART & SULLIVAN LLP
          Attorneys for Defendant Roc Nation, LLC
9    BY:  JOANNA E. MENILLO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Case called)

 2              THE COURT:  Thank you.  Good morning.  If you're not

 3    speaking, if you could mute yourself, that would be helpful.

 4              We are here for this initial pretrial conference in

 5    this matter, through Microsoft Teams through video conference.

 6    Court proceedings are public proceedings, and therefore there

 7    is a listen-only line for anyone who wishes to join.  We may or

 8    may not know who joins or when they join, but please presume

 9    that this is an open forum.

10              I have on the line my clerk.  I also have a court

11    reporter who is transcribing these proceedings.

12              As a reminder to all, no one other than court

13    personnel may record, rebroadcast, or disseminate the

14    proceedings.

15              Let me now take appearances.  In the Cartagena v.

16    Dixon case, who is representing Mr. Cartagena?

17              MR. SEIGEL:  I am, your Honor.  Good morning.  This is

18    Chad Seigel on behalf of Joseph Cartagena.  Seated with me is

19    my colleague, Matt DeOreo.  Both of us are from Tacopina &

20    Seigel.  With us as well are our cocounsel from Reed Smith,

21    Jordan Siev and Ian Turetsky.

22              THE COURT:  Thank you very much, Mr. Seigel.

23              Who is representing defendants in the Cartagena v.

24    Dixon case?

25              MR. BLACKBURN:  Tyrone Blackburn, your Honor.  Good
```

1     morning.

2             THE COURT:  Good morning, Mr. Blackburn.

3             Who else do I have appearing via camera, please?

4             MS. MENILLO:  Good morning, your Honor, this is Joanna

5     Menillo of Quinn Emanuel on behalf of Roc Nation in the second

6     filed action, Dixon v. Cartagena, *et al.*

7             THE COURT:  Thank you very much.

8             Is there anybody else representing any defendants in

9     the Dixon v. Cartagena matter?

10            MS. MENILLO:  Your Honor, Roc Nation wasn't served,

11    but obviously we waive service by filing a motion to dismiss.

12    I don't believe any other defendant has been served in that

13    case.

14            THE COURT:  Thank you.

15            Mr. Turetsky, who are you here representing?

16            MR. TURETSKY:  Mr. Cartagena as well.  I'm with Reed

17    Smith, colleagues with Mr. Siev, Mr. DeOreo, and Mr. Seigel.

18            THE COURT:  Thank you.  I think that was relayed to

19    me, so thank you very much.

20            I see you, Mr. Siev, as well.

21            We are here for an initial pretrial conference on

22    Cartagena v. Dixon.  I had placed both conferences together,

23    given some of the overlap in counsel, but let me just tee up

24    procedurally where we are.

25            Before I do that, though, we are here by video

1    conference at the request of the parties for their convenience,

2    and I'm happy to do so.  Thank you for your accommodation in

3    sort of adjusting the timing for both of these conferences.

4          It strikes me that the first action -- I'll use the

5    nomenclature that was relayed by the parties in the letter that

6    was filed by Reed Smith on July 22.  It strikes me that the

7    first action is ripe for an IPTC here.  It may not necessarily

8    be the case for the second action because service has not been

9    completed.

10          Let first just address the first action, and then we

11   will get to the second afterwards, but likely we will be

12   rescheduling an initial pretrial conference to commence

13   discovery in that case at a subsequent date, but I'm glad

14   everyone is here today so that we can get a few things in

15   order.

16          In terms of the first action, generally how I proceed

17   with my initial pretrial conferences is that I hear a little

18   bit from plaintiff's counsel about what the case is about.  I

19   have the information that has been filed, including the letter

20   and the pleadings, but it helps me to hear directly from

21   counsel a little bit about the case from your client's

22   perspective, anything you wish to share, and then I'll hear

23   from defense counsel a bit about the case from defense

24   counsel's perspective.

25          Then we will talk about the case management plan that

1    has been submitted here to me.

2        I think there is also a motion that has been filed

3    with respect to staying or dismissing the second action without

4    prejudice to refiling the claims as counterclaims or

5    designating the cases as related, so we will deal with that

6    request.

7        And then we usually talk about if there is anything I

8    can do to facilitate any settlement discussions, so we will

9    address that.  And then I intend to move to the second action

10   and just talk about procedurally where we are with the second

11   action.

12       I'm happy then also to talk about anything the parties

13   think we need to discuss at this conference as well.

14       Why don't we then start with you, Mr. Seigel.  Why

15   don't you tell me a little bit about plaintiff's case in the

16   first action.

17       MR. SEIGEL:  Sure, your Honor.

18       I think it would be important to note at the outset

19   that the first action is related to the second action.  The

20   reason I note that is because in our letter to the Court, dated

21   July 22, we pointed out that the second action arose from an

22   allegation that our client, Mr. Cartagena, failed to provide

23   Dixon with royalty payments.  And the reason that backdrop is

24   important is, it provides context to the first action.

25       After Mr. Dixon, this is our position, after Mr. Dixon

1    made a demand for payments, which our client thought was

2    unwarranted, Mr. Dixon then sought to engage in a campaign of

3    defamation, harassment, and ultimately extortion with

4    Mr. Blackburn, his attorney, designed to put pressure on our

5    client for an extortionate payout.  It went well beyond the

6    royalty payments.  There were allegations of sexual misconduct,

7    horrendous allegations, your Honor, pedophilia, statutory rape,

8    theft.

9         And rather than being the subject of extortion,

10   Mr. Cartagena decided to get ahead of it and filed an action

11   against Mr. Dixon, his attorney, Mr. Blackburn and the law firm

12   for defamation and then for intentional infliction of emotional

13   distress.  That's essentially what the action is about.

14        The allegations are horrendous.  They are false.  And

15   rather than being the subject of -- rather than being an

16   extortionate victim, he decided to take action.  That's really

17   the crux of the allegation.

18        Your Honor may be aware of this, but Mr. Blackburn --

19   and I don't want to get into salacious details here, that's not

20   the purpose of today's proceeding, but it is related to our

21   action.  Mr. Blackburn has apparently engaged in this type of

22   campaign previously where he has already been sanctioned by

23   multiple judges, including in the Southern District.  He has

24   been accused of abusing the court process and referred to the

25   disciplinary committee for precisely this type of action, and

1    apparently Mr. Dixon is on board with that.

2            Essentially, this is a coordinated effort by all three

3    of those defendants, the law firm, Mr. Blackburn, and his

4    clients, to continue to abuse the court process.  It's not just

5    here, your Honor.  Just recently -- again, this is just for

6    context.  Mr. Blackburn was actually subject to a Rule 11

7    sanctions hearing, I believe it was in Pennsylvania federal

8    court, Western District, for the same type of conduct that's

9    the underlying basis here, abusing the court process, filing

10   claims that are meritless.

11           And, again, rather than letting him do that and then

12   us responding, our client decided to take action in the hopes

13   that Mr. Blackburn would cease and desist, but instead he

14   doubled down and actually filed the second action.  That's why

15   they are related, your Honor.  That's essentially the crux of

16   this action.

17           THE COURT:  Thank you.  Thank you for that.

18           Mr. Blackburn, can you talk to me about the case from

19   your client's perspective.

20           Let me ask, before you do, did you meet and confer and

21   work with plaintiff's counsel on the joint letter that's

22   supposed to be sent in to me prior to this conference?  I don't

23   see that represented in the July 22 letter, but I wanted to ask

24   you directly.

25           MR. BLACKBURN:  No, I did not.  I was actually just

1   sent the email letting me know that they had spoken among

2   themselves and came up with whatever dates they put in the

3   document, and I was never invited to have a conversation with

4   them prior to them making a decision as to the dates of the

5   scheduling that they put together.  So I did not have that -- I

6   did not meet and confer with them.  And my plan was, which I

7   did, was to submit a letter on the docket asking to stay the

8   initial conference because I had my motion to dismiss, which

9   I'm editing, to file today, and I anticipated filing that and

10  having the Court make a determination on the motion to dismiss

11  before engaging in discovery scheduling and discovery.  So

12  that's my answer to that.

13       THE COURT:  I'll follow up on that in a moment.

14       Why don't you tell me about the case, and then I am

15  going to want to hear a little bit more about your request to

16  stay discovery because I thought that you opposed a discovery

17  stay in the second action.  Why don't I hear from you on the

18  case first, and then we will talk procedurally.

19       MR. BLACKBURN:  My client, Terrance Dixon, worked for

20  Mr. Cartagena for almost 20 years and wrote three albums for

21  him and was featured on three songs, was never compensated for

22  anything, traveled with him to numerous countries on numerous

23  tours, was underpaid or not paid at all.  And this is just not

24  hyperbole or just a pigment of his imagination.  These are

25  facts that were confirmed by Mr. Cartagena's former manager and

1   former accountant, who is also my client, and we also have

2   documentation to prove that as well.  That, again, has not come

3   out yet, but I'm filing my motion to dismiss and that's going

4   to be fully explained within that document.

5           Also, when I was contacted by Mr. Dixon, I sent over

6   an appearance letter to Mr. Cartagena, and I was engaging with

7   an attorney who is not on the call here, I believe her name was

8   Erica, and she purported to be a licensed attorney who was

9   allowed to engage in settlement negotiations, but apparently

10  she was not an actively licensed or authorized counsel for the

11  bar of the State of Florida, where she is from.

12          So we were having back-and-forth conversations.  I

13  thought that we were discussing and negotiating in good faith,

14  and I explained to her that my client had additional claims,

15  and that's when conversations started to expand.

16          After that, she was having a lot of delays in getting

17  back to me with answers as to how the case was going to evolve,

18  and I said to her the deadline to respond is the 29th of April.

19  She asked me to wait and then later on in that day they filed

20  this lawsuit, on the 29th of April, accusing me of engaging in

21  extortionist communications and claiming that my client is

22  defaming them and all this other stuff.  All the communication

23  that I had with her was relating to potentially resolving this

24  matter before it even became a real true issue in the courts.

25          Later on, about three weeks later, they served me with

1    the paperwork, even though I told them that I don't have

2    problems making service.  We can go to the Southern District of

3    New York's prosecutor's office, and we can meet there because

4    they said that I am engaged in extortion.  I have no problem

5    meeting with them at the prosecutor's office, and they could

6    present their case for extortion, my client could present his

7    case for trafficking and for engaging with minors.

8            Just so the Court is aware, since this case has been

9    filed, I've been contacted by two additional women who also

10   provided statements that they were with Mr. Cartagena when they

11   were -- 14, one of them and I believe 16 is the other, and I

12   turned over their information to law enforcement as well.

13           I filed the second action June 19, and by June 20 I

14   got a call from TMZ asking me if I knew that I had a warrant

15   out for my arrest, and then five days later I was arrested,

16   being accused of running over a process server with my vehicle,

17   which, again, is not true.  I have witnesses, cameras, all the

18   things, so that would be dealt with in state court.  But this

19   is the kind of games that these individuals are trying to play

20   with this case.

21           As it pertains to the sanctions, I was never

22   sanctioned.  Judge Oetken did not like what I wrote in my

23   motion to dismiss -- my opposition to the motion to dismiss in

24   the Sean Combs case, one of the cases that I have there,

25   because of the language that I used, and he just like -- he

1    gave me a warning.  It was not a sanction.

2            As it pertains to -- I believe it was Judge Cote, she

3    did not sanction me either.  She also talked about the filing.

4    She didn't like the fact that I filed certain cases and did not

5    verify -- she claims I didn't verify the jurisdiction of a

6    particular party in that action, and she said that she was

7    going to refer me to grievance.  It has been a year and a half,

8    and I have not gotten a call from grievance, and I have

9    actually called them myself to inquire as to what the process

10   is, and they have no report of me being referred there.

11           When it comes to the case in Pennsylvania, it was a

12   documentation issue.  So the citations in that case that I just

13   came back from, there was issues with the citations because I

14   upgraded my LexisNexis subscription to this new protege thing

15   and it has a whole bunch of AI stuff in it, so that's what

16   happened, and I explained that to the Court.

17           They are trying to take these things out of context,

18   and I think context is important, and trying to paint me as

19   some sort of, you know, extortionist crazy lawyer who is out

20   here committing all these different bad things, when, in fact,

21   once we get down to the nitty gritty, we will see who was the

22   people that are really doing the bad things, and that's

23   Mr. Cartagena.

24           THE COURT:  Thank you.

25           MR. SEIGEL:  Your Honor, I'm sorry for interrupting.

1    I don't know whether or not you want me to address some of the

2    issues that he raised just to correct the record or if you

3    would rather to table that for another time.

4            I just heard some outrageous claims that I think is

5    just a continuation of the tactics in which he engages,

6    misrepresenting what Judge Cote said, Judge Oetken said, the

7    judge in Pennsylvania.

8            I read the transcript of Mr. Blackburn's under-oath

9    testimony during the Rule 11 hearing.  And when questioned not

10   just about the use of artificial intelligence misquoting

11   something, but manufacturing entire cases, which he then cited,

12   without even referencing them, he had no good answer for that.

13           THE COURT:  Mr. Seigel, we are not going to get into

14   right now other court's proceedings regarding following the

15   rules and appropriate processes before the Court.  I expect

16   compliance with all of the rules and professional

17   responsibilities before me.  If I don't see that, I'll act

18   accordingly, but that is what I am most concerned with right

19   here, unless and until the other items are brought before me

20   for some reason.

21           My next question then is, in terms of scheduling, back

22   to you, Mr. Blackburn, I see here in the joint letter that you

23   were sent emails on July 18 and July 21 asking for comments on

24   the case management plan.

25           Did you respond and give comments on it?

```
 1              MR. BLACKBURN:  No, I did not, your Honor.

 2              THE COURT:  And why did you not do that?

 3              MR. BLACKBURN:  Because, your Honor, from my

 4   understanding of engaging in these kinds of communications and

 5   as I have done consistently, we send an email, a joint email,

 6   and ask to have a call or to schedule a meeting.  They did not

 7   do that.  What they did was, they came up with their own

 8   schedule and then sent me the schedule.  I didn't think that it

 9   would be fruitful for me to engage with that, as well as the

10   fact that I'm filing my motion to dismiss because the second

11   amended complaint had literally just been filed not too long

12   ago.

13              THE COURT:  My rules require that the parties send me

14   a joint schedule.  It seems to me that the plaintiff's counsel

15   endeavored to get your input on the schedule.  You did not

16   provide that and it was sent to me with just their input.

17              I expect in the future, please, to follow my processes

18   for conferring and something, even through email, to make sure

19   that it is a joint submission in the future.

20              But, in any event, you're saying that you filed a

21   motion to dismiss.

22              MR. BLACKBURN:  I will be.  I'm sorry for cutting you

23   off, but because it's two cases and I know that it's a

24   little --

25              THE COURT:  Let me stop you there, and let me just
```

 1    finish what I'm saying.

 2          You are correct that you had stated that you were

 3    going to file a motion to dismiss.  That's fine.  Everyone

 4    knows, I'm sure, on this call that a motion to dismiss does not

 5    automatically stay discovery.  There are requirements for

 6    staying discovery, should I decide that that is appropriate,

 7    but that is not a reason not to engage in putting together a

 8    discovery schedule.

 9          So that brings me to my second question, and I know

10    I'm bleeding into the second case right now.  I believe I know

11    that Roc Nation was seeking to stay discovery, given that they

12    had filed a motion to dismiss in the second action, and I

13    understand and I think that, Mr. Blackburn, you opposed that

14    day.  I am not sure, but you can confirm that to me.

15          MR. BLACKBURN:  I filed an opposition to their motion

16    to dismiss.  I do not believe that I saw their request for a

17    stay.  I don't know if it's something that they filed formally

18    or it was in a letter or something.  I may have missed that

19    piece of it.

20          THE COURT:  No.  I don't think it was -- you are

21    right.  I don't think it was a motion to stay.  I think they

22    are just saying that maybe the case management plan should be

23    pushed off, and we shouldn't really be moving full fledged to

24    discovery since they had moved to dismiss, but we will get to

25    that in a moment.

1          In this first case you have a motion to dismiss that

2     you filed -- that you are going to file, and your position is

3     that you would like to not move forward on discovery until that

4     motion to dismiss is resolved.

5          Is that your position, Mr. Blackburn?

6          MR. BLACKBURN:  Yes, your Honor.

7          THE COURT:  Let me ask you, Mr. Seigel, your position

8     on that, and I will address it.

9          MR. SEIGEL:  With regard to the second action, we have

10    not been served.  Let me just address that at the outset,

11    because I know the Court referenced that.

12         The Court gave Mr. Blackburn a deadline within which

13    to file the summons to correct it, because it had been kicked

14    for some, I guess, impropriety.  He hasn't done that yet.  We

15    are still waiting on that.  With respect to the second action,

16    there is nothing for us to do at this stage.

17         With regard to the first matter, as outlined in our

18    letter, there is no motion to dismiss that's been filed right

19    now.  There is no reason that discovery should not proceed.  We

20    set forth what the standard is in our letter to the Court in

21    order to stay discovery, and first would be whether or not the

22    motion to dismiss has a significant likelihood of success.  He

23    has not even filed the motion yet.  First of all, if we know

24    what the issues are, we can anticipate them.  It's not likely

25    to prevail.  That's the first point.  Moreover, he hasn't even

1    established what the standard is at this stage in order to be

2    able to justify a stay of discovery.

3            Our client wants to proceed with this.  There are

4    spurious allegations that are horrendous in nature against him,

5    and he wants to put this matter to rest right now and show that

6    he didn't engage in misconduct, that he's actually the victim

7    of misconduct.

8            Given those circumstances, your Honor, we think that

9    the first case should proceed as outlined in our letter to the

10   Court.

11           THE COURT:  Thank you very much.

12           Yes, Mr. Blackburn.  I'll hear from you briefly.

13           MR. BLACKBURN:  Your Honor, the first action was

14   amended on the 21st, I believe, of July, so I'm well within the

15   window of filing my answer, which, again, it's right here, I'm

16   just completing the edits, and I am going to be filing the

17   motion to dismiss.

18           There are great grounds for dismissal of this action.

19   The majority of the things that they cited in the amended

20   complaint are comments that my client made in 2023.  A lot of

21   that is time barred by the one-year statute of limitations.

22           Other issues that they cited concerning myself for

23   their defamation claim is absolutely ridiculous and the

24   statements that were made after the filing of this case on

25   4/29, so that's a ground for dismissal.

```
 1            And there is clear case law that speaks about a
 2   lawyer's right to advocate for their client publicly in order
 3   to preserve the client's reputation in the public when there is
 4   an act of litigation going on, which is what I engaged in after
 5   this lawsuit was filed.
 6            And then the third claim that they have for IIED,
 7   you can have duplicative defamation and IIED claims relying on
 8   the same facts, which is exactly what they have in here.
 9   Completely ripe for dismissal.  And all of that is laid out
10   perfectly in my motion to dismiss, which I will be uploading
11   probably by the end of the day.
12            THE COURT:  Thank you very much for that.
13            I am going to deny the request for a stay.  I find
14   that the standards are not met and in my discretion I am not
15   going to permit discovery to be stayed at this point.  I don't
16   have the motion to dismiss yet.  I will have it.  But on what
17   I'm hearing now, I believe that discovery should proceed
18   forward.
19            I have a case management plan here.  I will enter that
20   case management plan and set this case down for the discovery
21   schedule that is set forth there.
22            I am going to ask my clerk to give me a postdiscovery
23   pretrial conference date which I will relay to the parties in
24   just a moment, and I will enter that discovery schedule now.
25            MR. SEIGEL:  Your Honor, I apologize.  I just wanted
```

1    to correct one thing for the record with regard to our proposed

2    schedule.  There were, I think, three typos with regard to the

3    year.  In paragraph 8(b) we had listed January 6, 2025 as the

4    deadline for defendant's expert disclosures.  That should

5    obviously be 2026.  Same for paragraph 8(c).  The deadline for

6    all expert discovery should be January 20, 2026.  We had

7    inadvertently indicated 2025.  And then, lastly, paragraph 12

8    states that all discovery should be completed no later than it

9    says January 20, 2025.  That should be 2026.  I just wanted to

10   bring that to the Court's attention.

11           THE COURT:  Thank you.  I'll make those changes.

12           And I will set a postdiscovery pretrial conference for

13   February 17, 2026 at 10 a.m.  That's the conference at which

14   the parties will have concluded discovery, and they will either

15   have sent me letters that suggest that somebody wishes to move

16   for summary judgment or, if summary judgment will not be filed,

17   we will be dealing with pretrial submissions.  I will

18   simultaneously decide any motions to dismiss while we are

19   moving through the schedule for discovery.

20           The next item that I'd like to discuss is the request

21   by counsel for the plaintiff here to stay or dismiss the second

22   action without prejudice to refiling the claims as

23   counterclaims or as third-party claims or, in the alternative,

24   marking them as related cases and then perhaps with a future

25   motion to consolidate.

 1          Mr. Seigel, is there anything that you would like to

 2     add to your submission to the Court in that regard?

 3          MR. SEIGEL:  Your Honor, I think I would just be

 4     restating what's in the letter.  What's I think clear from the

 5     face of the pleadings themselves, the two matters are related.

 6     The complaint that was brought by Mr. Dixon really should just

 7     be a counterclaim.  No reason for us, I think, to proceed with

 8     two separate actions.  In fact, I think it complicates matters

 9     because they would just be essentially running on a parallel

10     track at some point.  That would be our request.

11          Alternatively, if the Court is disinclined to dismiss

12     the action and have them refile the claims as counterclaims, as

13     is set forth in our letter, we would just ask that they be

14     deemed related and the actions be consolidated, just for

15     judicial efficiency sake.

16          THE COURT:  Thank you.

17          Mr. Blackburn, can I have your response to that

18     request.

19          MR. BLACKBURN:  My initial opposition to that was

20     based on the first complaint, the first complaint in this

21     action, and the fact that I thought it was absolutely baseless,

22     and I moved to dismiss.

23          My view was that the first -- this case would have

24     been dismissed based on how it was written and the case that I

25     filed, the second action, would continue.  So it didn't really

1    make sense to me that I thought -- then I was trying to still

2    have the other parties served in that action.  The cases were

3    too far apart, in my estimation, as to where things were when

4    it came to the filing.  That's why I opposed that.

5         If the Court wants to consolidate and put it all on

6    one track, I have no problem -- bring that case over to this

7    one, I have no problem with that.

8         THE COURT:  When you say you have no problem with

9    that, is your position that the cases should be consolidated,

10   or is it your position that the second action would be

11   dismissed and your claims would be brought as counterclaims to

12   the first action?

13        MR. BLACKBURN:  Not counterclaims, your Honor, because

14   the first action, honestly, should just be dismissed.  I get

15   what the Court is saying, that you want to go through the

16   process first before we get to that point to make a decision of

17   dismissal, but I really think that it's pretty clear -- it will

18   be made pretty clear that this case should be dismissed.  So I

19   do think that you can have the cases as related, but I do not

20   think that having it as a counterclaim would be the appropriate

21   course to take.

22        THE COURT:  Thank you.  Let me rule on that motion

23   right now.

24        Federal Rule of Civil Procedure 13(a) requires that a

25   pleading state as a counterclaim any claim that "arises out of

the same transaction or occurrence that is the subject matter

of the opposing party's claim" and "does not require adding

another party over whom the Court cannot acquire jurisdiction."

Federal Rule of Civil Procedure 13(a)(1).

The Second Circuit has explained that the "transaction

or occurrence" test is met when there is a "logical

relationship between the counterclaim and the main claim."

*Jones v. Ford Motor Credit Company*, 358 F.3d 205, 209 (2d Cir.

2004).  The logical relationship test does not require an

"absolute identity of factual backgrounds," but "the essential

facts of the claims must be so logically connected that

considerations of judicial economy and fairness dictate that

all the issues be resolved in one lawsuit." *Id.*

"Once a court becomes aware that an action on its

docket involves a claim that should be a compulsory

counterclaim in another pending federal suit, it should stay

its own proceedings or dismiss the claim with leave to plead it

in the prior action." *Monroe Staffing Services*, 2022 WL 684714

at *7 (S.D.N.Y. Mar. 7, 2022).

Cartagena argues that the claims in the second action

are compulsory counterclaims and should thus be stayed or

dismissed because they arise from the same nucleus of operative

facts as the first action.  Docket 26, what I will refer to as

the motion at 2.  Specifically, he argues that the second

action's factual allegations closely resemble the same

1   allegedly false accusations that are the source of the

2   defamation claims in the first action.  *Id*.

3          Dixon opposes the motion and argues that the claims in

4   the second action are factually and statutorily distinct,

5   particularly since the factual allegations involve an alleged

6   longstanding pattern of misconduct from 2008 to 2024, while the

7   first action involves only incidents in 2025.  Docket number

8   27, which is the opposition at 1-2.

9          I hear other arguments here at this proceeding, but

10  those were the arguments submitted in advance.  I'm considering

11  both.

12         The Court will deny Cartagena's request to dismiss or

13  stay the claims in the second action because they are not

14  compulsory counterclaims.

15         The second action's claims are not logically related

16  to the first action because they involve different time periods

17  and factual allegations.  *See Brunckhorst v. Bischoff*, 2024 WL

18  42777788 at *24, note 20 (S.D.N.Y. Sept. 24, 2024), which held

19  that the shareholder claims didn't constitute compulsory

20  counterclaims because their essential facts were far apart

21  involving different share dispositions, different contract

22  provisions, and different time periods.

23         While the second action's claims that Cartagena

24  engaged in sexual coercion, forced labor, and the economic

25  intimidation bear some relationship to Cartagena's claim that

 1    Dixon subsequently engaged in a campaign of false, extortionate

 2    accusations and threats to sue based on those same alleged

 3    facts, the determination of whether Cartagena participated in

 4    trafficking acts was unjustly enriched, fraudulently concealed

 5    material facts, and misrepresented and participated in

 6    racketeering is not logically or factually dependent on whether

 7    Dixon later made false accusations about that conduct.

 8         Moreover, resolution of Dixon's TVPA and RICO claims

 9    would involve different facts from Cartagena's defamation or

10    intentional infliction of emotional distress claims, such as

11    whether Cartagena knowingly obtained the labor of services of a

12    person using force, under 18 U.S.C. Section 1589(a), when he

13    allegedly withheld Dixon's compensation, versus whether Dixon

14    made a false statement to expose Cartagena to public contempt

15    when he made Instagram posts about Cartagena.

16         The absence of facts in the first action's record

17    regarding the second action's trafficking and racketeering

18    allegations, as opposed to its evidence of defamatory

19    statements, demonstrates that the essential facts for proving

20    these distinct claims are not sufficiently related to yield

21    judicial efficiency.  *Torres v. Gristede's Operating Corp.*, 628

22    F.Supp. 2d, 447, 467-68 (S.D.N.Y. 2008).

23         So I am going to deny the request to dismiss or stay

24    the second action's claims, since they are not compulsory

25    counterclaims.

1        However, I am going to grant the request that is

2    unopposed by Mr. Dixon as well to mark the cases as related.

3        They are related under Southern District rules for the

4    Division of Business 13(a)(1).

5        I considered whether they involved the same or similar

6    parties, property, transactions or events, substantial factual

7    overlap, and would be subject to potential conflicting orders.

8    And I also considered whether there would be substantial

9    duplication or burden if we kept these separate.

10        So I will mark the cases as related.  And then,

11    hearing no objection from Mr. Blackburn, I will consolidate

12    them as well so that they can move along the same track.  And

13    hence we are having everyone here together at this proceeding.

14        Now, that doesn't mean, though, that the second action

15    is ready for discovery in the same way that the first action is

16    ready for discovery.  Service has not been completed in the

17    second action and so I will adjourn the second action's IPTC

18    and not hold it today.  I will hold it at some point in the

19    future, which then kicks off discovery in that case.  But the

20    cases are consolidated for purposes of, as much as we can, to

21    coordinate things going forward.  If there is a suggestion as

22    to how to coordinate them once we get things moving in both

23    cases, I'm happy to hear it from the parties.

24        The second action, I have no service yet and hopefully

25    that is done soon.  I've got a motion to dismiss from Roc

1    Nation that I will address.  I'm not entering a case management

2    plan in that case yet because, as I said, we don't have full

3    service for everyone at the table just yet, so I will adjourn

4    that IPTC in the second action, and I propose holding it on

5    October 14 at 10 a.m.  That should give enough time for

6    everybody to be served, and we can get things moving in that

7    case.

8              Ms. Menillo, would that work for you?

9              MS. MENILLO:  It does, your Honor, thank you.

10             THE COURT:  I know, Mr. Seigel, you have not been

11   served yet, but assuming that you get served at some point,

12   would that date work for you as well?

13             MR. SEIGEL:  Yes, your Honor.  Thank you.

14             THE COURT:  I'll adjourn the IPTC in the second action

15   until October 14 at 10 a.m.

16             I think the only thing that is then left on my list is

17   whether there can be any productive settlement negotiations.  I

18   am not sure that that's the case, but I am placing out there,

19   as I always do, in my initial pretrial conferences that I have

20   two alternatives that I can offer to the parties.

21             One is to go before the magistrate judge, and I will

22   arrange to try to have the second action moved to the same

23   magistrate judge as the first action, so I'll likely move Judge

24   Netburn off of the case and have both cases covered by Judge

25   Willis, just because we will have one magistrate judge for

1    both.  But I also can make a referral to the Southern District

2    mediation plan.

3          I will ask the parties now if there is any reason to

4    make either referral at this point.

5          I don't think we need lengthy discussion, but, Mr.

6    Seigel, any reason to refer at this point?

7          MR. SEIGEL:  Not at this point, your Honor.

8          THE COURT:  Mr. Blackburn, any reason to refer at this

9    point?

10          MR. BLACKBURN:  No, your Honor.

11          THE COURT:  I won't make any referrals, but I will let

12    you know if at any point I get a joint letter from the parties,

13    because they wished to engage in some discussions, I would be

14    happy to enter that and refer you to the appropriate forum at

15    your request.

16          I think that is everything that I had intended to

17    cover here today.

18          I will do a little round robin here.

19          Mr. Seigel, anything further I need to cover here

20    today?

21          MR. SEIGEL:  Just one housekeeping matter, your Honor.

22          Mr. Blackburn has repeatedly referenced that he

23    intends to file a motion to dismiss in the first action, I

24    guess, based on the fair report privilege.  It will be our

25    position it doesn't apply.  Mr. Dixon's statements predate the

 1    litigation.  Mr. Blackburn's statements relate to an

 2    extortionate scheme, so it wouldn't be covered.

 3            In any event, we will address that in our opposition,

 4    and that's what I wanted to touch on.  Normally the rules would

 5    permit us 14 days to file opposition.  We would ask for a

 6    briefing schedule that would afford us 21 days to oppose once

 7    he files his motion, if the Court would be amenable to that.

 8            THE COURT:  Generally, one confers with their

 9    adversary to reach an agreed-upon briefing schedule, Mr.

10    Blackburn.  Do you have any objection to a 21-day response

11    time?

12            MR. BLACKBURN:  I don't have one.  If he wants 21

13    days, it's fine with me.

14            THE COURT:  Thank you very much.

15            MR. BLACKBURN:  I would ask, I have to impose the

16    motion for sanctions, which I have that prepared to go, but I

17    am probably going to need like about two or three days, because

18    the weekend is here, so maybe until Monday or Tuesday to file

19    my opposition.

20            THE COURT:  I am not usually involved, absent a

21    disagreement between the parties, and professional courtesies

22    about giving each other a day or two to respond to things.

23            I presume, Mr. Seigel you would provide Mr. Black a

24    day or two, if he requests it, to respond to your sanctions

25    motion.  Is that correct?

1           MR. BLACKBURN:  It's not Mr. Seigel.  It's

2    Ms. Menillo.

3           THE COURT:  I'm sorry.  Ms. Menillo.

4           MS. MENILLO:  Yes.  It would be our sanctions motion.

5           THE COURT:  I'm not hearing you, Ms. Menillo.

6           MS. MENILLO:  I'm sorry, your Honor.  Can you hear me

7    now?

8           THE COURT:  Not very well.

9           MS. MENILLO:  I'm sorry, your Honor.  I'm not sure

10   what's wrong with my microphone.

11          Yes.  That would be related to our sanctions motion.

12   If Mr. Blackburn reaches out, I am sure we can come to an

13   agreement and then send it to the Court.

14          THE COURT:  That's fine.  Good.  I encourage everyone

15   to engage in whatever professional courtesies they find

16   appropriate here, so you'll handle it that way.

17          Mr. Blackburn, anything further we need to discuss

18   here today?

19          MR. BLACKBURN:  No.  Everything is OK over here.

20          THE COURT:  Thank you.

21          Ms. Menillo, anything we should discuss here today?

22          MS. MENILLO:  No, your Honor.  Thank you.

23          THE COURT:  Thank you.

24          For good measure, anyone from Reed Smith need to

25   discuss anything here today?

1          MR. SIEV:  No.  I think it has all been covered.

2  Thank you, your Honor.

3          THE COURT:  Thank you all very much.  I'll put in the

4  case management plan.  I will mark the cases as related and

5  consolidate them again.

6          If you all reach agreement as to any sort of

7  consolidated schedule for anything, you'll let me know, but,

8  otherwise, I have an initial pretrial conference for October 14

9  in the second action.  And, again, if we wish to at that point

10  get things on the same track, we can talk about that when we

11  get there.  I have a fully briefed motion from Roc Nation.  I

12  expect to get a motion to dismiss from Mr. Blackburn, and we

13  are off to the races.

14          Thank you all very much, and court is adjourned in

15  this matter.

16          (Adjourned)

17

18

19

20

21

22

23

24

25