# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOSEPH CARTAGENA**, | |
| *Plaintiff*, | |
| v. | Civil Action No. 25-cv-03552 |
| **TERRANCE DIXON, TYRONE BLACKBURN, and T.A. BLACKBURN LAW, PLLC,** | |
| *Defendants*. | |
| **TERRANCE DIXON, a/k/a "TA,"** | |
| *Plaintiff*, | |
| v. | |
| **JOSEPH ANTONIO CARTAGENA p/k/a "FAT JOE," PETER "PISTOL PETE" TORRES, RICHARD "RICH PLAYER" JOSPITRE, ERICA JULIANA MOREIRA, SNEAKER ADDICT TOURING LLC, SLATE, INC., ROC NATION, LLC, JOHN DOES 1-10, JANE DOES 1-10, AND ABC CORPORATIONS 1-10,** | Civil Action No. 25-cv-05144 <br><br> **ORAL ARGUMENT REQUESTED** |
| *Defendants*. | |

**DEFENDANTS JOSEPH CARTAGENA, PETER TORRES, RICHARD JOSPITRE, ERICA MOREIRA, SNEAKER ADDICT TOURING LLC AND SLATE INC.'S OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF TERRANCE DIXON'S COMPLAINT**

Jordan W. Siev
**REED SMITH LLP**
599 Lexington, 22nd Floor
New York, New York 10022
jsiev@reedsmith.com
212-205-6085

Joseph Tacopina
Chad Seigel
**TACOPINA SEIGEL & DEOREO**
275 Madison Avenue, 35th Floor
New York, New York 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
212-227-8877

*Attorneys for Defendants Joseph Antonio Cartagena, Slate, Inc., Sneaker Addict Touring LLC*

Reed Brodsky
Michael L. Nadler
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
rbrodsky@gibsondunn.com
mnadler@gibsondunn.com

*Attorneys for Defendant Erica Moreira*

David H. Wollmuth
Adam M. Bialek
Phillip R. Schatz
Russell B. Filip
**WOLLMUTH MAHER & DEUTSCH LLP**
500 Fifth Avenue
New York, NY 10110
dwollmuth@wmd-law.com
abialek@wmd-law.com
pschatz@wmd-law.com
rfilip@wmd-law.com

*Attorneys for Defendants Richard Jospitre and Peter Torres*

## TABLE OF CONTENTS

Preliminary Statement .................................................................................................... 1

Statement of Facts ........................................................................................................... 6

I.  Dixon Alleges He Was Cartagena's "Creative Partner" From 2005 to 2020 ................... 6

II.  Dixon Claims He Continued Collaborating With Cartagena Despite Never Receiving The Royalties Or Full Performance Fees He Falsely Claims Cartagena "Orally" Promised Him ................................................................................................................. 7

III.  Dixon Stops Working With Cartagena In 2020 And Begins Harassing Him ................... 8

IV.  Dixon Retains Counsel Who Transforms a Simple Royalty and Performance Fee Dispute Into A Sprawling Sex Trafficking, Human Trafficking, and RICO Complaint Involving Cartagena, His Businesses, and Associates ...................................................... 9

V.  Dixon Files This Lawsuit Against Cartagena, His Businesses, and Associates .............. 10

Legal Standard .............................................................................................................. 12

Argument ....................................................................................................................... 13

I.  The Complaint is a Prolix Shotgun Pleading that Obscures the Asserted Claims in Violation of Federal Rule of Civil Procedure 8. .............................................................. 13

II.  Dixon Fails to State a Plausible or Timely Claim Under the TVPA (Count I) ............... 15

    A.  Dixon's TVPA Claims Are Time Barred ............................................................... 15

    B.  Dixon Fails to State a Plausible Sex Trafficking Violation .................................... 16

        1.  Dixon Lacks Standing ................................................................................. 16

        2.  Dixon Fails To State A Claim Under The Sex Trafficking Statute ......... 17

    C.  Dixon Fails to State a Plausible Forced Labor Violation ..................................... 20

    D.  Dixon Fails To Plead Venture Liability ................................................................. 22

III.  Dixon Fails to State a Plausible or Timely Claim Under the RICO Act (Count VII) ..... 23

    A.  Dixon's RICO Claim is Time Barred. ................................................................... 24

    B.  Dixon Lacks Standing .......................................................................................... 25

        1.  Most of Dixon's Alleged Injuries are not Cognizable Under RICO ....... 26

        2.  Any Cognizable Injury Was Not Proximately Caused by a Predicate Act 27

    C.  Dixon Fails to Plead an Enterprise ...................................................................... 28

        1.  Dixon Fails to Plead Relationships Among Those Associated ................ 29

        2.  Dixon Fails to Plead Longevity ................................................................ 30

    D.  Dixon Fails to Show that Each Enterprise Member Violated at Least Two Acts of Racketeering ......................................................................................... 31

i

1.    Many Of Dixon's Alleged Predicate Acts Do Not Constitute RICO Predicates ................................................................................................ 31

2.    Dixon Fails to Plead Any RICO Predicate Violation .............................. 33

E.    Dixon Fails to Allege a Pattern of Racketeering Activity .................................... 42

IV.    Dixon Fails to State a Plausible or Timely Claim for Fraudulent Concealment and Fraudulent Misrepresentation (Counts IV and VI) ........................................ 45

V.    Dixon Fails to State a Plausible Claim for Unjust Enrichment and Quantum Meruit (Counts II and III) ................................................................................................ 49

VI.    Dixon Fails to State a Plausible Claim for "Constructive Trust" (Count V) .................. 50

VII.    Dixon Should Not be Allowed To Replead His Fundamentally Flawed Complaint ....... 50

Conclusion ............................................................................................................................ 51

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Labaton, Sucharow & Rudoff LLP*,
    2009 U.S. Dist. LEXIS 35085 (S.D.N.Y. Mar. 20, 2009) .......................................48

*Agudelo v. Recovo Mortg. Mgmt. LLC*,
    No. 22-cv-4004 (JMA)(LGD), 2025 U.S. Dist. LEXIS 113304 (E.D.N.Y. June
    13, 2025) ...........................................................................................................14

*Aliev v. Borukhov*,
    No. 15-CV-6113 (ERK) (JO), 2016 U.S. Dist. LEXIS 88856 (E.D.N.Y. July
    8, 2016) .............................................................................................................38

*Alkholi v. Macklowe*,
    858 F. App'x 388 (2d Cir. 2021) .........................................................................49

*Allstate Ins. Co. v. Vladimir Geykhman*,
    No. 24 CV 4580 (PKC) (CLP), 2025 U.S. Dist. LEXIS 173936 (E.D.N.Y.
    Sep. 7, 2025) .....................................................................................................31

*Angermeir v. Cohen*,
    14 F. Supp. 3d 134 (S.D.N.Y. 2014).....................................................................26

*Ashcroft v. Iqbal*,
    556 US. 662 (2009)............................................................................................12

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) .............................................................................15

*Azima v. Dechert LLP*,
    No. 22-CV-8728 (PGG) (JW), 2024 U.S. Dist. LEXIS 176048 (S.D.N.Y. Sep.
    26, 2024) ...........................................................................................................34

*Bailey v. City of Miami Beach*,
    No. 10-20998-CIV, 2011 U.S. Dist. LEXIS 93974 (S.D. Fla. Aug. 23, 2011) ......................40

*Baiul, LLC v. William Morris Agency, LLC*,
    13 Civ. 8683, 2014 U.S. Dist. LEXIS 62633 (S.D.N.Y May 6, 2014)....................................25

*Bankers Tr. Co. v. Rhoades*,
    859 F.2d 1096 (2d Cir. 1988)..............................................................................26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................12

*Bezuszka v. L.A. Models, Inc.*,
     04 Civ. 7703, 2006 U.S. Dist. LEXIS 13620 (S.D.N.Y. Mar. 24, 2006) ...............................48

*Bigsby v. Barclays Cap. Real Est., Inc.*,
     170 F. Supp. 3d 568 (S.D.N.Y. 2016)......................................................................................28

*Black v. Ganieva*,
     619 F. Supp. 3d 309 (S.D.N.Y. 2022)......................................................................................29

*Blakely v. Wells*,
     209 F. App'x 18 (2d Cir. 2006) ................................................................................................14

*Boyle v. United States*,
     556 U.S. 938, 129 S. Ct. 2237 (2009)................................................................................29, 30

*C.C. v. Jamal F. Rashid*,
     No. 2:23-cv-02056-GMN-BNW, 2025 U.S. Dist. LEXIS 122420 (D. Nev.
     June 26, 2025)....................................................................................................................17, 20

*Cargo on Demand, Inc. v. Polar Air Cargo Worldwide, Inc.*,
     No. 22-CV-10243 (JMF), 2023 U.S. Dist. LEXIS 119185 (S.D.N.Y. July 11,
     2023) ............................................................................................................................31, 32, 39

*City of Atl. City v. Drummon (In re Drummon)*,
     No. 24-CV-1668 (VEC), 2025 U.S. Dist. LEXIS 87517 (S.D.N.Y. May 7,
     2025) .........................................................................................................................................49

*Claros v. Marvin's Refrigeration Corp.*,
     No. 1:24-cv-1197, 2025 U.S. Dist. LEXIS 180868 (N.D.N.Y. Sep. 16, 2025).........................3

*Cohen v. HDS Trading Corp.*,
     2013 NY Slip Op 32067(U) (N.Y. Sup. Ct. 2013) ..................................................................46

*Cohen v. S.A.C. Trading Corp.*,
     711 F.3d 353 (2d Cir. 2013)................................................................................................24, 47

*In re Conte*,
     No. 22-CV-3109 (DG) (JMW), 2023 U.S. Dist. LEXIS 168777 (E.D.N.Y.
     July 3, 2023).............................................................................................................................44

*Cruz v. Fxdirectdealer, LLC*,
     720 F.3d 115 (2d Cir. 2013)......................................................................................................23

*D'Addario v. D'Addario*,
     901 F.3d 80 (2d Cir. 2018)........................................................................................................25

*Dale v. Banque SCS All. S.A.*,
No. 02 Civ. 3592 (RCC)(KNF), 2005 U.S. Dist. LEXIS 20967 (S.D.N.Y.
Sept. 22, 2005) ............................................................................................37

*De Min Gu v. Doe*,
No. 23-CV-3006 (PKC), 2023 U.S. Dist. LEXIS 73714 (E.D.N.Y. Apr. 27,
2023) ...........................................................................................................50

*Dumapias v. Haybyrne*,
No. 1:20-cv-00297, 2020 U.S. Dist. LEXIS 253331 (E.D. Va. Nov. 2, 2020) ...............18, 22

*Edmondson v. Raniere*,
751 F. Supp. 3d 136 (E.D.N.Y. 2024) ........................................................34

*El Omari v. Buchanan*,
No. 20 Civ. 2601 (VM), 2021 U.S. Dist. LEXIS 236933 (S.D.N.Y. Dec. 10,
2021) .......................................................................................................31, 35

*Elsevier Inc. v. W.H.P.R., Inc.*,
692 F. Supp. 2d 297 (S.D.N.Y. 2010)..........................................................30

*Entretelas Americanas S.A. v. Soler*,
840 F. App'x 601 (2d Cir. 2020) .................................................................37

*Entretelas Americanas S.A. v. Soler*,
No. 19-CV-03658 (LAK), 2020 U.S. Dist. LEXIS 20692 (S.D.N.Y. Feb. 3,
2020) ...........................................................................................................39

*Facey v. Fisher*,
No. 152088/2025 (N.Y. Sup. Ct. Sept. 15, 2025).........................................9

*First Nationwide Bank v. Gelt Funding Corp.*,
27 F.3d 763 (2d Cir. 1994)..................................................................*passim*

*Fisher v. Valley Stream Cent. High Sch. Dist.*,
No. 2:23-cv-3449, 2025 U.S. Dist. LEXIS 166871 (E.D.N.Y. Aug. 27, 2025) ....................15

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
No. 13-MD-2450 (KMK), 2015 U.S. Dist. LEXIS 155383 (S.D.N.Y. Nov. 12,
2015) ...........................................................................................................35

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019)....................................................24, 26

*Glob. Merch. Cash Inc. v. Rome-Aire Servs.*,
No. 24-CV-799 (ARR) (PK), 2024 U.S. Dist. LEXIS 189166 (E.D.N.Y. Oct.
17, 2024) .....................................................................................................27

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)......................................................................26

*Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*,
    No. 15-cv-3784 (PKC), 2016 U.S. Dist. LEXIS 104251 (S.D.N.Y. Aug. 4,
    2016) ......................................................................................................................30

*Hales v. Cook*,
    No. 1:24cv45/ZCB, 2025 U.S. Dist. LEXIS 90249 (N.D. Fla. Jan. 30, 2025)........41

*Halvorssen v. Simpson*,
    807 F. App'x 26 (2d Cir. 2020) ......................................................................42, 43

*Halvorssen v. Simpson*,
    No. 2:18-cv-2683 (ENV) (RLM), 2019 U.S. Dist. LEXIS 148030 (E.D.N.Y.
    Aug. 9, 2019) ......................................................................................................43, 45

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)..............................................................................33

*Insured Advoc. Grp., LLC v. Spartan Servs. Corp.*,
    No. 23-cv-07212 (LJL), 2024 U.S. Dist. LEXIS 125232 (S.D.N.Y. July 16,
    2024) ......................................................................................................................50

*Jakes v. Youngblood*,
    No. 24-CV-1608 (W.D. Pa. Oct. 6, 2025), ECF 71 ....................................................9

*Johnson v. Giles*,
    No. 1:23-cv-2444 (MKV), 2024 U.S. Dist. LEXIS 169497 (S.D.N.Y. Sep. 19,
    2024) ......................................................................................................................50

*Jones v. Combs*,
    No. 24-CV-1457 (JPO), 2025 U.S. Dist. LEXIS 54277 (S.D.N.Y. Mar. 24,
    2025) ..............................................................................................................9, 27, 28

*June-Il Kim v. Suk Inc.*,
    2013 U.S. Dist. LEXIS 24703 (S.D.N.Y. Feb. 22, 2013)..........................................16

*Jus Punjabi, LLC v. Get Punjabi, Inc.*,
    No. 1:14-cv-3318-GHW, 2015 U.S. Dist. LEXIS 66006 (S.D.N.Y. May 20,
    2015) ......................................................................................................................39

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013)..............................................................36

*Kaul v. Intercontinental Exch.*,
    No. 21-CV-6992 (JPO), 2022 U.S. Dist. LEXIS 164414 (S.D.N.Y. Sept. 12,
    2022) ......................................................................................................................14

*Koch v. Christie's Intern. PLC*,
    699 F.3d 141 (2d Cir. 2012)...................................................................24

*Lawson v. Rubin*,
    No. 17-cv-6404 (BMC), 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. Apr. 29,
    2018) ................................................................................................23

*Lederhouse v. Landau Arnold Laufer LLP*,
    2018 U.S. Dist. LEXIS 57590 (S.D.N.Y. Apr. 4, 2018)....................................24, 25

*Levin v. Sarah Lawrence Coll.*,
    747 F. Supp. 3d 645 (S.D.N.Y. 2024)........................................................18

*Lynch v. Amoruso*,
    232 F.Supp.3d 460 (S.D.N.Y. 2017).........................................................31

*Mack v. Parker Jewish Inst. for Health Care & Rehab.*,
    No. CV 14-1299, 2014 U.S. Dist. LEXIS 154577 (E.D.N.Y. Oct. 30, 2014) .........31

*Mackin v. Auberger*,
    59 F. Supp. 3d 528 (W.D.N.Y. 2014) ........................................................26

*Manas v. VMS Assocs., LLC*,
    863 N.Y.S.2d 4 (App. Div. 1st Dept. 2008)...................................................46

*Manhattan Telecommns. Corp. v. DialAmerica, Mktg., Inc.*,
    156 F. Supp. 2d 376 (S.D.N.Y. 2001).......................................................23

*Maria v. Mass. Inst. of Tech.*,
    No. 1:22-cv-10959 (ALC) (SN), 2024 U.S. Dist. LEXIS 176972 (S.D.N.Y.
    Sep. 30, 2024) ...................................................................................16

*Martinez v. 189 Chrystie St. Partners, LP*,
    No. 22-CV-3111 (VEC), 2023 U.S. Dist. LEXIS 149510 (S.D.N.Y. Aug. 22,
    2023) ................................................................................................18

*Martinez-Rodriguez v. Giles*,
    391 F.Supp.3d 985 (D. Id. 2019) ............................................................21

*Melwani v. Jain*,
    722 N.Y.S.2d 145 (1st Dep't 2001) ......................................................49, 50

*Meyers v. Waverly Fabrics, Div. of F. Schumacher & Co.*,
    65 N.Y.2d 75 (N.Y. 1985) ....................................................................49

*Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*,
    795 F. Supp. 639 (S.D.N.Y. 1992) .......................................................33, 34

*Mid Atlantic Perfusion Assoc., Inc., v. Westchester County Health Care Corp.*,
    864 N.Y.S.2d 100 (2d Dep't 2008)............................................................47

*Miller v. Carpinello*,
    No. 06-CV-12940 (LAP), 2007 U.S. Dist. LEXIS 86395 (S.D.N.Y. Nov. 19,
    2007) ...........................................................................................................32

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ........................................................28

*Nasso v. Bio Reference Lab'ys, Inc.*,
    892 F. Supp. 2d 439 (E.D.N.Y. 2012) ........................................................49

*Nesbeth v. N.Y.C. Mgmt., LLC*,
    2019 U.S. Dist. LEXIS 1830 (S.D.N.Y. Jan. 4, 2019)................................15

*Ngono v. Owono*,
    No. 23-339, 2024 U.S. App. LEXIS 5142 (2d Cir. Mar. 4, 2024)..............20

*One World, LLC v. Onoufriadis*,
    No. 21-374-cv, 2021 U.S. App. LEXIS 29370 (2d Cir. Sep. 29, 2021) ......23

*Orozco v. CVS Health Corp.*,
    No. 4:24-CV-885-P, 2025 U.S. Dist. LEXIS 92849, at *21 (N.D. Tex. May 1,
    2025), *adopted*, 2025 U.S. Dist. LEXIS 91654 (N.D. Tex. May 14, 2025) ..........32

*Paguirigan v. Prompt Nursing Employment Agency LLC*,
    286 F. Supp. 3d 430 (E.D.N.Y. 2017) ........................................................20

*Park S. Assocs. v. Fischbein*,
    626 F. Supp. 1108 (S.D.N.Y. 1986)............................................................32

*Petroff Amshen LLP v. Alfa Rehab. Pt Pc*,
    No. 21-847, 2022 U.S. App. LEXIS 4312 (2d Cir. Feb. 17, 2022) ............25

*Phunware, Inc.*, 2024 U.S. Dist. LEXIS 215428, at *8 ..........................................6

*Plusgrade L.P. v. Endava Inc.*,
    No. 1:21-cv-1530 (MKV), 2023 U.S. Dist. LEXIS 39114 (S.D.N.Y. Mar. 8,
    2023) ...........................................................................................................15

*Poulard v. Delphin*,
    No. 23-cv-791 (ER), 2024 U.S. Dist. LEXIS 188263 (S.D.N.Y. Oct. 16, 2024).............24, 25

*Pu v. Charles H. Greenthal Mgmt. Corp.*,
    No. 08-cv-10084 (RJH) (RLE), 2010 WL 774335 (S.D.N.Y. Mar. 9, 2010)........................23

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)............................................................................................42, 43

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)................................................................................................49

*Rotella v. Wood*,
    528 U.S. 549 (2000)..............................................................................................................24

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988)..................................................................................................14

*Scott v. Harbeck*,
    No. 24-CV-01506 (NCM) (LKE), 2024 U.S. Dist. LEXIS 213362 (E.D.N.Y.
    Nov. 21, 2024) ......................................................................................................................50

*Shanshia Touring, Inc. v. Ferguson*,
    No. 04 Civ. 3388 (MHD), 2006 U.S. Dist. LEXIS 43913 (S.D.N.Y. June 23,
    2006) .....................................................................................................................................31

*Sharbat v. Iovance Biotherapeutics, Inc.*,
    20 Civ. 1391, 2022 U.S. Dist. LEXIS 2328 (S.D.N.Y. Jan. 5, 2022)....................................48

*Simmons v. Reich*,
    No. 20-4114, 2021 U.S. App. LEXIS 32372 (2d Cir. Oct. 29, 2021) ....................................25

*Sira v. Morton*,
    380 F.3d 57 (2d Cir. 2004)..................................................................................................19

*Sirico v. F.G.G. Prods., Inc.*,
    896 N.Y.S.2d 61 (App. Div. 1st Dept. 2010)...................................................................49, 50

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
    17 F. Supp. 3d 207 (E.D.N.Y. 2014) ..................................................................................27

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)................................................................................................36

*St. Louis v. Perlitz*,
    No. 3:13-CV-1132 (RNC), 2016 U.S. Dist. LEXIS 47611 (D. Conn. Apr. 8,
    2016) .....................................................................................................................................22

*Stern v. Electrolux Home Prods., Inc.*,
    No. 22-CV-3679 (JMA)(ARL), 2024 U.S. Dist. LEXIS 17004 (E.D.N.Y. Jan.
    30, 2024) ...............................................................................................................................45

*Stillwell v. Fashion Nova, LLC*,
No. CV 21-7040-GW-MARx, 2022 U.S. Dist. LEXIS 54443 (C.D. Cal. Jan.
28, 2022) .......................................................................................................................21

*Strunk v. U.S. House of Representatives*,
68 Fed. Appx. 233 (2d Cir. 2003) ..................................................................................13

*Swanigan v. Young*,
No. 1:15-CV-1272, 2016 U.S. Dist. LEXIS 165591 (N.D.N.Y. Nov. 30, 2016) ....................7

*Sylo Supply, Inc. v. Juzihao Res. Mgmt. Co. Ltd. A.K.A. Brave Finder*,
No. 20-CV-5633 (EK)(MMH), 2023 U.S. Dist. LEXIS 176080 (E.D.N.Y.
Sep. 28, 2023) ...................................................................................................................7

*Taft v. Barresi*,
No. 5:24-cv-01930-TJH (DTB), 2025 U.S. Dist. LEXIS 84400 (C.D. Cal.
May 1, 2025) ....................................................................................................................27

*Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*,
01-CV-1574 (ILG), 2002 U.S. Dist. LEXIS 10737 (E.D.N.Y. Mar. 15, 2002) ...................32

*Tellez v. OTG Interactive, LLC*,
No. 15 CV 8984-LTS, 2016 U.S. Dist. LEXIS 131463 (S.D.N.Y. Sep. 26,
2016) ...............................................................................................................................47

*Toms v. Pizzo*,
4 F. Supp. 2d 178 (W.D.N.Y. 1998) ...............................................................................32

*U.S. v. Autuori*,
212 F.3d 105 (2d Cir. 2000) .............................................................................................35

*U.S. v. Dann*,
652 F.3d 1160 (9th Cir. 2011) ..........................................................................................19

*U.S. v. Marcus*,
628 F.3d 36 (2d Cir. 2010) ...............................................................................................20

*U.S. v. Raniere*,
55 F.4th 354 (2d Cir. 2022) ..............................................................................................20

*U.S. v. Rivera*,
799 F.3d 180 (2d Cir. 2015) .............................................................................................20

*United States v. Bonanno Organized Crime Family of La Cosa Nostra*,
683 F. Supp. 1411 (E.D.N.Y. 1988) .................................................................................32

*United States v. Coppola*,
671 F.3d 220 (2d Cir. 2012) .............................................................................................43

*United States v. Watts*,
    No. 09-CR-62 (CM), 2011 U.S. Dist. LEXIS 3976 (S.D.N.Y. Jan. 11, 2011) ...................... 32

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
    No. 03 Civ. 8606 (RWS), 2004 U.S. Dist. LEXIS 19501 (S.D.N.Y. Sep. 29,
    2004) ................................................................................................................................ 38

*Wang v. King*,
    No. 18 Civ. 8948 (JFK), 2020 U.S. Dist. LEXIS 13382 (S.D.N.Y. Jan. 27,
    2020) ................................................................................................................................ 32

*Williams v. Affinion Grp., LLC*,
    889 F.3d 116 (2d Cir. 2018) ........................................................................................... 35

*Winnie v. Sinagra*,
    No. 1:24-cv-00940, 2025 U.S. Dist. LEXIS 159289 (N.D.N.Y. Aug. 18, 2025) .................. 32

*Zamora v. Fit Int'l Grp. Corp.*,
    834 F. App'x 622 (2d Cir. 2020) ..................................................................................... 45

*Zirvi v. Flatley*,
    838 F. App'x 582 (2d Cir. 2020) ..................................................................................... 46

*Zunzurovski v. Fisher*,
    No. 23-cv-10881, 2024 U.S. Dist. LEXIS 62568 (S.D.N.Y. Apr. 3, 2024) ........................... 9

**Statutes**

18 U.S.C.S. § 1962 ............................................................................................................. 23, 25

18 U.S.C. § 371 ........................................................................................................................ 32

18 U.S.C. § 875(d) .................................................................................................................... 32

18 U.S.C. § 924(c) .................................................................................................................... 32

18 U.S.C. § 1341 ...................................................................................................................... 35

18 U.S.C. § 1343 ...................................................................................................................... 35

18 U.S.C. § 1512(b) ............................................................................................................. 34, 35

18 U.S.C. § 1513(e) ............................................................................................................. 34, 35

18 U.S.C. § 1519 ...................................................................................................................... 32

18 U.S.C. § 1589 ............................................................................................................ 3, 10, 15, 42

18 U.S.C. § 1589(b) .................................................................................................................. 22

18 U.S.C. § 1589(c)(2) .................................................................................................20

18 U.S.C. § 1591 ..............................................................................................3, 10, 15, 22

18 U.S.C. § 1591(a) .................................................................................................16, 17

18 U.S.C. § 1591(e)(2) .....................................................................................................17

18 U.S.C. § 1591(e)(3) .....................................................................................................16

18 U.S.C. § 1591(e)(5) .....................................................................................................18

18 U.S.C. § 1595 ......................................................................................................10, 22

18 U.S.C. § 1595(a) ................................................................................................. *passim*

18 U.S.C. § 1595(c)(1) .....................................................................................................15

18 U.S.C. § 1956 ..............................................................................................................38

18 U.S.C. § 1956(a)(1)(B) ...............................................................................................37

18 U.S.C. § 1956(c)(7) ...............................................................................................37, 38

18 U.S.C. § 1957 ..............................................................................................................37

18 U.S.C. § 1959 ..............................................................................................................32

18 U.S.C. § 1961(1) .........................................................................................31, 32, 33, 40

18 U.S.C. § 1961(4) .........................................................................................................28

18 U.S.C. § 1961(5) ...................................................................................................31, 42

18 U.S.C. § 1962(c) .......................................................................................23, 29, 30, 42

18 U.S.C. §§ 2421-23 .......................................................................................................33

26 U.S.C. § 7201 ..............................................................................................................32

Fla. Stat. § 198.33 ............................................................................................................31

Fla. Stat. § 448.110 ..........................................................................................................32

Fla. Stat. § 454.23 ............................................................................................................32

Fla. Stat. § 607.0505 ........................................................................................................32

Fla. Stat. § 777.04 ......................................................................................................32, 41

Fla. Stat. § 784.03 ......................................................................................................32

Fla. Stat. § 784.011 ....................................................................................................32

Fla. Stat. § 784.045 ....................................................................................................32

Fla. Stat. § 787.06 ......................................................................................................32

Fla. Stat. § 796.07 ......................................................................................................32

Fla. Stat. § 817.034 ....................................................................................................31

Fla. Stat. § 836.05 ......................................................................................................41

Fla. Stat. § 896.101 ....................................................................................................32

Fla. Stat. § 914.22 ......................................................................................................32

N.Y. Exec. Law § 296 .................................................................................................32

N.Y. Gen. Oblig. Law § 5-701(a)(1) ..........................................................................49

N.Y. Labor Law § 193 ................................................................................................32

N.Y. Labor Law § 198 ................................................................................................32

N.Y. Labor Law § 740 ................................................................................................32

N.Y. Labor Law § 741 ................................................................................................32

N.Y. Penal Law § 100.10 ............................................................................................32

N.Y. Penal Law § 105.15 ......................................................................................32, 40

N.Y. Penal Law § 110.00 ............................................................................................40

N.Y. Penal Law § 120.10 ............................................................................................32

N.Y. Penal Law § 120.14 ............................................................................................32

N.Y. Penal Law § 120.45 ............................................................................................32

N.Y. Penal Law § 125.25(1) ........................................................................................40

N.Y. Penal Law § 130.40 ............................................................................................32

N.Y. Penal Law § 135.60 ............................................................................................32

N.Y. Penal Law § 175.10 ......................................................................................31, 32

N.Y. Penal Law § 190.65 .................................................................................................31

N.Y. Penal Law § 195.00 .................................................................................................32

N.Y. Penal Law § 215.15 .................................................................................................32

N.Y. Penal Law § 230.34-a ..............................................................................................32

N.Y. Penal Law § 240.30 .................................................................................................32

N.Y. Penal Law § 265.01-265.03 .....................................................................................32

N.Y. Tax Law §§ 1801–07 ...............................................................................................31

Sherman Act §§ 1–2 .........................................................................................................32

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................................13

Fed. R. Civ. P. 9(b) ...........................................................................................5, 13, 45, 49

Fed. R. Civ. P. 12(b)(6) .............................................................................................2, 13

N.Y. C.P.L.R. 213(8) .......................................................................................................46

Pursuant to the Court's Order dated October 15, 2025 (ECF 54), Defendants Joseph Cartagena, Peter Torres, Richard Jospitre, Erica Moreira, Sneaker Addict Touring LLC and Slate, Inc. ("**Moving Defendants**") submit this Omnibus Memorandum of Law in support of their motion to dismiss Plaintiff Terrance Dixon's Complaint, dated June 19, 2025 ("**Complaint**") (ECF 3).

## PRELIMINARY STATEMENT

Terrance Dixon's Complaint is the latest in his calculated campaign of defamation, extortion, and malicious harassment designed to destroy world renowned musician Joseph "Fat Joe" Cartagena's reputation and business. Dixon worked as Cartagena's hype-man from 2005 through 2020. During that entire fifteen-year period—as well as for the five years after they amicably parted ways—Dixon never raised any issues or sought any additional compensation from Cartagena. Then, in early 2025, Dixon began to falsely claim that Cartagena should have paid him more for his hype-man services, and never paid him royalties that Cartagena supposedly orally promised despite **more than a decade** passing since Dixon first learned of these purported injuries.

When Cartagena refused to pay money to Dixon that he did not owe, Dixon hired Tyrone Blackburn—an attorney who has been admonished and sanctioned by numerous judges for improperly filing cases in federal court to garner mediation attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly; filing admittedly false claims espousing absurd understandings of the Racketeer Influenced and Corrupt Organizations ("**RICO**") Act; knowingly misrepresenting case law; engaging in conduct falling below the level of professional diligence required of attorneys; and violating his duty of candor to the court. True to form, Dixon and Blackburn heaped layers upon layers of outrageous and false allegations on

1

Cartagena that went well beyond the supposed wage and royalty claim, and sought to extract money from Cartagena by first defaming him and then filing this lawsuit.[1]

The Complaint contains knowingly false and outrageous allegations against Cartagena and many others having absolutely nothing to do with Dixon's alleged entitlement to compensation for past services rendered and royalties. These include unrelated tax fraud claims and unspeakable acts—such as statutory rape, forced labor, and sex trafficking—involving people that Blackburn admitted are not his clients. The Complaint couches these false allegations under sweeping federal claims under the RICO Act and the Trafficking Victims Protection Act ("**TVPA**"). It also asserts facially deficient state law claims for Dixon's original (although well after-the-fact) compensation dispute, including fraud, unjust enrichment, quantum meruit, and constructive trust. These claims are brought not only against Cartagena, but also against Cartagena's artist management company (Roc Nation), an unrelated business manager (Richard Jospitre), acquaintance (Peter Torres), attorney (Erica Moreira), and other businesses (Sneaker Addict and Slate).

Yet despite the sprawling and scattershot nature of Dixon's 775-paragraph Complaint, nowhere in there does Dixon actually claim to possess a single contract, document, text message or writing otherwise evidencing Cartagena's alleged promise to pay him the money he seeks or the royalty credits he believes he deserves. Nor does the Complaint contain a "short and plain" statement of his case. Just the opposite. With nearly 800 paragraphs of contradictory, confusing, and opaque allegations, the Moving Defendants have been forced to expend resources decoding Dixon's allegations and claims. And while the Complaint can and should be dismissed for these reasons alone, each claim is moreover facially deficient under FRCP 12(b)(6).

---

[1] Dixon and Blackburn's misconduct are the subject of Mr. Cartagena's complaint against them, which is pending before this Court in the coordinated action.

*TVPA*. Dixon alleges the Moving Defendants violated the TVPA because Cartagena, but no other Moving Defendant, purportedly compelled his labor and involvement in commercial sex acts through threats of serious harm, in contravention of federal "Forced Labor" and "Sex Trafficking" crime statutes (18 U.S.C. §§ 1589, 1591). This outrageous claim is false, and while it must be accepted as true for purposes of this motion, it is fundamentally deficient and must be dismissed. The TVPA claim is time barred because Dixon fails to allege that Cartagena undertook any such actions violating the forced labor and sex trafficking statutes within the TVPA's statute of limitations (i.e. the last ten years). Dixon also has not plausibly alleged that Cartagena violated the sex trafficking statute because he has not alleged that Dixon engaged in—let alone was coerced into—any commercial sex act, or that Cartagena obtained Dixon's labor or involvement *by means* of threats or serious harm. And whereas forced labor cases "[t]ypically involve" certain hallmarks like squalid or otherwise intolerable living conditions, extreme isolation, threats of legal process such as arrest or deportation, and exploitation of the victim's lack of education and language barriers, this case has none. *Claros v. Marvin's Refrigeration Corp.*, No. 1:24-cv-1197 (ECC/PJE), 2025 U.S. Dist. LEXIS 180868, at *10-11 (N.D.N.Y. Sep. 16, 2025). Indeed, Dixon himself admits that he is an adult male with over fifteen years of experience travelling for work and managing security, including as Cartagena's bodyguard. He does not allege that he was forced to live in intolerable conditions or in isolation, or that Cartagena otherwise capitalized on any idiosyncratic vulnerabilities. To the contrary, Dixon alleges that Cartagena intentionally left him while travelling abroad—i.e., in circumstances where Dixon *could not* provide any labor or services to Cartagena— and that Dixon eventually discontinued associating with Cartagena altogether. It strains credulity that a "reasonable" person in his shoes, with the means and know-how to "escape" his supposed

forced circumstances, would have continued performing labor or sex acts under the scenario Dixon alleges, as is required to show a violation under Dixon's theory of the case.

***RICO***. Dixon's RICO claim lists twenty-four predicate acts, encompassing a wide range of allegations including sex trafficking, attempted murder, witness tampering, and tax evasion. This claim warrants dismissal for myriad reasons. Dixon's allegations regarding *who* violated each purported predicate act and which racketeering statute each implicates are inconsistent with each other or otherwise vague and therefore fail to give adequate notice of his claims. Dixon moreover lacks standing under RICO because the Complaint fails to show how any of the alleged predicate acts caused harm to his business or property. Even if he had standing, the RICO claim is plainly time-barred under RICO's four-year statute of limitations. Under established Second Circuit precedent, Dixon's claims accrued upon his actual or inquiry notice of his purportedly unpaid compensation and royalties in 2008—when Dixon's first purportedly co-authored tracks were published, and accordingly, when he first was not paid—meaning his claims would have expired four years after such notice (i.e., 2012), a decade plus before he filed this Complaint. And even if timely, Dixon fails to adequately state the existence of an enterprise or any pattern of racketeering activity. The Complaint instead relies entirely on conclusory allegations and recitations of law concerning the relationships between purported enterprise members, the timing of their involvement, and the actions underlying the various purported predicate acts, thereby failing to establish the necessary elements of a RICO violation.

***Fraud Claims***. Dixon additionally asserts common law torts of Fraudulent Concealment and Fraudulent Misrepresentation, both of which fail for at least six independent reasons. *First*, Dixon's claims are time-barred under New York's six-year statute of limitations for fraud claims for the same reason his RICO claim is time-barred—Dixon was on actual or inquiry notice of his

unpaid wages, revenues, and royalties as early as 2008. *Second*, Dixon's fraud claims are based on Cartagena's promises to pay him royalties and performance fees and are therefore duplicative of Dixon's (unpled) breach of contract claim. *Third*, the fraudulent concealment claim fails because Cartagena had no duty to "disclose" and relies on four purported omitted "facts" that Dixon either already knew or that were plainly immaterial given his fifteen-year course of conduct. *Fourth*, the fraudulent misrepresentation claim fails because it is only premised on non-actionable statements of future intent. *Fifth*, Dixon's alleged reliance on these purported misrepresentations is unjustifiable considering he continued working for Cartagena for fifteen years despite believing he was not paid what he was owed. And *sixth*, even if Dixon could justify his reliance, the allegations fail to meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b).

**Equitable Claims**. Finally, Dixon alleges that Cartagena is liable under the common law doctrines of "unjust enrichment," "quantum meruit," and "constructive trust." Each claim is facially deficient. Constructive trust is not a cognizable cause of action and the unjust enrichment and quantum meruit claims are plainly barred by New York's statute of frauds, which voids unwritten agreements of indefinite duration such as Cartagena's purported oral promises.

At bottom, the Complaint is more telling for what it omits than what it contains: any memorialization of the purported assurances underlying all of his theoretical claims; dates of *anything* other than vague, nonspecific years-long ranges; any fraudulent statements or descriptions of writings or communications; any description of how Dixon was unable to leave the work environment he derides as coercive and manipulative; or any actual relationship between Dixon and any of the Defendants other than Cartagena. This is because the facts as pled by Dixon himself demonstrate that Dixon worked for Cartagena for fifteen years, never lacked the ability to

"leave" at any time he wanted, and even failed to complain for several years *after* he parted ways

with Cartagena. Thus, once the Complaint's convoluted and conclusory allegations are carefully

examined, it becomes unequivocally clear that Dixon has failed to state any plausible claim for

relief. The fatal flaws inherent in his claims mandate that the Complaint be dismissed with

prejudice.

## STATEMENT OF FACTS

Unless otherwise noted, the Moving Defendants summarize the following facts from the

Complaint (ECF 3). While the Moving Defendants dispute the allegations of wrongdoing, for

purposes of this motion, all non-conclusory factual assertions are assumed to be true.

### I.    Dixon Alleges He Was Cartagena's "Creative Partner" From 2005 to 2020

Cartagena, who is professionally known as "Fat Joe," is an internationally recognized

recording artist. Compl. ¶ 1. Dixon alleges that from 2005 through 2020,[2] he served as Cartagena's

"creative partner," acting as on-stage "hype man," co-writing lyrics, structuring hooks, recording

background vocals, managing travel logistics, providing personal security, and contributing to

branding strategies and studio ideation. Compl. ¶¶ 1, 48, 50-52, 81.

Dixon claims he co-authored "dozens of songs"[3] (the "**Recordings**") that appeared on four

of Cartagena's albums: *Loyalty*, *Elephant in the Room*, *Jose 2*, and *The Darkside Vol. 1*.[4] *Id*. ¶¶

53-54. According to U.S. Copyright Office records, Cartagena released these albums and

---

[2] While the Complaint also states that Dixon stopped working for Cartagena in 2022, Compl. ¶¶ 78, 504, the Court need not accept these conflicting allegations, particularly where Dixon has not alleged any specific conduct suggesting that he worked for Cartagena after 2020. *See Phunware, Inc.*, 2024 U.S. Dist. LEXIS 215428, at *8.

[3] Dixon claims he co-authored the following Recordings: "All the Way Up," "Congratulations," "Money Over Bitches," "Ice Cream," "Cupcake," "300 Brolic," "No Problems," "Winding on Me," "Black Out," "Dirty Diana," "Porn Star," "Okay Okay," "Music," "Ha Ha," "How Did We Get Here," "I Chopped Up All The Way Up," "Crack House," "All I do is (Remix verse)," "Red Café (Remix)," "Coca Baby," and "Get It For Life." *Id*. ¶ 53.

[4] Dixon alleges that at least one of the Recordings appeared on the album *The Fugitive* (*Id*. ¶ 54), but Cartagena never released an album with that name.

Recordings between 2002 and 2010. *See* Compl. ¶¶ 53-54; Decl. of Jordan W. Siev in Support of Defendants' Omnibus Motion to Dismiss, Exs. A-T.[5]

Dixon alleges that Cartagena "oral[ly] assur[ed]" him that he would receive a "15% ownership interest in every track to which he contributed" and "15% of gross earnings derived from those songs" ("**Royalties**"). Compl. ¶¶ 89, 413. He claims Cartagena or his agents would include Dixon's interest on "Letters of Direction" or "Split Sheets" sent to performing rights organizations ("**PRO**"), which would then distribute Dixon's pro-rata Royalties. *Id*. ¶¶ 89, 424. Dixon also alleges that, although he did not know it while working for Cartagena, booking and performance agreements allocated about $3,000 per show for Dixon's hype man role, plus a per diem of about $100 per day (collectively, "**Performance Fees**"). *Id*. ¶¶ 107, 112.

Notably, Dixon's does not, because he cannot, reference any documents or correspondence reflecting Cartagena's purported promises.

## II.     Dixon Claims He Continued Collaborating With Cartagena Despite Never Receiving The Royalties Or Full Performance Fees He Falsely Claims Cartagena "Orally" Promised Him

Dixon alleges he was not listed as a co-author of the Recordings and received no compensation in connection with them. Compl. ¶¶ 34-35 91, 93. He further claims Cartagena withheld or underpaid his Performance Fees and subjected him to a challenging work environment, describing a threat to cancel his "return flight home" sometime after he "expressed discomfort" with a "coercive sexual dynamic." (Compl. ¶¶ 34-35, 91, 93, 349(1), 357(1).)

---

[5] The Court "may take judicial notice of the copyright registration information set forth in the United States Copyright Offices Public Catalog[,]" including the "the dates of first publication" for the Recordings. *Sylo Supply, Inc. v. Juzihao Res. Mgmt. Co. Ltd. A.K.A. Brave Finder*, No. 20-CV-5633 (EK)(MMH), 2023 U.S. Dist. LEXIS 176080, at *14 (E.D.N.Y. Sep. 28, 2023); *see also Swanigan v. Young*, No. 1:15-CV-1272, 2016 U.S. Dist. LEXIS 165591, at *10 (N.D.N.Y. Nov. 30, 2016) (taking judicial notice of copyright registration dates). Although Cartagena argued in the Cartagena Action that the Court should strike and/or disregard certain purported copyright records that Dixon and Blackburn sought to introduce for their motion to dismiss (Cartagena ECF 57), Cartagena did so because the dates of publication of the Recordings have nothing to do with allegations in the Cartagena Action.

Despite this, Dixon continued to work for Cartagena, performing "at more than 200 shows." *Id.* ¶ 386. He alleges that although he "tried to leave on multiple occasions"—though he never explains *what* or *when* or *how* he "tried to leave"—Cartagena "used coercive tactics like begging and pleading with Plaintiff to stay and stating that Plaintiff is all he has on his side." *Id.* ¶ 349(3). According to Dixon, when Cartagena's "begging began to fall on deaf ears," Cartagena told him that "nobody leaves Terror Squad in one piece." *Id.* ¶ 349(4).

## III.    Dixon Stops Working With Cartagena In 2020 And Begins Harassing Him

Dixon alleges he stopped working with Cartagena in 2020. Compl. ¶¶ 48, 407. He does not plead why he left. In late 2023, Dixon published a series of Instagram posts (falsely) accusing Cartagena of sexually assaulting a woman nearly a decade earlier. *See* Exhibits E and F to Cartagena's Second Amended Complaint ("**Cartagena Compl.**") in the *Cartagena* action ("**Cartagena Action**"); Cartagena Compl. ¶¶ 38-39. He also made posts calling Cartagena a "pedophile" and alleging sexual relationships with underage girls, including a "16 year old" whom Dixon claims Cartagena dated for five years. In January 2024, Dixon targeted Cartagena's wife, sending a text to Cartagena's manager and publishing Instagram posts accusing both Cartagena and his wife of infidelity. Cartagena Compl. ¶¶ 38-39, 45-51, 59-62; Exs. E-F, J-R, V-X.

Dixon pleads that, in 2024, four years after ending his relationship with Cartagena, one of Cartagena's former associates purportedly told him that Cartagena received $3,000 to $5,000 per show for Dixon's role, while Dixon was paid only up to $250 per show. Compl. ¶¶ 71, 349, 390. The associate also allegedly revealed that Cartagena omitted Dixon's name from split sheets submitted to PROs. *Id.* ¶¶ 71, 719.

In March 2025, Dixon posted online about the alleged underpayments, accusing Cartagena of a "long history of stealing and robbing people" and referencing his own contributions to

Cartagena's work. Cartagena Compl. ¶¶ 54-57; Exs. S-U. In April 2025, Dixon appeared on a podcast alleging that Cartagena underpaid his Performance Fees and failed to pay Royalties. *Id.*

## IV. Dixon Retains Counsel Who Transforms a Simple Royalty and Performance Fee Dispute Into A Sprawling Sex Trafficking, Human Trafficking, and RICO Complaint Involving Cartagena, His Businesses, and Associates

Dixon retained attorney Tyrone Blackburn. Blackburn has a sordid history the Southern District of New York.[6] For example, Judge Denise Cote found that a "reasonable inference from Blackburn's pattern of behavior is that he improperly files cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly." *Zunzurovski v. Fisher*, No. 23-cv-10881, 2024 U.S. Dist. LEXIS 62568, at *14 (S.D.N.Y. Apr. 3, 2024). Similarly, Judge Paul Oetken criticized Blackburn for submitting briefs "replete with inaccurate statements of law, conclusory accusations, and inappropriate ad hominem attacks on opposing counsel." *Jones v. Combs*, No. 24-CV-1457 (JPO), 2025 U.S. Dist. LEXIS 54277, at *9 (S.D.N.Y. Mar. 24, 2025). In dismissing an earlier RICO action filed by Blackburn, Judge Oetken expressed his shock by Blackburn's statement that the defendant was "presumed guilty of being a RICO criminal organization," and stated that "any licensed member of the bar would espouse such an absurd understanding of the law is not just distributing, but shocking." *Id.*

Blackburn sent Cartagena a letter on March 23, 2025 asserting Dixon's claims for Performance Fees and Royalties and demanding that Cartagena grant Dixon retroactive songwriting credit and monetary settlement. Cartagena Compl. ¶ 9. When Cartagena refused,

---

[6] Blackburn's misconduct has not been limited to cases in the Southern District of New York. In a case in the Western District of Pennsylvania, Judge William S. Stickman IV recently revoked Blackburn's *pro hac vice* admission and sanctioned him $5,000 because Blackburn's conduct "falls below the level of professional diligence required of attorneys." *Jakes v. Youngblood*, No. 24-CV-1608 (W.D. Pa. Oct. 6, 2025), ECF 71. In a case before the New York Supreme Court, Blackburn was sanctioned for violating his duty of candor and filing motion papers riddled with incorrect and false citations. *Facey v. Fisher*, No. 152088/2025 (N.Y. Sup. Ct. Sept. 15, 2025), NYSCEF Doc No. 50.

Blackburn sent a second letter reiterating the demands and accusing Cartagena of having sex with minors, forced labor, and coercive sex trafficking. *Id.* ¶ 146.

Blackburn then spoke with Defendant Moreira, Cartagena's personal attorney, on April 23, 2025, emphasizing that he only wanted to resolve Dixon's Royalty and Performance Fee claims, stating, "Homeland Security and all that stuff aside … my goal was to see if we can have some sort of resolution to the claims that my client has regarding what he feels to be, you know, his contributions that was not compensated" and that "[t]his is not about Joe's decisions in the bedroom with whomever he chooses to sleep with. This is business." *Id.* ¶ 80.

## V. Dixon Files This Lawsuit Against Cartagena, His Businesses, and Associates

On June 19, 2025—more than fifteen years after allegedly not receiving Royalties and Performance—Dixon (through Blackburn) filed this sweeping complaint against the Moving Defendants and Roc Nation.[7] The Complaint alleges seven causes of action, only two of which—claims under the TVPA and RICO—appear to be brought against any defendant other than Cartagena.

*TVPA*. Dixon alleges that Cartagena is civilly liable under the TVPA because he allegedly engaged in forced labor under 18 U.S.C. § 1589 and sex trafficking under 18 U.S.C. § 1591. Dixon also alleges the Moving Defendants are liable under the TVPA because they benefited from participating "in a venture" that they "knew or should have known engaged in an act in violation of" the TVPA. 18 U.S.C. § 1595.

*RICO*. Dixon asserts RICO claims against the Moving Defendants for allegedly engaging in twenty-four purported "predicate acts:"

---

[7] The Court dismissed Dixon's claims against several John Doe individuals and corporations after Dixon failed to identify and serve them. ECF 32.

- In Predicate Acts 1-3, 15, and 19-21 (collectively, the "**Dixon Scheme**"), Dixon alleges that Cartagena forced Dixon to provide labor, services, and sex acts while depriving Dixon of fair compensation and then attempted to silence him from speaking out. These predicate acts concern alleged forced labor, sex trafficking, witness tampering, coercion, enticement in prostitution, transmission of threats, harassment, stalking, conspiracy to deprive civil rights, sexual abuse, wire fraud, and falsification of records statutes.

- In Predicate Acts 4-6, 10, 13-14, 17 (collectively, the "**Violent Crimes Scheme**"), Dixon alleges a series of attempted or actual assaults, battery, murder, or other violent crimes against various third parties, including several undisclosed individuals and several prominent rappers. Compl. ¶¶ 525-55, 593-603, 626-47, 672-81. The purported crimes involved in this scheme include violent crimes in aid of racketeering, actual, attempted, and conspiracy to commit murder, assault and battery, menacing, coercion, criminal use and possession of a weapon, criminal solicitation, witness tampering, and conspiracy to commit a federal offense. The purposes of this scheme were to "achieve and maintain dominance" over "industry rivals," "punish perceived betrayals," and "solidify enterprise authority" and "loyalty" while "silenc[ing] dissent." Compl. ¶¶ 633, 647, 680. Only defendants Cartagena and Torres are alleged to have been involved in the predicates making up the Violent Crimes Scheme.

- In Predicate Acts 7-8, 11-12, 16, 18, and 22-24 (collectively, the "**Laundering and Tax Fraud Scheme**"), Dixon alleges that Cartagena used various companies including Slate and Sneaker Addict as a front for laundering and tax evasion in violation of numerous federal and state statutes prohibiting money laundering, wire fraud, mail fraud, unfair competition and antitrust violations, victim retaliation, unlawful discriminatory practices, official misconduct, falsification of records and retaliatory discharge.

The Complaint also alleges one standalone predicate act. Predicate Act 9 (the "**Interstate Transportation Claim**") alleges that Cartagena "arranged and facilitated" interstate and international travel of underage girls for sexual exploitation in violation of the Mann Act, disguising the travel as legitimate work (e.g., models, brand ambassadors, music/tour personnel). Compl. ¶¶ 585-87. Cartagena's purported purpose was to make the girls "sexually available," often in exchange for proximity to his celebrity, promises of industry exposure, and financial dependence. *Id.* ¶ 587. Cartagena purportedly directed others to book travel, provide cash allowances, and cover hotel stays for these minors while controlling their movements and access

to resources, but cut them off financially once they became "noncompliant." *Id.* ¶¶ 588-89. No other Defendant is implicated in the Interstate Transportation Claim.

**Fraud**. Dixon alleges Cartagena is liable under common law fraudulent concealment and fraudulent misrepresentation causes of action for making purported misrepresentations regarding Dixon's compensation. Specifically, Dixon alleges that Cartagena withheld information concerning his performance and touring budgets and affirmatively misrepresented he would pay Dixon the Royalties and Performance Fees.

**Quasi-Contract**. Dixon alleges Cartagena is liable under the common law theories of unjust enrichment and quantum meruit for unjustly retaining benefits from Dixon's services—including the Royalties and Performance Fees, as well as the intangible "commercial and brand value" Cartagena purportedly derived from Dixon's labor—while failing to compensate Dixon for the same. Compl. ¶¶ 388, 410.

**Constructive Trust**. Similarly, Dixon alleges that the imposition of a "constructive trust" is appropriate given the purported unjust enrichment and continuing nature of harm Dixon claims to incur. Compl. ¶¶ 439-48.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

## ARGUMENT

The Complaint fails to place the Moving Defendants on fair notice of the claims asserted against them and state a plausible claim for all seven counts of the Complaint in violation of FRCP 8(a) and 12(b)(6). Each claim suffers a fatal flaw warranting dismissal with prejudice. The TVPA claim is facially incoherent, pleading that Dixon was forced to work for Cartagena and engage in sex acts with others at Cartagena's demand despite Cartagena's purported frequent threats to leave *Dixon* if his purported demands were not met. Dixon lacks standing to assert his insufficiently pled RICO claim, and both the RICO and fraud claims are plainly time barred in any event. The fraud claims are moreover premised entirely on non-actionable statements or omissions and are otherwise insufficiently pled under FRCP 9(b). The unjust enrichment and quantum meruit claims are plainly barred by the statute of frauds. And the constructive trust claim is not a valid cause of action. Accordingly, the Complaint must be dismissed with prejudice.

## I.    The Complaint is a Prolix Shotgun Pleading that Obscures the Asserted Claims in Violation of Federal Rule of Civil Procedure 8.

A plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each allegation must be "simple, concise, and direct." *Id*. at 8(d)(1). A plaintiff violates these requirements when, as here, the pleading is so confused, ambiguous, or unintelligible that its substance is obscured. *See Strunk v. U.S. House of Representatives*, 68 Fed. Appx. 233, 235 (2d Cir. 2003).

This dispute concerns alleged Royalties and Performance Fees deriving from one purported oral agreement. Despite the straightforward nature of the claims, the Complaint spans 157 pages and 775 paragraphs. It is filled with irrelevant quotations (*see e.g.*, Compl. ¶¶ 213-14), asides (*id.* ¶ 14[1]), and inflammatory rhetoric (*id.* ¶¶ 357, 732) but few, if any, concrete facts. Such a pleading amounts to a "prolix and unintelligible conspiracy theory novel" because it fails "to provide fair

notice of the claims and enable the adverse party to answer the complaint and prepare for trial."

*Kaul v. Intercontinental Exch.*, No. 21-CV-6992 (JPO), 2022 U.S. Dist. LEXIS 164414, at *14

(S.D.N.Y. Sept. 12, 2022) (internal quotations omitted); *see also Salahuddin v. Cuomo*, 861 F.2d

40, 43 (2d Cir. 1988) (dismissing 15-page, single spaced complaint filed by *pro se* plaintiff as

unnecessary long and detailed given the nature of the allegations); *Blakely v. Wells*, 209 F. App'x

18, 20 (2d Cir. 2006) (affirming dismissal of complaint spanning "57 pages and contain[ing] 597

numbered paragraphs" because it was "was far from short or plain").

The Complaint also includes numerous inherent inconsistencies rendering it impossible for

the Moving Defendants to determine what claims are being brought against them. For example,

Paragraph 315 of the Complaint includes a table entitled "Appendix A – Predicate Acts Summary

Chart (Cartagena Enterprise)" purporting to list twenty-four different "predicate acts" supporting

Dixon's RICO claim. These acts do not align with the narrative allegations of each purported RICO

predicate acts later described in the "Cause of Action" section of the Complaint, *see* Compl. ¶¶

504-759, which allege different participants, statutes violated, and schemes. This incoherent

structure and terminology "deprives the Moving Defendants of any meaningful ability to frame a

response or defense." *Agudelo v. Recovo Mortg. Mgmt. LLC*, No. 22-cv-4004 (JMA)(LGD), 2025

U.S. Dist. LEXIS 113304, at *45 (E.D.N.Y. June 13, 2025).

The Complaint also improperly engages in group pleading by failing to specify which

Defendants are subject to each count or the specific allegations underlying those claims. *See e.g.*,

Compl. ¶ 17 ("Defendants engaged in deliberate tax fraud schemes by submitting intentionally

inflated and fraudulent income reports"); *id.* ¶ 80 (alleging conditions "deliberately crafted and

maintained by Defendants to extract labor"); *id.* ¶ 83 ("Defendants intentionally withheld credit,

royalties, backend profits, and publishing interests"); *id.* ¶ 109 ("Defendants instructed Plaintiff's

accountant to fabricate wage statements and inflate W-2s submitted to the IRS"). Such group pleading deprives each Defendant of fair notice and is also sufficient grounds for dismissal. *See, e.g.*, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (complaint alleging violations by "defendants" dismissed for failure to "differentiate"); *Plusgrade L.P. v. Endava Inc.*, No. 1:21-cv-1530 (MKV), 2023 U.S. Dist. LEXIS 39114, at *14 (S.D.N.Y. Mar. 8, 2023) (dismissing complaint for engaging in group pleading); *Nesbeth v. N.Y.C. Mgmt., LLC*, 2019 U.S. Dist. LEXIS 1830, at *10 (S.D.N.Y. Jan. 4, 2019) (dismissing case *sua sponte* where the "substance of the complaint and its claims … are ambiguous and disguised" as to certain defendants).

## II.    Dixon Fails to State a Plausible or Timely Claim Under the TVPA (Count I)

The TVPA is designed to combat serious criminal conduct—sex trafficking (18 U.S.C. § 1591) and forced labor (18 U.S.C. § 1589)—and provides a civil remedy only where a plaintiff can plausibly allege knowing participation in these crimes. *See* 18 U.S.C. § 1595(a). Though Dixon does not clearly state *who* he believes committed these trafficking crimes, he appears to base his civil claim on purported criminal violations by Cartagena only and "venture" participation by the other Moving Defendants. Dixon's TVPA claim, however, is both time-barred and fundamentally deficient. It is built on a foundation of empty, conclusory buzzwords—"forced," "required," "compelled," and "coerced"—with virtually no concrete facts, actionable conduct, dates, or details that would support a TVPA violation. The claim should be dismissed in its entirety.

### A.    Dixon's TVPA Claims Are Time Barred

Civil claims under the TVPA must be brought within "10 years after the cause of action arose[.]" 18 U.S.C. § 1595(c)(1). Dixon, however, does not allege any specific acts of forced labor or sex trafficking after June 19, 2015 (*i.e.*, within the ten years before Dixon filed the Complaint). Dixon's TVPA claim is thus time-barred. *Cf. Fisher v. Valley Stream Cent. High Sch. Dist.*, No. 2:23-cv-3449, 2025 U.S. Dist. LEXIS 166871, at *87 (E.D.N.Y. Aug. 27, 2025) (dismissing claim

as time barred where the complaint "fails to allege a single action … that falls within the applicable … limitations period."); *June-Il Kim v. Suk Inc.*, 2013 U.S. Dist. LEXIS 24703, at *12 (S.D.N.Y. Feb. 22, 2013) (same).

### B.    Dixon Fails to State a Plausible Sex Trafficking Violation

Dixon lacks standing to bring a TVPA claim based on sex trafficking and fails to plead the elements of a claim.

### 1.    Dixon Lacks Standing

To state a TVPA claim, Dixon must be a "victim" of a trafficking act. *See* 18 U.S.C. § 1595(a). To show he was a victim of sex trafficking, Dixon must allege he was recruited, enticed, harbored, transported, provided, obtained, maintained, patronized or solicited to engage a commercial sex act. *See* 18 U.S.C. § 1591(a). Dixon fails to do so.

A "commercial sex act" consists of "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Dixon, however, does not (because he cannot) allege that he engaged in a sex act. Nor does he allege (because he cannot) that anyone— let alone Cartagena or any other Moving Defendant—recruited, enticed, harbored, transported, provided, obtained, maintained, patronized or solicited him to engage a commercial sex act. Indeed, Dixon does not (because he cannot) allege that the Moving Defendants did so ***knowing*** that he would be coerced into engaging in a commercial sex act. Dixon is thus not a "victim" and lacks standing to bring a claim under the TVPA.

Dixon's attempt to plead around these defects is futile. He alleges that engaging in sex was "directly tied to" his "job retention, income access, and travel home." Compl. ¶ 357. These allegations, however, are insufficient to plead that the purported sex acts involved contemplated the exchange of anything of value. *Cf. Maria v. Mass. Inst. of Tech.*, No. 1:22-cv-10959 (ALC) (SN), 2024 U.S. Dist. LEXIS 176972, at *55 (S.D.N.Y. Sep. 30, 2024) (dismissing TVPA claim

where plaintiff alleged that "she was deprived of future employment, received insufficient support, and felt pressured to work" because complaint was otherwise "devoid" of facts suggesting that defendant "propositioned her for sex in exchange for something of value[.]")

        2.      Dixon Fails To State A Claim Under The Sex Trafficking Statute

To state a claim for sex trafficking under the TVPA, Dixon must plausibly allege that the Moving Defendants: (*a*) recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited a person, (*b*) knowing or recklessly disregarding that coercion would be used, (*c*) to cause the person to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a). The Complaint fails to plausibly state these elements.

*First*, Dixon does not plead a direct claim against Torres, Jospitre, Moreira, Sneaker Addict or Slate because Dixon does not allege that they recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited Dixon, let alone that they did so with knowledge that coercion would be used to cause Dixon to engage in a commercial sex act.[8] *See, e.g.*, *C.C. v. Jamal F. Rashid*, No. 2:23-cv-02056-GMN-BNW, 2025 U.S. Dist. LEXIS 122420, at *31-33 (D. Nev. June 26, 2025) (the "first element of direct violator perpetrator liability" is not shown where complaint "is devoid of any allegation that [defendants] knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained" the plaintiff).

*Second*, Dixon does not plausibly plead that Cartagena used coercion to cause Dixon to engage in a commercial sex act. The TVPA defines coercion as: (A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process. 18 U.S.C. §

---

[8] As noted, Dixon fails to state a claim for venture liability under 18 U.S.C. § 1595(a) against them. *See infra* § II.D.

1591(e)(2). Dixon attempts to articulate "threats of serious harm," but his allegations are few, far between, internally inconsistent, and, ultimately, futile.

For harm to constitute "serious harm," it must be "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing" the coerced act. 18 U.S.C. § 1591(e)(5). The Complaint only contains a handful of bare allegations that threats of harm were used to compel Dixon to engage in a sex act, and these are insufficient to state a claim.

For example, Dixon alleges (without elaboration) that Cartagena "require[ed]" or "direct[ed]" him to engage in sexual acts, Compl. ¶ 356(1) & (2), or that Cartagena "forced" him to engage in such acts, *id.* ¶ 357(2)-(3). These rudimentary and conclusory allegations are insufficient to state a claim. *Cf. Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 667 (S.D.N.Y. 2024) ("Plaintiffs' allegations that they were subjected to sexual assault and forced to perform sex acts … are mere conclusory statements unsupported by factual allegations."); *Martinez v. 189 Chrystie St. Partners, LP*, No. 22-CV-3111 (VEC), 2023 U.S. Dist. LEXIS 149510, at *12 n.11 (S.D.N.Y. Aug. 22, 2023) ("Plaintiff's allegations that Defendants knew she would be required to perform sex acts with men whom she recruited are largely conclusory.").

Dixon also vaguely alludes to an incident where Cartagena allegedly cancelled Dixon's flight ***after*** Dixon did not participate in a sexual encounter. Compl. ¶¶ 357(1), 513. Yet, for a threat of serious harm to have caused Dixon to engage in sex act, logically, the threat must have preceded the sex act. And even if it did, threats of abandonment do not constitute threats of serious harm absent some showing that the person's circumstances or background placed them in a position of vulnerability. *Cf. Dumapias v. Haybyrne*, No. 1:20-cv-00297 (RDA/TCB), 2020 U.S. Dist. LEXIS 253331, at *38 (E.D. Va. Nov. 2, 2020) (finding allegations of "serious harm" insufficient where

18

based, *inter alia*, on "a threat to abandon [plaintiff] in a situation that would leave her all but helpless"). This is especially true here considering Dixon's background. A reasonable person with years of experience "handl[ing] … domestic and international tours" and providing "logistical support," Compl. ¶¶ 81(4), 386(3), would not view a canceled flight as a "serious harm," the threat of which would cause that person to engage in a sex act.

Dixon also vaguely alleges that, at some point, Cartagena "reinforc[ed] the consequences of disloyalty or challenging his authority" by stating that "no one exits Terror Squad in one piece." Compl. ¶ 148. But these vague "threats" are not enough because the Complaint provides no "indication of the time, place or circumstances at issue." *Sira v. Morton*, 380 F.3d 57, 75 (2d Cir. 2004) (dismissing argument premised on "conclusory" threats). Notably, Dixon does not tie this alleged statement to any threats of serious harm if he did not engage in commercial sex acts. Rather, Dixon pleads that the statement was made in reference to others who had fallen "out of favor," "disloyalty," and "leav[ing]." Compl. ¶¶ 123, 148, 349(4). No reasonable person who served as a "bodyguard and handler" responsible for "security," *id.* ¶¶ 81(4), 505, would be threatened into engaging in commercial sex by vague and purportedly routine statements that no one "exits Terror Squad in one piece." *Id.* ¶ 148.

Finally, Dixon's claims of coercion are undercut by his other allegations. He claims he disobeyed Cartagena's other demands, including a purported instruction for him to "'pound out' Mack Maine on sight." *Compare id.* ¶ 280; *with id.* ¶ 283 ("Plaintiff did not carry out the assault."). And it is simply implausible that Dixon engaged in, as he claims, over 4,000 sexual acts over sixteen years (equating to nearly 5 sex acts per week). *Id.* ¶ 140.

In short, Dixon does not come close to pleading the control, oppression, and duress in legitimate sex trafficking cases he mentions in his complaint. *See, e.g.*, *U.S. v. Dann*, 652 F.3d

1160 (9th Cir. 2011) (forced labor of nanny under threat of deportation); *U.S. v. Rivera*, 799 F.3d

180 (2d Cir. 2015) (forced prostitution of undocumented aliens under threats of physical violence

or deportation); *U.S. v. Marcus*, 628 F.3d 36 (2d Cir. 2010) (forced slavery and bondage enforced

by beatings and pinning of genitalia); *Paguirigan v. Prompt Nursing Employment Agency LLC*,

286 F. Supp. 3d 430 (E.D.N.Y. 2017) (foreign nursing home aides threatened with deportation and

a $25,000 termination fee and confession of judgment); *U.S. v. Raniere*, 55 F.4th 354 (2d Cir.

2022) (pyramid sex-cult enforced by "collateral" of explicit videos, personal assets, and damaging

letters).

Accordingly, Dixon fails to state a claim under the TVPA for commercial sex trafficking.

### C.    Dixon Fails to State a Plausible Forced Labor Violation

To state a claim for forced labor under the TVPA, Dixon must plead that the Moving

Defendants obtained Dixon's labor or services by means of: "(1) force, threats of force, physical

restraint, or threats of physical restraint; (2) serious harm or threats of serious harm; (3) abuse or

threatened abuse of law or legal process; or (4) any scheme, plan, or pattern intended to cause the

person to believe that, if that person did not perform such labor or services, that person or another

person would suffer serious harm or physical restraint." *Ngono v. Owono*, No. 23-339, 2024 U.S.

App. LEXIS 5142, at *2-3 (2d Cir. Mar. 4, 2024) (citing 18 U.S.C. § 1589(a)).

Again, Dixon does not allege that Torres, Jospitre, Moreira, Sneaker Addict or Slate

obtained Dixon's labor or services. Any direct forced labor claim against them therefore fails.[9]

*See, e.g.*, *C.C.*, 2025 U.S. Dist. LEXIS 122420, at *31-32.

Dixon also fails to plead that Cartagena obtained labor and services from Dixon by means

of serious harm or threats of serious harm. Section 1589(c)(2) also defines "serious harm" to mean

---

[9] As noted, Dixon fails to state a claim for venture liability under 18 U.S.C. § 1595(a) against them. *See infra* § II.D.

"any harm … that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."

Here, Dixon merely alleges that he "tried to leave on multiple occasions" and that Cartagena used "coercive" tactics and threats to convince him to "stay." Compl. ¶ 349(3). These allegations are insufficient because the Complaint does not allege when, how, or what Dixon "tried to leave;" that Dixon was compelled to continue collaborating with Cartagena against his will or by means of any purported action; or the changed circumstances, if any, that caused Dixon to stop performing labor or providing services to Cartagena in 2020. *See Stillwell v. Fashion Nova, LLC*, No. CV 21-7040-GW-MARx, 2022 U.S. Dist. LEXIS 54443, at *30-31 (C.D. Cal. Jan. 28, 2022) (dismissing forced labor TVPA claim where "Plaintiff obviously stopped working for [defendant]."); *cf. Martinez-Rodriguez v. Giles*, 391 F.Supp.3d 985, 994 (D. Id. 2019) ("If Funk Dairy was truly forcing Plaintiffs to perform labor, they would not have allowed three Plaintiffs to quit, nor terminated three Plaintiffs themselves."). It is not even clear that the "tactics" and "threats" Cartagena employed had anything to do with Dixon's attempts to "leave" his employment. For example, Dixon alleges that Cartagena "frequently" and "repeatedly" told Dixon that "Nobody leaves Terror Squad in one piece"—not that Cartagena said this in response to Dixon's attempts to stop working with Cartagena. Compl. ¶¶ 123, 148.

Dixon's forced labor claim is also internally inconsistent. At one point, Dixon asserts that he "would not have continued writing, performing, or serving" Cartagena "had he known that no LODs would be issued and that he would be excluded from all revenue streams connected to his work." *Id.* ¶ 460. Yet Dixon then contends that his employment continued because he was "compelled" or "forced" to work against his will—not because he was under the false assumption

that "LODs would be issued" or that he would participate in "revenue streams." Cartagena's alleged threat to "abandon" Dixon is moreover wholly inconsistent with the notion that Dixon was forced to stay to work for Cartagena. *Cf. Dumapias*, 2020 U.S. Dist. LEXIS 253331, at *38 (dismissing forced labor claims based, in part, on alleged threats of abandonment).

Finally, it is implausible that a reasonable adult male with over a decade of experience as a "bodyguard" and "personal security" would feel compelled to continue performing labor or services under these circumstances. No such individual would interpret Cartagena's alleged "frequent" comments as a threat of harm simply for quitting or retiring—particularly where many individuals *have* left Terror Squad, seemingly without incident. *See* Compl. ¶ 71 (referencing a former manager), ¶ 426 (referencing a former "member" of Cartagena's "business team" and a former accountant) ¶¶ 616, 618 (same). Likewise, no such individual would feel compelled to continue working merely because he was told that his refusal could lead to his flights being cancelled. Dixon could have stopped working for Cartagena at any point while he was in the United States and his concern about being left in another country never would have materialized.

### D. Dixon Fails To Plead Venture Liability

Dixon claims that all Defendants are liable for sex trafficking for knowingly benefitting, or attempting to or conspiring to benefit, "from participation in a venture" which they "knew or should have known has engaged in an act in violation of" the TVPA. Compl. ¶¶ 360-78; 18 U.S.C. § 1589(b). Yet because the Complaint fails to plead the predicate acts of forced labor and sex trafficking, it also fails to state venture liability under § 1595(a). *See St. Louis v. Perlitz*, No. 3:13-CV-1132 (RNC), 2016 U.S. Dist. LEXIS 47611, at *27 (D. Conn. Apr. 8, 2016) (dismissing venture-based TVPA claim and stating that "Section 1595 requires an underlying violation of § 1591 (or another section of the statute), and plaintiffs have failed to allege such a violation.").

Moreover, and as discussed in the Moving Defendants' supplemental briefs, Dixon does not sufficiently plead that Moving Defendants knowingly benefitted, or attempted to or conspired to benefit, "from participation in a venture" which they "knew or should have known has engaged in an act in violation of" the TVPA. *See* Compl. ¶¶ 361-378; *Lawson v. Rubin*, No. 17-cv-6404 (BMC), 2018 U.S. Dist. LEXIS 71582, at *32 (E.D.N.Y. Apr. 29, 2018) (holding that defendant "cannot have committed any of the predicate acts" where plaintiff fails to allege facts to show that they "knowingly benefit[ted] … from participation in a [trafficking] venture" or that they acted in "reckless disregard.").

## III.    Dixon Fails to State a Plausible or Timely Claim Under the RICO Act (Count VII)

"[T]he civil provisions of [RICO] are the most misused statutes in the federal corpus of law" because litigants often try to transform "garden-variety fraud or breach of contract cases" into RICO claims. *Pu v. Charles H. Greenthal Mgmt. Corp.*, No. 08-cv-10084 (RJH) (RLE), 2010 WL 774335, at *2 (S.D.N.Y. Mar. 9, 2010). The "mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those named as defendants[,]" and courts therefore "strive to flush out frivolous RICO allegations at an early stage of the litigation." *Manhattan Telecommns. Corp. v. DialAmerica, Mktg., Inc.*, 156 F. Supp. 2d 376, 381 (S.D.N.Y. 2001) (citation omitted).

"To establish a Racketeer Influenced and Corrupt Organizations Act (RICO) claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C.S. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962." *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 118 (2d Cir. 2013). Dixon alleges that Defendants violated 18 U.S.C. § 1962(c), which in turn requires a showing of "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *One World,*

*LLC v. Onoufriadis*, No. 21-374-cv, 2021 U.S. App. LEXIS 29370, at *2-3 (2d Cir. Sep. 29, 2021) (internal quotation marks omitted). A RICO plaintiff must also establish standing, which is available only to a "person injured in [his] business or property by a RICO violation." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) (internal quotations omitted).

The Complaint does not come close to stating a sustainable RICO claim. Dixon's RICO claim is time barred, he lacks standing to sue, and he fails to plead that any defendant committed two or more acts constituting a pattern of racketeering activity.

### A. Dixon's RICO Claim is Time Barred.

"The statute of limitations for a civil RICO claim is four years." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013). This clock begins to run (i.e., accrues) when the plaintiff discovers or should have discovered his alleged injury. *See Koch v. Christie's Intern. PLC*, 699 F.3d 141, 148 (2d Cir. 2012). Dixon's RICO claim is time barred because he has been on inquiry notice of his injuries since at least 2020. *See Rotella v. Wood*, 528 U.S. 549, 552 (2000).

Here, injuries flowing from the Performance Fees occurred whenever Cartagena purportedly did not pay Dixon the full amount for his labor; i.e. when he was still working with Cartagena. Dixon was therefore on inquiry notice of his injuries and claims at the latest, when he stopped working for Plaintiff in 2020. *See* Compl. ¶¶ 48, 407, 426; *Poulard v. Delphin*, No. 23-cv-791 (ER), 2024 U.S. Dist. LEXIS 188263, at *30-31 (S.D.N.Y. Oct. 16, 2024); *Lederhouse v. Landau Arnold Laufer LLP*, 2018 U.S. Dist. LEXIS 57590, at *10-11 (S.D.N.Y. Apr. 4, 2018).

Dixon's purported injury flowing from the withheld Royalties, by contrast, occurred every time that the PROs did not pay Dixon royalty or revenue payments for songs Dixon co-authored. Because Dixon alleges that each instance of non-payment is traceable to Cartagena's purported fraudulent omission of Dixon's name on the copyright applications, each such instance is "clearly

24

derivative" of those acts and cannot each "be viewed as a separate and distinct fraud creating new injuries." *See Simmons v. Reich*, No. 20-4114, 2021 U.S. App. LEXIS 32372, at *8 (2d Cir. Oct. 29, 2021). Accordingly, Dixon was also on inquiry notice of any potential Royalty injury when he did not receive timely payments from the PROs for his co-authored songs. Given that Dixon has not alleged that he contributed to a song that was published within the four years preceding his complaint, he also cannot plausibly allege that he lacked inquiry notice of his Royalty non-payments before June 19, 2021. *See Baiul, LLC v. William Morris Agency, LLC*, 13 Civ. 8683, 2014 U.S. Dist. LEXIS 62633, at *17-26 (S.D.N.Y May 6, 2014); *Poulard v. Delphin*, No. 23-cv-791 (ER), 2024 U.S. Dist. LEXIS 188263, at *30-31 (S.D.N.Y. Oct. 16, 2024); *Lederhouse v. Landau Arnold Laufer LLP*, 15 Civ. 8668, 2018 U.S. Dist. LEXIS 57590, at *10-11 (S.D.N.Y. Apr. 4, 2018). Accordingly, any RICO claim derivative of these purported injuries would be barred under RICO's four-year statute of limitations.

### B. Dixon Lacks Standing

RICO only provides a cause of action to parties who are "injured in [their] business or property by reason of a violation of [18 U.S.C. § 1962]." *Petroff Amshen LLP v. Alfa Rehab. Pt Pc*, No. 21-847, 2022 U.S. App. LEXIS 4312, at *4 (2d Cir. Feb. 17, 2022) (quoting 18 U.S.C. § 1964(c)). RICO Plaintiff's must therefore show that the defendants' violation was the "proximate cause" of the injury to business or property. *D'Addario v. D'Addario*, 901 F.3d 80, 96 (2d Cir. 2018). "[P]roximate cause requires … some direct relation between the injury asserted and the injurious conduct alleged, and excludes … those links that are too remote, purely contingent, or indirect." *Id.* Dixon lacks standing under RICO because (1) only two of his purported non-speculative RICO injuries are to his business or property, and (2) there is no direct relationship between these alleged injuries and the Moving Defendants' alleged violations.

1.    <u>Most of Dixon's Alleged Injuries are not Cognizable Under RICO</u>

Paragraph 468 of the Complaint purports to allege six RICO injuries: (1) "permanent erasure of Plaintiff's authorship and performance credits, resulting in professional blacklisting and reputational damages across the music industry[;]" (2) "[e]motional trauma and psychological distress[;]" (3) "[c]redible threats to Plaintiff's life[;]" (4) "[o]ut-of-pocket costs for legal counsel, private security, and ongoing care[;]" (5) "systematic theft of Plaintiff's royalty entitlements[;]" and (6) "[u]nderpayment of wages and touring compensation." The first four of these "injuries," even if true, do not confer standing. Paragraphs 761 through 773 also allege purported "Injury to Plaintiff," including what Dixon labels as "Economic Losses," "Reputational Harm," "Physical and Psychological Harm," and "Out-of-Pocket Expenditures[.]"

Dixon's alleged injuries of "professional blacklisting," and "reputational harm," "emotional and psychological trauma," "threats of physical harm" and "physical and psychological harm" are not cognizable because they are "personal or emotional" harms that are not compensable under RICO. *Gross v. Waywell*, 628 F. Supp. 2d 475, 488 (S.D.N.Y. 2009); *see Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 171 (S.D.N.Y. 2019) ("Blacklisting … is not a RICO violation."); *Mackin v. Auberger*, 59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014) ("[T]he loss of Plaintiff's reputation and resulting inability to gain future employment are personal injuries and are not compensable under RICO"); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 152 (S.D.N.Y. 2014) (RICO "does not provide recovery for physical and emotional injuries.").

Dixon's alleged "out-of-pocket" expenditures and costs for legal counsel, private security, and care—meanwhile, are not yet ripe and are, therefore, too speculative and vague to sustain a claim. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) ("[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite."); *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988) ("ongoing

legal fees" are "future expenses" for which plaintiff "ha[d] not yet suffered injury"); *Glob. Merch. Cash Inc. v. Rome-Aire Servs.*, No. 24-CV-799 (ARR) (PK), 2024 U.S. Dist. LEXIS 189166, at *27-28 (E.D.N.Y. Oct. 17, 2024) ("Defendants' claim for attorneys' fees has therefore yet to be realized and does not state an independent RICO injury."); *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 234 n.11 (E.D.N.Y. 2014) (same). Moreover, any out-of-pocket costs for "private security, and ongoing care related to the Defendant's pattern of retaliation and intimidation" are too conclusory to confer standing under RICO. *See Taft v. Barresi*, No. 5:24-cv-01930-TJH (DTB), 2025 U.S. Dist. LEXIS 84400, at *18 (C.D. Cal. May 1, 2025) (holding "high costs of security, competing private investigators, maintaining witnesses, legal consulting, [and] protecting Plaintiff and Plaintiff's relatives" too conclusory to constitute RICO injuries).

### 2. Any Cognizable Injury Was Not Proximately Caused by a Predicate Act

The only concrete injuries Dixon alleges that are arguably tied to his "business or property" are the purported "theft" of and "exclusion" from "royalty entitlements," "backend publishing income," and "licensing revenue" derived from songs Dixon purportedly co-authored or on which he performed (collectively, the "**Royalty Injuries**"), Compl. ¶¶ 468(1), 761(2), and the "underpayment" of "wages," "performance revenue," "per diem payments," and touring "income" and "compensation" (collectively, the "**Performance Fee Injuries**"), *id.* ¶¶ 468(2), 761(1). Even so, Dixon fails to allege that they were proximately caused by any RICO predicate.

Where, as here, the injury to business or property is based on lost compensation stemming from a breach of contract, the RICO plaintiff must show he was deprived "of that compensation as a result of RICO violations subsequent to the formation of the contract[.]" *Jones*, 2025 U.S. Dist. LEXIS 54277, at *14 n.4 (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 (2d Cir. 2013)). Dixon cannot credibly argue that the predicates comprising the Violent Crimes Scheme, Laundering and Tax Fraud Scheme, or Interstate Transportation Claim proximately

caused the Royalty or Performance Fee Injuries where those predicates consist entirely of crimes against third parties. *See id.* at *14-15 (holding that "alleged sex, drug, and gun trafficking activities ... did not foreseeably or naturally preclude Defendants from honoring their recording contract"). He likewise fails to allege the occurrence of any predicate act within the Dixon Scheme occurring *after* the formation of his purported oral agreement that "caused Defendants' failure to pay" the Royalties and Performance Fee, such that those injuries were not proximately caused by Cartagena's purported broken promises, but rather by racketeering activity. *Id.* at *15.

In short, Dixon has not tied the activities of the Cartagena Enterprise to the purported Royalty or Performance Fee Injuries. *See Jones*, 2025 U.S. Dist. LEXIS 54277, at *16 (dismissing RICO claim where plaintiff did not tie the enterprise activities to the defendants' breach of contract or any other "business or property" harm incurred by the plaintiff); *Bigsby v. Barclays Cap. Real Est., Inc.*, 170 F. Supp. 3d 568, 577 (S.D.N.Y. 2016) (dismissing wire fraud RICO predicate premised on a breach of contract).

## C.    Dixon Fails to Plead an Enterprise.

An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Complaint describes the "Cartagena Enterprise" as an "association-in-fact enterprise," Compl. ¶¶ 324, 470, with each Defendant acting as a "key member" of the enterprise, *id.* ¶ 78. "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 298 (E.D.N.Y. 2017). Generously construed, Dixon alleges that the purpose of the Cartagena Enterprise is "to enrich Defendant Cartagena and his associates while deliberately suppressing, silencing, and erasing Plaintiff's substantial creative, artistic, and commercial contributions."

28

Compl. at 2. Even assuming that this barebones description is adequate, Dixon plainly fails to plead that the various enterprise members had a relationship with anybody other than Cartagena, or that they were involved in the enterprise for sufficient duration.

1.  Dixon Fails to Plead Relationships Among Those Associated

The concept of "associat[ion]," as required to prove a violation of 18 U.S.C. § 1962(c), "requires both interpersonal relationships and a common interest." *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 2244 (2009). At a minimum, such relationships and common interest require a showing that the members are "aware of each other's existence," and that there is some level of "symbiosis" between them. *Black v. Ganieva*, 619 F. Supp. 3d 309, 335 (S.D.N.Y. 2022) (citing *Dynarex Corp. v. Farrah*, No. 18 CV 7072 (VB), 2019 U.S. Dist. LEXIS 89048, at *6 (S.D.N.Y. May 28, 2019)). Under these standards, the Complaint does not allege any relationship between the Moving Defendants other than that each worked for, or is associated with, Cartagena.

Page 107 of the Complaint purports to include an "Organizational Pyramid" of the Cartagena Enterprise with (1) Cartagena at the top, (2) Roc Nation, Moreira, and non-party BDO directly under Cartagena, (3) Torres, Jospitre, and Moreira under Roc Nation, (4) Slate and Sneaker Addict under BDO, and (5) Dixon under Moreira. The Complaint alleges no facts describing these purported relationships, however. Dixon does not even allege, for example, that Torres, Jospitre, or Moreira *knew* that Roc Nation was affiliated with Cartagena, let alone that they knew of each other or Slate or Sneaker Addict's involvement in the purported enterprise. The ***only*** allegations tying any of Moving Defendants to each other (other than Cartagena) is that "Moreira created … Sneaker Addict … [and] Slate[,]" Compl. ¶ 361, and that she is their "listed agent[,]" Compl. ¶ 605. With this one exception—which itself is too conclusory to tie Moreira to the purported actions of Slate and Sneaker addict (and vice versa)—"not a single fact is pleaded tending to show that

the various sets of named defendants … had any interpersonal relationships." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010).

This amounts to a classic "rimless hub-and-spokes" enterprise insufficient to sustain a RICO claim, with Cartagena serving as the hub, each other Defendant connected to him by a spoke, and no rim connecting the various spokes together. *See Dynarex Corp.*, 2019 U.S. Dist. LEXIS 89048, at *7 ("[T]here is no RICO association-in-fact in rimless hub-and-spoke conspiracies, in other words, when each defendant is alleged to have a relationship with a central figure, but the defendants are not all alleged to be connected in some overarching way[.]") (internal quotations omitted). In other words, Dixon has not plausibly alleged that any Moving Defendant has "engaged in anything but independent conduct, without coordination and for their own economic self-interest." *See Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*, No. 15-cv-3784 (PKC), 2016 U.S. Dist. LEXIS 104251, at *24 (S.D.N.Y. Aug. 4, 2016).

### 2.    Dixon Fails to Plead Longevity

An enterprise must also have some longevity, since the offense proscribed by 18 U.S.C. § 1962(c) demands proof that the enterprise had affairs of sufficient duration to permit an associate to "participate" in those affairs through "a pattern of racketeering activity." *Boyle v. United States*, 556 U.S. 938, 946 (2009). As with the rest of his allegations, Dixon does not state *when* the various members of the enterprise came together and instead only relies on the conclusory allegation that "Cartagena has directed, managed, and participated" in the Cartagena Enterprise "from approximately 2005 through the present[.]" Compl. ¶ 322. Dixon does not even attribute *a year* to any of the actions of the Moving Defendants other than Cartagena, rendering it impossible to determine how long the Cartagena Enterprise existed and functioned.

**D.**    **Dixon Fails to Show that Each Enterprise Member Violated at Least Two Acts of Racketeering**

"Plaintiffs suing under RICO must show that each defendant participated in at least two predicate acts of racketeering within a ten-year period. 18 U.S.C. § 1961(5)." *Allstate Ins. Co. v. Vladimir Geykhman*, No. 24 CV 4580 (PKC) (CLP), 2025 U.S. Dist. LEXIS 173936, at *29 (E.D.N.Y. Sep. 7, 2025). Dixon fails to do so.

1.    Many Of Dixon's Alleged Predicate Acts Do Not Constitute RICO Predicates

Acts of racketeering activity alleged in support of a RICO claim "must be among those criminal offenses listed in 18 U.S.C. § 1961(1)." *El Omari v. Buchanan*, No. 20 Civ. 2601 (VM), 2021 U.S. Dist. LEXIS 236933, at *10 (S.D.N.Y. Dec. 10, 2021). Many of Dixon's alleged predicate acts are statutory violations not enumerated in § 1961(1) and thus cannot constitute predicate acts.

*First*, "the only state law crimes which constitute predicate acts of racketeering activity under Section 1961 are those acts chargeable under State law and punishable by imprisonment for more than one year which involve murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical." *Shanshia Touring, Inc. v. Ferguson*, No. 04 Civ. 3388 (MHD), 2006 U.S. Dist. LEXIS 43913, at *21-22 (S.D.N.Y. June 23, 2006); *accord Lynch v. Amoruso*, 232 F.Supp. 3d 460, 467 (S.D.N.Y. 2017). Dixon alleges *dozens* of state law violations (Predicate Acts 2-8, 10, 11-15, 17-22 and 24) that do not constitute RICO predicates:

- ***Fraud (N.Y. Penal Law § 190.65; N.Y. Penal Law § 175.10; Fla. Stat. § 817.034)***. *See Mack v. Parker Jewish Inst. for Health Care & Rehab.*, No. CV 14-1299, 2014 U.S. Dist. LEXIS 154577, at *10 (E.D.N.Y. Oct. 30, 2014); *Shanshia Touring, Inc.*, 2006 U.S. Dist. LEXIS 43913, at *21-22.

- ***Tax fraud (N.Y. Tax Law §§ 1801–07; Fla. Stat. § 198.33)***. *See Cargo on Demand, Inc. v. Polar Air Cargo Worldwide, Inc.*, No. 22-CV-10243 (JMF), 2023 U.S. Dist. LEXIS 119185, at *12 (S.D.N.Y. July 11, 2023).

31

- ***Assault and Battery (N.Y. Penal Law §§ 120.10, 105.15; Fla. Stat. §§ 784.011, 784.03, 784.045)***. *See Park S. Assocs. v. Fischbein*, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986).

- ***Coercion (N.Y. Penal Law § 135.60)***. *See Winnie v. Sinagra*, No. 1:24-cv-00940 (BKS/PJE), 2025 U.S. Dist. LEXIS 159289, at *19 (N.D.N.Y. Aug. 18, 2025).

- ***Harassment and stalking (N.Y. Penal Law §§ 240.30, 120.45)***. *See Toms v. Pizzo*, 4 F. Supp. 2d 178, 183 (W.D.N.Y. 1998).

- ***Unauthorized Practice of Law*** (***Fla. Stat. § 454.23)***. *See Orozco v. CVS Health Corp.*, No. 4:24-CV-885-P, 2025 U.S. Dist. LEXIS 92849, at *21 (N.D. Tex. May 1, 2025), *adopted*, 2025 U.S. Dist. LEXIS 91654 (N.D. Tex. May 14, 2025);

- ***Other statutes*** including witness tampering (N.Y. Penal Law § 215.15; Fla. Stat. § 914.22); trafficking (N.Y. Penal Law §§ 230.34-a, 130.40; Fla. Stat. §§ 787.06, 796.07); money laundering (Fla. Stat. §§ 896.101, 607.0505); criminal use and possession of a weapon (N.Y. Penal Law § 265.01-265.03); criminal solicitation (N.Y. Penal Law §§ 100.10, 105.15; Fla. Stat. §§ 777.04); menacing (N.Y. Penal Law § 120.14); employment, wage, and executive laws (N.Y. Labor Law §§ 193, 198, 740, 741; N.Y. Exec. Law § 296; Fla. Stat. § 448.110); unfair competition (N.Y. GBL § 349); official misconduct (N.Y. Penal Law § 195.00); and falsifying business records (N.Y. Penal Law § 175.10).

*Second*, only specific federal statutes may constitute RICO predicates. *See Wang v. King*, No. 18 Civ. 8948 (JFK), 2020 U.S. Dist. LEXIS 13382, at *9 (S.D.N.Y. Jan. 27, 2020). Dixon improperly bases many alleged predicate acts (Predicate Acts 4-8, 10-14, 17-20, 22, 24) on federal statutes not enumerated under Section 1961(1), which are not recognized RICO predicates:

- ***Violent Crimes (18 U.S.C. § 1959)***. *See Miller v. Carpinello*, No. 06-CV-12940 (LAP), 2007 U.S. Dist. LEXIS 86395, at *21 (S.D.N.Y. Nov. 19, 2007).

- ***Tax Fraud and Tax Evasion (26 U.S.C. § 7201)***. *See United States v. Watts*, No. 09-CR-62 (CM), 2011 U.S. Dist. LEXIS 3976 at *6 (S.D.N.Y. Jan. 11, 2011); *Cargo on Demand, Inc.*, 2023 U.S. Dist. LEXIS 119185, at *12.

- ***Unfair Competition (Sherman Act §§ 1–2)***. *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 01-CV-1574 (ILG), 2002 U.S. Dist. LEXIS 10737, at *26 (E.D.N.Y. Mar. 15, 2002); *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F. Supp. 1411, 1432 (E.D.N.Y. 1988).

- ***Other Statutes*** including falsification of business records (18 U.S.C. § 1519), transmission of threats in interstate commerce (18 U.S.C. § 875(d)), penalties (18 U.S.C. § 924(c)), conspiracy to commit a federal offense (18 U.S.C. § 371).

Because none of these statutes are included among the "racketeering activity" specified in Section 1961(1), any purported violation of the same cannot form the basis of Dixon's RICO claim.

        2.    <u>Dixon Fails to Plead Any RICO Predicate Violation</u>

Dixon moreover has not plausibly alleged that any Moving Defendant participated in at least two predicate acts of racketeering within a ten-year period.

        *i.  Dixon Fails To Plead Transportation For Sexual Activity*

Predicate Acts 9 and 15 allege Mann Act violations prohibiting any person from "knowingly transport[ing] any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such person engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. §§ 2421-23.

Dixon alleges Cartagena "arranged and facilitated the interstate and international transportation of underaged females for purposes of sexual exploitation." Compl. ¶¶ 585-92. Yet, his factual allegations merely claim Cartagena arranged for women to be flown into the United States on unspecified occasions. *Id.* ¶ 588. Dixon alleges neither that any women engaged in prostitution nor that Cartagena intended them to, as the Mann Act requires. Dixon's bare legal conclusion that Cartagena acted with "intent to exploit these underage women" (Compl. ¶ 591) is insufficient to state a claim. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Further, Dixon alleges Cartagena "facilitated and orchestrated multiple sex trafficking events at corporate-sponsored locations" (*id.* ¶ 650), "forced" him to "solicit" a female on a yacht, and "forced" him to convince a woman to let her daughter spend time with Cartagena (*id.* ¶¶ 652-57). These allegations are also insufficient. First, they do not identify when or in what manner Cartagena purportedly "forced" him to engage in the alleged conduct. *See Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*, 795 F. Supp. 639, 652 (S.D.N.Y. 1992) (Mann Act claim

inadequately pleaded where the complaint "makes no reference to dates of occurrence"). Second, Dixon also omits a core statutory requirement—that Cartagena *caused* any transport of the individuals. *See id.* at 651 (noting that the complaint "does not charge any of the counterclaim defendants with having caused their transport").

### ii.   Dixon Fails To Plead Witness Tampering Or Retaliation

Predicate Acts 3, 16, and 19 allege Cartagena committed witness tampering (18 U.S.C. § 1512(b)) and retaliation (18 U.S.C. § 1513(e)). A defendant engages in witness tampering where they:

> [K]nowingly…(1) influence, delay, or prevent the testimony of any person **in an official proceeding**; (2) cause or induce any person to (A) withhold testimony…**from an official proceeding**; … or (3) hinder, delay, or prevent the communication to a law enforcement officer … of information relating to the commission or possible commission of a Federal offense.

18 U.S.C. § 1512(b) (emphasis added). Notably, the statute requires an existing "official proceeding," defined as a "proceeding before a judge or court of the United States." *Azima v. Dechert LLP*, No. 22-CV-8728 (PGG) (JW), 2024 U.S. Dist. LEXIS 176048, at *65 (S.D.N.Y. Sep. 26, 2024) (citing 18 U.S.C. § 1515). Similarly, witness retaliation occurs when a defendant "knowingly, with the intent to retaliate, takes any action harmful to any person … for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense." 18 U.S.C. § 1513(e).

Predicate Act 3 alleges Cartagena attempted to persuade a third party to assault Dixon to "prevent him from further disclosures or pursuing legal action." Compl. ¶ 517. Predicate Act 19 alleges Cartagena "upon information and belief" sent or directed threats to Dixon via social media, claiming he "interfered with his legal recourse." Compl. ¶¶ 700-14. Dixon's claim is fatally flawed because he fails to allege any pending proceeding at the time of these purported communications, a prerequisite for witness tampering. *See Edmondson v. Raniere*, 751 F. Supp. 3d 136, 166

(E.D.N.Y. 2024) ("The complaint does not adequately allege a violation of Section 1512(b) by [defendants] because it fails to allege the 'official proceeding' element").

Predicate Act 16 alleges Cartagena violated witness tampering and retaliation statutes by firing an employee for reporting sexual harassment. Compl. ¶¶ 667-70. Dixon does not allege any pending proceeding when Cartagena fired the employee, which is required for a tampering claim. Further, the Complaint fails to allege that Dixon, the employee, or anyone else reported the alleged sexual harassment to a law enforcement officer, as required for a retaliation claim. *See El Omari v. Buchanan*, No. 20 Civ. 2601, 2021 U.S. Dist. LEXIS 236933, at *16 (S.D.N.Y. Dec. 10, 2021) (dismissing Section 1513(e) claim where plaintiff "fail[ed] to adequately allege that he provided information to a 'law enforcement officer'"). Dixon also does not allege the report related to a federal offense. *See* 18 U.S.C. § 1513(e). Thus, Dixon fails to state a claim for retaliation.

### iii.   Dixon Fails To Plead Predicate Acts Sounding In Fraud

Predicate Acts 8, 12, 18, 20 and 22-24 are based on claims of federal wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341). A RICO claim alleging mail or wire fraud requires showing that defendants engaged in "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." *U.S. v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000). Notably, "[t]he elements of mail and wire fraud must be pled with particularity." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). To plead fraud with particularity, the complaint "must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 889 F.3d at 124; *see also In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 (KMK), 2015 U.S. Dist. LEXIS 155383, at *35 (S.D.N.Y. Nov. 12, 2015).

Predicate Act 8 alleges Cartagena launched a sneaker retail business called UPNYC, and that the "Enterprise … stripped tracking tags and internal monitors from" the sneakers and "resold

them through UPNYC and affiliated resellers for inflated prices." Compl. ¶¶ 566, 568. Dixon claims that this process involved "processing fraudulent credit card charges and online communications to obtain payments[,]" "[e]ach use" of which "constitutes a wire fraud violation." *Id.* ¶ 573(1). These allegations, beyond being patently conclusory, do not actually allege any conduct from Cartagena other than founding UPNYC, and moreover fails to state (1) what exact statement or "online communication" was fraudulent; (2) how it was fraudulent; and (3) where, when, or how these purported fraudulent statements were made. *See Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 412 (S.D.N.Y. 2013) ("Allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved and where and when they took place, and should explain why they were fraudulent.") (citations omitted).

Predicate Acts 12, 18 and 22 24 concern purported fraud on Dixon and tax fraud on the IRS related to supposedly falsified W-2s and 1099s. As noted, tax fraud is not a recognized RICO predicate. Dixon's remaining fraud claims fail for two reasons. *First*, Dixon does not allege Cartagena used interstate mail or wires in this scheme. *See* Compl. ¶ 618 (Predicate Act 12, alleging Cartagena "directed" a "accountant" to "fabricate W-2s and inflate reported wages"); *id.* ¶ 697 (Predicate Act 18, alleging "falsified W-2s were issued to Plaintiff" without identifying sender); *id.* ¶ 739 (Predicate Act 22, alleging Cartagena executed a scheme "in collaboration" with Roc Nation and BDO, but only BDO "generated" the purported false documents); *id.* ¶ 748 (Predicate Act 23, same); *id.* ¶ 754 (Predicate Act 24, same). *Second*, even if Cartagena were responsible for the purported misrepresentations, Dixon does not identify (1) what specific statements were false or fraudulent, including the specific W-2s or 1099s, (2) why those statements were false or fraudulent, (3) when the statements were sent, or (4) how they were sent (i.e. whether interstate wires or mails were used). *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d

178, 185 (2d Cir. 2008) (mail and wire fraud could not constitute predicate acts where the complaint "does not allege any specific fraudulent communications").

Predicate Act 20 alleges Cartagena "caused the submission of post-dated and backdated split sheets to ASCAP, BMI, and associated PROs that excluded Plaintiff's name and falsely claimed sole authorship." Compl. ¶ 720. Dixon fails, however, to identify (1) the specific split sheets; (2) who authored them, (3) who sent them to the PROs, (4) when they were sent, (5) how they were sent, and (6) what statements constituted misrepresentations. *See Entretelas Americanas S.A. v. Soler*, 840 F. App'x 601, 604 (2d Cir. 2020) (mail and wire fraud could not constitute predicate acts where the plaintiff "failed to plead time, place, and content with respect to any of the alleged misrepresentations made by [defendant]" and "failed to sufficiently allege how it was harmed by [defendant's] conduct, or how it relied upon those misrepresentations to its detriment.")

### iv.  *Dixon Fails To State A Claim For Money Laundering*

Predicate Acts 7, 11, 18, 23, and 24 are based on money laundering claims under 18 U.S.C. §§ 1956(a)(1)(B) and 1957. To state a claim for money laundering under RICO, a plaintiff must plead: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds." *Dale v. Banque SCS All. S.A.*, No. 02 Civ. 3592 (RCC)(KNF), 2005 U.S. Dist. LEXIS 20967, at *5 n.2 (S.D.N.Y. Sept. 22, 2005). While Dixon alleges some financial transactions, he does not state how any of them involved the proceeds of unlawful activity or how any Moving Defendant knew that the money or property involved represented unlawful proceeds.

Predicate Act 7 alleges Cartagena received "up to $500,000" for international performances, which "were never reported on tax returns." Compl. ¶ 558. Dixon does not allege that this money somehow involved the proceeds of any unlawful activity. *See W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch,* No. 03 Civ. 8606 (RWS), 2004 U.S. Dist. LEXIS 19501, at *28 (S.D.N.Y. Sep. 29, 2004) ("in the absence of allegations concerning a 'specified unlawful activity,' no claim for money laundering may withstand a motion to dismiss"). Dixon also alleges that Cartagena "channeled cash through intermediaries … to hide revenue and facilitate bulk streaming," Compl. ¶ 559, but these statements are conclusory and fail to identify any specific transactions or that such transaction involved the proceeds of an unlawful activity under 18 U.S.C. § 1956(c)(7). *See Aliev v. Borukhov,* No. 15-CV-6113 (ERK) (JO), 2016 U.S. Dist. LEXIS 88856, at *28 (E.D.N.Y. July 8, 2016) (Plaintiff "makes no allegations outside of the boilerplate language he employs in his list of RICO predicates that the Defendants engaged in it in order to conceal the source or ownership of the proceeds. As a result, his claim of money laundering as a predicate act should be disregarded for purposes of the pattern of racketeering analysis[.]").

Predicate Act 11 alleges that Cartagena "established a web of … shell companies" to, among other things*,* "launder[] criminal proceeds". Compl. ¶¶ 604-05. Yet the only transaction Dixon identifies in connection with this predicate is that Sneaker Addict "received a $37,500 [Paycheck Protection Program] PPP loan in 2021[.]" Compl. ¶ 607. He claims that this action violated the money laundering statute because Sneaker Addict "shows no legitimate business activity consistent with loan representations." *Id.* This allegation is conclusory (and incomprehensible), and in any event, does not state how the receipt of this PPP loan "involve[d] the proceeds" of unlawful activity, or how Sneaker Addict knew that the funds represented the proceeds of unlawful activity. *See* 18 U.S.C. § 1956.

Predicate Act 18 alleges that Cartagena "retrieved bags of cash totaling $600,000 and $200,000" from the UPNYC location and that these "pickups" were "from the store's concealed financial operations[.]" Compl. ¶¶ 683-85. Dixon does not state that this money involved the proceeds of any unlawful activity. At best, he infers so from his conclusory allegation that UPNYC is a clearing house for "money originating from forced labor, commercial fraud, off-the-books performance revenue, tax-evasive touring income," which is insufficient. Compl. ¶¶ 683-85. Dixon also does not allege that Cartagena knew this cash derived from illegal proceeds. He again appears to impermissibly infer it from the fact that the pickups "occurred without receipts, invoices, payroll documentation, or tax declarations" and were "physical cash pickups." *Id.* ¶¶ 684-85. *See Cargo on Demand, Inc.*, 2023 U.S. Dist. LEXIS 119185, at *14 ("Absent plausible allegations of [defendant's] knowledge, [plaintiff] fails to allege that [defendant] engaged in money laundering."); *Entretelas Americanas S.A. v. Soler*, No. 19-CV-03658 (LAK), 2020 U.S. Dist. LEXIS 20692, at *9 (S.D.N.Y. Feb. 3, 2020) (money laundering not pled where complaint lacked non-conclusory allegations regarding scienter and made threadbare claims that defendant "transferred the monies to avoid unspecified taxation"); *Jus Punjabi, LLC v. Get Punjabi, Inc.*, No. 1:14-cv-3318-GHW, 2015 U.S. Dist. LEXIS 66006, at *20-21 (S.D.N.Y. May 20, 2015) ("Paying with or otherwise using cash is obviously not a crime, and doing so in the course of operating one's business does not make it so.").

Finally, Predicate Acts 23 and 24 do not state a claim for money laundering because Dixon does "not allege any monetary value whatsoever for any of the allegedly unlawful transactions." *Id.* at *21.

*v.  Dixon Fails to Plead Actual, Attempted, and Conspiracy To
     Commit Murder*

Predicate Acts 4 and 13 allege murder, attempted murder, and conspiracy to commit murder. Such crimes must be chargeable under state law to act as RICO predicates. *See* 18 U.S.C. § 1961(1). Under New York law, "[a] person is guilty of murder in the second degree when … [w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.25(1). A person is guilty of an attempt to commit a crime when, "with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime" N.Y. Penal Law § 110.00. A person is guilty of conspiracy in the second degree when, "with intent that conduct constituting a [C]lass A felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct." N.Y. Penal Law § 105.15. Dixon also relies upon the Florida state law equivalents, in addition to accessory liability under Florida law which requires, "(1) knowledge by the defendant that a felony has been committed; … (2) the absence of the statutory familial relationship between the defendant and felon; … and (3) aid to the felon with the intent that he escape arrest or punishment for the crime he has committed." *Bailey v. City of Miami Beach*, No. 10-20998-CIV, 2011 U.S. Dist. LEXIS 93974, at *20 (S.D. Fla. Aug. 23, 2011) (citing Fla. Stat. § 777.03).

Predicate Act 4 alleges that Cartagena ordered two teenage boys to assault a man, which resulted in the man shooting and killing the boys in self-defense. Compl. ¶ 527. This allegation does not come close to alleging that Cartagena had intent to cause anybody's death, nor that he actually caused anybody's death. Dixon's remaining allegations claim that Cartagena directed Dixon to "handle" a third party and instructed three other individuals to "assault and 'Ketchup'" another third party. *Id.* ¶¶ 528-30. Dixon similarly does not explain how such communications, if

true, evidence an intent to cause the death of another person. Indeed, they do not even allege that Cartagena took any action towards the commission of the offense.

Predicate Act 13 alleges Cartagena engaged in a "calculated and premeditated conspiracy" to murder rapper 50 Cent. Compl. ¶¶ 626-34. To the extent he purports to allege attempted murder through this bare legal conclusion, Dixon does not make any non-conclusory allegations that Cartagena "[did] any act toward the commission of such offense." *See* Fla. Stat. § 777.04. Dixon merely claims that he allegedly overheard Cartagena admit to "placing a bag" on 50 Cent's head and seem distressed that his "plan" failed. Compl. ¶¶ 629-631. He also does not allege any agreement between Cartagena and any other individuals, defeating any conspiracy claim he purports to allege. Nor does he allege that any crime was actually committed and thus cannot rely on accessory after the fact liability.

### vi.  Dixon Fails to Plead Extortion

Predicate Act 17 alleges Cartagena committed extortion in violation of Fla. Stat. § 836.05. That statute prohibits "(1) utterances or communications; (2) that maliciously threaten; (3) to injure another's person, property, or reputation; (4) with the intent to extort money or compel a person against his will to act or not to act." *Hales v. Cook*, No. 1:24cv45/ZCB, 2025 U.S. Dist. LEXIS 90249, at *6 (N.D. Fla. Jan. 30, 2025). The "essence of extortion" is "a showing of a threat made maliciously and accompanied by a demand for money or other pecuniary advantage." *Id.* (citing *Alonso v. State*, 447 So.2d 1029, 1030 (Fla. 4th DCA 1984)).

Dixon's only extortion allegation is that Defendant Peter Torres threatened a third party with future physical harm if he engaged in further collaboration with Cartagena's rivals. Compl. ¶ 678. This bare allegation fails to plead a key element of extortion—that the threatening communication was made with the intent to compel money from the victim. Dixon makes no such allegation here. *See Hales*, 2025 U.S. Dist. LEXIS 90249, at *6 ("Although Plaintiff has alleged

that [Defendant] pointed a gun at him and threatened his life, the complaint has not plausibly alleged that this threat was accompanied by the intent to obtain money or coerce action as opposed to the intent to scare or the intent to express hatred.").

### vii.    Dixon Fails To Plead Forced Labor and Sex Trafficking

Finally, Dixon repackages his TVPA cause of action—a cause of action designed to combat sex trafficking and forced labor where a defendant knowingly participates in those crimes—as Predicate Acts 1-2, 15, and 21 and alleges violations under 18 U.S.C. §§ 1589 and 1591. These allegations fail for the same reasons noted above. *See supra* Sec. II.

### E.    Dixon Fails to Allege a Pattern of Racketeering Activity

Dixon fails to allege a "pattern of racketeering activity," which requires a showing of "at least two acts of racketeering activity" occurring within ten years of each other that are "related both to each other (horizontal relatedness) and to the enterprise (vertical relatedness)[.]" 18 U.S.C. §§ 1962(c), 1961(5); *Halvorssen v. Simpson*, 807 F. App'x 26, 29 (2d Cir. 2020). This "relatedness" requirement "is intended to prevent the application of RICO to 'isolated or sporadic' criminal acts." *Id.* (quoting *Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017)). As noted, Dixon has not adequately stated any two predicate acts of racketeering activity under the alleged Dixon Scheme, the Violent Crimes Scheme, the Laundering and Tax Fraud Scheme, or the Interstate Transportation Claim. Even if he had, Dixon has not plausibly alleged horizontal relatedness between the schemes.

Horizontal relatedness requires the predicate acts to have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Reich*, 858 F.3d at 61 (internal quotations omitted). When dealing with "an enterprise whose business is racketeering activity, such as an organized crime family," both vertical and horizontal relatedness can be established by

linking each act to the enterprise. *United States v. Coppola*, 671 F.3d 220, 243 (2d Cir. 2012) (internal quotations omitted). "When dealing with an enterprise that is primarily a legitimate business, however, courts must determine whether there is a relationship between the predicate crimes themselves." *Reich*, 858 F.3d at 61. Dixon does not allege that the business of the Cartagena Enterprise is primarily or inherently unlawful, nor can he—the other Moving Defendants' work is connected primarily through their support of Cartagena's career as an acclaimed musician. Accordingly, there must be a relationship between the predicate crimes themselves beyond their mere connection to the Cartagena Enterprise.

Dixon alleges the Cartagena Enterprise committed twenty-four predicate acts, spanning a vast number of victims and methods. He further claims that all predicates relate to the Cartagena Enterprise in that they serve a shared "core purpose … to enrich Defendant Cartagena through the use of coercion, threats, fraud, trafficking, and violence—all while concealing the enterprise's true nature from law enforcement, regulators, and the public." Compl. ¶ 323. But the mere fact that Cartagena was allegedly involved in the various predicate acts does not mean that the act were horizontally related under RICO. *See Halvorssen*, 807 F. App'x at 30. And "[f]raming 'purpose' in this broad a manner … drains the relatedness analysis of its substance." *Halvorssen v. Simpson*, No. 2:18-cv-2683 (ENV) (RLM), 2019 U.S. Dist. LEXIS 148030, at *12 (E.D.N.Y. Aug. 9, 2019); *see Reich*, 858 F.3d at 61-62 (concluding predicates were not horizontally related where alleged purpose of "helping" the enterprise was so general as to "make the factor meaningless: virtually all crimes committed on behalf of an enterprise are done to help it."). Beyond Cartagena's involvement, the distinguishing characteristics of the Dixon Scheme—including the purpose, participants, and methods of commission—do not overlap with the Violent Crimes Scheme, Laundering and Tax Fraud Scheme, or Interstate Transportation Claim.

The Violent Crimes Scheme involves different purported victims (unidentified third parties and various rappers), crimes (assault, battery, attempted murder), and purposes (dominating industry rivals, punishing perceived betrayals) than those involved in the Dixon Scheme. *See In re Conte*, No. 22-CV-3109 (DG) (JMW), 2023 U.S. Dist. LEXIS 168777, at *35-36 (E.D.N.Y. July 3, 2023) ("[S]cattershot allegations of varying types of seemingly disconnected illegal conduct" are insufficient).

The Laundering and Tax Fraud Scheme involves different purported victims (the IRS, unidentified employees of Cartagena), crimes (tax evasion, money laundering, retaliatory discharge and sexual harassment-based crimes), and purposes (preserving various companies as an instrument for money laundering and evading regulatory scrutiny) than those involved in the Dixon Scheme. *See, e.g.*, *In re Conte*, 2023 U.S. Dist. LEXIS 168777, at *36 ("[T]he stark dissimilarity between the alleged victims -- Plaintiff and the IRS -- runs afoul of the relatedness requirement."). While Dixon alleges that the "dual-bookkeeping scheme" involved in some of these predicates "deprive[d]" him "of legally mandated labor protections under the FLSA and NYLL" and "isolate[d]" him "from asserting statutory rights," Compl. ¶ 754, these statements are conclusory, and he does not separately allege the "protections" and "rights" he believes he lost or why he ever had those protections and rights in the first instance.

And though the Dixon Scheme also involves purported sex crimes, the Interstate Transportation Claim involves different purported victims (unnamed minor women), crimes (transportation of minors for sexual prostitution), and purpose (Cartagena's purported sexual gratification) than those involved in the Dixon Scheme.

Accordingly, Dixon has not alleged relatedness between Predicate Acts 4-14, 16-18, and 22-24 and the predicates comprising the Dixon Scheme and they should be excluded from the

remainder of the RICO analysis. *Halvorssen*, 2019 U.S. Dist. LEXIS 148030, at *14-15 (excluding unrelated schemes from RICO analysis).

## IV.    Dixon Fails to State a Plausible or Timely Claim for Fraudulent Concealment and Fraudulent Misrepresentation (Counts IV and VI)

Dixon also fails to state a claim for fraudulent concealment and fraudulent misrepresentation because the claims are time barred, and he fails to plead any of the elements with sufficiency under FRCP 9(b).

"The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and [(6)] damages." *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679 (JMA)(ARL), 2024 U.S. Dist. LEXIS 17004, at *22 (E.D.N.Y. Jan. 30, 2024). Similarly, the elements of fraudulent misrepresentation are that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Zamora v. Fit Int'l Grp. Corp.*, 834 F. App'x 622, 626 (2d Cir. 2020).

Here, Dixon's fraudulent concealment claim is based on four purported "facts" that Cartagena did not disclose to Dixon: (1) that Dixon's per-show compensation was budgeted at approximately $3,000, plus $100/day per diem for a three-day travel schedule; (2) that Dixon's co-authored lyrics and recorded vocals were used in at least 15 commercially released songs; (3) that no PRO registrations, Letters of Direction (LODs), or publishing split sheets were ever submitted on Dixon's behalf; and (4) Cartagena and his controlled entities collected all publishing revenue, licensing income, and streaming royalties generated from Dixon's contributions. Compl. ¶ 424. Dixon does not allege any purported concealment by any other Moving Defendant.

Dixon's fraudulent misrepresentation claim is based on four purported "materially false statements" made by Cartagena: that (1) Dixon would receive a 15% ownership interest in all songs he contributed to; (2) Dixon would be paid 15% of the gross earnings generated by those songs; (3) Cartagena would issue Letters of Direction (LODs) designating Dixon as a co-writer for royalty disbursement; (4) Dixon would be formally registered with PROs (e.g., ASCAP, BMI) for royalty collection; and (5) Dixon would be "taken care of" financially, and the backend payments were already accruing. Compl. ¶ 455. Similarly here, Dixon does not allege that any other Moving Defendant made purportedly false statements. In other words, both fraud claims are based solely on Dixon's Royalties and Performance Fees claims.

*First*, both fraud claims are time-barred. Under New York law, the statute of limitations for fraud claims is the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered the fraud. *See* N.Y. C.P.L.R. 213(8). *Zirvi v. Flatley*, 838 F. App'x 582, 586 (2d Cir. 2020). Dixon was on inquiry notice of his fraud claims as soon as he realized that he was not being paid what he believed he was owed. This happened as soon as Dixon did not receive the Royalties for the Recordings (as early as 2008). His fraud claims are therefore time-barred.

*Second*, Dixon's two fraud claims are duplicative of his quasi-contract claims. A fraud-based cause of action is duplicative of a breach of contract claim "when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." *Manas v. VMS Assocs., LLC*, 863 N.Y.S.2d 4, 7 (App. Div. 1st Dept. 2008). In other words, "[a] cause of action for fraud does not arise when the only fraud charged relates to a breach of contract." *Cohen v. HDS Trading Corp.*, 2013 NY Slip Op 32067(U), ¶ 8 (N.Y. Sup. Ct. 2013). "The same principles apply when a plaintiff seeks to recover based on a theory of quasi contract." *Id.* Here, both fraud claims

and quasi-contract claims are premised on Cartagena's lack of sincerity when he purportedly promised Dixon to pay the Royalties and Performance Fees. The fraud claims also seek the same damages as the quasi-contract claims. The alleged misrepresentations are therefore insufficient to state a claim for fraudulent concealment and fraudulent misrepresentation. *See Mid Atlantic Perfusion Assoc., Inc., v. Westchester County Health Care Corp.*, 864 N.Y.S.2d 100 (2d Dep't 2008) (holding that plaintiff's fraudulent inducement claim was duplicative of its quasi contract cause of action and must be dismissed); *see Cohen*, 2013 NY Slip Op 32067(U), ¶ 9 (dismissing fraud claim as duplicative of breach of contract claim).

*Third*, Dixon has not adequately alleged that Cartagena owed any duty to disclose the purported "facts" underlying his concealment claim. Mere conclusory allegations that Dixon and Cartagena "maintained a longstanding, confidential, and quasi-fiduciary relationship marked by trust, collaboration, and personal reliance" are insufficient to support such a claim. *See, e.g.*, *Tellez v. OTG Interactive, LLC*, No. 15 CV 8984-LTS, 2016 U.S. Dist. LEXIS 131463, at *13 (S.D.N.Y. Sep. 26, 2016) ("Plaintiff has failed to plead facts that plausibly demonstrate that this was anything other than an arms-length contract negotiation between himself and Defendants regarding Plaintiff's potential employment … Plaintiff has not identified any basis to conclude that Defendants were in a special position of trust and confidence that would have imposed upon them a duty to disclose.").

*Fourth*, Dixon does not allege that any purportedly concealed "facts" or misrepresentations were material, as required by both fraud claims. Specifically, Dixon has not pled how the fact that his "per-show compensation was budgeted at approximately $3,000, plus $100/day per diem for a three-day travel schedule" was material to his decision to work for Cartagena. Compl. ¶ 424(1). That Dixon performed at Cartagena's concerts for $150-$250 for over fifteen years renders this

claim incredible; he would have stopped working for Cartagena earlier had he believed the amount to be insufficient (independently of what Cartagena budgeted for him). Dixon further claims to have known that his lyrics and vocals were used in Cartagena's commercially released songs and that Cartagena effectively "controlled" all revenue and royalties generated from Dixon's contributions. And, as already noted, Dixon was on inquiry notice that "PRO registrations, Letters of Direction (LODs), or publishing split sheets were never submitted on Plaintiff's behalf" given that Dixon received no Royalties. *Id.* The fraudulent misrepresentation claim, in turn, is based entirely on non-actionable forward-looking statements. *See* Compl. ¶ 455; *Sharbat v. Iovance Biotherapeutics, Inc.*, 20 Civ. 1391, 2022 U.S. Dist. LEXIS 2328, at *29 (S.D.N.Y. Jan. 5, 2022) ("[A]ny alleged misrepresentation must be made with respect to an existing fact, as opposed to a representation concerning future conduct, and statements … concerning future expectations[] are insulated from liability.") (internal quotations omitted).

*Fifth*, Dixon does not plead reliance, let alone justifiable reliance, as required for both fraud claims. Any alleged reliance on the purported misrepresentations is plainly unjustifiable because he continued to work for Cartagena for fifteen years despite not being paid what he believed he was owed. *See Bezuszka v. L.A. Models, Inc.*, 04 Civ. 7703, 2006 U.S. Dist. LEXIS 13620, at *46 (S.D.N.Y. Mar. 24, 2006) ("If … Plaintiffs had indeed not been paid during the entirety of the two-year contract terms, it strains credulity that they could continue to reasonably rely on the defendants' representations."); *see also Adams v. Labaton, Sucharow & Rudoff LLP*, 2009 U.S. Dist. LEXIS 35085, at *15 (S.D.N.Y. Mar. 20, 2009) ("It strains credibility that Plaintiff … was employed with Defendant for over two years before bringing this action in continued, reasonable reliance on Defendant's initial alleged promise when he had not been paid the ten percent he was allegedly due[.]").

And *sixth*, Dixon's allegations come nowhere close to meeting the heightened fraud pleading standard for fraud under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quotations omitted). "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *City of Atl. City v. Drummon (In re Drummon)*, No. 24-CV-1668 (VEC), 2025 U.S. Dist. LEXIS 87517, at *15 (S.D.N.Y. May 7, 2025). The Complaint does not allege the timing, location, or form of a single purported misrepresentation.

## V.   Dixon Fails to State a Plausible Claim for Unjust Enrichment and Quantum Meruit (Counts II and III)

Dixon's unjust enrichment and quantum meruit claims are frivolous because they are plainly barred by New York's statute of frauds and should be dismissed accordingly. *See Alkholi v. Macklowe*, 858 F. App'x 388, 392 (2d Cir. 2021) ("The Statute [of Frauds] clearly applies as a defense to claims for unjust enrichment and quantum meruit.") (citing N.Y. Gen. Oblig. Law § 5-701(a)(10)). The Statute of Frauds provides that an oral agreement is "void" if the agreement "[b]y its terms is not to be performed within one year from the making thereof[.]" N.Y. Gen. Oblig. Law § 5-701(a)(1); *see Meyers v. Waverly Fabrics, Div. of F. Schumacher & Co.*, 65 N.Y.2d 75, 79 (N.Y. 1985). Thus, it is well-established under New York law that a "contract of indefinite duration … must be in writing." *Nasso v. Bio Reference Lab'ys, Inc.*, 892 F. Supp. 2d 439, 447 (E.D.N.Y. 2012). Crucially, "any agreement to pay royalties extending beyond one year must be in writing to satisfy the statute of frauds." *Sirico v. F.G.G. Prods., Inc.*, 896 N.Y.S.2d 61, 66 (App. Div. 1st Dept. 2010); *accord Melwani v. Jain*, 722 N.Y.S.2d 145, 146 (1st Dep't 2001).

Dixon alleges an oral agreement that Dixon "would receive a 15% percent ownership interest in all songs he contributed to" and "would be paid 15% of the gross earnings generated by those songs." Compl. ¶ 455. That supposed oral agreement of indefinite duration is barred by the Statute of Frauds. *See Johnson v. Giles*, No. 1:23-cv-2444 (MKV), 2024 U.S. Dist. LEXIS 169497, at *17-19 (S.D.N.Y. Sep. 19, 2024); *Sirico*, 896 N.Y.S.2d at 66 ("any agreement to pay royalties extending beyond one year must be in writing to satisfy the statute of frauds"); *Melwani*, 281 A.D.2d at 276, 722 N.Y.S.2d at 146.

## VI.    Dixon Fails to State a Plausible Claim for "Constructive Trust" (Count V)

Count V of the Complaint purports to assert a cause of action entitled "Constructive Trust," but a constructive trust "is not a cause of action, only a remedy." *Insured Advoc. Grp., LLC v. Spartan Servs. Corp.*, No. 23-cv-07212 (LJL), 2024 U.S. Dist. LEXIS 125232, at *32-33 (S.D.N.Y. July 16, 2024). Accordingly, Count V should be dismissed.

## VII.   Dixon Should Not be Allowed To Replead His Fundamentally Flawed Complaint

Courts in this district routinely dismiss complaints without leave to amend, where, as here, the "allegations describe fantastic or delusional scenarios and, even liberally construed, can only be described as wholly incredible and clearly baseless." *Scott v. Harbeck*, No. 24-CV-01506 (NCM) (LKE), 2024 U.S. Dist. LEXIS 213362, at *18 (E.D.N.Y. Nov. 21, 2024) (internal quotations omitted); *see also De Min Gu v. Doe*, No. 23-CV-3006 (PKC), 2023 U.S. Dist. LEXIS 73714, at *4 (E.D.N.Y. Apr. 27, 2023) (dismissing *pro se* complaint with prejudice as fantastical). Because Dixon filed highly implausible claims that are inherently contradictory, plainly time barred, or otherwise non-actionable under established precedent such that the defects "cannot be cured by amendment," dismissal with prejudice is warranted. *De Min Gu*, 2023 U.S. Dist. LEXIS 73714, at *5; *see Scott*, 2024 U.S. Dist. LEXIS 213362, at *22.

## <u>CONCLUSION</u>

For these reasons, the Court should dismiss the Complaint with prejudice.

Dated:    November 10, 2025
          New York, New York

By:    _/s/ Jordan W. Siev_
       Jordan W. Siev
       **REED SMITH LLP**
       599 Lexington, 22nd Floor
       New York, New York 10022
       jsiev@reedsmith.com
       212-205-6085


       Joseph Tacopina
       Chad Seigel
       **TACOPINA SEIGEL & DEOREO**
       275 Madison Avenue, 35th Floor
       New York, New York 10016
       jtacopina@tacopinalaw.com
       cseigel@tacopinalaw.com
       212-227-8877

       _Attorneys for Defendants Joseph_
       _Antonio Cartagena, Slate, Inc.,_
       _Sneaker Addict Touring LLC_

By:    _/s/ David H. Wollmuth_
       David H. Wollmuth
       Adam M. Bialek
       Phillip R. Schatz
       Russell B. Filip
       **WOLLMUTH MAHER &**
       **DEUTSCH LLP**
       500 Fifth Avenue
       New York, NY 10110
       dwollmuth@wmd-law.com
       abialek@wmd-law.com
       pschatz@wmd-law.com
       rfilip@wmd-law.com

       _Attorneys for Defendants Richard_
       _Jospitre and Peter Torres_


By:    _/s/ Reed Brodsky_
       Reed Brodsky
       Michael L. Nadler
       **GIBSON, DUNN & CRUTCHER**
       **LLP**
       200 Park Avenue
       New York, NY 10166
       rbrodsky@gibsondunn.com
       mnadler@gibsondunn.com

       _Attorneys for Defendant Erica_
       _Juliana Moreira_

## <u>WORD CERTIFICATION</u>

I hereby certify that the word count of this Memorandum of Law complies with the word limit of Local Civil Rule 7.1(c), as modified by the Court's October 15, 2025 Order. According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Rule 7.1(c), is 16,526 words.

Dated: New York, New York

November 10, 2025

*/s/ Jordan W. Siev*
Jordan W. Siev