# EXHIBIT B

PAAACARC

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------x

3   JOSEPH CARTAGENA,

4              Plaintiff,

5         v.                          25 CV 3552 (JLR)

6   TERRANCE DIXON, et al.,

7              Defendants.            Conference
                                      (via Microsoft Teams)
8   -------------------------------x
    TERRANCE DIXON, also known
9   As TA,

10             Plaintiff,

11        v.                          25 CV 5144 (JLR)

12  JOSEPH ANTONIO CARTAGENA,
    Personally known as Fat Joe,
13  Et al.,

14             Defendants.
    -------------------------------x
15

16
                                      New York, N.Y.
17                                    October 10, 2025
                                      3:04 p.m.
18
    Before:
19
                    HON. JENNIFER L. ROCHON,
20
                                      District Judge
21

22

23

24

25
```

PAAACARC

```
 1                              APPEARANCES

 2   TACOPINA SEIGEL & DeOREO P.C.
          Attorneys for Defendant Cartagena
 3   BY:  CHAD SEIGEL
          -and-
 4   REED SMITH LLP
     BY:  JORDAN W. SIEV
 5        IAN M. TURETSKY

 6   TYRONE BLACKBURN
          Attorney for Plaintiff Dixon
 7
     QUINN EMANUEL URQUHART & SULLIVAN LLP
 8        Attorneys for Defendant Roc Nation, LLC
     BY:  JOANNA E. MENILLO
 9

10   WOLLMUTH MAHER & DEUTSCH LLP
          Attorneys for Defendant Torres
11   BY:  ADAM M BIALEK
          PHILIP R. SCHATZ
12
     GIBSON, DUNN, & CRUTCHER LLP
13        Attorneys for Defendant Moreira
     BY:  MICHAEL L. NADLER
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Case called)

 2              THE DEPUTY CLERK:  Counsel, please state your names

 3    for the record.

 4              THE COURT:  Actually, before we do that, let me just

 5    place something on the record.

 6              We are proceeding with this conference through

 7    Microsoft Teams through video conference.  The reason for that

 8    is for the convenience of the parties, since I was putting this

 9    conference on on relatively short notice.

10              Court proceedings are public proceedings, and

11    therefore, there is a listen-only line that's been noticed on

12    the docket for anyone who wishes to join.  I have on the line

13    my deputy, my clerk.  I also have a court reporter who is

14    transcribing these proceedings.  And as a reminder, no one

15    other than court personnel may record, rebroadcast, or

16    disseminate these proceedings.

17              Now, let's start with appearances.  Who is here on

18    behalf of plaintiff, Mr. Dixon?

19              And you just need to unmute yourself please, sir.

20              MR. BLACKBURN:  Okay.  Let me try it again.  I'm

21    sorry.

22              Good afternoon, your Honor.  Tryone Blackburn.  I'm

23    here for the plaintiffs.  For the plaintiff, sorry.  I mean,

24    yeah, for the plaintiff.

25              THE COURT:  Thank you very much, Mr. Blackburn.
```

PAAACARC

```
 1              And then I'll start with the groups of defendants.
 2      Who is here for Mr. Cartagena, Slate, and Sneaker Touring?
 3              MR. SIEV:  Sorry.  Good afternoon, your Honor.
 4              Jordan Siev and my partner Ian Turetsky from Reed
 5      Smith.
 6              THE COURT:  Good afternoon.
 7              Who is here on behalf of Roc Nation?
 8              MS. MENILLO:  Good afternoon, your Honor.
 9              Joanna Menillo of Quinn Emmanuel Urquhart & Sullivan.
10              THE COURT:  Thank you.
11              Who is here on behalf of Richard Jospitre?
12              I think we just need you to unmute yourself if you
13      can.  You may want to call in perhaps.  Sometimes that helps.
14              MR. BIALEK:  Your Honor, my name is Adam Bialek, and
15      that is my partner, Phil Schatz, from Wollmuth Maher & Deutsch,
16      and we represent Rich Jospitre.
17              THE COURT:  Wonderful.  Thank you very much.  That
18      handles that.
19              Who is here on behalf of Peter Torres?
20              MR. BIALEK:  The same, Adam Bialek and Phil Schatz
21      from Wollmuth Maher & Deutsch.
22              THE COURT:  Thank you.  Apologies.
23              Who is here for Erica Moreira?
24              MR. NADLER:  Good afternoon, your Honor.
25              Michael Nadler from Gibson, Dunn & Crutcher.  Nice to
```

PAAACARC

1   see you again.

2              THE COURT:  Nice to see you.

3              I believe that takes care of all of the defendants.

4   Is there any other defendant who is represented by counsel here

5   today?

6              Okay.  All right.  So we're here on a few things.  I

7   have some letters I received from the parties.  One is dated

8   October -- appears to be undated on my copy here.  I received a

9   letter from the seven named defendants that deals with some

10  procedural aspects of the case as well as requests a motion to

11  stay discovery, seeks to stay discovery.  And then I have a

12  response from Mr. Blackburn that was filed at Dkt. No. 66 on

13  October 7th in response to the issues raised in the other

14  letter.

15             And so what I thought we would do is start with the

16  issues that appear to be agreed-upon.  And so let me tick

17  through those.

18             First, I have, I believe, agreement that the six

19  defendants that have not filed a motion to dismiss will do so

20  by November 10th, 2025, and will do so in a consolidated brief

21  that will be limited to 12,500 words.  And then each defendant

22  will be permitted to file a 3,000-word supplement concerning

23  issues unique to that defendant.

24             Mr. Blackburn, I understand that you agree to that

25  proposal?

PAAACARC

1              MR. BLACKBURN:  Yes.  And I believe that Adam and I --

2       I'm sorry, your Honor.  Can you hear me?

3              THE COURT:  Yes, I can.

4              MR. SCHATZ:  So Mr. Blackburn and I, there had been a

5       dispute to the briefing schedule --

6              THE COURT:  Just one moment, please.  I don't know who

7       is talking.

8              Who is speaking please?

9              MR. SCHATZ:  This is Phil Schatz.  I called in on the

10      line.

11             THE COURT:  Okay.  Mr. Schatz, one moment.  Let me

12      talk to Mr. Blackburn first.  I'm talking about his position on

13      this, and then I will hear from you, Mr. Schatz.

14             Yes, Mr. Blackburn.

15             MR. BLACKBURN:  Yes, your Honor.

16             So I was going to pivot to Phil because I was just

17      speaking to him, literally about an hour ago, twenty minutes

18      ago, about the -- about my letter and what we agreed to.

19             So, you know, we have come up with an agreement.  I

20      think, Phil, if he wants to jump back in and provide the Court

21      with an update that is what we just discussed.

22             THE COURT:  Okay.  Thank you.  And I'm just going to

23      make sure we don't talk over each other for the court

24      reporter's sake.

25             So, Mr. Schatz, why don't you speak now.

PAAACARC

```
 1              MR. SCHATZ:  Yes, your Honor.  If it's acceptable to

 2     the Court, Mr. Blackburn and I had coordinated on the areas of

 3     dispute on the briefing schedule.  And we wanted to -- we

 4     understand the Court encourages and appreciates brevity.  Not

 5     levity.

 6              So we had reached an agreement, if it's acceptable to

 7     the Court, where our opening briefs, the parties could -- the

 8     plaintiffs could split them up as they see fit.  Would be

 9     21,250 words.  The opposition brief by Mr. Blackburn would be

10     21,250 words.  And then the replies, again, would be split up

11     between the group, would be 11,250 words.

12              THE COURT:  And so those would be total, some in a

13     consolidated brief and some in individualized brief, however

14     the defendants wish to break them up?

15              MR. SCHATZ:  Yes, that's correct.  Our goal would be

16     to try to put almost all of it into a consolidated brief, but

17     there may be individual issues that will be outside of it.

18              THE COURT:  Thank you.

19              Mr. Blackburn, that's your understanding as well?

20              MR. BLACKBURN:  100 percent, yes.

21              THE COURT:  Okay.  That's acceptable to the Court.  I

22     will put down that word limitation for the briefs.  And the

23     date would still be November 10th, 2025, for the filing date

24     for the motions to dismiss that have not been filed yet.

25              Is that correct, Mr. Schatz?
```

PAAACARC

1              MR. SCHATZ:  I believe that is correct.

2              THE COURT:  And then in the opposition --

3              MR. SCHATZ:  Subject to opposition by anybody on my

4     team.

5              THE COURT:  Thank you.

6              And then the opposition brief by the plaintiff is

7     January 31st, 2026.  Mr. Blackburn, is that correct?

8              MR. BLACKBURN:  Yes, your Honor.

9              THE COURT:  And then the replies are due March 16th,

10    2026.  Mr. Blackburn, or Mr. Schatz, is that correct?

11             MR. SCHATZ:  That is my understanding.  Although I

12    stand to be corrected if anybody has -- I don't have the

13    document in front of me.

14             THE COURT:  Anybody have an issue, raise your hand

15    now.

16             Okay.  Good.  I will put down that schedule, and I

17    thank you both for working through that.  I always appreciate

18    when there's both professional courtesies as well as agreement

19    between the parties.

20             MR. SCHATZ:  Thank you, your Honor.

21             THE COURT:  Thank you.

22             Now let's move to the next area, and it's a little bit

23    overlapping.

24             Mr. Schatz, I think you may need to either mute your

25    phone or something like that so I can --

1              MR. SCHATZ:  I thought I muted it.  I apologize.

2              THE COURT:  That's okay.  There you go.

3              It seems that the parties agree, based at docket 43 at

4  2 and docket 44 at 1, that the October 15th initial pretrial

5  conference should be adjourned until the motion to dismiss --

6  I'm a little unclear, as briefed or resolved or something to

7  that nature.

8              Mr. Blackburn, do you agree that we should adjourn

9  that conference?  I'm going to need you to unmute, please, sir.

10              MR. BLACKBURN:  It does it automatically.  I have it

11  muted.  I apologize.

12              So my understanding from speaking with counsel is that

13  the basis -- well, they were going to just put forth a -- make

14  a premotion argument essentially at that hearing.  So I figured

15  if we can agree to a motion scheduling and word limitations,

16  there's really no need for us to come in, if that's the only

17  issue that's potentially going to be raised at that point.

18              The only piece of it that we couldn't see eye to on

19  eye on was this thing of discovery, which I don't think makes

20  sense and I am -- my position stems from our initial -- the

21  initial conference that we had in this case I think back in

22  August.  Well, the Cartagena versus Dixon case, where your

23  Honor did not stay discovery pending the outcome of the motion

24  to dismiss.

25              THE COURT:  Okay.

1           MR. BLACKBURN:  So I just figured we would be

2    consistent with both cases.  That's all.

3           THE COURT:  Okay.  Thank you for that.

4           The reason I ask the question is because one cannot

5    start discovery in a case until you have your Rule 16

6    conference, initial pretrial conference.  So by adjourning that

7    conference, we would be effectively imposing a stay on

8    discovery.

9           So I'm not sure that that's what you intended,

10   Mr. Blackburn.  And so why don't we then have that discussion

11   now about a stay of discovery.  I know that the defendants

12   would like to stay discovery.  I know, Mr. Blackburn, you

13   oppose that request.

14          I have your letters in that regard, and so I am here

15   to hear any additional arguments that either side wishes to

16   raise.  I may have a few questions.  But I think that it may

17   make sense to maybe have one representative of the defense

18   group give me the argument on the stay and then I'll hear from

19   Mr. Blackburn in opposition.

20          I don't think I need formal motion practice if the

21   parties agree that the letters have sufficient information for

22   me to rule, as well as affording everyone the opportunity to be

23   heard here today.

24          So is there any objection to me hearing this as a stay

25   motion?  And I see no one raising their hands to object.

PAAACARC

1            And so why don't we then hear from somebody from the

2    defense group to talk to me about the stay request.  And keep

3    in mind Mr. Blackburn's point that the other matter was not

4    stayed.  And I will say that that's a slightly different

5    context because I don't think I received a motion to sort of

6    stay discovery in that case.

7            That motion was framed as a motion to stay the second

8    action completely, or dismiss it, because it should be brought

9    as a counterclaim.  I denied that because I found that it

10   wasn't a compulsory counterclaim and could proceed.

11           I don't think we framed up precisely whether discovery

12   should be stayed pending the motions that were filed in that

13   case.  The request really was to stay the entire case, which

14   would mean staying any motion practice or otherwise in that

15   case, but the parties can clarify anything they wish to clarify

16   and make their arguments here.

17           Is it going to be Ms. Menillo?

18           MS. MENILLO:  Yes, it is, your Honor.

19           THE COURT:  Okay.  Why don't you proceed.

20           MS. MENILLO:  Great.  Thank you, your Honor.

21           And I'm going to start right where your Honor left off

22   and where Mr. Blackburn left off, which is your Honor pointed

23   out that the other case, when we had the initial conference, I

24   believe it was back in August, was a slightly different

25   posture.

1          I do believe, your Honor, that Mr. Blackburn made a

2     very brief short request for a stay pending his motion to

3     dismiss.  My understanding was it wasn't fully briefed out in a

4     letter that your Honor did deny.  But, the circumstances of

5     that case are quite different from this case.  Notwithstanding

6     the fact that in that case, there was also a request to stay or

7     dismiss the second case and the compulsory counterclaim issue.

8          One of the primary issues is, as evident I'm sure to

9     your Honor, is the parties are very, very different.  The

10    claims are very, very different.  In the first filed action,

11    the parties are Mr. Cartagena is the plaintiff, and the

12    defendants are Mr. Blackburn and his client, Mr. Dixon.  And

13    that's it.  And the claims are pretty narrow and discreet.

14    They're defamation claims.  I believe there's an IIED claim.

15    I'm certain that Mr. Siev can speak about it a little more

16    eloquently than I could.  But certainly we're talking about

17    different claims, different parties.

18          In this case, which was filed after the fact, and I

19    would note, your Honor, that when the initial conference

20    occurred on the first filed action back in August, I was the

21    only attorney representing a defendant that appeared at that

22    conference because none of the other defendants had been

23    served.  They have only recently been served and only recently

24    appeared in this case.

25          So they weren't even a part -- weren't even at the

1    original conference and wouldn't have had a say in that stay

2    discussion because they're not parties to that action.

3            The substantive claims are also quite different.

4    Mr. Blackburn, on behalf of his client, has asserted I think

5    about seven causes of action, one of them is RICO.  One of them

6    is a violation of the TVPRA.  Those are very complex claims.

7    We have a number of defendants here.  The complaint itself is I

8    believe 775 paragraphs, and it spans over 16-year period.  So

9    we're talking about a long time.

10           So those are the fundamental differences and why it's

11   not, in my view, would not be simple enough to say, well, there

12   was no stay in the first case, so for consistency sake, there

13   should be no stay in this case.

14           And I'll get right now into the actual elements of a

15   motion for a stay, which I'm sure your Honor is familiar with,

16   which is the breadth of discovery sought and prejudice in

17   responding to discovery, prejudice to the other side, and then

18   the merits of the motion that are triggering the request for

19   the stay.

20           Our view is that all three of these elements heavily

21   weigh in favor of a stay.  And I'll start with the breadth of

22   discovery, and the prejudice in responding to it, because I

23   think it dovetails with where I left off about the differences

24   between the cases.

25           In this case, we have a very, very broad case, a

1   number of defendants, a number of complicated claims.

2   Mr. Blackburn, in his October 7th letter, indicated and agreed

3   that discovery in this case would be considerable.  It would be

4   wide reaching.  It would be -- it would certainly be, in his

5   words, necessarily expansive because the complaint "spans

6   nearly two decades, involves multiple states, shell corporation

7   and purported acts of coercion, trafficking, and fraud."

8           So Mr. Blackburn himself acknowledges that discovery

9   in this case is going to be considerable.  That means it's

10  going to be time consuming and that means it's going to be very

11  costly for all of the parties involved.  So there's certainly

12  the breadth of discovery in this case will be wide reaching.

13          And in a letter on October 8th, Mr. Blackburn also

14  indicated that he does intend to serve third-party discovery, a

15  lot of that will be, I believe, on government agencies.  So

16  we're not in a situation where we're talking about just party

17  discovery.  We're talking about nonparty discovery.  I presume

18  there will be requests for production, interrogatories, perhaps

19  requests for admission, certainly numerous defendant

20  depositions.  We don't know who from the various entity

21  defendants would be considered individuals that Mr. Blackburn

22  would want to depose on behalf of his client.

23          So we're talking about a lot of discovery that's going

24  to span nearly two decades.  It's going to be costly.  It's

25  going to be time consuming, and that means there's going to be

1    significant prejudice to the defendants to have to defend the

2    discovery, engage in that discovery, if there's a good chance

3    based on the merits of their motion that this case will either

4    end in its entirety or be significantly narrowed.

5              And I would point your Honor to one of the cases that

6    we cited in our letter, which was *Alapaha View Ltd. v. Prodigy*.

7    It's a WL cite, but it's 2021 WL 1893316, and that was decided

8    in May 2021 in SDNY.  And that case made the points that I'm

9    making here, which is there was discovery that was going to

10   happen.  There were a number of parties that were involved in

11   the case.  The issues in the case spanned multiple decades

12   there as well, and the Court found that this factor, which is

13   to say the breadth of discovery, prejudice to the parties who

14   would have to engage in it, weighed in favor of a stay.  And in

15   fact, in that case, at least plaintiff had agreed to forestall

16   depositions, and the Court still found that the factor favored

17   a stay.

18             So, in my view, your Honor, we're in a little bit of a

19   different position than that case, but nevertheless, in a

20   strong position that this factor would, in our view, weigh in

21   favor of a stay.  So with that I would turn to the prejudice to

22   opposing counsel.

23             As your Honor knows, this case is very young.  It's

24   only about four months old.  It was filed in mid June.  And

25   other than Roc Nation, who we appeared right away and filed a

1   motion to dismiss, as I mentioned earlier, the other defendants

2   in this case have only been recently served or waived service,

3   and have appeared in this action.  As your Honor of course is

4   aware, all of them intend to move to dismiss as Roc Nation did.

5   And part of that was because Mr. Blackburn, on behalf of his

6   client, did not obtain summons in serving the defendants in

7   this case right away.  And that seems to be a pattern of

8   stalling on or delaying in prosecuting the case.

9           So it does not seen that there would be really any

10  prejudice here to Mr. Blackburn or his client in an additional

11  delay while the Court considers the parties' motions to dismiss

12  and Roc Nation's additional motion for sanctions that's already

13  been fully briefed.

14          The other point, your Honor, and more importantly, is

15  that plaintiff has not even articulated what the basis of the

16  prejudice to his side would be if the Court did in fact impose

17  the stay.  So far in his letter, he's only indicated that

18  plaintiff will be delayed in accessing "crucial evidence,

19  contracts, communications, financial records, and witness

20  testimony."  But that's the case, your Honor, in every

21  circumstance where a party asks for a discovery stay.  Right?

22  There's going to be a delay in obtaining evidence that a party

23  believes is crucial to their case.  That's not a real, in our

24  view, reasonable basis to say that there will be prejudice

25  here.

1          And, in any event, every one of the defendants is

2     served now.  We are all -- all of the defendants are under a

3     duty to preserve evidence, so there's no concern about

4     documents being lost, and we're not dealing with parties who

5     are quite old and maybe their memories are quite faded so

6     there's really no prejudice in our view, and we haven't heard a

7     reasonable one articulated by the plaintiff's side.

8          THE COURT:  Ms. Menillo.

9          MS. MENILLO:  Yes.

10          THE COURT:  Before you move off of that factor, it is

11     my understanding that the first filed action and the second

12     filed action are quite different, and I think that was even

13     agreed to by Mr. Blackburn when he was arguing against

14     requiring that it be brought as a counterclaim.  There are, as

15     you've articulated, different defendants, different claims, et

16     cetera.  But is there some sense of a bit of overlap, such that

17     some of the discovery regarding maybe the basis for some of the

18     defamation claims is going to be produced in the first filed

19     action, in any event?  So that discovery will take place even

20     if a stay is in place in the second filed action.  Is that

21     correct?

22          MS. MENILLO:  I think that you're right, your Honor,

23     in that there will be discovery likely to the defamation claims

24     and the underlying basis for it and -- in the first filed

25     action.  But it's going to have little impact, in my view, on

1  the discovery in this case.  And having a stay in this case

2  won't be prejudicial to Mr. Dixon because, to the extent there

3  is any overlap, he will get some of that in the first action.

4          THE COURT:  Okay.  Go ahead.  Strength of the pending

5  motion to dismiss.

6          MS. MENILLO:  Yes.  And on this one, your Honor, I

7  know you're familiar with it and I know you've considered

8  motions for stay before.  But a lot of the Courts, what they

9  do, is they look at the merits of the motion and they ask

10  themselves is it unfounded in the law.  And then when you're

11  talking about a motion that is not unfounded in the law and has

12  the capacity like certainly Roc Nation's motion does, both the

13  motion to dismiss and the motion for sanctions, and the

14  forthcoming motions from the defendants to either dispose of

15  the case entirely or narrow the issues and the parties

16  significantly, that weighs in favor of a stay.  And I think

17  both of those pieces of this question are met and exceeded

18  here.

19          And I'll start with Roc Nation's motion because that

20  one is fully briefed.  I'm sure your Honor is familiar with it

21  as well as the motion for sanctions.  As your Honor knows, Roc

22  Nation is in this case based on, in our view, two or three

23  facts.  They are Mr. Cartagena's manager.  They received a fee

24  for doing management services for Mr. Cartagena.  And there's

25  an allegation that they have some sort of connection or at

1   least referred an accounting firm to Mr. Cartagena.  But that's

2   really it in terms of the conduct that's alleged in the

3   complaint or the actual factual allegations alleged in the

4   complaint as to Roc Nation.

5        And all those do is lead to an inference that Roc

6   Nation had a routine business relationship with Mr. Cartagena.

7   They certainly do not lead to any kind of an inference that Roc

8   Nation had any facts or knowledge about any purported venture,

9   sex trafficking, forced labor, or involvement in or knowledge

10  of any RICO enterprise or any predicate acts related to a

11  purported RICO enterprise.  And those are really the primary

12  claims that are asserted against Roc Nation in this case.

13       So there's simply insufficient, inadequate facts that

14  would lead to a plausible claim against Roc Nation.

15       And that's just on the factual allegations.  And this

16  is not a circumstance, your Honor, where you would say to

17  yourself, okay, well, all he needs to do is allege additional

18  facts and then he would be able to make it over the line and

19  the complaint can stand against Roc Nation.  Because what we

20  know -- and I'm going to tip a little bit into the sanctions

21  motion here.  What we know is that there are no facts that

22  would lead to a cognizable claim against Roc Nation, because an

23  e-mail that was sent from plaintiff's counsel to another

24  attorney at my firm within hours of us filing our motion to

25  dismiss, indicated that based on Mr. Blackburn's investigation,

PAAACARC

1   his client's investigation up until the filing of the

2   complaint, their belief was that Roc Nation was a victim of

3   fraud.  Their belief was that there was no evidence that would

4   tie Roc Nation to any of the illegal conduct that is purported

5   to be alleged in the complaint.

6          So, simply put, there are no facts alleged in the

7   complaint because there are no facts that exist that would

8   warrant Roc Nation's involvement in this case.

9          And then you add on to it, your Honor, that the RICO

10  claim is time barred.  And RICO claims, the Courts I believe

11  have called them the equivalent of nuclear warfare.  Having a

12  RICO claim asserted against you in the first place is very,

13  very jarring.  And especially in a case as high profile as

14  this, where there has been significant media attention, where

15  plaintiff has gone out of his way to make sure there is

16  significant media attention, and the underlying allegations are

17  of a salacious nature.  Adding the RICO claim to it, in and of

18  itself, the Courts have recognized are -- it's nuclear warfare.

19         So if you have no legitimate basis to bring it, it's

20  sort of in a very, very dangerous area of the law.  And on top

21  of that, your Honor, there's no factual basis.  But even more

22  egregiously, they're untimely.

23         All the bases for the RICO claim against Roc Nation, I

24  believe the predicate acts are based in fraud, and all of those

25  are interrelated to Mr. Dixon's wage-related claims.  He claims

1    that he was not paid an appropriate amount of money or

2    underpaid or not paid at all.  All of that information is

3    information that would have been readily apparent to him on

4    receipt of his compensation, his wage statements.  So he would

5    have been on inquiry notice of any sort of discrepancy that

6    would have prompted him to investigate what was going on and

7    maybe uncover the existence of a potential claim against

8    anybody he believed was involved as soon as it happened.

9            So that, when you're talking about claims that have

10   been ongoing for 16 years or allegations that Mr. Dixon alleges

11   have been ongoing for 16 years, against that backdrop, it's

12   evident that they are untimely claims.  There's no basis to

13   toll them.

14           So, on their face, they should not have been brought.

15   And, collectively, the lack of facts against Roc Nation, the

16   untimeliness of the claim, and the obvious nature of the

17   inquiry notice about the claim against Roc Nation, certainly

18   the RICO claim, is another reason why the sanctions motion that

19   is we brought is a strong motion.

20           You put that together, coupled with the e-mail that

21   Mr. Blackburn sent within hours of us filing our motion to

22   dismiss, and it paints the picture that this case was brought

23   for the improper purpose of harassing Roc Nation in an attempt

24   to extract an outside settlement.

25           So we believe firmly that our motion to dismiss, our

1    motion for sanctions, are certainly well grounded in the law.

2    If just Roc Nation's motions are granted, Roc Nation will no

3    longer be a party to this case, which underscores the prejudice

4    that would -- Roc Nation would have to suffer by engaging in

5    discovery.  And we think that that factor as to Roc Nation

6    weighs in favor of a stay.

7           For the remaining defendants, although their motions

8    are not fully briefed yet, a lot of the arguments that are part

9    of Roc Nation's motion, I understand will be applicable to the

10   remaining defendants as well.  I certainly believe that some of

11   the other attorneys on the line could articulate those bases

12   better than I.  But I know for certain that there are numerous

13   grounds on which the remaining defendants seek to move to

14   dismiss on the basis that the claims are untimely.  Certainly

15   the TVPRA claims, the RICO claim.  The defendants will intend

16   to argue that they're untimely.  The defendants also seek to

17   argue, at least the corporate defendants, that the TVPRA should

18   not be asserted against the corporation.  In fact, it cannot be

19   asserted against the corporation based on the plain language of

20   the statute.  And that's just before you even get into the

21   actual factual allegations.

22          As it relates to Mr. Cartagena specifically, I

23   understand that in addition to any potential untimeliness

24   arguments, the basis for the RICO claim against him is sort of

25   a two-part theory.  One has to relate to the wage disputes,

PAAACARC

1    which we talked about when we talked about Roc Nation's

2    argument as to why the RICO case was untimely.  And I

3    understand the other part of it is really a copyright claim,

4    which is duplicative and preempted.

5          And then once you get beyond the threshold issues of

6    statutes of limitations, statutes that are clearly brought

7    against parties that shouldn't have been brought against those

8    types of parties, the factual allegations do not give rise to

9    cognizable claims against any of the defendants in this case.

10   And, certainly, on top of that, especially with respect to

11   Mr. Cartagena specifically, a lot of the material that is in

12   this complaint has nothing to do with the actual claims that

13   are asserted.  They really serve to paint this atmosphere a

14   picture of Mr. Cartagena as a bad guy, and to sort of malign

15   him in the press and in the Courts just to try and claim that

16   he's at the top of a head of some criminal RICO enterprise.

17         So, collectively, your Honor, we believe that all of

18   the defendants' motions are meritorious.  They're all well

19   founded in the law.  We believe that your Honor will believe

20   so, too.  And resolution of them very well may result in a

21   complete dismissal of this case in its entirety without

22   prejudice.

23         And, as I mentioned, at minimum, your Honor, it will

24   certainly narrow the number of parties to this case, the number

25   of claims in this case, and the issues that the Court has to

1   resolve.  So it will not only be a benefit for all of the

2   defendants for avoiding the need to undergo broad, timely,

3   expensive discovery, but will relieve the burden on the Court

4   from having to litigate and resolve numerous issues.

5        And I'm happy to answer any additional questions your

6   Honor has.

7        THE COURT:  No.  I think that covers it.  Thank you

8   very much for the presentation.

9        Mr. Blackburn, could I have your response, please?

10        MR. BLACKBURN:  Okay.  Thank you, your Honor.

11        So, like I said in my letter, I was responding to the

12  main arguments that was written in the initial letter from the

13  defendants, where they said that the RICO claim is untimely,

14  and the TVPRA claim is also untimely.  I disagree

15  wholeheartedly with both of those assessments.

16        First of all, for the RICO, is a four-year limitations

17  period, as I noted in my letter.  And according to

18  Mr. Cartagena, my client last worked for him in 2021.  We filed

19  this in 2025.  We are within the four-year window of statute of

20  limitations for the RICO claim.  As well as the fact that, as

21  we displayed by putting samples, upon samples, upon samples of

22  harassment within the complaint, that Mr. Cartagena and Mr.

23  Jospitre, and the other individual defendants, Pistol Pete,

24  Pete Torres, have been engaging in relentless acts of

25  harassment.  We have Instagram messages.  We have audio

PAAACARC

1    recordings that I can play for the Court if the Court has 20

2    minutes to listen.  I have a speaker and I have the recordings.

3    I could play it right now.

4              THE COURT:  No.  That's okay.

5              MR. BLACKBURN:  Okay.  We have a lot of evidence

6    establishing that they have engaged in RICO predicated acts, at

7    least two within the last ten years.  Right?  And they've done

8    that multiple times.  As recently as last fall when

9    Mr. Cartagena was campaigning with Vice President Harris for

10   the Presidency, he was sending threatening messages via

11   Instagram, which we provided the Court with.  Those messages

12   are actually within the pleading itself.

13             And I know that Mr. Cartagena argued, I believe in his

14   motion, in his opposition to our motion to dismiss of his case,

15   that he does not have any shadows or any secretive Instagram

16   accounts.  But as recently as a couple of days ago, he said in

17   his podcast that he does.  And I can play that for you right

18   now.  It's a minute long.  I have that screenshot of that

19   argument as well.  Right.

20             So moving on to the next piece, which is the TVPRA,

21   you said it was ten years.  Again, if you go ten years back

22   from 2025, you get 2015, that's in the heart of my client's

23   employment with Mr. Cartagena.  And he was traveling.  The sex

24   acts was occurring at that time as well.

25             So those claims aren't valid.  And they can move

PAAACARC

1    forward.  They're not untimely.

2            As it pertains to why we would need to move forward

3    with discovery now is because one of the witnesses that I would

4    like to depose has a serious health condition.  And, you know,

5    she's always in the hospital.  And she actually had a heart

6    condition.  And I need to get her testimony on the record, and

7    I do not think that she would actually survive until this

8    entire process is completed with this motion to dismiss.  So --

9            THE COURT:  Is that individual a party to this case or

10   is it a third party?

11           MR. BLACKBURN:  She's not a party.  She's third party.

12   She's a former accountant of Mr. Cartagena.  And I believe her

13   former employer may be BDL.  She has a lot of information

14   that's essential to the claims that my client has when it comes

15   to unpaid wages, when it comes to instruction that is given --

16   that was given to her by Mr. Cartagena and by a representative

17   of Roc Nation to reduce my client's wages and salary and to not

18   pay him fully, not compensate him, as well as others, fully for

19   what they earned while touring and while working for

20   Mr. Cartagena.

21           And I believe she may have text messages and other

22   documents on her computer, which I would never be able to gain

23   access to if we wait, possibly not gain access to if we wait as

24   long as defendants are trying to stall this case.

25           As it pertains to other things that we would need to

1   get, we would need to subpoena the social media accounts.  I do

2   not want Mr. Cartagena to delete his account or to get rid of

3   it.  But there are about three or four different Instagram

4   accounts that are shadow accounts, as he refers to them, that I

5   can play for you, that we would need to gain access to.  And we

6   would need to gain -- and it's only a limited -- I don't need

7   the whole entire account history.  It's just predicated around

8   the messages that are embedded within the pleading to show

9   proof that it came from him.  And where was he when he sent

10  those messages.  You know what I'm saying?  Like you can --

11  also cell phone tower data, we need that as well.  Right?

12  Where was he located when the messages was sent because that's

13  essential, a part of our claims as well.

14      THE COURT:  So, Mr. Blackburn, let me pause you there

15  for just a minute.

16      MR. BLACKBURN:  Of course.

17      THE COURT:  The Instagram posts and accounts, you

18  would agree, there's requirement that they be preserved if

19  they're referenced certainly in your complaint as relevant

20  information.  So it doesn't seem to me that those would be

21  going anywhere.  Cell tower data similarly exists independently

22  and can be procured as well, but is there any --

23      MR. BLACKBURN:  Yes.

24      THE COURT:  The preservation obligations, the

25  Instagram posts will still be if we commence discovery if I

1    were to delay it.

2              MR. BLACKBURN:  So, your Honor, the reason why I'm

3    pushing for us to complete -- to begin discovery in this case

4    is that I attempted to obtain some of this information from

5    Mr. Cartagena in the *Cartagena v. Dixon* matter, and I got a

6    rejection of everything that I requested.  So, you know, I have

7    the responses here.  And no documents, nothing was ever turned

8    over.  I sent over notices that I intend to send to third

9    parties, notice of subpoenas.  No responses were provided to

10   those.  There's lot of things here that I'm afraid that if, you

11   know, if we stay discovery for the *Dixon v. Cartagena* matter, I

12   will never be able to get my hands on these things.  Because

13   they're refusing to provide them to me because they claim that

14   it's not relevant to the *Cartagena v. Dixon* case.

15             THE COURT:  Okay.  Well, that can certainly be

16   something that's addressed in a discovery motion and with

17   respect to that earlier case.  But why don't you continue,

18   Mr. Blackburn.

19             MR. BLACKBURN:  Okay.  So the breadth of discovery

20   argument, yes, you know, there are a lot of defendants here.

21   But I don't think that the breadth of discovery would be

22   burdensome on every lawyer in this case.  The main issue, the

23   main individual in this case is Mr. Cartagena.  He's the main

24   individual.

25             When it comes to the other two individual defendants,

1   Mr. Jospitre and Mr. Torres, I have their audio recordings and

2   it's just to get information from their cell phones, like text

3   messages and all the other stuff.  So that's not going to --

4   and this is not for deposition.  That's not going to cause a

5   crazy burden on their counsel.

6        When it comes toker Erica Moreira, she -- my inquiry

7   into her is very, very specific.  One, her representation that

8   she was a licensed attorney in Florida, which she was not at

9   the time when she contacted me.  Two, her representation that

10  she was licensed in New York, which she wasn't at the time she

11  contacted me as well.  Three, the fact that she is slated as

12  the officer on many of these shell companies that was

13  established and created in Florida, which had a direct impact

14  on my client not receiving his proper pay and my client not

15  receiving other things.  Right?  Because my client sent her

16  messages, which we have, text messages, directly inquiring

17  about his salary and his, and his wages.  And Ms. Moreira, who

18  was the slated point person, either ignored him, said she had

19  to deal with her kids, a whole bunch of different things.

20       So she's directly related and connected to everything

21  that Mr. Cartagena has done over the past 16 years that my

22  client worked for him.

23       When it comes to Roc Nation, there's -- the inquiry

24  into them is very specific to one individual who is a former

25  manager or former employee of Roc Nation who was the slated

PAAACARC

1    manager of my client as well as Mr. Cartagena, and he was the

2    individual that informed my client that there was a payment

3    earmarked for him that Mr. Cartagena essentially stole and did

4    not pay him.

5         So that inquiry is very limited as well.  So it's not

6    like, you know, we're trying to inundate every party, every

7    counsel with a bunch of work.  That's not what it is.  The

8    person who is going to have a lot of work is Mr. Cartagena

9    because he has a lot of explaining to do.  But everybody else,

10   my focus is very limited on the actions that my client can

11   prove that they did and getting answers surrounding why they

12   did what they did.

13         THE COURT:  Thank you.

14         MR. BLACKBURN:  And, I'm sorry, real quick.  If we

15   were to go, you know, go forward with the Rule 16 hearing and

16   we -- you would know this because I will be required to present

17   what we're looking for, who we're looking to call, and the

18   purpose of their testimony.  And we haven't even gotten to that

19   point yet.

20         So, you know, I get that they think that I'm going to

21   just be, you know, requesting everything under the sun, but

22   that's not it.  It's very specific because I know -- I mean,

23   before I filed this, I double and triple checked a lot,

24   everything I said here.  So I know essentially where the bodies

25   are buried.  So it's very laser focused what I'm going to be

1    going after.

2            THE COURT:  Okay.  Thank you, Mr. Blackburn.

3    Appreciate it.

4            Ms. Menillo, one follow-up question for you.  I'm not

5    sure if you're familiar with the witness that Mr. Blackburn

6    referenced as being -- as having serious health conditions that

7    would warrant a deposition earlier rather than later.

8            Are you familiar and do you have a response to that

9    argument?

10           MS. MENILLO:  This is the first I'm hearing about that

11   witness, your Honor.  I think based on the report that's before

12   your Honor and the letters, that was never mentioned.  So this

13   is the first I'm hearing it.

14           I would say that I don't know anything about this

15   witness.  I don't know anything about the nature of this

16   witness' illness, and, you know, certainly I don't want to call

17   into question Mr. Blackburn's representations to the Court, but

18   I don't know how that would impact it, whether or not that

19   would be -- that, in my view, a single witness would not

20   necessarily warrant requiring all the defendants to engage in

21   all the discovery.

22           So that would be my position on that at this time

23   without additional information about this person.

24           THE COURT:  So it may, in your view, make sense to

25   perhaps have further discussion about that particular witness

1    and whether, if I grant a stay, a carve-out should be imposed

2    for that particular witness based on extenuating circumstances,

3    but that the general stay should be imposed.

4            Would that be your view?

5            MS. MENILLO:  Yes, your Honor.  I'll start with the

6    end of that, is that I definitely believe that the general stay

7    should be imposed.  And if Mr. Blackburn believes that there is

8    a legitimate basis to make a carve-out, you know, he can make

9    that application and we would respond to it.

10           THE COURT:  Okay.  All right.  And thank you.

11           Is there any other defendant who wants to be heard?

12           Okay.  Thank you all very much.  Thank you,

13   Mr. Blackburn.  Let me give you my ruling now on this.  And

14   thank you for your patience.  I do like to cite my cases and

15   give you a complete ruling so that you have a record of it.

16           Before the Court is defendants' letter regarding

17   staying discovery pending the resolution of the present motion

18   to dismiss by Roc Nation as well as the other anticipated

19   motions to dismiss that will be filed.  That's at docket 43.

20   Plaintiff opposes the request.  That's at docket 44.  And for

21   the following reasons, the request to stay discovery is

22   granted.  And let me tell you why.

23           Under the Federal Rules of Civil Procedure Rule 26(c),

24   "a district court has considerable discretion to stay

25   discovery" upon a "showing of good cause." *Republic of Turkey*

PAAACARC

 1   *v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018).

 2           Because "a motion to dismiss does not automatically

 3   stay discovery" in most cases, "discovery should not be

 4   routinely stayed simply on the basis that a motion to dismiss

 5   has been filed." *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75,

 6   79 (S.D.N.Y. 2020).

 7           To determine whether a stay of discovery is warranted,

 8   courts "must look to the particular circumstances and posture

 9   of each case" *Id.*  And "should consider multiple factors,

10   including the breadth of discovery sought, the burden of

11   responding to it, the prejudice that would result to the party

12   opposing the stay, and the strength of the pending motion

13   forming the basis of the request for the stay." *Del Mar TIC I,*

14   *LLC v. Bancorp Bank*, 2024 WL 1348501, at *1 (S.D.N.Y. Mar. 29,

15   2024).  "The moving party bears the burden of demonstrating

16   good cause..." *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75,

17   79 (S.D.N.Y. 2020).

18           Regarding the first two factors, the breadth and

19   burden of discovery, the Court finds that discovery prior to a

20   motion to dismiss will be broad and burdensome to defendants.

21   The complaint in the present suit, *Dixon v. Cartagena, et al.*,

22   names seven defendants and alleges a vast conspiracy of

23   unlawful activities spanning 16 years.  Docket 3.  While I

24   appreciate Mr. Blackburn's argument that his main defendant is

25   Mr. Cartagena, he has chosen to bring an action that includes

1    seven defendants.  The logical conclusion after reading such a

2    complaint is that the documents required for such a suit will

3    be extensive and burden the defendants.  *See Richardson v. City*

4    *of New York*, 2022 WL 2003340, at *1 (S.D.N.Y. June 6, 2022),

5    where the Court held that discovery is likely to be broad and

6    burdensome when a complaint makes broad allegations and

7    implicates numerous defendants.

8          Neither party actually disagrees with this conclusion.

9    At least on the papers.  Although plaintiffs have not served

10   discovery requests, the defendants anticipate that the

11   plaintiff's requests will be "wide-reaching and that responding

12   to them will require significant time and expenses."  Docket

13   43.  Mr. Blackburn's letter in advance of this conference does

14   not alleviate those concerns.  In fact, the plaintiff agrees

15   that discovery in a case covering almost two decades of

16   activities "is necessarily expansive because defendants'

17   alleged civil and criminal conduct is expansive."  Docket 44 at

18   4.  Considering the parties both recognize that the potential

19   breadth and anticipated discovery is broad, these factors weigh

20   in favor of defendants' motion to stay.

21         Nothing that has been presented here alters this

22   Court's conclusion, even though there may be some circumscribed

23   discovery that is requested here.  Given the breadth and the

24   number of claims here and the number of defendants over a

25   significant period of time, the discovery will necessarily be

1    broad.  It also will entail third-party discovery, which also

2    will be expansive.  I'm citing and relying on *Press v.*

3    *Primavera*, 2022 WL 17736916, at *2 (S.D.N.Y. Dec. 16, 2022),

4    where the Court stayed an action pending a motion to dismiss

5    because there would be significant document discovery, several

6    depositions, and third-party discovery.

7              Moving next to the third factor, prejudice to the

8    opposing party.  The Court finds that the prejudice to

9    plaintiff caused by a stay is minimal.  And I'll talk about an

10   exception in a moment.  Plaintiff argues that granting a stay

11   of discovery pending the motion to dismiss, in his papers, he

12   argues will prejudice him by delaying "access to crucial

13   evidence, contracts, communications, financial records, and

14   witness testimony that remains solely in the defendants'

15   possession."  Docket 44 at 4.  However, the parties must

16   preserve all relevant documents and the relatively short stay

17   while the motion to dismiss is decided, does not constitute

18   unfair prejudice.  And I am reinforcing that obligation here

19   today with all counsel present.  Everyone understands their

20   obligations to preserve relevant documents and is required to

21   do so. *See Del Mar TIC I*, 2024 WL 1348501, at *2, which stated

22   "in light of the relatively short and active history of this

23   case,...a slight delay in discovery pending the outcome of

24   defendants' motion to dismiss the entire complaint will not

25   significantly prejudice plaintiffs." *See also Gross v. Madison*

*Square Garden Ent. Corp.*, 2023 WL 6815052, at *2 (S.D.N.Y. Oct. 17, 2023), where the Court reasoned that a "delay in discovery without more does not amount to unfair prejudice..." In addition, plaintiff will get some of the discovery at least insofar as the cases overlap in the first action.  Insofar as they do not overlap and the discovery sought in the first action is not relevant to the first action, but is instead only relevant to the second, that will be stayed.

        The Court finds that the prejudice therefore to the opposing party favors granting a motion to stay.  And I'll get to a potential carve-out in a moment.

        Turning to the fourth factor, the strength of the pending motion, the Court finds that this factor favors granting a motion to stay.  The defendants argue that the pending motions, with "more on the horizon," are "overwhelmingly likely to result in dismissal with prejudice to the plaintiff's claims."  Plaintiff obviously disagrees. However, it is true that without predicting the outcome of the case, these motions, Roc Nation's which I already have, would dispose of all the claims made by the plaintiff if granted, and the representation here is that the future motions will as well if granted.  In looking at the Roc Nation motion at least, the motion is "not unfounded in the law." *Richardson*, 2022 WL 2003340, at *2.  And even if the Court were to grant only some of the motion to dismiss arguments, such a decision would

1    significantly narrow the plaintiff's broad and expansive

2    claims.  *Izuogu v. Credit Agricole*, 2024 WL 4903723, at *1

3    (S.D.N.Y. Nov. 27, 2024).  In that case, the Court held

4    "because the motion to dismiss may be dispositive of some or

5    all of plaintiff's claims, which could narrow or eliminate the

6    need for discovery, this factor weighs in favor of granting a

7    stay."

8            While the plaintiff does give a thorough explanation

9    for his argument against the pending and potential motions to

10   dismiss, and I heard from him here today as well, it doesn't

11   indicate that the issues could not still be significantly

12   narrowed, particularly given the RICO claims made by the

13   plaintiff.  Hence, this factor weighs in favor of a stay of

14   discovery.

15           Just briefly addressing Mr. Blackburn's argument about

16   any inconsistency with my earlier ruling.  These are two very

17   different cases, although there may be a bit of overlap in some

18   respects, but they are different cases.  And, therefore, it

19   makes sense to stay discovery in this broader action with many

20   more defendants over a very long timeframe of almost 20 years

21   and significant and substantial additional claims, such as RICO

22   claims, while I handle the motions to dismiss that may

23   significantly narrow the dispute, if not resolve it.  So this

24   is a different case than the earlier case.

25           Now, in terms of any extenuating circumstances, if

1    there is a witness that has a serious health condition that may

2    not be available to be deposed if a deposition is not taken

3    more promptly, then Mr. Blackburn can make an application with

4    respect to that particular witness that you have just raised

5    with me.  That will give the witness, and I assume Roc Nation,

6    the ability to respond to that.  That information was not

7    presented either to the Court or to Roc Nation prior to this

8    conference.  And I can address whether there are some

9    extenuating circumstances there that require a carve-out from

10    the stay.  I'm not prepared to address that yet because I don't

11    have all those circumstances, and I also need to ensure that

12    any opposition to that request, that they had the full

13    information and an opportunity to be heard as well.

14          So if there's anything like that with regard to that

15    one witness, you can let me know, Mr. Blackburn.  But other

16    than that, I will grant the stay of discovery.  I find that

17    there is good cause during the pendency of the motions to

18    dismiss and will move the case along through the motion

19    practice schedule that's been agreed-upon by the parties.

20          Ms. Menillo, is there anything else we need to discuss

21    here today?

22          MS. MENILLO:  No, your Honor.

23          There's just one note I wanted to make.  I appreciate

24    your Honor's ruling, but I have just become aware.  Based on

25    the implication of what Mr. Blackburn said with respect to that

1    specific witness, I just wanted to make a short record.

2              Again, I don't know any details about this individual,

3    but the implication that Roc Nation directed anybody to

4    underpay Mr. Dixon, in our view, is not true.  We are aware of

5    the existence of a bookkeeper with, you know, having federal

6    charges, but we are not aware of anybody else.  But, again, I

7    don't know any other details but I just wanted to make that

8    clear so it doesn't give any implication.  So thank you, your

9    Honor.

10             THE COURT:  That's no problem.  And I don't know who

11   this individual is and I don't have any information.  But we'll

12   see if there's a subsequent application.

13             Mr. Blackburn, anything else we need to discuss here

14   today?

15             MR. BLACKBURN:  No, your Honor.  Thank you for the

16   clarity in your decision, and I will make the application so

17   the Court can have a better understanding.

18             And I would just ask that because of -- so my

19   application that I'm going to make on behalf of this

20   third-party witness, I'm just going to ask the Court if I can

21   make a redacted version explaining her health condition and

22   then send an un-redacted version to the Court and to counsel

23   via e-mail or something so it's not -- so her health condition

24   is not on the public docket.  That's the only thing I'm going

25   to ask.

1          THE COURT:  Yes.  If there are sensitive personal

2     health issues that are more appropriately filed under seal and

3     provided only to the parties and the Court, and you can relay

4     that in your application, that's generally acceptable.  And

5     then the redacted version shows up on the docket and the

6     un-redacted version is provided to the parties as well as to

7     the Court.

8          MR. BLACKBURN:  Okay.  No problem.

9          THE COURT:  Okay.  And I appreciate that sensitivity.

10     All right.  Anything further, Mr. Blackburn?

11          MR. BLACKBURN:  No, your Honor.

12          THE COURT:  Anything further from any of the

13     defendants?

14          MS. MENILLO:  No, your Honor.  Thank you.

15          THE COURT:  Thank you all very much.  And thank you

16     for doing this conference late on a Friday before a holiday

17     weekend.  I hope everybody has a pleasant weekend.  And court

18     is adjourned.

19          MR. BLACKBURN:  Wait one second.  Is next week

20     adjourned as well?  Is the initial --

21          THE COURT:  Ah, I'm sorry, yes.  And thank you for

22     clarifying that, Mr. Blackburn.  I will put that in the order

23     but the conference for next week is adjourned.

24          MR. BLACKBURN:  Okay.

25          MS. MENILLO:  Thank you, your Honor.

PAAACARC

1              THE COURT:  And it will be rescheduled after the

2    motions to dismiss are decided and then we resume discovery.

3    Thank you very much.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25