UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Terrance Dixon, a/k/a "TA," <br><br> Plaintiff, <br><br> v. <br><br> Joseph Antonio Cartagena p/k/a "Fat Joe," <br> Peter "Pistol Pete" Torres, <br> Richard "Rich Player" Jospitre, <br> Erica Juliana Moreira, <br> Sneaker Addict Touring LLC, <br> Slate, Inc., <br> Roc Nation, LLC, <br> John Does 1–10, and Jane Does 1–10, and <br> ABC Corporations 1–10, <br><br> Defendants. | Case No. 25 Civ. 5144 <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT ERICA MOREIRA'S SUPPLEMENTAL MOTION TO DISMISS</u>**

Reed Brodsky
Michael Nadler
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000
rbrodsky@gibsondunn.com
mnadler@gibsondunn.com

*Attorneys for Defendant Erica Moreira*

November 10, 2025

## TABLE OF CONTENTS

                                                                     **Page**

**INTRODUCTION**..................................................................................................................1

**ARGUMENT**.......................................................................................................................1

        I.        The Trafficking Claim Against Moreira Should Be Dismissed................................1

                A.        Moreira Did Not Participate in a Trafficking Venture.................................1

                B.        Moreira Lacked Knowledge of a Trafficking Venture. ...............................2

                C.        Moreira Did Not Knowingly Benefit From a Trafficking Venture. ............3

        II.       The RICO Claim Against Moreira Should Be Dismissed. ......................................4

                A.        Moreira Did Not Operate or Manage a Racketeering Enterprise. ...............4

                B.        Moreira Did Not Commit Any Predicate Racketeering Acts. .....................6

                C.        Moreira Did Not Cause Dixon a RICO Injury.............................................9

**CONCLUSION**....................................................................................................................9

## INTRODUCTION

Erica Moreira is a duly licensed member of the New York bar who provides legal services to recording artists and other clients, including Joseph Cartagena. The notion that she is part of a sex-trafficking venture or any other form of criminal enterprise is as gratuitous as it is absurd. Moreira joins in those portions of Defendants' omnibus brief seeking dismissal of the trafficking and RICO claims, filed herewith, as well as Roc Nation's briefing on those same issues, Dkt. 10, 13. She writes here to further address issues unique to the allegations against her—all of which should be dismissed.

## ARGUMENT

### I.   The Trafficking Claim Against Moreira Should Be Dismissed.

#### A.   Moreira Did Not Participate in a Trafficking Venture.

Terrance Dixon cannot plausibly allege that Moreira participated "in the common undertaking of sex trafficking" or forced labor, *Doe v. Red Roof Inns, Inc.,* 21 F.4th 714, 727 (11th Cir. 2021), because she did not take part "in an enterprise or undertaking that involves, danger, uncertainty, or risk, and potential gain," which requires "something more than engaging in an ordinary buyer-seller transaction," *Doe v. Apple Inc.* 96 F.4th 403, 415 (D.C. Cir. 2024); *accord Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F.Supp.3d 329, 338 (S.D.N.Y. 2025); *Noble v. Weinstein*, 335 F.Supp.3d 504, 524 (S.D.N.Y. 2018).

The crux of the allegations concerning Moreira is that she worked as an attorney for Cartegena, including by incorporating companies that are nowhere alleged to have been involved in financing or advancing a sex-trafficking venture. Compl. ¶¶324, 485. But providing "routine [professional] services" to defendants allegedly participating in a criminal venture is not TVPA "participation." *Mueller*, 777 F.Supp.3d at 338; *accord Doe*, 96 F.4th at 415 (ordinary business relationships are insufficient). Absent allegations that Moreira provided services that were

1

somehow "'tailored'" or otherwise "'custom[ized]'" for the trafficking venture, merely performing legal work for Cartegena does not pass muster. *Mia v. Kimberly-Clark Corp.*, 2025 WL 752564, *4 (D.D.C. 2025).

### B. Moreira Lacked Knowledge of a Trafficking Venture.

Dixon fails to plausibly allege Moreira had "actual or constructive knowledge" that the purported venture "violated" the TVPA. *Mueller*, 777 F.Supp.3d at 339. Indeed, she lacked even an "abstract awareness" of the alleged violations, let alone knowledge of the "*particular* sex trafficking venture." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F.Supp.3d 147, 154 (E.D.N.Y. 2020).

Dixon's opaque theory of Moreira's trafficking liability appears predicated on her "fil[ing] business records" for "fraudulent corporate entities" allegedly used "to launder money and conceal the ownership rights of [his] intellectual property." Compl. ¶¶59, 361, 483. But there is no explanation of how such filings reflect knowledge that her "client [was] engaged in trafficking" specifically. *Mueller*, 777 F.Supp.3d at 339 (knowledge of "any illegal activity" insufficient). Moreover, Dixon does not allege that Moreira knew of particular sex-trafficking acts.

Alternatively, to the extent the TVPA claim is predicated on Dixon's work for Cartagena, (though that is unclear), the complaint fails to plead Moreira's knowledge of any purported forced-labor venture. "The relevant knowledge" required is that of a "specific act" that violated the TVPA. *Doe v. Salesforce, Inc.*, 2024 WL 1337370, *16 (N.D. Tex. 2024). Even assuming Moreira believed that Cartegena stole or concealed Dixon's "intellectual property rights" because Dixon "reached out to [Moreira] for assistance" years later, Compl. ¶361, that still would not suffice because there is no allegation that Moreira knew Dixon's "labor or services" were obtained "by means of" (1) "force, threats of force, physical restraint, or threats of physical restraint"; (2) "serious harm or threats of serious harm"; (3) "abuse or threatened abuse of law or legal process"; or (4) a "scheme" causing him to believe "another person would suffer serious harm or

2

physical restraint" absent his "labor." 18 U.S.C. §1589(a). At most, Moreira allegedly knew of an intellectual property or contract dispute, but it cannot be the case that any attorney who declines to represent a client with a potential copyright or employment claim has knowledge of an underlying TVPA violation. That unsound legal theory having no connection to the TVPA's purpose cannot stand. *See Muller*, 777 F.Supp.3d 329 at 339.

The complaint also fails to allege how Moreira knew or should have known that Cartagena stole Dixon's intellectual property or otherwise unlawfully procured his services. The lone allegation of Moreira's "actual or constructive knowledge," Compl. ¶361, is a "naked assertion devoid of further factual enhancement" that should be disregarded as inadequately pled. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint alleges a single contact between Dixon and Moreira, with no detail about what was discussed or the nature of the "assistance" he sought. Compl. ¶361. Absent "some facts providing context for [their] contact," that does not suffice. *Edmondson v. Raniere*, 751 F.Supp.3d 136, 189 (E.D.N.Y. 2024).

### C. Moreira Did Not Knowingly Benefit From a Trafficking Venture.

"It is axiomatic" that a venture liability claim requires that "the defendant must have received some benefit." *Levin v. Sarah Lawrence Coll.*, 747 F.Supp.3d 645, 679 (S.D.N.Y. 2024). None is alleged here. Moreover, Dixon must allege "a causal relationship between [Moreira's] affirmative conduct furthering the sex-trafficking venture and [her] receipt of a benefit" and that she had "actual" or "constructive knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F.Supp.3d 156, 169 (S.D.N.Y. 2019). The complaint does not come within a country mile of that showing either. Dixon does not allege that Moreira knowingly received anything of value from the purported venture whatsoever. While his claims against all defendants are deficient for a host of additional reasons briefed elsewhere, there are no allegations Moreira personally received any "revenue streams" or "income," nor that she "held intellectual property

3

rights concerning [his] work" or otherwise "benefit[t]ed financially." Compl. ¶¶62, 67, 362, 446. Even if she had, however, that still would not suffice because "the controlling question" would then be whether other defendants "provided any of those benefits to [Moreira] because of [her] facilitation" of the trafficking venture. *Geiss*, 383 F.Supp.3d at 169. Absent allegations Moreira "benefitted financially or by receiving anything of value," much less "in connection with" the purported trafficking venture, the trafficking claim against Moreira should be dismissed. *Levin*, 747 F.Supp.3d at 679–80.

**II.     The RICO Claim Against Moreira Should Be Dismissed.**

    **A.     Moreira Did Not Operate or Manage a Racketeering Enterprise.**

"Simply because one provides goods or services that ultimately benefit [an] enterprise does not mean that one becomes liable under RICO as a result." *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993). Rather, RICO requires a defendant to have "participate[d] in the operation or management of" the alleged "enterprise itself," meaning that they "direct[ed] … [the] enterprise's affairs" and "exert[ed] control over it," *Reves v. Ernst & Young*, 507 U.S. 170, 184–85 (1993). These are "stringent standards" such that merely being "associate[d] with [the] enterprise in ways that do not involve control" is not "sufficient," *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998), nor is the "taking of direction and performance of tasks that are necessary or helpful to the enterprise," *United States v. Viola*, 35 F.3d 37, 41 (2d Cir. 1994), or even supplying "valuable, indispensable services," *Peat, Marwick*, 996 F.2d at 1539. "The test is not involvement but control," *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F.Supp. 449, 466 (S.D.N.Y. 1996), which "is a very difficult test to satisfy," *Schmidt*, 16 F.Supp.2d at 346.

Moreira allegedly served as "shadow legal agent and legal architect" for the purported RICO enterprise. Compl. ¶483. That hyperbole is belied by the handful of specific allegations

4

about her, which plead only that she performed transactional services such as "fil[ing] business records" and "incorporating" companies that were subsequently used for improper purposes. Compl. ¶¶59, 483–86. Those allegations amount to routine "legal advice and legal services" insufficient to state a claim. *Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 832 F.Supp. 585, 591 (E.D.N.Y. 1993). Pleading that Moreira, "having been retained by parties affiliated with the enterprise, performed a variety of legal services for those parties, which facilitated the operation of the enterprise…does not constitute participation sufficient to ground an allegation of a [RICO] violation." *Morin v. Trupin*, 835 F.Supp. 126, 135 (S.D.N.Y. 1993). In *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, for instance, detailed pleadings that one law firm "laundered [other defendants'] fraudulent proceeds" while another lawyer "aid[ed] the scheme" were dismissed because the lawyers merely "helped the conspiracy along" without "exercise[ing] any discretion in so doing" as they "received their marching orders" from others. 2013 WL 12368698, *7–8 (E.D.N.Y. 2013). The allegations concerning Moreira's legal practice pale in comparison to those dismissed in *Sands Harbor*, as there is no suggestion she did anything beyond "merely represent[ing] [her] clients." *Morrow v. Blessing*, 2004 WL 2223311, *6 (E.D. Pa. 2004) (imposing Rule 11 sanctions for baseless RICO claim against attorney).

      Dixon summarily asserts that Moreira "participated in…managing fraudulent corporate entities" and "facilitated" their misconduct. Compl. ¶59. Yet he does not identify the entities she supposedly helped manage, let alone "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). Generic claims of management "as that term is commonly understood," which can include managing "legal affairs," is "entirely different from the 'operation or management' contemplated by *Reves*," *Petri v. Gatlin*, 997 F.Supp. 956, 986 (N.D. Ill. 1997).

5

Under familiar pleading standards, Dixon's "formulaic" and "threadbare recital[]" of the management element "will not do." *Iqbal*, 556 U.S. at 678.

There have been few analogous claims brought since a raft of RICO cases against professional-services providers were rejected in *Reves*' aftermath thirty years ago. Indeed, the Second Circuit has long recognized that *Reves* precludes RICO claims against a defendant who "merely acted as an attorney" for others. *Azrielli v. Cohen Law Offices.*, 21 F.3d 512, 521 (2d Cir. 1994). While "attorneys may be substantially involved in an enterprise's activities" and even "facilitate[] the operation of the enterprise" by "providing legal advice," doing so does not render them liable. *Morin*, 835 F.Supp. at 134. Courts have reached this same result time and again. *See, e.g.*, *Baumer v. Pachl*, 8 F.3d 1341, 1344-45 (9th Cir. 1993); *Nolte v. Pearson*, 994 F.2d 1311, 1316–17 (8th Cir. 1993); *Sands Harbor Marina*, 2013 WL 12368698, at *7; *Rosendale v. Citibank, N.A.*, 1996 WL 175089, *4 (S.D.N.Y. 1996); *Petri*, 997 F.Supp. at 986; *Biofeedtrac*, 832 F.Supp. at 591; *Gilmore v. Berg*, 820 F.Supp. 179, 183 (D.N.J. 1993). Dixon "does no more than allege that [Moreira] performed legal work for [the] enterprise," which "fails to state a [RICO] violation." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 699 (7th Cir. 2021).

**B.    Moreira Did Not Commit Any Predicate Racketeering Acts.**

Dixon also fails to allege that Moreira "committed at least two acts of racketeering—or two 'predicate acts'—within a ten-year period," *Lakonia Mgmt. Ltd. v. Meriwether*, 106 F.Supp.2d 540, 550 (S.D.N.Y. 2000), meaning acts "indictable under specified criminal statutes," *Eur. Cmty. v. RJR Nabisco, Inc.,* 783 F.3d 123, 124 (2d Cir. 2015), that are enumerated in 18 U.S.C. § 1961(1), *Aronov v. Mersini*, 2015 WL 1780164, *3 (S.D.N.Y. Apr. 20, 2015). Dixon fails to clearly state what predicate acts Moreira is alleged to have committed. The body of his complaint includes a "Predicate Acts Summary" alleging Moreira engaged in "unauthorized legal practice, "tax evasion and money laundering" and "structuring/laundering via shell cos" in violation of various laws,

6

Compl. ¶315, but his "Causes of Action" allege that she "fraudulently incorporated" a number of entities, "fil[ed] deceptive corporate documents," and "launder[ed] monetary instruments," Compl. ¶485. This mismatched patchwork of allegations impermissibly prejudices Moreira by depriving her of the "fair notice of the claims" asserted against her, which alone is grounds for dismissal. *Nesbeth v. N.Y.C. Mgmt. LLC*, 2019 WL 110953, *3 (S.D.N.Y. 2019). Nonetheless, taking an expansive view of the complaint, none of the referenced acts can support a RICO claim for the reasons outlined below.

***Unauthorized Legal Practice.*** The gist of Dixon's "unauthorized practice of law" theory is that Moreira performed legal services while "unauthorized to practice law in Florida." Compl. ¶¶315, 605. Setting aside that unauthorized legal practice is not an enumerated predicate offense, *supra*, any allegation that Moreira is "unlicensed" is demonstrably false. Moreira is a member in good standing of the New York bar and has been since 2010, as reflected in the Appellate Division's records, of which this Court can take judicial notice. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 462 (S.D.N.Y. 2020). The notion that she was not authorized to practice law is simply wrong.[1]

***Deceptive Corporate Documents and Fraudulent Incorporation***. Dixon alleges that Moreira violated Fla. Stat. §607.0505 by filing false or deceptive business records, Compl. ¶¶10, 315, 324, 484, 605, but "filing deceptive corporate documents" is a civil offense, which cannot constitute a predicate act of racketeering because it is not enumerated in §1961(1) nor a crime "punishable by imprisonment for more than one year." *Lynch v. Amoruso*, 232 F.Supp. 3d 460, 466 (S.D.N.Y. 2017). In any event, Fla. Stat. §607.0505 also has no requirement that a "registered agent" be licensed to practice law in Florida or even be an attorney. And Dixon's related attempt

---

[1] Specifically, her registration number is 4803953, which can be verified through the State Unified Court System's website, at https://iapps.courts.state.ny.us/attorneyservices/search.

7

to bootstrap his theory that there was something deceptive or fraudulent about any corporate filings or incorporations that Moreira handled to the federal mail fraud statute also fails because he has not identified any affirmative misrepresentation or fraudulent omission by Moreira, which is the hallmark of mail fraud.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 WL 88129, at *8–9 (S.D.N.Y. 1994).  Certainly, he has not done so with "particularity," Fed. R. Civ. P. 9(b), notwithstanding that RICO predicate acts premised on fraud or deception are subject to heightened pleading standards, *Young*, 1994 WL 88129, at *8.  Nor does Dixon allege "circumstances giving rise to a strong inference that [Moreira]" made knowingly false statements or acted with an "intent to defraud."  *Id.* at *7.  Each of Dixon's fraud-based theories must be dismissed because Rule 9(b) requires more rigor than a single conclusory allegation without factual basis.  *Iqbal*, 556 U.S. at 678.  Stated simply, the complaint is entirely silent as to what the alleged frauds consisted of.

***Money Laundering and Tax Evasion***.  Finally, Dixon's money laundering and tax evasion predicates, *see* Compl. ¶¶315, 485, 556–65, 608–9, fail because the complaint fails to "adequately plead all elements of the offense[s] in compliance with Rule 8."  *Jus Punjabi, LLC v. Get Punjabi Inc.*, 2015 WL 2400182, *7 (S.D.N.Y. 2015), *aff'd sub nom. Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56 (2d Cir. 2016).  Pursuant to 18 U.S.C. §§1956 and 1957, a money laundering claim requires allegations that (1) Moreira conducted a financial transaction (2) involving the proceeds of specified unlawful activities defined in §1956(c) and (3) she knew that the property involved in the transaction were proceeds from unlawful activities.  But Dixon alleges only that Moreira incorporated so-called "shell companies," Compl. ¶¶59, 315 605, 610, while saying nothing regarding her involvement in a single financial transaction—much less a transaction that she knew "involve[ed] the proceeds of unlawful activity."  *Ray v. Gen. Motors Acceptance Corp.*,

8

1995 WL 151852, *6 (E.D.N.Y. 1995).  Likewise, Dixon has not alleged a single element required to make out a tax evasion claim, which requires "(1) the existence of a substantial tax debt, (2) willfulness of the nonpayment, and (3) an affirmative act by the defendant, performed with intent to evade or defeat the calculation or payment of the tax." *Jus Punjabi*, 2015 WL 2400182, at *8; *see also* 26 U.S.C. §7201.  The absence of any pleading concerning a single one of these elements requires dismissal of that theory as well.

### C. Moreira Did Not Cause Dixon a RICO Injury.

Dixon must "show that a predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well," in order to have standing to bring a civil RICO claim.  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 2 (2010).  Yet he has not pleaded any "direct relation between the injury asserted and the injurious conduct alleged" against Moreira.  *Id.*  The complaint asserts only that Moreira provided legal services to others, which is an "insufficient" causal "link that is too remote or purely contingent, or indirect" to provide standing for a RICO claim against her.  *Id.*  Dixon does nothing to explain how Moreira's legal work is directly related to any financial, reputational, physical, or psychological harms he claims to have suffered.  But even if there were some causal connection (there is not), the suite of actions allegedly taken by other defendants would remain "intervening causes" that "broke the causal chain between [her] alleged conduct and the harm that [he] allegedly suffered."  *Zuhovitzky v. UBS AG*, 2024 WL 2130838, *1 (2d Cir. 2024).  Accordingly, Dixon lacks statutory standing to pursue a RICO claim against Moreira.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' omnibus brief and Roc Nation's earlier motion to dismiss, Moreira respectfully requests all claims against her be dismissed.

Dated: November 10, 2025                                Respectfully submitted,

                                                        /s/   Reed Brodsky

                                                        Reed Brodsky
                                                        Michael Nadler
                                                        GIBSON, DUNN & CRUTCHER LLP
                                                        200 Park Avenue
                                                        New York, NY 10166
                                                        Tel.: (212) 351-4000
                                                        rbrodsky@gibsondunn.com
                                                        mnadler@gibsondunn.com

                                                        *Attorneys for Defendant Erica Moreira*