# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH CARTAGENA,<br>                *Plaintiff*,<br>v.<br>TERRANCE DIXON,<br>TYRONE BLACKBURN, and<br>T.A. BLACKBURN LAW, PLLC,<br>                *Defendants*. | Civil Action No. 25-cv-03552<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS ACCORDING TO FED. R. CIV. P. 11** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

**By**:
Tyrone A. Blackburn, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT

FACTUAL BACKGROUND

ARGUMENT

A. The Complaint Is Factually Frivolous and Lacks Evidentiary Support
   i. No Evidence of Falsity or Actual Malice
   ii. Statements Are Corroborated by Independent Evidence
   iii. Improper Reliance on Privileged Pre-Litigation Communications

B. The Claims Are Legally Baseless Under Settled Precedent
   i. Failure to Plead Actual Malice
   ii. Litigation Privilege Bars the Claims
   iii. Qualified Privilege for Pre-Litigation Communications

C. The Lawsuit Was Filed for an Improper Purpose: To Retaliate, Harass, and Disqualify Counsel
   i. Plaintiff's Counsel's Personal Knowledge of Rule 11 Standards Demonstrates Willful Disregard

CONCLUSION

# TABLE OF AUTHORITIES

FEDERAL CASES
- *Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015)
- *Brimelow v. New York Times Co.*, 2021 U.S. App. LEXIS 31672 (2d Cir. Jan. 9, 2024)
- *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000)
- *Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001)
- *Ctr. for Med. Progress v. Planned Parenthood Fedn. of Am., Inc.*, 890 F.3d 828 (9th Cir. 2018)
- *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612 (2d Cir. 1988)
- *Drake v. UMG Recordings, Inc.*, 1:25-cv-00399 (JAV) (S.D.N.Y. Oct. 9, 2025)
- *Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494 (2d Cir. 2009)
- *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989)
- *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235 (1991)
- *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92 (2d Cir. 2000)
- *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991)
- *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)
- *Rapaport v. Barstool Sports, Inc.*, 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021), aff'd, 2024 WL 88636 (2d Cir. Jan. 9, 2024)
- *Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992)
- *Sherman v. Graves*, 24-cv-8494 (AT) (S.D.N.Y. June 2, 2025)
- *St. Amant v. Thompson*, 390 U.S. 727 (1968)

2

- *Steinhilber v. Louis*, 279 F. App'x 46 (2d Cir. 2008)
- *Torain v. Louis*, 279 F. App'x 46 (2d Cir. 2008)

FEDERAL STATUTES AND RULES
- Fed. R. Civ. P. 8
- Fed. R. Civ. P. 11
- Fed. R. Civ. P. 11(b)(1)
- Fed. R. Civ. P. 11(b)(2)
- Fed. R. Civ. P. 11(b)(3)
- Fed. R. Civ. P. 11(c)
- Fed. R. Civ. P. 11(c)(2)
- Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, et seq.
- Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1591, et seq.

NEW YORK STATE CASES
- *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235 (1991)

NEW YORK STATUTES
- New York Litigation Privilege (Absolute)
- New York Qualified Privilege for Pre-Suit Communications

# PRELIMINARY STATEMENT

Plaintiff's Second Amended Complaint ("SAC") is a frivolous pleading filed and maintained in bad faith, in direct violation of Rule 11. After receiving Defendants' detailed Fed. R. Civ. P. 11 safe-harbor notice on August 15, 2025—identifying the SAC's legal deficiencies, factual shortcomings, and privilege bars—Plaintiff refused to withdraw or amend his pleading. On September 5, 2025, he affirmatively confirmed that he would continue prosecuting the SAC unchanged. Maintaining a facially defective pleading after explicit Rule 11 notice is itself sanctionable.

Recent decisions in this District make clear that the claims asserted in the SAC are not legally cognizable. In *Sherman v. Graves*, No. 24-cv-8494 (AT) (S.D.N.Y. June 2, 2025), Judge Analisa Torres held that statements made in pleadings, declarations, attorney communications, and anticipated litigation filings are absolutely privileged and cannot support a defamation claim. The Court dismissed the action and imposed Rule 11 sanctions on counsel who persisted in maintaining privilege-barred claims after receiving safe-harbor notice, suggesting that continuing to litigate such claims tends to indicate bad faith.

Similarly, in *Drake v. UMG Recordings, Inc.,* No. 1:25-cv-00399 (JAV) (S.D.N.Y. October 9, 2025), United States District Judge Jeannette A. Vargas held that defamation claims fail where the challenged statements, understood in their full context, constitute non-actionable opinion rather than provable fact. Judge Vargas dismissed Drake's defamation claims against UMG for promoting Kendrick Lamar's diss track "Not Like Us," finding that while the lyrics contained serious accusations of pedophilia, they were protected opinion because they were:

(1) made in the context of a heated public rap battle with progressively caustic insults and accusations exchanged between the parties;
(2) contained in a creative medium (rap diss tracks) known for hyperbole, inflammatory rhetoric, and exaggeration rather than sober factual assertions;
(3) used language that an average listener would understand as a rhetorical attack and opinion rather than a factual assertion; and
(4) must be viewed in their full context as part of an ongoing dialogue between competing artists, not as isolated statements.

As Judge Vargas explained, courts cannot assess such statements "in isolation but must [place them] in their appropriate factual context," and "the average listener" would not "expect sober facts instead of opinion" from statements made in such disputes.

Plaintiff's SAC disregards both controlling authorities in their entirety. Despite receiving Rule 11 safe-harbor notice identifying legal deficiencies, Plaintiff maintains a complaint

4

predicated almost entirely on statements Dixon and his counsel made in litigation filings or in anticipation of litigation—precisely the category of speech held privileged in *Sherman*. Moreover, Plaintiff seeks to treat Dixon's allegations as factual assertions warranting defamation liability, despite the undisputed fact that they were made as part of a vigorous legal dispute involving competing narratives, strong accusations, and assertions of wrongdoing—precisely the context in which courts recognize opinion and hyperbole rather than actionable falsehoods under *Drake*.

Because the SAC is legally baseless, factually unsupported, foreclosed by privilege, and maintained in defiance of Rule 11's safe-harbor mechanism, sanctions are necessary to deter further misuse of judicial and disciplinary processes.

## FACTUAL BACKGROUND

Plaintiff filed this action on April 29, 2025, asserting defamation and related claims against Defendants Dixon, Blackburn, and T.A. Blackburn Law, PLLC. This filing preceded the federal civil RICO and TVPA action that Dixon later filed on June 19, 2025, in the Southern District of New York (*Dixon v. Cartagena*, No. 25-cv-5144). In that action, Dixon asserted claims under the Racketeer Influenced and Corrupt Organizations Act and the Trafficking Victims Protection Act, supported by detailed factual allegations, documentary materials, and witness accounts. Several of the statements challenged in this defamation case correspond directly to allegations Dixon asserted in the federal RICO complaint.

In or about May 2025, after initiating this defamation action, Plaintiff Cartagena, represented by his counsel, Joseph Tacopina, facilitated a disciplinary grievance against Defendant Blackburn to the New York State Bar. The grievance relied on the same factual assertions and subject matter as the allegations in the civil complaint. As is the case here, the documentary submissions do not support their Bar complaint.

On or about July 21, 2025, Plaintiff filed the Second Amended Complaint ("SAC"). The SAC retained the same core allegations advanced in the original pleading. It did not identify new factual material relating to Defendants Dixon or Blackburn and did not modify its description of the statements it challenged as defamatory. The only new content consisted of allegations concerning alleged NYPD misconduct unrelated to any Defendant.

The SAC continues to base its claims in part on communications exchanged between Defendant Blackburn, acting as counsel, and Plaintiff's former attorney in anticipation of potential civil litigation. These communications concerned matters directly connected to the federal claims

5

Dixon later filed in June 2025. The SAC also challenges statements Dixon made in the course of preparing and filing his federal RICO complaint.

On August 15, 2025, Defendants served Plaintiff and his counsel with a detailed Rule 11 safe-harbor notice identifying legal and factual deficiencies in the complaint. The notice specifically identified the failure to plead actual malice, the reliance on privileged communications, the absence of evidentiary support, and the failure to identify provably false statements. The safe-harbor period expired on September 5, 2025, without amendment or withdrawal. On September 5, 2025, Plaintiff confirmed through counsel that the SAC would be maintained unchanged.

These filings and events—the April 2025 complaint orchestrated by Tacopina and Cartagena, the May 2025 bar grievance orchestrated by Tacopina and Cartagena, the July 2025 Second Amended Complaint, and the August 2025 safe-harbor notice followed by Plaintiff's affirmative refusal to amend—form the procedural and factual record underlying the present Rule 11 motion.

## ARGUMENT

I. **The Complaint Is Factually Frivolous And Lacks Evidentiary Support**

Rule 11 contains two distinct but equally binding commands, often described as the frivolous clause and the improper-purpose clause. The frivolous clause imposes an affirmative obligation on the signer to conduct a reasonable inquiry into the viability of a pleading before it is filed, ensuring that all factual contentions have evidentiary support or, if specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. This duty is substantive, not perfunctory; it requires counsel to undertake a genuine pre-filing inquiry before advancing factual allegations in federal Court.

The improper-purpose clause requires that a party not submit a motion, pleading, or other paper for the purpose of delay, harassment, or needlessly increasing the costs of litigation. To avoid sanctions, counsel must ensure that papers are well-grounded in fact, legally tenable, and not interposed for any improper purpose.

The standard under Rule 11 is objective reasonableness; it does not require a finding of subjective bad faith. A violation occurs where a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law.

The Second Amended Complaint fails this requirement in its entirety. Despite having the benefit of a detailed Rule 11 safe-harbor notice identifying the original complaint's deficiencies, Plaintiff has not produced a single piece of admissible evidence substantiating his claims. Instead, the SAC recycles conclusory labels, omits material context, and ignores documentary and testimonial evidence already on record that directly contradicts Plaintiff's narrative.

A. **No Evidence of Falsity or Actual Malice**

In any defamation action, the Plaintiff bears the burden of proving that the challenged statements are false: *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). Where, as here, the Plaintiff is a public figure, that burden is even greater—he must also demonstrate by clear and convincing evidence that the defendant made the statements with "actual malice," meaning knowledge of falsity or reckless disregard for the truth. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 511 n.30 (1984).

The SAC offers neither. It fails to identify any specific statement by Defendant Terrance Dixon that is factually false, let alone knowingly or recklessly false. Instead, Plaintiff resorts to broad, unparticularized denials, branding Dixon's statements as "fabricated" without explaining how, in what respect, or by reference to what contradictory facts they are false. Such conclusory assertions are precisely the type of pleading-by-label that courts reject as inadequate under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff also omits the context in which Dixon's statements were made. Far from being inventions, the statements at issue are consistent with, and in many instances verbatim from, a federal civil RICO and TVPA complaint Dixon filed in the Southern District of New York—allegations supported by contemporaneous witness statements, documentary evidence, photographs, and recordings. This independent corroboration fatally undermines any plausible inference of actual malice. Reliance on credible sources and corroborating evidence is fundamentally inconsistent with a defendant subjectively entertaining serious doubts as to the truth of his statements.

The SAC does not allege any contradictory facts, timelines, or third-party accounts that could support a plausible inference of falsity. Without specific allegations of what is false and why, Plaintiff cannot plausibly state a claim under Rule 8, much less satisfy the heightened standard applicable to public-figure plaintiffs.

7

In sum, the SAC's allegations of falsity and actual malice are wholly conclusory, unsupported by any non-speculative facts, and contradicted by independent corroborating evidence already in the record. They fail as a matter of law and violate Rule 11(b)(3)'s requirement that factual contentions have evidentiary support before they are presented to the Court.

B.  **Statements Are Corroborated by Independent Evidence**

Even if Plaintiff could plausibly allege falsity—which he cannot—the SAC ignores that the challenged statements are amply corroborated by independent, verifiable evidence. Many of the statements at issue are not offhand remarks or unsubstantiated gossip; they are directly excerpted from, or substantially identical to, allegations Dixon outlined in a verified civil complaint in *Dixon v. Cartagena*, No. 25-cv-5144 (S.D.N.Y. filed June 19, 2025). That federal pleading was not crafted in a vacuum; it was grounded in a substantial evidentiary record that included witness statements, contemporaneous communications, photographic documentation, and transcripts of audio recordings.

Rather than confront or refute that body of evidence, Plaintiff's SAC ignores it, proceeding as though Dixon's statements arose from thin air. Rule 11(b)(3) does not permit such willful blindness. Where a defendant's statements are supported by independent corroboration, courts in this Circuit routinely find the absence of actual malice as a matter of law. *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (reliance on credible sources negated actual malice); *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988) (no actual malice where defendant relied on documentary evidence and multiple sources).

The corroboration here is especially compelling because Dixon's statements are not only consistent with the federal complaint but also predate this SAC, having been shared with multiple witnesses, documented contemporaneously, and, in some cases, recorded in the witnesses' own voices. These facts obliterate any plausible suggestion that Dixon fabricated his account for purposes of this litigation.

Plaintiff's categorical denials cannot erase the fact that Dixon's account is internally consistent, cross-verified by independent witnesses, and embedded in a formal federal court pleading subject to Rule 11 itself. Such corroboration is incompatible with a finding that the statements were made with a high degree of awareness of probable falsity or serious doubts as to their truth. By deliberately omitting and disregarding the corroborating record, the SAC not only misrepresents the factual landscape but also underscores the absence of any reasonable pre-filing

8

inquiry. No competent attorney, having reviewed Dixon's verified allegations and supporting evidence, could conclude that the SAC's narrative has a factual foundation, as Rule 11(b)(3) demands.

C. **Improper Reliance on Privileged Pre-Litigation Communications**

The SAC also attempts to impose liability on Defendant Tyrone A. Blackburn, Esq., based solely on pre-litigation communications he made in his capacity as counsel for Defendant Dixon. These communications—emails sent to Plaintiff's then-counsel, Erica Juliana Moreira—are quintessential examples of statements protected by New York's litigation privilege, which extends broadly to communications that is pertinent to a good faith anticipated litigation, regardless of the speaker's motive. *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 719–20 (2015); *Bletas v. Deluca*, 2011 U.S. Dist. LEXIS 133132, at *20 (S.D.N.Y. Nov. 17, 2011) privilege encompassing anything that may possibly or plausibly be relevant or pertinent… regardless of the speaker's motive, including bad faith or malice.

The privilege applies not only to statements made in the course of litigation but also to those made before suit is filed, so long as they bear some relation to contemplated proceedings and are made in good faith. *See Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g, Inc.*, 49 F. Supp. 2d 673, 681 (S.D.N.Y. 1999); *AA Med. P.C. v. Almansoori*, 2023 U.S. Dist. LEXIS 207487, at *51 (S.D.N.Y. 2023). Here, Mr. Blackburn's communications meet that standard. They were sent to opposing counsel, expressly referenced Dixon's intention to initiate formal proceedings under RICO and the TVPA, and were directly relevant to the claims subsequently filed in *Dixon v. Cartagena*.

The SAC does not identify any conduct by Mr. Blackburn that falls outside the bounds of lawful representation. Instead, it seeks to relabel protected legal communications as defamatory fabrications, a tactic courts have repeatedly rejected as incompatible with the litigation privilege. Plaintiff's improper purpose is further demonstrated by the fact that his counsel filed a separate disciplinary grievance with the New York State Bar against Mr. Blackburn, premised on the same allegations as those in the SAC, shortly after this lawsuit commenced.

That grievance, like the SAC, offered no supporting evidence and merely repackaged conclusory accusations about Dixon's counsel's communications. The duplication of meritless charges in both a civil action and a collateral disciplinary forum is probative of an intent to harass and burden opposing counsel. By ignoring settled privilege law and reasserting baseless

9

allegations in multiple forums, Plaintiff and his counsel have demonstrated both a lack of reasonable inquiry under Rule 11(b)(3) and an improper retaliatory purpose. These tactics not only undermine the integrity of the proceedings but also divert judicial resources to address claims that should never have been pleaded.

II.     **The Claims Are Legally Baseless Under Settled Precedent**

Rule 11(b)(2) requires that the claims, defenses, and other legal contentions advanced in a pleading be warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. This provision imposes an affirmative duty on counsel to conduct a meaningful review of controlling precedent before filing suit and to refrain from asserting claims that are foreclosed by binding authority. See *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012).

Rule 11 also requires that the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, and that the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information As the Second Circuit has explained, [a]n attorney may be subject to sanctions under Rule 11 for presenting frivolous claims in a pleading. *Star Mark Mgmt.*, 682 F.3d at 177; see also *Bonded Life Fund, LLC v. AXA Equitable Life Ins. Co.*, 2014 U.S. Dist. LEXIS 31491, at *9–10 (S.D.N.Y. Mar. 10, 2014) (sanctions warranted where claims were foreclosed by controlling precedent and lacked evidentiary support).

The Second Amended Complaint fails this standard in multiple, independent ways.

A.   **Failure to Plead Actual Malice**

As a Grammy-nominated recording artist, entertainment industry veteran, and public figure, Plaintiff is subject to the heightened constitutional standard for defamation claims established in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and consistently applied by the Second Circuit. To state a claim, a public-figure plaintiff must plausibly allege that the defendant published the challenged statements "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Id.* at 279–80; *Biro v. Condé Nast*, 807 F.3d 541, 544–45 (2d Cir. 2015).

The SAC alleges no concrete facts from which actual malice could reasonably be inferred. Instead, it relies exclusively on the conclusory assertion that Dixon fabricated his account, without identifying the specific statements alleged to be false, the factual basis for their falsity, or any contradictory evidence suggesting Dixon knew they were untrue. Such "labels and conclusions" are insufficient as a matter of law. *See Biro*, 807 F.3d at 546; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Litigation Privilege Bars the Claims

Even if Plaintiff could plausibly allege falsity and actual malice—which he cannot—the claims asserted in the SAC are independently barred by New York's absolute and qualified litigation privilege doctrines.

Under New York law, "[s]tatements made in the course of judicial proceedings are absolutely privileged so long as they are material and pertinent to the litigation." *Gottwald v. Sebert*, 40 N.Y.3d 240, 253 (2023) (quoting *Youmans v. Smith*, 153 N.Y. 214, 219 (1897)). This absolute privilege extends to all participants in the proceeding—parties, attorneys, and witnesses—and applies even if the statements are alleged to have been made with malice or in bad faith. *See Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718–19 (2015); *Lacher v. Engel*, 33 A.D.3d 10, 14 (1st Dep't 2006).

Courts broadly apply this protection, reasoning that the administration of justice demands unfettered access to information relevant to judicial proceedings without fear of collateral liability. *See Martirano v. Frost*, 25 N.Y.2d 505, 507 (1969). The privilege applies to statements made in pleadings, affidavits, motion papers, discovery responses, and oral arguments.

Here, many of the statements Plaintiff seeks to challenge are directly excerpted from, or substantially identical to, allegations in Defendant Dixon's pending federal RICO and TVPA complaint, *Dixon v. Cartagena*, No. 25-cv-5144 (S.D.N.Y.). Because those statements were made in the course of judicial proceedings and are plainly pertinent to the claims asserted in that action, they are absolutely immune from defamation liability. Plaintiff's attempt to repackage those privileged allegations into a separate tort action is, on its face, frivolous and contrary to controlling precedent.

### C. Qualified Privilege for Pre-Litigation Communications

New York law also recognizes strong protections for attorney communications made in connection with actual or anticipated litigation. As the Court of Appeals has explained, "[p]ublic

11

policy mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action." *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365, 866 N.E.2d 439, 834 N.Y.S.2d 494 (2007) (quoting *Toker v. Pollak*, 44 N.Y.2d 211, 218, 376 N.E.2d 163, 405 N.Y.S.2d 1 (1978)).

Accordingly, New York has long afforded absolute immunity from liability for defamation to oral or written statements made by attorneys in connection with a proceeding before a court when such words and writings are material and pertinent to the questions involved. *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718, 4 N.Y.S.3d 581, 28 N.E.3d 15 (2015) (quoting *Youmans v. Smith*, 153 N.Y. 214, 219, 47 N.E. 265 (1897)). This absolute privilege "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability." *Grasso v. Mathew*, 164 A.D.2d 476, 478, 564 N.Y.S.2d 576 (3d Dep't 1991).

In addition to this absolute litigation privilege, New York also recognizes a qualified privilege for statements made in anticipation of litigation, provided they are pertinent to a good-faith anticipated litigation and made by counsel in the discharge of his or her duties. *Front, Inc.*, 24 N.Y.3d at 720–21. This privilege applies to communications between counsel, demand letters, settlement discussions, and other pre-suit correspondence that is clearly tied to bona fide legal claims. See *Fossil Grp., Inc. v. Angel Seller LLC*, 2022 U.S. Dist. LEXIS 188347, at *11–12 (S.D.N.Y. Oct. 17, 2022).

The Court of Appeals has emphasized that the privilege serves the public interest in encouraging parties and their attorneys to communicate in an effort to resolve disputes without immediately resorting to litigation. As long as the pre-suit statement is pertinent to contemplated litigation and made in good faith, it is protected—even if the adversary perceives it as aggressive or unfavorable. See also *Yukos Capital S.A.R.L. v. Feldman*, No. 15 Civ. 4964, 2016 U.S. Dist. LEXIS 125287, 2016 WL 4940200, at *4 (S.D.N.Y. Sept. 14, 2016).

Unlike the absolute litigation privilege, the qualified privilege may be overcome by proof that the statements at issue were not pertinent to a good-faith anticipated litigation. *Front, Inc.*, 24 N.Y.3d at 720; *Yukos Capital*, 2016 U.S. Dist. LEXIS 125287, at *6; *Guzik v. Albright*, 2019 U.S. Dist. LEXIS 124360, at *31–32 (S.D.N.Y. July 24, 2019).

Here, the SAC explicitly targets pre-litigation communications sent by Defendant Dixon's counsel, Tyrone A. Blackburn, Esq., to Plaintiff's then-counsel, Erica Juliana Moreira. These

12

letters and messages, warning of impending civil RICO and TVPA claims and seeking resolution, were made in the course of legal representation and direct anticipation of litigation. That is the quintessential scenario for the application of the qualified privilege.

Plaintiff attempts to circumvent these protections by asserting that the communications were made with malice or an ulterior motive. That argument is foreclosed by settled law. Under the absolute privilege, malice is irrelevant. Even under the qualified privilege for pre-suit communications, the malice exception applies only where the statements are unrelated to any good-faith anticipated litigation—something the SAC does not and cannot plausibly allege, given the contemporaneous filing of Dixon's federal lawsuit.

III. **The Lawsuit Was Filed For An Improper Purpose: To Retaliate, Harass, And Disqualify Counsel**

Rule 11(b)(1) prohibits the filing of pleadings or other papers for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. For sanctions issued on a motion by opposing counsel, courts have long held that an attorney may be sanctioned for objectively unreasonable conduct. *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). A district court may impose Rule 11 sanctions against a litigant who submits papers with such improper purposes and may also impose sanctions "when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citing Fed. R. Civ. P. 11(b)-(c); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 391 (2d Cir. 2003)).

The Second Circuit has repeatedly emphasized that litigation initiated to retaliate against an opponent, to silence protected expression, or to impose burdens unrelated to the merits of the claims warrants sanctions. See *Sassower v. Field*, 973 F.2d 75, 79–80 (2d Cir. 1992), sanctions upheld where litigation was a vehicle for carrying out a personal vendetta; *Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494, 496 (2d Cir. 2009) affirmed sanctions for litigation designed to harass and burden adversaries.

Courts have long recognized that coordinated filings in multiple forums designed to suppress litigation constitute an abuse of the judicial process warranting Rule 11 sanctions. The pattern here is unmistakable. The defamation suit targets the RICO litigant, Dixon, while the bar complaint targets RICO counsel, Blackburn. Together, they form a coordinated campaign designed to suppress the RICO litigation by forcing counsel to consume enormous resources

defending his professional standing and character in a disciplinary forum while simultaneously defending a frivolous civil suit. The improper purpose is to transparently prevent counsel from prosecuting the underlying federal Civil RICO case.

Moreover, the civil claim here is facially meritless, lacking the actual malice allegations required for a public-figure plaintiff and resting on absolutely privileged communications. The amended complaint simply replicates the legal defects of the original complaint, despite Defendants' explicit notice of those deficiencies in their motion to dismiss. This is not an inadvertent error; it is willful non-compliance demonstrating that Plaintiff and counsel never intended to state a valid defamation claim, but rather intended only to maintain litigation pressure, force Defendants to consume resources, and escalate the harassment campaign through collateral disciplinary proceedings.

### A. Plaintiff's Counsel's Personal Knowledge of Rule 11 Standards Demonstrates Willful Disregard

Attorney Joseph Tacopina, who represents Plaintiff Cartagena, has direct and personal experience invoking Rule 11 as a litigation weapon. In *Kerik v. Tacopina,* Case No. 1:14-cv-02374-JGK (S.D.N.Y.), Tacopina himself *filed and prosecuted a Rule 11 sanctions motion* against the Plaintiff through his counsel Judd Burstein, P.C. As shown on page 1 of that filing, Tacopina sought sanctions pursuant to Fed. R. Civ. P. 11, arguing that the claims brought against him were frivolous and warranted mandatory sanctions.

By filing that motion, Tacopina necessarily demonstrated a detailed, working understanding of: 1. what renders a pleading factually baseless; 2. what constitutes an improper purpose under Rule 11(b)(1); 3. what evidentiary deficiencies violate Rule 11(b)(3); and 4. the attorney's affirmative duty to conduct a reasonable pre-filing inquiry.

This is not theoretical exposure. Tacopina has personally advanced Rule 11 sanctions arguments in federal Court, represented by one of the most experienced sanctions practitioners in New York. He cannot plausibly claim unfamiliarity with Rule 11's requirements.

Yet here—despite that demonstrated expertise—Tacopina has advanced and maintained a Second Amended Complaint that repeats the same core defects *after explicit notice*. The SAC still: 1. fails to plead actual malice with factual specificity; 2. relies on absolutely privileged attorney communications; 3. conflates protected opinion with factual assertion; and 4. lacks any evidentiary foundation for falsity.

Tacopina's professional background further underscores this willful disregard. As a "prominent" defamation and criminal defense attorney, he routinely advises clients on *Sullivan* standards, First Amendment protections, and New York's litigation privilege. He knows precisely what a public-figure defamation complaint must contain to survive Rule 12(b)(6), and he knows that privilege-barred and evidence-free allegations cannot be maintained in federal Court.

The persistence of these defects through multiple versions of the complaint—despite a detailed 21-day safe-harbor notice—cannot be attributed to mistake, oversight, or inexperience. It is a deliberate choice to maintain a pleading that violates Rule 11(b)(1), 11(b)(2), and 11(b)(3), notwithstanding Tacopina's personal familiarity with the very standards his own filing ignores.

This record supports only one inference: **<u>Tacopina's actions are not the product of negligence, but of intentional misuse of judicial process, in violation of Rule 11</u>**.

## CONCLUSION

For all the reasons set forth above, sanctions under Rule 11 are not merely permissible; they are necessary to protect the integrity of these proceedings and to deter the continuation of objectively frivolous and improperly motivated litigation. Plaintiff's Second Amended Complaint is devoid of evidentiary support, foreclosed by controlling precedent, and premised on theories that no reasonable attorney could advance in good faith. It ignores the constitutional actual-malice requirement for public-figure plaintiffs, disregards the absolute and qualified litigation privileges that bar these claims as a matter of law, and attempts to recharacterize protected attorney communications as actionable misconduct.

These defects might, in some cases, be attributable to error or inexperience. But not here. Plaintiff and his counsel continued to maintain the same baseless allegations even after receiving a detailed Rule 11 safe-harbor notice that identified each defect with precision. Rather than withdraw or amend to correct those deficiencies, they chose instead to escalate the conflict by initiating a parallel disciplinary grievance against defense counsel—based on the very same allegations asserted in this civil action. That grievance remains pending. Its timing, duplication of accusations, and lack of evidentiary support strongly reinforce the improper purpose animating this case: to retaliate against Dixon for filing a federal civil RICO action and to burden, intimidate, or impair his counsel as that litigation proceeds.

Rule 11 exists to prevent precisely this type of abuse. The pattern here—the filing of a facially deficient complaint, the persistence of the same defects after explicit notice, the reliance on privileged communications, the absence of any meaningful pre-filing inquiry, and the use of collateral disciplinary proceedings as further pressure—constitutes a textbook violation of Rule 11(b)(1)–(4). Recent decisions in this District underscore that sanctions are warranted where litigants weaponize the judicial process, refuse to correct frivolous claims after notice, or deploy litigation to harass an adversary. Plaintiff's conduct falls squarely within that category.

Accordingly, Defendants respectfully request that the Court impose sanctions pursuant to Rule 11(c), including dismissal of the Second Amended Complaint with prejudice, an award of all attorneys' fees and costs incurred in responding to this action, and such further relief as the Court deems necessary to deter repetition of this conduct. Only such measures can adequately address Plaintiff's misuse of both the judicial and disciplinary systems and safeguard the integrity of the federal proceedings that Plaintiff seeks to undermine.

Dated: December 4, 2025
Brooklyn, New York

Respectfully submitted,

*/s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Telephone: (347) 342-7432
Email: tblackburn@tablackburnlaw.com
