## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**JOSEPH CARTAGENA**,

*Plaintiff*,

v.

**TERRANCE DIXON, TYRONE BLACKBURN, and T.A. BLACKBURN LAW, PLLC,**

*Defendants*.

Civil Action No. 25-cv-03552

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFF JOSEPH CARTAGENA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RULE 11 MOTION FOR SANCTIONS**

---

Joseph Tacopina
Chad Seigel
**Tacopina Seigel & DeOreo**
275 Madison Avenue, 35th Floor
New York, New York 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
212-227-8877

**Of Counsel:**

Jordan W. Siev
**Reed Smith LLP**
599 Lexington, 22nd Floor
New York, New York 10022
jsiev@reedsmith.com
212-205-6085

*Attorneys for Plaintiff Joseph Cartagena*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 4

I.  DEFENDANTS HARASS AND DEFAME MR. CARTAGENA, NECESSITATING THIS LAWSUIT................................................................ 4

II.  DEFENDANTS FILE A FRIVOLOUS RICO AND TVPA LAWSUIT AGAINST MR. CARTAGENA, MR. CARTAGENA AMENDS HIS COMPLAINT, AND DEFENDANTS MOVE TO DISMISS. ................................ 4

III.  DEFENDANTS FILE THE INSTANT MOTION AFTER WEEKS OF IGNORING MR. CARTAGENA'S ATTEMPTS TO ADVANCE DISCOVERY........... 6

LEGAL STANDARD ............................................................................................ 7

ARGUMENT ...................................................................................................... 7

I.  THE SAC COMPLIES WITH RULE 11(B)(3) ................................................ 8

    A.  Mr. Cartagena And His Counsel Made A Reasonable Pre-Filing Investigation.......................................................................................... 9

    B.  Mr. Cartagena's Actual Malice Allegations Are Amply Supported.................... 10

    C.  Mr. Cartagena Does Not Improperly Rely On Privileged Pre-Litigation Communications. .................................................................................. 13

II.  THE SAC COMPLIES WITH RULE 11(B)(2). ............................................. 13

    A.  Defendants' Arguments Improperly Recycle Their Rule 12(b)(6) Motion. ......... 13

    B.  Mr. Cartagena Pled Actual Malice......................................................... 14

        1.  Defendants Knew Their Defamatory Statements Were False ................. 15

        2.  Malice May Be Inferred From Defendants' Actions and Statements....... 17

    C.  The Litigation Privilege Does Not Bar Mr. Cartagena's Claims.......................... 18

    D.  The Qualified Privilege Does Not Bar Mr. Cartagena's Claims .......................... 20

III.  THE SAC COMPLIES WITH RULE 11(B)(1). ............................................. 20

IV.  MR. CARTAGENA'S ATTORNEY'S PRIOR RULE 11 FILING DOES NOT WEIGH IN FAVOR OF SANCTIONS. ......................................................... 24

V.  THE COURT SHOULD AWARD MR. CARTAGENA ATTORNEY'S FEES............. 25

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2d Cir. 2009)..............................................................................8, 14

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010)....................................................................10

*Biro v. Condé Nast*,
807 F.3d 541 (2d Cir. 2015)...................................................................................15

*Bonded Life Fund, LLC v. AXA Equitable Life Ins. Co.*,
2014 U.S. Dist. LEXIS 31491 (S.D.N.Y. Mar. 10, 2014) ......................................14

*Brimelow v. N.Y. Times Co.*,
No. 21-66-cv, 2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21, 2021) .............15, 17

*Brock v. Logsdon*,
2023 U.S. Dist. LEXIS 7719 (W.D.N.Y. Jan. 17, 2023).........................................12

*Caribbean Wholesales & Serv. Corp. v. USA JVC Corp.*,
101 F. Supp. 2d 236 (S.D.N.Y. 2000).....................................................................25

*Carlton Grp., Ltd. v. Tobin*,
2003 U.S. Dist. LEXIS 13332 (S.D.N.Y. July 31, 2003) ...................................9, 10

*Chang v. Arroyave*,
No. 55459/2020, 2020 N.Y. Misc. LEXIS 49085 (N.Y. Sup. Ct. Aug. 12,
2020) ........................................................................................................................20

*Church of Scientology Int'l v. Behar*,
238 F.3d 168 (2d Cir. 2001).....................................................................................12

*City of Perry Iowa v. Procter & Gamble Co.*,
No. 15-cv-8051 (JMF), 2017 U.S. Dist. LEXIS 94887 (S.D.N.Y June 20,
2017) ..........................................................................................................................7

*Collison v. Wandrd, LLC*,
No. 24-cv-2221 (LJL), 2024 U.S. Dist. LEXIS 116974 (S.D.N.Y. July 1,
2024) ........................................................................................................................12

*Contemp. Mission, Inc. v. N.Y. Times Co.*,
    842 F.2d 612 (2d Cir. 1988)...........................................................................................12

*CT Espresso LLC v. Lavazza Premium Coffees Corp.*,
    No. 22-cv-377, 2022 U.S. Dist. LEXIS 211760 (S.D.N.Y. Nov. 22, 2022)............................19

*E. Gluck Corp. v. Rothenhaus*,
    252 F.R.D. 175 (S.D.N.Y. 2008) .................................................................................8, 14

*Fleming v. Hymes-Esposito*,
    No. 12-cv-1154 (JPO), 2013 U.S. Dist. LEXIS 45912 (S.D.N.Y Mar. 29,
    2013) ......................................................................................................................7

*Front, Inc. v. Khalil*,
    24 N.Y.3d 713 (2015) .................................................................................................19

*G-I Holdings, Inc. v. Baron & Budd*,
    01 Civ. 0216 (RWS), 2002 U.S. Dist. LEXIS 15443 (S.D.N.Y. Aug. 16, 2002)...................10

*Ginther v. Provident Life & Cas. Ins. Co.*,
    350 F. App'x 494 (2d Cir. 2009) .................................................................................24

*Goldfarb v. Channel One Russia*,
    663 F. Supp. 3d 280 (S.D.N.Y. 2023)...........................................................................16

*Gottwald v. Sebert*,
    40 N.Y.3d 240 (2023) .................................................................................................19

*Graham v. UMG Recordings Inc.*,
    No. 25-CV-0399 (JAV), 2025 U.S. Dist. LEXIS 200606 (S.D.N.Y. Oct. 9,
    2025) ......................................................................................................................5

*Harte-Hanks Commc'ns v. Connaughton*,
    491 U.S. 657 (1989).....................................................................................16, 17, 18

*Hayes v. Rockaway Ctr., LLC*,
    No. 22-CV-6613 (DG) (ARL), 2024 U.S. Dist. LEXIS 132656 (E.D.N.Y. July
    25, 2024) .................................................................................................................21

*Healey v. Chelsea Res., Ltd.*,
    947 F.2d 611 (2d Cir. 1991).........................................................................................7

*In re Highgate Equities, Ltd.*,
    279 F.3d 148 (2d Cir. 2002).........................................................................................7

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
    698 F.3d 58 (2d Cir. 2012)...........................................................................................23

*Jawbone, LLC v. Donohue*,
  No. 01 CIV. 8066 (CSH), 2002 U.S. Dist. LEXIS 11806 (S.D.N.Y. June 28,
  2002) .................................................................................................................................14

*JGB Props., LLC v. Ironwood, LLC*,
  No. 5:14-CV-1542, 2015 U.S. Dist. LEXIS 38278 (N.D.N.Y. Mar. 26, 2015) ....................22

*Johnson v. Mount Sinai Hosp. Grp., Inc.*,
  No. 23-466, 2024 U.S. App. LEXIS 16285 (2d Cir. July 3, 2024).........................................21

*Keesh v. Quick*,
  No. 19-CV-08942 (PMH), 2021 U.S. Dist. LEXIS 29445 (S.D.N.Y. Feb. 17,
  2021) .................................................................................................................................21

*Kerik v. Tacopina*,
  No. 14-cv-02374 (S.D.N.Y. May, 15, 2014), ECF 31 .........................................................24

*Knipe v. Skinner*,
  19 F.3d 72 (2d Cir. 1994) ........................................................................................................7

*Lacher v. Engel*,
  33 A.D.3d 10 (1st Dep't 2006) ...............................................................................................19

*Maidenbaum v. Fischman*,
  No. 18-CV-2911 (NGG) (RER), 2020 U.S. Dist. LEXIS 51889 (E.D.N.Y.
  Mar. 25, 2020).......................................................................................................................13

*Martirano v. Frost*,
  25 N.Y.2d 505 (1969) .............................................................................................................20

*Morass v. White*,
  571 F. Supp. 3d 77 (S.D.N.Y. 2021)......................................................................................20

*Muhammad v. Walmart Stores E., L.P.*,
  732 F.3d 104 (2d Cir. 2013)...................................................................................................23

*Ousmane Bah v. Apple Inc.*,
  No. 19-cv-3539, 2020 U.S. Dist. LEXIS 22867 (S.D.N.Y. Feb. 10, 2020)...........................17

*Palin v. N.Y. Times Co.*,
  940 F.3d 804 (2d Cir. 2019)...................................................................................................15

*Safe-Strap Co. v. Koala Corp.*,
  270 F. Supp. 2d 407 (S.D.N.Y. 2003)...........................................................................8, 10, 14

*Sassower v. Field*,
  973 F.2d 75 (2d Cir. 1992)......................................................................................................24

*Seemann v. Coastal Envtl. Grp.*,
   No. 15-CV-2065(ADS)(AYS), 2016 U.S. Dist. LEXIS 86608 (E.D.N.Y. July
   2, 2016) ..............................................................................................................13

*Sherman v. Graves*,
   2025 U.S. Dist. LEXIS 104393 (S.D.N.Y. June 2, 2025)......................................19

*Spithogianis v. Haj-Darwish*,
   2008 U.S. Dist. LEXIS 824 (S.D.N.Y. Jan. 7, 2008) ............................................22

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)...............................................................................................17

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
   682 F.3d 170 (2d Cir. 2012)...................................................................................14

*Storey v. Cello Holdings, L.L.C.*,
   347 F.3d 370 (2d Cir. 2003)..............................................................................22, 23

*Sussman v. Bank of Israel*,
   56 F.3d 450 (2d Cir. 1995).....................................................................................22

*Sweeney v. Prisoners' Legal Servs.*,
   647 N.E.2d 101 (N.Y. 1995)..................................................................................16

*United States Fire Ins. Co. v. United Limousine Serv.*,
   303 F. Supp. 2d 432 (S.D.N.Y. 2004)......................................................................7

*Upstate Shredding, LLC v. Ne. Ferrous, Inc.*,
   No. 3:12-CV-1015, 2016 U.S. Dist. LEXIS 26042 (N.D.N.Y. Mar. 2, 2016) .......25

*Youmans v. Smith*,
   153 N.Y. 214 (1897) ..............................................................................................19

*Zunzurovski v. Fisher*,
   No. 23-cv-10881, 2024 U.S. Dist. LEXIS 62568 (S.D.N.Y. Apr. 3, 2024) ......12, 18

**Rules**

Fed. R. Civ. P 11 ......................................................................................... *passim*

Fed. R. Civ. P 11(b)(1)...............................................................................20, 21

Fed. R. Civ. P 11(b)(2)......................................................................................13

Fed. R. Civ. P 11(b)(3)...............................................................................7, 8, 9

Fed. R. Civ. P 11(c)(2)......................................................................................25

Fed. R. Civ. P 12(b)(6)........................................................................................1, 2, 4, 13

**Other Authorities**

1 Rodney A. Smolla, *Law of Defamation* § 3:45.50 (2d ed. 2025) ........................................15, 16

## PRELIMINARY STATEMENT

Defendants Terrance Dixon's ("**Dixon**"), and his lawyers Tyrone Blackburn and T.A. Blackburn Law PLLC's (collectively, "**Blackburn**," and together with Dixon, "**Defendants**") Rule 11 motion (the "**Motion**" or "**Mot.**") is the rare species of sanctions motions that itself warrants sanctions. Among other issues, the Motion (1) is primarily comprised of recycled, still-pending Rule 12(b)(6) arguments that Defendants raised in their August 11, 2025 Motion to Dismiss, (2) fails to address *any* of the well-founded arguments Plaintiff Joseph Cartagena made in response to that motion, (3) wholly misrepresents the allegations of the Second Amended Complaint ("**SAC**") and the chronology of events leading to the filing of this case and its coordinated action, *Dixon v. Cartagena*, No. 25-cv-5144 (S.D.N.Y.), and (4) once again includes fabricated case law likely generated by counsel's continued improper reliance on artificial intelligence.[1]

The Motion requests that Mr. Cartagena and his lawyers be sanctioned for failing to withdraw the SAC based on four general arguments. First, Defendants contend that Mr. Cartagena lacked evidentiary support for the allegations in his SAC. Second, they argue that Mr. Cartagena's claims lack a legal basis under governing law. Third, they insist that Mr. Cartagena filed this action for an improper purpose. Fourth, they assert that Mr. Cartagena's counsel acted in "willful disregard" of Rule 11's requirements for the sole reason that he filed a Rule 11 motion himself over ten years ago. Each assertion is wrong and depends on glaring mischaracterizations of the

---

[1] Defendants' Motion to Dismiss contained numerous citation errors, including case misrepresentations, misquotations, and entire citation fabrications. *See* ECF 46. On October 2, 2025, Defendants filed a letter representing to the Court that Blackburn had taken continuing legal education courses in the weeks prior to filing his motion to dismiss "to better understand the implications of artificial intelligence in legal drafting." ECF 58 at 3. That filing, Defendants' Rule 11 Notice, this filing, and recent discovery submissions served by Defendants indicate that Blackburn has learned nothing from these courses as he continues to cite to glaringly incorrect legal authority and submit incorrect work product creating hours of additional work for Mr. Cartagena and the Court.

pleadings, the record, and the sequence of events. These assertions moreover simply reprise arguments Defendants already made—and that are currently *sub judice*—in their pending Rule 12(b)(6) motion to dismiss.

Defendants' evidentiary attack rests on a distorted account of the SAC, which identifies specific defamatory statements made by each Defendant, pleads when and where those statements were made, and sets forth detailed facts establishing falsity and actual malice, including (i) Mr. Cartagena's categorical denials of Defendants' defamatory claims; (ii) Defendants' failure to corroborate their accusations despite claiming to possess "evidence" in the form of a later-filed complaint; (iii) inconsistencies between what Defendants publicly asserted and what their own supposed "recordings" actually show; and (iv) Dixon's stated intent—reported by his own family members—to disseminate "false information" to "take all of [Mr. Cartagena's] money." The Motion obscures these allegations and scrambles the timeline, suggesting that Dixon's statements merely echoed claims later made in his civil complaint. That is backwards: Dixon's RICO/TVPA complaint was filed on June 19, 2025, which is after Mr. Cartagena commenced this action on April 29, 2025, and cannot retroactively sanitize Defendants' pre-suit publications. Far from being "utterly lacking in support," the pleaded facts easily clear Rule 11's deliberately high threshold.

Defendants' legal challenge fares no better and is, in substance, a cut-and-paste of their motion to dismiss. Their privilege arguments misstate what the SAC pleads and what it does not. Mr. Cartagena does not seek to impose liability based on counsel's pre-litigation emails; his claims rest on Defendants' public statements, including social media posts and interviews. The absolute litigation privilege is thus inapplicable, and the qualified privilege arguments are beside the point. Their remaining legal contentions—most notably that the SAC does not plausibly plead actual malice—are already fully briefed in the Rule 12(b)(6) papers. Rule 11 is not a vehicle to re-litigate

sufficiency-of-the-pleadings issues while a dismissal motion is pending. The Motion's effort to repurpose those arguments under the rubric of sanctions merely underscores that Defendants' grievance is with the merits—not with any sanctionable conduct.

Defendants' "improper motive" theory is refuted by the record and the same chronology they ignore elsewhere. Mr. Cartagena could not have filed this case to "retaliate" against Dixon's later-filed complaint. He filed it to stop an ongoing campaign of public defamation and extortionate threats. That is a proper purpose. In any event, motive-based aspersions cannot substitute for the objective unreasonableness Rule 11 requires, particularly where the claims themselves are well pleaded and being tested through the ordinary Rule 12 process.

Finally, Defendants' "willful disregard" theory is neither sensical nor based in law. Instead, it only reflects Defendant Blackburn's personal animosity against Mr. Cartagena's attorney that Blackburn himself publicized the day after Mr. Cartagena filed this lawsuit. SAC ¶ 88 (describing Blackburn's April 29, 2025 Instagram post directed to Joseph Tacopina and accusing him of filing a baseless lawsuit, among other things).

The Court has already admonished Defendants for conduct that "delayed discovery and wasted the parties' and the Court's resources." Defendants' decision to file this duplicative sanctions motion—after repeatedly ignoring meet-and-confer efforts and discovery deadlines while their motion to dismiss remains pending—only multiplies those burdens. Rule 11 expressly authorizes fee-shifting where a sanctions motion is misused in this way. The Motion should be denied, and Mr. Cartagena should be awarded his reasonable fees for having to respond to it.

## STATEMENT OF FACTS

I.   **Defendants Harass And Defame Mr. Cartagena, Necessitating This Lawsuit.**

Mr. Cartagena incorporates the summary of the allegations of the SAC which are thoroughly documented in Mr. Cartagena's Opposition to Defendants' Motion to Dismiss the SAC ("**Motion to Dismiss Opposition**"). ECF 53 at 4-7.[2] Defendants' unrelenting efforts to humiliate and threaten Cartagena into an extortionate settlement compelled Cartagena to file the complaint initiating this lawsuit on April 29, 2025 (the "**Original Complaint**").[3] SAC ¶ 87.

II.  **Defendants File a Frivolous RICO and TVPA Lawsuit Against Mr. Cartagena, Mr. Cartagena Amends his Complaint, and Defendants Move to Dismiss.**

On June 19, 2025, Dixon (through Blackburn) filed a meandering, 775-paragraph complaint against Mr. Cartagena and several of his business associates (the "*Dixon* **Complaint**") alleging claims under the Trafficking Victims Protection Act ("**TVPA**").[4] Four days later, on June 23, 2025, Defendants filed a motion to dismiss the First Amended Complaint in the instant action on numerous meritless grounds, including that Mr. Cartagena's defamation and IIED claims failed as matter of law under Rule 12(b)(6). ECF 29. On July 21, 2025, Mr. Cartagena filed a SAC to add a defamation claim against Blackburn and Blackburn law in light of Blackburn's post-filing public statements defaming Mr. Cartagena. ECF 33.

On August 11, 2025, Defendants filed a motion to dismiss the SAC (the "**Motion to Dismiss**") on substantially equivalent grounds to their first motion to dismiss and the instant Sanctions Motion. The Motion to Dismiss was replete with fabricated case citations and

---

[2] All undefined capitalized terms used herein refer to those terms as they are defined in the Motion to Dismiss Opposition.

[3] On May 1, 2025, Mr. Cartagena filed a First Amended Complaint to address the Court's inquiry on diversity jurisdiction. ECF 14.

[4] On November 10, 2025, Mr. Cartagena and the other defendants in *Dixon v. Cartagena* filed a motion to dismiss the *Dixon* Complaint under FRCP 8 and 12(b)(6). ECF 88. That motion is pending.

misrepresentations of legal authorities. Four days later, on August 15, 2025, Blackburn sent counsel for Mr. Cartagena a letter purporting to provide notice that Defendants would file a Rule 11 motion if Mr. Cartagena failed to withdraw his complaint within 21 days. ECF 100-4 at 3. That letter—which Defendants conspicuously omitted from their instant filing—recycled the arguments raised in the Motion to Dismiss and contained numerous case citation errors and misrepresentations indicative of the use of artificial intelligence. *See* Dec. 18, 2025 Decl. of Jordan W. Siev, Exs. A and B ("**Rule 11 Notice**").

Accordingly, because both the Motion to Dismiss and Rule 11 Notice were meritless and facially deficient, Mr. Cartagena did not withdraw his well-founded and well-pled SAC on September 3, 2025, and instead filed the Motion to Dismiss Opposition, arguing, *inter alia*, that the SAC pled actual malice and that Defendants' defamatory statements are not privileged, and seeking sanctions against Defendants for their unethical and irresponsible submission of incorrect caselaw to the Court. ECF 53 at 21-26. On September 13, 2023, Defendants filed a reply in support of the Motion to Dismiss that (1) failed to respond to any of Mr. Cartagena's substantive arguments in his Motion to Dismiss Opposition, and (2) improperly attempted to append a corrected version of the Motion to Dismiss in support of the reply. ECF 56; 56-1.

On October 9, 2025, Defendants filed a Notice of Supplemental Authority in further support of their Motion to Dismiss the SAC informing the Court of the recent decision in *Graham v. UMG Recordings Inc.*, No. 25-CV-0399 (JAV), 2025 U.S. Dist. LEXIS 200606 (S.D.N.Y. Oct. 9, 2025). ECF 74. On October 22, 2025, Mr. Cartagena filed a response to the notice explaining how *Graham* is distinguishable from this case, supports Mr. Cartagena's arguments that Defendants' statements are defamatory, and was invoked to support an argument that Defendants previously waived. ECF 77. Though Defendants cite to *Graham* in the preliminary statement of

the instant Rule 11 Motion, Mot. at 4, they once again fail to explain how it is applicable to this case. Defendants' Motion to Dismiss is pending at the time of this filing.

### III. Defendants File the Instant Motion After Weeks of Ignoring Mr. Cartagena's Attempts to Advance Discovery.

While the Parties were submitting briefing on the Motion to Dismiss, Defendants stonewalled Mr. Cartagena's diligent attempts to move discovery forward. Defendants first ignored Mr. Cartagena's discovery requests and attempts to meet and confer over Defendants' failure to respond by the respective deadlines for weeks. These dilatory delay tactics forced Mr. Cartagena to file a motion seeking relief from the Court on October 27, 2025, ECF 78, prompting Defendants to submit their own letter on October 29, 2025 stating that service was improper, ECF 79. On October 30, 2025, the Court issued an order admonishing Defendants for failing to raise service-related issues when they first received the discovery requests and failing to respond to Mr. Cartagena's numerous attempts to contact them. ECF 80 at 1. The Order noted that Defendant had "delayed discovery and wasted the parties' and the Court's resources[,]" and the Court stated that it expected that such delay would "not happen in the future." *Id.* at 1-2. It did.

After stating in their October 29, 2025 letter that Defendants were "willing and eager to proceed with discovery in this case" and that they would provide "complete responses within the time periods prescribed by" the Federal rules of Civil Procedure, ECF 79 at 3, Defendants failed to do just that. Mr. Cartagena re-served his discovery requests on October 29, 2025 and requested Defendants' approval to file a stipulated confidentiality agreement and protective order governing discovery (the "**Stipulation**") on November 5, 2025. For a full month, and despite numerous efforts by Mr. Cartagena to contact Blackburn regarding the Stipulation and outstanding discovery, Defendants went silent, failing to meet their discovery deadline of December 1, 2025 and delaying

the timely filing of the Stipulation. On the evening of December 4, 2025, Defendants unceremoniously broke their silence by filing the instant Rule 11 Motion.

## LEGAL STANDARD

Rule 11 sanctions "should be imposed with caution." *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994). Rule 11 sanctions "are an extreme remedy, such that [w]hen divining the point at which an argument turns from merely losing to losing and sanctionable . . . district courts [must] resolve all doubts in favor of the signer [of the pleading]." "Rule 11 sanctions are an extreme remedy, such that when divining the point at which an argument turns from merely losing to losing and sanctionable … district courts [must] resolve all doubts in favor of the singer." *United States Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 455 (S.D.N.Y. 2004) (internal quotations omitted); *accord Fleming v. Hymes-Esposito*, No. 12-cv-1154 (JPO), 2013 U.S. Dist. LEXIS 45912, at *11 (S.D.N.Y Mar. 29, 2013) ("Rule 11 sanctions are an extreme measure.").

Accordingly, "[t]he standard for imposing Rule 11 sanctions . . . is purposefully high, so as not to stifle legal creativity and zealous advocacy." *City of Perry Iowa v. Procter & Gamble Co.*, No. 15-cv-8051 (JMF), 2017 U.S. Dist. LEXIS 94887, at *2 (S.D.N.Y June 20, 2017). "Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success." *Healey v. Chelsea Res., Ltd., 947* F.2d 611, 626 (2d Cir. 1991) (internal quotation marks and citations omitted); *see also In re Highgate Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (holding that "under Rule 11(b)(3), 'sanctions may not be obtained unless a particular allegation is utterly lacking in support'") (citation omitted).

## ARGUMENT

Defendants' Motion fails because it does not demonstrate that Mr. Cartagena or his counsel filed the SAC without evidentiary or legal support determined after an inquiry reasonable under

the circumstances or with an improper purpose. FRCP 11(b)(1)-(3). Rather, Mr. Cartagena and his counsel *did* conduct a reasonable inquiry under the circumstances through which they determined that there was ample evidentiary and legal support for Mr. Cartagena's defamation and IIED clams. Likewise, Mr. Cartagena and his counsel filed the SAC for the proper purpose of vindicating Mr. Cartagena's rights and restoring his reputation after Defendants engaged in a hostile and extortionate campaign of defamation designed to pressure Mr. Cartagena into paying Dixon millions of dollars to which he is not entitled. At base, this Rule 11 Motion mirrors Defendants' deficient Motion to Dismiss which has already been briefed in full. The Court should deny the motion and award Mr. Cartagena attorney's fees for having to respond to this duplicative and frivolous motion that—like Defendants' other actions in this case—"wasted the parties' and the Court's resources." ECF 80 at 1.

## I.    The SAC Complies with Rule 11(b)(3)

Defendants wrongly pursue sanctions against Mr. Cartagena and his counsel for supposedly failing to satisfy Rule 11's requirement that a "signer . . . conduct a reasonable inquiry into the viability of a pleading before it is filed" and to produce "a single piece of admissible evidence substantiating his claims." Mot. at 6. "With regard to factual contentions," however, "sanctions may not be imposed unless particular allegation is *utterly lacking in support*." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (emphasis added; citations omitted). Before imposing sanctions, courts "look for statements which rise to the level of direct falsehoods." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 412 (S.D.N.Y. 2003). "Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy." *E. Gluck Corp.,* 252 F.R.D. at 179. Sanctionable conduct under Rule 11(b)(3) requires "a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quotation

marks and citation omitted). Defendants fail to demonstrate that *any* of Mr. Cartagena's allegations meet these standards.

      A.    <u>Mr. Cartagena And His Counsel Made A Reasonable Pre-Filing Investigation.</u>

Defendants' bald assertions that Mr. Cartagena and his counsel failed to perform a reasonable pre-suit investigation are false and in any event insufficient to support sanctions under Rule 11(b)(3). "[W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion or other paper; whether the pleading, motion or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel of another member of the bar." *Carlton Grp., Ltd. v. Tobin*, 2003 U.S. Dist. LEXIS 13332, at *10 (S.D.N.Y. July 31, 2003) (quotations and citations omitted). Defendants provide no proof that the factual allegations in the SAC are false or objectively unreasonable, or that Mr. Cartagena's pre-suit inquiry was unreasonable. To the contrary, those allegations are true, reasonable, and supported by his attorneys' reasonable inquiry:

1.    Mr. Cartagena's attorney spoke with Blackburn in depth on multiple occasions regarding Dixon's allegations and inquired about the nature of Dixon's claims and any evidence corroborating those claims. SAC ¶¶ 73-84.

2.    Mr. Cartagena's attorneys closely reviewed the limited information Blackburn sent in response to those requests: several partial audio recordings that did not corroborate Dixon's claims. SAC ¶¶ 92, 94.

3.    Mr. Cartagena's attorneys retained private investigators to locate and speak with the women with whom Dixon suggested he slept. SAC ¶ 77.

4.    Mr. Cartagena's attorneys researched other cases filed by Blackburn, revealing that he had been admonished by judges in this District for filing frivolous claims after following the same playbook he was using against Mr. Cartagena—"embarrass[ing potential] defendants with salacious allegations" to "pressure" them to "settle quickly." SAC ¶ 8.

Under any objective measure, Mr. Cartagena and his counsel undertook a reasonable investigation prior to bringing this action. *Cf. Carlton Grp., Ltd.* at *17 (attorneys "made a substantial and reasonable pre-filing inquiry" giving them "a reasonable basis" to assert their client's claims where they investigated key underlying facts and had "good reason" not to question certain key witnesses). His allegations are not frivolous, and even if some allegations turn out to be incorrect, that is not a basis for imposing sanctions. *See Safe-Strap Co.*, 270 F. Supp. 2d at 417 (in assessing Rule 11 motions, courts look to "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate") (quotation marks and citations omitted); *G-I Holdings, Inc. v. Baron & Budd*, 01 Civ. 0216 (RWS), 2002 U.S. Dist. LEXIS 15443, at *45 (S.D.N.Y. Aug. 16, 2002) (courts "avoid hindsight and resolve all doubts [for Rule 11 motions] in favor of the signer"); *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 264 (S.D.N.Y. 2010) ("Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement").

B.    Mr. Cartagena's Actual Malice Allegations Are Amply Supported.

Defendants' first evidentiary argument for the imposition of sanctions is that the SAC purportedly failed to plead evidence demonstrating that any of Defendants' statements were false or that they otherwise had actual malice. Mot. at 7. This argument is legally frivolous, and Defendants' only purported support is a series of demonstrably false representations concerning the SAC.

*First*, it is false that the SAC failed to "identify any specific statement" made by Defendants that were "factually false, let alone knowingly or recklessly false." Mot. at 7. To the contrary, the SAC identified eight specific statements made by Dixon (SAC ¶ 124) and three specific statements made by Blackburn (in his personal capacity and on behalf of Blackburn law) (SAC ¶ 132) in connection with its two defamation claims. Each of these statements either falsely alleged that Mr.

Cartagena had taken actions that he did not take, or falsely represented that Defendants had evidence to corroborate those claims. The SAC moreover identified eight reasons explaining how Dixon knew his statements were false or otherwise acted with reckless disregard of the truth or falsity of his statements, SAC ¶ 126(a)-(g), and six reasons explaining how Blackburn knew his statements were false or otherwise acted with reckless disregard of the truth or falsity of his statements, SAC ¶ 134(a)-(f).

*Second*, it is false that the SAC "omits the context in which Dixon's statements were made." Mot. at 7. Rather, the SAC describes in detail the timing and place of publication of each statement, Dixon's actions leading up to those defamatory statements, and Blackburn's involvement in Dixon's representation prior to *his* defamatory statements. SAC ¶¶ 50-94. Ironically, the Motion itself completely misrepresents the context in which Dixon's statements were made, claiming that they were "consistent with" or verbatim from his RICO/TVPA complaint. Mot. at 7. At the time Dixon made his defamatory statements, Defendants had not filed that complaint.

*Third*, it is false that the SAC "does not allege any contradictory facts, timelines, or third-party accounts that could support a plausible inference of falsity." Mot. at 7. Mr. Cartagena vehemently denied all the accusations that Dixon and Blackburn levied against him. SAC ¶ 7 ("Cartagena is steadfast and resolute: the allegations are false[.]"). In a defamation case that turns on conflicting he-said/he-said accounts, Mr. Cartagena's denial of the claims made against him *is* an allegation of contradictory facts. But that is not all—the SAC also alleges that Dixon told members of his family that "if they did not stop working with Cartagena, he would put false information about Cartagena out on social media, and would 'take all of Joe's money.'" SAC ¶ 36. Moreover, Blackburn has a judicially recognized history of attempting to "embarrass defendants

with salacious allegations" to "pressure [them] to settle quickly." *Zunzurovski v. Fisher*, No. 23-cv-10881, 2024 U.S. Dist. LEXIS 62568, at *14 (S.D.N.Y. Apr. 3, 2024). Together, these allegations are more than sufficient to "support a plausible inference of falsity" where the statements concern Mr. Cartagena's purported actions and Dixon's personal account of those actions.

Having fabricated these arguments out of thin air, Defendants next claim that the SAC ignores the purported fact that their defamatory "statements are corroborated by independent evidence" embodied in the *Dixon* Complaint. Mot. at 8. This bewildering and baseless argument should be rejected for several reasons, not the least of which is that it advocates for a rule authorizing defamation plaintiffs to obtain sanctions against their adversaries merely by filing claims asserting conflicting accounts. Moreover, neither of the cases that Defendants cite for this proposition support it, and instead affirmed findings of actual malice *on summary judgment* where evidence on the record corroborated the defendants' allegedly defamatory statements. *See* Mot. at 8 citing (*Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001); *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988)).

In contrast to those cases, discovery in this case is just starting after months of dilatory tactics and missed deadlines by Defendants to delay and stall this case. There is no evidence on the record corroborating Defendants' defamatory statements, and it is well established that sanctions "should not be imposed . . . before Plaintiff has had the opportunity to test an allegation that is properly pleaded . . . and that is not utterly lacking in support." *Collison v. Wandrd, LLC*, No. 24-cv-2221 (LJL), 2024 U.S. Dist. LEXIS 116974, at *10 (S.D.N.Y. July 1, 2024); *see Brock v. Logsdon*, 2023 U.S. Dist. LEXIS 7719, at *3 (W.D.N.Y. Jan. 17, 2023) (declining to impose sanctions even after close of discovery where counsel's conduct was not objectively unreasonable).

C.    Mr. Cartagena Does Not Improperly Rely On Privileged Pre-Litigation
Communications.

Defendants' second evidentiary-based argument is based on the false assertion that the

SAC only premises liability on Blackburn based "on pre-litigation communications he made in his

capacity as counsel for Defendant Dixon" to Mr. Cartagena's attorney. Mot. at 9. As noted above

and in the Motion to Dismiss Opposition, Mr. Cartagena's defamation claim against Mr. Blackburn

is *not* premised on these communications; it is premised entirely on public statements he posted to

his Instagram account and made in an interview. SAC ¶ 132; ECF 53 at 25. Accordingly,

Defendants' concerns regarding any privilege applicable to Blackburn's private emails with Mr.

Cartagena's counsel are misplaced.

## II.    The SAC Complies with Rule 11(b)(2).

Defendants next argue that the Court should sanction Mr. Cartagena and his counsel under

the recycled and baseless arguments that Mr. Cartagena's claims are not warranted under existing

law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for

establishing new law, thus violating Rule 11(b)(2). Mot. at 10-13. Defendants have not come close

to demonstrating that Mr. Cartagena's legal allegations meet this demanding standard, as Mr.

Cartagena already thoroughly explained in the Motion to Dismiss Opposition.

A.    Defendants' Arguments Improperly Recycle Their Rule 12(b)(6) Motion.

With the exception of its argument concerning Mr. Cartagena's motives, Defendants'

Rule 11 Motion is almost entirely duplicative of its pending motion to dismiss. ECF 46. "Such

arguments do no[t] implicate Rule 11" and therefore are not sufficient to warrant sanctions.

*Maidenbaum v. Fischman*, No. 18-CV-2911 (NGG) (RER), 2020 U.S. Dist. LEXIS 51889, at *12

(E.D.N.Y. Mar. 25, 2020); *Seemann v. Coastal Envtl. Grp.*, No. 15-CV-2065(ADS)(AYS), 2016

U.S. Dist. LEXIS 86608, at *21-23 (E.D.N.Y. July 2, 2016) (denying motion for sanctions and

warning moving party that a repetitive Rule 11 motion is grounds for sanctions itself for "needlessly multiplying submissions made to the Court."); *Jawbone, LLC v. Donohue*, No. 01 CIV. 8066 (CSH), 2002 U.S. Dist. LEXIS 11806, at *8 (S.D.N.Y. June 28, 2002) (denying a motion for sanctions because the parties' "numerous submissions in connection with their cross-motions for sanctions have served primarily to repeat and elaborate on the arguments made in the principal exchange of motions"). The Advisory Committee Notes for Rule 11 expressly state that Rule 11 motions "should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings." Rule 11 Advisory Committee Note to the 1993 amendments; *accord E. Gluck Corp.*, 252 F.R.D. at 179; *Safe-Strap Co*, 270 F. Supp. 2d at 416.

Moreover, the cases Defendants cite where a Rule 11 violation was found do not support the imposition of sanctions here. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (mandatory sanctions imposed under Private Securities Litigation Reform Act in connection with plaintiff's claim that defendants participated in market manipulation); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (imposing sanctions on attorney who argued that a magistrate judge's warning of sanctions in one action constituted a "procedural bar" to raising claims in another action); *Bonded Life Fund, LLC v. AXA Equitable Life Ins. Co.*, 2014 U.S. Dist. LEXIS 31491, at *9–10 (S.D.N.Y. Mar. 10, 2014) (imposing sanctions, *inter alia*, where plaintiff disregarded the fact that the Court "already dealt with the circumstances giving rise to this action" in his multiple prior actions). In contrast, even a cursory reading of the SAC and Mr. Cartagena's Motion to Dismiss Opposition demonstrates that Mr. Cartagena's claims are supported by case law and by well-pled allegations.

B.    Mr. Cartagena Pled Actual Malice.

Defendants again argue that the "SAC alleges no concrete facts from which actual malice could reasonably be inferred," citing cases only for the general proposition that "labels and

14

conclusions" are insufficient as a matter of law. Mot. at 11 (citing *Biro v. Condé Nast*, 807 F.3d 541, 544–45 (2d Cir. 2015); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As Mr. Cartagena explained in his Motion to Dismiss Opposition—and as Defendants once again[5] fail to address— this is a blatant misrepresentation of the SAC, which amply pleads facts sufficient to demonstrate that Defendants made their statements with actual malice.

Actual malice "simply means the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 816 (2d Cir. 2019). Actual malice "can be established through the defendant's own actions or statements, the dubious nature of his sources, and the inherent improbability of the story among other circumstantial evidence." *Brimelow v. N.Y. Times Co.*, No. 21-66-cv, 2021 U.S. App. LEXIS 31672, at *5-6 (2d Cir. Oct. 21, 2021) (quotations omitted). Mr. Cartagena pleads that Dixon made the Sexual Abuse Statements and Statutory Rape Statements, and Blackburn made the Hit Job Statements and Corroboration Statements, with actual malice.

### 1.    Defendants Knew Their Defamatory Statements Were False.

***Sexual Assault Statements***. Mr. Cartagena denies the Sexual Assault Statements, which accuse him of an act that Dixon claims to have personally witnessed. SAC ¶ 44. Because Dixon claims to have personally witnessed something that did not happen, actual malice is presumed. *See* 1 Rodney A. Smolla, *Law of Defamation* § 3:45.50 (2d ed. 2025) ("[D]eliberate [first-hand] fabrications, if proven, should in almost all circumstances automatically satisfy the actual malice standard."). Moreover, Mr. Cartagena alleges that Dixon knew that the inappropriate touching allegations in question were made against *him*, not Cartagena, and therefore knew that the Sexual Assault Statements were false when he made them. *Id*. ¶¶ 52, 126(c). *See Erdman*, 2021 U.S. Dist.

---

[5] Defendants also failed to address any of these responses in their Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss. ECF 56.

LEXIS at *7-8 (actual malice pled where defendant "acted out of spite" and a "desire to retaliate" in falsely accusing plaintiff of committing crimes); *Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 309 (S.D.N.Y. 2023).

   ***Statutory Rape Statements***. Mr. Cartagena also alleges that Dixon knew that his Statutory Rape Statements were false. SAC ¶ 126. Like the sexual assault statements, Dixon claims to have personally witnessed something that did not happen, and actual malice is presumed. *See* 1 Rodney A. Smolla, *Law of Defamation* § 3:45.50 (2d ed. 2025). Mr. Cartagena also alleges that Dixon did not corroborate the age of any of the alleged minors that Mr. Cartagena allegedly had relationships with. *Id.* ¶ 53. Dixon's motion to dismiss fails for this reason alone. *See Sweeney v. Prisoners' Legal Servs.*, 647 N.E.2d 101, 104 (N.Y. 1995) ("Evidence that defendants purposefully avoided the truth may support a finding of actual malice if supported by evidence that defendants' inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of the published statement.") (quotations omitted); *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 692 (1989).

   ***Hit Job Statements***. Blackburn publicly stated that Mr. Cartagena had "ordered a hit job" on Dixon and that he even possessed an audio recording corroborating his statement. SAC ¶ 132(a). However, the transcript of the alleged audio recording evidencing Mr. Cartagena's purported hit shows no such thing. Rather, the recording was a conversation between two other individuals, identified as "Pete" and "Percy," not Mr. Cartagena. *Id.* ¶ 92. And the actual content of the audio files provided by Blackburn did not contain any statements or evidence indicating that Mr. Cartagena had directed anyone to harm Dixon. *Id.* Thus, Blackburn knew that the Hit Job Statements were false because the alleged recordings which supposedly provided the basis for his statements did not reference Mr. Cartagena ordering or requesting any violent act against Dixon.

*See St. Amant v. Thompson,* 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call."); *Ousmane Bah v. Apple Inc.*, No. 19-cv-3539, 2020 U.S. Dist. LEXIS 22867, at *27 (S.D.N.Y. Feb. 10, 2020) ("[Plaintiff] alleges that defendants were highly aware that these statements were probably false, satisfying New York's definition of actual malice.").

***Corroboration Statements***. Blackburn stated that he possessed audio evidence of Mr. Cartagena's "girlfriend" admitting to having started a sexual relationship with Mr. Cartagena when she was 16 years old and he was in his late 30s. Blackburn asserted that this was "clear as day" on the recording and that the woman described the relationship as "inappropriate" because she was a child. SAC ¶ 93. The actual audio provided did not mention Mr. Cartagena or contain any such admission, however. *Id.* ¶ 94. Blackburn thus knew his statements were false when he made them.

### 2.    Malice May Be Inferred From Defendants' Actions and Statements.

Actual malice "can be established through the defendant's own actions or statements, the dubious nature of his sources, and the inherent improbability of the story among other circumstantial evidence." *Brimelow*, 2021 U.S. App. LEXIS 31672, at *5-6 (quotations omitted). The court can also infer Defendants' malice from their statements, actions and motives. *See Harte-Hanks*, 491 U.S. at 667-68.

First, Mr. Cartagena alleges that Dixon made statements to family members that he would put false information about Mr. Cartagena on social media to obtain money from him, saying he would "take all of Joe's money" if they did not stop working with Mr. Cartagena. SAC ¶ 36. Dixon also sent Mr. Cartagena's manager a doctored image of a news headline reading, "FAT JOE STATUTORY RAPE VICTIM REVEALED," and threatened, "This is what the news paper [sic] is going to look like wow is [sic] daughter is going to be real proud of him I'm going to tag Jordan

Nike cnn the wthite [sic] the president and the vice president every major outlet will have this now think about it this just one." *Id.* ¶¶ 40-41. Dixon further warned, "***The countdown is on***[.] Tell the fat man be smart. I warned him before," and added, "***I'm the predator, Joe's the prey***." *Id.* ¶ 42.

Second, the Court can infer Defendants' malice from their motive. Mr. Cartagena alleges that Defendants made their defamatory statements neither in good faith nor as part of legitimate legal advocacy, but rather as part of a calculated campaign to extort Mr. Cartagena, consistent with the findings of other courts. *Id.* ¶ 134; *see Zunzurovski*, 2024 U.S. Dist. LEXIS 62568, at *14. Dixon even admitted to Mr. Cartagena's counsel that the allegations of statutory rape and other crimes were side shows intended to pressure Mr. Cartagena into a financial settlement over Dixon's purported unpaid services. *Id.* ¶ 80; *see Harte-Hanks*, 491 U.S. at 668 (holding that Defendant's profit motives were properly considered in finding actual malice and ruling that "evidence concerning motive . . . bears" on the "actual malice inquiry.").

Third, the timing of Dixon's statements show malice. After years of amicable professional association, Dixon suddenly began making false and scandalous allegations against Mr. Cartagena in a calculated effort to extort money. Although Dixon sought unearned compensation, he fabricated accusations of unrelated sexual misconduct and other crimes with the intent to damage Mr. Cartagena's reputation and force a lucrative settlement. SAC ¶ 44.

C.    The Litigation Privilege Does Not Bar Mr. Cartagena's Claims.

Defendants falsely state that "many of the statements Plaintiff seeks to challenge are directly excerpted from, or substantially identical to, allegations in Defendant Dixon's pending federal RICO and TVPA complaint," were therefore made in "the course of judicial proceedings and are plainly pertinent to the claims asserted in that action," and are thus "absolutely immune from defamation liability." Mot. at 11.  Even a cursory review of the SAC reveals that Mr. Cartagena does not "challenge" any of Defendants' statements made in the course of judicial

proceedings in *Dixon v. Cartagena*, No. 25-cv-5144 (S.D.N.Y.). Such an assertion is absurd given that Defendants filed the complaint in the *Dixon* matter *after* Mr. Cartagena filed the Original Complaint, and the only new statements alleged in the SAC making part of Mr. Cartagena's defamation claims were made before Dixon filed his complaint. Even if the statements Mr. Cartagena challenges are "substantially identical" to allegations in the *Dixon* complaint, Mot. at 11, Defendants' post-hoc filing of that complaint cannot retroactively immunize prior statements from defamation liability.

To the extent Defendants also argue that interviews, podcasts or social media posts about ongoing or potential litigation are privileged, they are wrong because none of those statements were made in anticipation of litigation. *See CT Espresso LLC v. Lavazza Premium Coffees Corp.*, No. 22-cv-377, 2022 U.S. Dist. LEXIS 211760, at *7-8 (S.D.N.Y. Nov. 22, 2022) (holding that there were "no allegations suggesting that the defendants were anticipating litigation" at the time they made the statements). None of Defendants' cited cases support such a position. *See Sherman v. Graves*, 2025 U.S. Dist. LEXIS 104393, at *5, 7-8 (S.D.N.Y. June 2, 2025) (dismissing defamation claim premised on statements made *after* defendant filed a complaint concerning the same subject matter); *Gottwald v. Sebert*, 40 N.Y.3d 240, 253 (2023) (reaffirming that allegations of sham litigation are sufficient to overcome the statutory privilege under Civil Rights Law § 74, which Defendants do not argue applies here);[6] *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718–19 (2015) (dismissing defamation claim premised on private statements sent by defendant attorneys to plaintiff, a former employee of defendants' client, and to plaintiff's new employer); *Lacher v. Engel*, 33 A.D.3d 10, 14 (1st Dep't 2006) (finding statements about attorney's character privileged

---

[6] Though Defendants' privilege arguments are moot, Mr. Cartagena notes that Defendants' citation to *Gottwald v. Sebert*, 40 N.Y.3d 240, 253 (2023) (quoting *Youmans v. Smith*, 153 N.Y. 214, 219 (1897)) appears to be fabricated. The quote Defendants attribute to those cases—"statements made in the course of judicial proceedings are absolutely privileged so long as they are material and pertinent to the litigation"—does not appear in either case.

after the initiation of attorney malpractice suit); *Martirano v. Frost*, 25 N.Y.2d 505, 507 (1969) (finding statements privileged only because nothing "could reasonably lead a court to say that they were uttered for the sole purpose of maligning the plaintiff.").

Moreover, Defendants' statements are not privileged because they were not made in good faith or as part of legitimate legal advocacy. SAC ¶ 134; *see Morass v. White*, 571 F. Supp. 3d 77, 101 (S.D.N.Y. 2021) (holding that the litigation privilege did not apply where the complaint alleged that the defamatory statements were part of a "campaign of harassment"); *see also Menaker*, 2019 U.S. Dist. LEXIS 68559, at *8; *Chang v. Arroyave*, No. 55459/2020, 2020 N.Y. Misc. LEXIS 49085, at *4 (N.Y. Sup. Ct. Aug. 12, 2020). Defendants instead calculated their malicious lies to destroy Cartagena's life and career. *Id.* ¶ 138**.**

D.    The Qualified Privilege Does Not Bar Mr. Cartagena's Claims.

Defendants also falsely state that the SAC "explicitly targets pre-litigation communications" sent by Blackburn to Mr. Cartagena's attorney. Mot. at 12. As noted in his Motion to Dismiss Opposition, no part of Mr. Cartagena's defamation claim is based on Blackburn's pre-litigation correspondence. *See* ECF 53 at 25 ("This argument is besides the point, as Cartagena's defamation claims do not rest on those statements. The claims are instead rooted in Defendants' repeated, malicious, and highly public statements."). Indeed, the SAC does not include any of these statements in its causes of action for defamation. *See* SAC ¶¶ 123-41. Defendants' qualified privilege argument is therefore also moot.

## III.    The SAC Complies with Rule 11(b)(1).

Defendants next argue that the Court should sanction Mr. Cartagena and his counsel under the baseless assertion that Mr. Cartagena filed this action for improper purposes, including (1) to "suppress" and "retaliate against Dixon for filing a federal civil RICO action," and to "prevent," "burden, intimidate or impair his counsel as that litigation proceeds." Mot. at 13-15. Such

accusations implicate Rule 11(b)(1), which requires attorneys to certify to the best of their knowledge information, and belief, formed after an inquiry reasonable under the circumstances, that a complaint "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Defendants' Rule 11(b)(1) claims fail for at least three reasons.

*First*, Mr. Cartagena's filing of the SAC cannot constitute retaliation for Dixon's filing of the RICO case because this lawsuit predates Dixon's RICO case and the "alleged retaliatory event cannot precede the protected activity." *Keesh v. Quick*, No. 19-CV-08942 (PMH), 2021 U.S. Dist. LEXIS 29445, at *22 (S.D.N.Y. Feb. 17, 2021); *cf. Hayes v. Rockaway Ctr., LLC*, No. 22-CV-6613 (DG) (ARL), 2024 U.S. Dist. LEXIS 132656, at *17 (E.D.N.Y. July 25, 2024) ("The only protected activity Plaintiff engaged in was the filing of her complaint with the EEOC, which cannot form the basis of her claim for retaliation because it occurred after her termination"); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 23-466, 2024 U.S. App. LEXIS 16285, at *5-6 (2d Cir. July 3, 2024) (dismissing retaliation claim because "protected activity occurred only after [defendant] implemented its COVID-19 employment policies").

*Second*, Defendants have not demonstrated that Mr. Cartagena's purpose in filing this action was to thwart Dixon's legal rights because that was *not* his purpose. To the contrary, Mr. Cartagena seeks redress for the abuse, extortion, and defamation he is facing in both the media and the courts at the hands of Defendants. SAC ¶ 87. Over several years, Dixon posted countless social media statements and images designed to harass Mr. Cartagena and his family, each more fanciful than the next and falsely accusing Mr. Cartagena of engaging in despicable inappropriate and illegal conduct with minors. SAC ¶¶ 35-62. He then hired Blackburn to initiate an extortionate campaign involving baseless demand letters for millions of dollars, make threats to report Mr.

21

Cartagena to homeland security for a fabricated death threat claim, and make his own defamatory statements against Mr. Cartagena repeating Dixon's claims that Mr. Cartagena engaged in inappropriate relationships with children. *Id.* ¶¶ 63-94. Finally, Defendants filed a frivolous 775-paragraph complaint against Mr. Cartagena and his business partners in furtherance of Defendants' scheme to extort Mr. Cartagena of millions of dollars. *Id.* ¶¶ 107-110. Mr. Cartagena has rightfully turned to this Court to end this abusive campaign; he and his counsel should not be sanctioned for exercising Mr. Cartagena's right to seek redress and end this abuse.

*Third*, Defendants cite to no authority for the proposition that "[c]ourts have long recognized that coordinated filings in multiple forums designed to suppress litigation constitute an abuse of the judicial process warranting Rule 11 sanctions." Mot. at 13. As an initial matter, there is one filing by Mr. Cartagena, so no "coordinated filings in multiple forums" by Mr. Cartagena even exist. Even if true, such motives alone are legally insufficient to justify sanctions. A "plaintiff's subjective state of mind . . . [is] not adequate to impose sanctions in the first place in the absence of an objectively frivolous pleading." *Spithogianis v. Haj-Darwish*, 2008 U.S. Dist. LEXIS 824, at *29 (S.D.N.Y. Jan. 7, 2008). "[I]t would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995); *see Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 393 (2d Cir. 2003) ("[E]conomic disparity [between a plaintiff and defendant] and a greater litigiousness [of the plaintiff] do not alone amount to improper purpose."); *JGB Props., LLC v. Ironwood, LLC*, No. 5:14-CV-1542 (GTS/ATB), 2015 U.S. Dist. LEXIS 38278, at *31 (N.D.N.Y. Mar. 26, 2015) ("[W]hile the filing of Plaintiff's Complaint was certainly aggressive . . ., it was not so clearly brought for the purpose of harassing

Defendants and needlessly increasing their litigation costs as to be sanctionable"). As already noted, the SAC asserts non-frivolous claims.

*Fourth*, and similarly, Defendants argue that Mr. Cartagena and his attorneys' improper motives are clear from the purported fact that they filed a bar complaint against Blackburn. Mot. at 9-10. Defendants have offered no proof establishing the existence of such a complaint, however, or that said complaint is objectively frivolous. If anything, Blackburns' unethical and dilatory actions in this case and the myriad other cases in which courts have either strongly criticized his conduct or imposed sanctions on him would provide ample support for a grievance committee complaint.

Finally, none of the cases Defendants cite in support of their argument concerning Mr. Cartagena's motives are remotely close to the facts of this case. Three of the cases *rejected* the movant's claims for sanctions, either finding that the alleged conduct was insufficient to demonstrate bad faith, or was otherwise reasonable under the circumstances. *See Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104 (2d Cir. 2013) (holding that defense attorney's actions in falsely asserting that a complaint filed by the *pro se* plaintiff included a claim of gender discrimination were "not enough to demonstrate subjective bad faith"); *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 64 (2d Cir. 2012) (finding no abuse of discretion in denial of Rule 11 sanctions motion where the alleged actions concerned the "confusing nature of the division of responsibility between courts and arbitrators as to contract formation[.]"); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 393 (2d Cir. 2003) (vacating Rule 11 determination based on the District Court's earlier incorrect determination that Defendants' answer contained sanctionable contentions and arguments.

Defendants' two other "motives" cases affirmed sanctions findings, but only because of counsel's "objectively unreasonable" conduct—not plaintiff's motives. In *Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992), the Second Circuit upheld a district court's use of its inherent authority to sanction plaintiffs based on their "numerous instances of entirely vexatious and oppressive tactics[.]" *Id.* at 81. These tactics included making "unsupported bias recusal motions based upon this court's unwilling involvement" in earlier proceedings initiated by one of the plaintiffs, "continual personal attacks on the opposing parties and counsel[,]" routine "motion[s] to reargue[,]" "two improper interlocutory appeals which were subsequently withdrawn," and a "mammoth motion for a new trial and sanctions against opposing counsel which seeks to reargue virtually every aspect of the litigation for the third time." *Id.* at 78. *Sassower* made no reference to the plaintiff's' motives, and Mr. Cartagena has engaged in no such conduct. In *Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494, 496 (2d Cir. 2009), the Second Circuit affirmed sanctions that were imposed on a plaintiff who filed a frivolous motion to correct or amend a judgment entered against him. The motion renewed claims already adjudicated to have been barred by *res judicata* or which should have been raised as compulsory counterclaims. The plaintiff had also made the same allegations in state court where he was sanctioned for raising baseless misconduct allegations against defense counsel. Mr. Cartagena has not engaged in any such conduct.

## IV.    Mr. Cartagena's Attorney's Prior Rule 11 Filing Does Not Weigh In Favor Of Sanctions.

Finally, Defendants assert a bewildering argument that Mr. Cartagena and his attorney should be punished for the mere fact that one of his attorneys filed a Rule 11 sanctions motion more than ten years ago. Mot. at 14 (citing Defendant Joseph Tacopina's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, *Kerik v. Tacopina*, No. 14-cv-02374 (S.D.N.Y. May, 15, 2014), ECF 31). This argument is meritless as evidenced by the facts that Defendants cite no support for

24

it, and Mr. Cartagena's attorneys do not feign to "claim unfamiliarity with Rule 11's requirements." *Id.* To the contrary, Mr. Cartagena is not aware of any authority indicating that the fact that an attorney has previously filed a Rule 11 motion is somehow indicative of a later finding of sanctionable conduct. Such a rule would not make sense where (1) the sole focus of Rule 11 is whether the respondent acquired knowledge, information, and belief formed after an inquiry reasonable *under the circumstances* to support the plaintiff's claim, and (2) all federal practitioners have an ethical obligation to be "[]familiar[] with Rule 11's requirements." Mot. at 14.

**V.     The Court Should Award Mr. Cartagena Attorney's Fees.**

The Court may award reasonable expenses including attorneys' fees to the prevailing party on a motion for sanctions. *See* Fed. R. Civ. P 11(c)(2). As discussed above, Defendants have made serious and baseless accusations that Mr. Cartagena failed to perform an adequate pre-investigation and filed his case for an improper purpose. Defendants do not come close to meeting the legal standard for a Rule 11 motion. Mr. Cartagena should not bear the expense of responding to this frivolous motion and should be awarded attorneys' fees. *Caribbean Wholesales & Serv. Corp. v. USA JVC Corp.*, 101 F. Supp. 2d 236, 242 (S.D.N.Y. 2000) (attorneys' fees awarded to non-movant); *Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, No. 3:12-CV-1015 (LEK/DEP), 2016 U.S. Dist. LEXIS 26042, at *58-59 (N.D.N.Y. Mar. 2, 2016) (same).

<u>**CONCLUSION**</u>

For these reasons, the Court should deny Defendants' Motion for Sanctions and award fees.

Dated:    December 18, 2025
New York, New York

*/s/ Joseph Tacopina*

Joseph Tacopina
Chad Seigel
**Tacopina Seigel & DeOreo**
275 Madison Avenue, 35th Floor
New York, New York 10016
212-227-8877
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com

**Of Counsel:**

Jordan W. Siev
**Reed Smith LLP**
599 Lexington Avenue, 22nd Floor
New York, New York 10022
212-205-6087
jsiev@reedsmith.com

**<u>WORD CERTIFICATION</u>**

   I hereby certify that the word count of this Memorandum of Law complies with the word limit of Local Rule 7.1(c). According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Rule 7.1(c), is 8,043 words.

Dated: New York, New York
   December 18, 2025


               */s/ Jordan W. Siev*
               Jordan W. Siev