**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH CARTAGENA,<br>　　　　　　　　　*Plaintiff*,<br>v.<br>TERRANCE DIXON,<br>TYRONE BLACKBURN, and<br>T.A. BLACKBURN LAW, PLLC,<br>　　　　　　　　　*Defendants*. | Civil Action No. 25-cv-03552<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

**By**:
Tyrone A. Blackburn, Esq.

# TABLE OF CONTENTS

**Preliminary Statement**

**Argument**

I.    Rule 11 Is a Proper and Necessary Vehicle Where a Party Persists in Objectively Unreasonable Claims After Safe-Harbor Notice

II.    Plaintiff's Defamation Theory Targets Pre-Litigation–Protected Advocacy and Is Legally Foreclosed

    A.  Plaintiff Conflates "Public" with "Non-Privileged"—Graham Forecloses This Argument.

    B.  The Reasonable Listener Standard Defeats Plaintiff's Subjective Interpretation.

    C.  Front Privilege Applies Regardless of Public Dissemination.

III.    Plaintiff Fails to Plead Non-Conclusory Facts Supporting Actual Malice, Confirming a Rule 11(b)(3) Violation

    A.  The SAC Contains Only Conclusory Labels, Not Plausible Allegations of Actual Malice.

    B.  Plaintiff's Investigation Does Not Cure Absence of Plausible Allegations.

    C.  The Timeline Proves, Rather Than Refutes, Rule 11 Violation.

IV.    The Record Establishes an Improper Purpose Under Rule 11(b)(1)

    A.  Hasty Filing, Reactive Amendment, and Failure to Investigate.

    B.  Coordinated Civil and Disciplinary Filings Demonstrate Harassment and Retaliatory Purpose.

    C.  The Bar's Deferral Letter Confirms the Coordinated Strategy and Vindicates Rule 11 Sanctions.

V.    Plaintiff's Collateral Attacks and Reliance on Non-Operative Draft Materials Do Not Cure Rule 11 Violations

    A.  Citation Errors in Draft Materials Are Irrelevant to Rule 11 Analysis.

    B.  Draft Safe-Harbor Materials Are Not Operative Filings.

    C.  Plaintiff's Strategy Confirms Rule 11 Violation.

VI.    Sanctions Are Required to Deter Abuse and Protect Protected Petitioning Activity

**Conclusion**

# TABLE OF AUTHORITIES

Cases

Supreme Court of the United States

- *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)

- *Garrison v. State of Louisiana*, 379 U.S. 64 (1964)

- *St. Amant v. Thompson*, 390 U.S. 727 (1968)

- *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986)

United States Court of Appeals for the Second Circuit

- *Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015)

- *Karedes v. Ackerley Group, Inc.,* 423 F.3d 107 (2d Cir. 2005)
- *Storey v. Cello Holdings, L.L.C.,* 347 F.3d 370 (2d Cir. 2003)
- *Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010)
- *Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992)
- *Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494 (2d Cir. 2009)
- *Tacopina v. O'Keeffe*, 645 F. App'x 7 (2d Cir. 2016)
- *BYD Co. Ltd. v. VICE Media LLC*, 2022 WL 598973 (2d Cir. Mar. 1, 2022)

United States District Courts

- *Officemax Inc. v. Cinotti*, 966 F. Supp. 2d 74 (E.D.N.Y. 2013)
- *Styleline Studios Int'l Ltd. v. Litvack*, No. 24-CV-01192 (OEM) (JMW), 2025 WL 2092288 (E.D.N.Y. July 25, 2025).
- *Michelo v. Nat'l Collegiate Student Loan Tr.* 2007-2, 419 F. Supp. 3d 668 (S.D.N.Y. 2019)
- *Grayson v. Ressler & Ressler*, 2018 WL 3611951 (S.D.N.Y. July 27, 2018)
- *Feist v. Paxfire, Inc.,* 2017 WL 177652 (S.D.N.Y. Jan. 17, 2017)
- *Giuffre v. Maxwell*, 2017 WL 1536009 (S.D.N.Y. Apr. 27, 2017)
- *Graham v. UMG Recordings Inc.,* No. 25-CV-0399 (JAV), 2025 U.S. Dist. LEXIS 200606 (S.D.N.Y. Oct. 9, 2025)
- *Moraes v. White*, 571 F. Supp. 3d 77 (S.D.N.Y. 2021)
- *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810 (S.D.N.Y. 2021)
- *In re Australia & New Zealand Banking Group Ltd. Secs. Litig.*, 712 F. Supp. 2d 255 (S.D.N.Y. 2010)

New York State Courts

- *Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015)
- *Bisogno v. Borsa*, 101 A.D.3d 780 (2d Dep't 2012)
- *Chutko v. Ben-Ami*, 150 A.D.3d 582 (1st Dep't 2017)
- *Suozzi v. Parente*, 202 A.D.2d 94 (1st Dep't 1994)
- *Khan v. New York Times Co.,* 269 A.D.2d 74 (1st Dep't 2000)

Statutes and Rules

- Federal Rule of Civil Procedure 11.

## PRELIMINARY STATEMENT

Plaintiff's opposition confirms—rather than cures—the Rule 11 violations identified in Defendants' opening memorandum. Instead of addressing the objective defects in the Second Amended Complaint ("SAC"), Plaintiff attempts to recast this motion as an improper substitute for a Rule 12(b)(6) challenge and diverts attention to collateral grievances. That effort fails.

The sanctions motion rests on a straightforward proposition: that Plaintiff's defamation theory targets pre-litigation–protected advocacy, is legally foreclosed by settled privilege doctrine, lacks evidentiary support for actual malice, and has been maintained for an improper purpose notwithstanding clear safe-harbor notice. Plaintiff's opposition never meaningfully disputes those points. Instead, it argues that motive, tone, or discovery needs should override absolute and qualified privilege, and that Rule 11 should be ignored so long as a motion to dismiss is pending. That is not the law.

Rule 11 exists to deter precisely this kind of litigation abuse: the use of defamation claims to punish and chill protected petitioning activity and attorney advocacy. Plaintiff was given the opportunity to withdraw or correct his pleading and affirmatively refused. Sanctions are therefore warranted.

## ARGUMENT

### I. RULE 11 IS A PROPER AND NECESSARY VEHICLE WHERE A PARTY PERSISTS IN OBJECTIVELY UNREASONABLE CLAIMS AFTER SAFE-HARBOR NOTICE

Plaintiff's threshold argument—that Defendants' Rule 11 motion is improper because a Rule 12(b)(6) motion is pending—misstates both the purpose and scope of Rule 11. A motion to dismiss tests the sufficiency of a pleading; Rule 11 addresses whether counsel had an objectively reasonable basis to file and to continue advocating legal and factual contentions.

The Second Circuit has made clear that sanctions are appropriate where a party persists in advancing claims that are legally foreclosed or factually unsupported after receiving notice. The existence of a parallel merits motion does not insulate sanctionable conduct. Here, Defendants served a detailed safe-harbor letter identifying the precise legal bars and evidentiary deficiencies in the SAC. Plaintiff chose not to withdraw or amend. That decision—not the filing of a Rule 12 motion—is what triggers Rule 11 liability.

///
///
///

4

II.    **PLAINTIFF'S DEFAMATION THEORY TARGETS PRE-LITIGATION–PROTECTED ADVOCACY AND IS LEGALLY FORECLOSED**

At the core of the SAC is a defamation theory aimed at statements made in connection with actual or anticipated litigation, including attorney communications and litigation-related advocacy. New York's litigation privilege is well settled. Statements made in the course of a judicial or quasi-judicial proceeding are absolutely privileged, regardless of motive, so long as they are material and pertinent to the issues to be resolved. *See Officemax Inc. v. Cinotti*, 966 F. Supp. 2d 74, 79 (E.D.N.Y. 2013) (citing *Bisogno v. Borsa*, 101 A.D.3d 780, 781 (2d Dep't 2012)). This absolute privilege extends beyond statements made in pleadings or in open court and applies equally to statements made in letters between attorneys and parties, as well as during settlement communications. *Cinotti*, 966 F. Supp. 2d at 79; *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 692 (S.D.N.Y. 2019); *Grayson v. Ressler & Ressler*, No. 15 Civ. 8740 (ER), 2018 WL 3611951, at *7 (S.D.N.Y. July 27, 2018).

Closely related principles govern statements made by attorneys prior to the commencement of litigation. The New York Court of Appeals has squarely held that "statements made by attorneys prior to the commencement of litigation are privileged. We hold that such statements are protected by a qualified privilege," and that where such statements are "pertinent to a good faith anticipated litigation, no cause of action for defamation can be based on those statements." *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 715, 720 (2015). The Court explained that the policy rationale supporting absolute privilege once litigation has begun applies with equal force at the pre-litigation stage, because attorneys must be free to investigate, prepare, and pursue claims without fear of retaliatory defamation suits. Accordingly, courts do not apply a generalized malice standard to pre-litigation attorney communications.

Federal courts applying *Front* have consistently enforced this framework. Pre-litigation statements are protected where the sender had a good-faith basis to anticipate litigation and the statements were pertinent to that anticipated litigation, even where the communications were directed to non-lawyers or disseminated outside the courtroom. *See Styleline Studios Int'l Ltd. v. Litvack,* No. 24-CV-01192 (OEM) (JMW), 2025 WL 2092288, at *13 (E.D.N.Y. July 25, 2025); *Feist v. Paxfire, Inc.*, No. 11 Civ. 5436 (LGS), 2017 WL 177652, at *5 (S.D.N.Y. Jan. 17, 2017); *Tacopina v. O'Keeffe*, 645 F. App'x 7, 8 (2d Cir. 2016).

By contrast, courts have recognized that the privilege may be forfeited only in narrow circumstances—such as where statements are not pertinent to anticipated litigation or are used as

a vehicle for harassment, intimidation, or knowingly false assertions—standards Plaintiff does not and cannot satisfy here. *See Giuffre v. Maxwell*, No. 15 Civ. 7433 (RWS), 2017 WL 1536009, at *8 (S.D.N.Y. Apr. 27, 2017); *Moraes v. White*, 571 F. Supp. 3d 77, 101 (S.D.N.Y. 2021).

A.  Plaintiff Conflates "Public" with "Non-Privileged"—Graham Forecloses This Argument.

Plaintiff's central error is conflating "public" with "non-privileged." Under Front and subsequent federal precedent, statements made in anticipation of litigation are qualifiedly privileged regardless of whether they are disseminated publicly or privately. The privilege applies based on context and purpose (good-faith anticipated litigation) and pertinency, not on the forum or audience. Public statements made in furtherance of anticipated litigation remain protected.

This principle is underscored by a recent controlling authority from this District. In *Graham v. UMG Recordings Inc.*, No. 25-CV-0399 (JAV), 2025 U.S. Dist. LEXIS 200606 (S.D.N.Y. Oct. 9, 2025), the court held that statements made on social media and in informal public forums—even explicit allegations of criminal conduct—are protected opinion were made in the context of a heated public dispute. Graham is directly on point and dispositive of Plaintiff's theory.

In *Graham*, the plaintiff alleged defamation based on lyrics in a rap "diss track" and accompanying social media posts accusing him of pedophilia—allegations far more severe than those at issue here.*Id.*at *10-11. The court held that such statements, though publicly disseminated to millions, were protected opinion because of the forum and context in which they were made.*Id.*at *15-25. Specifically, the court emphasized:

> *"Diss tracks are much more akin to forums like YouTube and X, which encourage a freewheeling, anything-goes writing style, than journalistic reporting...The average listener is not under the impression that a diss track is the product of a thoughtful or disinterested investigation, conveying to the public fact-checked verifiable content."*

The court further held that statements made in "public debate, heated labor dispute, or other circumstances in which an audience may anticipate the use of epithets, fiery rhetoric or hyperbole" are protected opinion.*Id.*at *15-16 (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 294 (1986)). The *Graham* court explained that "the culture of Internet communications... has been characterized as encouraging a freewheeling, anything-goes writing style," and that social media posts "convey a strong signal to a reasonable reader" that statements are opinion, not fact.*Id.*at *14-15.

Here, Dixon's Instagram posts and public statements were made in precisely the context Graham recognized as protected: an escalating public dispute over alleged exploitation, copyright

issues, and contractual non-payment. Like the rap battle in *Graham*, the Dixon-Cartagena feud involved "progressively caustic, inflammatory insults and accusations" in which "both participants exchanged" heated rhetoric. *Id.* at *18. This is precisely the type of "heated public feud" in which "an audience may anticipate the use of epithets, fiery rhetoric or hyperbole," *Id.* rather than factual assertions.

If allegations of pedophilia made via social media and music recordings are protected opinion under *Graham*, then a fortiori, Dixon's statements about copyright disputes and contractual non-payment are protected. The First Amendment does not permit celebrity plaintiffs to silence advocacy and public discourse merely because it is disseminated publicly rather than privately.

B.  <u>The Reasonable Listener Standard Defeats Plaintiff's Subjective Interpretation</u>.

Moreover, Graham rejected the identical argument Plaintiff advances here: that subjective interpretations by some listeners render statements actionable. The Graham court held that some readers may infer a defamatory meaning from a statement, but that does not necessarily render the inference reasonable under the circumstances:

> *"In a world in which billions of people are active online, support for almost any proposition, no matter how farfetched, fantastical or unreasonable, can be found with little effort in any number of comment sections."*

The court emphasized that the dispositive inquiry is "whether a reasonable listener could have concluded that the statements were conveying facts," not whether some individuals subjectively interpreted them as fact. *Id.* (emphasis added). Courts make that determination "by looking at the full context and surrounding circumstances of the challenged communication." *Id.*

Plaintiff's reliance on his own characterization of Dixon's statements—and on selective social media comments—thus fails as a matter of law. The "reasonable listener" standard governs, and under it, statements made in the context of a heated public dispute over alleged contractual wrongdoing are protected as opinion and advocacy.

C.  <u>Front Privilege Applies Regardless of Public Dissemination</u>.

Plaintiff's attempt to distinguish between pre-litigation attorney correspondence and public social media posts fails because both are protected if made in anticipation of litigation and pertinent to good-faith claims. The fact that statements were made via Instagram or in interviews does not remove them from the privilege's scope where, as here, they were made in furtherance of contemplated litigation and supported by objective indicia of good faith.

Plaintiff's opposition does not dispute that the challenged statements were made in a litigation context or in anticipation of litigation. Instead, Plaintiff argues that alleged animus, aggressive language, or purported bad faith should defeat the privilege. That contention is squarely contrary to settled New York law. The privilege for both litigation and pre-litigation attorney communications is not vitiated by allegations of motive or tone and is lost only where the plaintiff can show that the statements were not pertinent to a good-faith anticipated litigation. Courts applying this standard routinely dismiss defamation and related tort claims against attorneys where, as here, the communications at issue were made in furtherance of contemplated litigation and supported by objective indicia of good faith. See *Front*, 24 N.Y.3d at 715; *Chutko v. Ben-Ami*, 150 A.D.3d 582, 582-83 (1st Dep't 2017).

The combination of absolute litigation privilege, qualified pre-litigation privilege under *Front*, and the First Amendment protections recognized in Graham foreclose Plaintiff's defamation theory as a matter of law. Continuing to press this claim after safe-harbor notice violates Rule 11(b)(2).

III.    **PLAINTIFF FAILS TO PLEAD NON-CONCLUSORY FACTS SUPPORTING ACTUAL MALICE, CONFIRMING A RULE 11(B)(3) VIOLATION**
and ultimately prove actual malice—that is, that Defendants made the challenged statements with knowledge of their falsity or with reckless disregard for their truth. New *York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Courts impose this heightened requirement precisely to protect core free-speech interests and to prevent defamation claims from being used to chill protected expression. See *Suozzi v. Parente*, 202 A.D.2d 94, 101-02 (1st Dep't 1994).

The actual-malice standard is subjective, not objective. Khan *v. New York Times Co.*, 269 A.D.2d 74, 76 (1st Dep't 2000). Reckless disregard for the truth requires far more than a departure from reasonably prudent conduct; it exists only where a defendant acted with a "high degree of awareness of [the] probable falsity" of the statement or "in fact entertained serious doubts as to the truth" of the publication. Garrison *v. State of La.*, 379 U.S. 64, 74 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Khan*, 269 A.D.2d at 76-77. As courts in this District have emphasized, allegations of actual malice must therefore permit the conclusion that the defendant subjectively doubted the truth of the statement at the time it was made. *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 822 (S.D.N.Y. 2021), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022); *see also Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015).

///

A.  <u>The SAC Contains Only Conclusory Labels, Not Plausible Allegations of Actual Malice</u>.

The SAC does not come close to satisfying that standard at the pleading stage. Rather than alleging facts showing that Defendants subjectively doubted the truth of their statements, the SAC relies on labels, conjecture, and Plaintiff's own denials. That is legally insufficient. Allegations of reckless disregard must demonstrate a high degree of awareness of probable falsity or facts showing that the defendant actually entertained serious doubts as to the truth of the statements at issue. Khan, 269 A.D.2d at 76-77; *Garrison*, 379 U.S. at 74; *St. Amant*, 390 U.S. at 731.

This deficiency is underscored by *Graham*, where this District recently confronted nearly identical allegations. In *Graham*, the plaintiff alleged that the defendant "understood" the allegations to be false, published them with "intent to harm," and did so to achieve commercial gain. 2025 U.S. Dist. LEXIS 200606, at *2, *13. The court held that these allegations amounted to "threadbare recitals of the elements" and failed to state a claim because they contained only conclusory labels rather than facts showing the defendant "subjectively doubted the truth" of the statements. *Id.* at *11-13, *32-33.

The Graham court emphasized that "allegations concerning a defendant's knowledge or state of mind" must be supported by factual allegations that, if true, would permit a plausible inference of actual malice—not merely labels such as "knew," "intended," or "recklessly disregarded." *Id.* at *32 (citing *Iqbal*, 556 U.S. at 678). The SAC here suffers from the identical deficiency.

B.  <u>Plaintiff's Investigation Does Not Cure Absence of Plausible Allegations</u>.

Even accepting Plaintiff's factual assertions about his investigation, the standards for Rule 11(b)(3) require that allegations have evidentiary support, not merely that counsel conducted some investigation. An investigation that yields inconclusive or contradictory results does not cure failure to plead nonconclusory facts. The SAC's reliance on he-said/she-said denials and unverified family[1] hearsay does not meet the pleading standard for actual malice by a public figure, regardless of investigation effort.

---

[1] Defendants believe that the statement attributed to Mr. Dixon's brother may have been obtained improperly. Mr. Dixon's brother is under supervised care due to mental disability. Defendants are prepared to provide further information to the Court if requested.

The question is not whether counsel investigated, but whether the pleading itself contains nonconclusory factual allegations showing that Defendants subjectively doubted their statements' truth. *Opposition* at 9-10. It does not.

Plaintiff's opposition asserts, in conclusory fashion, that counsel conducted an "investigation," but it identifies no concrete facts demonstrating that Defendants knew their statements were false or acted with serious doubts as to their truth. This omission is fatal. The actual-malice showing must be made with "convincing clarity," or by "clear and convincing proof," not by speculation or post-hoc discovery fishing. *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) (citing Philadelphia *Newspapers, Inc. v. Hepps*, 475 U.S. 767, 773 (1986)).

Rule 11 does not permit a public-figure plaintiff to plead actual malice conclusorily and then seek discovery in the hope of uncovering supporting evidence. The complete absence of factual allegations showing subjective falsity—particularly in light of Defendants' documented reliance on corroborated information—renders the SAC objectively unreasonable and confirms a violation of Rule 11. Maintaining such allegations after safe-harbor notice violates Rule 11(b)(3).

C.  The Timeline Proves, Rather Than Refutes, Rule 11 Violation.

Plaintiff's argument about the timeline actually proves the Rule 11 violation. The fact that Cartagena maintained identical allegations in his SAC (July 21, 2025) AFTER reviewing Dixon's RICO complaint (June 19, 2025) with its documentary evidence and corroboration demonstrates objective unreasonableness under Rule 11(b)(3).

A reasonable attorney reviewing a federal complaint supported by recordings, witness statements, and photographs would do one of three things: (1) withdraw the defamation allegations as factually contradicted; (2) amend to address the corroboration; or (3) refrain from filing altogether. Cartagena did none of these. Instead, he maintained allegations of falsity despite objective evidence that Defendants' statements were consistent with corroborated federal allegations.

This decision—to proceed with a defamation claim premised on falsity after encountering a federal complaint with documentary corroboration of the challenged statements—confirms the Rule 11(b)(3) violation. The allegations lack evidentiary support, not merely at the pleading stage, but objectively in light of the corroborating record Plaintiff's own counsel reviewed before filing the SAC.

///

10

IV.    **THE RECORD SUPPORTS AN IMPROPER PURPOSE UNDER RULE 11(b)(1)**

A. <u>Hasty Filing, Reactive Amendment, and Failure to Investigate</u>.

Plaintiff's timeline argument actually proves improper purpose and Rule 11 violation. The evidence shows a pattern of rushed filing, careless pleading, and reactive amendment:

First, Cartagena filed his Original Complaint on April 29, 2025, the very day Dixon informed Cartagena's counsel that Dixon intended to file his own complaint. Rather than demonstrating a good-faith investigation, this hasty filing shows that Cartagena sought a litigation advantage by being the first to file.

Second, the Original Complaint's complete omission of actual malice allegations—the central predicate for a defamation claim against a public figure—evidences that Cartagena did not conduct a reasonable pre-filing investigation as required by Rule 11(b)(3). A reasonably investigated complaint would include the statutory elements of the claim. The omission demonstrates Cartagena rushed to file without a proper inquiry, violating Rule 11's requirement of reasonable investigation.

Third, after reviewing Dixon's June 19, 2025, RICO complaint, which contained documentary evidence (recordings, witness statements, photographs), Cartagena waited nearly a month before filing the SAC on July 21, 2025. Rather than amend to address the corroborating evidence, Cartagena simply sprinkled the words "actual malice" throughout the document and maintained identical factual allegations to his Original Complaint. This reactive amendment pattern—rushing to file without investigation, then amending after receiving adverse evidence—demonstrates improper purpose: to file first and overcome defenses as they emerge, rather than to vindicate legitimate rights based on pre-filing investigation.

Rule 11 exists to prevent precisely this kind of litigation abuse: filing hastily to achieve tactical advantage, omitting critical elements, investigating reactively after filing, and maintaining allegations despite contradictory evidence. Plaintiff's timeline proves, rather than refutes, improper purpose under Rule 11(b)(1).

B. <u>Coordinated Civil and Disciplinary Filings Demonstrate Harassment and Retaliatory Purpose</u>.

The improper purpose is further evidenced—and significantly amplified—by the coordinated campaign of civil and disciplinary filings using identical allegations. This pattern demonstrates that the hasty April 29 filing was not an isolated decision to stop harassment, but

rather the first salvo in a multi-forum attack designed to suppress Defendants' litigation by simultaneously threatening both the party (Dixon) and his counsel (Blackburn).

Cartagena filed his Original Complaint on April 29, 2025. Simultaneously, through his counsel, a Bar complaint was filed against Blackburn (May 2025) using identical allegations. After Dixon filed his RICO complaint (June 19), Cartagena maintained identical allegations in his SAC (July 21)—despite the RICO's documentary corroboration. This pattern shows coordination: suppress Defendants' litigation through dual proceedings targeting both the party (Dixon—civil) and counsel (Blackburn—discipline).

This coordinated strategy demonstrates improper purpose. By filing simultaneous civil and disciplinary complaints alleging the same defamatory conduct, Plaintiff deployed a multi-forum attack designed to force Defendants to defend both litigation and professional standing simultaneously.

The message to Blackburn is unmistakable: abandon your representation of Dixon or face professional sanctions. Such tactics—using the courts as a weapon to suppress adverse litigation by collaterally attacking opposing counsel—exemplify the improper purpose that Rule 11 prohibits. *Sassower v. Field*, 973 F.2d 75, 79-80 (2d Cir. 1992) (imposing sanctions where litigation was a vehicle for personal vendetta and designed to intimidate); *Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494, 496 (2d Cir. 2009) (sanctions for litigation designed to harass and burden adversaries).

Notably, Plaintiff's Opposition is entirely silent on this coordinated-filings argument. They provide no explanation for: (1) why identical allegations appear in both civil and disciplinary forums; (2) why Blackburn (as an individual and through his law firm) was targeted for discipline; or (3) what legitimate litigation purpose is served by duplicating allegations across civil court and the Bar. This silence is itself dispositive evidence that Plaintiff cannot defend the filing strategy under Rule 11 scrutiny. When a party cannot articulate a legitimate purpose for coordinated multi-forum litigation, the courts properly infer an improper purpose.

C.  The Bar's Deferral Letter Confirms the Coordinated Strategy and Vindicates Rule 11 Sanctions.

On December 23, 2025—five days after Plaintiff filed his Opposition—the New York State Attorney Grievance Committee issued a letter to Plaintiff regarding his bar complaint against Blackburn (Docket No. 2025.2693). *See* **Blackburn Exhibit A**. (Dec. 23, 2025, Letter from Jorge

Dopico, Chief Attorney). The letter confirms everything Defendants alleged about the coordinated, duplicative, and improper nature of this litigation strategy.

First, the letter confirms the existence and substance of the bar complaint that Plaintiff claimed Defendants could not prove. The Grievance Committee states: "you alleged, among other things, that Tyrone Blackburn made extortionate threats against you in the context of a civil matter." *Id.* This is precisely what Defendants alleged in their opening memorandum and what Plaintiff denied in his Opposition.

Second, and more importantly, the Bar itself recognizes that the civil and disciplinary complaints are "substantially similar":

> *"As you know, there is pending litigation concerning allegations which are substantially similar to the material allegations of professional misconduct you have alleged here. Specifically, you alleged, among other things, that Tyrone Blackburn made extortionate threats against you in the context of a civil matter."*

The Bar's characterization directly contradicts Plaintiff's assertion that the two proceedings serve different purposes. The Bar recognized what is obvious: this is a coordinated attack using identical allegations in multiple forums.

Third, the Bar is deferring investigation precisely because of the pending civil litigation: "Therefore, your claims should be reviewed, in the first instance, by the court handling your matter." *Id.* The Bar—an independent disciplinary body with no stake in this litigation—has determined that Plaintiff's strategy of pursuing parallel proceedings is inappropriate and that the civil court should first resolve these allegations. This vindication of Defendants' position is dispositive.

The Bar's determination to defer demonstrates several critical points supporting Rule 11 sanctions:

1. Independent Recognition of Coordination: An outside entity with expertise in attorney discipline independently recognized that Plaintiff is pursuing substantially similar allegations in multiple forums.

2. Confirmation of Improper Forum Shopping: The Bar's decision to defer reflects its institutional judgment that pursuing these claims simultaneously in civil court and disciplinary proceedings is improper—precisely the "coordinated campaign" Defendants identified.

3. <u>Validation of Rule 11 Arguments</u>: The Bar's letter validates Defendants' core argument: that Plaintiff weaponized both the civil litigation and disciplinary process to harass and suppress protected advocacy.

4. <u>Plaintiff's Silence Now Explained</u>: Plaintiff's Opposition was entirely silent on the coordinated bar complaint argument. That silence is now explained—Plaintiff knew or should have known that the Bar was evaluating the duplicative nature of his strategy and that disclosure would undermine his position.

The timing is also significant. Plaintiff filed his Opposition on December 18, 2025, and the Bar issued its deferral letter on December 23, 2025. This suggests that the Bar reached its conclusion contemporaneously with this Court's evaluation of the Rule 11 motion—and reached the same conclusion: these allegations belong in one forum, not multiple, and pursuing them simultaneously evidences an improper purpose.

Courts impose sanctions under Rule 11(b)(1) precisely to deter this type of multi-forum harassment. *Sassower*, 973 F.2d at 79-80; *Ginther*, 350 F. App'x at 496. Here, even the Bar—which has independent authority to investigate attorney misconduct—has determined that Plaintiff's duplicative strategy is inappropriate. That independent determination strongly supports the conclusion that Plaintiff's conduct violates Rule 11 and warrants sanctions.

The circumstances of this action therefore demonstrate the core improper purpose Rule 11 prohibits: to harass Defendants and chill protected petitioning activity. Plaintiff's attempt to frame this case as ordinary reputational litigation ignores the objective reality: suing over privileged litigation advocacy imposes cost and pressure precisely because the claims are meritless. Rule 11 forbids using the courts as a tactical weapon to punish adversaries for invoking legal rights.

V. **PLAINTIFF'S COLLATERAL ATTACKS AND RELIANCE ON NON-OPERATIVE DRAFT MATERIALS DO NOT CURE RULE 11 VIOLATIONS**

Plaintiff's Opposition does not address the Rule 11 violations identified in Defendants' motion and instead relies on collateral attacks that do not cure the legal and factual deficiencies of the Second Amended Complaint.

A. <u>Citation Errors in Draft Materials Are Irrelevant to Rule 11 Analysis</u>.

Plaintiff devotes substantial space to citation errors in Defendants' draft safe-harbor materials and early motion papers—all of which were identified, corrected, and explained to the Court. ECF 54 (filing corrected memorandum); ECF 58 (Reply Memorandum and Affidavit).

These cured errors have no bearing on the Rule 11 analysis, which turns on whether the SAC itself is objectively unreasonable under Federal Rules of Civil Procedure 11(b)(1)-(3).

Plaintiff's focus on procedural distractions rather than substantive defenses confirms the absence of any viable response to the privilege bars and actual malice deficiencies that render this action sanctionable. The Opposition dedicates pages to discussing citation formatting while offering no substantive rebuttal to: (1) the absolute and qualified privilege that bars the defamation claims; (2) the complete absence of non-conclusory actual malice allegations; or (3) the improper purpose demonstrated by coordinated civil and disciplinary filings.

This diversionary tactic is telling. When a party cannot defend the merits of its pleading, it attacks peripheral matters. That is precisely what Plaintiff has done here—and it underscores that the SAC cannot withstand Rule 11 scrutiny.

B. Draft Safe-Harbor Materials Are Not Operative Filings.

Plaintiff's reliance on a draft sanctions memorandum of law provided during the safe-harbor period is legally irrelevant. The draft was provided solely as part of Defendants' Rule 11(c)(2) 21-day safe-harbor notice to identify the conduct alleged to violate Rule 11 and the grounds for sanctions. Fed. R. Civ. P. 11(c)(2). It was never filed with the Court and never operated as an operative submission. The only operative memorandum is the one filed on the docket on December 4, 2025.

Rule 11(c)(2) requires service of the motion on the opposing party to permit withdrawal or correction—it does not require that the safe-harbor draft be in final, publication-ready form. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy Sauce Factory, Ltd.*, 682 F.3d 170, 175-76 (2d Cir. 2012). The purpose is notice of the grounds for sanctions, which Plaintiff indisputably received. Plaintiff's attempt to manufacture an issue from a draft document provided during the safe-harbor period is both procedurally improper and substantively meritless.

C. Plaintiff's Strategy Confirms Rule 11 Violation.

Plaintiff's Opposition strategy—attacking cured citation errors rather than defending the SAC's legal and factual foundations—actually confirms the Rule 11 violation. A party with a viable defense to a sanctions motion addresses the substantive deficiencies: the privilege bar, the actual malice pleading standard, and the evidentiary support. Plaintiff does none of this. Instead, the Opposition pivots to tangential procedural complaints about draft materials and corrected citations.

This evasion demonstrates that Plaintiff cannot defend the SAC under Rule 11 because the claims are objectively unreasonable: they target absolutely privileged litigation advocacy, rely on conclusory actual malice allegations, and were filed for the improper purpose of chilling Defendants' exercise of their constitutional right to petition. Plaintiff's continued focus on safe-harbor drafts and cured issues provides no basis to deny sanctions and underscores the need for Rule 11 relief to deter this abuse of process.

## VI.    SANCTIONS ARE REQUIRED TO DETER ABUSE AND PROTECT PROTECTED PETITIONING ACTIVITY

The Second Circuit has emphasized that Rule 11 sanctions serve a critical deterrent and coercive function, empowering district courts to enforce ethical standards while remaining careful not to chill legitimate or zealous advocacy. *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010). At the same time, courts must ensure that any[sanctions]decision is made with restraint, calibrating relief to deter abusive litigation practices without discouraging good-faith claims. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003).

That balance is squarely implicated here. The deterrent purpose of Rule 11 is especially acute where, as in this case, a celebrity plaintiff deploys a defamation action to target pre-litigation–protected advocacy, including attorney communications and litigation-related statements, with the predictable effect that the cost and disruption of such suits may deter others from engaging in good-faith petitioning activity. Where litigation is used not to vindicate legitimate rights but to suppress protected speech or advocacy, sanctions are not only permissible but necessary to protect the integrity of the judicial process. *In re Australia & New Zealand Banking Group Ltd. Secs. Litig.*, 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010).

Absent sanctions, the message would be that litigants with public stature or substantial resources may weaponize defamation law to punish adversaries and chill constitutionally protected advocacy, even where liability is foreclosed as a matter of law. Rule 11 does not permit that result. Properly applied with restraint, sanctions here serve their intended purpose: deterring abusive litigation conduct while preserving the space for vigorous, good-faith advocacy.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' opening memorandum, Defendants respectfully request that the Court grant their motion for sanctions under Federal Rule of Civil Procedure 11, dismiss the Second Amended Complaint as a sanction, award Defendants

their reasonable attorneys' fees and costs incurred in responding to this baseless action and prosecuting this motion, and grant such other and further relief as the Court deems just and proper.

Dated: December 26, 2025
Brooklyn, New York

Respectfully submitted,

*/s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Telephone: (347) 342-7432
Email: tblackburn@tablackburnlaw.com