Q19LCARC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JOSEPH CARTAGENA,

                 Plaintiff,

          v.                          25 CV 3552 (JLR)

TERRANCE DIXON, *et al.*,

                 Defendants.          Conference
                                      (via Microsoft Teams)
------------------------------x


                                      New York, N.Y.
                                      January 9, 2026
                                      10:00 a.m.

Before:

                    HON. JENNIFER L. ROCHON,

                                      District Judge

                         APPEARANCES

TACOPINA SEIGEL & DeOREO P.C.
     Attorneys for Plaintiff
BY:  MATTHEW DEOREO
     -and-
REED SMITH LLP
BY:  JORDAN W. SIEV
     IAN M. TURETSKY

TYRONE BLACKBURN
     Attorney for Defendants

Q19LCARC

(Case called)

THE COURT:  Good morning, everyone.  Before we start, let me just place a few things on the record.  We are proceeding through video conference on Microsoft Teams for the convenience of the parties.  I have a listen-only line noticed on the docket for anyone who wishes to join.  I have on the line my deputy, my law clerk, and I also have a court reporter who is transcribing the proceedings.  As a reminder, no one other than court personnel may record, rebroadcast, or disseminate any of these proceedings.

Let's take appearances.  Who do I have here on behalf of the plaintiff?

MR. TURETSKY:  Good morning, your Honor.  Ian Turetsky from Reed Smith along with my colleague, Jordan Siev, and Matthew DeOreo from the Tacopina Seigel firm.

THE COURT:  Thank you.  And Mr. Turetsky, will you be taking the lead on our discussions here today?

MR. TURETSKY:  I will, your Honor.

THE COURT:  Thank you.

And who is here on behalf of the defendants?

MR. BLACKBURN:  Tyrone Blackburn.

THE COURT:  Good morning, Mr. Blackburn.

All right.  So, you have had a chance to meet and confer over the last couple of days.  Where are we in terms of outstanding issues on Plaintiff's discovery request for

Q19LCARC

production to Defendants, Mr. Turetsky?

MR. TURETSKY:  Yes, your Honor.  And thank you.

Despite our best efforts, your Honor, including two meet-and-confers with Mr. Blackburn, we have been unable to resolve two remaining disputes.  They should be easily resolvable, but to date we haven't been able to do so.  The first one is Defendants' refusal to produce evidence they claim that proves the truth of their defamatory statements.  And the second is --

THE COURT:  Which request is that?

MR. TURETSKY:  Those are 4 and 5.

THE COURT:  Four and 5.  OK.

MR. TURETSKY:  Yes.  And then the second issue is, there is an ongoing ambiguity about Defendants' responses and objections as to whether they pertain to all defendants, a single defendant, two of the three defendants.  And I will -- I could take those two in turn, your Honor, if that works for you.

THE COURT:  OK.  So before you do that, thank you for that update.  It sounds like the rest has been resolved in terms of the request for production, so I thank you both for engaging in that meet-and-confer and getting that consensually resolved.

So, why don't we start then with Request for Productions 4 and 5.  You said those are the two that are

Q19LCARC

outstanding?

MR. TURETSKY:  Correct, your Honor.

THE COURT:  OK.  So, Request for Production 4 looks to be statements, affidavits, videos, recordings, etc., concerning third parties, including those who corroborated various claims about different events.  And 5 is information concerning Plaintiff's purported violence, sexual activity, or misconduct including all the items that are listed there.

So why don't we start with you, Mr. Turetsky.  You can tell me what you believe the issue is.  Then I will hear from you, Mr. Blackburn, and we can go from there.

MR. TURETSKY:  Sure.  Thank you, your Honor.

So, these two requests really go to the crux of the defendants' defenses in this case.  As your Honor knows, this is a defamation case.  The defendants maintain in pleadings, in phone calls, etc., that their statements were truthful, they have evidence corroborating their statements, etc.  Requests number 4 and 5 really get at that evidence, that evidence showing that Mr. Blackburn or his -- and his counsel, or his client, have represented that they have.  Mr. Blackburn, however, in both 4 and 5 are refusing to produce documents -- actually, your Honor, sorry.  Let me back up for a second.

As you read, there is a general statement or a general request, and then we have specific illustrations of statements that were made saying, Oh, I have this document, or, there is a

Q19LCARC

recording, or, there was a video, or something like that. Those were illustrative. Mr. Blackburn, I understand his position to be that he won't produce a subset of those specific requests because the documents or the issue was referenced on a phone call between Mr. Blackburn and Ms. Moreira, who is Mr. Cartagena's counsel, in a recorded call. So he is saying, well, because that call was recorded, I am not going to produce anything that was referenced during those calls. So, for example -- and that applies to 4A, B, C, and D.

THE COURT: Well, let me pause you, Mr. Turetsky, for a moment. It may be more useful for me to hear straight from Mr. Blackburn about what his objection is to these requests. I understand your position about why they are relevant. They seem to me to be relevant. So instead of you capturing what his objection is, maybe it's better for me to hear straight from him.

MR. TURETSKY: Sure.

THE COURT: Mr. Blackburn, can you tell me your position on requests 4 and 5, please.

MR. BLACKBURN: Good morning, your Honor. Thank you for making the time today.

The reason why I am refusing to provide this -- I am actually uploading an emergency request on the docket right now to your Honor, asking for immediate relief because after we had our conference two days ago, you instructed them to turn over

Q19LCARC

the recordings, if they have any, in response to my discovery demands that they have not turned over anything for for 90 days. They did last night, and those recordings -- I will explain -- I am answering. I am just -- I am really hot. I am trying to bring it down so I can give you the answer as to why I am not giving -- I am not responding to this.

Erica Moreira is a Florida attorney and she was physically located in Florida when she spoke with me on those two dates. It is a felony in Florida to record someone without their consent. And the Florida Supreme Court -- and I have the decisions, which I will be uploading to the docket -- says that you cannot use or utilize any of those recordings that has been illegally obtained without the consent of the other party in any proceeding, and that would include this proceeding. And what she did was commit a crime. She committed a crime.

It's a -- the statute is, if you want to look at it, Florida Code 934-03, interception and disclosures of wires, orals, or electronic communications prohibited. And it runs down the gamut as to how what she did completely violated the statute. Completely violated it. And they knew this, hence why all three iterations of their complaints never cites to whom obtained the recordings, never cites to where the recordings were taken. And so they are trying to use something that was criminally obtained in a pleading, and now they want me to provide discovery responses to something that was

Q19LCARC

criminally obtained.  I just filed a criminal complaint against her yesterday, last night, after learning this.

MR. TURETSKY:  Your Honor --

THE COURT:  No, not yet.

So, Mr. Blackburn, there is a request for production for all documents and communications that you possess concerning Plaintiff's purported violence, sexual activity, or misconduct, including a recording of a 15-minute conversation with a young lady who was Fat Joe's girlfriend, etc., a recorded conversation between Dixon, Minor Doe 3, etc.  And there is a whole list of those things.  Those are relevant --

MR. BLACKBURN:  I gave that already.  I gave that, so I uploaded, like, 200-plus items.

THE COURT:  Stop.  Stop.  Stop talking for a minute.  Mr. Blackburn, just one moment.  Let me finish.  Let me finish.

Request for Production Number 5 seems to ask for directly relevant information to this case.  So, is there any objection that you have to producing the information in response to Request for Production Number 5?

MR. BLACKBURN:  Your Honor, no, because I already gave that.  And, you know, these are -- they are trying to be very slick because we went through this yesterday.  We went through every single one, and I agreed to give them almost everything.  And if you look at the questions that they asked in some of their requests for production, a lot of it relates to the

Q19LCARC

second complaint, the complaint that I filed on behalf of my client, which the Court stayed discovery on. But I gave them the evidence anyway. I gave it to them anyway. So --

THE COURT: Let me pause. So that's fine, Mr. Blackburn. So I have heard "no" for Request for Production Number 5. You have no objection. So you shall produce all non-privileged -- so you can keep any privileged information, if you have that -- make sure you do a privilege log -- all non-privileged responsive documents in your possession, custody, or control in response to Request Number 5.

Now let's look at Request Number 6 -- sorry, 4 is the other one. And do you have any objection to providing the information in Request Number 4?

MR. BLACKBURN: Your Honor, I gave them everything that I have. I gave them every single thing. I gave them all the recordings. I gave them all the photos. I gave them all the threats that my client received. I gave them everything. We went through this.

The thing is, they wrote -- they tried to conduct a deposition yesterday at a meet-and-confer. They were asking me subquestions -- I said, I am not answering anything that's not on the page in front of me. And that's what they were trying to do.

THE COURT: OK. All right. So then with respect to Request Number 4, you shall produce all non-privileged

Q19LCARC

responsive documents in your possession, custody, or control in response to Request for Production Number 4.

So that should take care of 4 and 5.

Mr. Turetsky, is there anything else with respect to Request for Production 4 and 5?

MR. TURETSKY:  No, your Honor.  I just want to make clear that the objections were -- that he made were to the specific subparts that we discussed.  And if he is going to agree to -- to produce everything, including in those -- including the recordings referenced in the subparts, then no, we don't have any further disputes regarding Number 4 and 5.

THE COURT:  He says he is going to produce them, and I have just ordered that they be produced as well, based on his agreement.

OK.  So then, what is your second issue?

MR. TURETSKY:  Our second issue is somewhat more broad than the first issue.  As your Honor may know from our initial letter, we served omnibus requests for production on three of the defendants; Mr. Blackburn, his firm, and his client, Mr. Dixon.  Only Mr. Dixon initially responded, and we never received responses or objections from Mr. Blackburn or his firm.

We have since received supplemental responses and objections that does purport to be on behalf of all three parties, however, some of the -- many of the responses only

Q19LCARC

refer to "defendant" in the singular, where it says, for example, "Defendant is not in possession of any documents that are responsive to the request." So we can't determine if the representation is for all the defendants, three of the defendants, two, one, who, and whatnot.

We asked Mr. Blackburn to clarify, and whether when he says "defendants" it's a typo, it's a mistake, it's really on behalf of all defendants. He says -- I will let him speak for himself on his objection, but I don't really understand the objection. All we want him to confirm is that the responses and objections apply to each of the defendants; if he says he is going to produce, that means all three defendants; if he says, I don't have anything, it's on all three defendants. It's sort of -- it shouldn't be an issue, but it is, your Honor.

THE COURT: OK. Thank you.

Mr. Blackburn, the responses that you provided, are they on behalf of all three defendants?

MR. BLACKBURN: Your Honor, I can't tell. Look how they wrote the questions. Like I explained to him yesterday, I said, If you want to give me a supplemental request and actually write the questions specific to the individual or to the person that you are targeting, I will be able to respond to them.

If you look at Number 1, I mean, all of them, they are

Q19LCARC

quoting things, and they don't provide the document that they are quoting as an exhibit so I can review it so I can know how to answer it.  And I said to him, I cannot write your demands and then answer your demands.  So, if you write them properly and you are specific with who you want to respond to this, I will provide you a response, and that was it.

THE COURT:  OK.  So, Mr. Blackburn, I am looking at the document request right now.  The plaintiff's first request to Defendants for the production of documents, Defendants are defined collectively as Dixon, Blackburn, and the Blackburn Law Firm.  And the requests for production define the word "you" in paragraph 17 to mean all three defendants.  And so each of these document requests are brought against all three defendants, as articulated in the document request.

And so, are your responses on behalf of all three defendants?  Because that has been what was requested.

MR. BLACKBURN:  Yes.  Everything I turned over is from everybody.

THE COURT:  OK.  So that is clarified, that the responses to the document requests capture all three defendants.

All right.  And if you reference "Defendant," it means all three defendants; is that correct, Mr. Blackburn?

MR. BLACKBURN:  Correct.

THE COURT:  OK.  All right.  Mr. Turetsky, anything

Q19LCARC

further on your second point?

MR. TURETSKY:  No.  And, again, your Honor, I think you just addressed it, but to be clear in my mind, when he -- I just want clarification that when the response says "Defendant does not have any responsive documents," that really means Defendants; you know, he worked with his client, his firm, and himself in order to determine that.

THE COURT:  Yes.  Mr. Blackburn has just represented -- correct, Mr. Blackburn -- that when you say "Defendant," you mean Defendants?

MR. BLACKBURN:  Correct.

THE COURT:  OK.  That's correct, he said.

MR. TURETSKY:  Then we have nothing else on that piece, your Honor.

THE COURT:  All right.  So those are the two issues that were remaining and that have now been resolved.  Anything further, Mr. Turetsky, on the first request for production of documents?

MR. TURETSKY:  Only, your Honor, I just wanted -- nothing on the first request, but, obviously, we dispute Mr. Blackburn's presentation on the recordings.  Our understanding is that they were lawfully recorded in New York, and, even if not, it's incredibly irrelevant to the requests at issue here.

Mr. Blackburn said he is going to make an application.

Q19LCARC

I just saw a dinger come through that says he may have already done so.  We will address that as is.  But for the record, your Honor, we don't think anything improper was actually accomplished there.  But other than that, we don't have anything for the Court at this time.

THE COURT:  All right.  I will deal with whatever I receive.  That's fine.

OK.  So now let's talk about when all this production is going to be made because we need to get everything done shortly, and that's why I got everyone on the call.

So, Mr. Turetsky, will your entire production be made by January 16, which is next Friday?

MR. TURETSKY:  Your Honor, we are certainly on track to have our productions done by then.

THE COURT:  OK.  So, Mr. Blackburn, can you also agree to have your productions done by January 16?

MR. BLACKBURN:  I have already uploaded everything that I have, your Honor, last night.  Everything that I have, I have already uploaded onto their server, and I gave them everything.

They have not turned over -- Mr. Turetsky wanted me to provide him with proof that I e-mailed them the subpoena for James Hunt, which is one of their witnesses that they identified in their Rule 26 disclosures, documents from him.  He claims that he is not representing James Hunt, but in Rule

Q19LCARC

26 disclosures, they have their firm listed as the contact for Mr. Hunt, so it's -- I sent it to them on August 25.  We are now in January.  They have turned over nothing, no medicals.  They have not produced nothing for Mr. Hunt.

THE COURT:  OK.  Let's pause for a moment then.  So I just want to make sure -- in answer to my first question, it sounds like you are agreeing that you will produce everything under these document requests by January 16.  In fact, you have already produced it, you say.  So January 16 shouldn't be a problem.  If you find something extra, make sure it's produced by January 16.  Plaintiff will do the same.  We will have all documents produced by the 16th, which gives you two more weeks to complete any other depositions, discovery, etc., before the fact deposition deadline.  So we are on track there.

Now the issue that you are raising, Mr. Blackburn.  I will ask you, Mr. Turetsky.  It came up at the last conference that we had that there were apparently, according to Mr. Blackburn, two subpoenas:  One on Hunt and one on --

MR. BLACKBURN:  I got the information from them regarding the recordings for Erica.  They said that she was in New York.  We will see if that's true.

THE COURT:  OK.  All right.  Just a minute, Mr. Blackburn.

Let me just ask, Mr. Turetsky, what's the status on the two subpoenas that Mr. Blackburn raised at the last

Q19LCARC

conference?

MR. TURETSKY:  Yes.  Thank you, your Honor.  We received two e-mails from Mr. Blackburn; one containing, I think, five or six subpoenas that Mr. Blackburn said that he would be serving shortly, or that he intended to serve at some point.  He never served them, as far as I know.  I was never served with it.  I asked Mr. Blackburn.  Mr. Blackburn represented that he has proof of service of those documents, and he has not provided it thus far.  You know, I am willing to work with him on that, but I have not -- I have not seen that proof of service that anything was actually served.

To the contrary, Mr. Blackburn said that he served a subpoena on UPS without informing us of that subpoena or the documents that UPS supposedly produced to him, in violation of the rules, and we -- if needed, we will seek appropriate relief.  We asked Mr. Blackburn if there were other entities or individuals that he served, to provide us prompt notice and any documents that were produced.  Haven't received anything yet.

Regarding Mr. Hunt, Mr. Blackburn is correct, we do not represent Mr. Hunt.  What we did do in our disclosures is we said that Mr. Blackburn could reach out to us for his contact information precisely because Mr. Blackburn and Mr. Hunt are involved in a criminal case at this time, and we didn't think it would be appropriate for us to disclose, you know, Mr. Hunt's private information given the ongoing criminal

Q19LCARC

proceeding. So we transmitted anything he sent to his --
Mr. Hunt's company, and we haven't heard anything about it
since that -- since that date and until the conference we had
earlier in the week.

So we are not really -- you know, we are willing to
work with Mr. Blackburn here. I know discovery is coming to a
close soon, and we are willing to work with him, but I don't
have a served subpoena on a client of mine that's not responded
to, and that's our position.

MR. BLACKBURN: Your Honor, that's not true.

THE COURT: Just a moment, Mr. Blackburn. I will let
you speak in one moment.

It sounds to me -- and I will resolve issues that were
brought to me. This one wasn't actually brought to me in any
formal sense. It was raised at the last conference, and the
parties did agree to talk about it over the last two days,
which I appreciate, but I don't have a great deal of
information on this. It sounds to me -- and I will hear from
you, Mr. Blackburn -- that you are most concerned about a Hunt
subpoena that you had received, some other information, but the
Hunt subpoena is the one that's outstanding.

What's your position on that?

MR. BLACKBURN: Two things. One, Ian was just being
dishonest. He said that he had not spoken to him or heard from
him since I e-mailed them this subpoena, which was on August 5,

Q19LCARC

2025 at 6:40 p.m.  I sent it to Joe Tacopina, Chad, Jordan, Ian.

THE COURT:  I understand, but if they don't represent Mr. Hunt, then the question is -- and I am not going to make anybody represent somebody if they don't represent them.  They forwarded it on to Mr. Hunt, so Mr. Hunt has to respond.  Go ahead.

MR. BLACKBURN:  So the point that I have a problem with is Ian said that he has not heard from or gotten any response or even communicated with Mr. Hunt, essentially, since he sent this.

On October 14, he did hear from Mr. Hunt because him and Mr. Hunt were colluding with the DA in Brooklyn to try to tank my October 15 grand jury testimony.  He did hear from Mr. Hunt.

THE COURT:  I am not going to -- both of you -- let's not get off on a tangent here.  I am simply asking -- you are seeking information on a subpoena to Mr. Hunt.  It has been forwarded to Mr. Hunt.  Mr. Turetsky and his firm and the other counsel do not represent Mr. Hunt, and so if you need relief on the subpoena that you gave to Mr. Hunt, you will need to move to compel against Mr. Hunt.  I don't know if he is otherwise represented, if he is appearing pro se.  Whatever it is, you will need to deal with that through him.

So what's your position on that?

Q19LCARC

MR. BLACKBURN:  That will be filed today.

THE COURT:  Filed what?  You are going --

MR. BLACKBURN:  A motion to compel.  I served them through the Rule 26.  The Rule 26 said to send it to them. They got it.  The email is here.  There's proof that they have it.  So now I am going to file a motion to compel Mr. Hunt to produce all these subpoenaed documents that I am asking for.

THE COURT:  All right.

MR. BLACKBURN:  They don't want to give his address, so -- he just said it.

MR. TURETSKY:  No, what I just -- let's back up a second.

What I said to your Honor was that I didn't hear anything about the subpoena from -- after we gave it to them. I never made a representation about communications.  But in any event, I am more than happy to try to find out who represents Mr. Hunt, if he is represented, and provide that contact information to Mr. Blackburn.

What I am not willing to do is give Mr. Blackburn a personal address, given the criminal proceedings.  And if -- you know, if that's what Mr. Blackburn would like, I am happy to start getting that in motion now, and hopefully -- it's 10:30 on a Friday.  Hopefully I can get that information to him as soon as possible.

THE COURT:  Mr. Blackburn, Mr. Turetsky is offering to

Q19LCARC

give you the name and contact information of Mr. Hunt's attorney, which you can then ask him or her to facilitate the production of documents responsive to the subpoena.  How is that?

MR. BLACKBURN:  If I don't get it by today, I will file my motion on Monday.

THE COURT:  OK.  But you realize --

MR. BLACKBURN:  This is not a game for me.  This is not a game for me, and they think this is a game.

THE COURT:  You have to stop talking when I am speaking, please.  And, I'm sorry, but I really need to make sure that the court reporter can take down things so that we are speaking one at a time.  And I also want to make sure that we are conducting this conference in the most efficient way.  So I don't want to go through too many tangents.

What I understand is that you have a subpoena out there that you want to be responded to, and Mr. Turetsky is going to give you, if he can get it, the contact information for the subpoena recipient's counsel.  Then you can talk to counsel and see if you can get that responded to.  If there is no agreement there, you can make whatever motion you need to make.  OK?

All right.  So, is there anything else, Mr. Turetsky, on the first request for production, which was the goal of this conference, or anything else we need to talk about here today?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Q19LCARC

MR. TURETSKY:  No, your Honor.  Thank you very much for your time.

THE COURT:  Sure.

Mr. Blackburn, anything else on that first request for production, or anything else we need to discuss today?

MR. BLACKBURN:  No.

THE COURT:  OK.  Great.  All right.  So you will have documents all produced by next week.  Then you can complete the rest of fact discovery in the next two weeks, and we will move on from then.

All right.  Everyone, I hope you have a pleasant weekend.  And court is adjourned.  Take care.

(Adjourned)