

# T. A. BLACKBURN LAW

TYRONE A. BLACKBURN

MEMBER OF
NY & NJ BAR

FEDERAL DISTRICT COURT MEMBERSHIP
EDNY, NDNY, SDNY & DNJ

FEDERAL APPELLATE COURT MEMBERSHIP
SECOND CIRCUIT

1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

January 19, 2026

VIA ECF
The Honorable Jennifer L. Rochon, USDJ
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

**Re:** *Joseph Cartagena v. Terrance Dixon, et al.,*
Case No. 1:25-cv-03552 (JLR)

Dear Judge Rochon:

    Defendants submit this reply to Plaintiff's January 13, 2026, opposition, which rests entirely on the uncorroborated and demonstrably unreliable declaration of Erica Moreira. For the reasons set forth below, Ms. Moreira's declaration should be disregarded, and Defendants' emergency application should be granted.

I. **MOREIRA'S DECLARATION LACKS CREDIBILITY AND FOUNDATION**

    Plaintiff's opposition asks this Court to accept, on blind faith, a bare declaration from Ms. Moreira asserting that she "was in New York" when she recorded Defendant Blackburn without his knowledge or consent. Moreira Decl. This self-serving assertion—offered only after being caught and facing criminal referral—is unsupported by any corroborating evidence and should be rejected.

    A. <u>Moreira Has Systematically Evaded Discovery and Ignored Federal Subpoenas</u>

    On August 21, 2025, Defendants served Ms. Moreira with a federal subpoena duces tecum pursuant to Rule 45, specifically designed to determine where she was located when she made the recordings at issue. *See*, Ex. 1 (Subpoena). The subpoena commanded production of: 1. Travel documents for 2025, including flight itineraries, boarding passes, hotel reservations, car rental receipts, and travel confirmations reflecting out-of-state or international movement; 2. All metadata associated with the recordings, including timestamps, audit trails, and IP logs and metadata embedded in image, audio, and video files (e.g., EXIF data, GPS tags); 3. All recordings in her possession of conversations with Mr. Blackburn; and 4. All communications with Florida State Bar authorities regarding her licensure and office address.

    The production deadline was September 10, 2025. The return date was October 5, 2025. As of today—January 19, 2026—Ms. Moreira has produced nothing. She has filed no objections. She has filed no motion to quash. She has provided no privilege log. She has offered no explanation. She has simply ignored a federal court order for over four months.





When confronted with this flagrant non-compliance, Ms. Moreira's counsel, Reed Brodsky of Gibson Dunn, did not produce the requested documents. Instead, he submitted a conclusory letter on January 14, 2026, claiming—without any supporting evidence—that Ms. Moreira has documentary evidence in the form of receipts that definitively proves she was in New York on the dates in question. *See* Ex. 2.

Where are these "receipts"? If they exist, why weren't they produced in response to the subpoena? Why weren't they attached to Ms. Moreira's declaration? The answer is obvious: either the receipts do not exist, or they contradict Ms. Moreira's claim that she was in New York. Defendants responded immediately, requesting that Plaintiff provide the promised evidence. *See* Ex. 2 (Jan. 14, 2026, Email). Defendants even offered a straightforward method of verification: Provide... her phone carrier. I will subpoena her cell tower data, and if... it is proven that she was not physically in Florida when she made those calls, I will make the necessary withdrawals. *Id.*

Erica Morieras's response? Silence. No phone carrier identified. No cell tower data. No receipts. No hotel confirmations. No flight records. No metadata. Nothing. *See* Ex. 3 (Jan. 19-20, 2026, Email Exchange). This is not how parties respond when they possess exculpatory evidence. This is how parties respond when they are hiding unfavorable facts.

B. <u>Adverse Inference Warranted from Subpoena Non-Compliance</u>

This District routinely draws adverse inferences when a party fails to produce requested documents. Here, the adverse inference is inescapable. Ms. Moreira was commanded by federal subpoena to produce travel documents, metadata, and GPS data that would definitively establish her location on April 23 and April 28, 2025—the dates of the recordings. She has refused for over four months. The only reasonable inference is that these documents would prove she was in Florida, not New York.

If Ms. Moreira were truly in New York on those dates, producing a single hotel receipt, MetroCard swipe, or credit card statement would instantly vindicate her position and expose Defendants' motion as frivolous. Her refusal to do so—despite a federal court order, despite Gibson Dunn's representation that such evidence exists, and despite the opportunity to file a sworn declaration—speaks volumes. The Court should draw the adverse inference that Ms. Moreira was physically located in Florida when she recorded Mr. Blackburn, making the recordings illegal under Florida's two-party consent statute.

II. **MOREIRA PROVIDED FALSE ADDRESSES TO TWO STATE BARS**

Ms. Moreira's credibility problems extend far beyond this litigation. She is licensed to practice law in both New York and Florida and is required by law to maintain accurate contact information with each state's bar association. Ms. Moreira has flagrantly violated these rules by providing false addresses to both bars.

A. <u>Florida Bar Address Is False</u>

According to the Florida Bar's public records, Ms. Moreira's registered office address is:

*Moreira Law, PLLC*
*169 E Flagler St*
*Miami, FL 33131-1210*

*See*, Ex. 4 (Florida Bar Member Profile).

On September 4, 2025, Defendants dispatched a process server to this address to serve Ms. Moreira with a subpoena. The process server, Claton Narvaez, declared under penalty of perjury:

> *"I spoke with an individual who identified themselves as the employee and they stated subject moved. At the address I observed a call/mail box listing another. The employees were two females around 25-35 with accents and stated they worked for Lemon Yellow and that the subject is the previous tenant."*

*See*, Ex. 5 (Affidavit of Non-Service, Sept. 5, 2025)

On September 16, 2025, Defendants sent a second process server, Bernie Gutierrez, to the same address. He declared under penalty of perjury:

> *"I spoke with an individual who identified themselves as the new tenant and they stated subject moved. Spoke to the tenant who has been there over eight years. The Law Firm of Erika Moreira Esquire moved out over eight years ago. She stated sometimes she still gets mail for her. Spoke to building manager downstairs. They confirm that firm moved out over eight years ago."*

*See*, Ex. 6 (Second Affidavit of Non-Service, Sept. 19, 2025) (emphasis added).

Two independent sworn declarations from professional process servers confirm that Ms. Moreira has not maintained an office at 169 E Flagler Street for over eight years, yet she continues to represent to the Florida Bar—and to this Court—that this is her business address. This is not an innocent oversight. This is intentional misrepresentation to a state regulatory authority.

B. <u>New York Bar Address Is Unverified and Likely False</u>

According to the New York State Unified Court System's Attorney Registration database, Ms. Moreira's business address is:

Moreira Law PLLC
43 W 43rd St Ste 333
New York, NY 10036-7424

*See*, Ex. 7 (NYS Attorney Online Services Record).

Defendants have been unable to verify the accuracy of this address. Given Ms. Moreira's demonstrated willingness to provide false addresses to the Florida Bar for nearly a decade, there is every reason to suspect that this New York address is similarly fictitious. Defendants requested that Ms. Moreira's counsel provide verifiable proof of her New York location during the April 2025 recordings—travel documents, hotel receipts, phone records, anything. They have refused.

C. Implications for Credibility

Ms. Moreira's systematic provision of false addresses to state bar associations over the course of at least eight years is directly relevant to the credibility of her declaration in this matter. If an attorney is willing to lie to state regulatory authorities—entities with the power to suspend or disbar her—about something as basic as her office address, why would this Court believe her uncorroborated assertion that she was in New York when she secretly recorded opposing counsel? The answer is simple: it should not.

A person who lies about small things will lie about big things. A lawyer who submits false information to two state bars year after year, knowing that such information is publicly available and subject to verification, has demonstrated a fundamental disregard for truthfulness. Her bare declaration—unsupported by any documentary evidence, contradicted by her refusal to comply with a federal subpoena, and submitted by a person with a proven track record of dishonesty—is not credible and should be disregarded.

///





### III.  MOREIRA'S COUNSEL REFUSED TO ENGAGE

Plaintiff's opposition faults Defendants for not "simply asking" where Ms. Moreira was located before filing the emergency motion. This is revisionist history. Timeline:

- <u>August 21, 2025</u>: Defendants serve a federal subpoena requesting travel documents and metadata to establish Moreira's location. *See*, Ex. 1.
- <u>September 5, 2025</u>: Defendants email Moreira's counsel (Brodsky), stating, "I dispatched my process server to the address listed on her Florida Bar registration. As a member of the Bar, she is obligated to maintain accurate information on the Bar's website. I am reaching out to confirm the correct address." *See*, Ex. 3 (Sept. 5, 2025, Email). Brodsky does not respond with Moreira's actual address or any explanation.
- <u>September 10, 2025</u>: Subpoena production deadline passes. No documents produced.
- <u>October 5, 2025</u>: subpoena return date passes. No documents produced.
- <u>January 9, 2026</u>: After four months of non-compliance, Defendants file an emergency motion.
- <u>January 13, 2026</u>: Plaintiff files opposition to Moreira's declaration.
- <u>January 14, 2026</u>: Brodsky sends a demand letter claiming Moreira has "receipts" proving she was in New York. *See*, Ex. 2.
- <u>January 14, 2026</u>: Defendants respond requesting the "receipts" and offering to withdraw if cell tower data confirms the New York location. *See*, Ex. 2.
- <u>January 19, 2026</u>: Defendants follow up, demanding subpoena compliance. *See*, Ex. 3.
- <u>January 20, 2026</u>: Still no response. Still no documents.

Defendants did not "rush to file" this motion. Defendants waited four months after serving a federal subpoena. Defendants provided Moreira's counsel with multiple opportunities to produce location evidence. Plaintiff and Ms. Moreira refused at every turn. Plaintiff cannot now fault Defendants for filing a motion after exhausting every reasonable avenue to obtain the truth.

### IV.  IN THE ALTERNATIVE, THE COURT SHOULD ORDER LIMITED DISCOVERY REGARDING MOREIRA'S LOCATION

Even if this Court is not prepared to strike the Second Amended Complaint or enjoin use of the recordings at this time, the Court should, at a minimum, order limited discovery to establish Ms. Moreira's true location when she made the recordings.

A. <u>Cell Tower Data Provides Objective Verification</u>

The most reliable method of determining where Ms. Moreira was located on April 23 and April 28, 2025, is to obtain cellular tower data from her mobile phone carrier. Cell tower records definitively establish the geographic location of a phone during calls, typically within a radius of several hundred feet to a few miles depending on tower density.

Defendants respectfully request that this Court: 1. Order Ms. Moreira to identify her mobile phone carrier and the phone number she used during the April 23 and 28, 2025, calls with Mr. Blackburn; 2. Authorize Defendants to serve a subpoena on Ms. Moreira's phone carrier for cell site location information (CSLI) for the dates and times of the calls; or, in the alternative, 3. Order Ms. Moreira to authorize release of her cell tower data for April 23 and 28, 2025, limited to the times of the calls with Mr. Blackburn.

///
///



B. <u>Limited Discovery Is Warranted Given Moreira's Obstructionism</u>

Ms. Moreira has refused to comply with a federal subpoena requesting travel documents, metadata, and GPS data. She has refused to produce "receipts" that her counsel claims exist. She has provided false addresses to two state bars for nearly a decade. Given this pattern of obstruction and dishonesty, objective third-party records are the only reliable means of establishing the truth.

C. <u>Moreira's Response to Cell Tower Request Will Be Telling</u>

If Ms. Moreira was truly in New York as she claims, she should have no objection to authorizing release of cell tower data that would immediately vindicate her position. Conversely, if Ms. Moreira refuses or obstructs efforts to obtain cell tower data, this Court should draw the adverse inference that such data would prove she was in Florida, not New York.

Defendants commit that if cell tower data establishes that Ms. Moreira was in New York during the April 2025 calls, Defendants will immediately withdraw the emergency motion and will pay all costs associated with obtaining the cell tower records. This offer demonstrates Defendants' good faith and commitment to establishing the objective truth rather than engaging in gamesmanship.

V. **CONCLUSION**

Ms. Moreira has lied to two state bars for eight years, ignored a federal subpoena for four months, and made false statements in her declaration to this Court. Her counsel claimed "receipts" exist but refuses to produce them. This uncorroborated declaration from a witness with a demonstrated pattern of dishonesty cannot be credited.

Defendants respectfully request that the Court grant the emergency application or, in the alternative, order cell tower discovery to establish the truth.

Respectfully,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

CC: All attorneys of record via ECF.

