# EXHIBIT 7

```
     Q1KBCARC
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   JOSEPH CARTAGENA,
 4                Plaintiff,
 5          v.                                25 Civ. 03552 (JLR)
 6   TERRANCE DIXON, et al,
 7                Defendants.
                                              Telephone Conference
 8   ------------------------------x
                                              New York, N.Y.
 9                                            January 20, 2026
                                              9:30 a.m.
10
     Before:
11
                          HON. JENNIFER L. ROCHON,
12
                                              District Judge
13
14                              APPEARANCES
15   REED SMITH LLP
          Attorneys for Plaintiff
16   BY:  JORDAN W. SIEV
          IAN MARCUS TURETSKY
17
     T. A. BLACKBURN LAW, PLLC
18        Attorneys for Defendants
     BY:  TYRONE A. BLACKBURN
19
20
21
22
23
24
25
```

Q1KBCARC

1               (Case called)

2               THE COURT:  Good morning, everyone.  Before we start,
3     let me place on the record that we are proceeding with this
4     conference through Microsoft Teams through videoconference so
5     that I could hear the parties as soon as possible.  Our court
6     conferences are public proceedings; and therefore, listen-only
7     notices are on the docket for anybody who wishes to join.  I
8     have on the line my deputy, my law clerk.  I also have a court
9     reporter who is transcribing this proceeding.  And as a
10    reminder, no one other than court personnel may record,
11    rebroadcast or disseminate these proceedings.
12              May I have appearances.  Who's here on behalf of the
13    plaintiff?
14              MR. SIEV:  Good morning, your Honor.
15              Jordan Siev and Ian Turetsky from Reed Smith.
16              THE COURT:  Who's here on behalf of the defendants?
17              MR. BLACKBURN:  Tyrone Blackburn.
18              THE COURT:  Thank you very much.  So I have two
19    applications before me right now I believe.  One of them --
20    let's take the first one -- is an application that was made by
21    Mr. Blackburn regarding striking the second amended complaint
22    because it is based, he alleges, on a conversation that was
23    recorded by Ms. Moreira when she was in Florida, and Florida's
24    a two-party consent jurisdiction.  I have an opposition letter
25    from Reed Smith with a sworn declaration under penalty of

Q1KBCARC

1    perjury that Ms. Moreira was in New York for the entirety of
2    both calls and used equipment in New York to record them.  And
3    New York is a one-party state.  And so with respect to that, I
4    then also received a followup submission from Mr. Blackburn on
5    January 19, 2026.  So what I'm going to do with this is, I'm
6    not going to strike the complaint now given the sworn
7    declaration from Ms. Moreira.  If there is discovery in the
8    future that shows that that's not the case, then I'll revisit
9    that ruling and anything that stems from that finding that she
10   was in Florida if that is in fact the case.  So I will revisit
11   if need be, but right now I have a sworn declaration from her
12   that she was in New York, which is a two-party state.
13            With respect to Mr. Blackburn's contention that
14   Ms. Moreira has not responded to discovery requests, which I
15   also see in his communication to me, who's representing
16   Ms. Moreira, anybody on this call?  So Siev, you don't
17   represent Ms. Moreira?
18            MR. SIEV:  She's represented by the Gibson Dunn firm,
19   and Mr. Blackburn has been aware of that since late August and
20   has been in touch with her directly, obviously without us on
21   copy.
22            THE COURT:  Mr. Blackburn, if there's anything that
23   you wish to do with respect to her on discovery, I have a
24   letter from you regarding outstanding discovery.  Have you
25   talked to the Gibson Dunn lawyer about the outstanding

Q1KBCARC

1    discovery?  It looks like you may have.

2                MR. BLACKBURN:  I've been going back and forth with
3    them via email, and I intended to serve Mr. Moreira at what was
4    supposed to be her law office in Florida, which the address is
5    incorrect.  And I tried to serve her twice, two different
6    process severs, and I emailed directly.  And that's when Gibson
7    Dunn made the appearance.  We're just going back and forth.
8    They didn't give me anything yet regarding the subpoenas.  I
9    sent them six subpoenas. Five of them to what she's represented
10   as the representatives for those companies, and then her own
11   personal subpoena.

12               THE COURT:  Well, since she's a nonparty, if she
13   doesn't respond to the subpoenas and she's represented, then
14   you'll have to file a motion to compel and they'll have to
15   respond to it and I can then adjudicate that promptly, so do
16   that.  If you're not getting a response -- and I appreciate the
17   attempts to meet and confer as well.

18               So the next thing I have here is depositions of the
19   parties, I believe of the parties in this case.  Now fact
20   discovery is scheduled to close on January 30.  I specifically
21   tried to coordinate discovery of the documents so that we would
22   be able to have those all produced in time to have discovery
23   completed by January 30th.  I understand there's an issue with
24   that, and we're going to talk about when the defendants can be
25   available for their depositions.  I will say that I'm

Q1KBCARC

1  disappointed we can't be done by January 30.  But on the other
2  hand, the deposition notices were sent rather late.
3  Discovery's been going on for months and months, and yet we
4  waited until January to send deposition notices for depositions
5  to take place within the next four weeks.  There really isn't a
6  reason to have waited that long.  And so it looks like the
7  defendants are available for depositions, Mr. Blackburn, you
8  say February 6 and February 9.  What about the week of
9  February 2.?  I know you're recovering the week of January 26,
10  but what about the week of February 2.
11          MR. BLACKBURN:  If you want, your Honor, I can send
12  you in-camera and in private for your eyes only the schedule
13  provided by my medical provider.
14          THE COURT:  I don't need that.
15          MR. BLACKBURN:  I'll be out for literally 10 to 14
16  days dealing with recovery, yes.  I'm scheduled to return to
17  New York on the 3rd. I'll tell you right now the 3rd of
18  February --
19          THE COURT:  So you're available the 4th then, the 5th?
20          MR. BLACKBURN:  Hopefully I'll be up and awake.
21  That's the plan.
22          THE COURT:  Okay. Great. We got 4th, 5th, 6th and
23  9th available.
24          MR. BLACKBURN:  Your Honor, the 5th I put in there.
25  The 5th I have an in-person conference in Supreme Court of New

Q1KBCARC

1    York.  It starts at 9:00 o'clock, but whenever they call the
2    case, who knows.
3             THE COURT:  So the 4th, 6th, 9th we have dates for
4    depositions, Mr. Siev, is it?
5             MR. SIEV:  Siev. You have it right.
6             THE COURT:  Mr. Siev, if I extend fact discovery until
7    let's say February 13, that gives us a little bit of leeway
8    there. Could you get us those depositions on the 4th, 6th and
9    9th?
10            MR. SIEV:  Mr. Tacopina out co-counsel, I got his
11   available and non-available dates before this anticipating we
12   might have this discussion.  I know he can't do the 4th.  The
13   6th works, and I'm starting a trial in Los Angeles the week of
14   the 9th; but perhaps Mr. Turetsky or someone else can be part
15   of it with mister -- we're going to do live TV.  Are you
16   available the 9th?  Yes.  I think the 6th and the 9th will
17   work.
18            THE COURT:  How many depositions are needed?
19            MR. SIEV:  Well, we've noticed each of the defendants.
20   Mr. Dixon, Mr. Blackburn and his firm.  We've noticed the
21   latter as half days figuring that Mr. Blackburn will be the
22   witness and there will be overlaps.  So we have seven hours
23   with each.  We don't intend to waste anyone's time.  If we can
24   complete them both in one day, that would be our goal.
25            THE COURT:  Great.  Terrific. The 6th and 9th should

Q1KBCARC

1    work. I'll extend fact discovery to February 13.  And then the
2    last issue is remote depositions.  I'm going to deny the
3    request for remote depositions unless there's agreement by both
4    parties.  Absent agreement by both parties, the depositions
5    shall be in person.  All right.  Is there anything further that
6    we need to cover here today, Mr. Siev?
7            MR. SIEV:  Well, I guess, your Honor, one
8    clarification.  We understand the ruling in terms of the 6th
9    and the 9th for depositions.  We don't believe on our end that
10   that should be an omnibus extension for any purpose.  We think
11   there has been ample time for people to send notices and do
12   various things.  So in light of Mr. Blackburn's personal
13   schedule, we understand the Court's ruling, but we respectfully
14   think those should be the only exceptions to the post
15   January 30 dates.
16           THE COURT:  Mr. Blackburn, your position?
17           MR. BLACKBURN:  I agree with the Court's position that
18   the 13th would be an extension to all fact discovery.
19           THE COURT:  I'm extending all fact discovery to
20   February 13th.  But I'm telling the parties that that is likely
21   it absent any extenuating circumstances.  February 13 fact
22   discovery is extended.  The depositions for defendants shall
23   take place on the 6th and the 9th.
24           Anything else, Mr. Siev?
25           MR. SIEV:  No.  Thank you.

Q1KBCARC

1           THE COURT:  Anything else, Mr. Blackburn.

2           MR. BLACKBURN:  Yes.  I just wanted to just to get on
3   the record the fact that I provided the Court with lots of
4   screenshots and stuff of my client being threatened and
5   different harassment that he's been receiving.  And we went
6   through serious high expense to keep him safe, so I do not know
7   why plaintiffs cannot just engage in the depositions of my
8   client virtually.  There's really nothing to gain from having
9   him sitting in person other than to have someone approach him
10  when he leaves or when he's coming from his deposition.  And
11  the other day he received a photo on Instagram of his
12  grandmother walking from the building, and he's getting
13  threatened all the time.  And they send the threats and then
14  they delete them.  We have screenshots of a couple of them.

15          THE COURT:  Well, Mr. Blackburn.  The location of the
16  depositions are not publicly available here or you can figure
17  out where that's gonna take place.  Mr. Siev, can you respond
18  to Mr. Blackburn's comments, lease.

19          MR. SIEV:  I mean, he's making all sorts of vague
20  allegations about alleged threats.  These are depositions at a
21  midtown law office in a high rise in a conference room at our
22  office.  There's absolutely no reason other than rank
23  speculation to think that anyone is in danger from appearing at
24  a deposition.  Mr. Dixon, to the extent -- I'm going to assume
25  for the purpose of this discussion, your Honor, that these

Q1KBCARC

1   threats are real.  I do not give any credence to them.  If
2   these threats are real and they've been out there for all this
3   time, people looking for him don't need to find out when he's
4   at a deposition.  If there are really issues, they could be
5   dealt with outside.  I don't believe there are any issues.  I
6   think this is all -- well, I don't want to cast aspersions, but
7   I don't give any credence to it, your Honor.  And we don't
8   think there's any reason why these need to be remote.  We have
9   a right to take the depositions in person, and that's what we
10  intend to do.
11          MR. BLACKBURN:  The threats were uploaded to the
12  docket.  Some of them were.  And if I have to upload the rest
13  of them to the docket so I can make the record pretty clear as
14  to what is happening, I will be more than happy to do so.  I
15  gave you the transcript of when one of the defendants in the
16  *Dixon v. Cartagena* case tried to set him up to get him beat up.
17  You want me to play the recording for the Court right now so
18  the Court can hear?
19          THE COURT:  No.  I have the information.  What I'm
20  ruling on is that it is true that the parties have a right to
21  take an in-person deposition absent consent of both sides.
22  Credibility is going to be an issue here, and so assessing
23  someone's credibility -- and if one needs to do it through an
24  in-person deposition, that is reasonable.  It's going to be
25  held at a midtown Manhattan law firm where there is security

Q1KBCARC

1    and there is no reason to believe that anybody can come into
2    the law firm that's not permitted to come into the law firm.  I
3    ask that the deposition timing I suppose not be made public,
4    which it's not -- you will communicate with each other about
5    when the deposition is going to take place.  And he'll come in,
6    go to the deposition, and exit.  There's no reason to believe
7    that there's going to be anybody at the law firm that would
8    cause any sort of issue.
9             MR. BLACKBURN:  It's not about in the law firm.  The
10   issue is him leaving and him coming to the deposition.  That's
11   the issue, number one.  Number two, counsel for plaintiff have
12   consistently provided him with all sorts of information.  They
13   just turned over documents a couple of days ago, and one of the
14   items in the document was a police report and other things that
15   they're sending him that they sent text messages showing, but
16   he's sharing with other people.  So the fact that the
17   deposition notice is not on the docket does not mean that my
18   client is not in danger.  If other goons were to know that he
19   was supposed to be appearing at his deposition at this
20   location, and the deposition is supposed to start at 10'clock
21   or nine o'clock, or whatever time they notice it for.  They can
22   be sitting out there at seven, or they could be sitting out
23   there at 7:00 p.m. or 6:00 p.m.
24            It's not like the sundown goes down at five o'clock,
25   it's not dark outside and he has to walk to the train.  This is

```
        Q1KBCARC
1    not -- I'm not making this ask because I want him to be
2    convenient in his living room with his feet kicked up in the
3    air.  I'm making this ask because I've seen the threats. I've
4    heard the threats myself, so it's not some haphazard thing.
5             THE COURT:  Okay.  Thank you, Mr. Blackburn, and I did
6    read and review all of the information that you've provided
7    prior to the conference, but the deposition will take place in
8    person.
9             Is there anything else we need to address here,
10   Mr. Blackburn, before we close?
11            MR. BLACKBURN:  No.
12            THE COURT:  Anything else, Mr. Siev?
13            MR. SIEV:  No.  Thank you, your Honor.
14            THE COURT:  Okay.  Thank you very much.  I'll put out
15   the order and court is adjourned.  Thank you.
16            (Adjourned)
17
18
19
20
21
22
23
24
25
```