# EXHIBIT 8

Q17EDIXC

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   JOSEPH CARTAGENA,

4                   Plaintiff,

5           v.                              25 Civ. 3552 (JLR)

6   TERRANCE DIXON, ET AL.,
                                            Conference
7
                Defendants.
8
    ------------------------------x
9                                           New York, N.Y.
                                            January 7, 2026
10                                          12:30 p.m.

11  Before:

12                  HON. JENNIFER L. ROCHON,

13                                          District Judge

14                      APPEARANCES

15  REED SMITH LLP
         Attorneys for Plaintiff
16  BY:  JORDAN W. SIEV
         IAN M. TURETSKY
17       ROB CARNES
         -and-
18  TACOPINA SEIGEL & DEOREO
    BY:  CHAD D. SEIGEL
19       MATTHEW G. DEOREO

20  T. A. BLACKBURN LAW, PLLC
         Attorney for Defendants
21  BY:  TYRONE A. BLACKBURN

22

23

24

25
```

Q17EDIXC

```
 1              (Case called)

 2              THE COURT:  Good afternoon, everyone.

 3              Let me place a few things on the record first.

 4              I am conducting this conference via Microsoft Teams

 5    through video conference for the convenience of the parties.

 6              We are starting ten minutes late because Mr. Blackburn

 7    was late joining this call.  Please don't do that again,

 8    Mr. Blackburn.

 9              Yes?

10              MR. BLACKBURN:  Your Honor, I emailed the Court

11    letting the Court know that I had an issue with Teams.  This is

12    the same issue that I had with Judge Leo Gordon previously,

13    literally an hour before this, where I could not log on and I

14    had to get troubleshoot assistance from Teams to help me get on

15    this call.  Judge Gordon I just have to call in because it just

16    wasn't working.

17              So I don't want you to believe that I was just

18    ten minutes late just to be late.  I emailed chambers letting

19    them know that I was having problems and that I previously had

20    problems with my Zoom that I had with Judge Gordon literally an

21    hour before this, so --

22              THE COURT:  Okay.  All right.  Well, then perhaps we

23    have all future conferences in person.  That will solve that.

24              And continuing on with my preemptory remarks, court

25    conferences, obviously, are public conferences, and, therefore,
```

Q17EDIXC

 1  there's a listen-only line for anybody that wishes to join.  I

 2  have on the line my deputy.  I also have my clerk, law clerk,

 3  and I have a court reporter who is transcribing this

 4  proceeding.

 5          As a reminder, no one other than court personnel is

 6  allowed to record, rebroadcast, or disseminate proceedings.

 7          Let me take appearances.  Who do I have here on behalf

 8  of plaintiff?

 9          MR. SIEV:  Good afternoon, your Honor.

10          From the Reed Smith firm, it's me, Jordan Siev, Ian

11  Turetsky, Rob Carnes, and co-counsel Chad Seigel and Matt

12  DeOreo from the Tacopina Seigel & DeOreo firm.

13          THE COURT:  Thank you very much.

14          And who do I have on behalf of defendant?  I think

15  you've already spoken, but go ahead.

16          MR. BLACKBURN:  Tyrone Blackburn, your Honor.

17          THE COURT:  Thank you, Mr. Blackburn.

18          All right.  We are here because I received a letter

19  for a premotion conference from plaintiff, dated

20  December 22, 2025 -- that is a docket number 108 -- requesting

21  a conference.  I then received a response from defendant's

22  counsel on December 29, that is at docket number 111.  And I

23  scheduled this conference to discuss those letters.

24          Let me just set a few things aside first before we get

25  into the meat of what has been requested here.

Q17EDIXC

1          The first thing is that plaintiffs are requesting that

2     all of defendant's objections are untimely, and, therefore,

3     waived.

4          I am going to overruled that request.  I am not going

5     to find that all of his objections were untimely and waived.

6     There may have been reasons why they were filed on the 10th

7     instead of the 1st, including some technology reasons.  But

8     even if they were filed late, nine days late, I am not going to

9     sanction him by holding that all of his objections are untimely

10    and waived.

11         The second issues is Mr. Dixon suggests that we

12    shouldn't be addressing any of these issues here because

13    there's a Rule 11 motion that's pending by him and it should

14    wait for resolution of that motion.  I'm also not going to wait

15    to resolve these issues pending resolution of a Rule 11 motion.

16    That's a separate motion.  I will deal with that motion in due

17    course, but I'm not going to delay the discovery dispute that's

18    brought before me because of that.

19         All right.  So with that setting laid, I want to now

20    go through what is the appropriate next step here.  And I'll

21    give everyone an opportunity to talk, but I'm fairly familiar

22    with these papers, I have looked at them closely.  It appears

23    to me that plaintiff's point is that the responses to the RFPs

24    are nonresponsive and that they are summaries that are likely

25    generated by AI.  And then they raise an issue with respect to

Q17EDIXC

```
 1    Mr. Blackburn's ability to continue his legal representation,

 2    given representations that he has made in another court

 3    recently, and states that it would like to compel him to

 4    produce all documents responsive to their request shortly.

 5            And I see Mr. Blackburn's response to that that raises

 6    issues regarding meet and confers, that his responses are

 7    appropriate, and, again, that this should wait until the

 8    Rule 11 conference, which I've already held is not going to be

 9    the case.

10            So, my first question here is I need to understand

11    more about these responses, and so I'll hear from you,

12    Mr. Blackburn.

13            Did you use AI or any chatbot in order to summarize

14    the request for production and/or answer those requests?

15            MR. BLACKBURN:  No, I did not.  And as I said in my

16    response to the defendant's letter, the responses were very

17    long, and -- well, the questions, as I said, were very long

18    with multiple parts and subparts.  So instead of -- and they

19    gave it to me in PDF, they didn't give it to me in Word, so I

20    couldn't copy and paste them over in order to have the full

21    questions in my reply.  So all I did was just summarize them in

22    order to better respond to them.

23            What I could have done was just list the numbers out,

24    one through 21, or one through whatever number it is, and just

25    responded to the numbers.  I didn't have to retype the
```

1    questions that they provided.

2          And my answers that I provided were very similar to

3    the answers that they provided to me, which is general

4    objections and then you provide the answer, which is, you know,

5    if you have the documents you say, you know, plaintiff will

6    provide the documents.  If you don't have them, plaintiff --

7    well, defendants, I should say, will provide the documents if

8    and when the documents come into defendant's possession, which

9    is exactly what I did.  And then I uploaded all of that to

10   their server when they provided me with the link to do so.

11         And I just want to just raise to the judge --

12         THE COURT:  Just a minute.  Okay.  Thank you,

13   Mr. Blackburn.  Let me ask a follow-up question.

14         And so I am hearing from you, as an officer of this

15   court, to me directly as the judge, that you did not use AI or

16   a chatbot in order to draft your responses to these RFPs; is

17   that correct?

18         MR. BLACKBURN:  Yes, I did not do that.  No.

19         THE COURT:  Okay.  That's fine.  That's what I want to

20   know.

21         So now I want to look at some of these specifically

22   because I do not understand you responses to these RFPs.  I

23   want you to look at number 11 right now.  So number 11 says --

24         MR. BLACKBURN:  Hold on one second.

25         THE COURT:  Yes.

1          MR. BLACKBURN:  Hold on.  I'm pulling it up.

2          THE COURT:  And I'm going to read it for the record

3    while you pull it up:

4          All documents and communications about money allegedly

5    owed to and/or received by Dixon from plaintiff or any entity

6    affiliated with plaintiff.

7          So that's documents about money allegedly owed to or

8    received by Dixon from plaintiff or any entity affiliated with

9    plaintiff.  That's the request.

10          Your response is, first, you summarize that request as

11    follows:  "Produce all documents, registrations, certificates,

12    or records regarding copyright ownership, authorship,

13    songwriting credits, producer credits, or ownership interests

14    in any musical compositions, recordings, or works in which you

15    have a claim to have any interest."

16          How does that appropriately summarize what is in

17    request number 11?

18          MR. BLACKBURN:  Hold on.  I'm trying to pull up the

19    request.

20          THE COURT:  Uh-uh.

21          MR. BLACKBURN:  One second.  I have to see it myself.

22          THE COURT:  You can look at both documents, but I'm

23    also using the chart that was provided by the plaintiff so that

24    I have it all in one place and that you have verified as

25    accurate when you pointed to it in your response as well.  So

Q17EDIXC

1  if something is in error, you'll let me know, but that's what's

2  reflected in this chart as to the request and your response.

3        MR. BLACKBURN:  Your Honor, I don't know why -- it's

4  not -- again, it's not verbatim as requested.  They're asking

5  about money alleged owed or received by Dixon to plaintiff, and

6  I believe that I went beyond what they were asking for by

7  talking about the registrations and the certificates of the

8  records regarding the ownership and the authorship of the

9  songwriting.  So I don't know why I wrote that that way, but --

10  so I can't really -- you know, I was just trying to give, I

11  believe, more than what they were asking for because the entire

12  issue here deals with the fact that they failed to give him

13  proper authorship and to pay him for the work that he did on

14  these songs and on these albums.  So that's what I believe.  I

15  was just trying to make sure that I covered all of that in

16  there.

17        THE COURT:  Okay.  And then your answer goes on to

18  talk about that Copyright Office records are publicly

19  available, and that there's a vague reference to "any

20  interest," which that phrase is not even used in the request

21  for production on number 11.

22        So not only is your summary of the request inaccurate

23  but your response is entirely nonresponsive.

24        Let me give you another example and see if you can

25  provide me with any explanation.

Q17EDIXC

1            Look at request number 12.  Number 12 says:  All

2    documents or communications concerning or evidencing any

3    attempts to destroy, alter, delete, or scrub social media

4    content, recordings, text, or other materials responsive to

5    these requests.

6            So that request is asking for information concerning

7    any attempts to destroy or delete social media content

8    recordings or texts.

9            You respond with:  Produce all transcripts, audio

10    files, video files, and recordings of any podcast, interview,

11    appearance, or public statement where you discussed plaintiff,

12    the allegation, this litigation, or any related matter.

13            That does not appear to be a correct summary of the

14    request that has been made.  And your answer talks about

15    third-party subpoenas to podcast platforms.

16         MR. BLACKBURN:  Yes.  Because, your Honor, they put in

17    their complaint that my client and I went on different podcasts

18    and went on different platforms and made defamatory statements

19    against their clients.  Right?  So my response was to subpoena

20    those platforms to get those documents, because I don't have

21    any ownership of those interviews, so there's no way that I

22    could --

23         THE COURT:  Mr. Blackburn, the request is for evidence

24    or documents concerning any attempts to destroy, alter, or

25    delete content.

Q17EDIXC

1          MR. BLACKBURN:  I don't -- but I guess my answer

2     should have been, you know, not applicable or we don't have any

3     access to this stuff.  But my response was for them to contact

4     the third parties to gather that information.  I don't have

5     that information.  We were interviewees, we were not the ones

6     that was conducting the interviews, so we don't have the -- you

7     know, whether we own the content --

8          THE COURT:  Okay.  All right, Mr. Blackburn.  That is

9     not responsive to the request.

10          And I could go through more document requests for

11     production.  Thirteen, 14.  Many others are nonresponsive, but

12     those were just items that I was going to go over with you, but

13     I'm not going to go over each one because it's a waste of time,

14     but let me do one more.

15          Mr. Blackburn, just one moment.

16          One more.  Request number 19, for example.  It says:

17     All insurance policies that may provide coverage for the claims

18     asserted in this action, and communications with carriers

19     regarding potential coverage.

20          And your summary of that request is:  Produce all

21     documents, evidence, materials, or other proof that you rely

22     upon or intend to use to support any affirmative defense,

23     including but not limited to any defense of truth, substantial

24     truth, opinion, hyperbole, satire, protected speech, or any

25     other defense to plaintiff's claims.

Q17EDIXC

```
1                    That has nothing to do with insurance policies.

2                    And then your answer to that --

3             MR. BLACKBURN:  I made a mistake.  I made a mistake.

4     It was misnumbered.  It was actually number 20 was for

5     number 19.  So I made a mistake with my numbering.  It wasn't

6     that I was putting the wrong -- I just put it in the wrong

7     order.

8             THE COURT:  Okay.  All right.

9                    So there are clearly --

10            MR. BLACKBURN:  So, your Honor --

11            THE COURT:  -- some issues here --

12            MR. BLACKBURN:  Your Honor, if I --

13            THE COURT:  Just one minute.  Just one minute,

14    Mr. Blackburn.  One minute.

15            MR. BLACKBURN:  I was going --

16            THE COURT:  All right.  What --

17            MR. BLACKBURN:  -- to say, your Honor, I have no

18    problem with providing any supplemental answers to the

19    defendants.  If they had an issue, they could have contacted

20    me, we could have had a meet and confer, like your rules

21    require, and I would have gladly provided them with answers or

22    amended responses.  That is what happens in every case that

23    I've ever been in where there's been a dispute with discovery

24    responses and discovery issues.

25                    I literally just had a meet and confer yesterday in
```

Q17EDIXC

1    another case very similar to this where we discussed the

2    responses and I provided -- or I clarified what my responses

3    were.  They never even reached out to me to ask me anything

4    about this.  They just came to the Court and filed a letter on

5    the docket to ask for this hearing.

6            THE COURT:  Okay.  Thank you, Mr. Blackburn.

7            Mr. Siev, would you like to respond to that?

8            MR. SIEV:  I would, your Honor.

9            I won't retrace the history of the world here, I

10   believe your Honor is quite familiar, but we've literally been

11   chasing this information since August, and we've been met with

12   nothing but obstruction, obfuscation, and, frankly, being

13   ignored.

14           We sent out a letter on December 4 when we hadn't

15   received any written responses at all.  I won't go through that

16   history.  I know you've already ruled on the timeliness.  But

17   we invited a call on the 5th to discuss that or at any time

18   thereafter.  All we heard was, "I'm going to send you the

19   responses."  We finally got those responses a week or so later.

20   It took us some time to not only sort them out, as your Honor

21   has just painstakingly gone through, but to figure out where we

22   are.

23           And we're just in a recurring pattern here, your

24   Honor, that is needlessly driving up the cost of this

25   litigation for our client, and, of course, using up valuable

Q17EDIXC

1   court resources.  We literally have to spend hours and hours

2   and days and days deciphering what's been done to figure out

3   what hasn't been done.  And the long and short of it is,

4   despite the fact that he said time and time again I'm ready to

5   respond, I'll follow the rules, we've gotten these jumbled

6   responses, and we've gotten three documents that, frankly, we

7   had at the beginning of the case.

8        We're now three-and-a-half weeks away from the

9   discovery cut off, and something needs to happen here, your

10  Honor.  We don't think this case should be delayed further.  If

11  he's got documents, we should get them, and we should get them

12  immediately.  There's no reason why, if he truly objected to

13  our December 22 letter, he could have picked up the phone and

14  said, "Hey, I'm ready to meet and confer any time," as we

15  invited on December 4.  We still haven't gotten a document

16  since that time.  It's now two weeks or so since then.

17       So I could go on and on, your Honor.  I know you're

18  familiar with the history here.

19       THE COURT:  Mr. Siev, have you turned over any

20  documents to defendant?

21       MR. SIEV:  We have.  We produced documents last week

22  and we're currently going through a trove of other documents

23  that we intend to make a supplemental production as well, and

24  that should be accomplished within the next few days, all with

25  plenty of time for them to be reviewed and for discovery to be

Q17EDIXC

1   completed by January 31 or 30th.

2              MR. BLACKBURN:  Your Honor --

3              THE COURT:  So --

4              MR. BLACKBURN:  Your Honor --

5              THE COURT:  Just a minute, Mr. Blackburn.  One minute.

6         So, Mr. Siev, if you're going to turn over the rest of

7   your documents by next week, when are depositions taking place?

8              MR. SIEV:  Well, we were awaiting the outcome of this

9   conference to discuss that, but our intention was to send

10  notices for late January promptly following this conference

11  because we're not amenable to delaying further.  If he's got

12  documents, we think they should be produced and should be

13  produced very soon.  And if not, I think that an appropriate

14  order should be entered that he's precluded from introducing

15  documents or contesting facts that the documents would have

16  shown.  Because at some point, your Honor, enough is enough.

17             MR. BLACKBURN:  Your Honor --

18             THE COURT:  Thank you.

19        Mr. Blackburn, yes.

20             MR. BLACKBURN:  Okay.  So, I believe you may have

21  issued your order for this last week sometime.  The date

22  after -- the day after you issued your order is when plaintiffs

23  provided some documents in response to my request that I

24  submitted to them in August of last year.  Ninety days later is

25  when they produced any documents.

Q17EDIXC

```
 1              So, you know, they're trying to pick and choose or
 2      pick apart the responses that I provided without even
 3      attempting a meet and confer.  They ran to the Court to have
 4      this hearing, but they have unclean hands.  They turned over
 5      nothing until your Honor issued the order for us to appear
 6      today.  They turned over nothing; okay?  They have not
 7      responded to my request to get documents, my subpoena that I
 8      sent to them, for James Hunt, which they listed on their
 9      Rule 26 disclosures as a witness.  And they said that to
10      contact him, I had to go through them.  Okay.

11              So August 25 I sent them a subpoena letter, as well as
12      a subpoena, as well as an attachment A listing all the items
13      that I need for him to produce and identifying the fact that I
14      would like to depose him, and they did not respond to that.  No
15      response.  None.

16              They did not respond to the subpoena to Sneaker Addict
17      that was sent to Erica Moreira on August 21; no response to
18      that as well.  Here's that right here.  No response to anything
19      else that I submitted.  But they want to come and complain
20      because they claim that I did not provide them with enough
21      information or my answers was too vague.  Their responses, if
22      you look at their responses, was equally vague, if not more
23      vague, and they gave me nothing until your Honor entered the
24      order for us to appear today.  If you would have not done that,
25      they would have never responded with any documents or anything.
```

Q17EDIXC

1          THE COURT:  Okay.

2          MR. BLACKBURN:  And all they did was just take stuff

3    off of their complaint and put that into a Dropbox and sent me

4    the links to that.  They still are unresponsive to my request.

5          THE COURT:  Okay.  All right.  Thank you.

6          Mr. Siev -- I'm sorry if I'm pronouncing it

7    incorrectly.  How do you say your last name?

8          MR. SIEV:  You are pronouncing it correctly.

9          THE COURT:  Okay.  Thank you.

10          What's your response to subpoenas that were sent on

11    August 25 and August 21, according to Mr. Blackburn?

12          MR. SIEV:  Well, I will have to go back and pull those

13    subpoenas, but they dealt with issues, as I recall it, from the

14    companion case, from his case, and not in respect to this case.

15    So I need to go back and look at those.

16          But I can tell you, your Honor, we've never heard a

17    word about noncompliance with any subpoenas since they were

18    served in August.  And by the way, you know, your Honor may

19    recall, discovery is stayed in the companion case.

20          THE COURT:  I know.

21          MR. BLACKBURN:  That's not -- that's not accurate.

22          So, your Honor, when we had our last conference before

23    your Honor, I did raise that issue with them and they said that

24    they would address the issue at that conference.  They never

25    did anything.  They never did anything.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Q17EDIXC

```
 1              THE COURT:  Okay.

 2              MR. BLACKBURN:  And they haven't --

 3              THE COURT:  All right.

 4              MR. BLACKBURN:  -- done anything --

 5              THE COURT:  Thank you.

 6              MR. BLACKBURN:  -- since then.

 7              THE COURT:  Okay.  Thank you.  Thank you.

 8         All right.  So I'm not going to delay this case, and

 9   so the issue that has been brought before me is not the

10   August 25 or August 21 subpoenas -- that can be brought before

11   me if there is an issue with that in this case, if those

12   subpoenas were filed in this case -- but what I have before me

13   is a request for production that has been served upon

14   Mr. Dixon, and I see responses that are nonresponsive and

15   objections that are not appropriate.  And so let me give a

16   little bit of context there.

17              So, first, Mr. Dixon obviously does not need to

18   produce -- nor, I believe, is plaintiff seeking -- privileged

19   and work product information.  Certainly, there will need to be

20   a privilege log that reflects that that information exists, but

21   that information is not being sought nor need it be produced.

22   But a privilege log does need to be created to show that

23   information exists.  So, insofar as any information is

24   privileged, that's not going to be produced here.

25              Secondly, I see reference to the fact that there are
```

Q17EDIXC

1    confidential items or things that deal with people's names or

2    minors, *et cetera*.  There is a protective order in place that

3    can be used to ensure that anything that is confidential and

4    needs to have certain levels of protection can be protected,

5    and that is not a ground for not producing that information.

6         MR. BLACKBURN:  Okay.

7         THE COURT:  Yes, Mr. Blackburn.  Is there something

8    you need to add right now?

9         MR. BLACKBURN:  Well, it's just one question just for

10   a point of clarity, but you may get to it, so I'm going to

11   wait.  But -- yeah.  Sorry.

12        THE COURT:  Okay.  The other item that I see in some

13   of these responses is that it says:  Defendant does not have

14   any of the following documents, but if that changes, he will

15   supplement.  Everybody has an obligation, as they know, to

16   supplement any responses should new documents come to light;

17   however, that must be new documents or new items that come to

18   light that are not available now.  It is not a license to

19   withhold items and then bring them out later when they should

20   have been searched for and produced, and so I just want to make

21   sure I have that out there as well.

22        We are getting very close to this discovery deadline

23   of January 30, and so what I am now going to do is I am going

24   to ask that the parties meet and confer on these document

25   requests today and tomorrow, and I am going to put down a

1    conference on Friday, January 9, where you're going to come

2    back before me, and if there are any of these items that have

3    not been resolved, I am going to sit here and go through the

4    items with you, resolve any objections, and make orders about

5    what needs to be produced.  All right?  So you'll have your

6    opportunity to meet and confer, but I am not delaying this case

7    any further.

8            So, I am going to put down a conference for 10:00 a.m.

9    on January 9 where we will follow up on any outstanding

10   objections to plaintiff's request for production if they have

11   not otherwise been resolved in a meet and confer that will take

12   place, again, today or tomorrow and then I will see if there

13   are any outstanding issues.

14           If you have resolved all the issues, given my guidance

15   regarding privileged material, given my guidance regarding the

16   protective order, given my guidance that things had better be

17   turned over now or else you won't have any responses to them,

18   given all of that, if there are no longer any issues -- and

19   perhaps Mr. Blackburn can qualify or clarify that, for example,

20   his response to request number 19 is listed under 20, so there

21   might be some clarifications that, you know, some ministerial

22   errors that were made here and that can be clarified during the

23   meet and confer.  But if there's nothing left for me to decide,

24   you can write me a letter on Thursday, sometime -- evening,

25   whatever it is -- to tell me we don't need the conference at

Q17EDIXC

| | |
|---|---|
| 1 | 10:00 a.m. on January 9, but if there are any outstanding |
| 2 | issues, then I'll address them on January 9. |
| 3 | All right. |
| 4 | Mr. Blackburn, do you have a question on that? |
| 5 | MR. BLACKBURN:  No.  I'm clear on all of that. |
| 6 | I was preparing to provide supplemental answers to all |
| 7 | of this today anyway, so no problem.  I will do that and I'll |
| 8 | do the meet and confer. |
| 9 | THE COURT:  Okay. |
| 10 | MR. BLACKBURN:  But the question is concerning August, |
| 11 | and you told me that's not before you so it's not something you |
| 12 | can address now.  After this, I guess I will put a request on |
| 13 | the docket for us to have a conference to discuss those |
| 14 | outstanding subpoenas and stuff. |
| 15 | THE COURT:  That's fine. |
| 16 | MR. BLACKBURN:  Okay. |
| 17 | THE COURT:  So you know my rules:  You put in a |
| 18 | letter, the other side has three days to respond to it, I try |
| 19 | to get you together as soon as possible to decide it. |
| 20 | MR. BLACKBURN:  Okay. |
| 21 | THE COURT:  Because of the ending discovery deadline, |
| 22 | I will get you together as soon as I can. |
| 23 | MR. BLACKBURN:  No problem.  Thank you. |
| 24 | THE COURT:  Mr. Siev, any questions on that process |
| 25 | that we're going to do for these requests for production? |

Q17EDIXC

1          MR. BLACKBURN:  No, your Honor.

2          One thing.  Just, frankly, to keep things moving

3   forward, we're happy to address -- we're happy to meet and

4   confer in advance on the supposed subpoenas.

5          My understanding -- and I'm getting updated by my

6   colleagues because it's been a few months and I don't have that

7   in front of me, but my understanding is none of these subpoenas

8   were ever served and we were not asked to accept service, but

9   we will meet and confer, along with the other issues, and if

10  there remain issues, Mr. Blackburn will be free to bring those

11  to your attention.  But we won't await that letter, we'll

12  address it in advance.

13         THE COURT:  I appreciate that.  Thank you very much.

14  That would be helpful.

15         And then I expect the parties to get their depositions

16  scheduled.

17         Mr. Siev, I expect your document production, as you've

18  represented to me, will be made within the next few days and

19  into next week, so that will be concluded.

20         And then the last item that is on my list is I do need

21  to ask, Mr. Blackburn, given the representations you made not

22  that long ago -- in fact, on December 3, which is less than a

23  month ago -- that you were withdrawing from active practice

24  because of issues, how does that affect this particular case?

25         MR. BLACKBURN:  It doesn't affect this case at all,

Q17EDIXC

```
1    your Honor.

2              THE COURT:  Okay.  So the issues that you were

3    experiencing that necessitated you to withdraw from four

4    different cases in the District of New Jersey are not impacting

5    this case here?

6              MR. BLACKBURN:  No.

7              THE COURT:  All right.

8              Mr. Siev, is there anything else we need to discuss

9    here today?

10             MR. SIEV:  No, your Honor.

11             Thank you for your time.  And hopefully we can make a

12   lot of progress in the next 44 hours or so.

13             THE COURT:  Thank you.

14             Mr. Blackburn, anything further to discuss?

15             MR. BLACKBURN:  No.

16             THE COURT:  Okay.  And, Mr. Blackburn, do we need this

17   conference to be in person because of technology issues?

18             MR. BLACKBURN:  No.  This literally just happened

19   today.  Like, you could ask Judge Gordon.  Like, it literally

20   just happened today --

21             THE COURT:  Good.  Okay.

22             MR. BLACKBURN:  -- with Teams.  And I don't know what

23   is going on, but I'm fine now.  It's working now, so --

24             THE COURT:  Good.  All right.  Well, maybe test it a

25   little bit to be sure that we are okay for January 9.  I'll
```

1    keep it remote to keep some costs down here, but if we continue

2    to have issues, I'll think about bringing everybody in in

3    person.  But right now, it'll be a remote conference,

4    10:00 a.m., January 9.

5         And I don't need any submissions in advance of that

6    other than if you don't need the conference.  If you don't need

7    the conference and have resolved it, you'll let me know.

8         If you find that there's only one issue left or a

9    couple of issues left and you want to help my preparation,

10   which would always be greatly appreciated, and there's a quick

11   letter that you can put in before the conference that says

12   we're still only stuck on these three requests, that would be

13   helpful to me, but I don't want to create a lot of extra work

14   for the parties.  So any information you can give me in advance

15   of the 9th at 10:00 a.m. is appreciated; otherwise, I will go

16   through whatever is left and resolve objections and move this

17   case through.

18            MR. BLACKBURN:  One more thing, your Honor.

19            THE COURT:  Yes.

20            MR. BLACKBURN:  So in my request that I sent over, I

21   requested that they turn over the audio recordings that they

22   have in their possession that Erica Moreira took of the

23   conversations that I had with her back in March when she was

24   representing Mr. Cartagena prior to the filing of this lawsuit.

25   I believe that they have made reference to statements that I've

Q17EDIXC

 1   made to her, and I think that they were trying to, like, quote

 2   me verbatim from those statements.  They have not turned over

 3   that either.  They have not even made even reference to that in

 4   their responses and answers to our document request.  And if

 5   they're going to list it in their pleadings and reference it

 6   and quote me in their pleadings, then they need to turn over

 7   those recordings as well because none of these counsels were on

 8   those calls or were part of those conversations, and they

 9   didn't turn over anything.

10           THE COURT:  So did you make a document request asking

11   for that information?

12           MR. BLACKBURN:  I did.  I did.

13           THE COURT:  Okay.

14           MR. BLACKBURN:  Nothing was --

15           THE COURT:  Mr. Siev --

16           MR. BLACKBURN:  -- turned over.

17           THE COURT:  Just a moment.  There's more documents

18   coming.

19           Mr. Siev, do you happen to know how you're responding

20   to that particular request?

21           MR. SIEV:  I'd have to confer with my colleagues, but

22   we will certainly address that with counsel.  And if there's a

23   continuing issue, certainly it can be brought up before the

24   Court, but I'll talk to my colleagues about it.  And if we're

25   going to produce it, it'll be part of the next production for

Q17EDIXC

 1    sure.

 2              THE COURT:  Okay.  Well, again, I'm trying to get this

 3    to conclusion.

 4              And so if there are issues, Mr. Blackburn, that you

 5    have with plaintiff's document production -- it sounds like one

 6    -- why don't you talk about it during your meet and confer so

 7    that you can get that resolved as soon as possible.  And if

 8    there's an issue, obviously, you can bring it before me, as we

 9    have.

10              All right.  Good.  Thank you very much.  I will see

11    you January 9 at 10:00 a.m. unless you've resolved all the

12    issues.

13              Happy new year, and court is adjourned.

14              Take care.

15              (Adjourned)

16

17

18

19

20

21

22

23

24

25