UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH CARTAGENA,<br>                    Plaintiff,<br>~against~<br><br>TERRANCE DIXON, TYRONE BLACKBURN, and<br>T.A. BLACKBURN LAW, PLLC,<br>                    Defendants. | Case No. 25-cv-3552 (JLR)<br><br>Defendants' Opposition to Plaintiff's Motion for Sanctions and Contempt |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SANCTIONS AND CONTEMPT

## TABLE OF CONTENTS

Preliminary Statement
I. Rule 37(d)(3) and the Governing Standard
II. The February 3 Notice and Medical Circumstances Provide Substantial Justification
    A. Medication and Cognitive Impairment
    B. Physical Inability to Sit for Extended Depositions
    C. The Pre-Planned Cruise Does Not Undermine Medical Justification
III. The Court Has Already Addressed Future Compliance
IV. Plaintiff's Characterization of "Gamesmanship" Is Overstated
V. The Underlying Claims Are Legally Infirm, and This Case Is Not Being Treated Consistently with Precedent
VI. Broader Context and Pattern of Overreach
VII. Requested Relief and Potential Interlocutory Review
Conclusion

## TABLE OF AUTHORITIES

Cases
- *Accely v. Consolidated Edison Co. of New York, Inc.*, No. 19 Civ. 5984 (AT)(SLC), 2020 WL 8620149 (S.D.N.Y. Sept. 8, 2020)
- *Edmonds v. Seavey*, No. 08 Civ. 4898 (HB)(THK), 2009 WL 1285526 (S.D.N.Y. May 7, 2009)
- *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010)
- *Unicure, Inc. v. Thurman*, 92 F.R.D. 368 (W.D.N.Y. 1981)

Rules and Statutes
- Fed. R. Civ. P. 37(b)
- Fed. R. Civ. P. 37(d)(1)(A)(i)
- Fed. R. Civ. P. 37(d)(3)
- 28 U.S.C. § 1292(b)

Preliminary Statement

Defendants Tyrone Blackburn, T.A. Blackburn Law, PLLC, and Terrance Dixon respectfully oppose Plaintiff's February 13, 2026, motion for sanctions and contempt (ECF 146). Plaintiff has not carried his burden to show that the failure to appear on February 6 and 9, 2026 was willful or unjustified. The record demonstrates that Defendants provided advance notice of a genuine medical emergency and have already accepted new court-ordered deposition dates. For the reasons set forth below, the Court should deny Plaintiff's requests for contempt, grievance referral, and monetary sanctions, or, in the alternative, limit any cost award to reasonable, documented out-of-pocket vendor expenses directly caused by the February 6 and 9 non-appearances.

I.      Rule 37(d)(3) and the governing standard

Rule 37(d)(3) provides that a court "must" award reasonable expenses for failure to appear at a deposition "unless the failure was substantially justified or other circumstances make an award of expenses unjust." As Plaintiff's own authorities recognize, expenses are not warranted where there is a "genuine dispute" or where "reasonable people could differ as to the appropriateness of the contested action."

The burden falls on Defendants to establish substantial justification or unjust circumstances. However, the case law is clear: medical emergencies, timely advance notice, and good faith conduct weigh heavily against contempt and harsh monetary sanctions. In *Accely v. Consolidated Edison Co. of New York, Inc.*, No. 19 Civ. 5984 (AT)(SLC), 2020 WL 8620149, at *1 (S.D.N.Y. Sept. 8, 2020), the court denied sanctions where a witness cancelled a deposition due to ill health on the scheduled date, counsel notified opposing counsel within fifteen minutes after the start time, the deposition was quickly rescheduled, there was no pattern of misbehavior, and the moving party was not prejudiced, limiting relief to court reporter costs. Similarly, in *Unicure, Inc. v. Thurman*, 92 F.R.D. 368, 369–70 (W.D.N.Y. 1981), the court denied sanctions where defendants missed a deposition but had acted in good faith to notify opposing counsel and where the moving party's own conduct and other business travel meant that a fee award would be a windfall, rendering expenses "unjust" under Rule 37. By way of contrast, in *Edmonds v. Seavey*, No. 08 Civ. 4898 (HB)(THK), 2009 WL 1285526, at *2–3 (S.D.N.Y. May 7, 2009), the court awarded costs where counsel attempted to cancel a deposition on the eve of the examination for a pretextual, non-medical reason and made no effort to proceed on topics he was prepared to address.

3

The Court has broad discretion to calibrate any remedy to the actual prejudice and the parties' conduct. Within the Second Circuit, when determining whether to impose sanctions, a district court considers four non-exhaustive and non-exclusive factors: "(1) the willfulness of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

II.  The February 3 Notice and Medical Circumstances Provide Substantial Justification

Plaintiff's motion acknowledges that undersigned underwent medical procedures on February 3, 2026—three days before the first scheduled deposition—undersigned counsel notified Plaintiff's counsel by email that he had undergone a second medical procedure that day, that he was under anesthesia and narcotic medication, and that he would be unable to sit for the February 6 and 9 depositions. That notice was sent from the medical facility as counsel awaited the provider and was followed by counsel's representation that he would seek relief from the Court.

Contrary to Plaintiff's suggestion that Defendants "simply did not show up," the record shows that counsel notified Plaintiff three days before the first deposition date—not the night before or morning of—that he could not safely appear. Plaintiff elected to proceed with arranging the court reporter and videographer after receiving that notice, rather than agreeing to adjourn or seeking expedited guidance from the Court before February 6. At the February 10 conference, the Court acknowledged both the January 23 and February 3 procedures and directed counsel to provide medical support if necessary.

Given the timing and nature of the second procedure, and the undisputed fact that counsel was still recovering from local anesthesia and prescribed narcotic medications, it was neither safe nor reasonable for him to sit for two full-day, in-person depositions on February 6 and 9.

A. Medication and Cognitive Impairment

Moreover, as a matter of basic common sense and professional responsibility, a deponent—particularly a party and counsel—should not testify while under the influence of substances that impair his ability to understand questions and give accurate, truthful answers. At the time of the February 6 and 9 depositions, undersigned counsel was taking multiple prescribed narcotic pain medications, sleep aids, and other drugs that caused significant drowsiness and cognitive slowing. Appearing for an all-day, in-person deposition under those conditions would have risked an

4

incomplete or inaccurate record and would have been inconsistent with counsel's obligations to the Court and to his client. Under these circumstances, it was more consistent with Rule 37(d)(3)'s "substantial justification" and "other circumstances" language to notify Plaintiff and request an adjournment, rather than to appear while impaired.

    B.  <u>Physical Inability to Sit for Extended Depositions</u>

In addition, the nature of the January 23 and February 3 procedures makes it difficult, if not impossible, for undersigned counsel to sit upright for a seven-hour deposition day, much less fourteen hours over two consecutive in-person depositions. The procedures and follow-up were scheduled and paid for well before Plaintiff served his January 23, 2026, notices setting the February 6 and 9 depositions. Plaintiff thus chose dates that overlapped with an existing medical treatment plan, then refused to accommodate a medically necessitated adjustment once a second procedure became necessary. Under Rule 37(d)(3), those circumstances further demonstrate that any non-appearance was substantially justified and that a full award of expenses, or contempt, would be unjust.

    C.  <u>The Pre-Planned Cruise Does Not Undermine Medical Justification</u>

Plaintiff also points to undersigned counsel's February 10–20, 2026 cruise to suggest that he is not truly impaired. That trip, however, was purchased in March 2025—nearly a year before Plaintiff served his January 23, 2026, deposition notices setting the February 6 and 9 dates. The cruise involves predominantly reclining and light activity, which is materially different from sitting upright and concentrating through a full day of questioning on narcotic medication. The existence of a long-planned, non-refundable trip thus does not undermine the medical justification for seeking to adjourn the February 6 and 9 depositions and does not support a finding of willfulness or bad faith.

III.   <u>The Court Has Already Addressed Future Compliance</u>

At the February 10, 2026, conference, the Court reset the Dixon and Blackburn depositions to February 24 and March 6, 2026, extended fact discovery solely to permit those depositions, and made clear that they are to go forward on those dates. On February 24, 2026, Defendant Terrance Dixon appeared and was deposed pursuant to the Court's February 10 order, and that deposition has now been completed. Undersigned is likewise prepared and eager to appear for his own deposition on March 6, 2026, as ordered by the Court, and has made the necessary arrangements

5

to ensure that deposition proceeds without incident. Defendants accept and will comply fully with those dates.

That forward-looking remedial order undercuts any suggestion that Defendants are attempting to evade discovery. It also bears on whether additional monetary or contempt sanctions are necessary or proportional considering the existing schedule adjustment. The Court has already established firm dates and warned that sanctions would "escalate" if those dates are not met. That prophylactic remedy is sufficient to ensure compliance without the need for the draconian relief Plaintiff now seeks.

IV.     Plaintiff's Characterization of "Gamesmanship" Is Overstated

Plaintiff's motion layers on extensive rhetoric about supposed "pattern" conduct and sanctions in other matters to cast this scheduling issue as bad-faith gamesmanship. But what is at issue here is narrow: whether the specific failure to appear on February 6 and 9—after a documented second procedure and three days' notice—was "substantially justified" or whether "other circumstances make an award of expenses unjust" within the meaning of Rule 37(d)(3).

The context matters. Plaintiff was aware by February 3 that Defendants would not appear on the 6th and 9th yet chose to proceed with full arrangements for those dates. The Court has already ordered new dates and indicated that any sanctions will be calibrated to the actual costs and the parties' conduct around rescheduling. Plaintiff's request for referral to the Committee on Grievances and broad inherent-power sanctions is a disproportionate escalation arising from a single, medically driven adjournment dispute.

Even if the Court were to find some sanction appropriate, Defendants respectfully submit that the advance notice given, the medical justification, and the prompt resetting of depositions to firm dates militate strongly against any contempt finding and against any significant monetary sanction. Here, as in *Accely*, 2020 WL 8620149, at *1, and *Unicure*, 92 F.R.D. at 369–70, Defendants provided advance notice tied to a genuine medical procedure, the Dixon deposition has already gone forward on February 24, 2026, and Mr. Blackburn is prepared to sit on March 6, 2026, so any sanction should be limited, at most, to reasonable vendor costs.

V.      The Underlying Claims Are Legally Infirm, and This Case Is Not Being Treated
        Consistently with Precedent

Defendants respectfully submit that this action was filed in bad faith and is legally unviable under binding and persuasive authority in this Circuit and New York state courts. Numerous

6

Second Circuit decisions, New York Appellate Division decisions, and New York Court of Appeals decisions have held that similar, if not materially identical, defamation-style claims arising from public allegations and commentary are not actionable. Recent decisions in this District have likewise dismissed such claims at the pleading stage, without subjecting the parties to extensive and costly discovery before Rule 12 challenges are resolved.

In the ordinary course, parties are not required to complete expansive and expensive discovery until the viability of the claims has been tested and decided. Yet in this matter, discovery has proceeded aggressively while dispositive issues remain contested, effectively treating this case as an outlier to what Defendants contend is clear, irrefutable precedent. That background is relevant here because it underscores that Plaintiff has chosen to pursue burdensome discovery in a case whose claims, in Defendants' view, should not survive; layering severe sanctions and grievance referrals on top of that unusual posture would be inequitable and unnecessary.

VI.    <u>Broader Context and Pattern of Overreach</u>

Defendants also submit that Plaintiff's motion must be viewed against the backdrop of a broader campaign to neutralize undersigned counsel rather than to litigate the merits. Plaintiff and his counsel have previously lodged a bar complaint accusing undersigned of "extortion," yet have never brought any civil or criminal extortion claim in any forum, underscoring the baseless and tactical nature of that accusation. They have repeatedly attempted to serve undersigned with process despite his waiver of service and even orchestrated a filmed "service" incident in an apparent attempt to generate media content; Plaintiff's counsel then publicly accused undersigned on TMZ of "mowing down" a process server, without any competent evidentiary support.

In parallel criminal proceedings, Plaintiff's counsel communicated with the prosecuting authorities on the eve of undersigned's grand jury appearance; when undersigned confronted counsel about that contact, counsel falsely asserted that the grand jury presentation was "public" and immediately terminated the conversation. Notwithstanding that concern, undersigned appeared and testified before the grand jury, which returned a no-true-bill on the ten charges disclosed to him prior to his appearance, while indicting only on four charges that were presented after his testimony and that he had no opportunity to address. Undersigned's criminal counsel has moved to dismiss that indictment based on the way it was obtained, and the original prosecutor has since been removed from the case by the criminal court after those issues were raised.

7

Taken together, these events reflect an escalating pattern in which Plaintiff and his counsel seek not only to press civil claims, but also to discredit and sideline undersigned through bar complaints, public accusations, and criminal-court maneuvering. Against that backdrop, the present request for contempt, hefty monetary sanctions, and grievance-committee referral over a medically driven adjournment dispute is disproportionate and appears designed to further that same objective rather than to remedy any genuine prejudice.

VII.     <u>Requested relief and potential interlocutory review</u>

For these reasons, Defendants respectfully request that the Court deny Plaintiff's request for a finding of contempt, deny Plaintiff's request for referral to the Committee on Grievances and for inherent-power sanctions, and, alternatively, if the Court determines that some cost-shifting is warranted under Rule 37(d)(3), limit any award to reasonable, documented out-of-pocket vendor costs directly and unavoidably caused by the February 6 and 9 non-appearances, taking into account Defendants' advance notice and the Court-ordered rescheduling.

Finally, if the Court is nevertheless inclined to impose significant sanctions—particularly contempt or a referral to the Committee on Grievances—Defendants respectfully request that the Court expressly state in its order whether it is willing to certify that ruling for interlocutory appeal under 28 U.S.C. § 1292(b), or otherwise clarify the mechanism by which Defendants may seek immediate appellate review. Defendants believe that, given the unique procedural posture of this case and the extent to which it diverges from how similar matters are typically handled in this District and in New York courts, early appellate guidance on the propriety and scope of any sanctions would materially advance the ultimate termination of the litigation.

Conclusion

Defendants provided timely notice of a genuine medical emergency, accepted new deposition dates, and will fully comply with the Court's February 10, 2026, order. The circumstances surrounding the February 6 and 9 non-appearances were substantially justified, and imposing contempt or significant monetary sanctions would be unjust under Rule 37(d)(3). The Court should deny Plaintiff's motion in its entirety or, at most, award limited vendor costs.

Respectfully submitted,

<u>/s/ Tyrone A. Blackburn</u>
Tyrone A. Blackburn
Attorney for Defendants

Dated: March 2, 2026