# Exhibit 1

**Short Message Report**

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 1 | Date Range: 6/25/2025 |

**Outline of Conversations**

💬   **Redacted** • 1 message on 6/25/2025 • **Redacted** • MAYOR **Redacted**

CARTAGENA_0000603

JN    **Jeff Aronson New** [Redacted]                                6/25/2025, 7:56 PM
      him?

\#    [Redacted]                                                     6/25/2025, 8:32 PM
      https://www.instagram.com/reel/DLVfaGWp1AW/?igsh=eHcyMWFmZGsxZmlk

      *Attachment: ~_Library_SMS_Attachments_1c_12_C0C8CCEB-A3C9-4B99-BA11-CA479CF0858F_0952A7E8-FB5C-4550-B6D9-DB19B507028E.pluginPayloadAttachment*

      *Attachment: ~_Library_SMS_Attachments_f1_01_86465081-1659-4EDC-8291-C63B8AF23B15_7F877316-B155-4F22-82F2-6D201438969C.pluginPayloadAttachment*

\#    [Redacted]                                                     6/25/2025, 8:47 PM
      Unbelievable

JN    **Jeff Aronson New** [Redacted]                                6/25/2025, 8:48 PM
      this guy is special

JN    **Jeff Aronson New** [Redacted]                                6/25/2025, 11:19 PM
      https://www.tmz.com/watch/joe-tacopina-tyrone-blackburn-arrest-06-25-2025/

      *Attachment: ~_Library_SMS_Attachments_67_07_2AB7CC14-80AC-4661-8959-48E2F65174F6_90BDC7E6-140E-486F-AEF6-EFD707915E4A.pluginPayloadAttachment (3 KB)*

      *Attachment: ~_Library_SMS_Attachments_ed_13_79DE8337-23A6-4F96-B5DE-DB82937D05B4_9375B430-F864-494E-A905-B173B5B4E9F3.pluginPayloadAttachment (76 KB)*

      *Attachment: ~_Library_SMS_Attachments_53_03_9C9F5662-3002-4FB3-B84F-21F607F9EBCF_4B44E45A-1D36-49EA-9B86-FCAC9A2D3468.pluginPayloadAttachment (96 KB)*

      *Attachment: ~_Library_SMS_Attachments_cb_11_5C99EC6D-0763-42CC-A0DF-0B64004CA92A_68E27A47-D1E3-4926-B5A3-269BB49590E2.pluginPayloadAttachment (69 KB)*

      *Attachment: ~_Library_SMS_Attachments_a5_05_4BEEC010-6E2D-4E8D-A54D-DBEAA6E14E30_0DB5368F-768D-4A9B-958F-3765B5829A39.pluginPayloadAttachment (78 KB)*

Confidential                                                      CARTAGENA_0000514

**From:** Tom Bevacqua ▓▓ @redstarmerch.com>
**Date:** June 20, 2025 at 10:11:34 AM EDT
**To:** Erica Moreira <e@ericamoreira.com>
**Cc:** Matthew Bower ▓▓▓▓ @redstarmerch.com>
**Subject: Re: Fat Joe Deal**

Good morning Erica-

Apologies, but with the recent unfortunate news, we need to postpone this call. I
sincerely hope we can resume conversations sometime in the near future once things
are resolved. I hope you can understand.

Best,
Tom

—
TOM BEVACQUA
RED STAR MERCHANDISE
CHARLOTTESVILLE, VA | NASHVILLE, TN
▓▓▓▓ Mobile
www.redstarmerch.com
434.872.0890 (Charlottesville) | 615.815.1967 (Nashville)

On Jun 18, 2025, at 4:52 PM, Tom Bevacqua ▓▓ @redstarmerch.com> wrote:

Likewise! I will be calling you from ▓▓▓▓ .

On Jun 18, 2025, at 4:12 PM, Erica Moreira <e@ericamoreira.com> wrote:

CAUTION: EXTERNAL EMAIL

Hey Tom, looking forward to it! Give me a call my mobile. ▓▓▓▓ .
Sent from my iPhone

On Jun 18, 2025, at 2:43 PM, Tom Bevacqua ▓▓ @redstarmerch.com> wrote:

Hi Erica-

I can be available at 10:30am ET on Friday. Let's do it then. Prefer call or Zoom?

Thanks,
Tom

—
TOM BEVACQUA
RED STAR MERCHANDISE

CARTAGENA_0000821

CHARLOTTESVILLE, VA | NASHVILLE, TN
                                    Mobile
www.redstarmerch.com
434.872.0890 (Charlottesville) | 615.815.1967 (Nashville)

On Jun 18, 2025, at 1:09 PM, Erica Moreira <e@ericamoreira.com> wrote:

CAUTION: EXTERNAL EMAIL

Thanks Matt - How about Friday? I'm free from about 9:30-11:45amEST and again from 1:30-230

Best,
e

Erica Moreira
e@ericamoreira.com

On Jun 18, 2025, at 12:59 PM, Matthew Bower ████████@redstarmerch.com> wrote:

Hey Erica
Hope all is well!

Thanks for reaching out about this.
Do you have some time to hop on a call later this week?
On CC is our Head of Business Development, Tom Bevacqua.

Let us know some times that might be good for you!

-Matt

**Matthew Bower**
**Red Star Merchandise**
O: ██████████
C: ██████████

**From:** Erica Moreira <e@ericamoreira.com>
**Date:** Tuesday, June 17, 2025 at 1:18 PM
**To:** Info <info@redstarmerch.com>
**Cc:** Matthew Bower ████████@redstarmerch.com>, Alex Stultz ████ @redstarmerch.com>
**Subject:** Fat Joe Deal

CAUTION: EXTERNAL EMAIL

Confidential

CARTAGENA_0000822

Hi - Hope you're doing well.  I worked with Matthew Bower and Alex Stultz (hi!) maybe 8 years ago on artists in the latin market.  Let me know what king of deals you are offering these days. I work with Fat Joe, among others, who is interested in pursuing merch.

Best,
E

Erica J Moreira, Esq.

Miami  | New York
M: ██████████
*Admitted to Practice in New York and Florida

Confidentiality Notice: This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 305 476 1773, and destroy the original transmission and its attachments without reading or saving in any manner.

Este mensaje está dirigido a su destinatario exclusivamente y puede contener información PRIVILEGIADA y CONFIDENCIAL. Si Ud. no es el destinatario pretendido, por la presente le notificamos que cualquier difusión de esta comunicación o de su contenido está totalmente prohibido. Si ha recibido esta comunicación por error, por favor borre todas las copias de este mensaje y de sus anexos y notifiquenos de inmediato. Gracias.

3



**From:** Jason Horowitz [Redacted]
**Date:** July 21, 2025 at 6:46:22 PM EDT
**To:** Erica Moreira <e@ericamoreira.com>
**Subject: Fwd: [INT] FJ Legal Response**

See below.
Call if anything to discuss

---------- Forwarded message --------
**From: Dane Aagaard** [Redacted]
Date: Mon, Jul 21, 2025 at 2:41 PM
Subject: [INT] FJ Legal Response
To: Jason Horowitz [Redacted] Logan Swaim
[Redacted] Mike Varney [Redacted]

**Brand:** ▮▮▮
**Investment:** $675,000
**Status:** Committed/In IO
**From sponsor (6/20):** *Please move forward immediately with pausing all media and pulling any mention of* ▮▮ *(logos, ad mentions, static placements, etc.) from any Joe + Jada content while we monitor how these allegations unfold.*

**Brand:** ▮
**Investment:** $400,000
**Status:** Committed/In IO
**From sponsor (6/23):** *In light of the most recent* news *coming out of last week, we'd like to* **postpone** ▮ *launch on the show for all conditions (Body + ED) and revisit next steps towards the end of July. We appreciate the partnership and flexibility -- and will keep you all posted as things develop.*

**Brand:** ▮▮▮
**Investment:** $40,000

CARTAGENA_0000787

**Status**: In planning

**From sponsor (6/20):** *As I'm sure you can imagine, with the news coming out recently, we will be taking a step back here...*



Dane Aagaard
Chief Revenue Officer
c: (201) 414-7844

CARTAGENA_0000788

**V THE VOLUME**

| | |
|---|---|
| Advertiser: | ■ |
| Campaign | The Volume |
| Date: | 6/1/2025 |
| Agency/Client Contact | |
| Agency/Client email | |
| Payment Terms: | Net 30 |

| Show | Show Description | Package Details | # of Episodes | Flight Start | Flight End | Cost Type | Total Imps Guaranteed | Total Amount |
|---|---|---|---|---|---|---|---|---|
| JOE & JADA [YouTube Video + Social Only] | We stop legends for Joe and combine him up twice a week to share stories from their legendary careers and give their real thoughts on the hottest topics in music, sports, and culture | **Joe & Jada ■ — Extended LIVE Ad Reads**<br>→ Four-by Right (48) total LIVE :90 Ad Reads in Show Front Host<br>→ Lower third graphics during read on YouTube<br>→ Link in YouTube description to ■ site | 48 | 7/1/2025 | 2/28/2026 | Flat Fee | 11,999,000 | $500,000 |
| | | **Joe & Jada ■ — Custom/Sponsored Segments**<br>→ One (1) re-curring custom/sponsored segments (creative TBD) presented by ■ of social outdoors) from ad reads and/or custom segments across Joe & Jada's platforms<br>→ Lower third graphics during segments on YouTube<br>→ Link in YouTube description to ■ site | 48 | 7/1/2025 | 2/28/2026 | | | |
| Total | | | | | | eCPM | $42.02 | 11,9000000 | $500,000 |

**This media plan adheres to 30-day cancellation terms.**

| | | | |
|---|---|---|---|
| Publisher | The Volume | Advertiser | ■ |
| Title | Chief Revenue Officer | Title | SVP Growth |
| Date | 06/04/2025 | Date | 06/04/2025 |
| The Volume Signature | *Dane Aagaard* | Advertiser Signature | |

This Insertion Order is governed by it's/MB Standard Terms and Conditions found ("Terms"). In the event of any conflict between the Terms and any language in this Insertion Order, the language in this insertion order HERE ("Terms"). In the event of any conflict between the Terms and any language in this Insertion Order, the language in this insertion order shall control. By signing below, Publisher represents and warrants that (a) Publisher has read and agrees to be bound by the Terms, and (b) Publisher has the full right, power and authority to enter into and perform the obligations contained in this Insertion Order. The person executing this Insertion Order on behalf of each party represents and warrants that he/she has full authority to execute the same on behalf of such party, and that no other actions or approvals are required for such party to enter into this Insertion Order and perform its obligations hereunder. If the person executing this Insertion Order is an agent executing on behalf of Publisher, he/she represents and warrants that he/she has full authority to execute the same on behalf of Publisher, and that no other actions or approvals are required for Publisher to enter into this Insertion Order and perform its obligations hereunder. The Publisher grants the Advertiser a non-exclusive license to use the provided content in its promotional and marketing materials. Advertiser may distribute, share, and display the content, including the ad read and the host name(s), across its owned and paid social channels and websites during the campaign period specified in this IO. Advertiser is also granted the right to adapt, edit, or create derivative works from the content, including but not limited to shorter clips, image stills, and highlight reels, provided such adaptations maintain the original intent and do not alter the core message. Any adaptations and edits are subject to the Volume approval. These materials may be used across digital platforms for promotional purposes throughout the campaign period, unless otherwise agreed in writing. If the Publisher fails to honor the terms outlined above, the Advertiser reserves the right to terminate this agreement immediately upon written notice, without further obligation.

Confidential

CARTAGENA_0000845

Confidential

CARTAGENA_0000846

Confidential

CARTAGENA_0000847

Confidential

0000004

CARTAGENA_0000848



0000001

Confidential

CARTAGENA_0000849



Confidential

CARTAGENA_0000850



| JOE & JADA<br>(YouTube Video + Social Only) | Hip Hop legends Fat Joe and Jadakiss link up twice a week to share stories from their legendary careers and give their real thoughts on the hottest topics in music, sports, and culture | Joe & Jada ___: Title Sponsorship (50x Episodes)<br>— In-studio signage<br>— Thumbnail integration<br>— One (1) :10-:15 intro every episode w/ brand inclusion<br>— One (1) :60 ad read in full episodes<br>— One (1) :60 pre-roll/embed ad read running as pre-roll in TBD # of breakout clip videos<br>— Logos/Brand integration + links across YouTube & Social videos<br>— One (1) re-curring Custom/Sponsored Segment (creative TBD) w/ social outdowns across show handles<br>— TBD # of Sponsored Social outdowns across show handles<br>— Co-branded and cards on social | 50 | 5/19/25 | 12/31/25 | Flat Fee | 13,714,286 | $1,000,000 |
| | | Joe & Jada ___: MLB Event Activation Custom Bunk (Details TBD) | TBD | 5/19/25 | 12/31/25 | | | |
| | | YouTube Pre/Mid/Post-Roll<br>— ___ will have a strong presence in Joe & Jada's content with original pre-roll, mid-roll, and post-roll ads promoting tune-in to the matches. These placements will maximize visibility and align ___ message naturally into the show. | - | 5/19/25 | 12/31/2025 | | | |
| | | Joe & Jada x ___: ADDED VALUE Brand Lift Study<br>— The Volume will provide an added value brand lift study for the Joe & Jada partnership to measure the lift of ___ KPI's with the show. | - | 5/12/2025 | 12/31/2025 | AV | - | Added Value |

0000003

CARTAGENA_0000851



0000004

Confidential

CARTAGENA_0000852



0000005

Confidential

CARTAGENA_0000853

**This media plan is non-cancelable**

| | | | |
|---|---|---|---|
| Publisher | _____ | Advertiser | _____ |
| Title | _____ | Title | _____ |
| Date | _____ | Date | _____ |
| The Volume Signature | _____ | Advertiser Signature | _____ |

This Insertion Order is governed by IAB/AAAA Standard Terms and Conditions bound ("Terms"). In the event of any conflict between the Terms and any language in this Insertion Order, the language in this Insertion HERE ("Term"). In the event of any conflict between the Term and any language in this Insertion Order, the language in this insertion order shall control. By signing below, Publisher represents and warrants that (a) Publisher has read and agrees to be bound by the Terms, and (b) Publisher has the full right, power and authority to enter into and perform the obligations contained in this Insertion Order. The person executing this Insertion Order on behalf of each party represents and warrants that he/she has full authority to execute the same on behalf of such party, and that no other actions or approvals are required for such party to enter into this Insertion Order and perform its obligations hereunder. If the person executing this Insertion Order is an agent executing on behalf of Publisher, he/she represents and warrants that he/she has full authority to execute the same on behalf of Publisher, and that no other actions or approvals are required for Publisher to enter into this Insertion Order and perform its obligations hereunder.

Confidential                                                                 CARTAGENA_0000854



**From:** Jason Horowitz [Redacted]
**Date:** July 21, 2025 at 6:46:22 PM EDT
**To:** Erica Moreira <e@ericamoreira.com>
**Subject: Fwd: [INT] FJ Legal Response**

See below.
Call if anything to discuss

---------- Forwarded message ----------
From: **Dane Aagaard** [Redacted]
Date: Mon, Jul 21, 2025 at 2:41 PM
Subject: [INT] FJ Legal Response
To: Jason Horowitz [Redacted] Logan Swaim
[Redacted] Mike Varney [Redacted]

**Brand:** ▉
**Investment:** $675,000
**Status:** Committed/In IO
**From sponsor (6/20):** *Please move forward immediately with pausing all media and pulling any mention of* ▉ *(logos, ad mentions, static placements, etc.) from any Joe + Jada content while we monitor how these allegations unfold.*

**Brand:** ▉
**Investment:** $400,000
**Status:** Committed/In IO
**From sponsor (6/23):** *In light of the most recent* news *coming out of last week, we'd like to* **postpone** ▉ **launch on the show for all conditions (Body + ED)** *and revisit next steps towards the end of July. We appreciate the partnership and flexibility -- and will keep you all posted as things develop.*

**Brand:** ▉
**Investment:** $40,000

CARTAGENA_0000787

**Status**: In planning
**From sponsor (6/20):** *As I'm sure you can imagine, with the news coming out recently, we will be taking a step back here…*



**Dane Aagaard**
Chief Revenue Officer
c: (201) 414-7844

Confidential



# RE: EXT: FW: EXT: Wal-Mart x Rewind it 10 meeting regroup

**CAUTION:** This email originated from outside of your organization.

No updates yet – we are in our first Wk51 assortment review session today so I am still pretty far off from having a read on decisions. My perspective so far is that I likely will not have additional store space to give for men's hair color in this relay. I will likely offer the opportunity to several men's hair color suppliers to participate in a 1P eComm-only relationship for a year to compete digitally to try to earn store space for the following year.

Separately, do we need to have a conversation on the news headlines I have been seeing?

Best,

**Jack Adams**
**Merchant – Men's Shaving & Grooming**
**D2 – Personal Care**
| Redacted | I | Redacted | @walmart.com
**Save money. Live Better.**

**From:** Kurt R Roland < Redacted >

CARTAGENA_0000515



7:06

8

**BS** **Bob Spannbauer**                    6:59 PM
To: Kurt   Cc: Pam, Tom, David, Bruce >

## Rewind

Hey Kurt,
We continue to press her for a business conversation.
Just last Wednesday she responded, probing for
current volume Launch to date in the market, which
we quickly came back with.  The recent Fat Joe news
is, to say the least, disheartening though:

Fat Joe:  https://x.com/dom_lucre/status/
1935860376182177999?s=42

Thanks!
Bob


**Bob Spannbauer** | The**Moscoe**Group
Redacted
Redacted | Phone   Redacted
Redacted        @**Moscoe.com**


-----Original Message-----
From: Kurt R Roland    Redacted
Sent: Tuesday, June 24, 2025 11:40 AM
To: Bob Spannbauer
Redacted
Cc: Pam Johnson   Redacted
Tom Knooihuizen    Redacted    David Blum
Redacted      Bruce Goldstein
Redacted
Subject: RE: Rewind

**Short Message Report**

| Conversations: 1 | Participants: 5 |
|---|---|
| Total Messages: 10 | Date Range: 6/28/2025 |

**Outline of Conversations**

💬 **Redacted** 10 messages on 6/28/2025 • **Redacted** • Bo Dittel **Redacted** Bo Dittel **Redacted** • Jeff Aronson New **Redacted** • UNSPECIFIED_PARTICIPANT

CARTAGENA_0000534

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬　┌╌╌╌╌╌╌╌╌┐
　　┊ **Redacted** ┊
　　└╌╌╌╌╌╌╌╌┘

JN　**Jeff Aronson New** ┌╌╌╌╌╌╌╌┐ **Redacted** ┊　　　　　　　　6/28/2025, 3:55 AM
　　https://www.instagram.com/reel/DLa8WFQMM4C/?igsh=MW1iajcweXg5M21hNA==

　　*Attachment: ~_Library_SMS_Attachments_db_11_F8C7925F-9F53-455D-97AA-F588745E99A7_C0EE7D80-5AEE-*
　　*4037-9C6C-8C9279700C6A.pluginPayloadAttachment*

　　*Attachment: ~_Library_SMS_Attachments_21_01_D680B895-F4DD-404C-8751-89C3CBC81678_56E59559-0331-*
　　*4ACD-9BC9-8578B8C1B089.pluginPayloadAttachment (106 KB)*

JN　**Jeff Aronson New** ┊ **Redacted** ┊　　　　　　　　　　6/28/2025, 3:55 AM
　　😂😂

#　┌╌╌╌╌╌╌╌┐
　┊ **Redacted** ┊　　　　　　　　　　　　　　　　　6/28/2025, 5:05 PM
　Performing hit you later

#　┌╌╌╌╌╌╌╌┐
　┊ **Redacted** ┊　　　　　　　　　　　　　　　　　6/28/2025, 5:05 PM
　Dinkashare

JN　**Jeff Aronson New** ┊ **Redacted** ┊　　　　　　　　　　6/28/2025, 5:09 PM
　　get the 💼

JN　**Jeff Aronson New** ┊ **Redacted** ┊　　　　　　　　　　6/28/2025, 5:10 PM
　　Laughed at "Dinkashare"

#　┌╌╌╌╌╌╌╌┐
　┊ **Redacted** ┊　　　　　　　　　　　　　　　　　6/28/2025, 5:12 PM
　Everything's cool

JN　**Jeff Aronson New** ┊ **Redacted** ┊　　　　　　　　　　6/28/2025, 5:13 PM
　　yes sir just letting you know people really sticking up for you all over social media i think people really getting it

#　┌╌╌╌╌╌╌╌┐
　┊ **Redacted** ┊　　　　　　　　　　　　　　　　　6/28/2025, 5:16 PM
　Thank God

JN　**Jeff Aronson New** ┊ **Redacted** ┊　　　　　　　　　　6/28/2025, 5:25 PM
　　Loved "Thank God "

CARTAGENA_0000535

**Short Message Report**

| Conversations: 1 | Participants: 4 |
|---|---|
| Total Messages: 15 | Date Range: 6/25/2025 |

**Outline of Conversations**



Redacted  15 messages on 6/25/2025 • Redacted • Bo Dittel  Redacted • Bo Dittel  Titi barbara  Redacted

   CARTAGENA_0000538

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 | Redacted

TB | **Titi barbara** Redacted | 6/25/2025, 12:55 AM
What's popping my nephew, today was extremely hot. I love you 🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤

\# | Redacted | 6/25/2025, 12:56 AM
🖤🖤🖤🖤

TB | **Titi barbara** Redacted | 6/25/2025, 12:57 AM
You good

TB | **Titi barbara** Redacted | 6/25/2025, 12:57 AM
Blessings Upon Blessings

TB | **Titi barbara** Redacted | 6/25/2025, 12:31 PM
I Love You🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤🖤😭😭😭😭😭😭😭😭



*Image: ~_Library_SMS_Attachments_d1_01_60965915-95C5-470F-83E3-1D74A8486434_tmp.GIF (38 KB)*

\# | Redacted | 6/25/2025, 3:42 PM
https://www.tmz.com/2025/06/25/tyrone-blackburn-arrested-assault-fat-joe-case/

*Attachment: ~_Library_SMS_Attachments_76_06_E8F32B9F-1F33-4FDA-9983-A327D91F1037_8D65FCD2-7B9F-4239-984E-2AFDADA7DDA6.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_22_02_99AB014A-5DDD-4F0E-A207-066A3B24F025_A6AB6641-646F-415D-B6A4-5A462B61E230.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_1e_14_59C47528-F16C-4D55-8D4A-C02FE1CFCE3C_4820399E-6F16-48B3-9511-16A510B18BB7.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_ef_15_3BAF185B-8292-46B8-A1B6-7B201FDB7630_031E233A-9FD4-49B1-AD5A-CB1B47073803.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_64_04_2F0A8749-9B73-4AF7-9FF1-9572667FBF1A_5E232F7D-5B72-4F9B-B160-EB88EFEAFF90.pluginPayloadAttachment*

TB | **Titi barbara** Redacted | 6/25/2025, 3:43 PM
Wow

TB | **Titi barbara** Redacted | 6/25/2025, 3:51 PM

---

CARTAGENA_0000539

God don't like ugly.  Your mother is helping you from Heaven. I love you with all my 🖤

| TB | **Titi barbara** [Redacted] | 6/25/2025, 3:54 PM |
|---|---|---|

They mad cause they broke in the hood

| TB | **Titi barbara** [Redacted] | 6/25/2025, 5:58 PM |
|---|---|---|

Blessings Upon Blessings 🖤🖤🖤🖤🖤🖤🖤

| TB | **Titi barbara** [Redacted] | 6/25/2025, 8:51 PM |
|---|---|---|

JEALOUS ONES STILL ENVY!!!!!!

| # | [Redacted] | 6/25/2025, 8:53 PM |
|---|---|---|

Love you

| # | [Redacted] | 6/25/2025, 8:54 PM |
|---|---|---|

https://www.instagram.com/reel/DLVfaGWp1AW/?igsh=eHcyMWFmZGsxZmlk

*Attachment: ~_Library_SMS_Attachments_eb_11_4C9AA4FB-5D48-4A82-AA49-3FE940CC4F16_115E4639-EA58-4C1A-991C-A9AD76AD58BA.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_e8_08_886AFC64-A7AA-47E9-B7B7-CCF87E5A0AF4_8856ADDE-1B6A-4345-AA2B-60AD044F15DE.pluginPayloadAttachment*

| TB | **Titi barbara** [Redacted] | 6/25/2025, 8:54 PM |
|---|---|---|

Love you more they jealous of you. You a great person

| TB | **Titi barbara** [Redacted] | 6/25/2025, 8:59 PM |
|---|---|---|

God is great! They have no case. God don't like ugly. Let me know when it's over we gonna eat a lobster together 🦞🦞🦞🦞🦞

CARTAGENA_0000540

**Short Message Report**

| Conversations: 1 | Participants: 6 |
|---|---|
| Total Messages: 2 | Date Range: 6/28/2025 |

**Outline of Conversations**

💬 **Redacted** 2 messages on 6/28/2025 • Redacted • Bo Dittel • Redacted • Bo Dittel • JOE C • Redacted • UNSPECIFIED_PARTICIPANT • Wife

CARTAGENA_0000551

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 [Redacted]

W   **Wife** [Redacted]                   6/28/2025, 9:11 AM
Babe I love you

\#   [Redacted]                    6/28/2025, 9:18 AM
https://www.instagram.com/p/DLYin9FvLA7/?igsh=MTF2amMwYXp6aWNIeA==

*Attachment: ~_Library_SMS_Attachments_ba_10_AA77B840-DCCA-42AA-B869-6A0333932B7A_97875E56-EDEC-4544-96AB-F9FE0BCA6DA5.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_98_08_38E48756-F719-474D-88E6-46897FA27DFA_B3880A58-637B-4093-A4BA-08F1F11FB2E1.pluginPayloadAttachment (58 KB)*

CARTAGENA_0000552

**Short Message Report**

| Conversations: 1 | Participants: 4 |
|---|---|
| Total Messages: 7 | Date Range: 6/21/2025 |

**Outline of Conversations**

💬     **Redacted** • 7 messages on 6/21/2025 • Redacted • Bo Dittel **Redacted** • Bo Dittel • Valid vvs Redacted

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬     ┌ ─ ─ ─ ─ ─ ─ ┐
       │  **Redacted**  │
       └ ─ ─ ─ ─ ─ ─ ┘

VV     **Valid vvs** ┌─────────┐                                          6/21/2025, 3:21 PM
                     │ **Redacted** │
                     └─────────┘

       *Attachment: ~_Library_SMS_Attachments_62_02_C0CA8E21-D570-4A7A-8D89-AFDA211FB7F4_Mr backend.m4a (2 MB)*

VV     **Valid vvs** ┌─────────┐                                          6/21/2025, 3:21 PM
                     │ **Redacted** │
                     └─────────┘

       *Attachment: ~_Library_SMS_Attachments_46_06_7044C939-C704-4C7C-95E1-06B402F14F3B_Double date.m4a (2 MB)*

VV     **Valid vvs** ┌───────────┐                                        6/21/2025, 3:21 PM
                     │ **Redacted** │
                     └───────────┘

       *Attachment: ~_Library_SMS_Attachments_aa_10_26BA2B04-C944-4820-A5F2-2F1FF63F2A4D_King ny city.m4a (1 MB)*

VV     **Valid vvs** ┌─────────┐                                          6/21/2025, 3:48 PM
                     │ **Redacted** │
                     └─────────┘
       https://youtu.be/dYPcRSQcVXg

       *Attachment: ~_Library_SMS_Attachments_9b_11_2C772B4B-7C1D-4953-9280-D67421385CBB_A4DEB5C1-2E54-4271-A97A-61BB0716F7BA.pluginPayloadAttachment*

       *Attachment: ~_Library_SMS_Attachments_77_07_685E073F-0318-4D4A-BDAA-3AA6F123C273_8CA886ED-5BFD-484A-8566-92B0CF2ADE2D.pluginPayloadAttachment (172 KB)*

VV     **Valid vvs** ┌───────────┐                                        6/21/2025, 4:16 PM
                     │ **Redacted** │
                     └───────────┘
       Truth

#      ┌ ─ ─ ─ ─ ─ ┐                                                      6/21/2025, 4:19 PM
       │ **Redacted** │
       └ ─ ─ ─ ─ ─ ┘
       No sir it's T A fake ass law suit

VV     **Valid vvs** ┌─────────┐                                          6/21/2025, 4:27 PM
                     │ **Redacted** │
                     └─────────┘
       Smdh sad man

Confidential                                                              CARTAGENA_0000556

DOCUMENT PRODUCED AS NATIVE

CARTAGENA_0000557

DOCUMENT PRODUCED AS NATIVE

Confidential

DOCUMENT PRODUCED AS NATIVE

CARTAGENA_0000560

**Short Message Report**

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 6 | Date Range: 6/25/2025 |

**Outline of Conversations**

 **Redacted** • 6 messages on 6/25/2025 • **Redacted** • Bo Dittel • **Redacted** • Carlos Security

CARTAGENA_0000562

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 | Redacted

\# | Redacted | 6/25/2025, 3:41 PM

https://www.tmz.com/2025/06/25/tyrone-blackburn-arrested-assault-fat-joe-case/

*Attachment: ~_Library_SMS_Attachments_52_02_C4AD6171-FDCA-4022-B957-F1D36EA46BF6_E56963BF-ED43-4557-88DD-BFA25AFAF0E8.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_94_04_D41AFEFD-E933-4561-B8ED-653CEE908CC4_A7643627-996E-4F3F-B3DC-4EBCBFF724B2.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_d7_07_BEDDDAC9-62EC-459E-BC16-A7D379A26AA2_CF0DA37C-BC43-4CD1-814A-7C82CABE682D.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_bf_15_5A2AD7A1-8C13-4043-96A5-906C26C39405_E7FADD9B-0818-4394-941D-58466E54B2A9.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_30_00_96EB24A8-CE5F-4528-97E6-FE1F4057BC47_BF36186F-7F84-4A95-A1B8-347FFCBF16D4.pluginPayloadAttachment*

CS | **Carlos Security** | Redacted | 6/25/2025, 3:51 PM

I got the info, boss!

I was so shocked when I received it, I nearly swerved off the highway. Honestly, it's beyond frustrating to hear such false things being said.

Joe, you are truly one of the kindest, most generous, and loving clients I've ever had. In the three years we've worked together, I've never seen anything even close to what they're claiming.

Your love and loyalty to your family are what I admire most. That's why I look up to you and value everything you say. You've taught me so much, Joe.

May God continue to bless you. Love and respect always.

Let's goooo Trump!! Haha

\# | Redacted | 6/25/2025, 3:55 PM

Let's gooooo trump

CS | **Carlos Security** | Redacted | 6/25/2025, 3:55 PM

lol

CS | **Carlos Security** | Redacted | 6/25/2025, 3:56 PM

Had to throw that in there in hopes to get a smile out of you

CS | **Carlos Security** | Redacted | 6/25/2025, 3:57 PM

Had to throw that in there in hopes to get a smile out of you

CARTAGENA_0000563

**Short Message Report**

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 5 | Date Range: 5/15/2025 |

**Outline of Conversations**



Redacted · 5 messages on 5/15/2025 · Redacted · Bo Dittel · Redacted · Tony Sunshine
Redacted

CARTAGENA_0000570

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬

\# **Redacted**

5/15/2025, 2:30 AM

*Attachment: ~_Library_SMS_Attachments_9a_10_0796ED3A-63DD-4C0F-8503-E610371ED269_MOV_9753.mov*

| | | |
|---|---|---|
| TN | **Tony Sunshine New** Redacted <br> Peace beloved! | 5/15/2025, 9:39 PM |
| TN | **Tony Sunshine New** Redacted <br> Watch "The alto nights" with Robert dinero Amazon | 5/15/2025, 9:40 PM |
| TN | **Tony Sunshine New** Redacted <br> Thank me later | 5/15/2025, 9:40 PM |
| TN | **Tony Sunshine New** Redacted <br> Watch "The alto nights" with Robert dinero on Amazon | 5/15/2025, 9:40 PM |

CARTAGENA_0000571

DOCUMENT PRODUCED AS NATIVE

CARTAGENA_0000572

**Short Message Report**

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 7 | Date Range: 6/25/2025 |

**Outline of Conversations**

 Redacted • 7 messages on 6/25/2025 • Redacted • Bo Dittel **Redacted** • Tony Sunshine N **Redacted**

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬    [ Redacted ]

TN    **Tony Sunshine New** [ **Redacted** ]      6/25/2025, 8:56 PM
& just like that!!!!

TN    **Tony Sunshine New** [ **Redacted** ]      6/25/2025, 8:57 PM
Another one!

\#    [ Redacted ]      6/25/2025, 8:57 PM
Yessir

TN    **Tony Sunshine New** [ **Redacted** ]      6/25/2025, 8:57 PM
😂

\#    [ Redacted ]      6/25/2025, 8:57 PM
https://www.instagram.com/reel/DLVfaGWp1AW/?igsh=eHcyMWFmZGsxZmlk

*Attachment: ~_Library_SMS_Attachments_93_03_A9DC5BA3-9871-4ACE-A8CE-0518FC3EAC3B_F08E6602-1D92-483D-A532-39E4C39AFEB8.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_55_05_16367D1F-67D3-43B6-BAE4-00BC2E8032BA_7F0AB2E1-3537-4009-9D6E-0A614BAAA04A.pluginPayloadAttachment*

TN    **Tony Sunshine New** [ Redacted ]      6/25/2025, 8:57 PM
Motherfuckers are sitting around, punching the sky right now!!!

TN    **Tony Sunshine New** [ Redacted ]      6/25/2025, 8:57 PM
I told you, my brother, you are anointed by God!!!!!

CARTAGENA_0000574

**Short Message Report**

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 3 | Date Range: 6/25/2025 |

**Outline of Conversations**

 Redacted • 3 messages on 6/25/2025 • < Redacted : The arab Redacted

CARTAGENA_0000577

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 ⌐ Redacted ¬

\# ⌐ **Redacted** ¬                                          6/25/2025, 2:09 PM

https://www.tmz.com/2025/06/25/tyrone-blackburn-arrested-assault-fat-joe-case/

*Attachment: ~_Library_SMS_Attachments_40_00_C4F41F65-48F9-45F5-8797-DADA0D61EB5F_51E003A2-FDFE-44BF-9E74-50D38187D655.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_f0_00_A5547550-3074-4136-B2E2-98DB4C9BFD68_BB90BEAE-9EF2-476C-8C6C-FF75A4F88D55.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_34_04_D8401BC4-A1C6-4806-9C8A-EF31B23300A6_6DEAD7CD-1E28-471B-BA98-B1AABA827240.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_df_15_24CF5F17-3042-4F79-B302-D348F7E439E1_86228E9E-5FE3-4D46-B984-4E537639E51C.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_62_02_B2FA5216-4ECB-4635-8DDA-F0E55FC0E4A8_F1419D5A-E5B2-4ABB-80D3-6EDA41C9C655.pluginPayloadAttachment*

TA   **The arab** ⌐ **Redacted** ¬                        6/25/2025, 2:12 PM

Let GOD rise and let all his enemies skater .  GOD ALWAYS PROTECTS!

\# ⌐ **Redacted** ¬                                          6/25/2025, 2:15 PM

Yessir

CARTAGENA_0000578

**Short Message Report**

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 2 | Date Range: 6/25/2025 |

**Outline of Conversations**

💬 **Redacted** · 2 messages on 6/25/2025 · Redacted · Slow 23 Redacted

CARTAGENA_0000584

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬  [ Redacted ]

\#  [ Redacted ]                                                                    6/25/2025, 3:35 PM

https://www.tmz.com/2025/06/25/tyrone-blackburn-arrested-assault-fat-joe-case/

*Attachment: ~_Library_SMS_Attachments_67_07_9F066CD0-CAA7-42D2-8543-6BB8257071D5_69559621-25EC-4AFA-AC37-E5665986CF2E.pluginPayloadAttachment (3 KB)*

*Attachment: ~_Library_SMS_Attachments_74_04_7198BB32-C71A-4CF7-AD6B-8AD035FB191E_F8FE6C96-67A2-4CF2-8EDC-324F69064BAE.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_18_08_797A2136-0B82-4965-9635-B94059118451_02418B29-633B-479A-9D60-5068A573FD4E.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_de_14_0AA5D1B3-B900-462D-956A-33B3AF4D00F5_26411347-C971-4FFA-BD57-AD551FA39C60.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_88_08_D234B826-E890-40A6-A102-F8E51EA891FE_00C5EA5E-20A3-4999-B447-0FFCDC598117.pluginPayloadAttachment*

S  Slow 23 [ Redacted ]                                                             6/25/2025, 3:36 PM
👀

**Short Message Report**

| | |
|---|---|
| Conversations: 1 | Participants: 3 |
| Total Messages: 4 | Date Range: 5/17/2025 |

**Outline of Conversations**



Redacted · 4 messages on 5/17/2025 · Redacted · Dre 2 · Redacted
UNSPECIFIED_PARTICIPANT

CARTAGENA_0000591

DOCUMENT PRODUCED AS NATIVE

CARTAGENA_0000594

**Short Message Report**

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 5 | Date Range: 6/25/2025 |

**Outline of Conversations**

💬 [Redacted] • 5 messages on 6/25/2025 • [Redacted] • Dre 2 [Redacted]
UNSPECIFIED_PARTICIPANT

CARTAGENA_0000596

**Messages in chronological order** (times are shown in GMT +00:00)

💬    **Redacted**

\#    Redacted                                                    6/25/2025, 1:14 PM
He's locked up this am

\#    Redacted                                                    6/25/2025, 1:14 PM
You should sue

D    **Dre 2**    **Redacted**                                   6/25/2025, 1:14 PM


*Attachment: ~_Library_SMS_Attachments_b7_07_E467C3FC-D6C8-4D9B-8069-62765BCD0AAF_IMG_2315.mov*

\#    **Redacted**                                               6/25/2025, 1:15 PM
The best dre

\#    **Redacted**                                               6/25/2025, 2:09 PM
https://www.tmz.com/2025/06/25/tyrone-blackburn-arrested-assault-fat-joe-case/

*Attachment: ~_Library_SMS_Attachments_ce_14_00487534-395E-48D0-88D0-D45EBA3D9A52_BC4F175B-F1CF-478E-9B64-50EC09E60D35.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_db_11_E24ED083-5BC8-4D6B-B47D-BE5076192F4B_C6DE638A-3CE0-4D9F-959D-63ADDB48F246.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_76_06_71FB62B0-4A6D-4D77-87FA-BAC028B57461_555E057B-2663-4857-B056-6AF3C08EF526.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_63_03_CD7533A5-9F26-4496-A63D-DAB016DCFC99_9E3CD00E-77D1-40C7-91CB-6B3AB2229930.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_b9_09_1BFF42B9-C729-425E-97F3-2BF10FFD0699_C97D828C-5719-4E14-BC81-B7A081BCF8CB.pluginPayloadAttachment*

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬    ┌─────────────┐
      ┊ **Redacted** ┊
      └─────────────┘

\#    ┌─────────────┐                                          6/25/2025, 3:58 PM
      ┊ **Redacted** ┊
      └─────────────┘
      https://www.tmz.com/2025/06/25/tyrone-blackburn-arrested-assault-fat-joe-case/

*Attachment: ~_Library_SMS_Attachments_aa_10_56937BE0-3EDC-49CC-AF44-6467F305C121_DBDBDA2F-427F-43D7-A329-3609B5DA920A.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_5e_14_E8FA7F3C-CDBD-48F0-92DA-64C2E2FD0AF9_EA14CB3F-9A55-45E6-9E50-9F722DF358C3.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_eb_11_A8D63F09-9087-4D0E-8AD3-C795B81BAD9F_8A67C9C5-9B1A-4EBA-8F04-CBAF254F7BA9.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_2d_13_AFEC41F8-E818-42EC-AE53-C8D4ABA3488C_E376DD11-C9A6-4199-9EB8-DC3409357AA6.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_65_05_A5C17F41-7C13-458A-947D-6E6A9A065FD8_9532C345-04C9-4051-B82E-2DD0A128222F.pluginPayloadAttachment*

CARTAGENA_0000604

**Short Message Report**

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 3 | Date Range: 6/25/2025 |

**Outline of Conversations**

💬   Redacted • 3 messages on 6/25/2025 • Redacted • Tran Barrera • Redacted

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬     [ Redacted ]

\#      [ Redacted ]                                               6/25/2025, 4:21 PM

https://www.tmz.com/2025/06/25/tyrone-blackburn-arrested-assault-fat-joe-case/

*Attachment: ~_Library_SMS_Attachments_ca_10_F81BA204-A3B8-43C2-9C86-E3DB87DD193D_E9428D16-3796-4C27-985E-87B6741B4195.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_65_05_CC16EF67-83CC-4630-99BA-0103FD9A15D3_C23086C0-9724-440A-9111-DB8FBD6086E7.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_51_01_1D5FED10-25BE-4E30-AEC5-B9952ADDA099_C7DC4776-53DE-4DF7-B69D-A8FEEDEC9070.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_d8_08_FE0235C5-D8D5-4C0E-9D6D-0CCF919EF6F5_32A7F7C8-554A-4C95-B18A-941047AACCE3.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_9b_11_4C419FE1-1577-4AAC-9104-E14B75A3050F_9E0735C0-CAD8-46F5-A1C0-101EE7B6BB6C.pluginPayloadAttachment*

TB   **Tran Barrera**   [ Redacted ]                         6/25/2025, 4:22 PM
Loved "https://www.tmz.com/2025/06/25/tyrone-blackburn-ar…"

TB   **Tran Barrera**   [ Redacted ]                         6/25/2025, 4:23 PM
He deserves to be locked up and then some

Confidential

DOCUMENT PRODUCED AS NATIVE

Confidential

**Short Message Report**

| Conversations: 1 | Participants: 5 |
|---|---|
| Total Messages: 11 | Date Range: 7/3/2025 |

**Outline of Conversations**



Redacted · 11 messages on 7/3/2025 · Redacted · Bo Dittel · Redacted · Bo Dittel · Jeff Aronson New · Redacted · UNSPECIFIED_PARTICIPANT

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬    `Redacted`

JN   **Jeff Aronson New** ⟨ `Redacted` ⟩       6/23/2025, 1:48 PM
https://www.instagram.com/p/DLJBn8KMrG4/?igsh=NTcwc2prMjIuaWto

*Attachment: ~_Library_SMS_Attachments_b9_09_09852C28-AC69-47E6-BEB5-AE04AFE390A2_5376292C-A5C3-4DCE-91AB-E04842076A10.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_1f_15_C805E2DD-E783-4CD5-BA75-CC53E519276A_6AB72286-07A1-49C6-B63B-44E51A58793C.pluginPayloadAttachment (42 KB)*

JN   **Jeff Aronson New** ⟨ `Redacted` ⟩       6/23/2025, 1:48 PM
he's getting destroyed on social media

\#   `Redacted`       6/23/2025, 1:52 PM
We been staying away from it

JN   **Jeff Aronson New** ⟨ `Redacted` ⟩       6/23/2025, 1:53 PM
Liked "We been staying away from it"

JN   **Jeff Aronson New** ⟨ `Redacted` ⟩       6/24/2025, 5:08 PM
🙍🙍🙍



*Image: ~_Library_SMS_Attachments_26_06_92872C17-0702-45A6-9638-168338DB6A9A_Screenshot 2025-06-24 at 1.08.02 PM.jpeg (450 KB)*

\#   `Redacted`       6/24/2025, 5:09 PM
When it rains

JN   **Jeff Aronson New** `Redacted`       6/24/2025, 5:10 PM
oh my god 😩

---

CARTAGENA_0000511

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 | Redacted

| JN | **Jeff Aronson New** Redacted | 7/3/2025, 7:56 PM |

https://share.google/WCXfq0sTNCqc4eNt1

*Attachment: ~_Library_SMS_Attachments_57_07_BA354141-9F20-42C9-BAC7-D3F3602B9403_568BC992-4022-4C24-A4FE-4E7FFFD67A0D.pluginPayloadAttachment (16 KB)*

*Attachment: ~_Library_SMS_Attachments_f0_00_4316A6E0-5966-497B-98C9-135BA74E199B_12DCC170-4964-4838-BB51-79DE0381FDF6.pluginPayloadAttachment*

| JN | **Jeff Aronson New** Redacted | 7/3/2025, 7:56 PM |

Terrance "T.A." Dixon told a federal judge he has four audio recordings that he says validate his $20 million lawsuit against Fat Joe.
 Source: AllHipHop

| # | Redacted | 7/3/2025, 8:09 PM |

This guy he's no fat joe on audio recordings

| # | Redacted | 7/3/2025, 8:10 PM |

Pistol Pete rich player all bullshit

| JN | **Jeff Aronson New** Redacted | 7/3/2025, 11:30 PM |

https://www.instagram.com/andresogward?igsh=MXVnZXc4OTRvanBjdQ==

*Attachment: ~_Library_SMS_Attachments_49_09_F9530295-3547-4834-80C5-76A967A1156B_2428FA29-B180-4C65-9A89-5100AA4C49ED.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_de_14_D5337A7A-67A3-4721-BA17-4D79AC3D5A40_524B1BE6-BA9C-4554-AE59-DD9065B1280E.pluginPayloadAttachment (3 KB)*

| JN | **Jeff Aronson New** Redacted | 7/3/2025, 11:30 PM |

???

| # | Redacted | 7/3/2025, 11:30 PM |

We can get him

| JN | **Jeff Aronson New** Redacted | 7/3/2025, 11:31 PM |

i'm looking for anyone

| JN | **Jeff Aronson New** Redacted | 7/3/2025, 11:31 PM |

idk

| # | Redacted | 7/3/2025, 11:31 PM |

No we on it

| JN | **Jeff Aronson New** Redacted | 7/3/2025, 11:31 PM |

Liked "No we on it "

---

CARTAGENA_0000505

**Short Message Report**

| Conversations: 1 | Participants: 5 |
|---|---|
| Total Messages: 34 | Date Range: 6/23/2025 - 6/25/2025 |

**Outline of Conversations**

💬 **+19547786112** • 34 messages between 6/23/2025 - 6/25/2025 • Redacted Bo Dittel Redacted • Bo Dittel Redacted • Jeff Aronson New **Redacted** UNSPECIFIED_PARTICIPANT

CARTAGENA_0000510



*Image: ~_Library_SMS_Attachments_ba_10_022627FA-9DC7-40EB-8625-FF22F787F39C_IMG_2252.jpeg (475 KB)*

| # | Redacted | 6/24/2025, 5:10 PM |
| | Is that Wallgreens | |

| JN | Jeff Aronson New  Redacted | 6/24/2025, 5:11 PM |
| | target & walmart | |

| JN | Jeff Aronson New  Redacted | 6/24/2025, 5:11 PM |
| | wtf | |

| # | Redacted | 6/24/2025, 5:12 PM |
| | Yeah we gotta tighten up our belts I'm so sorry this is happening but if they slander with lies people just believe it | |

| JN | Jeff Aronson New  Redacted | 6/24/2025, 5:12 PM |
| | i know | |

| # | Redacted | 6/24/2025, 6:14 PM |
| | Khaled will take over rewind and promote everyday | |

| JN | Jeff Aronson New  Redacted | 6/24/2025, 6:16 PM |
| | let's chat later on a zoom | |

| # | Redacted | 6/24/2025, 6:47 PM |
| | He agreed | |

| # | Redacted | 6/25/2025, 1:17 PM |
| | He's locked up | |

| # | Redacted | 6/25/2025, 1:18 PM |
| | Press release real soon | |

| JN | Jeff Aronson New  Redacted | 6/25/2025, 1:40 PM |
| | thank goodness | |

| # | Redacted | 6/25/2025, 1:41 PM |
| | Yessir | |

| # | Redacted | 6/25/2025, 2:08 PM |
| | https://www.tmz.com/2025/06/25/tyrone-blackburn-arrested-assault-fat-joe-case/ | |

Confidential

*Attachment: ~_Library_SMS_Attachments_54_04_9330FB57-2FB5-4BA3-9291-AAF78F35B30A_C9499A6E-6D3C-4CDC-9ADE-2BD54A8D5C3C.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_9a_10_F74DD249-B243-4911-8F6F-75146C837FB2_46277DCE-C2C3-4F3F-B629-0AA43C26830C.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_36_06_8F1012A6-739E-4394-88AD-0F1168287E53_55EECE64-5D54-4637-B88C-07C3010B5680.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_4e_14_A5BD6CB0-5D37-46BB-B8AE-BFEA6563BC3D_FA560540-C9FA-4CB6-B464-1160851E061D.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_ed_13_A7ACA48F-1738-43AF-88CC-545012CBA22D_ABA6FC76-8F05-43B5-B06B-DD5DB2B11242.pluginPayloadAttachment*

| | | |
|---|---|---|
| JN | **Jeff Aronson New** [ Redacted ] | 6/25/2025, 2:14 PM |
| | Lets pray this judge throws it out and throws this piece of shit in jail | |
| # | [ Redacted ] | 6/25/2025, 2:18 PM |
| | It will happen brother i promise ty for standing with me i appreciate on another level | |
| JN | **Jeff Aronson New** [ Redacted ] | 6/25/2025, 2:29 PM |
| | Loved "It will happen brother i promise ty for standing with me i appreciate on another level" | |
| JN | **Jeff Aronson New** [ Redacted ] | 6/25/2025, 5:50 PM |
| | call me | |
| JN | **Jeff Aronson New** [ Redacted ] | 6/25/2025, 6:40 PM |
| | do you know him | |

*Attachment: ~_Library_SMS_Attachments_86_06_89CA840C-426F-44E4-AB5E-5F7977A34DD1_IMG_9519.HEIC (4 MB)*

| | | |
|---|---|---|
| # | [ Redacted ] | 6/25/2025, 7:04 PM |
| | I like him | |
| # | [ Redacted ] | 6/25/2025, 7:04 PM |
| | No | |
| JN | **Jeff Aronson New** [ Redacted ] | 6/25/2025, 7:07 PM |
| | u feee | |
| JN | **Jeff Aronson New** **Redacted** | 6/25/2025, 7:56 PM |
| | https://www.instagram.com/victorcruz?igsh=d3R3em93eHo2ZjJ4 | |

*Attachment: ~_Library_SMS_Attachments_40_00_7CB31A1A-5925-4BEA-AEA3-FC3EDB132E80_806705BE-5673-4BEF-944B-02693B12C2D1.pluginPayloadAttachment*

*Attachment: ~_Library_SMS_Attachments_ce_14_A30DF9D0-48B5-4432-8D53-1227466F6CF6_BF991DBF-8D7B-4132-BA71-97AC9617479C.pluginPayloadAttachment (3 KB)*

Confidential

DOCUMENT PRODUCED AS NATIVE

Confidential

DOCUMENT PRODUCED AS NATIVE

Confidential



Confidential

CARTAGENA_0000700



CARTAGENA_0000701

12:12

**Redacted**

Especially when chopped up all the way up and made it a hit because it was to long
That's a fact
Everything I've I have receipts
10:14 AM

You didn't send me her info
And besides bro
My vocals that's performed on his albums and wrote don't have nothing to do with the other
10:15 AM

And I put in so much time making sure the shows and music was on point and tell him don't forget what I did for him and Ja rule in Portugal
10:16 AM

**Redacted** Erica Moreira
10:16 AM ✓✓

And I didn't get a dime
There was nobody there my

12:12    .ill 5G° 76⚡

**Redacted**

And I didn't get a dime
There was nobody there my
brother
10:16 AM

This is my life
And everyone in they mother
is hitting me for my story
I'm a real one
So tell him to be a real one
please
10:17 AM

THE LEGENDARY TA
The name he gave me
10:17 AM

The ppl wanna know what
happen and how    10:18 AM

Niggas is going bad every
day bro
I've been very quiet
10:18 AM

Sounds like a threat but I'll
relay the message.
10:24 AM

It's no threat



12:12    .ill 5G 76

**Redacted**

It's no threat
It's what he owes me my
brother
Again I didn't go bad
Again will again will FAT JOE
do the right thing for the one
person whooooo reallllllllly
helped him
10:25 AM

Like I said reach out to Erica
with your requests and let's
see what happens. When you
first reached out he had no
problem doing the right thing.
But yet again the demand
has changed.
10:27 AM ✓✓

My brother my life rich
10:28 AM

Can you ask joe if I can get
added on for sound
exchange for the songs I was
on from his 2 albums Jose
and darkside 1
Songs

Confidential

CARTAGENA_0000704

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## J. CARTAGENA ENTERPRISES, LLC

This Limited Liability Company Agreement (the "**Agreement**"), of J. Cartagena Enterprises, LLC, a Delaware limited liability company (the "**Company**"), is entered into by the undersigned (the "**Member**") intending to be effective as of the date of the filing of the Certificate of Formation (defined and referenced below).

The Company was formed as a limited liability company under the Delaware Limited Liability Company Act, Del. Code, tit. 6, §§ 18-101 et seq., as amended from time to time (the "**Act**"), for the purposes set forth herein.

The sole Member desires to enter into this Agreement to set forth the terms and conditions of the business and affairs of the Company and to determine the rights and obligations of its Member.

NOW, THEREFORE, the Member, intending to be legally bound by this Agreement, hereby agrees that the limited liability company agreement of the Company shall be as follows:

1.    **Name.**  The name of the limited liability company is J. Cartagena Enterprises, LLC.

2.    **Organization.**  The Company is a limited liability company pursuant to the provisions of the Act.  The Company was formed upon the filing of its initial certificate of formation (the "**Certificate of Formation**") in the Office of the Secretary of State of the State of Delaware.

3.    **Purpose.**  The purpose of the Company shall be to engage in any lawful business that may be engaged in by a limited liability company organized under the Act, as such business activities may be determined by the Manager from time to time.  The Company shall have the authority to do all things necessary or convenient to accomplish its purpose and operate its business as described in this Section 3.  The Company shall have all powers of a limited liability company under the Act and the power to do all things necessary or convenient to accomplish its purpose and operate its business as described in this Section 3.

4.    **Registered Office; Registered Agent.**  The address of the registered office of the Company in the State of Delaware and the name and the address of the registered agent of the Company required to be maintained by Section 18-104 of the Act is Corporate Creations Network, Inc. located at 3411 Silverside Rd., Suite #104, Wilmington, Delaware 19810.

5.    **Member.**  The name and address of the Member is:

Joseph Cartagena

**Redacted**

**6.**    **Capital Contributions.**  The Member has contributed capital to the Company in the amounts reflected on the books and records of the Company.  The Member shall have no obligation to make any additional capital contributions to the Company.  The Member may make such additional capital contributions to the Company as the Member determines are necessary, appropriate or desirable.

**7.**    **Management.**

(a) Subject to such matters as are expressly reserved hereunder or under the Act to the Members for decision, the business and affairs of the Company shall be managed by the Board of Managers (the "Board"), which shall be responsible for policy-setting, approving the overall direction of the Company and making all decisions affecting the business and affairs of the Company.

(b) The Board shall consist of a single Manager who shall be appointed by a Majority of Units.  On the Effective Date the Manager shall be Joseph Cartagena. The number of Managers on the Board may only be increased upon the consent of a Majority of Units and the current Board.  Each Manager shall serve until his or her or its successor has been duly appointed and qualified, or until his or her or its earlier removal for cause, resignation, end of term, death or disability.   Managers shall be entitled to reasonable compensation for their services to the Company which shall be subject to the consent of the Member.

(c) The Board shall meet at such times as determined by the Board to be necessary for the management of the Company's business.  Meetings of the Board may be called by any Manager on at least two (2) days prior written notice of the time and place of such meeting.  The presence of a majority of the voting power of the Managers then in office shall constitute a quorum for the transaction of business by the Board.

(d)  Notice of any Board meeting may be waived by any member of the Board before or after such meeting.

(e) Each Manager is empowered, singly, to take any and all actions it shall determine on behalf of the Company, subject to its fiduciary duties to the Member, except that no action shall be taken if a Member of the Board affirmatively votes against such action.  Each Member of the Board shall apprise the other Member of all actions taken on behalf of the Company.

(f) Meetings of the Board may be conducted in person or by conference telephone facilities or other electronic methods.  Any action required or permitted to be taken at any meeting of the Board may be taken without a meeting if a majority of the voting power of the Managers then in office and constituting the Board consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board.

(e) The Manager is empowered to appoint officers of the Company who shall serve at the pleasure of the Board.

Confidential    CARTAGENA_0000706

8.      **Distributions and Allocations.**  All distributions of cash or other assets of the Company shall be made and paid to the Member at such time and in such amounts as the Member may determine.  All items of income, gain, loss, deduction and credit shall be allocated to the Member.

9.      **Tax Status.**  For United States federal income tax purposes, at all times that the Member is the sole member of the Company (a "**No Tax Entity Period**"), the Company and the Member desire and intend that the Company be disregarded as an entity separate from the Member pursuant to Treasury Regulations Section 301.7701-3.  Accordingly, no election will be made to treat the Company as a corporation for income tax purposes.

10.     **Capital Accounts.**  At all times during a No Tax Entity Period, the Company shall not be required to establish or maintain capital accounts.  At all other times, as necessary, a capital account shall be maintained for each Member in accordance with Treasury Regulations Sections 1.704-1(b)(2)(iv) and 1.704-2.

11.     **Liability of Members; Indemnification.**

(a)      Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member.  The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or the management of its business or affairs under this Agreement or the Act shall not be grounds for imposing personal liability on the Member for any debts, liabilities or obligations of the Company.

(b)      The Company shall, to the fullest extent provided or allowed by law, indemnify, save harmless and pay all judgments and claims against the Member, each of the Member's officers, directors, agents, affiliates, heirs, legal representatives, successors and assigns and any managers and/or officers appointed by the Member (each, an "**Indemnified Party**") from, against and in respect of any and all liability, loss, damage, cost and expense incurred or sustained by the Indemnified Party in connection with the business of the Company or by reason of any act performed or omitted to be performed in connection with the activities of the Company or in dealing with third parties on behalf of the Company, including costs and attorneys' fees before and at trial and at all appellate levels, whether or not suit is instituted (which attorneys' fees may be paid as incurred), and any amounts expended in the settlement of any claims of liability, loss or damage.  The provisions of this section shall be in addition to and not in limitation of any other rights of indemnification and reimbursement or limitations of liability to which an Indemnified Party may be entitled under the Act, common law, or otherwise.

12.     **Books and Records.**  The Member shall keep, or cause to be kept true and correct books of account, in which shall be entered fully and accurately each and every transaction of the Company.  The Company's taxable and fiscal years shall be the same as the taxable and fiscal years of the Member.

-3-

CARTAGENA_0000707

13. **Term.** The term of the Company shall continue until the Company is dissolved. The Company shall be dissolved upon the first to occur of (a) the written consent of the Member or (b) the entry of a decree of judicial dissolution under the Act.

14. **Invalid Provisions.** To the extent any provision of this Agreement is prohibited or ineffective under the Act, this Agreement shall be deemed to be amended to the least extent necessary in order to make this Agreement effective under the Act.  In the event the Act is subsequently amended or interpreted in such a way to validate any provision of this Agreement that was formerly invalid, such provision shall be considered to be valid from the effective date of such amendment or interpretation.

15. **Amendment.** This Agreement may not be altered or modified except by the written consent of the Member.  Section 7 hereof may not be modified except with the consent of the Member and the Board.

16. **Governing Law.** This Agreement shall be governed by, and construed under, the laws of the State of Delaware, all rights and remedies being governed by said laws.

17. **Headings.** The article and section headings in this Agreement are inserted as a matter of convenience and are for reference only and shall not be construed to define, limit, extend or describe the scope of this Agreement or the intent of any provision.

**[continued on signature page]**

Confidential

CARTAGENA_0000708

**IN WITNESS WHEREOF**, the undersigned member, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the date first set forth above.

DocuSigned by:

1102F618EE7E47C

Joseph Cartagena

-5-



**From:** Jason Horowitz [Redacted]
**Date:** July 21, 2025 at 6:46:22 PM EDT
**To:** Erica Moreira <e@ericamoreira.com>
**Subject: Fwd: [INT] FJ Legal Response**

See below.
Call if anything to discuss

---------- Forwarded message ---------
From: **Dane Aagaard** [Redacted]
Date: Mon, Jul 21, 2025 at 2:41 PM
Subject: [INT] FJ Legal Response
To: Jason Horowitz [Redacted] Logan Swaim
[Redacted] Mike Varney [Redacted]

**Brand**: Boost Mobile
**Investment**: $675,000
**Status**: Committed/In IO
**From sponsor (6/20):** *Please move forward immediately with pausing all media and pulling any mention of Boost (logos, ad mentions, static placements, etc.) from any Joe + Jada content while we monitor how these allegations unfold.*

**Brand**: Ro
**Investment**: $400,000
**Status**: Committed/In IO
**From sponsor (6/23):** *In light of the most recent news coming out of last week, we'd like to **postpone Ro's launch on the show for all conditions (Body + ED)** and revisit next steps towards the end of July. We appreciate the partnership and flexibility -- and will keep you all posted as things develop.*

**Brand**: DAZN
**Investment**: $40,000

CARTAGENA_0000787

**Status**: In planning
**From sponsor (6/20):** *As I'm sure you can imagine, with the news coming out recently, we will be taking a step back here...*



Dane Aagaard
Chief Revenue Officer
c: (201) 414-7844

Confidential

**From:** Tom Bevacqua
< Redacted @redstarmerch.com>
**Date:** June 20, 2025 at 10:11:34 AM EDT
**To:** Erica Moreira <e@ericamoreira.com>
**Cc:** Matthew Bower
< Redacted @redstarmerch.com>
**Subject: Re: Fat Joe Deal**

Good morning Erica-

Apologies, but with the recent unfortunate
news, we need to postpone this call. I
sincerely hope we can resume conversations
sometime in the near future once things are
resolved. I hope you can understand.

Best,
Tom

—
TOM BEVACQUA
RED STAR MERCHANDISE
CHARLOTTESVILLE, VA | NASHVILLE, TN


On Jun 18, 2025, at 4:52 PM, Tom
Bevacqua
< Redacted @redstarmerch.com> wrote:

Likewise! I will be calling you from
Redacted

## AFFIDAVIT OF TIMOTHY DIXON

State of New York         )

County of New York     ) ss:

I, TIMOTHY DIXON, being duly sworn, deposes and says:

1. I am over the age of 18, and am competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit.

2. My brother is Terrance Dixon.

3. Terrance is unemployed and sleeps on our grandmother's couch.

4. I am an entrepreneur and run an online marketing platform that works with Market America and Joseph Cartagena ("Joe").

5. I also make music with the Terror Squad, Joe's hip-hop group.

6. Terrance has threatened me repeatedly over the past two years, telling me that I need to stop working with Joe, Market America, and the Terror Squad.

7. I refused to give in to Terrance's threats.

8. Terrance asked me to corroborate his lies against Joe, stating that in return he would give me a share of the money he received from Joe.

9. Again, I refused and Terrance continued his threats against me.

10. Terrance has threatened me over text message and on social media, including from various Instagram accounts. Terrance creates fake Instagram accounts and sends me threats from different profiles. Terrance has impersonated me on these fake accounts and has written threats against himself, pretending to be me. The most recent message I received from Terrance was from five days ago.

11. Terrance has also threatened me physically, threatening to beat me up and shoot me. The last time I saw Terrance, he came up from behind and started punching me.

12. In his threats, Terrance has stated that if I do not stop working with Joe, Market America, and the Terror Squad, he is going to continue putting out false information about Joe.

13. Terrance has also stated that he is not going to get a job that, instead, he was going to go after Joe for all of his money to make his life easier.

14. Terrance also falsely stated that he wrote Joe's music for him.

15. Terrance has also falsely accused me of making threats against him.

16. Growing up, Terrance had a history of stealing, bullying, and manipulating family members and friends. Specifically, Terrance has a history of borrowing money from family members, spending the money irresponsibly, and then threatening people in an attempt to pay back his debts. Currently, Terrance owes me several thousand dollars.

Under penalty of perjury, I affirm, declare and swear that the foregoing is true and correct.

_Timothy Dixon_
TIMOTHY DIXON

Subscribed and sworn to
this _____ day of _____,

_____
Notary Public

2



                                             

## DECLARATION OF JAMES HUNT

I, James Hunt, declare the following to be true under penalty of perjury:

1.  I, James Hunt, am a licensed private investigator in the state of New Jersey.

2.  On April 28, 2025, at approximately 7:30pm ET, I spoke with Nicole Varcasia outside of Redacted
    **Redacted**

3.  Ms. Varcasia stated, in sum and substance: She is not a client of Tyrone Blackburn and has never spoken with him. She stated that she does know Terrance Dixon (a/k/a TA), and that she called and spoke with TA recently after learning that he had posted on Instagram regarding her prior relationship with Joseph Cartagena. She stated that she was not collaborating with Mr. Blackburn or Mr. Dixon or attempting to cause harm to Mr. Cartagena.

4.  I played two recordings for Ms. Varcasia. On the first recording, she identified the voice as her friend's voice, not her cousin's voice. On the second recording, she identified the voice has her own. She stated that the recording of her voice was taken during the above mentioned conversation with TA and that she was not aware she was being recorded.

_____
                                                    ]

The foregoing was sworn to and subscribed before me on

April 29, 2025 in New Jersey

KIMBERLE D MENNELLA
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 2431456
MY COMMISSION EXPIRES MAR. 21, 2028

Kimberle D. Mennella

[PRINT NAME/ADD NOTARY OR OTHER STAMP]

Kimberle D. Mennella

04/29/2025 3:05 PM

Confidential

Confidential



**RELIANT**
TALENT AGENCY

Agreement made this date, April 23, 2025 by and between Sneaker Addict Touring LLC f/s/o Joseph Cartagena p/k/a "Fat Joe" (hereinafter referred to as Artist) and **SI Ticketing Entertainment, LLC** (hereinafter referred to as Purchaser). It is understood and mutually agreed that the Purchaser engages the Artist to perform the following engagement upon all the terms and conditions hereinafter set forth:

It is understood and mutually agreed that the Purchaser engages the Artist to provide the entertainment generally described as the "Performance" listed herein. The Artist hereby agrees to provide the Purchaser with the "Performance" subject to all of the Terms and Conditions herein set forth.

| | |
|---|---|
| **Artist** | **Fat Joe** |
| **Date** | **Saturday, October 11, 2025** |
| **Venue** | **Sports Illustrated Stadium** 600 Cape May St, Harrison, NJ, 07029, United States |

**1.    Deal Terms**

The Purchaser hereby agrees to pay Artist **$80,000.00 FLAT Guarantee NET to Artist, PLUS Purchaser to provide a $10,000.00 Travel Buyout** for the Performance(s).

**2.    Additional Terms**

Purchaser to provide and pay for high quality Sound and Lights per Artist specifications.

Purchaser to provide and pay for hospitality per Artist requirements.

Purchaser requests the performance to be included on Artist's promotional channels such as Artist website, Artist social media channels, Artist tour listings, Artist public relations.

Purchaser requests Artist presence at **15 minute** VIP Meet & Greet for maximum of twenty (20) people. Artist management to advise if before or after the show.

**3.    Event Details**

| | | |
|---|---|---|
| Venue Capacity | TBD | |
| Talent Buyer | Jennifer McKell \| jmckell@nvrdulevents.com \| (615) 415-4968 | |
| Production Contact | \| \| | |
| Marketing Contact | \| \| | |
| Performance Type | Track Show | |
| Billing | TBD | |
| Performance Length | **45** Minutes | |
| Additional Acts | Ludacris, Ashanti, Flo Rida | |
| Radius Restrictions | Artist will not publicly perform without consent from Purchaser within **5**0 miles, **3**0 days prior to | |
| Merch | Hard: 90% \| Soft: 90% \| Artist Sells | |
| Announcement | TBD | |
| On Sale | TBD | |
| Schedule | 7:00 PM | Doors Open |

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

CARTAGENA_0000766

4.     Payment Schedule

Payments for the Performance(s) are to be paid on the following payment schedule. Additional transaction fees may apply.

| | | |
|---|---|---|
| **Deposit and Travel Buyout** | due when contract is issued | $ 50,000.00 |
| Agency Commission | due upon FEC | $ 10,000.00 |
| Balance | due 9/27/25 | $ 40,000.00 |

**Deposit:** To be paid to **Sneaker Addict Touring LLC ; Agency Commission to be made to** Reliant Talent Agency, LLC.

Payment to be made by Wire Transfer, ACH Bank Transfer or Check. **Balance:** To be made payable to **Sneaker Addict**

**Touring LLC** . Method of payment to be advanced with Artist.

**Reliant Talent Agency Wire Info:**                         **Reliant Talent Agency Check Info:**

Account Name: Reliant Talent Agency, LLC                Make check payable to: Reliant Talent Agency, LLC
Bank: ServisFirst Bank                                             Mailing Address:
Bank Address: 401 Meridian Street, Suite 100 - Huntsville, AL 35801    1610 West End Avenue, Suite 120
Account #: 5001187573                                           Nashville, TN 37203
Routing #: 062006505

**Sneaker Addict Touring Wire Info - See Exhibit A**

**Contract Due:  June 1, 2025**

5.     **Ticket Scaling**

| | |
|---|---|
| *Gross Potential* | **$ 0.00** |
| *Net Potential* | **$ 0.00** |

6.     **Approved Production Expenses**

**EXPENSES** Following expenses must be reviewed and approved by the Artist.

| TOTAL EXPENSES | | DEAL CALCULATIONS | |
|---|---|---|---|
| Fixed Expenses | $ 0.00 | Net Potential | $ 0.00 |
| Variable Expenses | $ 0.00 | Total Est. Expenses | $ 0.00 |
| Promoter Profit | $ 0.00 | Amount to Split | $ 0.00 |
| Split Point | $ 0.00 | **Walkout Potential** | **$ 90,000.00** |

7.     **Artist's Compensation**

If payment to Artist is based in whole or in part on receipts from Artist's engagement hereunder, Purchaser shall first apply any and all receipts derived from Artist's engagement toward the payments required to be made by Purchaser hereunder. Purchaser agrees to provide Artist or Artist's representative with a certified statement of the gross receipts of Artist's engagement within two (2) hours following Artist's engagement. Artist may have a representative present at the box office who shall have access to Purchaser's box office records relating to Artist's engagement. Artist's compensation shall be paid to Artist without any deductions for taxes, fees, levies or union dues whatsoever, all of which shall be the sole responsibility of Purchaser.

8.     **Balance of Guarantee**

The balance of the Guarantee shall be paid to Artist via bank wire no later than the scheduled engagement date if Purchaser fails to present the engagement.

9.     **Overages**

All overage monies owed to Artist shall be paid to Artist immediately following Artist's performance by cash or cashier's check only.

10.     **Royalties**

Purchaser will be responsible for the payment of all music royalties in connection with Artist's engagement hereunder.

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

**11.** Work Permits and Visas

Purchaser shall be solely responsible for procuring and paying for, at no cost to Artist, all work permits and visas required for the engagement. Failure to procure such work permits and visas or provide necessary documentation to obtain them will be deemed a material breach of this Agreement, and Artist (i) will be relieved of any further obligations Artist may have pursuant to this Agreement; (ii) shall have the right to retain all monies previously paid by Purchaser; and (iii) shall be entitled to exercise all rights and remedies otherwise available to Artist at law, in equity or otherwise as if Artist has fully performed all obligations under this Agreement. Artist agrees to provide all personal information reasonably required in order to enable Purchaser to procure such work permits and visas.

**12.    Confidentiality**

Purchaser understands and agrees that no information regarding show grosses or attendance will be reported to any third party without the express prior written permission of Artist or Artist's representative. Failure to comply will be treated as a material breach of this Agreement, and Artist reserves all rights and remedies available to Artist at law, in equity or otherwise. Under no circumstance is Purchaser to announce or advertise the engagement without the prior written approval of Artist or Artist's representative.

**13.    Artist's Right to Payment of Guarantee in Advance**

If: (a) Purchaser fails to pay when due any amounts owed Artist hereunder when due; or (b)Purchaser fails to perform any material obligations hereunder, or (c) Artist has good faith reason to believe the Engagement may be cancelled, then Artist shall have the right to request full payment of the Guarantee in advance of the engagement date(s) and Purchaser agrees to remit full payment of the Guarantee to Artist via bank wire promptly upon request.

**14.    Billing**

Artist's engagement hereunder shall receive billing in such order, form, size and prominence as directed by Artist or Artist's representative in all advertising and publicity issued by or under the control of Purchaser, including, but not limited to, displays, newspapers, radio and television ads, posters and house boards.

**15.    Stage Seats**

It is understood and agreed that no stage seats are to be sold or used without the prior written consent of Artist or Artist's representative.

**16.    Promotion**

Purchaser shall not announce, advertise, promote or sell tickets to Artist's engagement until written authorization has been obtained from Artist or Artist's representative. Purchaser agrees to promote the engagement to the best of Purchaser's ability by print, radio, and website and otherwise. There shall be no promotion or co-promotion with any radio station without the prior written approval of Artist or Artist's representative. Purchaser shall not commit Artist to any interviews, promotional appearances, meet and greets or other promotional activities without the prior written consent of Artist or Artist's representative.

**17.    Insurance**

Purchaser shall add Artist and Artist's employees as additional insureds to a commercial general liability insurance policy with limits of liability of Five Million Dollars ($5,000,000) for each occurrence in the event of death or bodily injury arising from the negligence of Purchaser as promoter and operator of the Venue. In addition, Artist and Artist's employees shall be covered by Purchaser's worker's compensation insurance. Purchaser shall provide evidence of the required insurance coverage prior to Artist's engagement hereunder.

**18.    Artist's Cancellation**

Purchaser agrees that Artist may cancel Artist's engagement hereunder without liability by giving the Purchaser notice thereof at least thirty (30) days prior to the commencement date of the engagement hereunder. Upon termination of this agreement in accordance with this paragraph, Artist shall return to Purchaser any deposit previously received by Artist in connection with the engagement. Subject to the foregoing, upon such termination, the parties shall have no further rights or obligations hereunder, and each of the parties shall bear its own costs incurred in connection with this agreement.

**19.    Security**

The Purchaser shall guarantee proper security at all times to ensure the safety of the Artist, auxiliary personnel, instruments and all equipment, costumes and personal property during and after the performance. Particular security must be provided in the areas of the stage, dressing rooms and all exits and entrances to the auditorium and the remote mixing console. Security protection to commence upon the arrival of the Artist on the premises.

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

20.    **Recording, Reproduction or Transmission of Performance**

Purchaser shall not itself nor shall it permit others to record, broadcast, televise, photograph or otherwise reproduce the Performance without prior written consent of the Artist.

21.    **Controlling Authority**

Artist shall have the sole and exclusive control over the production and presentation of the Performance, including but not limited to the details, means, and methods of the performing personnel, and Artist shall have the sole right or may see fit to designate and change at any time the performing personnel.

22.    **Intellectual Property**

The Parties acknowledge that the Artist shall perform its obligations under the terms of this Agreement as an independent contractor and not as an employee of Purchaser. As such, all intellectual property rights, including copyrights, arising out of or deriving from the Performance shall be owned exclusively by the Artist.

23.    **Merchandising**

Artist shall have the exclusive right to sell souvenir programs, photographs, records and any and all types of merchandise including, but not limited to, articles of clothing (i.e., T-shirts-hats, etc.), posters, stickers or other merchandise on the premises of the Place of Performance during the Date of the Performance, without any participation in proceeds by Purchaser, subject however to concessionaire's requirements if any.

24.    **Right to Likeness**

Purchaser shall be entitled to advertise and promote the appearance of Artist at the Performance solely for the purpose of increasing the attendance at Performance. Purchaser, however, may not use Artist's name or likeness as an endorsement of any product or service nor in connection with any commercial tie-up without Artist's prior written consent.

25.    **Term and Termination**

    a.    **Term.**  This agreement shall stay in effect through and including the final engagement date as noted above.

    b.    **Termination.**  In the event Purchaser refuses or neglects to provide any of the items or to perform any of its obligations herein stated, and/or fails to make any of the payments as provided herein, Artist shall have the right to refuse to perform this Agreement, shall retain any amounts paid to Artist by Purchaser, and Purchaser shall remain liable to Artist for the agreed Payment under this Agreement. In addition, if, on or before Date of Performance, Purchaser has failed, neglected, or refused to perform any contract with any other performer for any other engagement, or if the financial standing or credit of Purchaser fails or refuses to make such payment forthwith, Artist shall have the right to cancel this Agreement by notice to Purchaser to that effect, and to retain any amounts theretofore paid to Artist by Purchaser and Purchaser shall remain liable to Artist for the agreed Payment under this Agreement.

26.    **Prevailing Party**

If any legal action or other proceeding is brought for any breach of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs incurred in bringing such action or proceeding, in addition to any other relief to which such party may be entitled.

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

If, as the result of a Force Majeure Event (as defined below), Artist is unable to, or is prevented from, performing the engagement or any portion thereof, Artist's obligations hereunder will be fully excused, there shall be no claims of any kind for damages or expenses of any kind by Purchaser, and Purchaser shall bear its own costs and expenses in connection with this Agreement. Notwithstanding the foregoing: (i) Purchaser shall be obligated and liable to Artist for such proportionate amount of the payments provided for herein as may be due hereunder for any performance(s) which Artist may have rendered up to the time of the inability to perform by reason of such Force Majeure Event; and (ii) in the event of such non-performance as a result of a Force Majeure Event, if Artist is ready, willing and able to perform (but for the occurrence of such Force Majeure Event), Purchaser shall nevertheless pay Artist an amount equal to the full Guarantee plus all other payments and compensation due hereunder. For clarification, in the event of cancellation due to any Force Majeure Event, and whether or not Artist is ready, willing and able to perform, Purchaser shall remain responsible for all transportation, accommodations, expense reimbursements and any other payments or compensation due Artist and Artist's crew and entourage pursuant to the terms of this Agreement.

A "Force Majeure Event" shall mean, but shall not be limited to, any one or more of the following acts which makes any performance by Artist contemplated by this Agreement impossible, infeasible or unsafe: acts of God; epidemic, acts of public enemy; acts or orders of governmental authority; acts or threats of terrorism; insurrections; riots or other forms of civil disorder; embargoes; labor disputes (including, without limitation, strikes, lockouts or boycotts); fires; explosions; floods; shortages of power or other essential services; failure of technical facilities; failure or delay of transportation; death, disability, illness, injury or other inability to perform by Artist, any of Artist's musicians, other performers, crew, representatives or advisors, any of Artist's family members, any of Purchaser's key personnel, or any other person personally known to Artist whose death, disability, illness or injury adversely impacts Artist's ability to perform in connection with the engagement; or other similar or dissimilar causes beyond the control of Artist which make any performance(s) contemplated by this Agreement impossible, infeasible or unsafe. For the avoidance of doubt, poor ticket sales shall not be deemed a Force Majeure Event.

Both Artist and Purchaser acknowledge the existence of, and the current state of the COVID-19 pandemic at the date of this Agreement. Due to this acknowledgement, the mere existence of the COVID-19 pandemic will not be considered a Force Majeure event.

### 28.    Inclement Weather

Notwithstanding anything to the contrary contained herein, inclement weather shall not be deemed a Force Majeure Event, and Purchaser shall remain liable for payment to Artist of the full Guarantee plus all other compensation due hereunder if Artist's engagement is rendered impossible, infeasible or unsafe by such weather conditions. For clarification, Purchaser shall remain responsible for all other terms and conditions of this Agreement, including, without limitation, accommodations, transportation and expense reimbursements for Artist and Artist's crew and entourage.

### 29.    Limitation of Liability

In no event shall Artist (nor any of Artist's agents, representatives, principals, employees, officers, directors and affiliates) be liable to Purchaser for any indirect, incidental, consequential, special, punitive, exemplary or any similar damages, including, without limitation, lost profits, loss of revenues or income, cost of capital or loss of business reputation or opportunity, as to any matter relating to, or arising out of, Artist's engagement hereunder or the transactions contemplated by this Agreement, whether in contract, tort or otherwise.

### 30.    Indemnification

Purchaser hereby indemnifies and holds Artist, as well as Artist's respective agents, representatives, principals, employees, officers, and directors harmless from and against any loss, damage or expense, including reasonable attorney's fees, incurred or suffered by or threatened against Artist or any of the foregoing in connection with or as a result of any claim for personal injury or property damage or otherwise brought by or on behalf of any third party person, firm, or corporation as a result of or in connection with Performance, which claim does not result from the active and willful negligence of the Artist.

### 31.    Governing Law

This Agreement shall be governed by and subject to the laws of the State of **New Jersey**, without giving effect to any choice or conflict of law provision.

CARTAGENA_0000770

## 32.    Assignment/Transfer

Neither Artist nor Purchaser may assign or transfer this Agreement or any other rights or obligations hereunder without the mutual written consent of both the Artist and Purchaser and such assignment contains the complete understanding of the Parties respecting the subject matter hereof.  It is expressly understood and agreed that the Parties make no representations or agreements, oral or otherwise, outside the terms of this Agreement which add to, broader, vary, or conflict with the provisions hereof.  Any purported outside representations or agreements have no force or effect upon the rights or duties of the Parties hereunder.  No term, provision, or condition of this agreement may be altered, amended, or added except upon the execution of a written agreement by the Parties hereto.  Any notices provided for herein shall be in writing and shall be personally served or mailed to each Party at the addresses provided.

## 33.    Amendment to Agreement

This Agreement contains the sole and complete understanding of the Parties and may not be amended, supplemented, varied or discharged, except by an instrument in writing signed by both Parties.

## 34.    Entire Agreement

This Agreement contains the entire agreement between the Parties and supersedes any and all previous agreements, written or oral, between the parties relating to Performance. THE PERSON(S) EXECUTING THIS AGREEMENT ON BEHALF OF EACH PARTY WARRANTS HIS/HER AUTHORITY TO DO SO, AND SUCH PERSON HEREBY PERSONALLY ASSUMES LIABILITY FOR THE PAYMENT IN FULL.

Failure to present the engagement shall not relieve the Purchaser of the obligation to pay the guarantee in full.

It is expressly understood by the Purchaser(s) and the Artist who are party to this contract that neither Reliant Talent Agency, LLC nor its officers nor its employees are parties to this contract in any capacity and that neither Reliant Talent Agency, LLC nor its officers nor its employees are liable for the performance breach of any provisions contained herein. Should any Rider, Addendum and/or Expense sheet be annexed to this Agreement it/they shall also constitute as part of this agreement and shall be signed by all parties to this contract. This contract and its attachments may be executed and exchanged electronically or by fax. IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.


ACCEPTED AND AGREED TO:

**SI Ticketing Entertainment, LLC**                        **Sneaker Addict Touring, LLC**


David Lane

**Redacted**                                            **An Authorized Signatory**

## COMPANY PODCAST HOSTING AGREEMENT

The following agreement ("Agreement") effective as of _____, 2025 ("Effective Date") shall constitute the terms and conditions of the agreement between All Time Sports, LLC ("Company"), and Azzy's Way, LLC f/s/o Joseph Cartagena p/k/a "Fat Joe" relating to certain podcasting services for Company in connection with the pre-recorded and live audio and video podcast tentatively entitled "Fat Joe & Jadakiss Podcast" (the "Podcast"). Azzy's Way LLC is referred to herein as "Lender." Joseph Cartagena is referred to here in as "Artist."

WHEREAS, simultaneous with and as a condition to entering into this Agreement, Company is entering into a Company Podcast Hosting Agreement (the "Co-Host Agreement") with [_____] ("Co-Host Lender") f/s/o Jason Terrance Phillips p/k/a "Jadakiss' ("Co-Host"); and

WHEREAS, it is the intention of the parties that Artist and Co-Host together serve as hosts of the Podcast;

NOW, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Company and Lender agree as follows:

1. Artist Services and Company Obligations: Company hereby engages Lender on behalf of Artist, during the Term, on a first priority basis to provide such services as are outlined and identified in *Exhibit A: Services* hereby attached and incorporated into this Agreement, and as otherwise may be agreed upon by the parties (the "Artist Services"). For the avoidance of doubt:

- The Podcast will be exploited in audio and video formats.
- Artist shall render customary and reasonably required hosting services for the Podcast, including without limitation, creative development, voicing advertisements/sponsorships (as further detailed below), assisting with the content and other agreed-upon hosting duties related to the Podcast, and guest booking. Artist agrees to comply with reasonable and customary production and delivery schedules and will timely respond to production inquiries concerning the Podcast.

In addition:

(a)    Artist shall be credited as a creator, host, and executive producer in connection with the Podcast.

(b)    Artist shall provide promotion for the Podcast, as set forth in *Exhibit B: Promotional Obligations* ("Promotional Obligations"), attached hereto and incorporated herein by this reference. Any additional Promotional Obligations other than as set forth in *Exhibit B* shall be approved by Artist and may be subject to an amendment of this Agreement. In addition, Company will provide a reasonable amount of promotion for the Podcast via Company's social channels and other Company podcasts as mutually determined by Company and Artist.

(c)    During the Term, Company shall have the right to use Artist's Approved Likeness (as defined below), for advertising, promotion and publicity solely in connection with the institutions, service and products of Company, and the Podcast, and mutually approved advertisers / sponsors of the Podcast (subject to the restrictions in Section 4(b)); and in connection with licensing of the Podcast to third party platforms subject to section 5(b). Lender shall: (i) approve/disapprove any request submitted to Lender in writing (email to suffice) within seventy two (72) hours of receipt of such request (reducible to 48 hours if exigent circumstances) otherwise it is deemed approved; and (ii) not frustrate the purpose of this Agreement and not unreasonably withhold, condition, or delay approval of Company's request to use Artist's Approved

CARTAGENA_0000772

Likeness in and in connection with the Podcast.

(d)     During the Term, Company shall have the exclusive, worldwide, right to create and sell mutually approved merchandise solely in connection with the Podcast ("Merchandise"), and to use Artist's approved name, image, voice, likeness, quotes, catch phrases and biography (collectively, "Artist's Approved Likeness"), in connection with such Merchandise.  Artist shall approve any Podcast related Merchandise that involves Artist's Approve Likeness.

(e)     Company shall provide its services as outlined in Exhibit A.

(f)     During the Term, Company shall have the exclusive rights to sell advertising, brand integrations, programmatic ads and other sponsorships in and in connection with the Podcast for mutually approved (subject to Section 4b below) advertising/sponsorship/commercial tie-ins/integrations in and in connection with the Podcast (including library episodes) on Artist's personal social and digital channels and the Podcast social and digital channels (including but not limited to RSS Feed, YouTube, X, Instagram, Facebook, Tik Tok, Telegram, etc.). Notwithstanding the foreoing, Artist may not enter into a personal or endorsement/spokesman agreement with a competitive advertiser/sponsor of the Podcast without the prior written approval, not to be unreasonably withheld (email to suffice) from Company.

2. Intentionally Omitted

3.     Term:

(a)     Artist will render Artist Services and Promotional Obligations for the Podcast commencing upon the Effective Date and continuing for a period of one (1) year (the "Term"). For a period of thirty (30) days beginning sixty (60) days prior to the conclusion of the Term, Company and Lender shall exclusively negotiate towards an extension of this Agreement.

(b)     Following the expiration or earlier termination of this Agreement and for a period of one (24) months thereafter (the "Option Period"), Lender agrees that neither it nor Artist shall enter into or commence any agreement with a third party regarding the production, hosting, distribution, or development of any podcast or substantially similar project in the sports or music category featuring Artist as a principal host, without first offering Company a right to produce and/or distribute such project (the "Right of First Refusal").  Prior to entering into any such third-party agreement, Lender shall notify Company in writing of the material terms of the proposed opportunity, the nature of the project, and the key financial and creative terms (the "Offer"). Company shall have 10 business days from receipt of such Offer to notify such Lender in writing of its election to match the terms of the Offer. If Company timely elects to match the Offer, the parties shall negotiate in good faith and execute an agreement reflecting the terms of the Offer within a reasonable time. If Company declines to exercise its Right of First Refusal or fails to timely respond, then Lender shall be free to enter into an agreement with the third party on terms no more favorable to the third party than those described in the Offer. If such third-party agreement is not executed within 60 days after Company's decline or failure to respond, the Right of First Refusal shall reapply to any future offer received during the Option Period.

4.     Control:

(a)     Lender and Company shall have mutual approval of all creative decisions related to the Podcast; including on final edit of Podcast episodes, so long as Lender's feedback is provided to Company within twelve (12) hours of delivery of episode edit.  Company and Lender shall have mutual approval over all business decisions related to the Podcast; however, in the event of a disagreement, Company's decision shall control. Lender and Artist shall have no power to bind Company or otherwise sign any documents or

Formatted: Font: (Default) Times New Roman, 11 pt

Formatted: Font: Times New Roman

Formatted: Font: Times New Roman, 12 pt

agreements on behalf of Company.

    (b)    In connection with the Podcast and during the Term, Artist will cooperate with Company in the production of mutually approved (subject to this Section 4(b)) commercial/sponsor/advertisement and advertiser deliverables including but not limited to the voice reading of advertisements/commercials/sponsorships. Lender, on behalf of Artist, shall approve no less than eighty-five percent (85%) of potential advertiser/sponsors presented by Company for approval. Without limiting the foregoing, unless otherwise approved by Lender, the Podcast will not engage with any commercial/sponsor/advertisement in the following categories: firearms, politics, religion, tobacco, pharmaceuticals, feminine hygiene, or X rated materials.

    (c)    Artist hereby agrees to execute and be bound by the confidentiality and non-disclosure agreement that is attached as *Exhibit C* to this Agreement, hereby atttached and incorporated herein by this reference.

5.    <u>Compensation</u>: Provided (i) there is no Force Majeure Event, as defined below,which specifically impedes the production, exploitation and/or distribution of the Podcast, (ii) Artist renders all required Artist Services hereunder, and (iii) neither Artist nor Lender is in material, uncured breach of Artist's or Lender's obligations, representations and/or warranties hereunder (after written notice, specifying the nature of the breach in full detail and reasonable opportunity to cure, if curable), then as full and complete consideration for all of Lender's and Artist Services hereunder and all rights granted to Company hereunder with respect thereto, Lender shall be entitled to receive the following:

    (a)    A flat, all-inclusive minimum guarantee payable as an advance against Lender's share of Net Revenues (as defined below) equal to Two Hundred Thousand US Dollars ($200,000) ("Minimum Guarantee"). The Minimum Guarantee shall be payable in equal monthly installments, provided that Company shall pay the first two (2) months (i.e. a total of $33,333.33) on the first day of the Initial Term, and then monthly beginning the third month of the Initial Term . Beginning the third month of the Intial Term, Lender shall submit a monthly invoice for each monthly installment of the minimum guarantee at the end of each month during the Term, and the Company will pay the invoiced amount within ten (10) business days of receipt thereof

    (b)    Thirty two and one half percent (32.5%) of one hundred percent (100%) of "Net Podcasting Revenues" from the Podcast. "Net Podcasting Revenues" will be defined as the amount of "Podcasting Gross Receipts", actually received by Company remaining after deduction of all "Podcasting Expenses." In addition, Company shall notify Lender and Roc Nation in writing before commencing negotiation with third party sales agencies or distributors and will have the right to deduct a sales agency/distribution fee from Podcasting Gross Receipts, equal to either the actual fee actually deducted by third party sales agents/distributors (e.g., iHeart) or a fee of twenty (20%) in the event Company or Roc Nation provides sales agency services and/or distribution of the Podcast in place of any third party sales agents/distributors. To further clarify, it is understood and agreed that there will be no double deductions for any sales agency/distribution fees from Podcasting Gross Receipts. "Podcasting Gross Receipts" will be defined as the amounts actually received by or credited to Company from the sponsorship, distribution and/or other exploitation of the episodes of the Podcast, inclusive of the exploitation of Rights in the Distribution & Exploitation provision below, social (including Artist's personal social handles), Google Ad Sense and programmatic advertising revenue, newsletter, premium subscription, live touring, and Gross Merchandising Receipts. For the sake of clarity, the foregoing amounts are after deduction of third-party commissions. "Podcasting Expenses" will be defined as the sum of (x) all actual, direct, out-of-pocket, reasonable costs incurred by Company in connection with the Podcast, including without limitation, production, editing/post production, the hosting/bandwidth, studio rentals, any recording equipment, exploitation, promotion and/or advertising of the Podcast, and (y) Merchandise Expense. Lender's share

of Net Podcasting Revenues (if any), shall be calculated on the basis of each year of the Term, and shall be paid within ninety (90) days of the end of the respective Year of the Term. Once per month, and/or more frequently upon request by Lender, Company shall share detailed data, reports and information of Net Podcasting Revenues, Podcasting Gross Receipts, Podcasting Expenses, and any other data or information reasonably requested by Lenders.

For the purpose of the above: "Merchandise Gross Receipts" will be defined as the amounts actually received by or credited to Company, or any subsidiary or affiliate of Company, from distribution and exploitation of Merchandise. For the sake of clarity, the foregoing amounts are after deduction of third-party commissions. "Merchandise Expenses" will be defined as all mutually approved, reasonable, customary, actual, direct, verifiable, out-of-pocket costs incurred by Company in connection with the Merchandise, including without limitation the development, design, manufacture, storage, insurance, sales, breakage, ecommerce, website, shipping, exploitation, talent fees/payments/revenue splits, promotion and/or advertising of the Merchandise.

6.    Exclusivity. During the Term, and subject to the terms set forth below, Artist shall be exclusive to Company in all longform audio/video content and premium subscription in the sports and music categories, *provided* that such longform audio/video content exclusivity shall not apply to (i) existing or pending projects that have been previously disclosed to Company, (ii) projects that are subsequently disclosed to Company and approved by Company as non-competitive, or (iii) opportunities premised on formats that are materially different than the Podcast format, with the primary distribution through traditional linear television, cable or non-social -based streaming platforms ("Non-Competitive Projects"). Artist shall not be prevented from accepting paid or unpaid live-audience speaking engagements, appearing as a guest on any podcast, appearing on television or radio programs. In connection therewith, Artist will not render any services that may violate the foregoing (including on Artist's own behalf) without Company's prior written approval (which shall not be unreasonably withheld or delayed), provided that a response must be sent within five (5) business days from Company's receipt of Lender or Artist's written request, otherwise such approval shall be deemed granted..

7.    Ownership. Lender and Artist, together with Co-Host and Co-Host Lender, shall exclusively own the Podcast, the RSS feed, YouTube and other Podcast specific social/digitalchannels, and any other intellectual property or elements thereof, including the edited and unedited content whether exhibited or not exhibited, and the episodes thereof (collectively "Rights"), provided that Company's right to participate financially in the exploitation of episodes that were recorded and originally distributed during the Term shall continue post-expiration or termation of this agreement.

8.    Distribution and Exploitation.

(a)    Subject paragraphs 8(b) and 8(c) below, Company shall have the sole right and license to distribute and exploit the Rights during the Term, in any and all media throughout the universe, whether now known or hereafter discovered, including without limitation, in and in connection with audio and video versions of the Podcast (including any and all library episodes), touring and merchandising.   With regard to the Podcast YouTube channel and publishing, this shall include but is not limited to the following: (i) being listed/featured as a "channel" on Company's YouTube channel; (ii) Company's control of the publishing and editorial; (iii) Company's non-exclusive access to all data and analytics; and (iv) Company's control and collection of all revenue associated therewith, all of which are subject to Artist's approval rights as otherwise set forth elsewhere herein. For clarity, any such exploitation of the Rights as outlined in this section shall be included as part of Podcasting Gross Receipts referenced above.

   CARTAGENA_0000775

(b)      Notwithstanding the foregoing, Lender and Roc Nation shall have the right and license to negotiate and/or distribute ancillary productions derived from the Podcast, including without limitation, television, projects, and games. In the event Lender and Roc Nation develop an ancillary production derived from the Podcast during the Term, (i) any such project revenue shall not be considered Podcast Gross Receipts, and (ii) Company shall be entitled to both financial and co-production participation on terms as shall be reasonably negotiated between the parties on a project by project, case by case basis.  No such ancillary production shall be finalized, produced or distributed until such time as the parties have reached agreement on the aforementioned terms with respect thereto.   In the event that the Company elects not to participate in or be a part of any such proposed ancillary production, Lender and Roc Nation shall be entitled to develop, produce and distribute such production with no further involvement by or approvals from Company.

(c)      For avoidance of doubt, ancillary productions as used above shall not include licenses, rebroadcasts, retransmissions or other such distributions comprised of primarily existing Podcast content which do not require the creation or production of a significant amount of new content (i.e. licensing the Podcast to a cable channel or streaming distribution platform) (each an "Alternative Distribution Agreement" and collectively, "Alternative Distribution Agreements").  With respect to any such Alternative Distribution Agreement, either of Company, on the one hand and Lender and Roc Nation, on the other hand, shall have the right and license to pursue and propose such a project, provided that (i) all revenue generated with respect thereto shall be included within Podcast Gross Receipts, (ii) no Alternative Distribution Agreement may be finalized without the approval of all parties hereto, and (ii) Lender and/or Roc Nation shall be entitled to a distribution fee of twenty percent (20%) on such projects where Lender and/or Roc Nation sources or originates and negotiates such opportunity.
~~Roc Nation shall have the sole right and license to distribute and exploit the Rights during the Term, in any and all media throughout the universe, whether now known or hereafter discovered, including without limitation, in and in connection with audio and video versions of the Podcast (including any and all library and pre-existing episodes), and ancillary productions related thereto, including without limitation, television, digital media, projects, games, and merchandising. During the Term, the Podcast YouTube channel shall become a part of Company's YouTube, and the Parties shall take any required or necessary steps to effectuate this purpose and any revenue generated from the Podcast YouTube channels (including but not limited to that connected with the Podcast) shall flow directly to Company and shall be considered Podcasting Gross Receipts. With regard to the Podcast YouTube channel and publishing, this shall include but is not limited to the following: (i) being listed/featured as a "channel" on Company's YouTube channel; (ii) Company's control of the publishing and editorial; (iii) Company's access to all data and analytics; and (iv) Company's control and collection of all revenue associated therewith. For clarity, any such exploitation of the Rights as outlined in this section shall be included as part of Podcasting Gross Receipts referenced above.~~

9.      Non-Disparagement/Morality.   Company acknowledges that Artist is a public figure that is subject to scrutiny and agrees that as of the effective date of this agreement Company takes no issue with Artist's public image as such is based on facts and information that is generally known to the public as of the effective date. If, during the Term, Artist  or Co-Host is formally charged with a felony by law enforcement or a prosecutor or convicted of a felony, or is charged with engaging in any~~engages~~ in any actions involving moral turpitude ~~by law enforcement or a prosecutor or~~ or which may bring Company or its brand under ridicule, contempt, scandal or public disrepute, or which, in the reasonable judgment of Company, is or may be materially detrimental to Company or its brand, then Company may immediately terminate this Agreement by written notice to Lender, provided that any such termination due to Co-Host's engagement in any of the foregoing must be accompanied by a termination of the Co-Host Agreement. Without limitation to the foregoing, neither party hereto shall depict the other-, any of or it's talent/hosts, subsidiaries or affiliates, partners products or services in a manner that is inconsistent with

instructions or in a manner that could reasonably be perceived as negative, derogatory or detrimental to either party's brand, name, reputation or trademarks. In addition, neither Artist nor the Company shall make any statements that disparage or reflect unfavorably on the other, or any of the other's disclosed talent/hosts, subsidiaries or affiliates, partners products or services. Any termination pursuant to this Section 9 shall take effect forty-eight (48) hours after Lender's receipt of such written notice. Thereafter, no party shall have any further obligation to the other with respect to this Agreement, except as to those provisions which specifically set forth their survival beyond the termination of this Agreement, including without limitation any amounts earned but not yet paid in accordance with Section 5 hereof.

10.     Representations and Warranties.

        (a)     Lender hereby represents and warrants that: (i) Lender has the full and sole right and authority to enter into the Agreement and make the grant of rights made herein, (ii) Lender will comply with any and all local, state and federal rules related to the services to be performed by Lender and/or Artist and Rights granted herein, (iii) the services and material created by Artist hereunder is wholly original with Artist (other than public domain material, material incorporated at Company's direction, and material provided to Artist by or on behalf of Company), (iv) no claims or litigation exist or have been threatened relating to the Rights and Artist Services or purporting to question or adversely affecting the rights granted herein, (v) the exercise of the rights granted herein does not knowingly violate the rights of privacy of, constitute a libel or slander against, or violate any common law, or any other rights of any person or entity, and (vi) Lender has not entered into and shall not enter into any agreement, and that Lender has not made and shall not make any grants of any nature whatsoever, which materially prevent, materially conflict or materially interfere with Company's full and complete exercise and enjoyment of each and all of the rights granted or agreed to be granted to Company hereunder.

        (b)     Company represents and warrants that: (i) Company has the full and sole right and authority to enter into the Agreement and make the grant of rights made herein, (ii) any material created or furnished by Company productionresearch and/or facts furnished to Talent hereunder (including in the promotion, marketing, merchandising, and other ancillary exploitation of the Podcast) is accurate and/or wholly original with Company (other than public domain material or material incorporating material provided solely by Artist or Co-Host), and (iii) Company has not entered into and shall not enter into any agreement, and has not made and shall not make any grants of any nature whatsoever, which materially prevent, materially conflict or materially interfere with Artist's full and complete exercise and enjoyment of each and all of the rights or benefits granted or agreed to be granted to Artist hereunder.

11.     No Guild Affiliation. Lender, on behalf of Artist, acknowledges that Company is not a signatory to any guild or union agreement covering the Artist Services and that the Artist Services are not subject to any guild or union agreement, at the time of execution of the Agreement.

12.     Indemnity.

        (a)     Lender hereby agrees to indemnify, defend, and hold harmless Company, its parent, subsidiaries, affiliates, members, officers, directors, employees, successors, and assigns from and against any and all third-party claims, demands, actual liabilities, actual losses, actual damages, actual costs, and actual expenses (including reasonable actually incurred, outside attorneys' fees and court costs) arising out of or related to:

        (i)     any breach or alleged breach by Lender or Artist of any representation, warranty, or obligation under this Agreement;

CARTAGENA_0000777

      (ii)     any content, statements, or materials provided solely by or made solely by Artist during or in connection with the podcast, including without limitation any claims of defamation, invasion of privacy, or intellectual property infringement; and

      (iii)    any gross negligence, willful misconduct, or violation of applicable law by Lender or Artist.

    (b)    Company agrees to indemnify, defend, and hold harmless Lender and Artist, along with their respective officers, directors, members, representatives, successors, and assigns, from and against any and all claims, demands, liabilities, losses, damages, costs, and expenses (including reasonable attorneys' fees and court costs) of third-parties (other than the Co-Host or Co-Host Lender and their respective officers, directors, members, representatives, successors, and assigns) arising out of or related to:

      (i)     any breach or alleged breach by Company of any representation, warranty, or obligation under this Agreement; and

      (ii)     any content, editing, distribution, or other material supplied, added or controlled solely by Company (excluding Artist's contributions), that gives rise to claims of infringement or other legal violations.

    (c)    The indemnified party shall promptly notify the indemnifying party in writing of any claim for which indemnification is sought. The indemnifying party shall have the right to assume control of the defense and settlement of such claim, using counsel reasonably satisfactory to the indemnified party. The indemnified party may participate in the defense at its own expense. No settlement or compromise that imposes any obligation or liability on the indemnified party may be made without their prior written consent, which shall not be unreasonably withheld or delayed.

13.    <u>Remedies.</u>  Company or Lender may terminate the Agreement in the event of material breach by the other party. Prior to termination of this Agreement by either party based upon a material breach, the non-breaching party shall notify the other party (or parties) in writing, specifying the nature of the breach in detail; the party or parties alleged to have breached shall have reasonable opportunity to cure such breach, fifteen days with regard to unpaid money. Lender acknowledges and agrees that the services to be rendered by Artist and the rights herein granted are of a special, personal, unique, unusual, extraordinary, and intellectual character, making them difficult to replace and giving them a peculiar value, the loss of which may not be reasonably compensable in damages in an action at law; that if Artist breaches any material provision of this Agreement or shall otherwise be in material default with respect to the Podcast, Company may be caused irreparable damage; and therefore Company may be entitled as a matter of right at its election, subject to applicable law, to seek to enforce this Agreement and all of the provisions hereof by injunction and/or other equitable relief. While Lender and Artist may terminate this agreement for material breach as provided for below, the rights and remedies of Lender and Artist will be limited to Lender's or Artist's rights to recover damages, if any, in an action at law, and in no event will Lender or Artist be entitled to terminate or rescind any of the rights granted hereunder or enjoin or restrain the distribution or other exploitation of the Podcast and the rights therein, or the use, publication or dissemination of any advertising issued in connection therewith, and Lender and Artist irrevocably waive any right to equitable or injunctive relief.

14.    <u>Co-Host Agreement Termination.</u>

    (a)    Company shall be entitled to terminate this Agreement immediately upon any termination of the Co-Host Agreement due to (i) a material breach of such agreement by Co-Host

CARTAGENA_0000778

Lender or Co-Host, (ii) a Force Majeure Event (as defined in the Co-Host Agreement) lasting for a period of eight (8) weeks or more, or (iii) Co-Host being charged with a felony by law enforcement or convicted of a felony, or charged with engaging in any actions involving moral turpitude by law enforcement or which may bring Company or its brand under ridicule, contempt, scandal or public disrepute, or which, in the reasonable judgment of Company, is or may be materially detrimental to Company or its brand. Company acknowledges that as of the date of this agreement, nether Lender, Co-Host Lender, Co-Host nor Artist have violated this paragraph14(a).

(b)     Lender shall be entitled to terminate this Agreement immediately upon any termination of the Co-Host Agreement due to (i) a material breach of such agreement by Company, or (ii) a Force Majeure Event (as defined in the Co-Host Agreement) lasting for a period of eight (8) weeks or more.

Thereafter, no party shall have any further obligation to the other with respect to this Agreement, except as to those provisions which specifically set forth their survival beyond the termination of this Agreement including payment of Net Revenue due, if any.

15.     Force Majeure. Neither Company nor Lender shall be liable for the failure to perform their respective obligations under this Agreement when such failure is caused by fire, explosion, water, act of God or inevitable accident, civil disorder or disturbance, strikes, vandalism, war, riot, sabotage, weather and energy related closings, governmental rules or regulations, or like causes beyond the reasonable control of such party (a "Force Majeure Event"). In the event a Force Majeure Event for a period of eight (8) weeks or more, either Company or Lender shall have the right to terminate this Agreement.

16.     Notices: Any notice under this Agreement shall be in writing to the addresses set forth below (or such other addresses as the parties shall inform each other of, in writing):

To Lender:    **Redacted**

To Company:    **Redacted**

Such notice shall be deemed to have been duly given or made (i) if delivered to a party personally or by courier, then as of the date delivered or, if delivery is refused, then as of the date presented; (ii) if sent or mailed by FedEx or other nationally recognized overnight delivery service, then as of the next business day; (iii) if sent via the United States mail to a party postage prepaid and return receipt requested, then as of the date that is five (5) days after such mailing: and (iv) if given via facsimile machine then as of the date receipt thereof is electronically acknowledged. Except for notices for breach, termination or contractual termination, the parties may also send notices via e-mail provided that the other Party replies via e-mail that it has received such notice.

Formatted: List Paragraph, Indent: Left: 1"

CARTAGENA_0000779

17.    Further Documents.  Lender and Artist agree to execute any documents consistent herewith as may be reasonably required by Company (or Company's licensees and assigns) to further evidence or effectuate Company's rights as set forth in this Agreement.  All documents shall be first sent to Lender pursuant to the Notice section herein. To the extent Lender fails to execute such documents following reasonable opportunity to review and comment thereon, Lender hereby appoints Company as Artist's attorney in fact solely for the purpose of executing such documents on Artist's behalf.  Company shall provide Lender with copies of any documents so executed, provided no failure to provide such documents shall be deemed a breach hereof.

18.    Governing Law & Arbitration.  This Agreement is entered into in the State of New York, and shall be governed by the laws of such state applicable to agreements entirely made and performed in such state. Any controversy or claim arising out of or relating to this Agreement shall be resolved by confidential and binding arbitration administered by the American Arbitration Association before one (1) neutral arbitrator, who shall be a retired judge or a state or federal court familiar with entertainment matters.  Within forty-five (45) days of initiation of arbitration, the parties shall reach agreement upon and thereafter follow procedures, including limits on discovery, assuring that the arbitration will be concluded and the award rendered within no more than eight (8) months from selection of the arbitrator or, failing agreement, procedures meeting such time limits will be designed by the arbitrator and adhered to by the parties. The arbitration shall be held in New York, New York and the arbitrator shall apply the substantive law controlling this Agreement.  Any court with jurisdiction shall enforce this clause and enter judgment on any award.  The arbitrator may award the costs and expenses of the arbitration to the prevailing party, but not attorneys' fees.  Prior to commencement of arbitration, the parties must attempt to mediate their dispute using a professional mediator selected by agreement from American Arbitration Association. Within a period of forty-five (45) days after the request for mediation, the parties agree to convene with the mediator, with business representatives present, for at least one session to attempt to resolve the matter. In no event will mediation delay commencement of the arbitration for more than forty-five (45) days absent agreement of the parties or interfere with the availability of emergency relief.  As stated herein, notwithstanding the provisions of this paragraph, Company has the right to seek injunctive or other equitable relief.  All aspects of the mediation and arbitration shall be treated as confidential.  EACH PARTY HERETO WAIVES: (1) ITS RIGHT TO TRIAL OF ANY ISSUE BY JURY, (2) WITH THE EXCEPTION OF RELIEF MANDATED BY STATUTE, AND (3) ANY CLAIM FOR ATTORNEY FEES, COSTS AND PREJUDGMENT INTEREST.

19.    Limitation of Liability.  EXCEPT WITH RESPECT TO EACH PARTY'S INDEMNITY OBLIGATIONS PURSUANT TO SECTION 12 OF THIS AGREEMENT, IN NO EVENT SHALL ANY PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, ANY DAMAGES BASED ON LOSS OF PROFITS, LOSS OF USE, BUSINESS INTERRUPTION OR LOSS OF DATA), EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE FOREGOING LIMITATIONS SHALL APPLY REGARDLESS OF THE CAUSE OR THE FORM OF ACTION (WHETHER BREACH OF CONTRACT, BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE).

20.    Entire Agreement.  The Agreement, including any exhibits attached hereto, expresses the entire understanding of the parties hereto and replaces any and all former agreements, negotiations or understandings, written or oral, relating to the subject matter hereof and shall not be modified except by a written document executed by both parties hereto.  This Agreement shall be deemed to have been drafted by all the parties hereto, since all parties were assisted by their counsel in reviewing and agreeing thereto, and no ambiguity shall be resolved against any party by virtue of its participation in the drafting of this Agreement.  No waiver by either party hereto of any failure by the other party to keep or perform any

covenant or condition of the Agreement shall be deemed a waiver of any preceding, succeeding or continuing breach of the same, or any other covenant or condition. Company may assign, transfer, license, delegate and/or grant all or any part of its rights, privileges and properties hereunder to any person or entity, provided that Company shall remain secondarily liable for its obligations hereunder unless such assignment is to a similarly financially responsible party who assumes such obligations in writing. Artist shall not assign, transfer, license, delegate or grant all or any part of his rights hereunder to any other person or entity. Nothing herein contained shall in any way obligate Company to use Artist services hereunder, or to include any of the results and proceeds thereof in the Podcast, or to produce, exhibit, advertise, or distribute the Podcast or continue to do so. The parties to this Agreement acknowledge that they have had ample opportunity to seek and receive advice from their counsel about this Agreement and its legal effect prior to its execution and that they have received such advice or have freely elected to waive their opportunity for such advice.

*Signature Page Follows*

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

IN WITNESS WHEREOF, this document was executed as of _____, 2025.

**AZZY'S WAY LLC**

**ALL TIME SPORTS, LLC**

By: _____          By: _____
    Name:                                       Name:
    Title:                                      Title:

Date: _____        Date: _____

By countersigning this Agreement, the undersigned
confirms all grants made by Lender and agrees to
perform the services herein provided for in
accordance with the terms hereof, and the
undersigned will look solely to Lender for any and
all compensation hereunder.

_____
Joseph Cartagena p/k/a "Fat Joe"

_____

**Formatted:** Centered

## EXHIBIT A: SERVICES

**Artist Services (with Lender Obligations):**

- Lender to ensure Artist use his best efforts to record 100 episodes of the Podcast on audio/video per year of the Term, provided that the Company recognizes that the Artist may have other commercial commitments and obligations that present challenges to achieving the target number of episodes and will work with Artist with respect to multiple episodic and/or where necessary, remote recordings to maximize the number of recorded episodes.

  o It is the intention of the parties that, whenever possible, Artist, together with Co-Host will record the Podcast episodes in person together in the Blueprint Room at Roc Nation corporate offices, which the parties acknowledge may, from time to time, require recording multiple episodes in one session. Notwithstanding the foregoing, Company and Artist to support remote recordings when live at the Blueprint Room is not possible.

- Each episode will be approximately 90 mins
- The Podcast episodes shall be posted on the same day they are recorded. The ideal cadence is Monday, Wednesday, and Friday each week of the Term.
- Lender to ensure Artist shall read mutually approved (subject to Section 4(b) of the Agreement) ads and provide standard Podcasting deliverables for sponsors/advertising terms.
- Lender shall cause Artist to perform and record a minimum of three (3) live Podcast shows per year, provided that the timing and scheduling of such shows shall be subject to Artist and Co-Host availability based on their other professional commitments.

**Company Obligations:**

- Company will work in tandem with Artist and Co-Host to hire a production staff and grow the Podcast specific YouTube channel, provided that the initial production budget, and any material changes thereto thereafter, all of which shall be subject to prior approval by Lender on behalf of Artist.
- Company will provide sports research support through productions staff assigned to the Podcast.
- Company will use its many channels to promote the Podcast and will share content and distribution strategies with Artist and Co-Host to maximize collaboration.
- Audio reads/callouts in other Company podcasts promoting the Podcast.
- Talent from other Company podcasts shall appear on the Podcast, and Artist shall appear on other Company podcasts.
- Company's PR team will help amplify Podcast moments to drive earned media for the Podcast, and the Parties shall collaborate on a joint PR strategy to announce the partnership.
- Company shall pay for reasonable travel expenses, as a recoupable cost, to major sporting events where Artist will be performing one or more live episodes of the Podcast or will otherwise be creating content intended for inclusion within or promotion of the Podcast.
- Mutual approval on final edits shall be done in collaboration with Artist so long as Arist provides feedback within twelve (12) hours of delivery
- Company shall pay a Roc Nation Studio Fee, the details of which to be covered by way of supplemental writing.

CARTAGENA_0000783

**EXHIBIT B:  PROMOTIONAL OBLIGATIONS**

During the Term, Artist will render the following Promotional Obligations:

1.  Artist will promote the Podcast and Company's network, including without limitation, posting on all of Artist's social media platforms leading up to the launch of the Podcast with Company, and regularly (e.g., at least once per episode) during the Podcast and through the remainder of the Term.

2.  Artist will render a reasonable amount of customary mutually approved publicity such as participating in media interviews, social media posts, and referencing Podcast in appropriate public forums.

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

**EXHIBIT C: NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT**

This Non-Disclosure and Confidentiality Agreement is entered into in connection with that certain Podcast Hosting Agreement agreement by and among All Time Sports, LLC ("Company"), Azzy's Way LLC ("Azzy") f/s/o Joseph Cartagena p/k/a "Fat Joe" ("Artist") (the "Podcast Agreement"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Podcast Agreement. Company, Azzy and Artist are individually and collectively referred to as the "Parties" or the "Party"

In consideration for Company's engagement of Lender and for other good and valuable consideration, including but not limited to the compensation paid to me, the Parties acknowledge, represent and agree for the express benefit of each other as follows:

1.      The Parties have been and shall continue to be entrusted with, exposed to, and privy to certain personal, proprietary and confidential information marked or otherwise disclosed as confidential (or that a reasonable person would understand is of the kind or nature that would be considered confidential) not otherwise known to the general public concerning the business and personal affairs of  each other and related persons and entities ("Protected Information").  Such Protected Information includes, but is not limited to: (i) information about the the Parties business dealings, personal dealings, business relationships, personal relationships, business activities and personal activities; (ii) information about actual or contemplated business activities, productions and projects; (iii) information about the the Parties' family, friends, employees, independent contractors and personal and business associates; and (iv) correspondence, emails, text messages, memoranda, notes, photographs, audio and video recordings, records and documents concerning the Parties that were or are received, created or made available to the other in the course of the term of the Podcast Agreement.

2.      Except as is required in the actual performance of duties or pursuant to section 4 below, the Parties shall not, at any time, either during or after the term of my engagement, in any fashion, form, or manner, directly or indirectly, use, divulge, disseminate, disclose, publish or otherwise communicate, or cause to be used, divulged, disseminated, disclosed, published or communicated, any Protected Information to anyone ("Unauthorized Disclosure").  This prohibition on Unauthorized Disclosure includes, but is not limited to directly or indirectly sharing any Protected Information through social media or with the press.

3.      The Parties  acknowledge, understand and agree that all private correspondence, emails, text messages, memoranda, notes, photographs, audio and video recordings, records and documents concerning the the Parties that were or are received, created or made available to the other in the course of the Podcast Agreement are and shall remain the property of the disclosing party at all times and shall be left with the disclosing party upon the termination of my engagement.

4.      In the event that any Party hereto  receives a subpoena, court order or other legal process pursuant to which it may be legally compelled to disclose any Protected Information, it shall immediately provide the other Parties or their designees with written notice thereof so that any of them, may seek a protective order or other appropriate remedy and the Parties agree to cooperate fully with the compelled Party in such efforts to protect the disclosure of Protected Information.

5.      The Parties expressly agree that in the event any Party hereto  shall breach or threaten to breach any covenant of this Non-Disclosure and Confidentiality Agreement, in addition to any and all other rights or remedies available, the nonbreaching Party shall each be entitled to injunctive relief, including temporary restraining orders, preliminary injunctions and permanent injunctions, without further proof (including, without limitation, without the necessity of proving damages or irreparable harm).  Such remedies shall include, without limitation, the right to prevent the dissemination of any Protected

CARTAGENA_0000785

Information described in this agreement before such materials are published or distributed.  The Parties agree that each are entitled to injunctive relief without the necessity of posting bond or making any undertaking in connection therewith.  Any such requirement of bond or undertaking is hereby waived by the other and the Parties acknowledge that, in the absence of such a waiver, a bond or undertaking might otherwise be required by the court.

6.      The Parties further expressly agree that, also without limiting any other rights or remedies theymay have, the nonbreaching Party shall be entitled to recover any and all monies or other benefits whatsoever received or to be received in the future by the breaching Party or on its behalf from any and all sources in connection with the Unauthorized Disclosure of any Protected Information.

**The Parties hereto  HAVE READ, FULLY UNDERSTAND AND AGREE TO THE TERMS OF THIS NONDISCLOSURE AND CONFIDENTIALITY AGREEMENT.**

**AGREED TO AND ACCEPTED BY:**          **AGREED TO AND ACCEPTED BY:**

Azzy's Way LLC                                        **ALL TIME SPORTS, LLC**

By:_____

Signed:_____
Joseph Cartagena p/k/a "Fat Joe"

Title:_____

Date: _____      Date: _____

**Status**: In planning
**From sponsor (6/20):** *As I'm sure you can imagine, with the news coming out recently, we will be taking a step back here...*



**Dane Aagaard**
Chief Revenue Officer
c: (201) 414-7844

CARTAGENA_0000788

FOX SQUARE PRODUCTIONS, INC.
PO Box 900
Beverly Hills, CA 90213

Dated: As of August 26, 2025

[INSERT LENDER NAME]Azzy's Way LLC f/s/o Joseph Cartagena p/k/a "Fat Joe"

_____ c/o Moreira Law PLLC
169 East Flagler Street Suite 1100
Miami, FL 33131
Attention: [_____]Erica Moreira

**Re: "Sweater Weather Studios"**

To Whom It May Concern:

The following will confirm the agreement (the "**Agreement**") between you and us relative to your furnishing us the services of Joseph Cartagena p/k/a "Fat Joe" (hereinafter referred to as "**Artist**") as herein provided:

1.      You agree to furnish the services of Artist as an on-camera performer on the television series currently entitled "Sweater Weather Studios" ("**Series**"). This engagement shall be subject to all of the terms and conditions set forth in the Schedule "1" Agreement (as defined below), which is attached hereto and by this reference made a part hereof. Capitalized terms not defined herein shall have the meanings ascribed to them in the Schedule "1" Agreement.

2.      Notwithstanding the fact that Schedule "1" is drafted in the form of an agreement between Artist and us (the "**Schedule '1' Agreement**"), it is understood and agreed that we are engaging you to furnish Artist's services, and to grant the rights stated as granted, to us, and that we are utilizing said services and rights, in accordance with and pursuant to the terms and provisions of the Schedule "1" Agreement. We shall have all of the rights to Artist's services and the results and proceeds thereof, and all other rights which are granted to us in the Schedule "1" Agreement, and we shall become the owner of the results and proceeds of Artist's services as provided therein to the same extent as though Artist had executed the Schedule "1" Agreement and we were the employer-for-hire of Artist. You agree to cause Artist to comply with all of the terms and conditions hereof. It is understood that the credit, if any, to be accorded to Artist pursuant to the terms of the Schedule "1" Agreement shall be accorded to Artist personally and that you shall receive no such credit in your capacity as lender or otherwise.

3.      For the performance of all of your obligations hereunder and for all rights granted by you, and upon the condition that you and Artist keep and perform all of your respective obligations hereunder, we shall pay you the compensation as set forth in the Schedule "1" Agreement in accordance with the terms and provisions thereof. You agree to perform all employer obligations in connection with Artist's services hereunder, including, without limitation, the payment to Artist of all compensation or other consideration required to be paid under any agreement between you and Artist and under any applicable collective bargaining agreement, and the payment of all union contributions, withholding, employment or other taxes.

4.      You hereby represent, warrant and agree that you are free to enter into this Agreement, that you have entered into an employment agreement with Artist pursuant to which Artist is obligated to render Artist's services for you for at least the full term hereof and that under said agreement with Artist, you have

1

241729231.1
226623-10037

**Commented [EM1]:** ████████

**Commented [EM2]:** ████████

**Commented [EM3]:** ████████

the right to control and lend Artist's services and grant the rights as herein provided, and that neither you nor Artist is subject to any obligations or disabilities which will materially prevent or interfere with either of you from fully keeping and performing all of the agreements, covenants and conditions to be kept or performed hereunder, and that neither you nor Artist has made or will make any agreement, commitment, grant or assignment, or will do, or omit to do, any act or thing which will materially interfere with or impair the complete enjoyment of the rights granted and the services to be rendered to us hereunder.

5.      You shall be solely responsible for the payment of all foreign, federal, state and local/municipal income taxes, social security taxes, unemployment insurance and similar taxes and all other assessments, taxes, contributions or sums payable with respect to you and/or Artist, including assessments, taxes, contributions or sums payable in connection with the services, whether mandated by any foreign, federal, state, local or municipal law or regulation and whether imposed on us (or Network) and/or you. You agree you shall file all necessary returns and reports with respect to any of the foregoing. If, under applicable law, we are required to deduct or withhold for or on account of taxes from any payment due to you and/or Artist, we shall (i) withhold the legally required amount from payment, (ii) remit the amount of tax withheld to the applicable taxing authority, and (iii) within a reasonable amount of time, deliver to you and/or Artist documentation evidencing such remittance of tax withheld. In determining the amount of payment subject to withholding, the parties shall give due regard to all applicable federal, state, local/municipal and international laws, including income tax treaties and protocols. As soon as reasonably practicable prior to the first payment by us to you and/or Artist, you and/or Artist agrees to furnish us with appropriate documentation to establish an exemption to such withholding, if applicable under all relevant federal, state, local/municipal and international laws. Additionally, it is "of the essence" of this Agreement that you provide us with the following documentation related to your employment of Artist and the furnishing of Artist's services on the Series hereunder: (a) IRS Form W-9; (b) if you are an LLC or LLP, evidence that you have elected with the IRS to be treated as a corporation (C-Corp or S-Corp) for tax purposes (*i.e.*, IRS Form 8832; Form 2553; or IRS acceptance letter); (c) Articles of Incorporation for you (or Articles of Organization, if an LLC [subject to subsection (b) above]); (d) proof of your payroll tax payment(s) (*i.e.*, IRS Form 941); (e) an employment contract between you and Artist; and (f) contact information for your and Artist's accountant and/or business manager. Without limiting the foregoing, we reserve the right to request additional documentation from you in order to remit any payment(s) that may become due to you hereunder. You shall indemnify and hold harmless us, Network, Fox Corporation, any station or network telecasting the Series hereunder, each sponsor of the Series and its advertising agencies, and the parents, divisions, affiliated companies, subsidiaries, shareholders, directors, officers, agents, employees, successors, licensees and assigns of each of the foregoing, from and against any and all liability, loss, damage, cost, charges, claims, actions, causes of action, recoveries, judgments, penalties and expenses, including reasonable outside attorneys' fees, (collectively, "**Liabilities**") which we or they may suffer by reason of: (i) any claims for compensation by Artist and/or claims for payment by any third party relating in any way to Artist's employment by you; (ii) any failure by you to make or pay the required deductions and/or withholdings from the compensation payable by you to Artist; and/or (iii) any breach of any of the representations, warranties or agreements made by you hereunder. We shall indemnify and hold you and Artist harmless with respect to material furnished by us in writing or otherwise to you and/or Artist in connection with the development, production, distribution, promotion and/or exploitation of the Series and all elements thereof and rights therein, excluding any Liabilities to the extent you and/or Artist is obligated to indemnify us with respect thereto hereunder.

6.      We shall have all rights and remedies against Artist which we would have if Artist had entered into the Schedule "1" Agreement directly with us as our employee. We shall not be required to first resort to or exhaust any rights or remedies which we may have against you before exercising our rights and/or remedies against Artist. You shall have the benefit of all agreements, representations and warranties made by us to the Artist in the Schedule "1" Agreement; provided, however, that you shall not receive any

**Commented [EM4]:**

241729231.1
226623-10037

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

CARTAGENA_0000790

rights hereunder greater than those which the Artist would have received if the Artist had entered into the Schedule "1" Agreement directly with us as our employee.

7.      For the purpose only of determining the applicability of workers compensation statutes to Artist's services under this Agreement, an employment relationship exists between Artist and us, we being Artist's "special employer" and you being Artist's "general employer." In this regard, you agree (a) that the rights and remedies of Artist and Artist's heirs, executors, administrators, successors, licensees and assigns against us, our officers, agents and employees (including any persons whose services are furnished to us by any corporation or other entity under an agreement granting us the right to supervise, control and direct such person's services ["other special employees"]) by reason of any injury, illness, disability or death of Artist which falls within the purview of applicable workers compensation statutes and which arises out of and in the course of Artist's services under this Agreement or the Schedule "1" Agreement will be limited to the rights or remedies provided under such workers compensation statutes; (b) except as provided by law, that we, our officers, agents and employees will have no obligation or liability to you by reason of any such injury, illness, disability or death except as provided by such statutes; and (c) except as required by law, that neither you nor Artist nor any of Artist's heirs, executors, administrators, licensees, successors or assigns will assert any claim by reason of any such injury, illness, disability or death against any other corporation or entity which furnishes to us services of any other special employee. You hereby agree to indemnify and hold us, and any person or entity claiming under or through us, harmless from and against all claims, demands, liabilities, losses, costs (including reasonable outside attorneys' fees), and expenses (other than any claims, demands, etc. under applicable workers compensation statutes) arising in connection with any such injury, illness, disability or death. We and you hereby make any election necessary to render workers compensation statutes applicable to our engagement of you or to Artist's services under the Schedule "1" Agreement or under this Agreement.

8.      Producer and you mutually consent to resolve by final and binding arbitration any and all disputes, claims or controversies of any kind or nature (collectively, "**Claim[s]**"), you may have against (a) Producer; (b) Producer's past and present parents, affiliates, subsidiaries ("**Related Producers**"); and (c) Producer or Related Producers' respective past and present employees, independent contractors, owners, agents, officers, directors, board members, shareholders, successors, assigns, benefit plans and sponsors, fiduciaries, administrators or insurers ("**Producer Personnel**"); and/or Producer and Related Producers may have against you. This agreement to arbitrate is governed by the Federal Arbitration Act, will be conducted by JAMS, pursuant to applicable JAMS rules, before a single arbitrator in Los Angeles, California. The arbitrator shall have the exclusive authority and jurisdiction to resolve any issues relating to the formation, validity, or enforceability of this Agreement; and whether a Claim is subject to arbitration under this Agreement. Notwithstanding the immediately preceding sentences, if Artist asserts a Claim against Producer, Related Producers or Producer Personnel, or Producer or Related Producers assert a Claim against Artist, arising from Artist's provision of services pursuant to this Agreement, including but not limited to any employment related Claims, such arbitration shall be conducted pursuant to the more specific arbitration provisions set forth in Paragraph 33 of the Schedule "1" Agreement.

9.      In the event this Agreement conflicts with the terms of the Schedule "1" Agreement, the terms of the Schedule "1" Agreement shall prevail.

10.      This Agreement shall be construed in accordance with the laws of the State of California applicable to agreements made and to be wholly performed within the State of California.

*[signature page to follow]*

3

241729231.1
226623-10037

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

IN WITNESS WHEREOF, the parties to this Agreement have executed this Agreement as of the above date.

FOX SQUARE PRODUCTIONS, INC.

By: _____

Name: _____

Its: _____

AGREED TO AND ACCEPTED:

[INSERT LENDER NAME]

By: _____

Name: _____

Its: _____

Federal I.D. No.: _____

4

241729231.1
226623-10037

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

CARTAGENA_0000792