**Tacopina Seigel** Trial Lawyers
TACOPINA SEIGEL & DEOREO

**JOSEPH TACOPINA**
EMAIL: jtacopina@tacopinalaw.com
www.tacopinalaw.com

275 Madison Avenue, 35th Floor
New York, NY 10016
Telephone (212) 227-8877
Facsimile (212) 619-1028

March 9, 2026

**By ECF**

Hon. Jennifer L. Rochon
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *Cartagena v. Dixon et al.*, No. 25-cv-03552-JLR

Dear Judge Rochon:

Plaintiff Joseph Cartagena submits this reply to Defendants Tyrone Blackburn, T.A. Blackburn Law, PLLC, and Terrance Dixon's belated opposition to Plaintiff Joseph Cartagena's motion for sanctions (ECF 150) and supplemental letter regarding the same (ECF 151) (collectively, the "**Belated Opposition Papers**").[1] The Court should disregard the Belated Opposition Papers because they were submitted six days after the Court's deadline. But even if considered, these papers only confirm what is already clear: Defendants willfully violated this Court's orders and now offer nothing but futile excuses and evasions.

**1.      The Belated Opposition Papers Violate the Second Order and Should Be Disregarded**

In the Second Order, dated February 10, 2026, the Court ordered Defendants to oppose the Sanctions Motion by February 24, 2026. ECF 145. Defendants ignored that deadline. They filed their Belated Opposition Papers on March 2, 2026—six days late. The Court should disregard them entirely.

Defendants claim their tardiness is excusable because Defendant Dixon's deposition occurred the same day their opposition was due. ECF 150-1 at 2. This excuse is meritless.

The Court set deadlines for the depositions and sanctions motion during a February 10, 2026 conference. Defendants said nothing when those deadlines were announced. They never informed the Court that the same-day deadlines were problematic. They never alerted the Court to any conflict after it issued its order memorializing them. ECF 145. If Defendant Dixon's deposition date created a conflict, Defendants had an obligation to tell the Court. They did not, and they cannot now manufacture a conflict of their own making.

---

[1] Capitalized words in this letter have the same meaning as those ascribed to them in Mr. Cartagena's motion for sanctions (ECF 146) and supplemental letter (ECF No. 147).

TACOPINA SEIGEL & DEOREO

Hon. Jennifer L. Rochon
March 9, 2026
Page 2

What's more, Defendants had ample time to oppose Mr. Cartagena's motion **before** Defendant Dixon's deposition. Mr. Cartagena filed his motion on February 13, 2026 as required. Defendants thus had nine full days—from February 14, 2026 through February 23, 2026—to draft their opposition. They chose not to.

And even if Defendants genuinely could not meet the Court's deadlines, they had options. They could have asked Mr. Cartagena to agree to more time. They could have asked the Court for an extension. Instead, they chose (as they have done on multiple occasions) to simply ignore the Court's scheduling order. That was a deliberate choice, and the Court should not reward it.

In short, Defendants could have timely opposed Mr. Cartagena's sanctions motion. If they could not, their recourse was to seek an extension **before** violating the Court's order. They sat on their hands before filing the Belated Opposition Papers, violating the Second Order and reinforcing why sanctions are appropriate in the first place—because of Defendants' flagrant disregard of Court orders and deadlines.[2] The Court should therefore disregard Defendants' Belated Opposition Papers. *See* Fed. R. Civ. P. 6(1)(B) (providing that the court may, "for good cause," extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect"); *Hai Dong Li v. Ali Baba Grp. Holding Ltd.*, No. 19-CV-11629 (VSB), 2021 U.S. Dist. LEXIS 170304, at *8 (S.D.N.Y. Sep. 7, 2021) (declining to consider plaintiff's opposition to motion for sanctions where filed "over a week after the deadline" and failing to show "good cause").

### 2. Defendants Were Not "Substantially Justified" In Violating the First Order

Defendants do not dispute that they intentionally violated the First Order by refusing to appear for their February 6, 2026 and February 9, 2026 depositions. Instead, they argue that their non-compliance was justified because Defendant Blackburn was prescribed medications after undergoing procedures on January 23, 2026 and February 3, 2026, which supposedly made it difficult to "sit upright for a seven-hour deposition." Mr. Blackburn's excuse does not pass muster.

***First***, Mr. Blackburn ***himself agreed***, in a letter to the Court on January 20, 2026, that he was available on February 6, 2026 and February 9, 2026. ECF 131 at 1. He confirmed as much during a conference before this Court later that day. *See* ECF 146-7 at 7:19-11:11. If Defendant Blackburn's medical treatment was going to be an issue, he knew about it then. He said nothing.

***Second***, Mr. Blackburn intentionally scheduled his February 3, 2026 procedure *after* the Court issued the First Order and then relied on that self-created conflict to justify his noncompliance with the First Order. Though Mr. Blackburn has not disclosed exactly when he scheduled the February 3, 2026 procedure, he admitted at his (partial) deposition on March 6, 2026 that he "didn't know" that he "was having [the] procedure" when he appeared at the January 20, 2026 conference. *See* **Exhibit A** at 63:24–64:6. And though Mr. Blackburn has not disclosed the procedure he underwent on February 3, 2026, his physician is a "cosmetic" specialist based in Los Angeles, California, suggesting that the procedure was an elective cosmetic procedure. *See* https://www.jasonemermd.com/. Mr. Blackburn thus scheduled this

---

[2] Indeed, this is Defendants' ***eleventh*** missed deadline in this case. ECF 146 at 2.

TACOPINA SEIGEL & DEOREO

Hon. Jennifer L. Rochon
March 9, 2026
Page 3

non-urgent procedure to take place just three days before the first deposition knowing full well (according to him) that post-procedure treatment could incapacitate him and jeopardize his ability to comply with the First Order.

***Third***, Mr. Blackburn's own doctor's note contradicts his claims about the duration of his treatment period. Although Mr. Blackburn claims that his doctors "expect that [he] will remain on . . . medications for approximately six to eight weeks" and that he therefore could not prepare for or attend the depositions in this matter (ECF 137), the unsworn doctor's note tells a different story: Mr. Blackburn was only "advised to refrain from work for ***2 weeks*** for recovery and pain management." ECF 150-2. Two weeks; not six to eight.

***Fourth***, Mr. Blackburn's own conduct further exposes his story:

- Mr. Blackburn represented to the Court that he had scheduled other depositions and court conferences during that same six-to-eight-week span when he was supposedly incapacitated. ECF 137 at 13:12-19, 14:14-20, 15:89.

- Mr. Blackburn defended Mr. Dixon's deposition on February 24, 2026—supposedly in the third week of his recovery—without any apparent difficulty.

- Only one day after claiming he was "unable" to appear for his deposition, Mr. Blackburn flew to Puerto Rico and embarked on a cruise to Trinidad and Tobago for Carnival. ECF 147-1. The cruise, billed as the "Epic Carnival Experience 2026," enticed guests with the "freedom to disembark the ship to partake in all the Epic Carnival activities!" and "seven days of endless excitement, adventure, and dancing. . . ." *See* https://myepiccarnival.com.

***Finally***, Mr. Blackburn's partial deposition on March 6, 2026 removes any remaining doubt. During his deposition, Mr. Blackburn could not identify the medications he was supposedly taking. Exhibit A at 34:7-20. Nor could he articulate what procedure, if any, he actually underwent. *Id.* at 67:12-75:10. His excuse is a sham.

But even accepting Mr. Blackburn's story at face value, he was still obligated to timely inform the Court of his condition. He and his clients were subject to an order mandating their appearance at the February 6, 2026 and February 9, 2026 depositions. He waited until the last possible moment. That alone forecloses any claim of substantial justification.

Defendants' cited cases are readily distinguishable. In *Accely v. Consol. Edison Co. of N.Y.*, 2020 U.S. Dist. LEXIS 163536, at *2 (S.D.N.Y. Sep. 8, 2020), the Court held that attorneys' fees were not warranted only because counsel informed plaintiff "as soon as she knew that [the defendant's] deposition could not proceed[.]" 2020 U.S. Dist. LEXIS 163536, at *2. Similarly, in *Unicure, Inc.*, counsel for the non-appearing party called opposing counsel several times and hand delivered a letter to opposing counsel less than one day after learning that the witness would not be able to attend the deposition. *Id.* at 369-70.

Hon. Jennifer L. Rochon
March 9, 2026
Page 4

This case is nothing like *Accely* or *Unicure*. Here, Defendants' deposition was scheduled by Court order. Moreover, unlike in *Accely* and *Unicure*, Defendants knew about Defendant Blackburn's procedures and medications for weeks, yet waited until the last moment to inform Mr. Cartagena or seek an extension from the Court. Indeed, according to the Belated Opposition Papers, Mr. Blackburn had scheduled and paid for his February 3, 2026 procedure *"**well before**"* January 23, 2026. ECF 150 at 5 (emphasis added).

Defendants' broader course of conduct in this litigation, unlike the deponents in *Accely* and *Unicure*, further smacks of bad faith. The Motion describes in detail Defendants' numerous missed deadlines, misrepresentations and mischaracterizations, and refusals to coordinate with Plaintiff over routine issues *including deposition scheduling*. ECF 146 at 2-3. This Court has admonished Mr. Blackburn several times for discovery misconduct, including failing to communicate with Mr. Cartagena on issues such as their objections to document discovery and confidentiality designations.[3] The Belated Opposition Papers do not substantively address any of this. They offer only a conclusory statement, without further explanation, that Mr. Blackburn's misrepresentations have "accurate good-faith explanation[s]." ECF 151-1 at 4. That is no response at all.

Accordingly, Defendants were not "substantially justified" in violating the First Order. *See Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 587-92 (S.D.N.Y. 2025) (finding no substantial justification for party's failure to attend depositions where counsel waited eight days after receiving deposition notice and two business days before the deposition to respond); *Glasstech, Inc. v. Freund*, No. 23-CV-6004 (PGG) (HJR), 2025 U.S. Dist. LEXIS 128651, at *12-14 (S.D.N.Y. July 8, 2025) (finding no substantial justification for party's failure to attend depositions where party only provided an unsworn doctor's note providing "a conclusory opinion" that the party "cannot sit for a continued deposition" and did not provide any other information regarding the purported medical condition preventing the deposition).

### 3. The Fees and Costs Mr. Cartagena Incurred Were Unavoidable

The Belated Opposition Papers continue Defendants' pattern of misrepresenting Mr. Cartagena's conduct, falsely implying that Mr. Cartagena could have mitigated his expenses after receiving Mr. Blackburn's notice. This is wrong for multiple reasons.

---

[3] ECF 80 ("Defendants are advised that it is unacceptable that they did not respond to Plaintiff's letter . . . (or subsequent voicemail) requesting a meet and confer to address Plaintiff's concerns about the lack of response to his discovery requests. . . This delayed discovery and wasted the parties' and the Court's resources in addressing an issue that perhaps could have been resolved without Court intervention if Defendants had timely communicated with Plaintiff. The Court expects that this will not happen in the future."); ECF 158 ("Defendants failed to comply with the Court-ordered Protective Order dated December 8, 2025 by filing such documents without following the process set forth in that Order, including paragraph 21. Defendants are advised that future non-compliance will not be tolerated.")

TACOPINA SEIGEL & DEOREO

Hon. Jennifer L. Rochon
March 9, 2026
Page 5

As an initial matter, the First Order required both parties—including Mr. Cartagena—to proceed with Defendants' depositions on February 6, 2026 and February 9, 2026. So long as that order remained in effect, Mr. Cartagena's counsel had no choice but to appear or Mr. Cartagena himself would be in contempt. Defendants falsely claim that Mr. Cartagena "elected to proceed with arranging the court reporter and videographer *after* receiving" Mr. Blackburn's February 3, 2026 email (the "**February 3 Email**"), which merely stated that he would "not be able to attend the depositions" and would "write the court at the conclusion of today's procedure to inform the Judge." ECF 150 at 4-5 (emphasis added); 136-2 at 2. This is simply false. Mr. Cartagena arranged the court reporter and videographer shortly after the Court entered the January 20, 2026 Order, weeks before Mr. Blackburn's February 3 Email.

Defendants then compound their misrepresentations, claiming that "rather than agreeing to adjourn or seeking expedited guidance from the Court before February 6," Mr. Cartagena "refused to accommodate a medically necessitated adjustment once a second procedure became necessary." ECF 150 at 4-5. This is also false. Mr. Blackburn never sought an adjournment from Mr. Cartagena. After waiting two days for Mr. Blackburn to "inform the Judge" as he said he would, Mr. Cartagena filed a letter requesting immediate remedial action against Defendants. ECF 136.

### 4. The Belated Opposition Papers Only Reinforce Why Sanctions Are Warranted

The Belated Opposition Papers exemplify Mr. Blackburn's pattern of refusing to take accountability for his myriad acts of dishonesty. They are replete with further misrepresentations. Sanctions are necessary to deter this misconduct.

Consider just one example. Mr. Blackburn previously represented to the Court that he was able to go on a 10-day vacation (but not appear for his deposition) because he was "not flying anywhere." ECF 146-6 at 13:13-14:10. But Mr. Blackburn has since made representations in multiple federal courts that he flew back and forth from Puerto Rico, ECF 147-2, and admitted during his partial deposition on March 6, 2026 that he flew to and from California for both of his medical procedures, *see* Exhibit A at 65:15–66:16. Now, caught in this contradiction, Mr. Blackburn concedes that he flew to Puerto Rico but insists that he did not mean what he plainly said. He claims he merely implied that "the primary mode of transportation was a ship, not an airplane." ECF 150-1. This explanation is absurd. His actual words: "***I'm not flying anywhere***," "it's ***just a cruise***." ECF 146-6 at 13:13-14:10. There is no ambiguity.

In another case, *Cain v. United Mortgage Corp.*, No. 21-cv-3325 (E.D.N.Y.), Mr. Blackburn represented to Magistrate Judge Joseph A. Marutollo of the Eastern District of New York that he lacked "reliable internet connectivity sufficient to access CM/ECF" on February 13, 2026. ECF 147-1 at 1. Yet Mr. Blackburn made at least three filings via ECF that very same day. ECF 147-3. His claim that those filings were "categorically different" from the filings in *Cain* is beside the point: Mr. Blackburn undoubtedly had access to CM/ECF, and his representation to the contrary was false.

TACOPINA SEIGEL & DEOREO

Hon. Jennifer L. Rochon
March 9, 2026
Page 6

Finally, the Belated Opposition Papers wholly fail to address Defendants' litany of other misconduct, including their (1) numerous missed deadlines; (2) repeated errors in filings and discovery responses; and (3) refusal to cooperate or communicate on routine matters. *See* Mot. at 2-3. The Belated Opposition Papers dismiss this well-documented misconduct as a "characterization" that "is itself a mischaracterization" consistent with a "broader campaign . . . to discredit and neutralize" Mr. Blackburn. ECF 150-1 at 4. But true to form, Defendants make no actual effort to rebut any of these claims. And Defendants have only added to this list of misconduct since Mr. Cartagena filed the Motion: first missing their deadline to file the opposition, then submitting filings laden with misrepresentations, and continuing to ignore Mr. Cartagena's efforts to coordinate on routine issues. Mr. Blackburn's unrelenting misconduct only underscores the urgent need for the monetary and non-monetary sanctions sought in the Motion.

\* \* \*

For the foregoing reasons, enough is enough, and Mr. Cartagena requests again that the Court grant the Motion, and impose sanctions sufficient to deter Defendants' conduct, and compensate Mr. Cartagena for the fees and costs incurred as a result of Defendants' repeated violations.

We thank the Court for its attention to this matter.

Respectfully submitted,

Joseph Tacopina

And

/s/ Jordan W. Siev
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022

*Counsel for Plaintiff Joseph Cartagena*

cc:   All counsel of record (by ECF)