UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH CARTAGENA,

                              Plaintiff,

              -against-

TERRANCE DIXON, TYRONE
BLACKBURN, and T.A. BLACKBURN
LAW, PLLC,

                              Defendants.

---

Case No. 1:25-cv-03552 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On April 29, 2025, Plaintiff Joseph Cartagena ("Plaintiff" or "Cartagena") commenced this action against Defendants Terrance Dixon ("Dixon"), Tyrone Blackburn ("Blackburn"), and T.A. Blackburn Law, PLLC ("Blackburn Law") (collectively, "Defendants"), alleging a defamation claim against Dixon and an intentional infliction of emotional distress ("IIED") claim against all Defendants.[1]  *See* Dkt. 1.  Plaintiff twice amended the Complaint, adding a defamation claim against Blackburn and Blackburn Law.  Dkt. 33 ("Second Amended Complaint" or "SAC") ¶¶ 131-41.  On August 11, 2025, Defendants moved to dismiss the Second Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and sought an award of costs and attorney's fees under N.Y. Civ. Rights Law § 70-a. Defendants later filed a motion for sanctions pursuant to Rule 11 against Plaintiff on December 4, 2025.  Plaintiff opposed both motions.  For the following reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.  Furthermore, the Court DENIES Defendants' motion for sanctions.

---

[1] Due to a filing error, Plaintiff refiled the Complaint on April 30, 2025.  *See* Dkt. 9 ("Compl.").

## BACKGROUND

The following facts are drawn from the Second Amended Complaint and taken as true for purposes of resolving the motion to dismiss.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### I.    Factual Background

This suit arises out of Defendants' social media posts accusing Cartagena of various crimes.  Cartagena, professionally known as "Fat Joe," is a musician whose career dates back to the 1990s.  SAC ¶¶ 19, 27.  From 2006 to 2019, Defendant Dixon, professionally known as "TA," served as Cartagena's "hype man — a supporting performer who increases audience engagement with interjections and chants."  *Id.* ¶ 1; *see also id.* ¶ 34.  For Dixon's hype-man work, Cartagena paid him the industry rate, *id.* ¶ 1, and Dixon also enjoyed the fringe benefits of touring, such as luxury travel, *id.* ¶ 2.  Dixon never complained or expressed dissatisfaction with his pay or other conditions of employment.  *Id.* ¶¶ 1, 2.  Even when Dixon and Cartagena parted ways in 2019, they did so amicably.  *Id.* ¶ 2.

However, Cartagena and Dixon's relationship soured in or around 2023.  *See id.* ¶¶ 3, 36.  According to the Second Amended Complaint, Dixon falsely claimed that Cartagena had kept him from securing outside funding for a record label, and further claimed that Cartagena's former manager had told Dixon that he should have been paid more for his work.  *Id.* ¶ 3.  Dixon also told family members that if they did not stop working with Cartagena, he would post false information about Cartagena on social media and "take all of [Cartagena's] money."  *Id.* ¶ 36.

In 2023, Dixon began making accusations about Cartagena on public social media accounts, including Instagram.  *Id.*  In these posts, Dixon falsely claimed that he witnessed Cartagena sexually assault a woman in 2010.  *Id.* ¶¶ 37, 38.  Dixon made these accusations even though Cartagena was cleared of any wrongdoing after speaking with the police in 2010 and

Dixon knew that the "inappropriate touching" allegation was made against Dixon and not Cartagena. *Id.* He posted a picture of Cartagena with a caption referring to a "rape charge" and threatening to "go into full detail." *Id.* ¶ 38 (capitalization omitted). Dixon followed up in August and September of 2023 with further social media posts accusing Cartagena of being a pedophile and claiming to have witnessed Cartagena engage in inappropriate sexual relations with an underage girl. *Id.* ¶¶ 46-48.

In a series of messages on October 2023 to Cartagena's manager, Dixon sent an image of a fake news headline "FAT JOE STATUTORY RAPE VICTIM REVEALED" and threatened that "[t]his is what the news paper [sic] is going to look like . . . ." *Id.* ¶¶ 40-41. Dixon further warned that "[t]he countdown is on . . . [t]ell the fat man be smart I warned him before" and that "Joe got it fucked up I get it joe didn't get it yet *I'm the predator joes the prey*." *Id.* ¶ 42 (emphasis in original) (errors in original). Dixon then followed through on this threat, publicly accusing Cartagena of statutory rape, *id.* ¶¶ 49-50, and also asserting that Cartagena stole money and credit for songs that Dixon claimed to have written, *id.* ¶¶ 54-58. According to the Second Amended Complaint, all of these accusations were false, and Dixon knew so. *See, e.g.*, *id.* ¶¶ 44, 53, 58. Dixon also publicly posted that Cartagena's wife cheated on Cartagena and that he cheated on her. *Id.* ¶¶ 59-61.

Dixon continued making false and defamatory accusations throughout 2024 and 2025. Those statements included the following:

1. On May 23, 2024, Dixon made an Instagram post directed at Cartagena, who Dixon notoriously refers to as "Lil Joey," stating: "LIL JOEY WAS DATING AND HAVING SEX WITH A 16 YEAR OLD GIRL NAMED NIKKI AKA CHIQUITA HE HAD A FULL FLEDGE RELATIONSHIP WITH HER FOR 5 YEARS." *Id.* ¶ 124(a).

2. On September 20, 2024, Dixon made an Instagram post accompanied by a photo of Cartagena, Sean "Diddy" Combs, and DJ Khaled that said: "#fatjoe

Nikki was underage when u flew her across state lines and out the country." *Id.* ¶ 124(b).

3. On October 1, 2024, Dixon made an Instagram post stating: "FAT JOE HAD A FULL FLEDGE RELATIONSHIP WITH NIKKI WHO WAS UNDERAGE" and "FAT JOE KNEW DRE WAS HAVING SEX WITH A UNDERAGE GIRL BECAUSE JOE WAS THE GUY TELLING HIM CALM DOWN WE GOING TO TAKE CARE OF IT." *Id.* ¶ 124(c).

4. On December 28, 2024, Dixon made an Instagram post alongside photos of Cartagena captioned: "#FATJOE Milwaukee was scary the girl wasn't lying" and "this happened in Wisconsin joe was being a thirsty n**** and almost got us locked up for #sexualassault." The caption included four headlines: "It's Officially Over for Fat Joe," "Fat Joe Investigated for Sexual Assault" "Fat Joe's Ghostwriter T.A. The Legend," and "Fat Joe Former employee finally speaks out." *Id.* ¶ 124(d).

5. On December 28, 2024, Dixon posted to his Instagram an interview that he had given in which he made false statements accusing Cartagena of sexually assaulting a Wisconsin woman by putting his hand up her skirt. *Id.* ¶ 124(e).

6. On March 17, 2025, Dixon posted an Instagram story, accompanied by the headline of a video titled "Fat Joe Calls Gongu Roach a Liar!," stating: "You have a very long history of stealing and robbing people" and "You stole from Pun and his family you settled in court to pay Liaz Rios 2.3 million not counting the rest of the money you stole." *Id.* ¶ 124(f)

7. On March 18, 2025, Dixon made a post on Instagram Threads that featured an image of Cartagena's album cover "Jealous Ones Still Enny," stating: "#FATJOE DONT NEVER FORGET WHO KEPT YOU BREATHING I WROTE THIS FOR YOUR HOMIE." *Id.* ¶ 124(g)

8. On April 13, 2025, Dixon, while being interviewed on the "Off da Books Podcast," alleged that Cartagena underpaid him and did not credit him for the songs he said he had written for Cartagena. *Id.* ¶ 124(h).

As a result of Dixon's accusations, Cartagena lost out on several business opportunities, including advertising deals and appearances on podcasts and national television networks. *Id.* ¶¶ 114-21.

Dixon then retained Defendants Blackburn and Blackburn Law allegedly to "shake Cartagena down." *Id.* ¶ 63. On March 23, 2025, Blackburn sent a demand letter to Cartagena, requesting compensation for Dixon as a ghostwriter and uncredited vocalist on some of

Cartagena's songs. *Id.* ¶ 9. Cartagena did not agree to the demands, leading Blackburn to send a second letter on April 21, 2025. *See id.* ¶ 69. In his second letter, Blackburn again demanded payment, but also asserted that Cartagena engaged in misconduct and violations of the Trafficking Victims Protection Act ("TVPA") for alleged acts of forced labor and coercive sex trafficking. *Id.* Blackburn threatened to file a lawsuit "if Cartagena did not accede to Dixon's demands by April 25, 2025." *Id.* ¶ 71.

On April 22, 2025, Blackburn emailed Cartagena's counsel and threatened to report Cartagena to Homeland Security and file his lawsuit "without further warning." *Id.* ¶ 72. Blackburn also claimed to have "video and other evidence" supporting Dixon's allegations against Cartagena. *Id.* In response to these threats, Cartagena's counsel spoke with Blackburn on April 23, 2025, about Dixon's allegations and why Blackburn had threatened to call Homeland Security. *Id.* ¶ 73. During that call, Blackburn explained that he intended to call Homeland Security because Dixon had learned from an anonymous source that Cartagena had "put a hit out on" Dixon. *Id.* ¶ 74. Cartagena's counsel denied this allegation, and Blackburn admitted that "he had not personally corroborated [Dixon's] story with the purported witness." *Id.* ¶ 75.

Blackburn further claimed that he had spoken with three women who had sexual encounters with Cartagena while they were underage; however, an investigation determined that at least two of those individuals had never spoken with Blackburn. *Id.* ¶¶ 76-77. Cartagena's counsel also requested the video "evidence" of Dixon's alleged sex trafficking claim, "but Blackburn admitted he had never seen some of the video evidence he claims substantiates [Dixon's] allegations." *Id.* ¶ 78.

According to the Second Amended Complaint, "Blackburn made it abundantly clear that the hit job claims and accusations of statutory rape were mere side shows and leverage to obtain shakedown money," by stating:

> I mean, listen, *Homeland Security and all that stuff aside*, you know, nothing -- The whole resolution of this before my client's call yesterday to me, and my email to you, you know, *my goal was to see if we can have some sort of resolution to the claims that my client has regarding what he feels to be, you know, his contributions* that was not compensated, and you know, work and all sorts of stuff, and time and all these other things that he feels that he was not compensated for.
>
> . . .
>
> Listen, *I want you to be very clear. This is not about Joe's decisions in the bedroom with whomever he chooses to sleep with. This is business.* This is about what he required my client to do, and left my client in Africa, left my client in Asia, left my client in Europe when my client refused to do those things. Right? That is the key. That's the part. If any part of the TVPA was going to be brought, it's going to be based on those things. Nothing to do with [Doe 3]. I'm not filing on her behalf. I'm not filing on [Doe 2]'s behalf. I'm not filing on [Doe 1]'s behalf. I'm not filing on any of people's behalf.

*Id.* ¶ 80 (emphasis in original) (insertions in original).

Two days later, on April 25, 2025, Blackburn provided Cartagena's counsel with a third letter "containing even more vile and false accusations" and a demand for a $20 million settlement payment. *Id.* ¶ 82. Blackburn followed up with a series of what Cartagena's counsel deems as "unhinged emails" from April 26-29, 2025, spoke with Cartagena's counsel again on April 28, 2025 about his supposed verification of his alleged claims and demand for $20 million, and then emailed with a threat to bring a RICO claim against Cartagena. *Id.* ¶¶ 83-85.

On April 29, 2025, Cartagena filed the present suit, alleging defamation and intentional infliction of emotional distress. *See generally* Compl. The same day, Blackburn made an Instagram post directed at Cartagena's counsel:

> @joetacopina_spal, you ran and filed a baseless lawsuit against my client and me in the SDNY, alleging Defamation and Intentional Infliction of emotional distress in an attempt to get ahead of the forthcoming lawsuit against your client @fatjoe.

No matter how hard you try to deflect and cherry-pick emails and conversations, your client has a lot of explaining to do.  I invited you and me to meet with the SDNY Prosecutors, but you have yet to respond.  You can bring your baseless accusation of extortion, and I will bring the 19-min audio recording of your client's felonious henchman, Pistol Pete, soliciting a former member of Terror Squad to lure my client to a specific location for Pistol Pete and his thugs to "pound him out."  *Your client, @fatjoe, ordered a hit job against my client.*  Pistol Pete also discusses how he had to run down on @tonyyayo a member of @gunitbrands due to some fued [sic] with @50cent and run up into clubs to attack other victims.  Your client should also prepare to answer questions surrounding two additional recordings where two females discuss your client's disgusting pattern of grooming and sleeping with 16-year-old children.

*Id.* ¶ 88 (emphasis in original).  Later, on May 2, 2025, Blackburn provided an interview that was published on the Instagram account @officialprinceofpain.  *Id.* ¶ 91.  In this interview, Blackburn claimed to have an audio clip of a man named "Pistol Pete" threatening to have Dixon "pounded out."  *Id.*  Cartagena alleges that Blackburn knew these statements were false and that the clips did not support any such claim or implicate Cartagena in ordering violence against Dixon.  *Id.* ¶ 92.  During the interview, Blackburn also claimed to have evidence of Cartagena's relationship with a minor, stating:

Before that, they got a recording of a young lady that I gave them, another snippet.  It was probably like about 60 seconds long of a 15-minute conversation of another young lady who was Fat Joe's, uh, girlfriend.  And he started dating her when she was 16 years old and he was in his late 30s.  And it is clear as day on this recording she's saying that where he did to her — because now she's an adult and now she's a Christian . . . was inappropriate . . . 'cause, you know, she was a child[.]

*Id.* ¶ 132(b)(ii) (omissions in original).  Blackburn affirmed that these statements were his, stating that the information was "according to [him], one hundred percent . . . a hundred percent all Tyrone Blackburn," going so far as to state that he would "indemnify" the interviewer "100 million bajillion percent[.]"  *Id.* ¶ 132(c) (alterations and omission in original).  After the interview, Blackburn sent Cartagena's attorneys a 60-second segment of a recorded conversation between an unidentified woman and man in which the woman made statements about inappropriate conduct and someone dating somebody twice their age, but neither participant

identifies or references Cartagena as the older individual or states that the younger person being discussed was underage. *Id.* ¶ 94.

A few weeks after this interview, on June 19, 2025, Dixon, represented by Blackburn and Blackburn Law filed a lawsuit in the Southern District of New York against Cartagena and several other defendants alleging state and federal claims, including RICO claims, related to activity such as sex trafficking, forced labor, and ordering a hit job against Dixon. *See Dixon v. Cartagena et al.*, No. 25-cv-05144 (JLR).

## II.    Procedural Background

As noted, Cartagena commenced this action on April 29, 2025, bringing claims for defamation against Dixon and IIED against Dixon, Blackburn, and Blackburn Law.  Compl.  On May 1, 2025, Cartagena filed his First Amended Complaint.  Dkt. 14 ("FAC").  Defendants filed a motion to dismiss the First Amended Complaint on June 23, 2025.  Dkt. 28.  Plaintiffs thereafter filed a Second Amended Complaint on July 21, 2025, adding a defamation claim against Defendants Blackburn and Blackburn Law for statements made in social media posts and interviews after the suit was initially filed.  SAC ¶¶ 131-41.  On August 11, 2025, Defendants moved to dismiss the Second Amended Complaint.  Dkt. 45 ("Mot."); Dkt. 46 ("Br."); Dkt. 47 ("Dixon Decl.").  Cartagena filed his opposition on September 5, 2025, Dkt. 53 ("Opp."), and Defendants filed their reply on September 13, 2025, Dkt. 56 ("Reply").  Defendants later filed a notice of supplemental authority on October 9, 2025, citing *Graham v. UMG Recordings, Inc.*, 806 F. Supp. 3d 454 (S.D.N.Y. 2025).  *See* Dkt. 74.  Cartagena responded to the supplemental authority on October 22, 2025.  *See* Dkt. 77.

On December 4, 2025, Defendants filed a motion for Rule 11 sanctions against Cartagena.  Dkt. 98; Dkt. 99 ("Sanctions Br."); Dkt. 100 ("Blackburn Aff.").  Defendants argued that the SAC was frivolous, legally baseless, and filed for an improper purpose.  *See generally*

Sanctions Br.  Cartagena opposed the motion, arguing that the sanctions motion itself was frivolous and that the Court should award Cartagena reasonable fees for responding to the motion for sanctions.  *See generally* Dkt. 107 ("Sanctions Opp."); *see also* Dkt. 106 ("Siev Decl.").  Defendants filed their reply. Dkt. 110 ("Sanctions Reply").  Both motions are now fully briefed.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court accepts as true all non-conclusory allegations of fact and draws all reasonable inferences in the nonmovant's favor.  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc).  But a court need not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A pleading must allege "more than a sheer possibility that a [party] has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "[T]he court's task is to assess the legal feasibility of the [allegations]; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  Determining whether a pleading states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Defendants argue that the Court should grant the motion to dismiss because the SAC fails to adequately allege claims for defamation or IIED.  *See* Br. at 5-6.  Defendants further argue that sanctions are warranted because the lawsuit is frivolous, legally baseless, and filed for an improper purpose.  Sanctions Br. at 4-5.  The Court addresses each argument in turn.

9

## I.    Hallucinated Cases

Before this Court begins its analysis, it must address Blackburn's pervasive citations to non-existent authority in his briefing in support of Defendants' motion to dismiss.  As Plaintiff points out, Defendants' brief contains several fake authorities and misrepresentations of the law. Opp. at 10-11; *see also* Dkt. 57.

Blackburn does not dispute this and instead states that the miscited cases resulted from using the AI legal research platform Protégé in LexisNexis.  Dkt. 58.  LexisNexis, however, provided a letter to the Court refuting that Blackburn had a subscription to its AI tools, "Lexis+ AI" or "Protege."  Dkt. 96-1.  Thus, the Court is not only concerned with Blackburn's submission of hallucinated cases and misstatements of the law in his brief, but also with his misrepresentations to the Court regarding the source of his research.

Sanctions may be imposed for submitting false or nonexistent legal authority to the Court.  *See, e.g.*, *Flycatcher Corp. v. Affable Ave. LLC*, No. 24-cv-09429 (KPF), 2026 WL 306683, at *12-13 (S.D.N.Y. Feb. 5, 2026) (sanctioning attorney that submitted documents containing fake cases and misattributed quotes hallucinated by AI); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 459-66 (S.D.N.Y. 2023) (same).  Alternatively, the Court may refer an attorney to the Grievance Committee for filing such non-existent authority.  *See, e.g.*, *Park v. Kim*, 91 F.4th 610, 613-16 (2d Cir. 2024) (per curiam) (referring to Second Circuit's Committee on Admissions and Grievances an attorney whose brief, drafted in reliance on ChatGPT, included fake opinions).  Blackburn has been sanctioned and warned in the past for litigation misconduct.  For example, in *Zunzurovski v. Fisher*, No. 23-cv-10881 (DLC), 2024 WL 1434076 (S.D.N.Y. Apr. 3, 2024), *appeal dismissed*, (July 30, 2024), Judge Denise Cote referred Blackburn to the Court's Grievance Committee for failing to conduct a reasonable inquiry to support his assertion of jurisdiction.  *Id.* at *2.  Later, in *Jones v. Combs*, No. 24-cv-01457 (JPO), 2025 WL 896829

(S.D.N.Y. Mar. 24, 2025), Judge J. Paul Oetken issued a warning to Blackburn for making several "inaccurate statements of law, conclusory accusations, and inappropriate ad hominem attacks on opposing counsel" in his complaint and opposition brief.  *Id.* at *4.

Most relevant to the conduct here, on June 26, 2025, a federal judge in Pennsylvania ordered Blackburn to show cause why he should not be sanctioned for submitting fabricated cases and misrepresentations in two briefs that he filed, *see* Memorandum Order at 7-8, *Jakes v. Youngblood*, No. 24-cv-1608 (W.D. Pa. June 26, 2025), Dkt. 53, and ultimately granted attorney fees in the amount of $5,000 as a sanction on October 6, 2025, *id.* Dkt. 71 at 5.  Additionally, on September 15, 2025, Justice Rosado of the Supreme Court of the State of New York ordered Blackburn to submit an affirmation in a New York state court action to explain "why his motions papers repeatedly cite to cases that do not exist and/or stand for legal propositions that are discussed nowhere in the cited decisions."  Dkt. 57, Ex. 1 (Decision + Order on Motion in *Facey v. Fisher, et al.*, Index. No. 152088/2025, NYSCEF Doc. No. 50).

After the order to show cause was issued by the Pennsylvania court, and after Blackburn asserts that he completed continuing legal education courses between July 18, 2025 to August 7, 2025 "to better understand the implications of artificial intelligence in legal drafting," Dkt. 58 at 3-4, he continued to include hallucinated cases in his brief in this case, which was filed on August 11, 2025, *see* Mot.  Blackburn's representation that he used a LexisNexis tool that LexisNexis refutes he had access to, Dkt. 96-1, is also troubling.  It seems that the warnings and sanctions by the courts, as well as the CLE courses, did not have an appreciable impact on Blackburn.  This lengthy historic recitation is intended to serve as a public admonition aimed to deter future misconduct.  While the Court will not strike the Defendants' submissions or award attorneys' fees as requested by Plaintiff, Dkt. 57, further misconduct by Blackburn may lead to sanctions or a referral for discipline.

11

## II.    Defamation Claims

Turning to the merits of the present motion to dismiss, the Court finds that Cartagena has

adequately pleaded a claim for defamation against Defendants.  "Defamation is the 'making of a

false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or

disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive

him of their friendly intercourse in society.'"  *Moraes v. White*, 571 F. Supp. 3d 77, 93 (S.D.N.Y.

2021) (quoting *Foster v. Churchill*, 665 N.E.2d 153, 157 (1996)).  To state a claim for

defamation under New York law, the plaintiff must allege "(1) a written [or spoken] defamatory

statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of

the defamatory statement, and (5) special damages or [defamation] per se[.]"  *Palin v. New York

Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *accord Moraes*, 571 F. Supp. 3d at 93.

Here, Cartagena brings two defamation claims.  The first claim is against Dixon and is

based on Dixon's public statements that Cartagena engaged in sexual assault, statutory rape, and

theft.  SAC ¶¶ 123-30.  The second defamation claim is against Blackburn and Blackburn Law

and is based on Blackburn's public statements falsely accusing Cartagena of sexual misconduct,

ordering a hit on Dixon, statutory rape, violence, and stealing, as well as falsely stating in an

interview that he had recorded evidence of the threatened violence and statutory rape.  *Id.*

¶¶ 131-41.

It is undisputed that Cartagena has plausibly alleged facts that would satisfy the first,

second, and fifth elements of a defamation claim.  First, Cartagena identifies specific statements

made by Defendants concerning Cartagena.  Cartagena alleges that Dixon accused Cartagena of

sexual assault, *id.* ¶¶ 124(d)-(e), statutory rape, *see id.* ¶¶ 124(a)-(c), and stealing money and

credit from Dixon, *see id.* ¶ 124(f)-(h).  Likewise, Cartagena identifies Blackburn and Blackburn

Law's statements that Cartagena ordered a hit against Dixon, *see id.* ¶¶ 132(a)-(b)(i), and that he

had evidence to corroborate this accusation and further evidence that Cartagena engaged in a sexual relationship with a minor, *see id.* ¶¶ 132(b)(ii).  These accusations of serious criminal activity are plausibly defamatory because they would "expose [Plaintiff] to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons."  *Moraes*, 571 F. Supp. 3d at 93 (citation omitted); *see, e.g.*, *Erdman v. Victor*, No. 20-cv-04162 (LGS), 2021 WL 5359660, at *2 (S.D.N.Y. Nov. 17, 2021) (holding complaint "sufficiently pleads a claim of defamation" when "[d]efendant[] accus[ed] [p]laintiff of criminal activity").  As for the second element, Cartagena alleges that Defendants intentionally published or caused these statements to be published to a third-party via social media or podcasts.  *See* SAC ¶¶ 125, 133.  With respect to the fifth element, Cartagena plausibly alleges that the statements are defamatory *per se*.  "Under New York law, to recover on a defamation claim, a plaintiff must either plead special damages or that the statements are defamatory *per se*. Statements that are defamatory *per se* 'are actionable without pleading and proof of special damages.'"  *Moraes*, 571 F. Supp. 3d at 95 (internal citation omitted) (quoting *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000)).  The New York Court of Appeals has recognized certain categories of statements as defamatory *per se*, which include, as relevant here, those that "charg[e] plaintiff with a serious crime."  *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992); *accord Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir. 2011).  Here, Defendants accuse Cartagena of sexual assault, statutory rape, and theft, all of which are serious crimes.  *See, e.g.*, *Lazar v. City of New York*, No. 21-cv-01748 (LGS), 2023 WL 3346085, at *4 (S.D.N.Y. May 10, 2023) (finding accusations of theft to be defamatory *per se*); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) ("Rape is a sufficiently 'serious' crime to support a claim for defamation *per se*.").  Therefore, Cartagena adequately pleads facts that satisfy the first, second, and fifth elements of defamation.

Defendants argue that the Second Amended Complaint does not satisfy the third and fourth elements of a defamation claim. *See* Br. at 6. Specifically, Defendants assert that the third element is not met because the Second Amended Complaint does not plausibly allege that the statements were made with actual malice, *id.* at 7-9, and the fourth element is not met because Dixon and Blackburn's statements are true, *id.* at 8-9. Defendants also argue that even if those elements were adequately alleged, the defamation claims still fail because Defendants' statements are non-actionable opinions, *id.* at 9-11; Reply at 4-5, Blackburn's statements are privileged, Br. at 11-12, and the claims are time-barred under New York law, *id.* at 6. The Court does not agree with any of Defendants' arguments and will address each in turn.

## A.    Third Element – Fault

When a plaintiff is a public figure, the third element of fault can be satisfied only if the "[defamatory] statement was made with actual malice, that is, made with knowledge that it was false or with reckless disregard of whether it was false or not." *Palin*, 940 F.3d at 809 (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173-74 (2d Cir. 2001)). On a motion to dismiss, "a public-figure plaintiff must plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (citation modified); *accord McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020). "'Although actual malice is subjective, a court typically will infer actual malice from objective facts' such as 'the defendant's own actions or statements, the dubious nature of his sources, and the inherent improbability of [his] story among other circumstantial evidence.'" *Carroll v. Trump*, 151 F.4th 50, 72 (2d Cir. 2025) (alteration in original) (quoting *Celle*, 209 F.3d at 183). "These facts should provide evidence of 'negligence, motive and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice.'" *Celle*, 209 F.3d

163, 183 (2d Cir. 2000) (emphasis omitted) (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 692 F.2d 189, 196 (1st Cir. 1982)); *see Panini Am., Inc. v. Fanatics, Inc.*, No. 23-cv-09714 (LTS) (VF), 2025 WL 753954, at *12 (S.D.N.Y. Mar. 10, 2025) (finding plaintiff adequately pleaded actual malice when complaint alleged defendants engaged in a scheme to harm plaintiff's business and knew the truth about the defamatory statements).

The parties do not dispute that Cartagena is a public figure, and thus, to plead a claim for defamation, he must allege that Defendants made the alleged defamatory statements with actual malice. The Second Amended Complaint expressly pleads that Defendants published statements with actual malice because he had a subjective awareness of the falsity of the statements, or acted with reckless disregard to the falsity of the statements. SAC ¶¶ 126, 134, 135, 152. Cartagena also pleads facts that support the allegation that Defendants acted with actual malice. According to the Second Amended Complaint, Dixon did not begin making accusations about Cartagena until he came to believe that Cartagena interfered with a business opportunity and that he had been underpaid. *Id.* ¶ 3. Cartagena alleges that Dixon told his family members that he intended to extort Cartagena for money. *Id.* ¶ 36. After Dixon's first accusations in 2023, he sent multiple threatening messages to Cartagena's manager. *Id.* ¶¶ 40-42. Likewise, when Blackburn began communicating with Cartagena's counsel, he initially demanded compensation for songwriting and performing. *Id.* ¶ 69. Only after the initial refusal did Blackburn raise allegations of sex crimes. *Id.* And when Blackburn and Cartagena's counsel spoke by phone about Dixon's various accusations, Blackburn indicated that Dixon's goal was to obtain the compensation Dixon believed he was owed. *Id.* ¶ 80. These facts support a plausible inference that Dixon and Blackburn made the statements not because they were true but instead to obtain money from Cartagena by publicizing false accusations.

Indeed, Cartagena alleges that Dixon knew that the sexual misconduct and statutory rape claims were false. *Id.* ¶ 53. Cartagena also alleges that Blackburn never spoke with the woman who supposedly corroborated Dixon's accusations. *Id.* ¶ 76-77. And, according to the Plaintiff, the audio recordings Blackburn claimed to have do not support the assertion that Cartagena ordered a hit job on Dixon or that Cartagena slept with a minor. *Id.* ¶¶ 92-94. Taken together, Cartagena has pleaded facts sufficient to plausibly infer actual malice.

### B.    Fourth Element – Falsity

Moving to the fourth element, falsity, the Court is not persuaded by Defendants' argument that the defamation claims should be dismissed because the identified statements are true. Br. at 9-13. At the pleading stage, courts "require[] plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017) (collecting cases). Cartagena does so here. According to the Second Amended Complaint, Cartagena was cleared of any allegations of sexual assault after being questioned by the police. SAC ¶ 37. Cartagena also pleads that Dixon's specific claims that he had sex with a 16 year-old are false, *id.* ¶ 54, and that the woman who Blackburn claimed corroborated Dixon's allegations never spoke with Blackburn, *id.* ¶ 76-77. Cartagena also pleads that Dixon's claims that he stole money and credit from Dixon are false. *Id.* ¶ 57. Lastly, the Second Amended Complaint alleges that the audio files that supposedly corroborated Cartagena's order of a hit job on Dixon or an inappropriate relationship with a minor reflected no such information. *Id.* ¶¶ 92-94.

In refuting this element, Defendants point to Dixon's Declaration filed with this lawsuit and the separate complaint in *Dixon v. Cartagena et al.* Br. at 9-11. However, a defamation claim may be dismissed for failure to plead the fourth element "only if the statement's truth may

be established from the complaint alone." *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 176 (S.D.N.Y. 2024) (quoting *Stega v. N.Y. Downtown Hosp.*, 107 N.E.3d 543, 553 (N.Y. 2018)), *appeal withdrawn,* No. 25-17, 2025 WL 1009663 (2d Cir. Mar. 31, 2025). Therefore, Dixon's declaration and statements made in a separate litigation cannot be considered. Whether the statements that Cartagena claims are defamatory are in fact false is a matter for another day. On a motion to dismiss, the Court must accept all allegations in the Second Amended Complaint as true and, taken together, Cartagena pleads sufficient facts to support a plausible inference that the statements were false.

    **C.    Opinions**

    Next, the Court disagrees with Defendants' argument that Dixon and Blackburn's statements are all nonactionable opinions. Br. at 21; Reply at 4. Under New York law, statements of opinion are not actionable as defamation, no matter how "unreasonable the opinion or vituperous the expression of it may be." *Davis v. Ross*, 754 F.2d 80, 85 (2d Cir. 1985) (quoting *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977)); *accord Cassava Scis., Inc. v. Bredt*, No. 22-cv-09409 (GHW), 2024 WL 1347362, at *7 (S.D.N.Y. Mar. 28, 2024). "Determining whether a statement is an allegation of fact or mere opinion is a legal question for the court." *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014). The New York Court of Appeals has identified three factors to guide courts in distinguishing nonactionable opinion statements from actionable statements of fact:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993) (alteration, internal quotation marks, and citation omitted). "The Court considers the import of the [statements] holistically, without attempting to artificially disentangle fact from opinion." *See Moraes*, 571 F. Supp. 3d at 95. "The dispositive inquiry, under either Federal or New York law, is whether a reasonable [reader] could have concluded that [the statements] were conveying facts about the plaintiff." *Gross*, 623 N.E.2d at 1167 (first alteration in original) (internal quotation marks and citation omitted); *accord Cassava Scis., Inc.*, 2024 WL 1347362, at *7.

The Court finds that the allegedly defamatory statements made by Dixon and Blackburn are actionable statements of fact. To start, the defamatory statements Dixon is alleged to have made include specific accusations that Cartagena assaulted a woman in 2010, had sex with a minor, and stole money from a specific individual. SAC ¶¶ 124(a)-(h). This language references specific actions Cartagena took rather than vague conclusions. *See, e.g.*, *Giffuni v. Feingold*, 749 N.Y.S.2d 716, 716 (N.Y. App. Div. 2002) (finding that certain statements were "not loose, figurative or hyperbolic, . . . especially since they allege[d] criminal conduct"). Likewise, Dixon's allegations that Cartagena had sex with a minor, sexually assaulted a woman, and stole money are capable of being proven true or false. *See, e.g.*, *Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 152 (S.D.N.Y. 2016) ("Sexual assault of a minor is a clear-cut issue; either transgression occurred or it did not."). Furthermore, the context of Dixon's statements indicates that a reasonable reader would understand them as statements of fact rather than mere opinions. Dixon made the statements as part of a series of posts accusing Cartagena of specific criminal acts and holding himself out as a former employee with firsthand knowledge. For example, when making the claim that Cartagena had sexually assaulted a woman, Dixon included a headline: "Fat Joe Former employee finally speaks out." SAC ¶ 124(d). In this context, an ordinary reader would understand Dixon's statements as statements of fact. *See, e.g.*, *Restis v. Am. Coal. Against*

18

*Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 721 (S.D.N.Y. 2014) (finding that accusations of criminal behavior were statements of fact when "grounded in assertions of fact about Plaintiffs' business activities and are not framed in hyperbole, but rather purport to rely on documents that establish the existence of Plaintiffs' scheme") (collecting cases).

Cartagena's claims against Blackburn also involve actionable statements of fact. Blackburn's alleged defamatory statements were based on claims that he had corroborating evidence that Cartagena ordered a hit job on Dixon and that that Cartagena engaged in sex with a minor. SAC ¶ 132(a)-(b)(i). These are verifiable statements. The context of the statements during the interview also supports the conclusion that a reasonable listener would understand Blackburn to be stating facts rather than an opinion. Blackburn stated in the interview that the information was "a hundred percent all Tyrone Blackburn" and that he would "indemnify" the interviewer "100 million bajillion percent." *Id.* ¶ 132(c).

Defendants disagree and point to *Graham v. UMG Recordings, Inc.*, 806 F. Supp. 3d 454 (S.D.N.Y. 2025), where a court found Kendrick Lamar's statements in his song "Not Like Us," insinuating that Drake has sexual relations with minors, to be nonactionable opinions. *See generally* Dkt. 74. In *Graham*, the court reasoned that the statements were part of a rap "diss track," and "[t]he average listener is not under the impression that a diss track is the product of a thoughtful or disinterested investigation, conveying to the public fact-checked verifiable content." *Graham*, 806 F. Supp. 3d at 469. The song was also part of a broader "rap battle," where listeners would expect heated and hyperbolic accusations. *Id.* at 470. Finally, the song's language was "replete with profanity, trash-talking, threats of violent, and figurative and hyperbolic language, all of which are indicia of opinion." *Id.* at 473. The language and the context of the statements led the court to conclude that the song could not be reasonably

understood to convey "as a factual matter that Drake [was] a pedophile or . . . engaged in sexual relations with minors." *Id.* at 467.

Defendants argue that *Graham* is analogous because Defendants made the accusations on social media as part of his broader feud with Cartagena. *See* Dkt. 74 at 2. The Court does not agree. The context surrounding Defendants' statements is far different than *Graham*. Dixon's alleged defamatory statements were not contained in "diss tracks" during a "rap battle" in which both sides leveled hyperbolic insults at one another. Far from vague lyrics in a song or other means of artistic expression, Defendants publicly identified specific instances of Cartagena's supposed sexual misconduct and criminal conduct, identifying names and other details surrounding the conduct, and claimed to have firsthand knowledge or corroborating evidence supporting the stated facts. *See* SAC ¶¶ 124, 132. And even though social media pages oftentimes are a forum for opinions, the "forum in which a statement appears is not dispositive of the fact versus opinion inquiry." *Graham*, 806 F. Supp. 3d at 469. Considering the language and context of Defendants' statements, including that they had firsthand knowledge and corroborating evidence, the Court finds that the average person would understand the statements as statements of facts, not opinions. *Cf. Moraes*, 571 F. Supp. 3d at 97 (finding Facebook post by former employer actionable when it implied that she knew certain facts to support her opinion that plaintiff should be prosecuted for stalking and harassment). Thus, the Court finds that Cartagena adequately alleges that Defendants made actionable defamatory statements rather than statements of opinion.

### D.    Litigation Privilege

The Court is also not persuaded by Defendants' argument that their statements are privileged because they were made in anticipation of Defendants' litigation. Br. at 14-15. Under New York law, "statements made by attorneys in connection with a proceeding before a court"

are granted "absolute immunity from liability for defamation" when the statements are "material and pertinent to the questions involved." *Front, Inc. v. Khalil*, 28 N.E.3d 15, 18 (N.Y. 2015) (quoting *Youmans v. Smith*, 47 N.E. 265, 266 (N.Y. 1897)). Statements made in anticipation of litigation are protected by a qualified privilege. *Id.* at 19. However, the "privilege is lost where a defendant proves that the statements were not pertinent to a good faith anticipated litigation." *Id.* This rubric promotes the legitimate interest in encouraging communication prior to litigation but avoids abuse by "attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims." *Id.*

First, the allegedly defamatory statements by Defendants are not in the context of their litigation since that litigation was not yet filed. *See Dixon v. Cartagena*, No. 25-cv-05144 (JLR) (filed June 19, 2025). The statements were also public statements made on social media and during online interviews, and were not pre-litigation communications with counsel regarding a draft complaint, settlement negotiations, or otherwise. Finally, even if the Court were to evaluate the public statements under a qualified privilege lens for pre-litigation communications, Cartagena adequately alleges that Defendants' statements were made in bad faith in order to extort a monetary payment from Cartagena, precisely the behavior that would defeat any qualified privilege protection, if true. *See, e.g.*, SAC ¶¶ 5, 10, 17, 71, 138, 144, 146, 156; *see also Moraes*, 571 F. Supp. 3d at 101 (holding that the litigation privilege did not apply where the Complaint alleged that the defamatory statements were part of a "campaign of harassment"). Therefore, the motion to dismiss based on litigation privilege is rejected.

### E.    Statute of Limitations

Finally, the defamation claims alleged in the Second Amended Complaint are not barred by New York's one-year statute of limitations. Under New York law, defamation claims must be brought within one year. N.Y. C.P.L.R. § 215(3). Cartagena commenced this lawsuit on

April 29, 2025, and thus the statute of limitations bars defamation claims for statements made more than one year before that date.

Cartagena's defamation claim against Dixon is based on statements made on May 23, 2024, SAC ¶ 124(a), September 20, 2024, *id.* ¶ 124(b), October 1, 2024, *id.* ¶ 124(c), December 28, 2024, *id.* ¶ 124(d)-(e), March 17, 2025, *id.* ¶ 124(f), March 18, 2025, *id.* ¶ 124(g), and April 13, 2025, *id.* ¶ 124(h). Likewise, Cartagena's defamation claim against Defendants Blackburn and Blackburn Law is based on statements made on April 30, 2025, *id.* ¶ 132(a), and May 2, 2025, *id.* ¶¶ 132(b)-(c). Therefore, Cartagena's defamation claims fall within the one-year time period and are not time-barred. Prior communications that fall outside the statute of limitations are not actionable defamation but may provide context to Cartagena's claims and assertions that Defendants were acting with actual malice.

*     *     *

For all of these reasons, the Court denies the motion to dismiss Cartagena's defamation claims and Defendants' request for attorney's fees under N.Y. Civ. Rights Law § 70-a.

## III.    IIED Claims

Moving next to Cartagena's IIED claims, "[u]nder New York law, a claim for [IIED] requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *accord Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 438 (S.D.N.Y. 2023). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell v. New York Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)). "Liability has been found only where the conduct has been so outrageous in character,

22

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 612 N.E.2d at 702 (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983)).

Defendants argue that Cartagena fails to adequately plead an IIED claim because (1) the IIED claim is duplicative of Cartagena's defamation claims, (2) he has not alleged severe emotional distress, and (3) he does not plead extreme and outrageous conduct. Br. at 26-29. The Court need not address the third argument because it agrees with Defendants that the IIED claim is duplicative of the defamation claims and the Second Amended Complaint fails to allege severe emotional distress.

With respect to overlap with Cartagena's defamation claims, the New York Court of Appeals has cautioned that a claim for IIED may not be sustainable "where the conduct complained of falls well within the ambit of other traditional tort liability." *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978). Applying this guidance, New York courts have "exclude[d] claims for [IIED] where a cause of action for defamation may be asserted on the facts of the case." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014) (collecting cases); *see, e.g.*, *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023) (dismissing IIED claim that "rel[ied] on the same underlying facts" as the defamation claim); *Matthaus v. Hadjedj*, 49 N.Y.S.3d 393, 425 (N.Y. App. Div. 2017) (affirming dismissal of IIED claim as duplicative of plaintiff's defamation claim). *Cf. Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (summary order) ("New York law considers claims sounding in tort to be defamation claims . . . where those causes of action seek damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on his reputation." (quoting *Jain v. Sec. Indus. and Fin. Mkts. Ass'n.*, No. 08-cv-6463, 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009)).

Here, Cartagena's IIED claim relies on the same underlying facts as his defamation claims. Specifically, both claims rely on Dixon and Blackburn's public accusations of statutory rape, sexual misconduct, and violence against Cartagena and their conversations with Cartagena's business and legal representatives that indicate they knew such accusations were false. *Compare* SAC ¶¶ 123-41, *with id.* ¶ 142-60. Furthermore, Cartagena identifies the same injuries as flowing from his defamation and IIED claims. With respect to his defamation claims, Cartagena alleges that he suffered "emotional distress" and "special injury . . . from lost deals and potential contracts," SAC ¶¶ 128(d), 129, 140, and he similarly claims that the IIED caused him to suffer "severe emotional distress" and "significant special damages, including loss of business opportunities, harm to his professional reputation, and financial setbacks." SAC ¶ 158. These injuries all "flow from the effect" of the Defendants' allegedly defamatory actions and threats on Cartagena's reputation. *Hengjun Chao*, 476 F. App'x at 895.

In response, Cartagena points to conduct that he alleges is distinct from his defamation claims: Defendants' (1) "humiliating accusations concerning Cartagena and his wife's private sexual behavior", (2) "threat[s] to report Cartagena to Homeland Security", (3) "physical[] assault[]" of "Cartagena's process server", (4) "ominous and threatening statements to Cartagena's manager", and (5) "threat[s] [to] . . . disparage [Cartagena] in the eyes of his children." Opp. at 26. However, this conduct is all related to Cartagena's defamation claims, including supporting an inference that Defendants acted with actual malice — with the exception of Cartagena's allegation that Blackburn assaulted a process server, which is not relevant to any of Cartagena's claims. Given that the IIED and defamation claims are based on the same conduct and allege the same injuries, the IIED claim is duplicative. *See Baiqiao Tang v. Wengui Guo*, No. 17-cv-09031 (JFK), 2019 WL 6169940, at *6 (S.D.N.Y. Nov. 20, 2019) (dismissing IIED claim as duplicative when "injuries arising from the defamation claim are the same as the

24

IIED claim and, thus, 'resolution of the . . . defamation claims will fully redress the injuries alleged under the IIED action.'" (quoting *McNamee v. Clemens*, 762 F. Supp. 2d 584, 608 (E.D.N.Y. 2011))); *Jacob v. Lorenz*, No. 21-cv-06807 (ER), 2023 WL 4106298, at *15 (S.D.N.Y. June 21, 2023) (dismissing IIED claim as duplicative when it was "is a variation of [p]laintiffs' defamation allegations"); *Bendit v. Canva, Inc.*, No. 23-cv-00473 (RA), 2023 WL 5391413, at *10 (S.D.N.Y. Aug. 22, 2023) (finding IIED and defamation claims as duplicative when the complaint lacked "allegations unique to an IIED cause of action"); *Restis*, 53 F. Supp. 3d at 729 (dismissing IIED claim when "it falls within the ambit of another tort").

Even if Cartagena's IIED claim was not duplicative of the defamation claim, the Second Amended Complaint also does not plausibly allege that Cartagena suffered severe emotional distress. "To qualify as severe emotional distress, 'the emotional distress suffered by the plaintiff must be so severe that no reasonable [person] could be expected to endure it.'" *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (alteration in original) (quoting *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 122 (S.D.N.Y. 2002)). "[C]onclusory allegations that [plaintiff] suffered emotional distress . . . are insufficient to" survive a motion to dismiss. *Specht v. City of New York*, 15 F.4th 594, 606 (2d Cir. 2021); *accord Asinga v. Gatorade Co.*, No. 24-cv-05210 (CS), 2025 WL 1225212, at *8 (S.D.N.Y. Apr. 28, 2025).

The Second Amended Complaint does not meet this standard. It only cursorily alleges that Cartagena suffered "humiliation" and "severe emotional distress," *see id.* ¶¶ 112, 158, but does not plead any facts about how the severe emotional distress manifested itself, such as "the severity or duration of his emotional distress," "how [it] impacted his daily activities," or "how Defendants' conduct has affected his health." *Akhtar v. Aggarwala*, No. 23-cv-06585 (JGLC) (VF), 2024 WL 3862504, at *12 (S.D.N.Y. June 5, 2024), *report and recommendation adopted sub nom. Akhtar v. Adams*, 2024 WL 3862673 (S.D.N.Y. Aug. 19, 2024), *appeal dismissed*, No.

24-2370, 2025 WL 2625360 (2d Cir. July 31, 2025); *see Asinga*, 2025 WL 1225212, at *8

(finding allegations that defendant "suffer[ed] from depression and despair" insufficient to

"satisfy the injury prong of an IIED claim"); *Verschleiser v. Frydman*, No. 22-cv-07909 (JGK),

2023 WL 5835031, at *18 (S.D.N.Y. Sept. 7, 2023) (dismissing IIED claim when plaintiff failed

to allege "any supporting details or facts regarding the nature of the distress"); *Medcalf*, 938 F.

Supp. 2d at 490 (dismissing IIED claim where plaintiff "d[id] not make any non-conclusory

allegation that [she] suffered severe emotional distress").

Cartagena's argument, relying on *Doe v. Doe*, No. 16-cv-00332 (NSR), 2017 WL

3025885 (S.D.N.Y. July 14, 2017), that he need not provide a diagnosis or medical evidence at

the pleading stage, does not alter the Court's conclusion.  Opp. at 25.  While the *Doe* court held

that medical corroboration of the connection between the plaintiff's emotional distress and the

defendant's conduct was not required for plaintiff to succeed on summary judgment, *Doe*, 2017

WL 3025885, at *7-8, the *Doe* complaint still alleged specific non-conclusory allegations of

severe emotional distress such as anxiety, depression, embarrassment, and difficulty sleeping and

eating.  *Doe v. Doe*, No. 16-cv-00332 (NSR), Complaint ¶ 29.  By contrast, Cartagena does not

identify anything beyond his conclusory statement that he suffered "severe emotional distress"

and "humiliation." SAC ¶ 112, 158.

For all of these reasons, Cartagena does not adequately allege a claim for IIED and it will

be dismissed.[2]

---

[2] Cartagena's IIED claim will be dismissed without leave to amend.  Cartagena has already
amended his complaint twice, including after Defendants raised the same arguments regarding
this pleading deficiency in their earlier motion. *See* Dkt. 29 at 14-15 (arguing that IIED claims
are duplicative of defamation claims); *id.* at 17-19 (arguing that Cartagena does not adequately
allege severe emotional distress).  Moreover, Cartagena does not request leave to amend or
otherwise indicate what additional facts he would plead to resolve the deficiencies.  *See Solomon
v. Flipps Media, Inc*., 136 F.4th 41, 55 (2d Cir. 2025) (holding that district court did not abuse
discretion in denying leave to amend where plaintiff only perfunctorily requested leave to amend

**IV.    Sanctions**

Defendants also filed a motion for sanctions.  *See* Dkt. 98.  Defendants argue that

sanctions are warranted under Rule 11 of the Federal Rules of Civil Procedure for three reasons:

(1) Cartagena's Complaint is factually frivolous and lacks evidentiary support, (2) Cartagena's

claims are legally baseless, and (3) Cartagena filed the Complaint for improper purposes.  *See*

Sanctions Br. at 4-5.  The Court does not agree.

Rule 11(b) provides that an attorney presenting a pleading, written motion, or other paper

to the Court certifies that "(1) it is not being presented for any improper purpose, such as to

harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims,

defenses, and other legal contentions are warranted by existing law or by a nonfrivolous

argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or . . . will likely have evidentiary support

after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b).  If a

court determines that Rule 11(b) has been violated, "the decision whether or not to impose

sanctions is a matter for the court's discretion."  *Bobcar Media, LLC v. Aardvark Event*

*Logistics, Inc.*, No. 16-cv-00885, 2019 WL 422613, at *2 (S.D.N.Y. Feb. 4, 2019) (quoting

*Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)).

The Court can quickly dismiss Defendants' first two arguments, since the Court refused

to dismiss Cartagena's defamation claims and, while it dismissed the IIED claim, there is no

basis to find that it was so factually baseless or legally frivolous as to warrant sanctions.  *See JM*

*Holdings 1 LLC v. Quarters Holding GmbH*, No. 20-cv-03480 (JPO), 2021 WL 860516, at *8

(S.D.N.Y. Mar. 8, 2021) (rejecting sanctions because allegations were not "so 'patently void of

---

in a footnote, and was put on notice of the deficiencies in a premotion letter and had ample
opportunity to address them).

any legal or factual basis' as to warrant sanctions" (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04-cv-05316 (RMB) (MHD), 2006 WL 2807213, at *6 (S.D.N.Y. Sept. 28, 2006))).

Finally, the Court is not persuaded by Defendants' argument that the complaint was filed for an improper purpose.  "In the Second Circuit, improper purpose is not a valid basis for sanctions unless the complaint has been found to be frivolous." *JM Holdings 1 LLC*, 2021 WL 860516, at *8.  Indeed, "[i]t would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure." *Id.* (quoting *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995).  Since Defendants have failed to demonstrate that Cartagena's claims are frivolous, Rule 11 sanctions are not warranted.

Thus, Defendants' motion for sanctions is denied.  Plaintiff's request for reimbursement of attorney's fees incurred in opposing the motion is denied as well.

## CONCLUSION

For the aforementioned reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.  The Court dismisses Plaintiff's third claim for intentional infliction of emotional distress without leave to amend.  The Court denies the remainder of Defendants' motion to dismiss and request for fees pursuant to N.Y. Civil Rights Law § 70-a.

Defendants' motion for sanctions is DENIED.  Plaintiff's request for fees related to that motion is DENIED.  The Clerk of the Court is respectfully directed to close the open motions at Dkt. 45 and Dkt. 98.

Dated:  March 10, 2026
      New York, New York                         SO ORDERED.

                                                      JENNIFER L. ROCHON
                                                 United States District Judge