UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH CARTAGENA,

*Plaintiff*,

v.

TERRANCE DIXON,
TYRONE BLACKBURN, and
T.A. BLACKBURN LAW, PLLC,

*Defendants*.

Civil Action No. 25-cv-03552

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT TYRONE A. BLACKBURN'S
MOTION FOR RECONSIDERATION

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
TYRONE A. BLACKBURN'S MOTION FOR RECONSIDERATION

**By**:
Tyrone A. Blackburn

**TABLE OF CONTENTS**

- PRELIMINARY STATEMENT
- LEGAL STANDARD
- ARGUMENT
  I.    THE COURT'S ANALYSIS DID NOT FULLY ACCOUNT FOR THE PUBLIC CONTEXT: PLAINTIFF'S COUNSEL PUBLICLY ATTACKED BLACKBURN BY NAME ON APRIL 29, 2025, THE SAME DAY AS THE INSTAGRAM POST
     A. The Timeline: Simultaneous Public Attacks by Plaintiff's Counsel
     B. The Legal Significance of This Context Under Graham v. UMG Recordings
     C. The Full Bilateral Context Satisfies the Graham/Steinhilber Multifactor Analysis
  II.   THE COURT DID NOT ADDRESS THE QUALIFIED PRIVILEGES PROTECTING ATTORNEY ADVOCACY AND THE RIGHT OF REPLY
     A. Absolute and Qualified Privilege Are Distinct Doctrines
     B. Application to Attorney Advocacy Under Front, Inc. v. Khalil
     C. Blackburn's Statements Are Independently Protected by the Qualified Privilege of Reply
  III.  THE COURT'S ANALYSIS OF THE INTERVIEW STATEMENTS DID NOT FULLY ACCOUNT FOR THE STEINHILBER DISCLOSURE-OF-BASIS DOCTRINE
     A. The Governing Standard
     B. What Plaintiff Does and Does Not Allege
     C. The Scope of the Court's Analysis
- CONCLUSION

**TABLE OF AUTHORITIES**

Cases
- *Albert v. Loksen*, 239 F.3d 256 (2d Cir. 2001)
- *Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014)
- *Clark v. Schuylerville Central School Dist.*, 74 A.D.3d 1528 (3d Dep't 2010)
- *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494 (S.D.N.Y. 2012)
- *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48 (S.D.N.Y. 2021)
- *Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015)
- *Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020)
- *Graham v. UMG Recordings, Inc.*, 806 F. Supp. 3d 454 (S.D.N.Y. 2025)
- *Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993)
- *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235 (1991)
- *Liberman v. Gelstein*, 80 N.Y.2d 429 (1992)
- *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)
- *Porges v. Weitz*, 205 A.D.3d 13 (2d Dep't 2022)
- *Present v. Avon Products, Inc.*, 253 A.D.2d 183 (1st Dep't 1999)
- *Shenkman v. O'Malley*, 2 A.D.2d 567 (1st Dep't 1956)
- *Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995)
- *Steinhilber v. Alphonse*, 68 N.Y.2d 283 (1986)
- *Stukuls v. State*, 42 N.Y.2d 272 (1977)

- *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992)

Rules

- Local Civil Rule 6.3 (S.D.N.Y.)
- 28 U.S.C. ¬ß 1292(b)

## PRELIMINARY STATEMENT

Defendant Tyrone A. Blackburn respectfully moves for reconsideration of the Court's March 10, 2026, Opinion and Order to the extent it permitted Plaintiff Joseph Cartagena's defamation claims against Blackburn and T.A. Blackburn Law, PLLC to proceed. The Court's Opinion overlooked critical context already present in the record: on the very same day as the Instagram post, Plaintiff's counsel publicly accused Defendant Blackburn of participating in a criminal extortion scheme through multiple national media outlets. Reconsideration is warranted on three independent grounds.

First, the Court's analysis of the April 29, 2025, Instagram post did not have before it the full contemporaneous public record demonstrating that Plaintiff's own counsel, Joseph Tacopina, made public statements to national media outlets on that same day calling Blackburn a participant in a "criminal extortion scheme." That record establishes that Blackburn's Instagram post was one response within a simultaneous, bilateral public controversy — not an unprompted independent factual accusation. Under governing New York law, the full context of a public controversy is essential to the opinion-versus-fact analysis, and the Court's application of *Graham v. UMG Recordings, Inc.*, 806 F. Supp. 3d 454 (S.D.N.Y. 2025), did not account for this record.

Second, the Court's analysis addressed absolute privilege but did not separately address whether Blackburn's statements are protected under New York's qualified privilege doctrine for attorney advocacy, as recognized by the New York Court of Appeals in *Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015), or under the qualified privilege of reply recognized in *Shenkman v. O'Malley*, 2 A.D.2d 567 (1st Dep't 1956).

Third, the Court's analysis of the interview statements did not fully account for the distinction, under *Steinhilber v. Alphonse*, 68 N.Y.2d 283 (1986), between Blackburn's disclosure of the factual predicate underlying his conclusions and his characterization of what that predicate demonstrated.

## LEGAL STANDARD

Motions for reconsideration in this District are governed by Local Civil Rule 6.3 (S.D.N.Y.). Reconsideration is appropriate where the moving party identifies controlling decisions or data that the court overlooked that might reasonably be expected to alter the conclusion reached by the court. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration may also be granted where the Court's analysis overlooked material facts already before it or where a

controlling legal doctrine was not addressed. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

This motion is narrowly directed at legal doctrines not addressed in the Court's analysis and factual context placed before the Court during the original briefing. It does not seek to relitigate positions already decided.

Reconsideration is particularly appropriate where the Court's decision did not address a controlling legal doctrine raised in the original briefing. A doctrine may be "overlooked" not only when the court fails to cite a controlling authority, but also when the decision does not address a legal framework squarely presented by the parties. *See Shrader*, 70 F.3d at 257; *Virgin Atl.*, 956 F.2d at 1255. Each of the three doctrines raised in this motion was squarely presented in Defendant's September 8, 2025 Memorandum of Law in Support of the Motion to Dismiss: (1) New York's qualified privilege protecting attorney advocacy under *Front, Inc. v. Khalil* — argued at pages 14–17 under Point II.B; (2) the disclosure-of-basis rule under *Steinhilber v. Alphonse* and *Immuno AG. v. Moor-Jankowski*— argued at page 22 under Point III.B; and (3) the bilateral public context and proportionate-response framework governing the opinion-versus-fact analysis — argued at pages 19–20 under Point III.A and Rule 3.6(d) of the New York Rules of Professional Conduct. The right-of-reply doctrine under *Shenkman v. O'Malley* derives from the same qualified privilege framework and applies the same factual record already before the Court. The Court's Opinion analyzed absolute privilege but did not separately address these distinct doctrines. Because each framework may independently bar liability as a matter of New York law, reconsideration is warranted — not to relitigate what was decided, but to obtain a ruling on controlling doctrines the Court did not reach.

## ARGUMENT

I. **THE COURT'S ANALYSIS DID NOT FULLY ACCOUNT FOR THE PUBLIC CONTEXT: PLAINTIFF'S COUNSEL PUBLICLY ATTACKED BLACKBURN BY NAME ON APRIL 29, 2025, THE SAME DAY AS THE INSTAGRAM POST**

The Court's Opinion analyzed Defendant Blackburn's April 29, 2025, Instagram post as an independent defamatory accusation. However, the full factual record demonstrates that the post was made during a simultaneous, multi-front public dispute initiated when Plaintiff's counsel publicly called Blackburn a criminal in national media outlets on that same day.

A. The Timeline: Simultaneous Public Attacks by Plaintiff's Counsel

On April 29, 2025, Plaintiff filed the instant lawsuit alleging defamation and intentional infliction of emotional distress. That same day, Plaintiff's counsel Joseph Tacopina gave press

statements to TMZ and multiple national media outlets, and Plaintiff's team issued a formal press release. Blackburn posted his Instagram response that evening.

Plaintiff's counsel's public statements to the media on April 29, 2025, included the following accusations directed at Blackburn by name:

> *"The allegations against Mr. Cartagena are completely false, and part of a criminal extortion scheme orchestrated by an attorney who a federal judge recently condemned for abusing the court system to harass and pressure defendants. Mr. Cartagena will not be intimidated by fabricated claims, lies about witnesses, or shameless threats. We are taking immediate legal action to expose this fraudulent scheme, and we will hold all parties fully accountable."*

*Blackburn Decl*. Ex A.

These statements were published in major media outlets including TMZ, Rolling Out, Music Times, Vibe, and HipHopDX. Additionally, Plaintiff's counsel sent a cease-and-desist letter to Blackburn specifically referencing prior judicial reprimands and characterizing his conduct as part of a pattern of abuse of the judicial system. These are not allegations contained solely within a court filing that most members of the public would never read.

These are targeted, public attacks made to national media calling Blackburn a criminal by name on the same day as his Instagram post.

B. <u>The Legal Significance of This Context Under *Graham v. UMG Recordings*</u>

New York Federal District Courts apply a well-established principle derived from *Steinhilber v. Alphonse*, 68 N.Y.2d 283 (1986), that even apparent statements of fact may assume the character of statements of opinion when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate the use of epithets, fiery rhetoric or hyperbole. *Graham v. UMG Recordings, Inc.*, 806 F. Supp. 3d 454 (S.D.N.Y. 2025). This standard recognizes that context fundamentally shapes how reasonable audiences interpret potentially defamatory statements. As the court recognized in *Graham*, defamatory statements advanced during a heated public debate, during which an audience would reasonably anticipate the use of epithets, fiery rhetoric or hyperbole, are not actionable. *Id.*

The *Graham* court applied this principle to a rap battle, finding that the genre-specific context — including the forum, surrounding circumstances, tone, and purpose of the communication — created audience expectations of fiery rhetoric rather than factual assertions. The Court's Opinion and Order distinguished *Graham* on the ground that Blackburn's statements were not made in a comparable creative or performative genre. *Op.* at 19. However,

the *Graham* standard is not confined to any single genre or format. It derives from *Steinhilber* and undertakes a multifactor, totality-of-the-circumstances inquiry that examines the forum in which the statement appears, the surrounding circumstances, the tone and style of the communication, and whether the words could reasonably be understood as implying undisclosed facts or as advocacy within a dispute. The relevant question is not the particular medium used — it is whether the full constellation of circumstances signals to a reasonable audience that they are encountering adversarial advocacy rather than a neutral, measured assertion of fact.

The Second Circuit has consistently applied this principle, requiring courts to assess the content, tone, and apparent purpose of a statement within the broader controversy in which it arose. *Chau v. Lewis*, 771 F.3d 118, 127-29 (2d Cir. 2014) — a case cited in the Court's own Opinion. *Op.* at 17.

When the full context is considered — as governing law requires — the Instagram post reads as adversarial commentary directed at opposing counsel in direct response to public accusations of criminal conduct, not as an unprompted literal factual assertion. The post itself explicitly signals this responsive litigation context:

> "@joetacopina_spal, you ran and filed a baseless lawsuit against my client and me in SDNY... You can bring your baseless accusation of extortion..."

This opening makes clear that the post was responding to the lawsuit filed hours earlier and the public extortion accusations made by Plaintiff's counsel to national media that same day.

Plaintiff may argue by analogy to *Albert v. Loksen*, 239 F.3d 256, 268 (2d Cir. 2001) — which noted that statements made "in the context of [a party] seeking the summary termination" of another "virtually eliminates the possibility that they were meant as rhetorical hyperbole" — but *Albert* is inapposite. *Albert* addressed private, internal workplace communications between a supervisor and hospital administrators about a specific employee's discrete conduct: statements made to a limited, private audience in a non-public employment proceeding. *Id.* at 261–63. Here, both parties were simultaneously broadcasting accusations of criminal conduct across national media to millions of people — the prototypical public bilateral controversy that *Steinhilber*, *Graham*, and *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235 (1991), contemplate. The context that "eliminates hyperbole" in *Albert* is the quiet, internal deliberative setting of an employment termination. The context present here — a simultaneous national media war in which Plaintiff's own counsel was calling Blackburn a criminal on TMZ and Vibe the same

7

evening — is precisely the kind of public bilateral dispute in which reasonable audiences expect adversarial advocacy rather than measured factual assertions.

C.  The Full Bilateral Context Satisfies the *Graham*/*Steinhilber* Multifactor Analysis

Applying the full multifactor contextual inquiry, the circumstances of April 29, 2025, satisfy every element of the *Graham*/*Steinhilber* standard. As to forum and surrounding circumstances: the post appeared on social media in the immediate aftermath of a lawsuit filing and simultaneous national media attack. New York courts consistently recognize that statements made in online forums, including social media, are routinely protected as opinion because the informal, freewheeling nature of internet communications signals to readers that they are encountering subjective commentary rather than measured factual assertions. *See Ganske v. Mensch*, 480 F. Supp. 3d 542, 552 (S.D.N.Y. 2020) (holding that online and social media forums inherently contextualize statements as opinion).

The New York Court of Appeals confirmed this context-first methodology as a matter of both State constitutional and common law in *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 253-54 (1991) — a decision the court expressly premised on *independent* New York State constitutional grounds that are broader than the federal floor established by *Milkovich*. The court held that a challenged statement "must first be viewed in its context — by looking at the content of the whole communication, its tone and apparent purpose — to determine whether a reasonable person would view it as expressing or implying any facts." *Id.* at 243. Critically, the court held that the very forum of the challenged communication shapes the audience's interpretive expectations: the "common expectation" of a particular forum "is not that it will serve as a vehicle for the vigorous and comprehensive presentation of factual matter but as one principally for the expression of individual opinion." *Id.* at 253. Just as the *Immuno AG* court found that the forum of a scientific journal's letters-to-the-editor section created audience expectations of advocacy rather than verified fact, a public social media post explicitly addressed to opposing counsel by handle name — published the evening a federal lawsuit was filed against the author — signals to any reasonable observer that they are encountering adversarial advocacy within a raging bilateral dispute, not a measured, independent factual assertion. *See* N.Y. Const., art. I, § 8 (providing broader free speech protection than the First Amendment minimum). Because *Immuno AG* was decided on independent, adequate state law grounds, it constitutes controlling authority that is not subject to

displacement by any subsequent federal decision — including *Milkovich* itself. *See Immuno AG*, 77 N.Y.2d at 249-52.

As to tone and purpose: the post was explicitly addressed to opposing counsel by name, responded point-by-point to the accusations in the complaint and the simultaneous press statements, and was plainly defensive in character. As to whether the words imply undisclosed facts or adversarial advocacy: as the court emphasized in *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 58 (S.D.N.Y. 2021), the essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion. When both sides have simultaneously and publicly accused each other of criminal conduct through every available channel on the same day, a reasonable audience understands the communications as combative advocacy within an ongoing dispute — not as independent, disinterested factual claims based on undisclosed information.

On that day, a lawsuit was filed against Blackburn personally accusing him of participating in a criminal extortion scheme. Simultaneously, Plaintiff's counsel publicly called Blackburn a criminal in statements published across national media. A formal press release accused Blackburn of orchestrating a fraud. A cease-and-desist letter was issued against him by name. This was not ordinary public discourse. It was an ongoing bilateral public controversy in which both sides were publicly accusing each other of criminal conduct.

The Court's application of *Graham* did not consider the complete factual record of what was occurring publicly on April 29, 2025. A reasonable audience encountering Blackburn's post that evening — after Tacopina had already publicly called Blackburn a criminal across national media — would have understood that post against the backdrop of a raging bilateral controversy. Under the multifactor framework of *Graham* and *Steinhilber*, that full contextual record constitutes data that should have affected the Court's analysis, and reconsideration is warranted.

The Court's opinion-versus-fact analysis also applied the three-factor *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146 (1993) test — specifically the third factor, which asks whether the full context of the communication or the broader social context and surrounding circumstances signal to readers that what they are reading is opinion rather than fact. *Op.* at 17. That third-factor analysis was conducted without consideration of the full contemporaneous public record of Tacopina's

bilateral attacks, and reconsideration of its application is warranted on that independent ground as well.

## II.    THE COURT DID NOT ADDRESS THE QUALIFIED PRIVILEGES PROTECTING ATTORNEY ADVOCACY AND THE RIGHT OF REPLY

The Court's Opinion addressed absolute privilege but did not analyze the distinct doctrines of qualified privilege for attorney advocacy and the right of reply under New York law. Because these doctrines derive from controlling New York Court of Appeals precedent and may independently defeat liability as a matter of law, the Court's failure to address them constitutes an overlooked legal doctrine warranting reconsideration under Local Civil Rule 6.3 (S.D.N.Y.).

### A.    Absolute and Qualified Privilege Are Distinct Doctrines

The Court's Opinion and Order analyzed absolute privilege and concluded it did not apply because the Instagram post was published outside formal judicial proceedings. *Op.*at 20-21. However, the Court did not separately address qualified privilege — a distinct doctrine with different requirements and a broader scope of application.

New York recognizes a qualified privilege for communications made on a subject in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty. *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992). The Second Circuit has confirmed that a defendant forfeits this qualified privilege only by making a false, defamatory statement with malice of either the common-law or constitutional variety. *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001). Common-law malice means spite or ill will, and — critically — defeats the privilege only if it is the one and only cause for the publication[1]. *Id.* at 272 (quoting *Stukuls v. State*, 42 N.Y.2d 272, 282 (1977)); *Liberman*, 80 N.Y.2d at 439. Constitutional or actual malice means publication with knowledge that the statement was false or with a high degree of awareness of its probable falsity — not merely that the speaker had a financial stake in the outcome or harbored strong feelings about the dispute. *Albert*, 239 F.3d at 272. This is a more specific and demanding showing than the general actual malice standard applicable to public

---

[1] New York courts consistently hold that common-law malice, defined as spite or ill will, defeats qualified privilege in defamation actions only when it constitutes the sole motivation for publication *Porges v. Weitz*, 205 A.D.3d 13 (2022). The most recent appellate decisions confirm this "one and only cause" standard, requiring plaintiffs to demonstrate that spite or ill will was the exclusive reason for the allegedly defamatory statement *Porges v. Weitz*, 205 A.D.3d 13 (2022). Courts distinguish between a defendant's general animosity toward the plaintiff and the specific malicious motivation that drives the publication itself *Clark v. Schuylerville Central School Dist.*, 74 A.D.3d 1528 (2010). Even where defendants harbor ill will toward plaintiffs, this alone is insufficient to establish common-law malice without evidence that such animus was the singular cause for publication *Present v. Avon Products, Inc.*, 253 A.D.2d 183 (1999).

figures in the defamation context. The Second Amended Complaint's allegations of financial motive and actual malice do not separately address or negate the qualified privilege defense under the *Albert* framework: a defendant who responds to a direct, public accusation of criminal conduct has an obvious independent motivation — self-defense — that precludes any finding that spite or ill will was the *one and only* cause of his response.

B.    Application to Attorney Advocacy Under *Front, Inc. v. Khalil*

The New York Court of Appeals held in *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 720-21 (2015), that attorney communications made in good faith anticipation of litigation and pertinent to that litigation are protected by qualified privilege. The court grounded this protection in the policy that attorneys must be free to communicate in furtherance of client representation without the chilling effect of potential defamation liability for statements made within the sphere of a legal controversy.

Blackburn's April 29, 2025, Instagram post was published in direct response to a lawsuit filed against him personally as a named defendant that same day. Blackburn was not merely an attorney commenting on a legal dispute — he was himself a named defendant accused of criminal conduct in a federal lawsuit filed that same day, giving him a direct personal and professional interest in responding publicly to those accusations. The post explicitly identified the lawsuit, addressed Plaintiff's counsel directly, and responded to the public accusations of criminal extortion leveled against Blackburn in Tacopina's simultaneous press statements. The statements were pertinent to the legal controversy in which he was a party, and under *Front, Inc. v. Khalil*, this responsive advocacy within an active legal dispute falls squarely within the qualified privilege framework. Courts routinely recognize that when an attorney is personally accused of criminal conduct in connection with pending litigation, responsive statements defending against those accusations fall within the sphere of legitimate advocacy.

To overcome qualified privilege, Plaintiff must plead facts establishing that Blackburn was motivated primarily by spite or ill will — not by a legitimate interest in defending himself against public accusations of criminal conduct. The Second Amended Complaint's allegations of financial motive and actual malice, while sufficient to survive the defamation elements at the pleading stage, do not separately address or negate the qualified privilege defense as a distinct doctrinal question. Because the Court did not address this doctrine, reconsideration is warranted.

///
///

11

C. <u>Blackburn's Statements Are Independently Protected by the Qualified Privilege of Reply</u>

Even if Blackburn's statements were not viewed strictly through the lens of attorney advocacy under *Front, Inc. v. Khalil*, they are independently protected by New York's qualified privilege of reply. Under New York law, where a plaintiff has made a defamatory public attack on a defendant's character or professional conduct, the defendant possesses a qualified privilege to respond in kind. *Shenkman v. O'Malley*, 2 A.D.2d 567, 574 (1st Dep't 1956). The privilege applies where the plaintiff provoked, invited, or made it necessary for the defendant to speak, provided that the response is pertinent to the original defamatory attack, reasonably proportionate to it, and made honestly and in good faith for the sole purpose of repelling the assault — not for the independent purpose of harming the plaintiff. *Id*.

This privilege squarely applies here. On April 29, 2025, Plaintiff and his counsel launched a highly publicized, multi-front media offensive against Blackburn. By issuing press releases and giving direct quotes to national outlets like TMZ, Vibe, and HipHopDX accusing Blackburn by name of operating a "criminal extortion scheme," Plaintiff publicly attacked Blackburn's character, his professional ethics, and his lawful conduct as an attorney.

Blackburn had a recognized legal right to publicly defend his reputation against these severe accusations, and both the Instagram post and the interview statements were unmistakably germane to repelling that attack:

First, in the alleged Instagram post, Blackburn made it explicitly clear that he was responding directly to Plaintiff's counsel. By tagging Joseph Tacopina ("@joetacopina_spal"), addressing him by name, and directly referencing the "baseless accusation of extortion" that Tacopina had just disseminated to the press, Blackburn demonstrated that his communication was a direct, targeted defense against his primary attacker.

Second, Blackburn's subsequent media interview was similarly framed as a direct response to Plaintiff's media offensive. Throughout the interview, Blackburn explicitly referenced the lawsuit filed by Plaintiff and directly addressed the public accusations of extortion levied against him. By discussing the existence of recordings and his interpretation of what they demonstrated, Blackburn was forcefully rebutting Plaintiff's public narrative that the underlying claims were "fabricated" to further an "extortion scheme."

12

By explicitly directing his responses to the lawsuit and the public accusations, Blackburn demonstrated that both the post and the interview were proportionate responses necessary to defend his personal and professional reputation. This is the essence of the right of reply.

Given the temporal proximity to Plaintiff's own media offensive, Blackburn's statements were plainly motivated by a need to repel Plaintiff's immediate public attack on his livelihood and character. Because the Court's Opinion and Order did not address this specific privilege as it applies to both the post and the interview, reconsideration is warranted to analyze whether the right of reply bars Plaintiff's claims as a matter of law.

III. **THE COURT'S ANALYSIS OF THE INTERVIEW STATEMENTS DID NOT FULLY ACCOUNT FOR THE *STEINHILBER* DISCLOSURE-OF-BASIS DOCTRINE**
A. The Governing Standard
The New York Court of Appeals held in *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289-90 (1986), that where a speaker discloses the factual basis underlying a conclusion, the conclusion itself is typically protected as non-actionable opinion because listeners are free to evaluate the underlying evidence and draw their own inferences. The Supreme Court confirmed in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) — cited in the Court's own Opinion, *Op.*at 17 — that defamation liability cannot attach unless the statement constitutes a "false assertion of fact," and that interpretive conclusions based on disclosed evidence occupy protected territory. The *Graham* court reaffirmed this principle in holding that context shapes whether an audience understands a statement as a factual assertion or as advocacy within a heated dispute. *Graham*, 806 F. Supp. 3d at 454.

B. What Plaintiff Does and Does Not Allege
The Court found that Blackburn's interview statements were actionable because the 60-second recording provided to Plaintiff's counsel did not identify Cartagena or confirm that any person discussed was underage. *Op.* at 7-8. Critically, however, the Second Amended Complaint does not allege that the recordings Blackburn referenced in the interview do not exist. Plaintiff disputes Blackburn's characterization of what those recordings demonstrate — not their existence. This distinction is controlling under *Steinhilber*. In the interview, Blackburn disclosed the factual predicate: he described recordings, stated he had provided them to Plaintiffs' counsel, and explained what he believed they reflected. He thereby gave listeners the basis for his conclusion and allowed them to evaluate the underlying evidence themselves. Under New York law, when the predicate facts are disclosed, the subjective conclusion drawn from them is protected opinion. *See*

13

*Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 503 (S.D.N.Y. 2012) (holding that when an allegedly defamatory statement is accompanied by a recitation of the facts upon which it is based, the opinion layer remains protected); *see also Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 254-55 (1991) (holding under independent New York State constitutional grounds that statements expressing a speaker's "presumptions and predictions" about disclosed facts "would not have been viewed by the average reader as conveying actual facts about plaintiff," and that the proper inquiry is whether the "reasonable person" would view the communication as "expressing or implying any facts" when the full context of the communication — including its tone, purpose, and the audience's expectations for that forum — is considered as a whole).

The disputed question is whether his characterization of the recordings' contents was a false assertion of fact, or an interpretive conclusion based on disclosed evidence that listeners could weigh independently. The dispute therefore concerns the interpretation of disclosed evidence, not the fabrication of underlying facts — a distinction that lies at the heart of the *Steinhilber* doctrine.

C.  The Scope of the Court's Analysis

The Court noted that Blackburn's use of categorical language — "one hundred percent," "clear as day," and his offer to "indemnify" the host — weighs in favor of treating the statements as factual assertions rather than protected opinion. *Op.* at 7. However, the Court's analysis did not separately address whether the *Steinhilber* doctrine protects the interpretive layer of the statements — distinct from the categorical framing — as a matter of New York defamation law. The three-factor *Gross* test and the *Steinhilber* disclosure-of-basis analysis are distinct inquiries that may yield different results when applied to different portions of the same statement. Moreover, when the interview is evaluated within the broader contextual framework of *Graham* — a heated public controversy in which both sides were publicly accusing each other of criminal conduct — the audience's interpretive lens shifts in precisely the manner those cases contemplate. Because these doctrinal distinctions were not addressed in the Court's analysis, reconsideration is warranted.

**CONCLUSION**

For the foregoing reasons, Defendant Tyrone A. Blackburn respectfully requests that the Court reconsider its March 10, 2026, Opinion and Order with respect to the defamation claims against Blackburn and T.A. Blackburn Law, PLLC, and upon reconsideration, dismiss those claims in their entirety.

In the alternative, Blackburn respectfully requests that the Court certify the privilege questions presented herein for interlocutory review pursuant to 28 U.S.C. § 1292(b). The qualified

14

privilege framework under *Front, Inc. v. Khalil*, the right of reply doctrine under *Shenkman v. O'Malley*, and the application of *Graham v. UMG Recordings* and *Steinhilber v. Alphonse* to the bilateral public record of April 29, 2025 present controlling questions of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the Court's order may materially advance the ultimate termination of this litigation. Upon request from the court, Defendants are prepared to provide separate briefing to support their request for certification for interlocutory review pursuant to 28 U.S.C. § 1292(b).

Dated: March 12, 2026

Brooklyn, New York

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
Attorney for the Defendants

15