UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH CARTAGENA,
                              *Plaintiff*,
v.
TERRANCE DIXON,
TYRONE BLACKBURN, and
T.A. BLACKBURN LAW, PLLC,
                              *Defendants*.

Civil Action No. 25-cv-03552

MEMORANDUM OF LAW

DEFENDANTS TYRONE BLACKBURN AND T.A. BLACKBURN LAW, PLLC'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS
AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SANCTIONS AGAINST
PLAINTIFF AND HIS COUNSEL PURSUANT TO FED. R. CIV. P. 30(d)(2), 30(d)(3), 28
U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY

**By**:
Tyrone A. Blackburn, Esq.

TABLE OF CONTENTS

PRELIMINARY STATEMENT

BACKGROUND

I.   The Procedural History of the Deposition Scheduling Dispute.

II.  Mr. Blackburn's Medical Condition: What the Record Actually Shows.

III. The March 6, 2026, Deposition: A Complete Picture.

IV. The February 24, 2026, Dixon Deposition and Mr. Blackburn's Subsequent Apology on the Record.

V.  The Coordinated Media Leak: Plaintiff's Gravest Misconduct — and the One That Makes Sanctions Against Mr. Blackburn Inequitable.

ARGUMENT

PART ONE: OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

I.      The Governing Legal Standards.

II.     Plaintiff's Motion Is Procedurally Defective Because It Relies on Materials Improperly Disseminated in Violation of the Protective Order.

III.    Equity Bars Sanctions Against Mr. Blackburn Because Plaintiff Has Committed Far More Serious Misconduct — In Violation of a Court Order — That Directly Targets Mr. Blackburn.

IV.    Mr. Blackburn's Medical Condition Was Genuine, Disclosed in Advance, and Accepted by This Court as a Basis for Rescheduling.

V.     The Deposition Proceeded on This Court's Own Target Date, With Full Disclosure on the Record.

VI.    Plaintiff's "Selective Memory" Theory Misunderstands Narcotic Cognitive Impairment and Misreads the Transcript.

VII.   Plaintiff's Circumstantial Arguments Do Not Establish Bad Faith.

VIII.  Referral to the Grievance Committee Is Unwarranted and Must Be Denied.

IX.    Appointment of a Special Master Is Disproportionate and Inequitable.

X.     Any Monetary Award Must Be Substantially Reduced and Applied Equitably.

PART TWO: CROSS-MOTION FOR SANCTIONS AGAINST PLAINTIFF AND HIS COUNSEL

I.      The Governing Legal Standards.

II.     Plaintiff and His Counsel Violated This Court's Protective Order — an Act of Contempt Far More Serious Than Anything Alleged Against Mr. Blackburn.

      A. The Disclosures Constitute Contempt of a Court Order Under This Court's Retained Jurisdiction Pursuant to Paragraph 38.

      B. A Party Who Comes Before This Court Seeking Equity Must Come with Clean Hands.

III.    Mr. Blackburn Has Not Received a Courtesy Copy of the Deposition Transcripts and Videos That Plaintiff Leaked to the World.

IV.    Mr. Tacopina Conducted the Examination in a Manner That Was Oppressive, Abusive, and Independently Violative of Rule 30.

V.     The Specific Misconduct of Record: Insults, Threats, Baseless Criminal Accusations, and Admitted Yelling.

VI.    Mr. Tacopina's Misconduct Materially Contributed to the Breakdown of the Deposition and Cannot Be Attributed to Mr. Blackburn Alone.

VII.   The Sanctions Warranted Against Plaintiff's Counsel.

2

CONCLUSION

## TABLE OF AUTHORITIES

CASES

- *ACLI Gov't Secs., Inc. v. Rhoades*, No. 81-CV-2555(MEL), 1991 U.S. Dist. LEXIS 17560 (S.D.N.Y. Dec. 5, 1991)
- *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005)
- *Burks v. Stickney*, 837 F. App'x 829 (2d Cir. 2020)
- *Cameron Indus., Inc. v. Mothers Work, Inc.*, No. 06-CV-1999, 2007 WL 1649856 (S.D.N.Y. June 6, 2007)
- *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)
- *Cumis Specialty Ins. Co. v. Kaufman*, No. 21cv11107 (DLC), 2022 WL 4534459 (S.D.N.Y. Sept. 28, 2022)
- *Enmon v. Prospect Capital Corp.*, 675 F.3d 138 (2d Cir. 2012)
- *Gardner v. Combs*, No. 2:24-cv-07729, 2025 U.S. Dist. LEXIS 258523 (D.N.J. Dec. 15, 2025)
- *Green v. Cosco Shipping Lines Co.*, 2021 WL 5985123 (S.D. Ga. 2021)
- *Greer v. Mehiel*, No. 15-CV-6119 (AJN)(JLC), 2017 U.S. Dist. LEXIS 18969 (S.D.N.Y. Feb. 8, 2017)
- *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182 (E.D. Pa. 2008)
- *Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265 (D. Conn. 2021)
- *Horton v. Maersk Line, Ltd.*, 294 F.R.D. 693 (S.D. Ga. 2013)
- *Hyers v. Martuscello*, No. 9:24-cv-00962 (AMN/CFH), 2025 U.S. Dist. LEXIS 116328 (N.D.N.Y. Feb. 5, 2025)
- *Jones v. Combs*, 2025 WL 896829 (S.D.N.Y. 2025)
- *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933)
- *Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421 (1986)
- *Marseet v. Rochester Inst. of Tech.*, No. 20-CV-7096FPG, 2023 U.S. Dist. LEXIS 14397 (W.D.N.Y. Jan. 27, 2023)
- *Morales v. Zondo, Inc.*, 204 F.R.D. 50 (S.D.N.Y. 2001)
- *Motorola Credit Corp. v. Uzan*, 561 F.3d 123 (2d Cir. 2009)
- *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986)
- *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645 (2d Cir. 2004)
- *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371 (2d Cir. 1981)
- *Robinson v. Chefs' Warehouse*, 2017 WL 1064981 (N.D. Cal. 2017), *reconsidered in part*, 2017 WL 2617905 (N.D. Cal. 2017)
- *Rivera v. Jeziosky*, No. 03-CV-830M, 2007 U.S. Dist. LEXIS 20950 (W.D.N.Y. Mar. 23, 2007)
- *Sakon v. Andreo*, 119 F.3d 109 (2d Cir. 1997)
- *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010)
- *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)
- *Soule v. RSC Equip. Rental, Inc.*, 2012 WL 5060059 (2012)
- *United States ex rel. Baltazar v. Warden*, 302 F.R.D. 256 (N.D. Ill. 2014)

- *United States v. Apple Inc.*, 992 F. Supp. 2d 263 (S.D.N.Y. 2014), *aff'd*, 787 F.3d 131 (2d Cir. 2015)
- *U.S. Comm. Futures Trading Comm'n v. Deutsche Bank AG*, No. 16-Civ-6544, 2016 WL 6135664 (S.D.N.Y. Oct. 20, 2016)
- *Usherson v. Bandshell Artist Mgt., No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020), aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgt., 858 Fed. Appx. 457 (2d Cir. 2021) (unpublished), and aff'd sub nom. Liebowitz v. Bandshell Artist*
- *Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003)
- *Williams v. City of Hartford*, No. 24-cv-1336 (SFR), 2026 U.S. Dist. LEXIS 36992 (D. Conn. Feb. 5, 2026)
- *Zunzurovski v. Fisher*, No. 23-cv-10881DLC, 2024 U.S. Dist. LEXIS 62568 (S.D.N.Y. Apr. 3, 2024)

STATUTES AND RULES
- 18 U.S.C. § 401
- 18 U.S.C. § 3626(a)(1)(A)
- 28 U.S.C. § 1927
- Fed. R. Civ. P. 30(c)(1)
- Fed. R. Civ. P. 30(d)(1)
- Fed. R. Civ. P. 30(d)(2)
- Fed. R. Civ. P. 30(d)(3)
- Fed. R. Civ. P. 37(a)
- Fed. R. Civ. P. 37(b)(1)
- Fed. R. Civ. P. 53(a)(1)(B)
- Fed. R. Civ. P. 53(a)(1)(C)

PRELIMINARY STATEMENT

Before this Court evaluates a single allegation against Mr. Blackburn, there is a threshold matter of equity that this Court cannot ignore: Plaintiff and his counsel have already committed, without any motion or permission, the most serious discovery violation in this case. On March 24, 2026 — the very day this Motion was filed — Plaintiff and his counsel caused confidential deposition transcripts and video recordings to be published in Complex magazine, broadcast on YouTube to tens of thousands of viewers, and distributed across social media platforms. Those materials were designated CONFIDENTIAL under this Court's Protective Order. Plaintiff's counsel knew that. They leaked them anyway — not by inadvertence, but with unmistakable precision, timed to land on the same day as the sanctions filing to generate the maximum possible public and professional damage to Mr. Blackburn before this Court had ruled on anything.

Most remarkably, as of the date of this filing, Plaintiff's counsel has never provided Mr. Blackburn with a courtesy copy of the very deposition transcripts and videos that they have shared with the entire world. The public has copies. YouTube viewers have copies. Complex magazine's readership has copies. Mr. Blackburn — the deponent, the defendant, the attorney whose professional life is being adjudicated — does not. This Court should not entertain a motion for sanctions by a party in willful contempt of its own Protective Order and has denied its adversary access to materials it has freely shared with the media.

What the Motion also does not tell this Court is that Plaintiff's lead counsel, Joseph Tacopina, called Mr. Blackburn — an officer of this Court and a named defendant in the action — a "clown" during the sworn examination. See March 27, 2026, Dep. Tr. at 187:6-10 ("You're a clown. Does that -- ... I did. I called you a clown. Because you are."). The Motion does not tell this Court that Mr. Tacopina acknowledged on the record that he was yelling — stating expressly: "Yeah. I am yelling." Id. at 185:23-24. The Motion does not tell this Court that Mr. Tacopina told Mr. Blackburn his legal career was effectively over: "I know you're not going to be around much longer in this business, so you might as well try and go out with some dignity." Id. at 188:4-8. The Motion does not tell this Court that Mr. Tacopina accused Mr. Blackburn on the record, without factual predicate: "You're under indicted for running over our process server." Id. at 188:15-16.

Mr. Blackburn does not come before this Court seeking to minimize his own conduct. At the February 24, 2026, deposition of Terrance Dixon, Mr. Blackburn made remarks that were inappropriate. At the subsequent March 27, 2026, deposition, he apologized for those remarks on

5

the record: "I apologize to Mr. Seigel for saying that... because it was not my intention to offend him in any way — it was the effects of the medication at that time." March 27, 2026, Dep. Tr. at 280:19-281:1. He reiterates that apology here. At his March 6, 2026, deposition, he appeared pursuant to court order while on prescription narcotic medication that he had disclosed to this Court in advance and that he disclosed again at the outset of the deposition. He answered to the best of his ability under those documented circumstances. His conduct was imperfect; it was not in bad faith.

The relief Plaintiff seeks is reserved for deliberate, willful, bad-faith obstruction. That standard is not met when the party seeking sanctions has itself just violated this Court's Protective Order and distributed supposedly protected materials to a national magazine and social media while denying those same materials to its own adversary. This opposition places the full record before the Court, establishes the equity bar that Plaintiff's own conduct erects, and demonstrates that Plaintiff's Motion should be denied in its entirety — while granting Defendants' Cross-Motion for sanctions against Plaintiff's counsel.

This is not a collateral issue. The same deposition Plaintiff asks this Court to sanction was, at the very moment this Motion was filed, disseminated to the public in violation of this Court's Protective Order. That fact alone renders Plaintiff's request for sanctions inequitable, procedurally improper, and fundamentally unreliable. The Court cannot adjudicate sanctions based on a record that has been selectively disclosed, publicly weaponized, and withheld from the very party against whom sanctions are sought.

Accordingly, Defendants respectfully request that the Court (i) deny Plaintiff's motion in its entirety; (ii) grant Defendants' cross-motion for sanctions; (iii) issue an Order to Show Cause regarding Plaintiff's violation of the Protective Order; (iv) compel immediate production of all deposition materials disclosed to third parties; (v) impose monetary sanctions; and (vi) grant such further relief as the Court deems just and proper.

BACKGROUND

I.    **The Procedural History of the Deposition Scheduling Dispute**

This Court is familiar with the deposition scheduling history, but several aspects of that history are either underemphasized or entirely absent from Plaintiff's Motion and require restating. Plaintiff first noticed depositions in January 2026 for dates that fell within a period Mr. Blackburn had already communicated to the Court would be affected by his medical treatment. At the January 20, 2026, conference, scheduling for depositions was discussed, and dates in early February were

identified, with the understanding that Mr. Blackburn was recovering from a procedure the week of January 26. *See* Jan. 20, 2026, Conf. Tr. (Pl. Ex. 68) at 4:18-5:17.

On February 5, 2026, Mr. Blackburn wrote to this Court to notify it that he had undergone two procedures — on January 23, 2026, and February 3, 2026 — under local anesthesia, and that he had been prescribed multiple medications including narcotic pain relievers, antibiotics, and antiemetics. *See* Blackburn Letter to Judge Rochon, Feb. 5, 2026 (Pl. Ex. 65). He requested an adjournment, advising the Court that his doctors expected him to remain on medication, including narcotics, for six to eight weeks. Id. At the February 10, 2026, conference, this Court rescheduled Mr. Blackburn's deposition to the week of March 6, 2026. *See* Feb. 10, 2026, Conf. Tr. (Pl. Ex. 64) at 14:10-20. The March 6, 2026, deposition — the deposition Plaintiff now complains about — took place after Mr. Blackburn's request to extend discovery was denied, at Plaintiff's insistence.

## II.    Mr. Blackburn's Medical Condition: What the Record Actually Shows

The medical record is not in dispute. Dr. Jason Emer confirmed in writing that Mr. Blackburn underwent procedures on January 23, 2026, and February 3, 2026; that he was placed under local anesthesia; and that he was prescribed narcotics, antibiotics, and antiemetics, with a recommendation to refrain from work for two weeks. *See* Pl. Ex. 61 (Blackburn Aff.) ¶ 15. These facts were disclosed to this Court on February 5, 2026, and again at the February 10 conference. They were not invented after the fact. This Court accommodated them by rescheduling the deposition to late March — an accommodation that would not have been granted if the medical claims were not credible.

This contemporaneous disclosure also defeats any argument that Mr. Blackburn failed to seek appropriate relief. He did not proceed silently or strategically—he sought an adjournment from the Court in advance, disclosed his condition to opposing counsel, and placed the issue squarely before the Court. Plaintiff's decision to proceed with the deposition notwithstanding that disclosure cannot now be repackaged as sanctionable conduct by Mr. Blackburn.

## III.    The March 6, 2026, Deposition: A Complete Picture

At 10:05 a.m. on March 6, 2026, before any substantive question was asked, Mr. Blackburn advised examining counsel that he was on medication and that it might affect his ability to testify. *See* Dep. Tr. at 7:10-25; 8:1-4. He did not ask to terminate the deposition. He did not invoke privilege across the board. He appeared, disclosed, answered for over three hours, and persisted until examining counsel himself terminated. He explained to Judge Rochon directly: "I'm trying to answer the questions to the best of my ability... I'm doing my best to recall whatever it is that he's

7

asking." Dep. Tr. at 89:21-90:8. He told the Court: "I have taken narcotics today and I do think that it's kind of interfering a little bit with my ability to remember." Dep. Tr. at 92:17-23.

At no point did Plaintiff's counsel move to terminate or suspend the deposition under Rule 30(d)(3), nor did they seek relief from the Court at the time. Instead, they elected to proceed with the examination for hours despite full knowledge of Mr. Blackburn's disclosed condition. Under these circumstances, Plaintiff cannot retroactively characterize the very proceeding it chose to continue as sanctionable misconduct by Mr. Blackburn.

IV. **The February 24, 2026, Dixon Deposition and Mr. Blackburn's Subsequent Apology on the Record**

Mr. Blackburn acknowledges that certain remarks he made at the February 24, 2026, Dixon deposition were inappropriate. He does not defend them. At his March 27, 2026, deposition, he apologized for those remarks on the record: "I apologize to Mr. Seigel for saying that... because it was not my intention to offend him in any way — it was the effects of the medication at that time." March 27, 2026, Dep. Tr. at 280:19-281:1. The on-the-record apology — made at the March 27, 2026, deposition — is entirely absent from Plaintiff's Motion. This omission is not a trivial oversight. It is a deliberate choice to suppress the one piece of evidence that most directly undermines the narrative that Mr. Blackburn acted with calculated, willful intent throughout the Dixon deposition. A person who deliberately calculated every improper remark does not then apologize for those remarks under oath at the very next deposition.

V. **The Coordinated Media Leak: Plaintiff's Gravest Misconduct — and the One That Makes Sanctions Against Mr. Blackburn Inequitable**

On March 24, 2026 — the same day Plaintiff filed this Motion — confidential deposition transcripts and videos were published in Complex magazine and broadcast on YouTube under titles including "UNHINGED Deposition Tyrone Blackburn and Chad Seigel Fat Joe Argue During Terrence Dixon Depo" and "Joe Tacopina Deposes Tyrone Blackburn... Let's read this deposition in the Fat Joe Defamation Case." Those videos were streamed live on March 24, 2026, and remain publicly accessible on a YouTube channel with 36,300 subscribers. Complex published its article on March 25, 2026, titled "Fat Joe Accuses Former Hype Man's Lawyer of Dodging Questions, Verbally Attacking Counsel," with detailed quotations drawn directly from the confidential deposition record.

These materials were designated CONFIDENTIAL under this Court's Protective Order. No party may disclose CONFIDENTIAL materials to any third party without court authorization.

8

Plaintiff and his counsel provided those materials to Complex, to YouTube broadcasters, and to the public — without any court order permitting disclosure, on the same day they filed this Motion, with a timing so precise that it could not be accidental. And they did so while simultaneously arguing to this Court that Mr. Blackburn's deposition conduct requires the most severe professional sanctions available. The Protective Order violation is not a technical misstep. It is the deliberate weaponization of this Court's discovery process for media purposes — a strategy built on the premise that enough public pressure can compromise Mr. Blackburn's ability to defend himself, not by the weight of evidence, but by the weight of public opinion manufactured from materials never supposed to leave the confidentiality of this litigation. *See* Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 (1984); Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 391 (2d Cir. 1981).

At minimum, Plaintiff bears responsibility for the disclosure of materials exclusively within his possession and control during the Protective Order period and cannot avoid accountability by remaining silent as to disclosures that could not have occurred absent access to his production.

Plaintiff's dissemination of confidential deposition materials has caused direct and ongoing prejudice. First, it has deprived Mr. Blackburn of the ability to respond to the sanctions motion on equal footing, as the public has access to materials that have not been provided to him. Second, it has irreparably altered the litigation environment by introducing extrajudicial pressure through media exposure, thereby undermining the fairness of these proceedings. Third, it has distorted the evidentiary record by promoting selective excerpts without context, impairing the Court's ability to evaluate the deposition fairly.

This prejudice is not speculative—it is structural. It goes to the integrity of the process itself and independently warrants denial of Plaintiff's motion.

<u>ARGUMENT</u>

**PART ONE: OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS**

I.      **The Governing Legal Standards**

Sanctions under Federal Rule of Civil Procedure 30(d)(2) require a showing that a person impede[d], delay[ed], or frustrate[d] the fair examination of the deponent. Fed. R. Civ. P. 30(d)(2).

9

Courts in this Circuit require genuine, material interference — not merely incomplete responses from a deponent who disclosed a medical condition before the examination began and answered to the best of his documented ability. *See* Morales v. Zondo, Inc., 204 F.R.D. 50, 54 (S.D.N.Y. 2001). Sanctions under 28 U.S.C. § 1927 require subjective bad faith — that the attorney acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012). Referral to the Grievance Committee is reserved for attorneys whose conduct reflects deliberate, willful disregard for their professional obligations. *See* Usherson v. Bandshell Artist Mgt., No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020), aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgt., 858 Fed. Appx. 457 (2d Cir. 2021) (unpublished), and aff'd sub nom. Liebowitz v. Bandshell Artist; Burks v. Stickney, 837 F. App'x 829, 831 (2d Cir. 2020).

Plaintiff also invokes Fed. R. Civ. P. 37(b) on the theory that Mr. Blackburn's failure to answer questions constituted contempt of the Court's Second Deposition Order. *See* Fed. R. Civ. P. 37(b)(1). That argument fails for a fundamental reason: Rule 37(b) contempt requires that the Court have previously entered an order compelling the deponent to answer a specific question or category of questions, which the deponent then disobeyed. *See* Sakon v. Andreo, 119 F.3d 109, 113 (2d Cir. 1997); S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010). The Second Deposition Order required Mr. Blackburn's appearance — it did not compel any specific answer. Plaintiff never filed a motion to compel any specific answer under Rule 37(a), and no such order was ever entered. An impaired deponent who appeared, disclosed his condition, and answered to the best of his documented ability for over three hours has not disobeyed a court order. He has complied with it. Rule 37(b) is not a vehicle for sanctioning imperfect answers; it is a vehicle for sanctioning the disobedience of a specific prior order compelling a specific answer. That predicate is entirely absent here.

II.     **Plaintiff's Motion Is Procedurally Defective Because It Relies on Materials Improperly Disseminated in Violation of the Protective Order**

Plaintiff's motion is not merely inequitable—it is procedurally defective. The motion relies on deposition testimony that Plaintiff simultaneously disclosed to third parties in violation of the Protective Order while withholding those same materials from Mr. Blackburn. This creates a record that is neither complete nor reliable. Courts in this Circuit have consistently rejected attempts to obtain relief based on incomplete or selectively presented records, particularly where the moving party has contributed to the distortion of that record.

Here, Plaintiff has done more than selectively quote the deposition—he has transformed it into a public narrative vehicle, ensuring that excerpts favorable to his position are amplified while context unfavorable to his position is omitted. Under these circumstances, the Court cannot determine whether the deposition transcript, as presented, reflects the full and accurate record necessary to support sanctions.

The Court should not be asked to adjudicate sanctions on a record whose integrity has been compromised by the very party seeking relief.

III.    **Equity Bars Sanctions Against Mr. Blackburn Because Plaintiff Has Committed Far More Serious Misconduct — In Violation of a Court Order — That Directly Targets Mr. Blackburn**

The Court's sanctions power is rooted in equity. It has long been a cornerstone of equitable doctrine that a party who seeks equity must do equity — that a party asking a court to invoke its most powerful tools to discipline an adversary must come before that court with clean hands. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245 (1933) (He who comes into equity must come with clean hands). The clean-hands doctrine, long embedded in equity, bars a party from seeking sanctions when its own conduct has been similarly unclean.

Plaintiff and his counsel entered this Court with deeply unclean hands. They violated the Court's Protective Order. They leaked confidential deposition materials to a national magazine and social media broadcasters on the same day they filed this Motion. They orchestrated a public media campaign against Mr. Blackburn while simultaneously asking this Court to sanction him for his deposition conduct. And they have refused to provide Mr. Blackburn with copies of the very transcripts and videos they have published to the world — leaving him to defend himself against a motion premised on materials he has not received, while those materials are being widely disseminated to the public.

The clean hands doctrine operates as an affirmative bar here. Even assuming, for the sake of argument only, that Mr. Blackburn's conduct at the depositions warranted some form of sanction, this Court should decline to exercise that power in favor of a party that is in active, willful contempt of this Court's own orders. To do otherwise would be to reward the most egregious misconduct in this entire episode — the deliberate, coordinated, premeditated violation of a federal court protective order for media purposes — while punishing the party who struggled through a deposition on narcotics and then apologized for his intemperate remarks under oath. This Court has both the power and the responsibility to address Plaintiff's conduct before it reaches any

11

judgment on Mr. Blackburn, and to hold Plaintiff's motion in abeyance pending a full accounting of the media leak and production of the transcripts and videos to Mr. Blackburn.

This is not a case where both parties engaged in comparable misconduct. The conduct at issue is categorically different. Mr. Blackburn's alleged conduct occurred within the deposition and was immediately subject to the Court's supervision. Plaintiff's conduct occurred outside the judicial process and involved the deliberate dissemination of protected materials to third parties for reputational and strategic advantage. Courts consistently treat violations of protective orders as among the most serious forms of litigation misconduct because they undermine the integrity of the discovery process itself. A party who engages in that conduct cannot simultaneously seek sanctions based on the very materials it has misused.

IV. **Mr. Blackburn's Medical Condition Was Genuine, Disclosed in Advance, and Accepted by This Court as a Basis for Rescheduling**

The record contains contemporaneous written notice to this Court—filed on ECF—establishing that Mr. Blackburn disclosed his medical condition, his procedures, and his narcotic medication regimen well in advance of the deposition at issue. On February 5, 2026, Mr. Blackburn advised the Court that he had undergone multiple procedures, was prescribed narcotic medication, and was expected to remain on such medication for six to eight weeks and expressly requested an extension of the discovery schedule. See Feb. 5, 2026, Letter to the Court. Plaintiff's sanctions theory depends on the premise that Mr. Blackburn's condition was either fabricated or strategically invoked after the fact. The contemporaneous record forecloses that argument entirely.

The threshold dispositive fact is one Plaintiff cannot escape: this Court itself rescheduled Mr. Blackburn's deposition from February to late March because it accepted that his narcotic medication regimen warranted accommodation. *See* Feb. 10, 2026, Conf. Tr. (Pl. Ex. 64) at 14:10-20. Courts do not reschedule court-ordered depositions on fabricated medical claims. Having accepted the medical reality in February, Plaintiff cannot now argue the same condition was a fabrication in March. Dr. Emer's letter confirms the procedures, the anesthesia, and the narcotic prescription. *See* Pl. Ex. 61 (Blackburn Aff.) ¶ 15. Mr. Blackburn's medical narrative — disclosed in writing on February 5, repeated at the February 10 conference, stated at the outset of the deposition, and confirmed to Judge Rochon in real time — has been consistent from the first day it was asserted to this day. Consistent, contemporaneous, judicially accommodated medical disclosures are not the signature of fabrication.

V.    **The Deposition Proceeded on This Court's Own Target Date, With Full Disclosure on the Record**

The Court's February 10 order targeted the week of March 6, 2026, for Mr. Blackburn's deposition. The Court denied Mr. Blackburn's request for an extension of time to complete discovery due to his medical condition and denied Mr. Blackburn's request to depose Plaintiff. Deposition was held on March 6.  Plaintiff proceeded with the deposition despite having been notified weeks earlier—both by letter to the Court and direct communication—that Mr. Blackburn was undergoing treatment involving narcotic medication. Mr. Blackburn appeared, disclosed his condition, answered for over an hour, and persisted until examining counsel terminated. *See* Dep. Tr. at 7:10-25; 75:13-76:25. This is not the profile of deliberate obstruction. It is the profile of a person doing his best under difficult circumstances, precisely as he represented he would.

Plaintiff cites <u>Rivera v. Jeziosky</u>, No. 03-CV-830M, 2007 U.S. Dist. LEXIS 20950, at *13 (W.D.N.Y. Mar. 23, 2007), for the proposition that an impaired deponent should insist on rescheduling rather than appear. That principle has no application here because Mr. Blackburn did exactly that — he sought a further extension, and the Court denied it at Plaintiff's insistence. *See* Feb. 10, 2026, Conf. Tr. Having been denied the extension he requested, Mr. Blackburn was left with two options: appear or be held in contempt. He appeared. He disclosed his condition before a single question was asked. He answered for over three hours. *Rivera* stands for the proposition that a deponent should seek relief rather than appear impaired and say nothing — it does not stand for the proposition that a deponent who sought relief, was denied it, disclosed his condition on the record, and answered for hours under those circumstances should be sanctioned for failing to do more.

VI.    **Plaintiff's "Selective Memory" Theory Misunderstands Narcotic Cognitive Impairment and Misreads the Transcript**

Narcotic medications do not produce uniform, global amnesia. They produce episodic, context-dependent, variable impairment that is most severe under conditions of stress, compound questioning, and high cognitive load — precisely what Mr. Tacopina's rapid-fire, sarcastic, compound-question examination style represented. Judge Rochon's single, calm, direct question ("Do you represent Mr. Dixon?") represents the type of minimal-demand question least likely to be disrupted by narcotic impairment. The contrast Plaintiff highlights is not proof of deception — it is the expected signature of genuine episodic narcotic impairment. Mr. Blackburn explained this directly to Judge Rochon in real time: "He's asking me questions in the manner in which he's asking

— the questions are compounded. So, I'm giving him the answers based on what he's asking. I'm doing my best to recall whatever it is that he's asking." Dep. Tr. at 89:21-90:8.

VII.    **Plaintiff's Circumstantial Arguments Do Not Establish Bad Faith**

The February 13 letter to Judge Semper stated that Mr. Blackburn's health challenges had been "addressed" in the context of advising the court he would continue as counsel — a statement about managing litigation obligations, not about completing a narcotic pain management regimen. The distinction between managing filings and withstanding a seven-hour adversarial examination on narcotics is self-evident to anyone who has ever been on opioid analgesics. Dr. Emer's two-week work restriction does not establish that the narcotic regimen lasted only two weeks. As Mr. Blackburn explained at the deposition: "That doesn't change the fact that I'm on medication... one is exclusive of the other." Dep. Tr. at 49:7-52:25. A physician may advise two weeks of physical rest while prescribing a six-to-eight-week narcotic regimen. As to the Caribbean cruise: the physical ability to board a ship, relax, and attend a street festival does not speak to the cognitive ability to sit for a seven-hour adversarial deposition in which examining counsel is calling the deponent names, threatening his career, and pressing compound questions in rapid succession. These activities are categorically different.

Plaintiff cannot demonstrate any meaningful prejudice. The deposition proceeded, testimony was obtained, and no contemporaneous motion was made to compel further answers or continue the examination. Where discovery has substantially proceeded and can be completed through ordinary means, sanctions are unwarranted.

VIII.    **Referral to the Grievance Committee Is Unwarranted and Must Be Denied**

Courts reserve Grievance Committee referrals for attorneys whose conduct is egregiously intentional and admits no explanation other than willful bad faith. *See* Usherson, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *35-36 (S.D.N.Y. June 26, 2020); Burks, 837 F. App'x at 831. Appearing for a deposition on court-acknowledged narcotic medication, struggling to answer compound questions under those conditions, and making intemperate remarks for which the deponent subsequently apologized under oath — see March 27, 2026, Dep. Tr. at 280:19-281:1 — does not approach that threshold. Moreover, if this Court is inclined to consider Grievance Committee referrals at all, the record compels equal consideration of Plaintiff's counsel: for calling a deponent a "clown" on the record, *see* March 27, 2026, Dep. Tr. at 187:6-10; admitting to yelling, Id. at 185:23-24; threatening the deponent's career, Id. at 188:4-8; levying baseless

14

criminal accusations, Id. at 188:15-16; and violating this Court's Protective Order. A Grievance Committee referral that runs only one direction on this record is not equitable; it is retaliatory.

Plaintiff cites Zunzurovski v. Fisher, No. 23-cv-10881DLC, 2024 U.S. Dist. LEXIS 62568 (S.D.N.Y. Apr. 3, 2024), Jones v. Combs, 2025 WL 896829 (S.D.N.Y. 2025), and Gardner v. Combs, No. 2:24-cv-07729, 2025 U.S. Dist. LEXIS 258523 (D.N.J. Dec. 15, 2025), for the proposition that Mr. Blackburn has a documented pattern of litigation misconduct warranting escalated sanctions. These cases involve ad hominem filings, citation errors, and jurisdictional error— they do not involve an attorney appearing for a court-ordered deposition on prescription narcotic medication, making a full disclosure on the record before examination began, answering for over an hour of harassing questions, and then apologizing under oath for intemperate remarks at the very next deposition due to the impact the narcotics had on his mood. *See* March 27, 2026, Dep. Tr. at 280:19–281:1. The deposition at issue in this motion is categorically different in kind from those prior matters. Moreover, none of those cases involved the complaining party simultaneously violating a federal court's protective order by distributing the same deposition materials to national media on the day the sanctions motion was filed. Prior conduct may be considered in calibrating sanctions; it does not authorize sanctions in a proceeding where the threshold equity bar has not been cleared by the moving party.

IX.    **Appointment of a Special Master Is Disproportionate and Inequitable**

Fed. R. Civ. P. 53(a)(1)(B) provides in relevant part that a court may appoint a special master to "make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by: (i)some exceptional condition." The Rule also authorizes appointment to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). This relief has traditionally been reserved for circumstances warranting supervision of a post-judgment injunction. *See, e.g.*, Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC, 478 U.S. 421, 481–82 (1986); U.S. Comm. Futures Trading Comm'n v. Deutsche Bank AG, No. 16-Civ-6544, 2016 WL 6135664, at *2 (S.D.N.Y. Oct. 20, 2016) (quoting United States v. Apple Inc., 992 F. Supp. 2d 263, 280 (S.D.N.Y. 2014), *aff'd*, 787 F.3d 131 (2d Cir. 2015)). Courts have emphasized that "[t]he mere assertion that the appointment of a special master is appropriate obviously does not meet these strictures." Webb v. Goord, 340 F.3d 105, 111 (2d Cir. 2003) (affirming denial of a request for a pretrial special master).

To obtain appointment of a special master, Plaintiff must demonstrate that exceptional conditions exist that cannot be adequately addressed through ordinary judicial supervision, and that such relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary." 18 U.S.C. § 3626(a)(1)(A); *see* Hyers v. Martuscello, No. 9:24-cv-00962 (AMN/CFH), 2025 U.S. Dist. LEXIS 116328, at *15–16 (N.D.N.Y. Feb. 5, 2025) (denying special master appointment where plaintiff failed to establish exceptional conditions and least-intrusive-means requirement). Plaintiff has made no such showing here.

The conditions Plaintiff identifies do not clear that threshold. One medicated deponent at one deposition, and one contentious deposition at which both parties' conduct was improper — conduct that was substantially provoked by examining counsel's own behavior — do not constitute the kind of systemic, irremediable circumstances that have historically justified the appointment of a special master at an adverse party's expense. This Court is fully equipped to supervise the remaining depositions in this action without delegating that function to an outside appointee whose costs would fall on Mr. Blackburn. If prophylactic relief is warranted at all, a standing order reminding all counsel of their obligations under Fed. R. Civ. P. 30(d)(1), Advisory Committee Notes (1993 Amendment) — running equally to both sides — would be proportionate, adequate, and the least intrusive means of ensuring that future depositions proceed without the misconduct documented in the March 27, 2026 transcript. Appointing a Special Master in these circumstances would not correct a violation; it would punish one party for conduct that was demonstrably shared.

To the extent Plaintiff separately requests a continued deposition of Mr. Dixon, that request should be denied without conditions or, in the alternative, granted only subject to a standing order governing the conduct of both sides equally — and only if Defendants are simultaneously afforded the opportunity to depose Plaintiff, which this Court denied at Plaintiff's insistence. *See* Feb. 10, 2026, Conf. Tr. (Pl. Ex. 64) at 14:10–20. That denial was acutely prejudicial. Defendants have been required to defend a defamation action without ever having had the opportunity to examine the Plaintiff under oath — to test his credibility, probe the basis of his claims, and develop the evidentiary record necessary to mount a full defense. Granting Plaintiff a second deposition of a key witness while Defendants remain without any deposition of Plaintiff would compound that prejudice to an intolerable degree. A party cannot invoke the Court's remedial authority to obtain a second bite at a witness while its adversary has never had a first. *See* Fed. R. Civ. P. 26(b)(1)

16

(discovery must be proportionate and fair to all parties); Morales v. Zondo, Inc., 204 F.R.D. 50, 54 (S.D.N.Y. 2001) (courts retain broad discretion to fashion discovery relief that protects against undue prejudice to any party).

Plaintiff does not get to conduct a second examination of Mr. Dixon through examining counsel who called a deponent a "clown" on the record, see March 27, 2026, Dep. Tr. at 187:6–10, admitted to yelling, Id. at 185:23–24, threatened a deponent's career, Id. at 188:4–8, and levied an baseless criminal accusation mid-examination, Id. at 188:15–16. The very counsel Plaintiff proposes to use for a continued Dixon examination is the same counsel who created the conditions for breakdown at the March 27 deposition and whose conduct is the subject of Defendants' Cross-Motion. Permitting that examination to proceed without equal and reciprocal relief for Defendants would not restore fairness to this litigation — it would entrench the existing asymmetry. If the Court orders a continued Dixon deposition, it should be conducted under the same standing order governing Rule 30(d)(1) obligations that Defendants request in Section VII of Part Two of this brief — binding both sides equally — and Plaintiff should be required to conduct that examination through counsel who has not been documented on the record committing the precise misconduct for which Plaintiff seeks to sanction Mr. Blackburn. Any order permitting a continued Dixon deposition must be conditioned on Defendants being afforded a corresponding opportunity to depose Plaintiff Joseph Cartagena, so that both sides enter trial on equal evidentiary footing.

X.      **Any Monetary Award Must Be Substantially Reduced and Applied Equitably**

To the extent any monetary sanction is considered appropriate, four considerations compel its substantial reduction. Mr. Blackburn appeared, disclosed his condition, and answered for three hours — no award should encompass time during which examination was actually proceeding. Mr. Tacopina's own abusive examination conduct materially contributed to the breakdown and must operate as an offset. As a solo practitioner representing himself pro se with no institutional resources, Mr. Blackburn's ability to pay is an equitable consideration this Court may weigh in calibrating any award. The Second Circuit has long recognized that 'it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay.' Oliveri v. Thompson, 803 F.2d 1265, 1281 (2d Cir. 1986). That principle is consistent with the Supreme Court's instruction that, because of their very potency, a court's inherent sanctioning powers 'must be exercised with restraint and discretion.' See Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991). And no sanction should be

17

imposed for the February 6 non-appearance — that date fell within the period this Court itself acknowledged warranted accommodation.

## PART TWO: CROSS-MOTION FOR SANCTIONS
## AGAINST PLAINTIFF AND HIS COUNSEL

I.    **The Governing Legal Standards**

Rule 30(d)(2) authorizes sanctions against any person who impedes, delays, or frustrates the fair examination of the deponent. Fed. R. Civ. P. 30(d)(2). Rule 30(d)(3) permits a party to move to terminate or limit a deposition being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. Fed. R. Civ. P. 30(d)(3). Both provisions apply with equal force to examining counsel. *See* Cameron Indus., Inc. v. Mothers Work, Inc., No. 06-CV-1999, 2007 WL 1649856, at 5 (S.D.N.Y. June 6, 2007). Section 1927 authorizes sanctions against any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The Court's inherent authority encompasses willful violations of court orders. See Chambers, 501 U.S. at 50; Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 391 (2d Cir. 1981).

Once a violation of a protective order is shown, the burden shifts to the disclosing party to demonstrate that the disclosure was authorized, inadvertent, or otherwise justified. Plaintiff cannot meet that burden here. The timing, scope, and precision of the disclosures eliminate any inference of inadvertence and instead establish a coordinated and intentional release of protected materials.

II.    **Plaintiff and His Counsel Violated This Court's Protective Order — an Act of Contempt Far More Serious Than Anything Alleged Against Mr. Blackburn**

The Protective Order entered December 8, 2025 (ECF 105) is unambiguous. Paragraph 20 provides that every deposition transcript is automatically Highly Confidential – Attorneys' Eyes Only from the date of the deposition until thirty days after receipt of the final transcript. Paragraph 14 prohibits disclosure of such material to any person except those enumerated in Paragraph 16 — a list that does not include media organizations, YouTube channels, or the public. Paragraph 22 requires all persons with access to take due precautions against unauthorized disclosure. Paragraph 23 requires the disclosing party, upon becoming aware of a breach, to immediately retrieve the material and prevent further disclosure. Paragraph 38 expressly preserves this Court's jurisdiction to impose sanctions for contempt of the Order. Joseph Tacopina, Chad Seigel, and Jordan W. Siev are each signatories to this Order. The disclosures to Complex magazine and YouTube occurred on March 24–25, 2026 — within the automatic Highly Confidential protection period for both the

Dixon and Blackburn transcripts — and no notice was given to any producing party, no retrieval effort was made, and the materials remain publicly accessible today. The violation is complete, documented, and willful.

On March 24, 2026 — the same day Plaintiff filed this sanctions motion — confidential deposition transcripts and videos were published in Complex magazine and broadcast live on YouTube. A channel with 36,300 subscribers streamed the full Dixon deposition transcript under the title *Fat Joe Case Chaos — Deposition of Terrance Dixon Full Transcript* and the full Blackburn deposition transcript under the title *Joe Tacopina Deposes Tyrone Blackburn… Let's Read This Deposition in the Fat Joe Defamation Case.* A separate channel broadcast the Dixon deposition under the title *UNHINGED Deposition — Tyrone Blackburn and Chad Seigel Fat Joe Argue During Terrence Dixon's Depo*, garnering 835 views on March 24, 2026, alone. On March 25, 2026, Complex published a detailed article titled *Fat Joe Says Former Hype Man's Lawyer Dodged Questions, Insulted Counsel*, drawing directly and at length from the confidential deposition record.

Plaintiff filed the sanctions motion on March 24, 2026. The Complex article appeared on March 25, 2026. The YouTube streams went live on March 24, 2026 — the same day. That timing is not coincidental. These were not inadvertent leaks from an unknown source. They were comprehensive, coordinated disclosures of Highly Confidential protected deposition materials to major media platforms, timed to the hour to coincide with the filing of the sanctions motion — plainly designed to maximize reputational damage to Mr. Blackburn at the precise moment the motion entered the public docket. No party notified Mr. Blackburn or this Court of the disclosures. No retrieval effort was made. The videos and article remain publicly accessible as of the date of this filing, in ongoing violation of Paragraphs 14, 22, and 23 of the Order.

A. **The Disclosures Constitute Contempt of a Court Order Under This Court's Retained Jurisdiction Pursuant to Paragraph 38**

Paragraph 38 of the Protective Order expressly provides that "this Court will retain jurisdiction over all persons subject to this Stipulated Confidentiality Agreement and Protective Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof." This is not a general standing order — it is a stipulated agreement bearing the personal signatures of Joseph Tacopina, Chad Seigel, and Jordan W. Siev, executed December 5, 2025, and entered by this Court on December 8, 2025. Because the Protective Order was issued pursuant to Rule 26(c), its violation is not merely a discovery violation — it is the

violation of a court order, and it subjects those responsible to the full range of sanctions that would otherwise be unavailable. *See* Haidon v. Town of Bloomfield, 552 F. Supp. 3d 265, 273 (D. Conn. 2021). A court may hold a party in civil contempt for failure to comply with a court order of this kind, and the legal standard for doing so is well established in this Circuit. *See* Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004) (describing the legal test applicable to holding a party "in civil contempt for failure to comply with a court order").  A finding of civil contempt requires (1) a clear and unambiguous order, (2) clear and convincing proof of noncompliance, and (3) that the contemnor has not been reasonably diligent in attempting to comply.

A signatory to a court-ordered stipulation who willfully violates its terms is subject to the Court's contempt power under 18 U.S.C. § 401 and the Court's inherent authority. *See* Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (courts possess inherent authority to sanction bad faith conduct that "abuses the judicial process"); Paramedics, 369 F.3d at 657 (willful violation of a court order supports a finding of contempt). The disclosures here were not inadvertent — they were coordinated, timed, and comprehensive. Plaintiff filed his sanctions motion on March 24, 2026. The YouTube streams went live on March 24, 2026. The Complex article appeared on March 25, 2026. No notice was provided to Mr. Blackburn. No retrieval effort was made. The materials remain publicly accessible as of the date of this filing, in ongoing violation of Paragraphs 14, 22, and 23 of the Order — each of which was personally subscribed to by Plaintiff's counsel.

The Court should hold Plaintiff and his counsel in contempt of ECF 105, impose coercive monetary sanctions sufficient to deter further disclosure, and order the immediate removal of all publicly accessible deposition materials published in violation of the Order. The violation is complete, documented, and willful.

B.  **A Party Who Comes Before This Court Seeking Equity Must Come with Clean Hands**

The doctrine of unclean hands "closes off access to equitable relief for "one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."" Cumis Specialty Ins. Co. v. Kaufman, No. 21cv11107 (DLC), 2022 WL 4534459, at *4 (S.D.N.Y. Sept. 28, 2022) (citing Motorola Credit Corp. v. Uzan, 561 F.3d 123, 129 (2d Cir. 2009)). The doctrine of "unclean hands is an equitable defense to equitable claims." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 607 (2d Cir. 2005). Courts apply the maxim "requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity

20

that he seeks in respect of the matter in litigation." Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933). They "do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." Id.; *accord* Williams v. City of Hartford, No. 24-cv-1336 (SFR), 2026 U.S. Dist. LEXIS 36992, at *11–12 (D. Conn. Feb. 5, 2026).

This is not a case where a plaintiff's alleged misconduct is unrelated to the relief he seeks. The very evidence Plaintiff submitted in support of this sanctions motion — the deposition transcripts and video recordings of Mr. Blackburn and Mr. Dixon — is the same material Plaintiff caused or permitted to be broadcast on YouTube and published in Complex magazine on the day this motion was filed. The unconscionable act and the equity sought are not merely related; they are identical. Plaintiff asks this Court to discipline Mr. Blackburn for his conduct during depositions while simultaneously using those same depositions as instruments of public humiliation, distributing them to tens of thousands of viewers before Mr. Blackburn even had an opportunity to receive certified copies. That conduct has an immediate and necessary relation to the equitable relief Plaintiff now demands, and it squarely invokes the bar that Keystone Driller and its progeny have applied for nearly a century.

Plaintiff asks this Court to refer Mr. Blackburn to the Grievance Committee, appoint a Special Master at Mr. Blackburn's expense, and impose monetary sanctions — the most coercive tools in this Court's equitable arsenal — while simultaneously having caused or permitted the confidential deposition transcripts that form the evidentiary backbone of that very motion to be broadcast to tens of thousands of viewers on YouTube and published in a national entertainment magazine. A party seeking equity must do equity. Plaintiff and his counsel did not. The motion for sanctions should be denied in its entirety on that basis alone, and cross-sanctions should issue.

III.   **Mr. Blackburn Has Not Received a Courtesy Copy of the Deposition Transcripts and Videos That Plaintiff Leaked to the World**

There is a stark and irrefutable inequity at the heart of this motion: Plaintiff and his counsel have shared the deposition transcripts and video recordings with Complex magazine, with YouTube broadcasters, and with anyone in the world who has internet access. They have not shared those same materials with Mr. Blackburn. As of the date of this filing, Mr. Blackburn has not received a courtesy copy of the transcripts or the videos from Plaintiff's counsel. He is being asked

21

to respond to a sanctions motion that relies on, quotes from, and submits as exhibits materials that he has not been provided. The public has the transcripts. YouTube viewers have watched the videos. Mr. Blackburn has not.

This is independently sanctionable conduct. The coordinated release of deposition materials to media while withholding those same materials from the deponent reflects either a deliberate effort to deprive Mr. Blackburn of the ability to respond to this motion or a staggering indifference to his due process rights — or both. Either way, it is conduct that this Court should not reward by proceeding to adjudicate the sanctions motion as though Mr. Blackburn has had a full and fair opportunity to review the record against him. Mr. Blackburn respectfully requests that this Court order Plaintiff's counsel to immediately provide him with certified copies of all deposition transcripts and all video recordings disclosed to any third party in connection with this motion — and that the deadline for Mr. Blackburn's opposition be tolled until a reasonable period after those materials are received.

## IV.   Mr. Tacopina Conducted the Examination in a Manner That Was Oppressive, Abusive, and Independently Violative of Rule 30

The examination of Mr. Blackburn at the March 27, 2026, deposition was a sustained campaign of personal insult, intimidation, sarcasm, and provocation that — had it occurred at trial — would have drawn immediate judicial intervention. Counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer. Fed. R. Civ. P. 30(c)(1), Advisory Committee Notes. What Mr. Tacopina did at this deposition would not have been allowed in the presence of a judicial officer. The standard is whether the manner of examination unreasonably annoys, embarrasses, or oppresses the deponent. Fed. R. Civ. P. 30(d)(3). The conduct documented in the record does not approach that line — it vaults across it.

## V.   The Specific Misconduct of Record: Insults, Threats, Baseless Criminal Accusations, and Admitted Yelling

Mr. Tacopina called Mr. Blackburn a "clown" during the deposition. The transcript is unambiguous: "You're a clown. Does that -- ... I did. I called you a clown. Because you are." March 27, 2026, Dep. Tr. at 187:6-10. There is no examination purpose served by calling the person being deposed a "clown." It is a personal insult calculated to humiliate and destabilize. Courts in this District have expressly held that ad hominem attacks at depositions violate Rule 30(d) and support sanctions. Morales v. Zondo, Inc., 204 F.R.D. at 54 (finding ad hominem attacks, colloquies, and

interruptions disrupted the examination and protracted the length of the deposition in violation of Rule 30(d) and § 1927).

Mr. Tacopina did not merely raise his voice — he acknowledged on the record that he was yelling. When Mr. Blackburn repeatedly asked why he was being yelled at, Mr. Tacopina confirmed directly: "Yeah. I am yelling." March 27, 2026, Dep. Tr. at 185:23-24. Mr. Blackburn raised this objection no fewer than seven times across the transcript — at pages 67, 68, 74, 180, 185, and 186 — and Mr. Tacopina's own admission confirms those objections were grounded in fact. Self-acknowledged yelling at a deponent is the paradigm of conduct that Rule 30(d)(3) was drafted to prohibit. An attorney who yells at a witness at trial is sanctioned from the bench. The Federal Rules make no distinction between the courtroom and the deposition room on this point.

Mr. Tacopina then stated on the record: "I know you're not going to be around much longer in this business, so you might as well try and go out with some dignity." March 27, 2026, Dep. Tr. at 188:4-8. This was not a question. It was not made for any evidentiary purpose. It was a career threat — a personal attack on a self-represented litigant's professional livelihood, delivered in the middle of a sworn examination for the sole purpose of intimidation. Rule 30(d)(3) prohibits it. The Court's inherent authority reaches it. *See* <u>Chambers</u>, 501 U.S. at 50. Mr. Tacopina also stated: "You're under indicted for running over our process server." <u>Id</u>. at 188:15-16. This accusation was made without any documentation or factual predicate established on the record. A baseless criminal accusation leveled at a witness during a deposition carries none of the procedural protections of an actual criminal charge. It is designed solely to prejudice, intimidate, and oppress. Courts have sanctioned attorneys for less. *See* <u>Cameron Indus.</u>, 2007 WL 1649856, at *5*.

### VI. Mr. Tacopina's Misconduct Materially Contributed to the Breakdown of the Deposition and Cannot Be Attributed to Mr. Blackburn Alone

A party cannot manufacture the grounds for a sanctions motion by creating the very conditions that destabilize the deposition. Where examining counsel's own conduct materially contributes to a breakdown, that counsel may be sanctioned regardless of the defending party's conduct. *See* <u>Morales</u>, 204 F.R.D. at 55. Mr. Blackburn stated directly on the record: "I feel threatened. You're leaning over the table, sticking your hand in my face." March 27, 2026, Dep. Tr. at 187:14–22. Mr. Tacopina's response was to call him a "clown." <u>Id</u>. at 187:6–10. An examining attorney who physically encroaches on a deponent's space, yells by his own admission, threatens his career, and hurls personal insults cannot then seek full sanctions as though he bore no responsibility for the outcome of that examination.

23

Courts in this District and across the federal system have imposed protective orders and sanctions in precisely this circumstance. *See, e.g.*, Green v. Cosco Shipping Lines Co., 2021 WL 5985123, at \*6 (S.D. Ga. 2021) (granting protective order where counsel "violated ethical and professional norms" in deposing the witnesses"); GMAC Bank v. HTFC Corp., 248 F.R.D. 182, 186 (E.D. Pa. 2008) (imposing sanctions where witness "sought to intimidate opposing counsel by maintaining a persistently hostile demeanor, employing uncivil insults, and using profuse vulgarity"); Robinson v. Chefs' Warehouse, 2017 WL 1064981, at \*4–11 (N.D. Cal. 2017) (imposing sanctions where attorney repeatedly made disparaging remarks to opposing counsel during deposition, including calling her " a "complete caricature"," "a joke," "confused," "pathetic," "a liar," and "the weakest lawyer I have seen in a very long time"), *reconsidered in part*, 2017 WL 2617905 (N.D. Cal. 2017) (precluding counsel from attending future depositions); United States ex rel. Baltazar v. Warden, 302 F.R.D. at 261–68 (imposing sanctions where attorney made inappropriate, insulting, and offensive remarks, including calling the witness a liar, asking disrespectful and sarcastic questions impugning the witness's intelligence, and arguing with the witness and commenting on her answers); Horton v. Maersk Line, Ltd., 294 F.R.D. at 697 (issuing protective order where attorney "frustrated the fair examination of Morris with a barrage of arrogant, irrelevant, accusatory questions and caustic comments that no witness, let alone a young man with no legal training, should have to endure."); Soule v. RSC Equip. Rental, Inc., 2012 WL 5060059, at \*3 (granting protective order applicable to future depositions enjoining participants from "(1) yelling or raising voices; (2) pounding on the table; (3) using a confrontational or argumentative tone or language; (4) accusing witnesses of lying, providing false testimony, or providing testimony that is not true; and (5) disrupting or cutting off witness responses."); Marseet v. Rochester Inst. of Tech., No. 20-CV-7096FPG, 2023 U.S. Dist. LEXIS 14397, at \*18–19 (W.D.N.Y. Jan. 27, 2023) (collecting and applying these standards in the Western District of New York). The conduct documented in the March 27, 2026, transcript — calling Mr. Blackburn a "clown," admitting to yelling, physically leaning across the table, threatening his career, and levying a baseless criminal accusation — falls squarely within the category of deposition misconduct that courts have sanctioned independently of anything the opposing party did. Plaintiff's motion, filed in that context, is not entitled to the equitable relief it seeks.

24

VII.    **The Sanctions Warranted Against Plaintiff's Counsel**

First, this Court should issue an emergency Order to Show Cause requiring Plaintiff and his counsel to appear and explain, under oath if necessary: the circumstances under which CONFIDENTIAL deposition transcripts and video recordings were provided to Complex magazine and YouTube broadcasters on March 24, 2026; the identity of every person or entity to whom such materials were disclosed; and why Plaintiff and his counsel should not be held in contempt of the Protective Order. To the extent this Court orders such an appearance, Defendants further request that this Court require Plaintiff's counsel to produce certified transcripts of all deposition recordings disclosed to third parties. Courts in this District have recognized that fairness ordinarily demands that a transcript be provided to the deponent free of charge for review soon after the deposition, *see* ACLI Gov't Secs., Inc. v. Rhoades, No. 81-CV-2555(MEL), 1991 U.S. Dist. LEXIS 17560, at *3–4 (S.D.N.Y. Dec. 5, 1991), and have routinely ordered production of certified transcripts within defined timeframes as a condition of their use, *see* Greer v. Mehiel, No. 15-CV-6119 (AJN)(JLC), 2017 U.S. Dist. LEXIS 18969, at *6 (S.D.N.Y. Feb. 8, 2017) (ordering pro se plaintiff to provide certified transcripts within 45 days of deposition's conclusion for use in motion practice or at trial). Plaintiff has already used these transcripts — he filed them in support of this motion and simultaneously caused or permitted them to be distributed to national media. Mr. Blackburn is entitled to certified copies of every transcript and recording that Plaintiff has deployed against him.

Second, this Court should order Plaintiff's counsel to immediately provide Mr. Blackburn with certified copies of all deposition transcripts and video recordings disclosed to any third party in connection with this motion, and toll Mr. Blackburn's opposition deadline accordingly. Mr. Blackburn cannot be required to oppose a motion built on deposition transcripts that were simultaneously furnished to Complex magazine and YouTube while being withheld from him in certified form. The asymmetry is not procedural — it is a structural due process deficiency created by Plaintiff's own Protective Order violation.

Third, this Court should order monetary sanctions against Plaintiff and his counsel equal to the costs and attorneys' fees incurred by Defendants in defending a motion that was filed simultaneously with a coordinated Protective Order violation and that suppressed the most exculpatory evidence in the record — Mr. Blackburn's on-the-record apology at the March 27, 2026 deposition. *See* March 27, 2026, Dep. Tr. at 280:19–281:1. A motion for sanctions that omits

the sanctioned party's on-the-record apology while simultaneously distributing the transcript to national media is not a good-faith invocation of the Court's disciplinary power. It is an instrument of public harassment, and the fees and costs it has generated should be borne by those who wielded it in that manner.

Fourth, this Court should issue a formal reprimand to Messrs. Tacopina and Seigel for their examination conduct at the March 27, 2026, deposition and a standing order reminding all counsel of their obligations under Fed. R. Civ. P. 30(d)(1), Advisory Committee Notes (1993 Amendment) — obligations that run equally to both sides of the deposition table. Counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer. Calling a deponent a "clown," admitting to yelling, threatening a pro se defendant's legal career, and levying baseless criminal accusations mid-examination is each independently violative of that standard. A standing order addressing those obligations going forward is both warranted and necessary to protect the integrity of any further depositions in this action.

Fifth, in the alternative, if this Court is inclined to refer any attorney to the Grievance Committee, the record supports an at least equally compelling referral of Plaintiff's counsel. The transcript of record reflects that Plaintiff's lead counsel called Mr. Blackburn — an officer of this Court and a named defendant in this action — a "clown" during sworn examination, *see* March 27, 2026, Dep. Tr. at 187:6–10; admitted on the record to yelling at the deponent, Id. at 185:23–24; threatened his professional livelihood by stating "I know you're not going to be around much longer in this business, so you might as well try and go out with some dignity," Id. at 188:4–8; levied a baseless criminal accusation by stating "You're under indicted for running over our process server," Id. at 188:15–16; violated the Stipulated Protective Order entered by this Court on December 8, 2025 (ECF 105) by causing or permitting CONFIDENTIAL materials to be disclosed to Complex magazine and YouTube broadcasters on the same day the sanctions motion was filed; and withheld from the deponent certified transcripts of proceedings simultaneously shared with the national media. If the standard for referral is conduct reflecting deliberate, willful disregard for professional obligations, *see* Usherson v. Bandshell Artist Mgt., No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020), aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgt., 858 Fed. Appx. 457 (2d Cir. 2021) (unpublished), and aff'd sub nom. Liebowitz v. Bandshell Artist, that standard is met here with equal or greater force by the conduct of Plaintiff's counsel.

26

In the alternative, this Court should deny Plaintiff's motion without prejudice pending (i) full production to Mr. Blackburn of all deposition transcripts and recordings disclosed to any third party, and (ii) a sworn accounting by Plaintiff and his counsel identifying the source, scope, and recipients of all disclosures of confidential materials.

Such relief is necessary to restore the integrity of the discovery process and to ensure that this Court's Protective Order is not rendered meaningless.

<u>CONCLUSION</u>

The question before this Court is not whether any conduct in this litigation has been imperfect — conduct on both sides has been imperfect. The question is whose imperfection rises to the level of the Court's most severe sanctioning authority, and whether that authority can be invoked at all by a party that is itself in contempt of this Court's orders.

Mr. Blackburn appeared for his deposition. He disclosed his medication. He answered for over three hours. He apologized for his intemperate remarks under oath at the very next deposition. *See* March 27, 2026, Dep. Tr. at 280:19-281:1. His conduct was imperfect. It was not calculated, willful, bad-faith obstruction. Plaintiff's counsel called him a clown, admitted to yelling at him, threatened his career, levied baseless criminal accusations at him, published his confidential deposition transcripts and videos to national media on the same day they filed this Motion, and have never provided him with copies of those same materials. That conduct — measured against the same standards Plaintiff asks this Court to apply to Mr. Blackburn — is more egregious, more deliberate, and more directly in violation of existing court orders than anything Mr. Blackburn has been alleged to have done.

Plaintiff's Motion should be denied. Defendants' Cross-Motion should be granted. The full record compels no other result. For these reasons, Plaintiff's motion should be denied in its entirety.

Dated: April 8, 2026
Brooklyn, New York

Respectfully submitted,

<u>/s/ Tyrone A. Blackburn</u>
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Telephone: (347) 342-7432
Email: tblackburn@tablackburnlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2026, I caused a true and correct copy of the foregoing Memorandum of Law to be served upon all counsel of record via the Court's Electronic Case Filing system:  Joseph Tacopina, Esq., Chad Seigel, Esq., Matthew DeOreo, Esq., and Eleonora Lanzone, Esq., Tacopina Seigel DeOreo, 275 Madison Avenue, 35th Floor, New York, New York 10016. Jordan W. Siev, Esq., Ian M. Turetsky, Esq., and Rob Carnes, Esq., Reed Smith LLP, 599 Lexington Avenue, 22nd Floor, New York, New York 10022.

Dated: April 8, 2026
Brooklyn, New York

Respectfully submitted,

*/s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Telephone: (347) 342-7432
Email: tblackburn@tablackburnlaw.com

28