# Exhibit 1

| Blackburn's Representations | The Record |
|---|---|
| **Blackburn repeatedly represents that his March 6 deposition was designated "confidential" or "highly confidential" under the Court's protective order:**<br><br>• "Those materials were designated CONFIDENTIAL under this Court's Protective Order." Opp. (ECF 183) at 5.<br><br>• "These materials were designated CONFIDENTIAL under this Court's Protective Order." *Id*. at 8.<br><br>• "They were comprehensive, coordinated disclosures of Highly Confidential protected deposition materials . . . ." *Id*. at 19. | Mr. Cartagena's counsel emailed Blackburn several days before filing his motion, removing confidentiality designations from Dixon's February 24 and Blackburn March 6 depositions and requesting any notice of disagreement by close of business on March 20, 2026. *See* Siev Reply Decl. Ex. 2.  Having received no objection to Mr. Cartagena's de-designations for four full days, Mr. Cartagena's counsel filed the motion for sanctions containing the de-designated transcript pages. Mr. Cartagena's counsel did not file any information designated as confidential and fully complied with the Court's order. Blackburn has never since asked Mr. Cartagena to seal the documents or moved this Court for relief. His argument is frivolous. |
| **Blackburn repeatedly represents that Mr. Cartagena and his counsel "leaked" information to the press and certain social media accounts:**<br><br>• "On March 24, 2026 — the very day this Motion was filed — Plaintiff and his counsel caused confidential deposition transcripts and video recordings…." *Id*. at 5.<br><br>• "The motion relies on deposition testimony that Plaintiff simultaneously disclosed to third parties …." *Id*. at 10. | Mr. Cartagena and his counsel did not "leak" anything to the press. The articles and YouTube videos that Blackburn complains of explicitly disclose that they are reporting on documents publicly filed to the docket. Joe Price, *Fat Joe's Former Hypeman Drops RICO, Trafficking, and Rape Allegations Against Rapper*, COMPLEX (Mar. 27, 2026) ("In legal documents  reviewed by Complex . . . ."); https://www.youtube.com/watch?v=BaSPDEm5NQM ("shout out to [X user] who late at night realized that this deposition was published to the docket"); https://www.youtube.com/watch?v=VefrCbP1VYo (containing |

| | |
|---|---|
| | video clips that were part of Mr. Cartagena's motion for sanctions). |
| **Blackburn repeatedly represents that Mr. Cartagena did not provide him with copies of the transcripts of his and Mr. Dixon's depositions:**<br><br>• "Most remarkably, as of the date of this filing, Plaintiff's counsel has never provided Mr. Blackburn with a courtesy copy of the very deposition transcripts and videos that they have shared with the entire world. The public has copies. YouTube viewers have copies. Complex magazine's readership has copies. Mr. Blackburn — the deponent, the defendant, the attorney whose professional life is being adjudicated — does not. This Court should not entertain a motion for sanctions by a party in willful contempt of its own Protective Order and has denied its adversary access to materials it has freely shared with the media." *Id*. at 5.<br><br>• "The Court cannot adjudicate sanctions based on a record that has been … withheld from the very party against whom sanctions are sought." *Id*. at 6.<br><br>• "First, it has deprived Mr. Blackburn of the ability to respond to the sanctions motion on equal footing, as the public has access to materials that have not been provided to him." *Id*. at 9.<br><br>• "At minimum, Plaintiff bears responsibility for the disclosure of materials exclusively within his possession | Mr. Cartagena's counsel sent Blackburn a full, unredacted copy of Dixon's February 24 deposition before filing this motion. *See* Siev Reply Decl. Ex. 2.<br><br>Blackburn clearly has a copy of his March 6 deposition transcript because it was filed on the public docket and Blackburn cites it throughout his opposition papers. Opp. (ECF 183) at 7; *see* Siev Decl. Ex. 1 (Mar. 6 Dep. Tr.).<br><br>Blackburn himself publicly filed the transcript of his March 27 deposition. Blackburn Decl. Ex. 3.<br><br>Blackburn also received copies of the relevant portions of Dixon's deposition transcripts and corresponding videos when Mr. Cartagena filed them to the public docket. *See* Siev Decl. Exs. 3-6. |

and control during the Protective Order period and cannot avoid accountability by remaining silent as to disclosures that could not have occurred absent access to his production." *Id*.

- "The motion relies on deposition testimony that Plaintiff simultaneously disclosed to third parties in violation of the Protective Order while withholding those same materials from Mr. Blackburn." *Id*. at 10.

- "And they have refused to provide Mr. Blackburn with copies of the very transcripts and videos they have published to the world — leaving him to defend himself against a motion premised on materials he has not received, while those materials are being widely disseminated to the public." *Id*. at 11.

- "There is a stark and irrefutable inequity at the heart of this motion: Plaintiff and his counsel have shared the deposition transcripts and video recordings with Complex magazine, with YouTube broadcasters, and with anyone in the world who has internet access. They have not shared those same materials with Mr. Blackburn. As of the date of this filing, Mr. Blackburn has not received a courtesy copy of the transcripts or the videos from Plaintiff's counsel. He is being asked to respond to a sanctions motion that relies on, quotes from, and submits as exhibits materials that he has not been provided. The public has the transcripts. YouTube

| | |
|---|---|
| viewers have watched the videos. Mr. Blackburn has not." *Id.* at 21-22.<br><br>• "Plaintiff asks this Court to discipline Mr. Blackburn for his conduct during depositions while simultaneously using those same depositions as instruments of public humiliation, distributing them to tens of thousands of viewers before Mr. Blackburn even had an opportunity to receive certified copies." *Id*. at 21. | |
| **Blackburn repeatedly represents that he requested an adjournment of his March 6 deposition, which the Court denied:**<br><br>• "He did not proceed silently or strategically—he sought an adjournment from the Court in advance, disclosed his condition to opposing counsel, and placed the issue squarely before the Court." *Id*. at 7.<br><br>• "The March 6, 2026, deposition — the deposition Plaintiff now complains about — took place after Mr. Blackburn's request to extend discovery was denied, at Plaintiff's insistence." *Id*.<br><br>• "Having been denied the extension he requested, Mr. Blackburn was left with two options: appear or be held in contempt. He appeared." *Id*. at 13.<br><br>• "*Rivera* stands for the proposition that a deponent should seek relief rather than appear impaired and say nothing — it does not stand for the proposition that a deponent who sought relief, was denied it, disclosed his condition | Blackburn never filed a motion to adjourn his March 6 deposition. Rather, two days before his deposition, Blackburn asked the Court to adjourn a conference because he had appearances scheduled in Kings County Supreme Court and the Eastern District of New York that morning, and affirmed he was "fully available and prepared to participate in" an afternoon conference. Mov. Br. (ECF 170) at 25.  The Court granted Blackburn's request. |

| | |
|---|---|
| on the record, and answered for hours under those circumstances should be sanctioned for failing to do more." *Id*. | |
| **Blackburn repeatedly represents that Mr. Cartagena elected not to terminate or suspend Blackburn's March 6 deposition:**<br><br>• "At no point did Plaintiff's counsel move to terminate or suspend the deposition under Rule 30(d)(3), nor did they seek relief from the Court at the time. Instead, they elected to proceed with the examination for hours despite full knowledge of Mr. Blackburn's disclosed condition." *Id*. at 8.<br><br>• "The deposition proceeded, testimony was obtained, and no contemporaneous motion was made to compel further answers or continue the examination." *Id*. at 14. | During Blackburn's March 6 deposition, Mr. Cartagena called this Court to intervene and requested a continuance of Blackburn's deposition until the week of March 23, 2026. Siev Decl. Ex. 1 at 83:7-16, 86:3-6, 104:4-6.  The Court issued an order adjourning the deposition for the week of March 23. ECF 159. |
| **Blackburn repeatedly represents that Mr. Tacopina lacked a basis for stating that Blackburn was indicted for running over the process server:**<br><br>• "The Motion does not tell this Court that Mr. Tacopina accused Mr. Blackburn on the record, without factual predicate: 'You're under indicted for running over our process server.'" *Id*. at 5. | Blackburn is, in fact, under indictment for running over the process server. *People v. Tyrone Blackburn*, Indictment-75222-25/001 (Oct. 20, 2025). |

| | |
|---|---|
| "Mr. Tacopina also stated: 'You're under indicted for running over our process server.' This accusation was made without any documentation or factual predicate established on the record." *Id*. at 23. | |
| **Blackburn represents that he repeatedly informed the Court that his doctor recommended that he refrain from work for two weeks**:<br><br>• "The medical record is not in dispute. Dr. Jason Emer confirmed in writing that Mr. Blackburn underwent procedures on January 23, 2026, and February 3, 2026; that he was placed under local anesthesia; and that he was prescribed narcotics, antibiotics, and antiemetics, with a recommendation to refrain from work for two weeks. These facts were disclosed to this Court on February 5, 2026, and again at the February 10 conference. They were not invented after the fact." *Id*. at 7.<br><br>• "Mr. Blackburn's medical narrative — disclosed in writing on February 5, repeated at the February 10 conference, stated at the outset of the deposition, and confirmed to Judge Rochon in real time — has been consistent from the first day it was asserted to this day." *Id*. at 12. | On February 5, 2026, Blackburn filed a letter falsely representing that medications rendered him "unable to prepare for or attend the depositions" for "approximately six to eight weeks," not just two weeks as Dr. Emer recommended. Mov. Br. (ECF 170) at 8. Moreover only five days later, at the February 10 conference, Blackburn reversed course, claiming he had numerous court obligations throughout February and could sit for depositions in late February and early March. *Id.* After Blackburn confirmed his availability, the Court ordered depositions to take place on February 24 and March 6 as "agreed," not "late March" as Blackburn represents. *Id.* at 13. |
| **Blackburn represents that the Court "accommodated" Blackburn's condition by "rescheduling the deposition" from February to "late March:"** | The Court did not "accommodate" Blackburn during the February 10 conference by moving his deposition to "late March." The Court ordered depositions to occur on February 27 and March 6 |

| | |
|---|---|
| • "These facts were disclosed to this Court on February 5, 2026, and again at the February 10 conference. They were not invented after the fact. This Court accommodated them by rescheduling the deposition to late March — an accommodation that would not have been granted if the medical claims were not credible." *Id.* at 7.<br><br>• "The threshold dispositive fact is one Plaintiff cannot escape: this Court itself rescheduled Mr. Blackburn's deposition from February to late March because it accepted that his narcotic medication regimen warranted accommodation. Courts do not reschedule court-ordered depositions on fabricated medical claims." *Id.* at 12. | in accordance with Blackburn's agreement and representations that he was available on those days. ECF 145.<br><br>In any event, given the discrepancies in Blackburn's narrative, the Court noted that Blackburn's claim regarding his purported treatment window "appear[ed] not to be" accurate. Mov. Br. (ECF 170) at 9. |
| **Blackburn represents that he appeared for his deposition "on court-acknowledged narcotic medication . . . ."** *Id.* at 14. | The Court never acknowledged that Blackburn was actually on narcotics. Rather, the Court stated that Blackburn's claim regarding his purported treatment window "appear[ed] not to be" accurate. *Id.* |
| **Blackburn repeatedly represents that he apologized for his misconduct during Dixon's February 24 deposition at "the very next deposition:"**<br><br>• "A person who deliberately calculated every improper remark does not then apologize for those remarks under oath at the very next deposition." *Id.* at 8.<br><br>• "These cases involve ad hominem filings, citation errors, and jurisdictional error— they do not involve an attorney … then apologizing under oath for intemperate remarks | Blackburn made homophobic, transphobic, sexist and threatening remarks during Dixon's deposition on February 27. Siev Decl. Ex. 3 at 11-12 (43:25-44:3); 35-36 (234:25-235:3); 47 (355:2-3); 48 (356:18-20); 49 (357:9-10); 50-51 (359:23-360:10); 53 (367:16-20); 58 (488:11-12); 64 (561:5- 12); 67 (601:13-15).  Far from "apologizing" at the "very next deposition," Blackburn doubled down on his transphobic remarks. *See* Siev Decl. Ex. 1 at 56:12-18 ("**Q.** Do you remember asking Mr. Seigel what was the date of this transition |

| | |
|---|---|
| at the very next deposition due to the impact the narcotics had on his mood." *Id*. at 15.<br><br>• "He apologized for his intemperate remarks under oath at the very next deposition." *Id*. at 27. | surgery? **A.** He's -- he's having a transition? I thought he transitioned already."); Ex. 5 (video). |
| **Blackburn repeatedly represents that the Court deprived him of the opportunity to take Mr. Cartagena's deposition**:<br><br>• "A party cannot invoke the Court's remedial authority to obtain a second bite at a witness while its adversary has never had a first." *Id*. at 16.<br><br>• "To the extent Plaintiff separately requests a continued deposition of Mr. Dixon, that request should be denied without conditions or, in the alternative, granted only subject to a standing order governing the conduct of both sides equally — and only if Defendants are simultaneously afforded the opportunity to depose Plaintiff, which this Court denied at Plaintiff's insistence." *Id*.<br><br>• "Defendants have been required to defend a defamation action without ever having had the opportunity to examine the Plaintiff under oath — to test his credibility, probe the basis of his claims, and develop the evidentiary record necessary to mount a full defense." *Id*. | Blackburn could have, but chose not to, depose Mr. Cartagena during fact discovery. The Court merely denied Blackburn's baseless motion to reopen fact discovery after it had long since been closed. ECF 158. |
| **Blackburn represents that Mr. Tacopina engaged in "over an hour of harassing questions" during his March 6 deposition.** *Id*. at 15. | Blackburn does not, because he cannot, cite to a single "harassing" question during his March 6 deposition. Opp. (ECF |

| | |
|---|---|
| | 183) at 14.  In fact, he does not cite to *any* question from his March 6 deposition. *Id.* at 14, 17, 22-23. |
| **Blackburn represents that "Plaintiff first noticed depositions in January 2026 for dates that fell within a period Mr. Blackburn had already communicated to the Court would be affected by his medical treatment."** *Id*. at 6. | In early January 2026, Mr. Cartagena noticed Defendants' depositions for January 21-22, 2026. ECF 120-1. At a subsequent conference, the Court directed the parties to complete document productions by January 16 to allow depositions to be completed by month's end—then the close of fact discovery. ECF 119. Blackburn raised no issues with the schedule or notices. *Id.* Hours ***after*** the conference ended and ***after*** Mr. Cartagena noticed defendants' depositions, Blackburn reversed course, claiming for the first time that he was unavailable for his depositions due to a "personal family matter" and a "pre-planned medical procedure." ECF 120-2 at 6. |