**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **JOSEPH CARTAGENA**, <br><br> *Plaintiff*, <br><br> v. <br><br> **TERRANCE DIXON, TYRONE BLACKBURN, and T.A. BLACKBURN LAW, PLLC,** <br><br> *Defendants*. | Civil Action No. 25-cv-03552 <br><br><br> **ORAL ARGUMENT REQUESTED** |

---

**PLAINTIFF JOSEPH CARTAGENA'S COMBINED MEMORANDUM OF LAW IN (1) FURTHER SUPPORT OF HIS MOTION FOR SANCTIONS; AND (2) OPPOSITION TO DEFENDANTS TYRONE BLACKBURN AND T.A. BLACKBURN LAW, PLLC'S CROSS-MOTION FOR SANCTIONS**

---

Joseph Tacopina
Chad Seigel
**Tacopina Seigel & DeOreo**
275 Madison Avenue, 35th Floor
New York, New York 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
212-227-8877

**Of Counsel:**

Jordan W. Siev
Ian M. Turetsky
**Reed Smith LLP**
599 Lexington, 22nd Floor
New York, New York 10022
jsiev@reedsmith.com
212-205-6085

*Attorneys for Plaintiff Joseph Cartagena*

**Table of Contents**

Preliminary Statement...................................................................................................... 1

Argument    ........................................................................................................................ 4

I.  Dixon Filed No Opposition to the Motion and Blackburn Does Not Address Most of His Misconduct ............................................................................................ 4

    A.    Dixon Does Not Oppose Sanctions................................................................ 4

    B.    Blackburn Does Not Address Most of His Misconduct............................. 5

II.   Blackburn's Deflection Underscores the Need for Sanctions................................... 6

    A.    Mr. Cartagena Complied With the Court's Protective Order .................... 6

    B.    Blackburn's Claim That He Lacks Copies of the Deposition Transcripts Is False .............................................................................................................. 8

    C.    Mr. Cartagena Did Not "Leak" Confidential Information to the Press ...... 9

    D.    Blackburn Agreed to His Deposition Date Without Objection ................ 10

III.   Blackburn's Narcotic-Impairment Defense Provides No Shield for His Misconduct.............................................................................................................. 12

    A.    Blackburn Has Produced No Credible Evidence of Using Prescription Narcotics ..................................................................................................... 12

    B.    Blackburn Feigned Impairment to Obstruct His Deposition ................... 13

    C.    Blackburn's "Episodic, Context-Dependent, Variable Impairment" Theory Is Fabricated............................................................................................... 16

IV.   Blackburn's Remaining Arguments Lack Merit....................................................... 18

    A.    Blackburn's "Apology" Is Too Little Too Late ....................................... 18

    B.    Mr. Cartagena Was Prejudiced By Defendants' Conduct ........................ 20

    C.    Blackburn Applies the Wrong Legal Standard Under Fed. R. Civ. P. 37(b) ...................................................................................... 20

    D.    Blackburn Applies the Wrong Legal Standard for the Appointment of a Special Master Under Fed. R. Civ. P. 53 and Understates His Conduct Warranting Such Relief............................................................................... 21

    E.    Blackburn Fails To Show an Inability to Pay For the Costs and Fees He Unnecessarily Caused Mr. Cartagena to Incur ....................................... 23

V.   Blackburn's Motion For Sanctions Is Baseless ...................................................... 24

Conclusion    ...................................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bruno Project Rescue Inc. v. Department of Health and Human Services*,
No. 24-cv-11552-DJC, 2025 U.S. Dist. LEXIS 116328 (D. Mass. June 18,
2025) ..................................................................................................................22

*Calloway v. Marvel Entm't Grp.*,
No. 82 Civ. 8697 (RWS), 1985 U.S. Dist. LEXIS 16588 (S.D.N.Y. Aug. 22,
1985) ..................................................................................................................23

*Citibank, N.A. v. Aralpa Holdings Limited Partnership*,
No. 22-cv-08842, 2024 WL 2853618 (S.D.N.Y. June 4, 2024) ...............................5

*Coker v. Goldberg & Associates P.C.*,
No. 21-cv-01803, 2024 WL 869412 (S.D.N.Y. Feb. 29, 2024) ...............................4

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
643 F. Supp. 3d 421 (S.D.N.Y. 2022).....................................................................4

*Daval Steel Prods., Div. of Francosteel Corp. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991)................................................................................21

*Davis v. Winston Preparatory School, v. Andreo*,
No. 21 Civ. 8209, 2025 WL 1795350 (S.D.N.Y. June 30, 2025).............................5

*Dixon v. Albany County Bd. of Elections*,
No. 08-CV-502, 2010 WL 1171225 (N.D.N.Y. Feb. 18, 2010)..............................21

*EEOC v. Local 580, Int'l Ass'n of Bridge, etc.*,
669 F. Supp. 606 (S.D.N.Y. 1987) .......................................................................23

*Huber v. Marine Midland Bank*,
51 F.3d 5 (2d Cir. 1995)........................................................................................24

*Hyers v. Martuscello*,
No. 9:24-cv-00962, 2025 U.S. Dist. LEXIS 20358 (N.D.N.Y. Feb. 5, 2025)........22

*Lee v. City of Troy*,
559 F. Supp. 3d 73 (N.D.N.Y. 2021).....................................................................19

*Park-Tower Dev. Grp., Inc. v. Goldfeld*,
87 F.R.D. 96 (S.D.N.Y. 1980) ..............................................................................23

*Quinio v. Aala*,
No. 15-CV-4912, 2017 WL 8646668 (E.D.N.Y. Dec. 21, 2017)...........................24

*Sakon v. Andreo,*
  119 F.3d 109 (2d Cir. 1997).................................................................................................21

*Satcorp Int'l Grp. v. China Nat'l Silk Imp. & Exp. Corp.,*
  101 F.3d 3 (2d Cir. 1996)...............................................................................................21, 22

*In re Sobolevsky,*
  430 F. App'x 9 (2d Cir. 2011) ...........................................................................................19

*South New Eng. Tel. Co. v. Glob. NAPs Inc.,*
  624 F.3d 123 (2d Cir. 2010)................................................................................................21

*Townsquare Media, Inc. v. Regency Furniture, Inc.,*
  No. 21-CV-4695, 2022 WL 4538954 (S.D.N.Y. Sept. 28, 2022).............................................24

**Statutes**

18 U.S.C. § 3626(a)(1)(A) ...................................................................................................22

**Rules**

Fed. R. Civ. P. 30(d) ...........................................................................................................24

Fed. R. Civ. P. 37(b) .................................................................................................20, 21, 22

Fed. R. Civ. P. 53...................................................................................................................22, 23

Fed R. Civ. P. 54....................................................................................................................21

**Preliminary Statement**

Tyrone Blackburn and T.A. Blackburn Law, PLLC's (collectively, "**Blackburn**") opposition (the "**Opposition**") to Joseph Cartagena's motion for sanctions (the "**Motion**") is notable as much for what it omits as for what it contains. Blackburn does not deny that:

- During his March 6 deposition, his recall was impaired by narcotics only when questioned by Mr. Cartagena's counsel, yet fully restored when speaking with the Court less than an hour later;

- He could not answer basic questions, including whether he is a defendant in this case or whether Defendant Terrance Dixon ("**Dixon**") is his client;

- He made homophobic and transphobic remarks during Dixon's February 24 deposition, asking Chad Seigel, Mr. Cartagena's counsel, about his "transition surgery" and referring to his "husband";

- He made vulgar, sexist attacks, telling Mr. Seigel that his mother "should have spit you out instead of swallowing" and that "[t]his guy is, like … it's like his tampon is [wet or something]- - like, what is wrong with him?";

- He directed the ethnic slur "Joe Taco Face" at Mr. Cartagena's counsel, Joseph Tacopina;

- He threatened physical violence—warning Mr. Seigel he would "never do this if it was outside"—while Dixon boasted he "could take [Mr. Seigel] down with [his] left hand";

- He repeatedly instructed Dixon not to answer questions without asserting any privilege; or

- Dixon's testimony was riddled with transparently feigned memory lapses.

Instead, Blackburn attacks Mr. Cartagena's counsel and invents a narcotic-impairment defense. The majority of Blackburn's Opposition rests on demonstrable falsehoods, a complete catalogue of which appears in **Exhibit 1** to the Reply Declaration of Jordan Siev.

Consider Blackburn's "unclean hands" defense. He claims Mr. Cartagena refused to provide deposition transcripts, hampering his ability to respond. This is false. Mr. Cartagena sent Blackburn a full, unredacted copy of Dixon's February 24 deposition days before filing this Motion. And Blackburn plainly has his own March 6 deposition transcript: it was filed on the public docket, and Blackburn cites it throughout his Opposition. His claim that "the entire world"—but not Blackburn—has access to these transcripts is absurd on its face.

If possible, Blackburn's Opposition deteriorates from there. He accuses Mr. Cartagena of leaking "confidential" transcripts and videos to the press while omitting that every article and YouTube video he cites discloses it is reporting on publicly filed documents. Moreover, these materials are not "confidential" under the Court's protective order. Days before filing his Motion, Mr. Cartagena's counsel emailed Blackburn removing the confidentiality designations and requested any objection by close of business on March 20, 2026. Blackburn never responded, and the filing took place four days later. And Blackburn has never since asked Mr. Cartagena to seal the documents or moved this Court for relief. His argument is frivolous.

Blackburn's narcotic-impairment defense is equally baseless. The record contains no evidence that Blackburn was prescribed a two-month narcotics regimen for a cosmetic procedure performed under local anesthesia. His own doctor's note recommends only a two-week respite "for recovery and pain management." And Blackburn cannot name any of the medications he was purportedly taking, let alone the procedure he underwent.

Blackburn's narcotic-impairment defense faces another fatal defect: his memory failures were suspiciously selective. He could not recall basic facts when questioned by Mr. Cartagena's counsel, but spoke with complete clarity when addressing the Court less than an hour later. Confronted with this selective impairment, Blackburn invents a novel medical theory— painkiller

induced "episodic, context-dependent, variable impairment." He cites no medical literature supporting this theory. No physician diagnosed it. It is a fabrication invented to justify Blackburn's obstruction.

Blackburn's conduct exposes his own defense as fraudulent. Ten days before his deposition, he was alert and combative during Dixon's examination. Throughout February and March, he filed substantive motions, appeared at court conferences, and assured multiple courts he was ready to litigate. He flew from New York to California for, and then presumably from California to New York after, his procedure. After representing that he was merely going to "lay" on a cruise, he attended Carnival in Trinidad and Tobago. Yet he claims he was too impaired to sit in a conference room and answer whether Dixon was his client. The Court should not credit this obvious pretense.

Blackburn's final refuge is to blame this Court for scheduling his March 6 deposition and denying his requested adjournment. Both premises are false. *First*, after notifying the Court of his six-to-eight-week recovery, Blackburn reversed course, representing that he had court obligations throughout February and agreeing to sit for depositions in late February and early March. *Second*, Blackburn never requested, and thus was never denied, an adjournment of his March 6 deposition.

Blackburn's cross-motion for sanctions fails for many of the same reasons. His claim that Mr. Cartagena leaked "confidential" materials collapses because the materials were neither designated confidential nor leaked. His claim that Mr. Tacopina was "yelling" is contradicted by the video of the deposition. His claim that Mr. Tacopina falsely accused Blackburn of being indicted for running over a process server is refuted by the indictment itself. And his professed outrage at being called a "clown" rings hollow from an attorney who hurled homophobic,

- 3-

transphobic, sexist, and ethnic slurs at counsel, and who falsely accused Mr. Tacopina of "invading his space" moments before the comment was made.

The bad faith pervading Blackburn's opposition is precisely why the Court should grant Mr. Cartagena's motion and deny Blackburn's cross-motion in its entirety.

<u>**Argument**</u>

## I.    Dixon Filed No Opposition to the Motion and Blackburn Does Not Address Most of His Misconduct

Dixon's deposition lies at the heart of Mr. Cartagena's Motion, yet Dixon filed no opposition whatsoever. Blackburn, for his part, ignores the vast majority of the sanctionable conduct documented in the Motion. Where a party fails to contest factual allegations or legal arguments, the Court may treat those matters as conceded. *See Coker v. Goldberg & Associates P.C.*, No. 21-cv-01803, 2024 WL 869412, at *7 (S.D.N.Y. Feb. 29, 2024) ("Defendants are deemed to have conceded [Plaintiff's] arguments by failing to address them in their opposition brief") (citing *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022)). The Court should do so here.

### A. Dixon Does Not Oppose Sanctions

Mr. Cartagena moved for sanctions against Blackburn and his client, Dixon. ECF 168-170. Dixon does not deny making mocking comments and hurling insults toward Mr. Seigel. *See* Mov. Br. (ECF 170) at 16, 28. He does not deny threatening physical violence against Mr. Seigel. *See id.* at 9-10, 16-17. He does not deny his pattern of feigned memory lapses or his reversal of sworn testimony after Blackburn suggested the video evidence could be "AI-generated." *See id.* at 19-20. Nor does he offer any explanation for his conduct. In fact, Blackburn filed no opposition on Dixon's behalf. Only Blackburn and his law firm oppose Mr. Cartagena's motion.

The Court should treat Dixon's complete failure to respond as a concession that he does not deny, and cannot explain, his misconduct and as an admission that sanctions are warranted. *See Davis v. Winston Preparatory School*, No. 21 Civ. 8209, 2025 WL 1795350, at *11 (S.D.N.Y. June 30, 2025) (finding that defendants "effectively conceded" plaintiff's argument by "not address[ing]" it in their reply papers).

## B. Blackburn Does Not Address Most of His Misconduct

Mr. Cartagena's Motion details specific categories of misconduct warranting sanctions. ***First***, it describes how Blackburn repeatedly interjected argumentative commentary, fed Dixon suggested answers, and testified on Dixon's behalf, stating, for example, "He already answered that" before providing answers himself and explaining opposing counsel's litigation strategy to Dixon during examination. Mov. Br. (ECF 170) at 17. ***Second***, it catalogues numerous instances where Blackburn instructed Dixon not to answer questions without asserting any valid privilege, including refusing to state a basis on the record for the instruction. *Id.* at 18. ***Third***, it details Dixon's pattern of claiming "I don't recall" to questions clearly calling for his knowledge rather than recollection, such as whether a person in a video was himself or whether the video could be "AI-generated," as well as his backtracking on prior admissions about appearing on the "Off da Books" podcast. *Id.* at 19, 20.

Blackburn fails to address any of this misconduct in his Opposition. His Opposition says nothing about his speaking objections and witness coaching. It says nothing about his instructions not to answer. And it says nothing about Dixon's evasive and inconsistent testimony. Blackburn had every opportunity to offer innocent explanations, provide context, or dispute the accuracy of the record. He did not. The Court should therefore treat the Motion's factual allegations as uncontroverted and its legal arguments as conceded. *See Citibank, N.A. v. Aralpa Holdings Limited Partnership*, No. 22-cv-08842, 2024 WL 2853618, at *4 (S.D.N.Y. June 4, 2024) (holding that a

party's failure to respond to arguments raised in a motion may be deemed a concession of those arguments).

## II.    Blackburn's Deflection Underscores the Need for Sanctions

Blackburn devotes the lion's share of his Opposition to deflecting attention from his conduct by attacking Mr. Cartagena, his counsel, and this Court. He claims the Court cannot sanction him because Mr. Cartagena lacks clean hands: (*a*) "Plaintiff and his counsel caused confidential deposition transcripts and video records to be published" that were marked "confidential" under the Court's protective order to the press and social media; and (*b*) "[m]ost remarkably, as of the date of this filing, Plaintiff's counsel has never provided Mr. Blackburn with a courtesy copy of the very deposition transcripts and videos that they have shared with the entire world." Opp. Br. (ECF 183) at 5. He also (*c*) baselessly faults this Court for scheduling his March 6 deposition and denying his motion to adjourn it when the Court knew that Blackburn was taking narcotics. *Id.* at 6, 7. Blackburn's unfounded finger pointing at everyone but himself highlights the need for sanctions.

### A.    Mr. Cartagena Complied With the Court's Protective Order

Blackburn's unclean hands argument is predicated on the false allegation that Mr. Cartagena "leaked" deposition transcripts designated "confidential" under the Court's Protective Order. *Id.* at 11. But several days before filing his Motion, Mr. Cartagena's counsel sent an email to Blackburn removing all confidentiality designations in connection with both Mr. Dixon's deposition and Blackburn's deposition, except for those portions of Dixon's deposition that were highlighted in a copy of the transcript attached thereto. *See* Siev Reply Decl. Ex. 2. Counsel specifically requested that Blackburn respond "by close of business" on March 20, 2026**,** if he did "not agree to the foregoing:"

| From: | Turetsky, Ian M. |
|---|---|
| Sent: | Friday, March 20, 2026 12:52 PM |
| To: | Tyrone Blackburn |
| Cc: | Siev, Jordan W.; Chad Seigel; Carnes, Rob; Joe Tacopina |
| Subject: | RE: Cartagena v. Dixon |
| Attachments: | 2026-02-24 Dixon, Terrance (Confidentiality Designations).pdf |

Counsel,

Pursuant to Section 20 of the Protective Order, the deposition transcripts in this case are automatically designated as highly confidential for the first 30 days following receipt of the final transcript unless the parties agree otherwise. As you are aware, we also designated Mr. Dixon's deposition and deposition transcript as confidential at the conclusion of his February 24, 2026 deposition. We write to remove all confidentiality designations in connection with both Mr. Dixon's deposition and your deposition except those portions of Mr. Dixon's deposition that are highlighted in the attached transcript, for which we maintain our designations. Please let us know by close of business today if you do not agree to the foregoing.

*Id.* As he frequently does, Blackburn chose not to respond to counsel's correspondence. Having received no objection to Mr. Cartagena's de-designations for four full days, Mr. Cartagena filed his Motion containing the de-designated transcript pages on March 24, 2026. Mr. Cartagena did not file or "leak" any information designated as confidential and fully complied with the Court's Protective Order.

Blackburn's bad faith is manifest. ***First,*** although Mr. Cartagena filed the de-designated transcript excerpts and video with the Court late on March 24, Blackburn did not raise any objection to the filing until he submitted his Opposition on April 9, weeks later. He did not request that Mr. Cartagena remove the filing. He did not move the Court to strike or seal the filing. He did not even belatedly designate the transcript pages as confidential. He took no action whatsoever. Instead, he waited weeks to preserve a baseless argument he could later deploy to claim bad faith.

***Second***, Blackburn has not demonstrated (let alone suggested) that anything in the transcript is confidential.[1] Rather, Blackburn is upset that the transcript reveals his unprofessional conduct, including homophobic, transphobic, and sexist remarks. There is no basis for arguing that

---

[1] Blackburn conclusorily argues that the portions of the transcript filed by Mr. Cartagena "distorted the evidentiary record" and do not provide the full "context." Opp. Br. (ECF 183) at 9, 11. Tellingly, Blackburn could have, but did not, submit any additional portions of the transcript showing the context Blackburn claims was missing.

the de-designated transcripts contain confidential information, and Blackburn does not even try to manufacture one.

***Third***, Blackburn's own conduct demonstrates bad faith. Despite his objections to Mr. Cartagena's filing of transcripts that were not marked confidential, Blackburn himself breached the Court's Protective Order when he filed the entirety of his March 27 deposition transcript with the Court notwithstanding that it was presumptively confidential. ECF 184-3. He did that despite this Court's ruling that he previously "failed to comply with the Court-ordered Protective Order dated December 8, 2025 by filing such documents without following the process set forth in that Order, including paragraph 21" and warning him that "future non-compliance will not be tolerated." ECF 158.

Accordingly, Blackburn's unclean hands argument lacks merit.

## B. Blackburn's Claim That He Lacks Copies of the Deposition Transcripts Is False

Blackburn argues that, "[m]ost remarkably," Mr. Cartagena "has never provided Mr. Blackburn with a courtesy copy of the very deposition transcripts and videos that they have shared with the entire world." Opp. Br. (ECF 183) at 5. This argument fails on multiple grounds. ***First***, Mr. Cartagena had no obligation to provide courtesy copies to Blackburn, who could have purchased copies from the court reporter just as Mr. Cartagena did. ***Second***, the argument is internally inconsistent: the core of Blackburn's grievance is that Mr. Cartagena shared the transcripts "with the entire world," which would necessarily include Blackburn himself.

Moreover, Blackburn's claim is demonstrably false. Mr. Cartagena provided Blackburn with a full, unredacted copy of Dixon's February 24 deposition on March 20, 2026. Siev Reply Decl. Ex. 2. Blackburn also received copies of his March 6 deposition transcript and video clips when Mr. Cartagena filed them with the Court on the same day, which he cites throughout his Opposition. Opp. Br. (ECF 183) at 7-8, 13. And Blackburn himself filed his March 27 deposition

with the Court in violation of the Court's Protective Order, further demonstrating his access to these materials.

In short, Blackburn's assertion that he was denied access to the deposition transcripts is contradicted by the record. He received courtesy copies, had access to publicly filed documents, and filed transcripts himself.

### C. Mr. Cartagena Did Not "Leak" Confidential Information to the Press

Blackburn accuses Mr. Cartagena and his counsel of committing what he calls "the most serious discovery violation" in this case. Opp. Br. (ECF 183) at 5. Apparently, Blackburn believes that "Plaintiff and his counsel caused confidential deposition transcripts and video recordings to be published in Complex magazine, broadcast on YouTube to tens of thousands of viewers, and distributed across social media platforms." *Id.* This accusation is baseless.

As part of his motion for sanctions, Mr. Cartagena filed on the public docket certain excerpts from Blackburn's deposition that were ***not*** designated "confidential." Mr. Cartagena was entirely permitted to do so under the Court's Protective Order. Once those documents were filed on the public docket, they became accessible to anyone, including the media. Critically, the very articles and YouTube videos that Blackburn complains of confirm they relied solely on publicly filed documents. Joe Price, *Fat Joe's Former Hypeman Drops RICO, Trafficking, and Rape Allegations Against Rapper*, COMPLEX (Mar. 27, 2026) ("In legal documents reviewed by Complex . . . ."); https://www.youtube.com/watch?v=BaSPDEm5NQM ("shout out to [X user] who late at night realized that this deposition was published to the docket"); https://www.youtube.com/watch?v=VefrCbP1VYo (containing video clips that were part of Mr. Cartagena's motion for sanctions).

There was no leak. Mr. Cartagena made only appropriate public filings that the media chose to report on.

## D.  Blackburn Agreed to His Deposition Date Without Objection

Blackburn next blames Mr. Cartagena and this Court for forcing him to appear at his deposition on March 6. He emphasizes that he disclosed his medical condition, with an expected narcotic regimen of six to eight weeks, in a February 5 letter and again at the February 10 conference. He frames this as evidence that his impairment was "[c]onsistent, contemporaneous, judicially accommodated" and therefore "not the signature of fabrication." Opp. Br. (ECF 183) at 12.

The record flatly contradicts Blackburn's claim. On February 5, 2026, Blackburn filed a letter stating that medications rendered him "unable to prepare for or attend the depositions" for "approximately six to eight weeks." ECF 137. Yet just five days later, at the February 10 conference, he reversed course. He represented to the Court that he had numerous court obligations throughout February and that he could sit for depositions in late February and early March, within the six-to-eight-week window he had claimed would render him incapable of appearing. *See* ECF 146-6 at 14-15. He also confirmed his availability for February 24 and March 6 on the record, without conditioning his agreement on any medical limitation, and without requesting any accommodation. *Id.* at 16. The Court's Second Deposition Order reflects this agreement. ECF 145. Having agreed to appear without qualification, Blackburn cannot now claim the Court and Mr. Cartagena forced him to.

Blackburn's argument rests on additional material falsehoods. He claims that this Court "accepted that his narcotic medication regimen warranted accommodation" and "accepted the medical reality" at the February 10, 2026 conference. Just the opposite. The Court stated on the

record that Blackburn's claim regarding his purported treatment window "appear[ed] not to be" accurate.

Blackburn also falsely claims that "he sought an adjournment from the Court in advance" of his deposition, which the Court purportedly denied. Opp. Br. (ECF 183) at 7; *see also id*. at 13 ("Having been denied the extension he requested, Mr. Blackburn was left with two options: appear or be held in contempt") ("That principle has no application here because Mr. Blackburn did exactly that — he sought a further extension, and the Court denied it at Plaintiff's insistence"). But Blackburn never requested an adjournment of his March 6 deposition.[2] Rather, two days before his deposition, Blackburn asked the Court to adjourn a conference because he had appearances scheduled in Kings County Supreme Court and the Eastern District of New York that morning, and affirmed he was "fully available and prepared to participate in" an afternoon conference. He requested only an extension of the already-expired discovery deadlines to depose Mr. Cartagena, and never once suggested he could not attend his own March 6 deposition. ECF 152 at 1 (seeking "a limited reopening of the fact discovery period for the sole purpose of reviewing the unredacted documents, serving subpoenas, and deposing any individuals whose identities were improperly withheld through over-redaction").

Finally, Blackburn claims that Mr. Cartagena "did not seek relief from the Court" during Blackburn's deposition and instead "elected to proceed with [his] examination." Opp. Br. (ECF 183) at 8. This too is false. Once it became clear that Blackburn was feigning incapacitation, Mr. Tacopina called the Court and requested an adjournment, which the Court granted. Siev Decl. Ex. 1 at 83:7-16, 86:3-6, 104:4-6.

---

[2] Blackburn states that the Court "Order Denying Request for Brief Extension" is attached as Exhibit 2 to his Declaration. ECF 184 at ¶ 4. Exhibit 2 is actually the Court's February 10, 2026 order providing that "Defendants have agreed to and are HEREBY ORDERED to sit for depositions on February 24, 2026, and March 6, 2026."

Blackburn's claim that he was forced to appear is thus false in every respect.

## III.    Blackburn's Narcotic-Impairment Defense Provides No Shield for His Misconduct

Blackburn's core defense for his unhinged conduct during his deposition is that it was caused by genuine narcotic cognitive impairment rather than deliberate bad faith. Opp. Br. (ECF 183) at 13-14. This defense fails because: (*a*) there is no credible evidence that Blackburn was under the influence of narcotics at the time of his deposition; (*b*) the evidence shows that Blackburn feigned impairment and made material misrepresentations to the Court to bolster his excuse; and (*c*) Blackburn's "episodic, context-dependent, variable impairment" theory is quackery inapplicable even under its own terms.

## A.  Blackburn Has Produced No Credible Evidence of Using Prescription Narcotics

Blackburn claims he should not be sanctioned for thwarting his deposition because he ingested "multiple medications[,] including narcotic[s]" the morning of his deposition. Opp. Br. (ECF 183) at 7. Blackburn has produced no evidence corroborating that claim.

During his deposition, Blackburn could not identify any of the medications by name. Siev Decl. Ex. 1 at 34:7-18. He could not identify the type of medical procedure he supposedly underwent. *Id.* at 67:19-68:17. He could not identify his doctor's medical specialty. *Id.* at 66:17-24. Blackburn has produced no new evidence in his Opposition.

The only documentary evidence in the record—a February 27, 2026 note from Dr. Jason Emer, a cosmetic surgeon—contradicts Blackburn's narrative. Dr. Emer merely advised Blackburn "to refrain from work for 2 weeks" after his procedures "for recovery and pain management." ECF 150-2. Dr. Emer says nothing about a months-long narcotics regimen.

Having been hoisted with his own petard, Blackburn tries to reconcile Dr. Emer's note by speculating that "[a] physician may advise two weeks of physical rest while prescribing a six-to-eight-week narcotic regimen." Opp. Br. (ECF 183) at 14. True, in the abstract, a doctor may do so.

But abstract possibilities are not evidence. Blackburn must show that his claimed impairment actually existed, not that it hypothetically could have existed under some imaginable set of circumstances. On this record, there is no evidence whatsoever that Dr. Emer (or anyone else) prescribed Blackburn a month's plus supply of narcotics for a cosmetic surgery performed under local anesthesia. No prescription records. No pharmacy dispensing logs. No follow-up treatment notes. No affidavit from Dr. Emer confirming any such regimen. To the contrary, the only documentary evidence before the Court shows that, on February 27, 2026, Dr. Emer advised Blackburn that he needed just two weeks for "pain management," a period that had long since elapsed by the time of his March 6 deposition. ECF 150-2. Blackburn's unsupported speculation about what a physician "may" prescribe cannot overcome what his own physician documented.[3]

### B. Blackburn Feigned Impairment to Obstruct His Deposition

The surrounding circumstances further belie Blackburn's claim of incapacity. As more fully described in Mr. Cartagena's moving brief:

- Blackburn was alert, aggressive, and fully engaged for hours during Dixon's deposition just ten days before his own deposition. Mov. Br. (ECF 170) at 9.

- Blackburn's recall appeared to fail only when questions were adverse and to function when answers served his interests. *Id.* at 23-24.

- On February 5, 2026, Blackburn filed a letter stating that medications rendered him "unable to prepare for or attend the depositions" for "approximately six to eight weeks," but just five days later, at the February 10 conference, he reversed course, claiming he had numerous court obligations throughout February and could sit for depositions in late February and early March. *Id.* at 8.

- On February 13, 2026, Blackburn assured Judge Semper that his "health challenges" had "been addressed" and that he "will continue as counsel" and was "able to represent Plaintiffs going forward." *Id.* at 8, 25.

- When questioned about his ability to take a 10-day international vacation but not sit for a deposition, Blackburn claimed he was "not flying anywhere." In reality, he flew to Puerto

---

[3] Blackburn could have (but did not) file any such evidence with the Court under seal.

Rico just days after his last procedure and then set sail on a cruise to Trinidad and Tobago for Carnival. *Id.* at 10, 13, 26. Blackburn concedes that he continued working during his Caribbean cruise.

- Blackburn also admits he "thinks" he traveled to California for his procedure, obviously requiring a return trip. *Id.* at 11, 26.

- On March 2, 2026—four days before his deposition—Blackburn filed an opposition to Mr. Cartagena's prior sanctions motion, including a 20-paragraph declaration under penalty of perjury. The same day, he also filed an "emergency" motion to compel and to extend discovery deadlines. *Id.* at 25.

- Two days before his deposition, Blackburn asked the Court to adjourn a conference because he had appearances scheduled in Kings County Supreme Court and the Eastern District of New York that morning, and affirmed he was "fully available and prepared to participate in" an afternoon conference. *Id.*

- After his failed deposition, Blackburn filed two additional motions containing detailed factual and legal analysis about why the Court erred in denying his motion to dismiss and why it should permit him to file an amended complaint. *Id.* at 26.

This is not the conduct of someone impaired by narcotics.

Blackburn glosses over most of this conduct, and his attempted justifications for the rest are wholly unpersuasive. Blackburn dismissively claims that his letter to Judge Semper is of no moment because it concerned "managing litigation obligations, not about completing a narcotic pain management regiment." Opp. Br. (ECF 183) at 14. This rationalization is bewildering. Attending a noticed deposition is indisputably part and parcel of "managing litigation obligations." Blackburn cannot credibly maintain that he was too incapacitated by narcotics to sit for a deposition—including at which he claimed that he could not recall whether he represented his client—while simultaneously possessing the mental acuity necessary to attend court conferences, draft and file substantive motions, and discharge his fiduciary duties. These activities require the same, if not greater, cognitive faculties as answering questions about the identity of his client at a deposition. Blackburn's attempt to draw this distinction only underscores the pretextual nature of his excuse.

Blackburn also claims that "[t]he distinction between managing filings and withstanding a seven-hour adversarial examination on narcotics is self-evident to anyone who has ever been on opioid analgesics." Opp. Br. (ECF 183) at 14. But Blackburn has produced no evidence that he was actually on narcotics during his deposition. Nor did Blackburn sit for a seven-hour "adversarial examination." Blackburn feigned incapacity almost immediately after his deposition began. Mov. Br. (ECF 170) at 9. And, in any event, Blackburn had no trouble aggressively defending a seven-hour "adversarial examination" just days before claiming that he was too incapacitated to sit for his own. *Id.* at 14, 15.

Blackburn argues that "the physical ability to board a ship, relax, and attend a street festival does not speak to the cognitive ability to sit for a seven-hour adversarial deposition in which examining counsel is calling the deponent names, threatening his career, and pressing compound questions in rapid succession." Opp. Br. (ECF 183) at 14. Blackburn is mixing up his own depositions. The deposition at which Blackburn feigned incapacity was his March 6 deposition, not the later March 27 deposition where he now claims examining counsel called him names and threatened his career. *See* Siev Decl. Ex. 1 at 9:10-16, 18:2-7, 34:94-6, 46:4-9; *see also* Opp. Br. (ECF 183) at 14. Notably, Blackburn contends that any such conduct occurred solely at the March 27 deposition, not the March 6 deposition. Opp. Br. (ECF 183) at 14, 17, 22-23. And as for the later deposition, Blackburn himself admits he was off his medication at that time. Blackburn Decl. Ex. 3 at 160:11-20. Blackburn cannot justify his misconduct at the March 6 deposition by pointing to events that allegedly occurred at a different proceeding.

Blackburn's attempt to whitewash his cruise to Trinidad and Tobago for Carnival has backfired spectacularly. To reconcile his cruise with his supposed inability to be deposed, Blackburn assured the Court that he was "not flying anywhere" and that he was merely "able to sit

on a ship, lay down, as I'm laying down now. I'm not standing up and walking around….So it's just a cruise. It's not like I'm going to be walking around or anything like that. I'm sitting -- I'm laying in my cabin." ECF 146-6 at 13:3-10; Mov. Br. (ECF 170) at 10, 26. Each of these representations has now been exposed as false.

*First*, as Mr. Cartagena previously demonstrated, Blackburn did not simply "sit on a ship." He flew to Puerto Rico just days after his procedure, directly contradicting his representation that he was "not flying anywhere." Blackburn Decl. Ex. 3 at 317:18-25; Mov. Br. (ECF 170) at 10, 13, 26. *Second*, Blackburn's own opposition brief now confirms that he was not confined to his cabin "laying down" as he told the Court. Rather**,** he "attend[ed] a street festival." Opp. Br. (ECF 183) at 14. The Carnival celebration in Trinidad and Tobago is one of the largest festivals in the world, featuring parades, dancing, and revelry that span multiple days. The website for Blackburn's cruise operator advertises as much. www.myepiccarniva.com.[4] Blackburn's participation in this event is wholly inconsistent with his claim that he was too incapacitated to sit in a conference room and answer whether Dixon is his client.

### C. Blackburn's "Episodic, Context-Dependent, Variable Impairment" Theory Is Fabricated

Blackburn's memory failures were suspiciously selective. His recall was conveniently impaired when questioned by Mr. Cartagena's counsel, but restored to full clarity when speaking with the Court less than an hour later. *See* Mov. Br. (ECF 170) at 8.

Blackburn's Opposition does nothing to dispel that suspicion. He invokes a theory of "episodic, context-dependent, variable impairment" that supposedly explains why he could answer Judge Rochon's questions clearly but not Mr. Tacopina's. Opp. Br. (ECF 183) at 13. He claims

---

[4] This website now advertises the 2027 Epic Carnival Experience. Upon information and belief, the website content is substantially similar to the version that advertised the 2026 Epic Carnival Experience that Blackburn booked.

that "[n]arcotic medications do not produce uniform, global amnesia" but instead impairment that is "most severe under conditions of stress, compound questioning, and high cognitive load—precisely what Mr. Tacopina's rapid-fire, sarcastic, compound-question examination style represented." *Id.*

This theory fails for a simple reason: painkiller-induced "episodic, context-dependent, variable impairment" is not a thing. Blackburn cites no medical literature, scholarly articles, peer-reviewed journals, textbooks, or expert opinion to support this theory. Nor does Blackburn claim that any physician ever diagnosed him with this supposed condition or that he ever underwent any evaluation confirming such a phenomenon. That is because "episodic, context-dependent, variable impairment" appears to be a fiction invented by Blackburn for the sole purpose of explaining away his selective memory failures at his deposition. It does not appear to be a recognized medical concept. It is gobbledygook designed to obscure that Blackburn feigned impairment when it suited him and recovered when he needed to.

And even if such a condition existed, Blackburn does not identify a single compound question in the record that triggered his "episodic, context-dependent, variable impairment." He does not identify which questions were supposedly asked in "rapid-fire" succession. He does not explain what made any question cognitively demanding. His entire theory rests on a conclusory assertion that Mr. Tacopina's "examination style" was somehow categorically different from Judge Rochon's inquiry—yet the transcript shows that the questions Blackburn refused to answer were among the most basic imaginable: whether he could testify truthfully; whether he attended Dixon's deposition ten days earlier; whether he represents Dixon. These are not compound questions, let alone cognitively demanding ones. They are foundational questions that any

- 17-

witness—even one allegedly suffering from painkiller "episodic, context-dependent, variable impairment"—should be able to answer.

The contrast Blackburn highlights proves exactly the opposite of what he claims. When the Court asked, "Do you represent Mr. Dixon, Mr. Blackburn?", he responded instantly: "Yes, of course. Yeah." Siev Decl. Ex. 1 at 92:10-11. Yet when Mr. Tacopina asked the identical question just one hour earlier, Blackburn spent several minutes claiming he did not know: "So many cases, I don't know…. I don't have my records in front of me." *Id.* at 20:10-15. These were nearly identical question, asked within the same morning, yielding opposite answers depending on the questioner. That is evidence of selective evasion, not "episodic, context-dependent, variable impairment."

In short, Blackburn's "episodic, context-dependent, variable impairment" defense is a sham unsupported by any credible evidence, contradicted by his own conduct and representations, and built on a theory of "compound questioning" that is nowhere in the record. The Court should reject it entirely.

## IV.    Blackburn's Remaining Arguments Lack Merit

Blackburn's Opposition raises several additional arguments, none of which withstand scrutiny.

## A.  Blackburn's "Apology" Is Too Little Too Late

Blackburn places great weight on his on-the-record apology at the March 27, 2026 deposition, arguing it "most directly undermines the narrative that Mr. Blackburn acted with calculated, willful intent." The apology, however, is both belated and insufficient. It came more than a month after the February 24, 2026 Dixon deposition where the misconduct occurred, and, critically, three days after Mr. Cartagena filed this Motion. An apology offered only after litigation consequences become imminent is damage control, not evidence of genuine remorse. *See Lee v.*

*City of Troy*, 559 F. Supp. 3d 73, 84 (N.D.N.Y. 2021) (awarding sanctions against defense counsel stemming from his grossly inappropriate statement made to opposing counsel because, *inter alia*, his apology came only in response to the court's directive that he show cause as to why he should not be sanctioned).

Blackburn insists that "[h]e apologized for his intemperate remarks under oath at the very next deposition." Opp. Br. (ECF 183) at 27. This is false. Blackburn made homophobic, transphobic, sexist, and threatening remarks during Dixon's deposition on February 24. Far from "apologizing" at the "very next deposition," Blackburn doubled down on his transphobic remarks at his March 6 deposition. *See* Siev Decl. Ex. 1 at 56:12-18 ("**Q.** Do you remember asking Mr. Seigel what was the date of this transition surgery? **A.** He's -- he's having a transition? I thought he transitioned already."); *id.* Ex. 5 (video). He only "apologized" at the rescheduled March 27 deposition, a full month later.

Moreover, the apology itself is deficient. Blackburn did not accept responsibility for his conduct. He falsely blamed his medication, stating that "it was the effects of the medication at that time."[5] Blackburn's statement is an excuse dressed up as an apology. *See In re Sobolevsky*, 430 F. App'x 9, 18 (2d Cir. 2011) (sanctioning counsel despite his statements of regret and offering of "a thousand apologies" because counsel's actions gave "the [Grievance] Committee little confidence that he appreciates the significance of his conduct").

In any event, Blackburn's apology carries little weight given his litigation conduct in this case and his documented history of abusive behavior in other matters. *See* Mov. Br. (ECF 170) at 32-33 (documenting pattern of misconduct in other courts). His belated expressions of remorse

---

[5] Notably, Blackburn does not now argue that his conduct during Dixon's deposition is excusable because he was on medication.

cannot be separated from the pattern of misconduct that has characterized his professional conduct, both here and in other proceedings. *See id.*

### B. Mr. Cartagena Was Prejudiced By Defendants' Conduct

Blackburn does not dispute that Mr. Cartagena was prejudiced by Defendants' obstruction of Dixon's deposition. Instead, in a single paragraph buried under the non-sequitur heading "Plaintiff's Circumstantial Arguments Do Not Establish Bad Faith," Blackburn claims that Mr. Cartagena was not prejudiced by Blackburn's feigned impairment during his own deposition because the "deposition proceeded, testimony was obtained, and no contemporaneous motion was made to compel further answers or continue the examination." Opp. Br. (ECF 183) at 14.

Blackburn's argument fails. Because Blackburn was unable to provide any material testimony, Mr. Cartagena was forced to call the Court and adjourn the deposition until a later date. Siev Decl. Ex. 1 at 83:7-16, 86:3-6, 104:4-6. Mr. Cartagena was prejudiced by having to incur, among other things, costs to secure a court reporter and videographer for depositions that were effectively wasted; attorneys' fees preparing for Blackburn's scrapped deposition (and re-preparing for the rescheduled deposition); and attorneys' fees incurred in preparing, filing, and attending Court conferences regarding this Motion. ECF 168.

### C. Blackburn Applies the Wrong Legal Standard Under Fed. R. Civ. P. 37(b)

Blackburn baselessly argues that sanctions may not be imposed under Fed. R. Civ. P. 37(b) where the Court has not "previously entered an order compelling the deponent to answer a specific question or category of questions, which the deponent then disobeyed." Opp. Br. (ECF 183) at 10. This is incorrect. Rule 37(b) authorizes sanctions where the court "orders a deponent to be sworn or to answer a question and the deponent fails to obey." The Second Circuit has expressly declined to impose "a further requirement of formal and specific warnings before imposing" sanctions pursuant to Rule 37(b) beyond the requirement that the violation is of a "specific, previously

entered order." *Daval Steel Prods., Div. of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357, 1366 (2d Cir. 1991); *Dixon v. Albany County Bd. of Elections*, No. 08-CV-502, 2010 WL 1171225, at \*3 (N.D.N.Y. Feb. 18, 2010) (imposing sanctions under Rule 37(b) based on a party's failure to appear for a court-ordered deposition), *report and recommendation adopted*, 2010 WL 1171483 (N.D.N.Y. Mar. 22, 2010).

Blackburn's cited cases do not suggest otherwise. In *South New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010), the Second Circuit affirmed a sanctions order after the appellant failed to comply with certain "attachment and disclosure orders," not an order regarding depositions. 624 F.3d at 150. In so holding, the court *rejected* the appellant's argument that Rule 37 sanctions must be "specifically related to the particular 'claim' which was at issue in the order to provide discovery."

Blackburn's other authority is even further afield. In *Sakon v. Andreo*, 119 F.3d 109 (2d Cir. 1997), the Second Circuit held that a district court inappropriately imposed sanctions under Fed R. Civ. P. 54 (which concerns "judgments") because, among other things, there had been no final judgment. 119 F.3d at 113. *Sakon*'s only reference to Rule 37 is in a parenthetical to a case citation. In the cited case, *Satcorp Int'l Grp. v. China Nat'l Silk Imp. & Exp. Corp.*, 101 F.3d 3, 6 (2d Cir. 1996), the Second Circuit held that a fine was inappropriately imposed where the Court failed to hold a hearing or oral argument and therefore gave the sanctioned party "no indication of the fact that he might be fined or found in contempt." 101 F.3d at 6. That is not at issue in this case and says nothing about when Rule 37(b) authorizes sanctions.

**D. Blackburn Applies the Wrong Legal Standard for the Appointment of a Special Master Under Fed. R. Civ. P. 53 and Understates His Conduct Warranting Such Relief**

Blackburn argues that a special master is not warranted because of "[o]ne medicated deponent at one deposition, and one contentious deposition at which both parties' conduct was

improper[.]" Opp. Br. (ECF 183) at 16. Blackburn again misstates the law and drastically understates his pervasive misconduct.

As to the law, Fed. R. Civ. P. 53 authorizes the Court to appoint a special master to, among other things, "hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by . . . some exceptional condition" or to "address pretrial . . . matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Blackburn purports to amend Rule 53 to add an additional requirement: "such relief is 'narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary.'" Opp. Br. (ECF 183) at 16 (quoting 18 U.S.C. § 3626(a)(1)(A)). Blackburn derives his purported rule from a provision of the Prisoner Litigation Reform Act ("**PLRA**") governing remedies in prison conditions. *Id.* (citing 18 U.S.C. § 3626(a)(1)(A) and *Hyers v. Martuscello*, No. 9:24-cv-00962 (AMN/CFH), 2025 U.S. Dist. LEXIS 20358 (N.D.N.Y. Feb. 5, 2025), which concerned a deceased prisoner's appointment of a special master to "oversee the preservation of evidence and conduct an independent investigation of the circumstances surrounding" the prisoner's death).[6] Mr. Cartagena is not aware of any case that has imported the "least intrusive means necessary" requirement of the PLRA onto Fed. R. Civ. P. 53 in a case unrelated to the PLRA.

As to the facts, Blackburn completely ignores the history of this case. A special master is warranted because of Blackburn's abhorrent conduct at Dixon's deposition and his deceitful conduct at his own depositions. It is also warranted because, as detailed in at least *six* discovery letters that Mr. Cartagena has had to file with this Court, leading to at least *four* separate warnings

---

[6] Blackburn's citation to *Hyers* is incorrect and appears to have been generated by A.I. It is actually to *Bruno Project Rescue Inc. v. Department of Health and Human Services*, No. 24-cv-11552-DJC, 2025 U.S. Dist. LEXIS 116328 (D. Mass. June 18, 2025), which has nothing to do with special masters.

from this Court, Blackburn has proven time and again that he has no intention of engaging in the discovery process or following this Court's directives in the absence of a present judicial authority. Far afield from Blackburn's unsupported proposition that special masters are typically "reserved for circumstances warranting supervision of a post-judgment injunction," Opp. Br. (ECF 183) at 15, special masters are also frequently employed in the presence of a repeatedly recalcitrant party or attorney. *See, e.g.*, *EEOC v. Local 580, Int'l Ass'n of Bridge, etc.*, 669 F. Supp. 606, 624 (S.D.N.Y. 1987) (appointing special master where defendant had history of "fail[ing] to comply with . . . court orders," and finding "defendants' claim of impecuniousness unconvincing"); *Calloway v. Marvel Entm't Grp.*, No. 82 Civ. 8697 (RWS), 1985 U.S. Dist. LEXIS 16588, at *2 (S.D.N.Y. Aug. 22, 1985) (appointing special master to supervise a continued deposition where a "long series of discovery disputes" had "arisen during the litigation," and counsel for the deponent obstructed the initial deposition); *Park-Tower Dev. Grp., Inc. v. Goldfeld*, 87 F.R.D. 96, 97 (S.D.N.Y. 1980) (noting the appointment of a special master to oversee depositions where defense counsel had "continu[ously] disgregard[ed] . . . the right of his opposing counsel to obtain discovery").

### E. Blackburn Fails To Show An Inability to Pay For the Costs and Fees He Unnecessarily Caused Mr. Cartagena to Incur

Blackburn argues that his ability to pay is an equitable consideration this Court may weigh in calibrating any award should it decide to impose a monetary sanction. Opp. Br. (ECF 183) at 17. This conclusory assertion is insufficient. *See e.g., Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) ("The alleged contemnor bears the burden of producing evidence of his inability to comply" and "[c]onclusory statements are inadequate to carry this burden"). Blackburn offers no evidence whatsoever of his financial circumstances that would allow this Court to assess his actual ability to pay. Nor does he provide any affidavit or declaration attesting to his financial

- 23-

condition. To the contrary, Blackburn's cosmetic surgery (ECF 150-2) and $8,896.00 cruise (ECF 147-1) are strong indicia that Blackburn has sufficient means to pay for the costs and fees he unnecessarily caused Mr. Cartagena to incur.

**V.     Blackburn's Motion For Sanctions Is Baseless**

Rather than defend his documented homophobic slurs, transphobic remarks, sexist comments, ethnic slurs, threats of violence, and obstruction of the deposition process, Blackburn asks the Court to sanction Mr. Cartagena and his counsel. His first two arguments, that Mr. Cartagena violated the Court's Protective Order by leaking deposition transcripts and withholding them from Blackburn, are meritless for the reasons discussed above. *See supra* Section II. His third argument, that Mr. Tacopina violated Fed. R. Civ. P. 30(d) during Blackburn's March 27 deposition, is equally without merit.

Under Rule 30(d), the Court may impose sanctions "on a person who impedes, delays, or frustrates the fair examination of the deponent." Moreover, a party seeking sanctions for a violation of Rule 30 must demonstrate prejudice resulting from the alleged misconduct. *See Townsquare Media, Inc. v. Regency Furniture, Inc.*, No. 21-CV-4695, 2022 WL 4538954, at *10 (S.D.N.Y. Sept. 28, 2022) (concluding Rule 30 was not violated where the witnesses' testimony did not "prejudice or hinder" defendants "and thus [did] not give rise to sanctions").

Blackburn presents no evidence—because none exists—that Mr. Tacopina impeded Blackburn's deposition in any way. Similarly, Blackburn's Opposition is glaringly silent as to any prejudice resulting from Mr. Tacopina's conduct during the March 27 deposition. To the contrary, the record reveals that Blackburn himself was the sole source of delay and obstruction.

Throughout his deposition, Blackburn engaged in a calculated effort to manufacture a false record that Mr. Tacopina was "yelling" in a transparent attempt to create a basis for the very sanctions motion he now brings. The record contradicts this fabrication. Mr. Tacopina repeatedly

denied any such yelling and invited verification: Blacburn Decl. Ex. 3 202:23 ("I was not yelling");
*id.* at 68:13-20 ("Sir, I'm not yelling….Well, there's a video that will determine if I'm yelling, but
that's okay…."); *id.* at 131:25 ("That's really not yelling"); *id.* at 161:22-23 ("I'm not yelling
again"). Tellingly, Blackburn has produced no video evidence substantiating his accusations,
because the video would expose his fabrications.

Lacking any actual evidence, Blackburn resorts to the claim that Mr. Tacopina "*admitted*"
to yelling. The video record demonstrates otherwise. Mr. Tacopina's statement was plainly
facetious, made in response to Blackburn's repeated bad-faith attempts to create a misleading
record. Siev Reply Decl. Ex. 3. This is precisely the kind of gamesmanship that has defined
Blackburn's conduct throughout this litigation.

That Blackburn now professes offense at being called a "clown" is particularly telling. This
is the same attorney who, on the record, made transphobic remarks asking Mr. Seigel about his
"transition surgery" and referring to his purported "husband"; who made the vulgar comment that
Mr. Seigel's mother "should have spit you out instead of swallowing"; who made the sexist remark
that Mr. Seigel's "tampon is [wet or something]"; and who directed the ethnic slur "Joe Taco Face"
at Mr. Tacopina. That Blackburn believes himself entitled to demand sanctions because he was
called a "clown," while refusing to address any of his own documented misconduct, reveals the
frivolous nature of his cross-motion. Mr. Tacopina's frustration was entirely understandable given
Blackburn's false accusations on the record that Mr. Tacopina was yelling and invading Mr.
Blackburn's space. Blackburn Decl. Ex. 3 at 187:18-22, 188:2-5. Indeed, Mr. Tacopina's
comments were directed at Blackburn's well-documented pattern of misconduct in this and other
cases. *Id.* at 188:12-13 ("I mean, you're being sanctioned in every court you ever appeared in");

*id.* at 188:15-16 ("you're under indicted for running over our process server"); *id.* at 18-19 ("You told him this: 'Mother should spit instead of swallow'").

Finally, Blackburn argues that Mr. Tacopina falsely accused him of being indicted for "running over our process server" without "any documentation or actual predicate established on the record." Opp. Br. (ECF 183) at 23. This argument is remarkable in its audacity. Blackburn is, in fact, under indictment for running over Mr. Cartagena's process server. *People v. Tyrone Blackburn*, Indictment-75222-25/001 (Oct. 20, 2025). That Blackburn would cite this truthful statement as a basis for sanctions, while ignoring his own pattern of documented misrepresentations to this and other courts, epitomizes the bad faith that pervades his opposition and underscores precisely why this Court should grant Mr. Cartagena's motion and deny Blackburn's frivolous cross-motion in its entirety.

## Conclusion

For these reasons, the Court should grant Mr. Cartagena's motion for sanctions and deny Blackburn's motion for sanctions.

- 26-

- 27-

Dated:  April 15, 2026
         New York, New York

/s/ Jordan W. Siev
Joseph Tacopina
Chad Seigel
**Tacopina Seigel & DeOreo**
275 Madison Avenue, 35th Floor
New York, New York 10016
212-227-8877
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com

**Of Counsel:**

Jordan W. Siev
Ian M. Turetsky
**Reed Smith LLP**
599 Lexington Avenue, 22nd Floor
New York, New York 10022
212-205-6087
jsiev@reedsmith.com

**<u>WORD CERTIFICATION</u>**

According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Rule 7.1(c), is 7,840 words. Under Local Rule 7.1(c), "briefs in support of and in response to a motion (except for motions for reconsideration) may not exceed 8,750 words, and reply briefs may not exceed 3,500 words." Because this Memorandum of Law serves as an omnibus opposition to a motion and a reply to a motion, I hereby certify that the word count of this Memorandum of Law complies with the word limit of Local Rule 7.1(c).

Dated: New York, New York
      April 15, 2026

*/s/ Jordan W. Siev*
Jordan W. Siev