UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH CARTAGENA,
                              *Plaintiff*,
v.
TERRANCE DIXON,
TYRONE BLACKBURN, and
T.A. BLACKBURN LAW, PLLC,
                              *Defendants*.

Civil Action No. 25-cv-03552

DECLARATION OF
TYRONE A. BLACKBURN

I am the principal attorney of T.A. Blackburn Law, PLLC, and a named defendant in this action.

1.  I submit this declaration in response to the personal attacks, false characterizations, and irrelevant innuendo contained in Plaintiff's opposition papers.

2.  Plaintiff's counsel has introduced into the record a series of statements about my medical condition, a pre-paid personal trip, my litigation activity in other matters, and an alleged recreational trip to Trinidad — none of which have any bearing on the legal questions before this Court. I address each in turn, under oath, so that the record reflects the truth.

3.  On January 23, 2026, I underwent a medical procedure performed by my treating physician.

4.  A further procedure was performed on February 3, 2026.

5.  Both procedures were medically necessary.

6.  The nature of my medical care is a private matter protected by well-established principles of medical privacy. Plaintiff's characterization of my procedures in his papers is not only factually inaccurate — it is gratuitous, irrelevant to any legal issue in this case, and appears designed exclusively to embarrass me and to generate material for media outlets sympathetic to Plaintiff.

7.  The specific nature of the procedures I underwent has no bearing whatsoever on the conduct of counsel at any deposition in this case. Plaintiff's references to my surgeries serve no legitimate litigation purpose and warrant no further dignity from this Court.

8.  Following my procedures, I was prescribed pain management medication by my treating physician.

9.  I am not a person who regularly consumes alcohol, narcotics, or other mind-altering substances.

10. As a result, the pharmacological effects of this medication on me were more pronounced than they would be on a person with a different tolerance history.

11. I have pharmacy records and a written prescription from my treating provider confirming the name, dosage, and duration of my treatment regimen, which I am prepared to produce at an evidentiary hearing if the Court so directs.

12. The February 24, 2026, deposition of Terrance Dixon occurred just twenty-one days after my second procedure on February 3, 2026, while I was still within my post-surgical recovery period and actively taking prescribed medication.

13. Plaintiff's characterization that I "falsely blamed" my medication for my demeanor at that deposition is both inaccurate and unsupported.

14. Plaintiff's assertion that I 'falsely blamed' my medication is not based on any medical evidence, expert opinion, or contemporaneous documentation in his possession. It is pure speculation offered as established fact. Courts in this Circuit have held that sworn statements regarding impairment should not be rejected in favor of speculation absent actual evidence contradicting the claimed impairment. Min v. Target Stores, 553 F.Supp.2d 218, 223 (E.D.N.Y. 2008). Plaintiff has offered no such evidence. His characterization is accordingly entitled to no weight.

15. I acknowledge that by citing my medical condition as context for my conduct at the February 24, 2026, deposition, I have placed the narrow question of medication effects on that date at issue. What I have not placed at issue — and what no rule of procedure authorizes — is the specific nature of my surgical procedures, the intimate details of my medical care, or the fabrication of a carnival narrative built on the incidental fact that a pre-paid cruise included a stop in Trinidad.

16. The legitimate scope of inquiry is limited to the narrow question of whether prescribed medication affected my cognition on February 24, 2026.

17. Speculation about surgical details and fabricated personal narratives fall entirely outside that scope. Bray v. Purple Eagle Entertainment, Inc., No. 18CIV5205GBDHBP, 2019 WL 1549044 (S.D.N.Y. Jan. 18, 2019). (distinguishing between personal information legitimately connected to the issues in dispute and personal attacks that are 'amorphous, unspecific, cannot be defended against, and could harm the defendant in the public eye').

18. My portion of the Caribbean cruise referenced in Plaintiff's papers was booked and fully paid for in or around the first quarter of 2025 — nearly one year before my January 23, 2026, procedure and nearly one year before the depositions at issue in this case.

2

19. The cruise was a passenger itinerary. It did not require physical exertion, athletic activity, or any participation incompatible with post-surgical recovery. A passenger on a scheduled cruise — confined largely to a ship's accommodations — is not engaged in the kind of strenuous activity Plaintiff's papers imply. The relevant question is not whether I traveled, but whether the nature of that travel contradicts my account of my medical condition. It does not.

20. I have booking confirmation and payment records establishing this timeline. This was a pre-existing personal commitment that I had made and paid for well before any of the events giving rise to the sanction's motions now before the Court.

21. It was not a spontaneous vacation taken in response to litigation pressure, and it was not cancellable without full forfeiture of the funds I had paid. The cruise itinerary included a stop in Trinidad.

22. Plaintiff's papers assert or imply that I was "partying" at the Trinidad Carnival.

23. This allegation is not only false — it is physically impossible. I had undergone a surgical procedure on January 23, 2026, followed by a second procedure on February 3, 2026.

24. I was in post-surgical recovery and on prescribed pain management medication during the period in question.

25. A person twenty-one days removed from a second surgical procedure, actively recovering and taking narcotic medication prescribed by a physician, is not physically capable of participating in a carnival. Especially, Trinidad Carnival.

26. The suggestion that I did so is not a mischaracterization — it is medically and physically absurd. The allegation was never supported by any evidence because no evidence exists.

27. It was manufactured whole cloth and inserted into federal court papers for the purpose of generating tabloid coverage, not for any purpose cognizable under the Federal Rules of Civil Procedure.

28. The fact that the cruise itinerary included Trinidad does not place me at the Trinidad Carnival.

29. Plaintiff's counsel conflated the existence of a pre-paid cruise — booked a year in advance, documented, and paid for long before any deposition in this case — with a fabricated narrative of a recovering post-surgical attorney "partying" at a carnival.

30. That conflation is not a good-faith argument. It is an attempt to construct a false and humiliating image of me for an audience that has nothing to do with this litigation.

3

31. Plaintiff's papers make reference to motions or documents I filed in other, unrelated cases and suggest that these filings reflect some form of improper conduct.

32. In the period following my procedures on January 23, 2026, and February 3, 2026, and during my recovery, I continued to meet my obligations to other clients and courts.

33. Several documents that were filed in other matters during the post-surgical period had been drafted prior to my surgeries.

34. In some instances, these were pre-surgery documents that required resubmission to satisfy procedural requirements in those cases — not new work product generated while I was recovering.

35. The filing of documents in unrelated cases is not evidence of anything. It is routine practice.

36. Plaintiff's effort to use my litigation activity in other courts to draw inferences about my conduct or credibility in this case is an improper conflation of unrelated matters and is unsupported by any legal authority.

37. Plaintiff may argue that my continued filing of documents in other cases during the recovery period contradicts my medication defense, relying on authority such as In re Emanuel, 422 B.R. 453 (S.D.N.Y. 2010). That reliance is misplaced. The documents filed in other matters during my recovery were pre-drafted submissions requiring only ministerial resubmission — not complex new legal work requiring sustained real-time recall, judgment, and responsiveness under examination.

38. There is a material difference between resubmitting a prepared filing and conducting a live deposition. Plaintiff conflates these two categories to manufacture a contradiction that does not exist.

39. It is apparent from the totality of Plaintiff's papers that the personal attacks contained therein are not addressed to this Court.

40. They are addressed to an audience outside this proceeding. This litigation has been accompanied by a sustained and coordinated media campaign — involving blogs, tabloids, and social media platforms — that has published coverage derived from confidential discovery materials in this case in apparent violation of this Court's Protective Order of December 8, 2025.

41. Plaintiff's counsel's decision to introduce inflammatory personal characterizations about my medical procedures, a pre-paid cruise, the nature of my filings in other cases, and a fabricated

4

Trinidad Carnival narrative appears calculated to provide additional fodder for that same media apparatus.

42. The personal attacks in Plaintiff's papers call directly for the exercise of this Court's inherent authority. The legal standard for intervention requires only that the challenged conduct serve no proper purpose before the Court and be motivated by an improper purpose such as harassment. Blum v. Schlegel, Not Reported in F.Supp. (W.D.N.Y. 1996). That standard is satisfied here.

43. In Blum v. Schlegel, Not Reported in F.Supp. (W.D.N.Y. 1996), a district court within the Second Circuit found that "personal attacks on opposing counsel" that were "spiteful and vindictive" constituted bad faith conduct warranting the exercise of the court's inherent sanctioning power, finding that the "improper purpose of harassing and intimidating opposing litigants" motivated the attorney's conduct. The court made clear that conduct that is "entirely without color and motivated by improper purpose" justifies use of the court's inherent authority to sanction. Blum v. Schlegel, Not Reported in F.Supp. (1996). The personal attacks in Plaintiff's papers — speculating about the nature of my surgical procedures, fabricating a carnival narrative, and mining my private medical recovery for litigation ammunition — are precisely the type of conduct that Blum identifies as warranting the court's inherent power. They are entirely without color. They serve no legitimate argument. They are motivated solely by the improper purpose of harassment.

44. Courts in several of my cases have immediately intervened during similar inappropriate inquiries into my health. The Honorable Leo Gordon (Gardner v. Combs, 2:2024-cv-07729), and the Honorable James B. Clark (Kertesz v. Colony Tire, et al., 2:20-cv-12364) have each, in their respective courts, terminated lines of inquiry by opposing counsel that were less invasive than what Plaintiff's papers contain here, upon finding that such inquiries were designed to harass rather than to advance any legitimate litigation objective. In both instances, the Court shut down the inquiries before the first sentence was complete.

45. The standard for intervention is not whether the attack is the most offensive one imaginable — it is whether the attack serves any proper purpose before the Court.

46. Plaintiff's medical procedure speculation and fabricated carnival narrative do not meet that standard.

5

47. They have never met that standard. Plaintiff's counsel has operated without judicial check on this conduct, and it has continued to escalate as a result.

48. I have rejected countless media request for response to these baseless attacks. I have denied television appearances, and documentary interview requests.

49. I respectfully urge this Court to exercise its inherent authority under <u>Blum</u> and its authority under Rule 11 to strike or disregard all references in Plaintiff's papers to the speculative nature of my medical procedures and to the fabricated Trinidad Carnival allegation, and to make clear on the record that such conduct will not be tolerated in proceedings before this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 22, 2026
Brooklyn, New York

Respectfully submitted,

*/s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC

6