## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **JOSEPH CARTAGENA**, <br><br> *Plaintiff*, <br><br> v. <br><br> **TERRANCE DIXON, TYRONE BLACKBURN, and T.A. BLACKBURN LAW, PLLC,** <br><br> *Defendants*. | Civil Action No. 25-cv-03552 |
| **TERRANCE DIXON, a/k/a "TA,"** <br><br> *Plaintiff*, <br><br> v. <br><br> **JOSEPH ANTONIO CARTAGENA p/k/a "FAT JOE," PETER "PISTOL PETE" TORRES, RICHARD "RICH PLAYER" JOSPITRE, ERICA JULIANA MOREIRA, SNEAKER ADDICT TOURING LLC, SLATE, INC., ROC NATION, LLC, JOHN DOES 1-10, JANE DOES 1-10, AND ABC CORPORATIONS 1-10,** <br><br> *Defendants*. | Civil Action No. 25-cv-05144 <br><br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS JOSEPH CARTAGENA, PETER TORRES, RICHARD JOSPITRE, ERICA MOREIRA, SNEAKER ADDICT TOURING LLC AND SLATE INC.'S OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF TERRANCE DIXON'S AMENDED COMPLAINT**

Jordan W. Siev
Ian M. Turetsky
**REED SMITH LLP**
599 Lexington, 22nd Floor
New York, New York 10022
jsiev@reedsmith.com
212-205-6085

Joseph Tacopina
Chad Seigel
**TACOPINA SEIGEL & DEOREO**
275 Madison Avenue, 35th Floor
New York, New York 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
212-227-8877

*Attorneys for Defendants Joseph Antonio Cartagena, Slate, Inc., Sneaker Addict Touring LLC*

Reed Brodsky
Michael L. Nadler
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
rbrodsky@gibsondunn.com
mnadler@gibsondunn.com

*Attorneys for Defendant Erica Moreira*

David H. Wollmuth
Adam M. Bialek
Phillip R. Schatz
Russell B. Filip
**WOLLMUTH MAHER & DEUTSCH LLP**
500 Fifth Avenue
New York, NY 10110
dwollmuth@wmd-law.com
abialek@wmd-law.com
pschatz@wmd-law.com
rfilip@wmd-law.com

*Attorneys for Defendants Richard Jospitre and Peter Torres*

## TABLE OF CONTENTS

**Page(s)**

Preliminary Statement..................................................................................................... 1

Statement of Facts........................................................................................................... 7

I.     Dixon Alleges He Was Cartagena's "Creative Partner" From 2005 To 2020................... 7

II.    Dixon Claims He Continued Collaborating With Cartagena Despite Never Receiving The Royalties Or Full Performance Fees He (Falsely) Claims Cartagena "Orally" Promised Him ............................................................................. 8

III.   Dixon Stops Working With Cartagena In 2020 And, Three Years Later, Begins Harassing Him ................................................................................................. 9

IV.   Dixon Retains Counsel Who Transforms A Simple Royalty And Performance Fee Dispute Into A Sprawling Sex Trafficking, Human Trafficking, And RICO Complaint Involving Cartagena, His Businesses, And Associates.................................... 9

V.    Dixon Files This Lawsuit Against Cartagena, His Businesses, and Associates .............. 10

Legal Standard ............................................................................................................... 10

Argument ....................................................................................................................... 11

I.    Dixon's Claims Under The New York Labor Law (Count I, II, and V) Fail To State A Claim.......................................................................................................... 11

     A.    Dixon's Claims Under the New York Labor Law (Counts I, II, and V) Fail Because the NYLL Does Not Cover Independent Contractors .......................... 11

     B.    Dixon's Claim Under Sections 193 and 198 of the New York Labor Law (Count I) Fails to State a Claim and is Largely Time-Barred............................. 12

            1.    Before 2021, the alleged failure to pay wages was not covered by Sections 193 and 198 ........................................................................... 12

            2.    The six-year statute of limitations bars Dixon's claims under Sections 193 and 198 for wages allegedly owed before June 19, 2019...................................................................................................... 15

     C.    Dixon's Claims Under Section 195 of the NYLL (Notice and Record Keeping Requirements) (Count II) Fail For Being Time-Barred and Failing to State a Plausible Claim .................................................................... 16

            1.    Dixon has no standing to assert a claim under Section 195(1), which, in any case, is time-barred.......................................................... 16

            2.    Dixon's claim under Section 195(3) fails to state a claim and is largely time-barred.................................................................................. 17

     D.    Dixon's Retaliation Claim (Count V) Does Not State a Plausible Claim............ 18

VI.   Dixon Fails To State A Plausible Or Timely Claim Under The TVPA (Count III)........ 20

     A.    Dixon Fails to State a Plausible Sex Trafficking Violation.............................. 21

i

B.      Dixon Fails to State a Plausible Forced Labor Violation ................................... 24

C.      Dixon Fails To Plead Venture Liability................................................................. 29

VII.    Dixon's Copyright Claim Of Co-Ownership of Musical Works Is Time-Barred
        And He Lacks Standing To Bring An Infringement Claim (Count IV) ......................... 30

A.      Dixon's Claim of Co-Ownership.................................................................. 30

        1.      Dixon's co-ownership claim is time-barred............................................. 30

        2.      Dixon has sued the wrong parties ............................................................ 32

B.      Dixon Lacks Standing to Bring His Alternative Claim of Infringement ............ 32

VIII.   Dixon Fails To State A Plausible Or Timely Claim For Fraudulent Concealment
        (Counts VI) .................................................................................................. 33

A.      Dixon's Fraudulent Concealment Claim is Time-Barred ................................... 33

B.      Dixon Fails to Sufficiently Plead the Existence of a Duty to Disclose .............. 34

C.      Dixon Fails to Sufficiently Plead That Any Alleged Concealed Fact Was
        Material or That Dixon Relied on Any Alleged Concealed Fact......................... 36

D.      Dixon's Fraudulent Concealment Claim Fails to State a Claim Under Rule
        9(b)..................................................................................................... 37

IX.     Dixon's Unjust Enrichment Claim (Count VII) Fails To Plead A Plausible Claim
        And Is Time-Barred ............................................................................................. 38

A.      Dixon's Unjust Enrichment Claim Relating to His Alleged Contributions to
        Cartagena's Music is Preempted by Federal Law and Barred by the Statute
        of Limitations................................................................................................ 39

        1.      Dixon's unjust enrichment claim relating to his alleged
                contributions to Cartagena's music is preempted by the Copyright
                Act......................................................................................... 39

        2.      Dixon's unjust enrichment claim relating to musical works is time-
                barred ..................................................................................... 40

B.      Dixon's Unjust Enrichment Claim Relating to His Alleged Failure to
        Receive His Full Performance Fees is Barred Because He Fails to Plead a
        Basis For Recovery Absent a Contract and the Claim is Barred by the
        Statute of Limitations....................................................................................... 41

        1.      Dixon fails to plead any basis for unjust enrichment other than a
                contract.................................................................................... 41

        2.      Dixon's unjust enrichment count relating to his alleged failure to
                receive his full performance fees is barred by the statute of
                limitations ............................................................................... 42

C.      Dixon's Unjust Enrichment Claim is Duplicative of His Fraudulent
        Concealment Claim........................................................................................... 43

ii

X.      Dixon Fails To State Plausible Or Timely Claims For Aiding And Abetting Fraud
        And Wage Theft (Counts VIII and IX)...............................................................................43

XI.     Dixon Fails to State a Plausible or Timely Civil Assault Claim (Count XI)...................44

        A.      Most of Dixon's Civil Assault Claims are Barred by the Statute of
                Limitations .................................................................................................................44

        B.      None of Dixon's Allegations State a Claim for Civil Assault ............................46

                1.      None of Dixon's allegations against Torres state a claim for civil
                        assault................................................................................................................47

                2.      None of Dixon's allegations against Cartagena state a claim for
                        civil assault......................................................................................................48

XII.    Dixon's Fraudulent Conveyance Claim (Count XII) Fails To State A Plausible
        Claim And Is Time-Barred .............................................................................................49

        A.      Each of the Alleged Fraudulent Transfers Are Either Time-Barred or Not
                Covered By the NYDCL.............................................................................................50

        B.      Dixon's Claim Under Sections 273, 273-1, 274, and 275 Fail Because
                Dixon Fails to Allege Any Facts That Would Imply That the Alleged
                Transfers Were Made Without Consideration .......................................................51

        C.      Dixon's Claim Under Section 273 Fails Because He Has Failed to Plead
                Any Facts That Would Establish Insolvency at the Time of Transfers or
                That the Transfers Rendered Any Person or Entity Insolvent ............................52

        D.      Dixon's claim under Section 273-a Fails Because He Has Failed to Plead
                That a Judgment Has Been Entered In His Favor and Not Paid..........................52

        E.      Dixon's Claims Under Sections 274 and 275, to the Extent He Intended to
                Make Them, Fail Because He Does Not Mention These Statutes in the Body
                of the Amended Complaint and He Pleads No Facts to Support Them...............53

        F.      Dixon Has Failed to Plead Fraud With Particularity and, Therefore, His
                Claim Under Section 276 Fails.................................................................................53

XIII.   Dixon Should Not Be Allowed To Replead His Fundamentally Flawed Complaint ......55

Conclusion .................................................................................................................................56

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*380544 Can., Inc. v. Aspen Tech., Inc.*,
544 F. Supp. 2d 199 (S.D.N.Y 2008)......................................................................11

*Abuladze v. Apple Commuter Inc.*,
No. 22-cv-8684, 2024 U.S. Dist. LEXIS 21903 (S.D.N.Y. Jan. 23, 2024),
*R&R adopted*, 2024 U.S. Dist. LEXIS 21060  (S.D.N.Y. Feb. 7, 2024)................................16

*Adams v. Labaton, Sucharow & Rudoff LLP*,
No. 07-cv-7017, 2009 U.S. Dist. LEXIS 35085 (S.D.N.Y. Mar. 20, 2009)............................36

*Alnwick v. European Micro Holdings, Inc.*,
281 F. Supp. 2d 629 (E.D.N.Y. 2003) ......................................................................54

*Alvaro v. Faracco*,
927 N.Y.S.2d 366 (2d Dep't 2011).........................................................................55

*Amable v. New Sch.*,
551 F. Supp. 3d 299 (S.D.N.Y. 2021)......................................................................41

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................10

*Baiul v. NBC Sports*,
708 F. App'x 710 (2d Cir. 2017) ........................................................................39, 40

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................10, 11

*Big E. Entm't, Inc. v. Zomba Enter.s*,
453 F. Supp. 2d 788 (S.D.N.Y. 2006).......................................................................31

*Boutsikakis v. Tri-Borough Home Care, Ltd.*,
No. 15-cv-5833, 2023 U.S. Dist. LEXIS 63631 (E.D.N.Y. Apr. 11, 2023)............................13

*Bouveng v. NYG Cap. LLC*,
No. 14-cv-5474, 2015 U.S. Dist. LEXIS 70976 (S.D.N.Y. June 1, 2015) ............................46

*Bridgeport Music Inc. v. TufAmerica Inc.*,
No. 23-7386-cv, 2024 U.S. App. LEXIS 30328 (2d Cir Dec. 2, 2024).............................30, 31

*Brown v. Montefiore Med. Ctr.*,
No. 18-cv-03861, 2019 U.S. Dist. LEXIS 78915 (S.D.N.Y. May 8, 2019) ...........................46

iv

*Bryant v. Comm'r of Soc. Sec.*,
   No. 14-cv-5764, 2017 U.S. Dist. LEXIS 37044 (S.D.N.Y. Mar. 15, 2017) ............................34

*Burrowes v. Combs*,
   No. 25-cv-7795 (S.D.N.Y. April 27, 2026) ...........................................................................2

*C.C. v. Jamal F. Rashid*,
   No. 2:23-cv-02056, 2025 U.S. Dist. LEXIS 122420 (D. Nev. June 26, 2025) .................21, 25

*Cartagena v. Dixon*,
   No. 25-cv-3552 (S.D.N.Y. April 24, 2026) ............................................................................2

*Castro v. Local 1199*,
   964 F. Supp. 719 (S.D.N.Y. 1997)........................................................................................46

*CFCU Cmty. Credit Union v. Hayward*,
   552 F.3d 253 (2d Cir. 2009)..................................................................................................14

*City of New York v. FedEx Ground Package Sys., Inc.*,
   91 F. Supp. 3d 512 (S.D.N.Y. 2015)......................................................................................15

*Cohen v. Am. Airlines, Inc.*,
   13 F.4th 240 (2d Cir. 2021) .................................................................................................44

*Cohen v. S.A.C. Trading Corp.*,
   711 F.3d 353 (2d Cir. 2013)..................................................................................................40

*Doe (S.J.C.) v. Esa P Portfolio LLC*,
   No. 1:24-cv-02423, 2024 U.S. Dist. LEXIS 207479 (N.D. Ga. Nov. 15, 2024)....................23

*Don Lia v. Saporito*,
   909 F. Supp. 2d 149 (E.D.N.Y. 2012) ..................................................................................42

*Dozier v. Deutsche Bank Tr. Co. Ams.*,
   No. 09-cv-9865, 2011 U.S. Dist. LEXIS 100467 (S.D.N.Y. Sept. 1, 2011) ..........................18

*Dumapias v. Haybyrne*,
   No. 1:20-cv-00297, 2020 U.S. Dist. LEXIS 253331 (E.D. Va. Nov. 2, 2020) ......................22

*EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*,
   724 F. Supp. 3d 340 (S.D.N.Y. 2024)....................................................................................44

*Elgalad v. N.Y.C Dep't of Educ.*,
   No. 17-cv-4849, 2019 U.S. Dist. LEXIS 170211 (S.D.N.Y. Sept. 30, 2019) ........................55

*In re Fabrikant & Sons, Inc.*,
   394 B.R. 721 (Bankr. S.D.N.Y. 2008)...................................................................................54

*In re Fabrikant & Sons, Inc.*,
    480 B.R. ...................................................................................................................54

*Farash v. Cont'l Airlines, Inc.*,
    574 F. Supp. 2d 356 (S.D.N.Y. 2008), *aff'd,* 337 F. App'x 7 (2d Cir. 2009).........................46

*Fersel v. Paramount Medical Services, P.C.*,
    No. 18-cv-2448, 2022 U.S. Dist. LEXIS 195010 (E.D.N.Y. Oct. 26, 2022).........................13

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)........................................................................... *passim*

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC et al.*,
    586 U.S. 296 (2019).................................................................................4, 6, 26, 32

*Frances v. Klein*,
    218 N.Y.S.3d 326 (1st Dep't 2024) .....................................................................13

*Frost v. Lentex Company, LLC*,
    No. 21-cv-4843, 2022 U.S. Dist. LEXIS 231948 (S.D.N.Y. Dec. 27, 2022) .........................13

*Frybergh v. Weissman*,
    536 N.Y.S.2d 465 (2d Dep't 1988).......................................................................52

*Gardner v. Combs*,
    No. 24-cv-7729 (D.N.J. May 7, 20260) ..................................................................2

*Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*,
    716 F.3d 302 (2d Cir. 2013)................................................................................30

*Geo-Group Comms., Inc. v. Chopra*,
    No. 15-cv-1756, 2016 U.S. Dist. LEXIS 98716 (S.D.N.Y. July 27, 2016)..........................53

*Gold v. N.Y. Life Ins. Co.*,
    730 F.3d 137 (2d Cir. 2013)................................................................................14

*Goldman v. Barrett*,
    No. 15-cv-9223, 2017 U.S. Dist. LEXIS 117339 (S.D.N.Y. July 25, 2017)..........................17

*United States ex rel. Gordon v. Shiel Med. Lab'y*,
    No. 16-cv-1090, 2025 U.S. Dist. LEXIS 59439 (E.D.N.Y. Mar. 29, 2025)..........................38

*H. Roske & Assocs., LLP v. Burghart*,
    No. 657328/2017, 2020 N.Y. Misc. LEXIS 826 (Sup. Ct. NY Feb. 21, 2020) ......................12

*Harbinger Capital Partners LLC v. Deere & Co.*,
    632 F. App'x 653 (2d Cir. 2015) .........................................................................35

*Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*,
    585 F. Supp. 3d 405 (S.D.N.Y. 2022)..................................................................43

*Hart v. Rick's Cabaret Int'l., Inc.*,
    967 F. Supp. 2d 901 (S.D.N.Y. 2013).................................................................11

*Hasan v. Terrace Acquisitions II, LLC*,
    203 N.Y.S.3d 325 (1st Dep't 2024) .....................................................................14

*Hernandez Technology, Inc. v. Rivera*,
    237 N.Y.S.3d 317 (4th Dep't 2025) ...............................................................13, 14

*Herrera v. Comme Des Garçons, Ltd.*,
    No. 21-cv-4929, 2024 U.S. Dist. LEXIS 186715 (S.D.N.Y. Sept. 11, 2024) ........................16

*Holloway v. King*,
    361 F. Supp. 2d 351 (S.D.N.Y 2005), *aff'd* 161 F. App'x 122 (2d Cir. 2005)..................35, 42

*Innovative Custom Brands, Inc. v. Minor*,
    No. 15-cv-2955, 2016 U.S. Dist. LEXIS 8354 (S.D.N.Y. Jan. 25, 2016*)* ..............................53

*Island Software and Comput. Serv., Inc. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005)..................................................................................8, 31

*Jian Zhong Li v. Oliver King Enterps., Inc.*,
    No. 14-cv-9293, 2015 U.S. Dist. LEXIS 102597 (S.D.N.Y. Aug. 4, 2015)............................19

*Johnson v. Giles*,
    No. 1:23-cv-2444, 2024 U.S. Dist. LEXIS 169497 (S.D.N.Y. Sept. 19, 2024) ......................33

*Johnson v. Town of Greece*,
    No. 6:23-cv-06441, 2024 U.S. Dist. LEXIS 157982 (W.D.N.Y. Sept. 3, 2024)....................28

*Kanthan v. Tagstone Technology, LLC*,
    206 N.Y.S.3d 285 (1st Dep't 2024) .....................................................................13

*Khurana v. Wahed Invest, LLC*,
    No. 18-cv-233, 2020 U.S. Dist. LEXIS 4762 (S.D.N.Y. Jan. 8, 2020) ..................................19

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011)...................................................................................30

*Lawson v. Rubin*,
    No. 17-cv-6404, 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. Apr. 29, 2018) ...........................29

*Lenart v. Coach, Inc.*,
    131 F. Supp. 3d 61 (S.D.N.Y. 2015)............................................................... *passim*

*Lettis v. United States Postal Serv.*,
  39 F. Supp. 2d 181 (E.D.N.Y. 1998) ....................................................................45

*Levin v. Sarah Lawrence Coll.*,
  747 F. Supp. 3d 645 (S.D.N.Y. 2024).................................................................23

*Logan v. Playa Bowls, LLC*,
  No. 25-cv-6640, 2026 U.S. Dist. LEXIS 61199 (S.D.N.Y. Mar. 23, 2026)...........................43

*Ma v. Zhou*,
  No. 23-cv-4616, 2024 U.S. Dist. LEXIS 192874 (E.D.N.Y. Oct. 23, 2024)...........................46

*Mahan v. Roc Nation, LLC*,
  No. 14-cv-5075, 2015 U.S. Dist. LEXIS 49684, *aff'd*, 634 F. App'x 329 (2d
  Cir. 2016) .............................................................................................32

*Majewski v. Broadalbin-Pert Cent. School Dist.*,
  696 N.E.2d 978 (1998)..............................................................................14, 15

*Mandarin Trading Ltd. v. Wildenstein*,
  944 N.E.2d 1104 (2011)................................................................................41

*Maria v. Mass. Inst. of Tech.*,
  No. 1:22-cv-10959, 2024 U.S. Dist. LEXIS 176972 (S.D.N.Y. Sept. 30, 2024) ....................24

*Maropakis v. Bank of N.Y. Mellon Tr. Co., N.A.*,
  No. cv-13-4744, 2015 U.S. Dist. LEXIS 197651 (E.D.N.Y. May 4, 2015)...........................40

*Martinez-Rodriguez v. Giles*,
  391 F. Supp. 3d 985 (D. Id. 2019) ..................................................................28

*Matana v. Merkin*,
  957 F. Supp. 2d 473 (S.D.N.Y 2013)................................................................42

*McKenzie-Morris v. V.P. Rec. Retail Outlet, Inc.*,
  No. 22-cv-1138, 2025 U.S. Dist. LEXIS 94167 (S.D.N.Y. May 16, 2025) ........................32

*Merchant v. Levy*,
  92 F.3d 51 (2d Cir. 1996) ............................................................................30

*Miles A. Kletter, D.M.D. & Andrew S. Levine, D.D.S., P.C. v. Fleming*,
  820 N.Y.S.2d 348 (3rd Dep't 2006) ................................................................12

*Monagle v. Scholastic, Inc.*,
  No. 06-cv-14342, 2007 U.S. Dist. LEXIS 19788 (S.D.N.Y. Mar. 9, 2007)........................12

*Nakahata v. N.Y.-Presbyterian Healthcare Sys.*,
  723 F.3d 192 (2d Cir. 2013)..........................................................................15

*Nantong Sanhai Garment Co. v. Fab Mill Inc.*,
No. 21-cv-859, 2022 U.S. Dist. LEXIS 32975 (S.D.N.Y. Feb. 23, 2022)................................53

*Netzer v. Continuity Graphic Assocs., Inc.*,
963 F. Supp. 1308 (S.D.N.Y 1997)........................................................................................40

*Ngono v. Owono*,
No. 23-339, 2024 U.S. App. LEXIS 5142 (2d Cir. Mar. 4, 2024)..........................................24

*Office Solution Grp., LLC v. Nat'l Fire Ins. Co.*,
544 F. Supp. 3d 405 (S.D.N.Y. 2021).....................................................................................51

*Ornrat Keawsri v. Ramen-Ya Inc.*,
No. 17-cv-2406, 2019 U.S. Dist. LEXIS 232625 (S.D.N.Y. Aug. 5, 2019)............................52

*Ortiz v. Guitian Bros. Music Inc.*,
No. 07-cv-3897, 2008 U.S. Dist. LEXIS 75455 (S.D.N.Y. Sept. 29, 2008) ...........................31

*Patel v. Maybank Kim Eng Securities USA Inc.*,
243 N.Y.S.3d 622 (1st Dep't 2025) ........................................................................................13

*Perella Weinberg Partners LLC v. Kramer*,
208 N.Y.S.3d 597 (1st Dep't 2024) ........................................................................................13

*Perella Weinberg Partners LLC v. Kramer*,
58 N.Y.S.3d 384 (1st Dep't 2017) ..........................................................................................15

*Phoenix v. Cushman & Wakefield U.S., Inc.*,
No. 24-cv-00965, 2025 U.S. Dist. LEXIS 18268 (S.D.N.Y. Jan. 31, 2025) ...........................14

*Raparthi v. Clark*,
186 N.Y.S.3d 623 (1st Dep't 2023) ...................................................................................13, 14

*Ray v. Ray*,
799 F. App'x 29 (2d Cir. 2020) ........................................................................49, 50, 54, 55

*Ray v. Ray*,
No. 20-cv-6720, 2021 U.S. Dist. LEXIS 56990 (S.D.N.Y. Mar. 25, 2021),
*aff'd* 22 F.4th 69 (2d Cir. 2021)........................................................................................50

*Rodgers v. Roulette Records, Inc.*,
677 F. Supp. 731 (S.D.N.Y. 1988).........................................................................................35

*Roma v. David Carmili, Physician, PC*,
761 F. Supp. 3d 481 (E.D.N.Y. 2024) ...................................................................................16

*Ryan v. Kellogg Partners Inst. Servs.*,
968 N.E.2d 947 (2012)...........................................................................................................15

*Saleem v. Corp. Transp. Grp., Ltd.*,
    52 F. Supp. 3d 526 (S.D.N.Y. 2014)........................................................................11

*Sanshoe Trading Corp. v. Mitsubishi Int'l Corp.*,
    470 N.Y.S.2d 991 (Sup. Ct. 1984), *aff'd* 479 N.Y.S.2d 149 (1st Dep't 1984).......................35

*In re Sharp Intern. Corp.*,
    403 F.3d 43 (2d Cir. 2005).................................................................................53, 54

*Shoreham Hills, LLC v. Sagaponak Dream House, LLC*,
    No. 613802-19, 2020 N.Y. Misc. LEXIS 1023 (Sup. Ct. NY Mar. 4, 2020) ..........................45

*Silver v. Kuehbeck*,
    No. 05-cv-35, 2005 U.S. Dist. LEXIS 26956 (S.D.N.Y. Nov. 7, 2005)..................................46

*Slayton v. Am. Express Co.*,
    460 F.3d 215 (2d Cir. 2006).................................................................................50

*St. Louis v. Perlitz*,
    No. 3:13-cv-1132, 2016 U.S. Dist. LEXIS 47611 (D. Conn. Apr. 8, 2016)............................29

*St. Martinus Univ., N.V. v. SMU LLC*,
    No. 21-cv-1888, 2023 U.S. Dist. LEXIS 41000 (E.D.N.Y. Mar. 9, 2023).......................40, 42

*Stern v. Electrolux Home Prods., Inc.*,
    No. 22-cv-3679, 2024 U.S. Dist. LEXIS 17004 (E.D.N.Y. Jan. 30, 2024) ............................33

*Stillwell v. Fashion Nova, LLC*,
    No. cv-21-7040, 2022 U.S. Dist. LEXIS 54443 (C.D. Cal. Jan. 28, 2022)
    ......................................................................................................25, 26, 27, 28

*Telebrands Corp., v. Del Labs, Inc.*,
    719 F. Supp. 2d 283 (S.D.N.Y. 2010).................................................................8, 31

*In re Trinsum Group, Inc.*,
    460 B.R. 379 (Bankr. S.D.N.Y. 2011).......................................................................52

*Tutka v. Optimum Constr., Inc.*,
    No. 15-cv-604, 2016 U.S. Dist. LEXIS 126570 (E.D.N.Y. Sept. 16, 2016) ..........................15

*Union Mut. Fire Ins. Co. v. Stand Up MRI of Brooklyn, P.C.*,
    No. 24-cv-6652, 2025 U.S. Dist. LEXIS 222844 (E.D.N.Y. Nov. 12, 2025) ........................43

*Waite v. Schoenbach*,
    No. 10-cv-3439, 2010 U.S. Dist. LEXIS 115470 (S.D.N.Y. Oct. 29, 2010)....................51, 52

*Warran v. John Wiley & Sons, Inc.*,
    952 F. Supp. 2d 610 (S.D.N.Y. 2013).......................................................................37

x

*Weber v. Geffen Records*,
    63 F. Supp. 2d 458 (S.D.N.Y. 1999)............................................................39, 40

*West v. Sambazon, Inc.*,
    750 F. Supp. 3d 356 (S.D.N.Y. 2024)...............................................................55

*Wilson v. Dantas*,
    No. 12-cv-3238, 2013 U.S. Dist. LEXIS 3475 (S.D.N.Y. Jan. 4, 2013), *aff'd*,
    746 F.3d 530 (2d Cir. 2014)...............................................................................35

*Zheng v. Rivera*,
    No. 157108/14, 2014 N.Y. Misc. LEXIS 5399 (N.Y. Sup. Ct. Dec. 9, 2014).........................46

*Zirvi v. Flatley*,
    838 F. App'x 582 (2d Cir. 2020) ........................................................................33

*Zunzurovski v. Fisher*,
    No. 23-cv-10881, 2024 U.S. Dist. LEXIS 62568 (S.D.N.Y. Apr. 3, 2024) ..............................2

**Statutes**

17 U.S.C. § 102(a)(2)...............................................................................................39

17 U.S.C. § 102(a)(7)...............................................................................................39

17 U.S.C. § 106........................................................................................................39

17 U.S.C. § 106(1), (3), (4), (6) ...............................................................................39

17 U.S.C. § 301(a) ...................................................................................................39

17 U.S.C. § 504(b) ...................................................................................................30

18 U.S.C. § 1589.................................................................................................4, 20

18 U.S.C. § 1589(a) .................................................................................................25

18 U.S.C. § 1589(c)(2)..............................................................................................27

18 U.S.C. § 1591...........................................................................................4, 20, 29

18 U.S.C. § 1591(a) .................................................................................................21

18 U.S.C. § 1591(e)(2)..............................................................................................22

18 U.S.C. § 1591(e)(3)..............................................................................................23

18 U.S.C. § 1591(e)(5)..............................................................................................22

18 U.S.C. § 1595(a) ...................................................................................20, 21, 29

N.Y. Lab. Law § 195(1)(a) ...............................................................................16, 17

N.Y. Lab. Law § 195(3)................................................................................4, 16, 17, 18

N.Y. Lab. Law § 198(1-d) ....................................................................................18

N.Y. Lab. Law § 198(3).........................................................................................18

N.Y. Lab. Law § 215(2)(b) ....................................................................................20

## Rules

Fed. R. Civ. P. 4(m) ..............................................................................................10

Fed. R. Civ. P. 8(a) ...............................................................................................11

Fed. R. Civ. P. 9(b) ...............................................................................37, 38, 53, 54

Fed. R. Civ. P. 12(b)(1)..........................................................................................11

Fed. R. Civ. P. 15(c)(1)(B) ....................................................................................50

N.Y. C.P.L.R. 213(8) .............................................................................................33

## Other Authorities

Secretary of State Record,
    https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inqui
    rytype=EntityName&directionType=Initial&searchNameOrder=SNEAKERA
    DDICTTOURING%20L120000411470&aggregateId=flal-l12000041147-
    1611f312-7751-400c-ae11-
    5404b58cbbb2&searchTerm=sneaker%20addict&listNameOrder=SNEAKER
    ADDICTTOURING%20L120000411470;...........................................................17

U.S. Small Business Administration, *SBA's Paycheck Protection Program for
    Small Businesses Affected by the Coronavirus Pandemic Launches*,
    https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-
    small-businesses-affected-coronavirus-pandemic-launches (Apr. 3, 2020) ...........................50

Pursuant to the Court's Order dated April 7, 2026 (ECF 181), Defendants Joseph Cartagena, Peter Torres, Richard Jospitre, Erica Moreira, Sneaker Addict Touring LLC and Slate, Inc. ("**Defendants**")[1] submit this Omnibus Memorandum of Law in support of their motion to dismiss Plaintiff Terrance Dixon's Amended Complaint, dated March 26, 2026 ("**Amended Complaint**" or "**FAC**") (ECF 85).

## PRELIMINARY STATEMENT

Terrance Dixon's Amended Complaint is the latest in his calculated campaign of defamation, extortion, and malicious harassment designed to destroy world renowned musician Joseph "Fat Joe" Cartagena's reputation and business. Dixon acted as a hype-man for Cartagena from 2005 through 2020. During that fifteen-year period—as well as for the five years after they amicably parted ways—Dixon never claimed he was owed more than he received or that he had not been fully compensated. Then, in early 2025—more than a decade after he first learned of his purported "injuries"—Dixon suddenly demanded additional pay for his hype-man services and royalties on songs he allegedly co-authored.

When Cartagena refused to pay Dixon money he did not owe, Dixon hired Tyrone Blackburn—an extortionist masquerading as an attorney—who has been admonished, sanctioned, and held in contempt by numerous courts for filing false claims espousing absurd understandings of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"); misrepresenting case law; engaging in conduct falling below the level of professional diligence required of attorneys; and violating his duty of candor to the court. Indeed, within just the last few weeks alone: this Court sanctioned and held Blackburn in contempt for disregarding court orders regarding depositions;

---

[1] Roc Nation, LLC will be filing a separate motion to dismiss. This omnibus brief is filed on behalf of all other Defendants.

this Court found that Blackburn violated several other discovery orders; Judge Mary Kay Vyskocil admonished Blackburn "to exercise more reasonable professional judgment"; Judge Leo M. Gordon, who was sitting by designation in the District of New Jersey, ordered Blackburn to show cause why he should not be held in contempt for his failure "to follow the Court's directives in its existing sanctions order"; and Judge Aldo J. Russo of the Superior Court of New Jersey dismissed a complaint Blackburn filed for failing to comply with discovery obligations.[2] As Judge Denise Cote observed, Blackburn's "pattern of behavior is that he improperly files cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly."[3]

True to Judge Cote's observation, Dixon and Blackburn heaped layers upon layers of outrageous and false allegations on Cartagena that went well beyond the supposed wage and royalty claim and sought to extract money from Cartagena by first defaming him and then filing this lawsuit.[4] When Defendants moved to dismiss the original Complaint, however, Blackburn's settlement-focused strategy fell apart. Rather than respond to the motion on the merits, Dixon missed his deadline entirely and only weeks later moved for leave to amend, a tacit acknowledgment that his initial claims could not withstand scrutiny and that his tactics had failed to generate the quick settlement Blackburn's playbook demands.

---

[2] *See e.g.,* ECF 191, *Cartagena v. Dixon*, No. 25-cv-3552 (S.D.N.Y. April 24, 2026); ECF 176, *Cartagena v. Dixon*, No. 25-cv-3552 (S.D.N.Y. March 30, 2026); ECF 109, *Gardner v. Combs*, No. 24-cv-7729 (D.N.J. May 7, 20260); ECF 28, *Burrowes v. Combs*, No. 25-cv-7795 (S.D.N.Y. April 27, 2026).

[3] *Zunzurovski v. Fisher*, No. 23-cv-10881, 2024 U.S. Dist. LEXIS 62568, at *15 (S.D.N.Y. Apr. 3, 2024).

[4] Dixon and Blackburn's misconduct are the subject of Mr. Cartagena's complaint against them, which is pending before this Court in the coordinated action.

2

The Amended Complaint continues this pattern. While it no longer contains a RICO claim or the false and malicious allegation that Cartagena engaged in sexual relations with minors, it still contains knowingly false and outrageous allegations against Cartagena and many others having nothing to do with Dixon's alleged entitlement to compensation for past services rendered and royalties. Indeed, the Amended Complaint contains unrelated tax fraud allegations and false allegations of forced labor and sex trafficking. The Complaint couches these false allegations under a sweeping federal claim under the Trafficking Victims Protection Act ("**TVPA**"). It also asserts facially deficient state law claims for Dixon's original (although well after-the-fact) compensation dispute, including violations of the New York Labor Law, fraud, unjust enrichment, and a facially deficient claim for copyright infringement (also asserted well after-the-fact). These claims are brought not only against Cartagena, but also against Cartagena's artist management company (Roc Nation), an unrelated business manager (Richard Jospitre), acquaintance (Peter Torres), attorney (Erica Moreira), and other businesses (Sneaker Addict and Slate).

Yet despite the sprawling and scattershot 278-paragraph Amended Complaint, Dixon fails to state a cognizable claim. Rather, each claim is facially deficient and/or Dixon lacks standing to bring the claim.

***New York Labor Law Claims***. Dixon asserts claims under the New York Labor Law ("**NYLL**") for wage theft, record-keeping violations, and retaliation for asserting his NYLL claims, all of which fail for various reasons. *First*, Dixon's NYLL claims fail because Dixon previously admitted that he was an independent contractor and the NYLL does not cover independent contractors. *Second*, Dixon's wage theft claim under Sections 193 and 198 of the NYLL fails because withholding wages was not covered by the NYLL until 2021, after Dixon claims he no longer worked for Cartagena, and the 2021 amendment does not apply retroactively.

3

That claim is also time-barred under the NYLL's six-year statute of limitations for any wages allegedly owed before June 19, 2019. *Third*, Dixon's records-keeping claim fails because (i) an employee hired after April 9, 2011 cannot bring a claim under Section 195(1) for failing to provide a wage notice; and (ii) Dixon does not plead that any pay statements failed to identify withholdings in violation of Section 195(3). The Section 195(3) claim is also time-barred for any wage payments made prior to June 19, 2019. *Fourth*, Dixon's retaliation claim under NYLL Section 215 fails because he does not plead that Defendants' threatened legal action was in bad faith and, indeed, this Court denied Dixon's motion to dismiss Cartagena's complaint against Dixon and Blackburn. Moreover, the alleged social media threats are not retaliation under the statute and, even if they could be, Dixon pleads that Defendants made social media threats long before Dixon sent Cartagena a demand letter.

*TVPA*. Dixon alleges the Defendants violated the TVPA because Cartagena purportedly compelled his labor and involvement in commercial sex acts through threats of serious harm, in contravention of federal "forced labor" and "sex trafficking" crime statutes (18 U.S.C. §§ 1589, 1591). This outrageous claim is false and fundamentally deficient. Dixon has not plausibly alleged any "means of coercion" connected to a specific sexual encounter, and the three specific alleged sexual incidents fail to connect a sex act with a threat. Dixon also fails to allege a "commercial sex act," because he does not plead facts showing the exchange of something of value for a sex act. He also fails to plead that Cartagena obtained Dixon's labor by means of threats or serious harm. While forced labor cases typically involve certain hallmarks like squalid or otherwise intolerable living conditions, extreme isolation, threats of legal process such as arrest or deportation, and exploitation of the victim's lack of education and language barriers, this case has none. Dixon himself admits that he is an adult male with over fifteen years of experience traveling for

4

performances and managing tour security. He does not allege that he was forced to live in intolerable conditions or in isolation, or that Cartagena otherwise capitalized on any idiosyncratic vulnerabilities. To the contrary, Dixon alleges that Cartagena intentionally left him while travelling abroad—*i.e.*, in circumstances where Dixon *could not* provide any labor or services to Cartagena— and that Dixon eventually stopped associating with Cartagena altogether. No "reasonable" person in Dixon's shoes, with the means and know-how to "escape" his supposed forced circumstances, would have continued performing labor under the scenario Dixon alleges, as is required to show a forced labor violation.

Indeed, Dixon pleads that, had he known certain facts that were concealed, including catalog-sale agreements and tour receipts, he would have stopped performing in 2011-2012, and that Cartagena told him to look for work elsewhere, both of which negate his claim of forced labor. Moreover, Dixon pleads that many of the alleged threats supporting the forced labor claim occurred after Dixon stopped performing with Cartagena and/or were made to prevent Dixon from suing, not to keep him from stopping performing.

***Copyright Claim***. Dixon seeks a declaration that he is a co-author on twelve musical works dating back to 2014 and earlier or, in the alternative, damages for infringement. The co-authorship claim, however, is time-barred under the Copyright Act's three-year statute of limitations: Dixon knew as early as 2009 and 2010 that the musical works appeared on Cartagena's albums, yet he was not receiving royalties. As for infringement, Dixon lacks standing because he is not a claimant on any of the copyright registrations.

***Fraud Claims***. Dixon also asserts a common law fraudulent concealment claim, which fails for at least four independent reasons. *First*, the claim is time-barred under New York's statute of limitations of six-years from the cause of action accruing or two years from discovery—Dixon

5

was on actual or inquiry notice of his unpaid wages as early as 2005 and his unpaid royalties as early as 2009. *Second*, Defendants had no duty to disclose material facts. *Third*, Dixon's alleged justifiable reliance on these purported concealed facts fails considering he continued working for Cartagena for fifteen years despite believing he was not being paid what he allegedly was owed and knowing he was not receiving royalties. And *fourth*, the allegations fail to satisfy the heightened pleading standard for fraud.

*Unjust Enrichment*. To the extent the unjust enrichment claim is based on a failure to receive royalties, it is preempted by the Copyright Act and time-barred. To the extent it is based on a failure to receive alleged wages owed, Dixon pleads the existence of a contract and he fails to plead any non-contractual basis for the claim. The claim also is duplicative of Dixon's fraudulent concealment claim.

*Aiding and Abetting Claims*. These claims fail because the underlying fraud and wage claims fail. Additionally, aiding and abetting wage theft is not a cognizable claim.

*Civil Assault*. Dixon's claims of assault against Cartagena, and many of the claims against Torres, are barred by the one-year statute of limitations. Moreover, Dixon does not plead facts supporting that any of the alleged threats, many of which allegedly were made over Instagram or the telephone, put him in reasonable apprehension of imminent bodily harm.

*Fraudulent Conveyance*. Dixon brings a fraudulent conveyance claim under the former New York Debtors & Creditors Law that is facially deficient. For starters, none of the alleged transfers occurred either within the six-year statute of limitations or before the new law took effect on April 4, 2020. Moreover, Dixon fails to plead facts supporting the requirements for such a claim, including that the alleged transfers were made "without a fair consideration," that Defendants were insolvent at the time of the alleged transfers or that the alleged transfers rendered

6

Defendants insolvent, that Dixon has an unpaid judgment against Defendants, or, for his claim of actual fraud, the date, amount, and recipient of the transfers and facts that would support actual intent.

At bottom, the Amended Complaint is notable for what it omits: any memorialization of the alleged $3,000-per-performance agreement Dixon claims, any facts supporting Dixon's royalty claim, any explanation for why he could not leave the purportedly coercive environment (particularly since he ultimately did leave without any alleged change in circumstances), and any facts showing he was trafficked for sex. Dixon's own pleading establishes he provided services to Cartagena for fifteen years, was always free to stop, and waited years after their parting to complain. The Amended Complaint's convoluted and conclusory allegations fail to state any plausible claim for relief and should be dismissed with prejudice.

## STATEMENT OF FACTS

Unless otherwise noted, Defendants summarize the following facts from the Amended Complaint (ECF 85). While the Defendants dispute the allegations of wrongdoing, for purposes of this motion, all non-conclusory factual assertions are assumed to be true.

### I.    Dixon Alleges He Was Cartagena's "Creative Partner" From 2005 To 2020

Cartagena is an internationally recognized recording artist professionally known as "Fat Joe." FAC, at p. 1 and ¶ 10. Dixon alleges that, from 2005 through 2020, he worked with Cartagena "in multiple professional capacities," including as Cartagena's on-stage "hype man," "songwriter and co-author of numerous commercially released tracks," "background vocalist and creative contributor in studio productions," and "tour security and logistical liaison" during performances. *Id.* ¶¶ 8, 29, 30.

Dixon claims he was contractually owed $3,000 per performance, but only received $150 to $250 per performance. FAC ¶¶ 33, 35, 137(b). He also claims to have co-authored twelve songs

7

registered with the U.S. Copyright Office between 2011 and 2014. *Id.* at ¶ 41. These songs appeared on Mr. Cartagena's J.O.S.E. 2 and The Darkside Vol. 1 albums in 2009 and 2010—nearly 15 years before Dixon filed his original Complaint.[5] Notably, Dixon does not, because he cannot, reference any documents or correspondence reflecting Cartagena's purported promises of $3,000 per performance or any documentation supporting his claim for royalties.

## II. Dixon Claims He Continued Collaborating With Cartagena Despite Never Receiving The Royalties Or Full Performance Fees He (Falsely) Claims Cartagena "Orally" Promised Him

Dixon alleges he was not listed as a co-author of the recordings and received no compensation in connection with them. FAC ¶¶ 41-45, 49. He further claims he was underpaid for his performances, and that he was subjected to a challenging work environment, describing threats if he refused to perform or assert his rights and non-consensual sexual encounters. *Id*. ¶¶ 53-59. Despite this, Dixon continued working for Cartagena, performing "at more than 200 shows" from 2005 to 2020. *Id*. ¶¶ 30, 37. He alleges that he "attempted to withdraw from touring," *id*. ¶ 54, although he never explains *what* or *when* or *how* he "attempted to withdraw," but claims he was met with threats "that failure to appear or perform would result in physical harm, professional destruction, or both." *Id*. ¶ 56.

---

[5] The creation and publication dates of the relevant works appear on the face of the associated copyright records. *See* Decl. of Jordan W. Siev in Support of Defendants' Omnibus Motion to Dismiss ("Siev Decl."), Ex. A. It is well-established that the Court may take judicial notice of official records of the United States Copyright Office, including the dates of first publication for the recordings. *Telebrands Corp.*, *v. Del Labs, Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010) (citing *Island Software and Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)). Although Cartagena argued in the Cartagena Action (as defined below) that the Court should strike and/or disregard certain purported copyright records that Dixon and Blackburn sought to introduce for their motion to dismiss, Cartagena Action (ECF 57), Cartagena did so because the dates of publication of the recordings have nothing to do with allegations in the Cartagena Action.

**III.    Dixon Stops Working With Cartagena In 2020 And, Three Years Later, Begins Harassing Him**

Dixon alleges that he stopped working with Cartagena in 2020. FAC ¶ 30. He does not plead why he left or how he was able to extricate himself from the alleged forced labor and sex trafficking. He also did not start making accusations against Cartagena until late 2023 and, even then, did not assert claims relating to the failure to pay wages and royalties until 2025. *See generally* Cartagena's Second Amended Complaint ("**Cartagena Compl.**") in the Cartagena action ("**Cartagena Action**"); Cartagena Compl. (ECF 33) ¶¶ 54-57; Exs. S-U.

**IV.    Dixon Retains Counsel Who Transforms A Simple Royalty And Performance Fee Dispute Into A Sprawling Sex Trafficking, Human Trafficking, And RICO Complaint Involving Cartagena, His Businesses, And Associates**

Dixon retained attorney Tyrone Blackburn. As this Court is well aware, Blackburn has a troubling history in this and other Courts, to say the least. Blackburn sent Cartagena a letter on March 23, 2025 asserting Dixon's claims for royalties and demanding that Cartagena grant Dixon retroactive songwriting credit and a monetary settlement. Cartagena Compl. ¶ 9. When Cartagena refused, Blackburn sent a second letter reiterating the demands and additionally accusing Cartagena of wage theft and having sex with minors, forced labor, and coercive sex trafficking. *Id.* ¶¶ 10, 146.

Blackburn then spoke with Defendant Moreira, Cartagena's personal attorney, on April 23, 2025, emphasizing that he only wanted to resolve Dixon's royalty and performance fee claims, stating, "Homeland Security and all that stuff aside…my goal was to see if we can have some sort of resolution to the claims that my client has regarding what he feels to be, you know, his contributions that was not compensated" and that "[t]his is not about Joe's decisions in the bedroom with whomever he chooses to sleep with. This is business." *Id.* ¶ 80.

## V.    Dixon Files This Lawsuit Against Cartagena, His Businesses, and Associates

On June 19, 2025—over fifteen years after allegedly not receiving royalties and performance fees owed—Dixon (through Blackburn) filed a sweeping complaint against the Defendants and Roc Nation.[6] ECF 3. The Complaint alleged seven causes of action, including claims under the TVPA and RICO. *Id*. Among other things, the Complaint included allegations of sexual encounters with minors. *Id*. ¶¶ 178-195.

On November 10, 2025, Defendants moved to dismiss the Complaint. ECF 63. Dixon, however, let the date for his opposition pass. Weeks after his opposition was due, Dixon filed this Amended Complaint, which dropped the allegations of sexual encounters with minors and dropped the RICO claim. This time, however, instead of seven counts, he filed twelve counts, alleging violations of the NYLL, TVPA, Copyright Act, and the former New York Debtor & Creditor Law, as well as common law claims for fraudulent concealment, unjust enrichment, aiding and abetting liability, and civil assault.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] plaintiff's

---

[6] The Court dismissed Dixon's claims against several John Doe individuals and corporations after Dixon failed to identify and serve them. ECF 32, 37. In his Amended Complaint, however, Dixon has again named "John Does 1-10, and Jane Does 1-10, and ABC Corporations 1-10". FAC, at p. 1. The Court should reiterate, however, that these people and entities remain dismissed and are not part of this lawsuit. In the alternative, for the same reasons stated in the prior dismissal Order, the Court should again dismiss John Does 1-10, Jane Does 1-10, and ABC Corporations 1-10 pursuant to Rule 4(m), this time with prejudice.

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

**ARGUMENT**

The Amended Complaint fails to state a plausible claim for all twelve counts of the Complaint in violation of Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Each claim suffers a fatal flaw warranting dismissal with prejudice. In addition, Dixon lacks standing to bring a copyright infringement claim, requiring dismissal under FRCP 12(b)(1). Accordingly, the Amended Complaint should be dismissed with prejudice.

I. **Dixon's Claims Under The New York Labor Law (Count I, II, and V) Fail To State A Claim**

A. **Dixon's Claims Under the New York Labor Law (Counts I, II, and V) Fail Because the NYLL Does Not Cover Independent Contractors**

In Counts I, II, and V, Dixon brings claims under the NYLL. The NYLL, however, does not apply to independent contractors. *See Hart v. Rick's Cabaret Int'l., Inc.*, 967 F. Supp. 2d 901, 911 (S.D.N.Y. 2013) (stating that independent contractors are "outside the reach" of the NYLL); *Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 545 (S.D.N.Y. 2014) (same). Yet, in a March 23, 2025 demand letter, which is referred to in Dixon's Amended Complaint, FAC ¶ 159, Dixon admitted that Dixon performed his work "as an independent contractor." Siev Decl., Ex. B, at 8.[7] Moreover, "[w]here the plaintiff's allegations are contradicted by a document that the complaint incorporates by reference, the document controls." *Aspen Tech.*, 544 F. Supp. 2d at 215. Accordingly, Dixon's claims in Count I, II, and V should be dismissed with prejudice.

---

[7] Because Dixon refers to the demand letter in his Amended Complaint, it may be considered by the Court in deciding this motion to dismiss. *See 380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 215 (S.D.N.Y 2008).

11

**B.      Dixon's Claim Under Sections 193 and 198 of the New York Labor Law (Count I) Fails to State a Claim and is Largely Time-Barred**

In Count I, Dixon alleges that Cartagena, Sneaker Addict, Slate, Inc., and Roc Nation violated Sections 193 and 198 of the NYLL by failing to pay Plaintiff an agreed "per-show performance fee of no less than $3,000 per engagement," instead paying him only $150 to $250 per engagement. FAC ¶¶ 137(b), 90-96. This claim, however, fails to state a cause of action and is time-barred for all alleged wages earned before June 19, 2019.

**1.      Before 2021, the alleged failure to pay wages was not covered by Sections 193 and 198**

Dixon's claim under Sections 193 and 198 of the NYLL is that, from 2005 to 2020, he was paid $150 to $250 per performance rather than an alleged agreed-upon amount of $3,000 per performance. FAC ¶¶ 30, 93, 137(b). Prior to 2021, however, Section 193 did not cover a failure to pay wages, as opposed to improper deductions. *See, e.g., Monagle v. Scholastic, Inc.*, No. 06-cv-14342, 2007 U.S. Dist. LEXIS 19788, at *5 (S.D.N.Y. Mar. 9, 2007) ("Section 193 has nothing to do with failure to pay wages…, governing instead the specific subject of making deductions from wages."); *Miles A. Kletter, D.M.D. & Andrew S. Levine, D.D.S., P.C. v. Fleming*, 820 N.Y.S.2d 348, 350 (3rd Dep't 2006) (affirming the dismissal of a counterclaim for nonpayment of compensation because the withholding of pay "does not reflect a deduction from wages within the meaning of Labor Law §193"); *H. Roske & Assocs., LLP v. Burghart*, No. 657328/2017, 2020 N.Y. Misc. LEXIS 826, at *10-11 (Sup. Ct. NY Feb. 21, 2020) ("Because [the counter-plaintiff's] claims relate to a withholding of pay and not an unauthorized deduction of pay, the second counterclaim alleging a violation of Labor Law § 193 is dismissed."). In addition, Section 198

"simply provides the remedies available to an employee who prevails under a substantive provision of Labor Law article 6." *Frances v. Klein*, 218 N.Y.S.3d 326, 327 (1st Dep't 2024).[8]

Sections 193 and 198 were amended in 2021 by the No Wage Theft Loophole Act (the "**Act**") to cover "the unauthorized failure to pay wages, benefits or wage supplements." 2021 Bill Text NY S.B. 858; 2021 A.B. A1893 Senate Bill (adding a new subdivision 5 to Section 193 and a new sentence to Section 198(3) providing that "[t]here is no exception to liability…for the unauthorized failure to pay wages, benefits or wage supplements"). Virtually all courts that have considered the issue, including the First Department and courts within the Second Circuit, have held that the Act does not apply retroactively. *See, e.g.*, *Raparthi v. Clark*, 186 N.Y.S.3d 623, 625 (1st Dep't 2023); *Kanthan v. Tagstone Technology, LLC*, 206 N.Y.S.3d 285, 286 (1st Dep't 2024); *Frances*, 218 N.Y.S.3d at 326; *Perella Weinberg Partners LLC v. Kramer*, 208 N.Y.S.3d 597, 598 (1st Dep't 2024); *Fersel v. Paramount Medical Services, P.C.*, No. 18-cv-2448, 2022 U.S. Dist. LEXIS 195010, at *7 (E.D.N.Y. Oct. 26, 2022); *Frost v. Lentex Company, LLC*, No. 21-cv-4843, 2022 U.S. Dist. LEXIS 231948, at *27-30 (S.D.N.Y. Dec. 27, 2022); *Boutsikakis v. Tri-Borough Home Care, Ltd.*, No. 15-cv-5833, 2023 U.S. Dist. LEXIS 63631, at *14-16 (E.D.N.Y. Apr. 11, 2023). Most recently, in *Patel v. Maybank Kim Eng Securities USA Inc.*, the First Department again confirmed that "the Act does not apply retroactively." 243 N.Y.S.3d 622, 626 n.1 (1st Dep't 2025). The outlier is a Fourth Department case, *Hernandez Technology, Inc. v. Rivera*, 237 N.Y.S.3d 317 (4th Dep't 2025), which applied the Act retroactively. *Hernandez*, however, made no attempt to distinguish or even acknowledge the myriad cases that preceded it, all of which held the legislature did not intend for the Act to apply retroactively, and it should be

---

[8] Citations and internal quotation marks are omitted unless otherwise noted.

13

given no weight. Instead, the Court should follow the lead of the First Department and courts within the Second Circuit holding that there is no retroactivity.

In deciding this issue, the Court must attempt to determine how the New York Court of Appeals would resolve the issue. *See Phoenix v. Cushman & Wakefield U.S., Inc.*, No. 24-cv-00965, 2025 U.S. Dist. LEXIS 18268, at *9 (S.D.N.Y. Jan. 31, 2025). Under New York law, "retroactive operation of statutes is not favored," *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013) (*quoting Majewski v. Broadalbin-Pert Cent. School Dist.*, 696 N.E.2d 978, 980 (1998)), and, therefore, "[a]mendments are presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated." *Raparthi*, 186 N.Y.S.3d at 625. "Given this presumption, '[i]t takes a clear expression of the legislative purpose . . . to justify a retroactive application of a statute.'" *Hasan v. Terrace Acquisitions II, LLC*, 203 N.Y.S.3d 325, 326 (1st Dep't 2024).

While the Act states that it is "remedial," 2021 Bill Text NY S.B. 858; 2021 A.B. A1893, statutes labeled as "remedial" no longer have a presumption of retroactivity, *see Gold*, 730 F.3d at 144 (citing *Majewski*, 696 N.E.2d at 980; *CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 262 (2d Cir. 2009)), something the *Hernandez* court failed to acknowledge when relying on the "remedial" nature of the Act. *Hernandez*, 237 N.Y.S.3d at 323. Instead, courts now hold that "a better guide for discerning the intent of the legislature is text and history." *Gold*, 730 F.3d at 144. Here, however, as in *Gold*, where the Second Circuit determined that a different amendment to the NYLL should not be applied retroactively, "neither the text nor the legislative history mentions retroactivity." *Id*. at 143-44; 2021 Bill Text NY S.B. 858; 2021 A.B. A1893; N.Y. Bill Jacket, 2021 S.B. 858. Indeed, the statute provides that the law "shall take effect immediately," 2021 Bill Text NY S.B. 858; 2021 A.B. A1893, not retroactively, and courts have held that this language is

14

not sufficient for there to be retroactive application. *See, e.g., City of New York v. FedEx Ground Package Sys., Inc.,* 91 F. Supp. 3d 512, 529, 529 n.18 (S.D.N.Y. 2015) (finding a statute not to be retroactive where the legislature stated that it "shall take effect immediately."); *Majewski*, 696 N.E.2d at 978 (same). Moreover, while the Senate Sponsoring Memorandum states that the purpose of the Act was to clarify that wage withholding "has always been encompassed by the prohibitions of section 193," New York State Senate Introducer's Mem. in Support, N.Y. Bill Jacket, 2021 S.B. 858, in doing so, it cited *Ryan v. Kellogg Partners Inst. Servs.*, 968 N.E.2d 947 (2012). That opinion, however, merely dealt with the definition of "wages" under the NYLL and did not deal with the issue of the withholding of wages under the NYLL. *See Perella Weinberg Partners LLC v. Kramer*, 58 N.Y.S.3d 384, 390 (1st Dep't 2017). The Senate Sponsoring Memorandum never states that the Act should be applied retroactively and, given the strong presumption against applying a statute retroactively, the Court should follow the overwhelming number of state appellate courts and federal courts that hold that the Act does not apply retroactively. For this reason, Count I should be dismissed with prejudice.

### 2.  The six-year statute of limitations bars Dixon's claims under Sections 193 and 198 for wages allegedly owed before June 19, 2019

Even if Dixon could bring a claim under Sections 193 and 198 for wages paid prior to enactment of the Act, it would be time-barred for wages allegedly owed before June 29, 2019. A claim under Sections 193 and 198 must be brought within six years of the next regular payday after services are rendered. *See Tutka v. Optimum Constr., Inc.*, No. 15-cv-604, 2016 U.S. Dist. LEXIS 126570 , at *10 (E.D.N.Y. Sept. 16, 2016) (six-year statute of limitations); *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 198 (2d Cir. 2013) (NYLL claims accrue "on the next regular payday following the work period when services are rendered"). Dixon filed his original Complaint on June 19, 2025. ECF 3. Dixon's claim, therefore, is barred for any alleged

15

wages owed prior to June 19, 2019. *See Abuladze v. Apple Commuter Inc.,* No. 22-cv-8684, 2024 U.S. Dist. LEXIS 21903, at \*24  (S.D.N.Y. Jan. 23, 2024), *R&R adopted*, 2024 U.S. Dist. LEXIS 21060  (S.D.N.Y. Feb. 7, 2024) (holding that each alleged wage violation gives rise to a new claim and a new limitations period "as to that particular event."). The Court, therefore, should dismiss Count I with prejudice for any alleged wages allegedly earned prior to June 19, 2019.

     **C.**       **Dixon's Claims Under Section 195 of the NYLL (Notice and Record Keeping Requirements) (Count II) Fail For Being Time-Barred and Failing to State a Plausible Claim**

In Count II, Dixon alleges that Sneaker Addict, Moreira, and Roc Nation failed to provide Dixon with certain records required under Section 195 of the NYLL, namely a wage notice (Section 195(1)) and accurate pay statements (Section 195(3)). Part of Dixon's claim, however, is time-barred and the other part fails to state a plausible claim.

     **1.**       **Dixon has no standing to assert a claim under Section 195(1), which, in any case, is time-barred**

The current version of Section 195(1) of the NYLL requires each employer to provide an employee with a notice "at the time of hiring" stating certain information, including the rate of pay, whether paid salary, hourly, daily, etc…, the regular pay day, and the name, address, and telephone number of the employer. N.Y. Lab. Law § 195(1)(a). Dixon alleges he never received this written notice. FAC ¶ 98. Dixon, however, alleges that he was hired in 2005, *id*. ¶¶ 29-30, and "employees hired prior to April 9, 2011, when the [Wage Theft Prevention Act] took effect, may not recover damages under Section 195(1) of the NYLL." *Roma v. David Carmili, Physician, PC*, 761 F. Supp. 3d 481, 490-91 (E.D.N.Y. 2024). Dixon, therefore, has no standing to bring a claim under Section 195(1), *id*., and the Court should dismiss his claim with prejudice.

The claim also should be dismissed with prejudice because there is a six-year statute of limitations for Section 195(1) claims. *See Herrera v. Comme Des Garçons, Ltd.*, No. 21-cv-4929,

2024 U.S. Dist. LEXIS 186715, at *13-15 (S.D.N.Y. Sept. 11, 2024) (holding that the six-year statute of limitations for claims under NYLL § 195(1)(a) runs from the date of hiring). To be timely, Dixon would have had to have filed his complaint by 2011, but he did not do so until 2025.

Finally, Dixon's claims under Section 195(1) must be dismissed as to Sneaker Addict and Moreira, who is alleged to be an officer and/or director of Sneaker Addict, FAC ¶ 18, because, according to Florida's Secretary of State records, Sneaker Addict was not formed until 2012, well after 2005 when any notice would have had to have been provided.[9]

### 2.    Dixon's claim under Section 195(3) fails to state a claim and is largely time-barred

Section 195(3) requires employers to provide their employees with a statement with every wage payment identifying among other things, the pay period, employer's name, address, and telephone number, rate of pay and whether paid salary, hourly, daily, etc…, gross wages, and deductions. N.Y. Lab. Law § 195(3). Dixon claims that Sneaker Addict, Moreira, and Roc Nation violated Section 195(3) by providing Dixon with a June 21, 2019 wage statement that "lists all federal and FICA withholding amounts as 'XXXX,' rendering the statement false on its face." FAC ¶ 99. But Dixon has not actually pled that Defendants withheld anything for federal taxes or FICA and, therefore, has not pled that the pay statement failed to disclose these withholdings. Indeed, Dixon embedded a copy of that alleged pay statement in his original Complaint, which shows gross and net earnings as identical, ECF 3 ¶ 365, meaning Dixon pled there were no

---

[9] *See* Secretary of State Record, https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=SNEAKERADDICTTOURING%20L120000411470&aggregateId=flal-l12000041147-1611f312-7751-400c-ae11-5404b58cbbb2&searchTerm=sneaker%20addict&listNameOrder=SNEAKERADDICTTOURING%20L120000411470; *Goldman v. Barrett*, No. 15-cv-9223, 2017 U.S. Dist. LEXIS 117339, at *1 n.3 (S.D.N.Y. July 25, 2017) (holding that a court may take judicial notice of secretary of state records concerning an entity's formation).

withholdings. *See Dozier v. Deutsche Bank Tr. Co. Ams.*, No. 09-cv-9865, 2011 U.S. Dist. LEXIS 100467, at \*5 (S.D.N.Y. Sept. 1, 2011) ("[T]he court need not accept as true allegations that conflict with a plaintiff's prior allegations."). Moreover, Dixon fails to state facts that would establish that any other pay statements violated Section 195(3). Dixon, therefore, has failed to state a claim for relief under Section 195(3) and his claim should be dismissed with prejudice.

In any event, Dixon's claim is largely time-barred. There is a six-year statute of limitations for Section 195(3) claims accruing at the time of each wage payment. *See* NYLL §§ 198(1-d), 198(3). Thus, Dixon's claims relating to wage payments made before June 19, 2019 are time-barred and the Court should dismiss them with prejudice. Moreover, any claims from before March 23, 2012 would fail against Defendants Sneaker Addict and Moreira because, as stated in Section I.C.1, above, Sneaker Addict had not been formed yet.

### D.    Dixon's Retaliation Claim (Count V) Does Not State a Plausible Claim

Dixon alleges that, on or about March 2025, his counsel sent written demand letters to Defendants and made "public assertions of wage and copyright claims" that resulted in "threatened retaliatory legal proceedings and escalated social-media threats." FAC ¶¶ 63-66, 158, 160. Dixon claims that this alleged conduct violated NYLL § 215, which prohibits retaliatory conduct for bringing or threatening to bring a claim under the NYLL. Dixon's allegations, however, fail to state a claim.

*First*, while this claim is brought against Cartagena, Sneaker Addict, Slate, and Roc Nation, the only allegation against Sneaker Addict and Slate is that they "threatened to withhold or did withhold payments." FAC ¶ 160. But Dixon claims he was no longer employed after 2020, *id*. ¶ 30, and, therefore, could not have been receiving any wage payments in March 2025 that were withheld or could have been withheld. The claim, therefore, should be dismissed as to Sneaker Addict and Slate.

18

*Second*, "[i]n the context of a claim for 'post-employment' retaliation, a 'relatively narrow' range of conduct has been 'recognized in this Circuit as potential unlawful retaliation.'" *Khurana v. Wahed Invest, LLC*, No. 18-cv-233, 2020 U.S. Dist. LEXIS 4762, at \*37 (S.D.N.Y. Jan. 8, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 14296 (S.D.N.Y. Jan. 22, 2020). "[T]hat narrow range includes instituting 'bad faith or groundless counterclaims' or other 'bad faith litigation' against the former employee," as well as threats of such litigation. *Id*. Here, Dixon has not alleged that the threats of litigation were in bad faith or groundless. Indeed, this Court has upheld Dixon's motion to dismiss Cartagena's complaint filed against him. Cartagena Action (ECF 161).

As for the alleged "escalated social-media threats," FAC ¶ 160, in post-employment cases, courts in the Second Circuit generally require the retaliation to be either "employment-related harm or a threatened legal claim…." *Jian Zhong Li v. Oliver King Enterps., Inc.*, No. 14-cv-9293, 2015 U.S. Dist. LEXIS 102597, at \*10 (S.D.N.Y. Aug. 4, 2015). The alleged social media threats are neither and, therefore, do not support a retaliation claim. In addition, the allegations regarding social media threats are not well-pled. For starters, while Dixon alleges that Cartagena made the alleged social media threats "through Torres and other associates," FAC ¶¶ 64,160, there are no well-pled factual allegations supporting this conclusory assertion and, therefore, the claim should be dismissed as to Cartagena. Moreover, while Dixon alleges that Instagram threats were made by Torres from 2023 to 2025, *id*. ¶ 70, there are no facts pled that would establish that any alleged posts made after the 2025 demand letters were of a different nature than the posts before the demand letters and, therefore, do not support a retaliation claim. The allegations regarding the threats also are inconsistent. Specifically, one of the alleged threats that Dixon pleads was made after the March 2025 demand Dixon also pleads was made as part of his forced labor claim. To be

19

part of the forced labor claim, however, the threat had to have been made no later than 2020. *Compare* FAC ¶ 65 *with* ¶ 61 (both alleging the social media threat "be very careful…we let you live"). The Court need not accept contradictory allegations as true. *See Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) ("where a plaintiff's 'own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true'….").

Given the above, the Court should dismiss Dixon's retaliation claim.[10]

## VI.     Dixon Fails To State A Plausible Or Timely Claim Under The TVPA (Count III)

In Count III, Dixon alleges TVPA violations for sex trafficking (18 U.S.C. § 1591) and forced labor (18 U.S.C. § 1589) against Cartagena, Moreira, Jospitre, Torres, Sneaker Addict, and Slate. The TVPA is designed to combat serious criminal conduct and provides a civil remedy only where a plaintiff can plausibly allege knowing participation in these crimes. *See* 18 U.S.C. § 1595(a). Despite Dixon's superficial restructuring of his claims and adding new factual embellishments in response to Defendants' motion to dismiss his original Complaint, Dixon's TVPA claims remain fundamentally deficient. They are built on the same foundation of conclusory buzzwords—"forced-labor," "compelled," "coerced," and "directed"—now supplemented by vague, formulaic "incident" descriptions that lack the specificity, plausibility, and legal sufficiency required to state a claim under the TVPA. The TVPA claims should be dismissed in their entirety with prejudice.

---

[10] Dixon was required to serve notice of his claim on the attorney general "[a]t or before the commencement of" his action under § 215. N.Y. Lab. Law § 215(2)(b). Dixon does not plead compliance with this requirement.

### A.    Dixon Fails to State a Plausible Sex Trafficking Violation

To state a claim for sex trafficking under the TVPA, Dixon must plausibly allege that Defendants (a) recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited a person, (b) knowing or recklessly disregarding that coercion would be used, (c) to cause the person to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a). The Amended Complaint fails to plausibly state facts supporting these elements.

*First*, although Dixon names Cartagena, Torres, Jospitre, Moreira, Sneaker Addict, and Slate in the TVPA count, and Roc Nation under "Venture Liability," the only direct sex trafficking alleged are against Cartagena and Torres. Because Dixon does not plead a direct claim against any other Defendants, as an initial matter, the Court should dismiss the TVPA claim Jospitre, Moreira, Sneaker Addict, Slate, and Roc Nation.[11]

*Second*, as for Torres, Dixon merely alleges that he was "present in the room watching and commenting" during one incident. FAC ¶ 134. Presence alone, however, with no allegation of recruitment, enticement, or other statutory predicate conduct, does not state a claim for direct sex trafficking liability. *See, e.g.*, *C.C. v. Jamal F. Rashid*, No. 2:23-cv-02056, 2025 U.S. Dist. LEXIS 122420, at *31-33 (D. Nev. June 26, 2025) (the "first element of direct violator perpetrator liability" is not shown where complaint "is devoid of any allegation that [defendants] knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained" the plaintiff). For that reason, Torres should also be dismissed from the sex trafficking claim.

*Third*, Dixon does not plausibly plead that Cartagena used coercion to cause Dixon to engage in a commercial sex act. The TVPA defines coercion as: "(a) threats of serious harm to or

---

[11] As noted below, Dixon fails to state a claim for venture liability under 18 U.S.C. § 1595(a) against any Defendant. *See* Section VI.C, below.

21

physical restraint against any person; (b) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (c) the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2). For harm to constitute "serious harm," it must be "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing" the coerced act. 18 U.S.C. § 1591(e)(5). Dixon, however, fails to sufficiently plead any of these elements.

For starters, Dixon attempts to plead four alleged "means of coercion." FAC ¶ 137. But none of these so-called "means of coercion" is connected to a specific sexual encounter. The supposed "nobody leaves Terror Squad in one piece" statement, *id.* ¶ 137(a), is not a threat conditioned on sexual compliance. Torres's threats of facial laceration and violence, *compare id*. ¶ 137(a) *with* ¶ 120(b), are dated from 2023 to 2025, years after the last alleged sexual encounter. *Id.* ¶ 130. The canceled-flight allegation, *id*. ¶¶ 135, 137(b), describes alleged retaliation **after** Dixon allegedly refused to participate in a sexual encounter, not a threat that preceded and compelled participation. *See Dumapias v. Haybyrne*, No. 1:20-cv-00297, 2020 U.S. Dist. LEXIS 253331, at *37 (E.D. Va. Nov. 2, 2020) (finding allegations of "serious harm" insufficient where based, *inter alia*, on "a threat to abandon [plaintiff] in a situation that would leave her all but helpless"). The alleged "chronic underpayment" of performance fees, FAC ¶ 137(b), is merely a wage dispute, and Dixon does not connect it to any specific instance of sexual coercion. The Jospitre legal-process threat, *compare id*. ¶ 137(c) with ¶ 55(3), is alleged to have been made in 2023 and concerned Dixon complaining about "unpaid show money," not sexual compliance. And the "[d]eliberate public humiliation" theory, *id*. ¶ 137(d), describes the character of the encounters themselves, not an independent coercive mechanism.

22

Moreover, Dixon's three specific alleged incidents confirm the absence of statutory coercion. In the first, Dixon alleges Cartagena "ordered" him to engage in sexual activity and that his "compliance was driven by the credible threat of retaliation, including the loss of income, removal from the tour, and public humiliation." *Id*. ¶ 134. This claim, however, is conclusory; Dixon does not allege when this alleged incident occurred or identify any antecedent threat, let alone one that rises to "serious harm." *See Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 667 (S.D.N.Y. 2024) ("Plaintiffs' allegations that they were subjected to sexual assault and forced to perform sex acts … are mere conclusory statements unsupported by factual allegations."). In the third, Cartagena allegedly "issued a direct verbal command to participate," and Dixon claims he complied "solely out of fear of economic punishment and physical retaliation." FAC ¶ 136. Again, however, a verbal command without an accompanying threat of serious harm is not statutory coercion, and Dixon identifies no such threat, only unspecified "fear." *See Doe (S.J.C.) v. Esa P Portfolio LLC*, No. 1:24-cv-02423, 2024 U.S. Dist. LEXIS 207479, at *8-9 (N.D. Ga. Nov. 15, 2024) (dismissing sex trafficking claim where plaintiff did not allege non-conclusory allegations showing force or coercion such as being "drugged or physically assaulted or threatened" or "restrained against her will."). Tellingly, regarding the second incident, Dixon pleads he refused, and his alleged consequence was a canceled flight, not physical harm. FAC ¶ 135. That Dixon could and did refuse undermines the claim that a reasonable person in his circumstances would have felt compelled to comply.

*Third*, the Amended Complaint does not allege a "commercial sex act," which is defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Dixon attempts to satisfy this element by alleging that sexual compliance was "the explicit or implicit condition upon which" Cartagena authorized return transportation,

23

continued access to performance fees, and refrained from imposing punishment. FAC ¶ 131. But the statute contemplates an exchange of something of value "on account of" the sex act itself, not the continued receipt of ordinary benefits. *See Maria v. Mass. Inst. of Tech.*, No. 1:22-cv-10959, 2024 U.S. Dist. LEXIS 176972, at *55 (S.D.N.Y. Sept. 30, 2024) (dismissing TVPA claim where complaint was "devoid" of facts suggesting defendant "propositioned her for sex in exchange for something of value"). Dixon does not allege Cartagena offered him anything of value in exchange for a sex act; he alleges he continued to receive his ordinary (albeit allegedly inadequate) compensation. Repackaging continued employment as "a thing of value" given "on account of" sexual compliance would transform every workplace sexual coercion allegation into a sex trafficking claim—a result wholly inconsistent with the TVPA's purpose. Dixon, therefore, has failed to state a claim for sex trafficking against Cartagena. And, because Dixon does not plead that any other Defendant received something of value in exchange for a sex act, he has failed to state a sex trafficking claim against those Defendants, as well.

In short, Dixon does not come close to pleading the control, oppression, and duress in legitimate sex trafficking cases. Accordingly, having attempted to plead sex trafficking a second time and failing, Dixon's claim of sex trafficking under the TVPA should be dismissed with prejudice.

### B. Dixon Fails to State a Plausible Forced Labor Violation

To state a claim for forced labor under the TVPA, Dixon must plead that the Defendants obtained Dixon's labor or services by means of: "(1) force, threats of force, physical restraint, or threats of physical restraint; (2) serious harm or threats of serious harm; (3) abuse or threatened abuse of law or legal process; or (4) any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." *Ngono v. Owono*, No. 23-339, 2024 U.S. App.

24

LEXIS 5142, at \*2-3 (2d Cir. Mar. 4, 2024) (citing 18 U.S.C. § 1589(a)). "Typically…'forced labor' situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English language…." *Stillwell v. Fashion Nova, LLC*, No. cv-21-7040, 2022 U.S. Dist. LEXIS 54443, at \*31-32 (C.D. Cal. Jan. 28, 2022). In his TVPA count, Dixon fails to plead facts that come close to giving rise to a plausible forced labor violation.

*First*, Dixon does not allege that Moreira, Torres, Sneaker Addict, or Slate obtained Dixon's labor or services. FAC ¶ 106 (alleging that "Cartagena" acting through the other Defendants, "knowingly obtained" Dixon's "labor and services."). Thus, any direct forced labor claim against them fails. *See, e.g.*, *C.C.*, 2025 U.S. Dist. LEXIS 122420, at \*31-32.

*Second*, many of the alleged threats occurred well after 2020, when Dixon alleges he stopped performing with Cartagena, FAC ¶ 30, including all of the alleged threats made by Jospitre. Those post-2020 threats include the ones in the following Paragraphs of the Amended Complaint: *Compare* FAC ¶ 108 *with* ¶¶ 70, 238, 239, 243 (Torres and associates: "buck 50" and "48 hrs to fall back"); *compare* ¶ 109 *with* ¶¶ 68-69 (Torres and associates: "raise your kids"); *compare* ¶¶ 111, 115 *with* ¶¶ 55(3), 120 (Jospitre: "bury you" and "fighting cases"); ¶ 120 (Torres: threats "between 2023 and 2025"). Obviously, alleged threats made after the end of Dixon's alleged working relationship with Cartagena cannot support a claim of forced labor.

*Third*, for many of the alleged threats, Dixon alleges they were made to prevent him from bringing a claim, not to force him to continue performing. Specifically, in addition to the threats made after 2020 referenced above, which, given the timing had to be about alleged threats to

25

prevent him from asserting claims against Cartagena, the additional threats falling into this category can be found in Paragraph 108. *Compare* FAC ¶ 108 *with* ¶ 61 (pleading that Dixon understood that alleged threats that Dixon would be "made an example of" and "we let you live" were threats of harm "if he continued to assert his claims or release videos documenting Defendants [sic] misconduct."); *see Stillwell*, 2022 U.S. Dist. LEXIS 54443, at *34 (holding that threats not made to compel labor or services, including ones made to prevent a legal claim from being pursued, do not support a forced labor claim).

*Fourth*, additional alleged threats are alleged to both have been in response to Dixon attempting to "discuss leaving the touring operations or hiring independent representation," and to prevent Dixon from ever going "against Cartagena and his associates," which appears to mean asserting a claim. *Compare* FAC ¶ 55(2) *with* ¶ 111 (alleged threats that Dixon would "never work in this business again" and be "blackballed from every label and every venue."). "[W]here a plaintiff's own pleadings are internally inconsistent," as they are here, "a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true…." *Lenart*, 131 F. Supp. 3d at 67.

*Fifth*, additional statements Cartagena is alleged to have made over social media are vague, at best, and not directly tied to Dixon's labor, such as "people 'gotta be made an example of,'" that "if Plaintiff 'do[es] this door is closed,'" that Dixon should look for work at UPS, that Cartagena "did not 'need to lift a finger' because 'everyone [is] willing to do it for' him," and an alleged warning to "be very careful" because Defendants "let [him] live." FAC ¶ 110. As stated above, threats not directly tied to continuing labor cannot form the basis for a forced labor claim.

*Sixth*, the only remaining alleged threat is Torres's June 2019 alleged statement: "[I]f you don't get on that plane, we'll have people waiting for you back in the Bronx." FAC ¶ 55(1). This

26

alleged threat fails for two reasons. The meaning of "we'll have people waiting for you back in the Bronx" is unclear. Moreover, Dixon does not specify whether this statement was made before or after he performed, a critical omission because a statement made after performance cannot constitute a threat compelling forced labor.

In addition, even if the Court considers this alleged threat or any of the other alleged threats as being well pled for a forced labor claim, they are not of the type that would compel a "reasonable person of the same background and in the same circumstances" to continue performing labor "to avoid incurring that harm." 18 U.S.C. § 1589(c)(2). Dixon alleges that he not only was a "hype man and on-stage performer," but that he provided "tour security and logistical liaison during domestic and international events." FAC ¶ 8. While he alleges that "[f]or years, [Dixon's] only meaningful source of income was through Defendants' touring and recording operations," *id*. ¶ 112, he does not sufficiently allege that he had no other way of making an income (something that would not be plausible, even if he did make that allegation, as he certainly could have sought work in security outside the music industry), and any alleged threats the Court does consider are not of the type that would cause someone like Dixon, who is not in squalid conditions or lacks any economic means and is responsible for tour security, to feel compelled to continue working. *See Stillwell*, 2022 U.S. Dist. LEXIS 54443, at *30-32 (dismissing TVPA forced labor claim by a registered nurse and law school graduate, finding that a reasonable person in her circumstances would have walked away, filed a claim, and/or found other employment).

Indeed, ***Dixon pleads in his fraudulent concealment claim that he could have left at any time***. Dixon alleges that, if facts had not been concealed from him, "he would have ceased performing on tour and contributing to recordings no later than 2011-2012." FAC ¶ 168(2). He also pleads that he "continued to perform on tour through 2020 without retaining independent

27

counsel or asserting formal wage claims" because of concealed facts, not threats. *Id*. ¶ 169. Moreover, in the forced labor count itself, Dixon pleads that Cartagena told him to "look for work at UPS," *id*. ¶ 110, meaning Cartagena was not forcing Dixon to continue to perform with him. Because these allegations are inconsistent with forced labor, the Court need not accept as true the allegation that Dixon was forced to continue performing. *See Lenart*, 131 F. Supp. 3d at 67 ("[W]here a plaintiff's 'own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true'…."). Moreover, even if Dixon needed the work from Cartagena for economic reasons, the same can be said for almost anyone with a job; it is not forced labor. *See Johnson v. Town of Greece*, No. 6:23-cv-06441, 2024 U.S. Dist. LEXIS 157982, at *20 (W.D.N.Y. Sept. 3, 2024) (holding that financial harm for TVPA purposes must include an improper or illicit threat or it would just be what anyone would face with threatened termination).

*Finally*, Dixon alleges he stopped working for Cartagena in or after 2020, but fails to plead what changed that allowed him to leave then. Without pleading anything more, it is not plausible to believe that Dixon could not have left earlier. *See Stillwell,* 2022 U.S. Dist. LEXIS 54443, at *30-31 (dismissing forced labor TVPA claim where the plaintiff "obviously stopped working for [the defendant]."); *Martinez-Rodriguez v. Giles*, 391 F. Supp. 3d 985, 994 (D. Id. 2019) ("If Funk Dairy was truly forcing Plaintiffs to perform labor, they would not have allowed three Plaintiffs to quit.").

Dixon has not corrected his flawed TVPA claim from his original Complaint and, therefore, the claim should be dismissed with prejudice.

28

## C.   Dixon Fails To Plead Venture Liability

Dixon claims that Torres, Jospitre, Moreira, Sneaker Addict Touring LLC, Slate, Inc., and Roc Nation are liable under 18 U.S.C. § 1595(a) for knowingly benefitting "from participation in a venture" which they "knew or should have known has engaged in an act in violation of" the TVPA. FAC ¶¶ 138-140. Because the Amended Complaint fails to plead the predicate violations of forced labor and sex trafficking, as shown above, it necessarily also fails to state venture liability under § 1595(a). *See St. Louis v. Perlitz*, No. 3:13-cv-1132, 2016 U.S. Dist. LEXIS 47611, at *27 (D. Conn. Apr. 8, 2016) (dismissing venture-based TVPA claim and stating that "Section 1595 requires an underlying violation of § 1591 (or another section of the statute)"). Moreover, even if the predicate acts were adequately pled, Dixon does not sufficiently plead that the Defendants knowingly benefitted, or attempted to or conspired to benefit, "from participation in a venture" which they "knew or should have known has engaged in an act in violation of" the TVPA. 18 U.S.C § 1595(a); *see also Lawson v. Rubin*, No. 17-cv-6404, 2018 U.S. Dist. LEXIS 71582, at *32 (E.D.N.Y. Apr. 29, 2018) (holding that defendant "cannot have committed any of the predicate acts" where plaintiff fails to allege facts to show they "knowingly benefit[ted] … from participation in a [trafficking] venture" or that they acted in "reckless disregard."). The Amended Complaint's conclusory allegation that each Defendant "participated in and furthered" the scheme, FAC ¶¶ 114–118, does not satisfy § 1595(a)'s requirement of knowing benefit from participation in a trafficking venture. Accordingly, all TVPA claims against the Defendants should be dismissed.

**VII.    Dixon's Copyright Claim Of Co-Ownership of Musical Works Is Time-Barred And He Lacks Standing To Bring An Infringement Claim (Count IV)**

Dixon seeks a declaration that he is the co-owner of twelve musical works registered in the Copyright Office in 2011 and 2014. FAC ¶¶ 41-43, 146-147. That claim is time-barred. Dixon also asserts a claim for infringement in the alternative, *id*. ¶ 147, but he lacks standing to bring such a claim. Count IV should be dismissed with prejudice.

**A.    Dixon's Claim of Co-Ownership**

**1.    Dixon's co-ownership claim is time-barred**

A claim under the Copyright Act is subject to a three-year statute of limitations. *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996); 17 U.S.C. § 504(b).[12] Moreover, "[a]n ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011). This arises when "plain and express repudiation of co-ownership is communicated to the claimant." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013). Any number of events can trigger the accrual of an ownership claim, including publication of a work without the alleged co-owner's name on it and knowledge of entitlement to royalties not being paid. *Id.* For example, in *Bridgeport Music Inc. v. TufAmerica Inc.*, the defendant claimed to be the owner of select musical compositions. No. 23-7386-cv, 2024 U.S. App. LEXIS 30328, at *1-2 (2d Cir Dec. 2, 2024). However, in the 1970's, the defendant discovered recordings had been released and he was not receiving royalties, yet he did not assert a claim until 2018. *Id.* at *3-4. As a result, the court found the claims were time-barred, which the Second Circuit affirmed. *Id.* at *3-4, 6-8; *see also*

---

[12] Plaintiff styles his cause of action as one for "copyright infringement." FAC, Count IV. The allegations make clear, however, it is a copyright co-ownership dispute, with infringement pled in the alternative. *Id*. ¶¶ 146-147.

*Ortiz v. Guitian Bros. Music Inc.*, No. 07-cv-3897, 2008 U.S. Dist. LEXIS 75455 at *8-14 (S.D.N.Y. Sept. 29, 2008); *Big E. Entm't, Inc. v. Zomba Enter.s*, 453 F. Supp. 2d 788, 796 (S.D.N.Y. 2006).

The present facts are analogous. Dixon alleges he made original contributions to twelve musical works, including music, lyrics, vocal performances, and arrangements. FAC ¶¶ 41-42. He further alleges he did not receive any royalties. *Id.* ¶¶ 45, 49. However, as Dixon himself pleads, these works appeared on two of Mr. Cartagena's albums released in 2009 and 2010, nearly 15 years before Dixon filed his original Complaint.[13] The works were also registered with the U.S. Copyright Office between 2011 and 2014. *Id.* ¶ 41. Accordingly, Dixon was on inquiry notice and his claim is time-barred.

Plaintiff contends he was unaware of and could not have discovered his exclusion from the copyright registrations until 2023-2025 due to the Defendants' alleged fraudulent concealment. This argument fails for two reasons. *First*, as noted above, publication and commercial exploitation first occurred in 2009 and 2010, and Dixon alleges that his contributions were merged into the master recordings. FAC ¶ 42. Given Dixon's working relationship with Cartagena from 2005 to 2020 in multiple professional capacities (allegedly as a songwriter, co-author, background vocalist, and creative contributor), it is implausible that Plaintiff was unaware of allegedly unpaid royalties by 2009-2014. *Id.* at ¶ 8. Because he knew he was not receiving royalties, he was on inquiry notice. *See Bridgeport Music Inc.*, 2024 U.S. App. LEXIS 30328, at *7-8 ("'[L]earning that another [] is exploiting [a] work is sufficient notice that royalties are due,' and when a party has 'knowledge of

---

[13] The creation and publication dates of the relevant works appear on the face of the associated copyright records. *See* Siev Decl., Ex. A. It is well-established that the Court may properly take judicial notice of official records of the United States Copyright Office. *Telebrands*, 719 F. Supp. 2d at 287 n. 3 (citing *Island Software and Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)).

an entitlement to royalties that are not being paid,' a copyright ownership claim accrues."); *Mahan v. Roc Nation, LLC*, No. 14-cv-5075, 2015 U.S. Dist. LEXIS 49684, *aff'd*, 634 F. App'x 329 (2d Cir. 2016) ("[T]he absence of any royalties sent to [p]laintiff [] gave him reason to know of his injury."). *Second*, Dixon cannot argue that the copyright registrations were fraudulently concealed because they are public records discoverable with reasonable diligence. *See McKenzie-Morris v. V.P. Rec. Retail Outlet, Inc.*, No. 22-cv-1138, 2025 U.S. Dist. LEXIS 94167, at *25 (S.D.N.Y. May 16, 2025).

Dixon's co-authorship claim is time-barred and the Court should dismiss the claim with prejudice.

### 2.      Dixon has sued the wrong parties

A claim of co-authorship can only be brought against owners of the copyrights. The registrations, however, show that Sneaker Addict and Slate are not owners on any of the twelve musical works referred to in Paragraph 41 of the Amended Complaint. *See* Siev Decl., Ex. A. As such, the claims against Sneaker Addict and Slate should be dismissed with prejudice.[14]

### B.      Dixon Lacks Standing to Bring His Alternative Claim of Infringement

Dixon asserts a claim of infringement "in the alternative." FAC ¶ 147. But the Supreme Court has held that, to sue for infringement, a plaintiff must have a registration from the U.S. Copyright Office or have been refused a registration. *See Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC et al*., 586 U.S. 296, 302-04, 309 (2019). Because the registrations of the works listed in Paragraph 41 do not list Dixon's name as author or claimant, *see* Siev Decl., Ex. A, which Dixon admits, FAC ¶ 43, he lacks standing to assert an infringement claim. As such, his

---

[14] Defendants reserve their rights to argue that Dixon has failed to join indispensable parties, namely the co-owners of the musical works.

infringement claim should be dismissed with prejudice for lack of standing. *See Johnson v. Giles*, No. 1:23-cv-2444, 2024 U.S. Dist. LEXIS 169497, at *39-42 (S.D.N.Y. Sept. 19, 2024).

## VIII.    Dixon Fails To State A Plausible Or Timely Claim For Fraudulent Concealment (Counts VI)

"The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and [(6)] damages." *Stern v. Electrolux Home Prods., Inc.*, No. 22-cv-3679, 2024 U.S. Dist. LEXIS 17004, at *22 (E.D.N.Y. Jan. 30, 2024). Dixon's fraudulent concealment claim against Cartagena, Moreira, and Jospitre is based on the alleged concealment of (1) the existence of agreements monetizing certain musical works to which Dixon claims co-authorship; (2) the gross and net receipts of tours at which Dixon performed; and (3) "the submission of back-dated and 'ghost' split sheets to performance-rights organizations and publishers that excluded Plaintiff…despite Plaintiff's repeated requests for 'paperwork,' 'statements,' and 'contracts.'" FAC ¶¶ 166-168. The claim fails for several reasons.

### A.    Dixon's Fraudulent Concealment Claim is Time-Barred

The statute of limitations for fraud is the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered, or with reasonable diligence could have discovered, the fraud. *See* N.Y. C.P.L.R. 213(8); *Zirvi v. Flatley*, 838 F. App'x 582, 586 (2d Cir. 2020). Dixon's fraudulent concealment claim is time-barred.

To the extent Dixon's claim is based on a failure to disclose sales agreements and split sheets related to musical compositions, FAC ¶¶ 167(a), 167(c), it is time-barred for the same reasons his Copyright Act claim is time-barred. *See* Section VII.A.1, above. Although Dixon does not allege the dates of these agreements or split sheets, the allegedly wrongful act of registering copyrights for musical works without informing Dixon occurred in 2011 and 2014. FAC ¶¶ 41,

33

166(1). Dixon was therefore on inquiry notice well before 2019, which is six years before he filed his original Complaint. Moreover, Dixon admits he was aware he was not being paid the royalties he believed he was due prior to 2023. FAC ¶ 88(f). He therefore cannot take advantage of the two-year discovery rule exception. *See Bryant v. Comm'r of Soc. Sec.*, No. 14-cv-5764, 2017 U.S. Dist. LEXIS 37044, at *9 (S.D.N.Y. Mar. 15, 2017) (dismissing fraudulent concealment claim where plaintiff began receiving incomplete royalty payments more than two years before filing complaint).

As for Dixon's claim relating to concealment of information regarding wages and withholdings, FAC ¶¶ 166(2), 167(b), Dixon was aware as early as 2005, when he alleges he started performing with Cartagena, that he was not receiving the amount he believed he was due or information about tour receipts. Because he was on inquiry notice for twenty years before filing, his claim is also time-barred.

Dixon's fraudulent concealment claim is time-barred and should be dismissed with prejudice.

### B.    Dixon Fails to Sufficiently Plead the Existence of a Duty to Disclose

Fraudulent concealment requires a duty to disclose material facts. Dixon fails to plead facts that would give rise to such a duty.

Dixon alleges that Cartagena, Moreira, and Jospitre had a duty to disclose based on the following allegation: "(a) they possessed superior and, in many instances, exclusive knowledge…; (b) they controlled all accounting, corporate, and intellectual-property interfaces with third parties; and (c) they held themselves out as Plaintiff's trusted managers, business partners, and fiduciaries, repeatedly assuring him that he was 'family,' that 'everything is taken care of,' and that he would receive his agreed percentage of earnings." FAC ¶ 165. None of these suffice to give rise to a duty to disclose.

*First*, that Defendants allegedly possessed superior knowledge is irrelevant. "[A] duty to disclose due to one party's superior knowledge…ordinarily arises only in the context of business negotiations where parties are entering a contract." *Harbinger Capital Partners LLC v. Deere & Co.*, 632 F. App'x 653, 657 (2d Cir. 2015) (summary order). The Amended Complaint does not allege any business negotiation in which information was allegedly withheld.

*Second*, the allegation that Defendants "controlled all accounting, corporate, and intellectual-property interfaces with third parties" does not fall within any recognized legal doctrine giving rise to a duty to disclose.

*Third*, Dixon has not pled facts that would give rise to a fiduciary relationship between him and Cartagena, Moreira, or Jospitre. To the extent he alleges he was an employee (something Defendants dispute, *see* Siev Decl., Ex. B, at 8), "employment relationships do not create fiduciary relationships." *Wilson v. Dantas*, No. 12-cv-3238, 2013 U.S. Dist. LEXIS 3475, at *13 (S.D.N.Y. Jan. 4, 2013), *aff'd*, 746 F.3d 530 (2d Cir. 2014). Moreover, courts have held that the fact that a defendant "collected royalties…which it had an obligation to pass on to plaintiff did not make them plaintiff's fiduciaries." *Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731, 739 (S.D.N.Y. 1988); *see also Sanshoe Trading Corp. v. Mitsubishi Int'l Corp.*, 470 N.Y.S.2d 991, 993 (Sup. Ct. 1984), *aff'd* 479 N.Y.S.2d 149 (1st Dep't 1984) (same). Finally, alleged assurances that Dixon was "family" cannot transform an alleged employer-employee or business relationship into a fiduciary relationship. *See Holloway v. King*, 361 F. Supp. 2d 351, 360 (S.D.N.Y 2005), *aff'd* 161 F. App'x 122 (2d Cir. 2005) (holding that a revenue sharing agreement was a commercial relationship that did not create a fiduciary duty even in the face of conclusory allegations of a "special relationship," "complete trust and confidence," and belief by Plaintiffs that the defendant "would look solely to advance and protect the financial interests of all members of Team [Mike] Tyson.").

35

Because Dixon does not sufficiently plead a duty to disclose, the Court should dismiss the fraudulent concealment claim with prejudice.

### C.    Dixon Fails to Sufficiently Plead That Any Alleged Concealed Fact Was Material or That Dixon Relied on Any Alleged Concealed Fact

Dixon also fails to sufficiently plead that any purported concealed "facts" were material or that he relied on any such concealment.

As for his alleged failure to receive royalties and related income, Dixon had to be aware as of 2011 and 2014, when the works were copyrighted, that he was not receiving *any* royalties. *See* Section VII.A.1, above. Thus, allegedly not being made aware of the existence of agreements monetizing these works or the alleged "back-dated and 'ghost' split sheets," *id*. ¶ 167, was neither material nor relied upon, let alone justifiably relied on. Moreover, even if Dixon was made aware of the amount received in royalties and publishing, that would not have changed that Dixon was receiving nothing. Similarly, Dixon knew as of 2005, when first retained by Cartagena, that he was only receiving $150 to $250 per engagement, not $3,000. *Id*. ¶ 137(b). Being told the tour receipts, *id*. ¶ 167, would not have changed this fact.

As for Dixon's allegation that "he would have ceased performing on tour and contributing to recordings no later than 2011-2012" and taken legal action had he only known the allegedly omitted facts is not plausible. FAC ¶ 168. Not only does this allegation contradict his forced labor claim, but Dixon knew by 2011-2012 that he was not being provided any royalties and was (allegedly) being paid much less than the allegedly agreed-upon $3,000 per engagement. He easily could have ceased accepting engagements or contributing to musical compositions and retained legal counsel then. *See, e.g.*, *Adams v. Labaton, Sucharow & Rudoff LLP*, No. 07-cv-7017, 2009 U.S. Dist. LEXIS 35085, at *15 (S.D.N.Y. Mar. 20, 2009) ("It strains credibility that Plaintiff … was employed with Defendant for over two years before bringing this action in continued,

36

reasonable reliance on Defendant's initial alleged promise when he had not been paid the ten percent he was allegedly due[.]").

Dixon's claims of concealment of material facts and reliance are not plausible and his fraudulent concealment claim should be dismissed with prejudice.

### D. Dixon's Fraudulent Concealment Claim Fails to State a Claim Under Rule 9(b)

Dixon's fraudulent concealment claim fails to meet the heightened pleading standard under Rule 9(b). Where a fraud claim "is premised on concealment…the complaint must…allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Warran v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 621 (S.D.N.Y. 2013). Dixon has failed to plead facts meeting this standard.

For example, Dixon pleads that Defendants concealed "the existence and terms of publishing, administration, and catalog-sale agreements…." FAC ¶ 167. But he does not identify the specific agreements at issue or explain how the failure to disclose them misled him, given that he was aware he was not receiving royalties. As for the alleged "submission of back-dated and 'ghost' split sheets to performance-rights organizations and publishers that excluded" Dixon, *id*. ¶ 167, Dixon provides no details regarding these documents. And because Dixon was aware he was not receiving royalties, failing to disclose these agreements could not have misled him.

Dixon also pleads that gross and net receipts from tours were withheld. *Id*. Dixon, however, alleges he was to be paid $3,000 per performance, *id*. ¶ 35, and does not plead that his pay was tied to tour receipts. He, therefore, has not pled how these alleged omissions misled him. Dixon also claims a June 21, 2019 wage statement was fraudulent, *id*. ¶ 166(2), but he pleads no facts showing what the true amount of withholdings were that were supposedly concealed. And because

Dixon knew he allegedly had the right to $3,000 per performance, the true amount of wages could not have been concealed from him.

Finally, Dixon's allegations that Jospitre made various statements between approximately 2015 and 2020 are insufficient to plead fraud under Rule 9(b) because "broad time ranges do not satisfy Rule 9(b)'s specificity requirement." *United States ex rel. Gordon v. Shiel Med. Lab'y*, No. 16-cv-1090, 2025 U.S. Dist. LEXIS 59439, at *55 (E.D.N.Y. Mar. 29, 2025) (allegations that defendants engaged in fraudulent activity "between 2011-2014" and "2010-2014" were insufficient under Rule 9(b)).

Because Dixon has failed to plead fraudulent concealment with the required particularity, Count VI should be dismissed.

## IX.    Dixon's Unjust Enrichment Claim (Count VII) Fails To Plead A Plausible Claim And Is Time-Barred

Dixon alleges unjust enrichment as an alternative claim "[t]o the extent any court determines that no enforceable contract governs a particular aspect of the relationship." FAC ¶ 173.  The benefits allegedly conferred on Defendants Cartagena, Sneaker Addict, and Slate all relate to Dixon's claims that he (i) created original contributions to Cartagena's music without receiving compensation; and (ii) was paid "only a fraction of the agreed per-show rate of not less than $3,000 per performance" that was "contractually owed to Plaintiff." *Id*. ¶¶ 174-182. Each of these bases for Dixon's unjust enrichment claim fails.

A.    **Dixon's Unjust Enrichment Claim Relating to His Alleged Contributions to Cartagena's Music is Preempted by Federal Law and Barred by the Statute of Limitations**

1.    **Dixon's unjust enrichment claim relating to his alleged contributions to Cartagena's music is preempted by the Copyright Act**

Under 17 U.S.C. § 301(a), the Copyright Act preempts state law claims when:

> (1) The particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S. C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106.

*Baiul v. NBC Sports*, 708 F. App'x 710, 712-713 (2d Cir. 2017). For this reason, "[a] state law claim regarding a work of the type protected by the Copyright Act may proceed only if the claim contains 'extra elements that make it qualitatively different from a copyright infringement claim.'" *Id*. at 712.

Here, the part of Dixon's unjust enrichment claim based on Dixon's alleged contributions to musical works falls within the Copyright Act's category of "musical works, including any accompanying words." 17 U.S.C. § 102(a)(2), (a)(7). Moreover, Dixon claims that Cartagena "exploit[ed] the works identified in paragraph [41]" of the Amended Complaint without paying Dixon royalties or catalog-sale income, and that Slate did not pay him for "royalty, publishing, and catalog-related revenues arising from works identified in paragraph [41]." FAC ¶¶ 175, 181. These alleged rights are equivalent to the Copyright Act rights of reproducing, distributing, and performing the copyrighted work. 17 U.S.C. § 106(1), (3), (4), (6). The preemption test is met.

Numerous courts in this Circuit, including the Second Circuit, have held that a claim of unjust enrichment seeks to protect rights "that are essentially 'equivalent' to rights protected by Copyright Act" and are preempted. For example, in *Weber v. Geffen Records*, the plaintiff alleged that his former bandmates formed the musical group Guns N' Roses and used two compositions

39

without giving him co-authorship attribution. 63 F. Supp. 2d 458, 460 (S.D.N.Y. 1999). The court found preemption because the "plaintiff's basic claim is that because he is a co-author of the copyrighted material and a co-owner of the copyrights, defendants' copyrights should not entitle them to the full bundle of privileges that attach to copyright ownership." *Id*. at 463. The court went on to hold that, "[i]t is only through this basic claim that any enrichment is unjust," and, therefore, "the Copyright Act preempt[ed]" the plaintiff's unjust enrichment claim. *Id*. The fact pattern here is virtually identical to *Weber* and, therefore, to the extent the claim is based on Dixon's alleged musical contributions, dismissal with prejudice is warranted. *See also Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1322 (S.D.N.Y 1997) (dismissing unjust enrichment claim relating to claim the plaintiff created a comic book character the defendants copyrighted and exploited); *Baiul*, 708 F. App'x at 712 (affirming judgment on the pleadings on unjust enrichment claim relating to a video of *Nutcracker On Ice*, holding "the state law claims seek to vindicate rights that are already protected by the Copyright Act.").

### 2. Dixon's unjust enrichment claim relating to musical works is time-barred

The statute of limitations for unjust enrichment in New York is six years when a plaintiff is seeking equitable relief, such as restitution, but only three years for monetary damages. *See, e.g., St. Martinus Univ., N.V. v. SMU LLC*, No. 21-cv-1888, 2023 U.S. Dist. LEXIS 41000, at *29 (E.D.N.Y. Mar. 9, 2023). Moreover, "unjust enrichment claims are not subject to the discovery rule." *Maropakis v. Bank of N.Y. Mellon Tr. Co., N.A.,* No. cv-13-4744, 2015 U.S. Dist. LEXIS 197651, at *23 (E.D.N.Y. May 4, 2015). Instead, the limitations period runs "upon the occurrence of the wrongful act giving rise to a duty of restitution." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013). Here, as noted in Section VII.A.1, above, with regard to Dixon's Copyright Act claim, the allegedly wrongful acts occurred no later than 2011 and 2014 when the

songs were copyrighted, which is well over six years ago. FAC ¶ 41. As such, Dixon's unjust enrichment claim, to the extent it relies on his claim of co-authorship, is time-barred and should be dismissed with prejudice.

### B. Dixon's Unjust Enrichment Claim Relating to His Alleged Failure to Receive His Full Performance Fees is Barred Because He Fails to Plead a Basis For Recovery Absent a Contract and the Claim is Barred by the Statute of Limitations

#### 1. Dixon fails to plead any basis for unjust enrichment other than a contract

The elements of an unjust enrichment claim in New York are "that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered.'" *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (2011). Dixon claims unjust enrichment based, in part, on the allegation that he was paid "only a fraction of the agreed per-show rate of not less than $3,000 per performance" that was "contractually owed to Plaintiff." FAC ¶¶ 174-182. Importantly, a plaintiff cannot recover for unjust enrichment "where an enforceable contract governs the same subject matter." *Amable v. New Sch.*, 551 F. Supp. 3d 299, 318 (S.D.N.Y. 2021).

Dixon attempts to plead unjust enrichment in the alternative to the extent it is determined there is no valid contract, FAC ¶ 173. But in the same Count, he premises his entitlement to additional performance fees on a contractual agreement. FAC ¶¶ 179, 183 (alleging "performance fees ***contractually owed*** to [Dixon]" and that he "did not receive ***the agreed per-show compensation***") (emphasis added). Although Defendants dispute the existence of any agreement providing for a $3,000 per performance fee, even setting that dispute aside, Dixon fails to plead any basis for Defendants having been unjustly enriched other than through a contractual agreement. Dixon pleads that he was paid for his services at a rate of $150 to $250 per show. FAC ¶¶ 8, 29-30, 93, 137(b). The only possible basis for claiming entitlement to more is through a

41

contract, and indeed, Dixon does not plead any other legal basis. And without pleading some basis for entitlement other than a contract, his claim fails. *See Holloway*, 361 F. Supp. 2d at 361 (dismissing unjust enrichment claim where there was "nothing in the complaint to suggest that, had these agreements not existed, it would be inequitable or unjust for [defendant] not to pay [plaintiff] the share of [defendant's] promotion earnings that [plaintiff] says is due him.").

**2.      Dixon's unjust enrichment count relating to his alleged failure to receive his full performance fees is barred by the statute of limitations**

As noted in Section IX.A.2, above, the statute of limitations for unjust enrichment is three years for monetary damages, and the discovery rule does not apply. With regard to his claim for unpaid wages, Dixon is not seeking disgorgement of amounts received by Defendants, but rather the amount he believes he is entitled to in compensation. That is monetary damages. *See St. Martinus*, 2023 U.S. Dist. LEXIS 41000, at *29-30 (holding that the plaintiff was seeking monetary damages when claiming that the defendant wrongfully retained student loan proceeds that should have gone to the plaintiff); *Don Lia v. Saporito*, 909 F. Supp. 2d 149, 167 (E.D.N.Y. 2012) (holding that the plaintiff was seeking monetary damages when claiming that the defendant was enriched by the value of a dealership they could not have obtained without the plaintiff's capital). Dixon alleges that he was employed until 2020, FAC ¶ 30, but did not file suit until June 19, 2025, ECF 3, which is well over three years. His claim is time-barred and the Court should dismiss the claim with prejudice.[15]

---

[15] In the event the Court were to determine that the six-year limitations period applies, Dixon's claims for improper wage payments prior to June 19, 2019 would be time-barred, and Defendants request that the Court rule that all claims for improper wage payments from 2005 to June 18, 2019 are dismissed with prejudice. *See Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y 2013) (narrowing unjust enrichment claim to fees collected within six years of filing).

C.     **Dixon's Unjust Enrichment Claim is Duplicative of His Fraudulent Concealment Claim**

Dixon's unjust enrichment claim should be dismissed as duplicative of his fraudulent concealment claim. Here, the unjust enrichment claim is "predicated on exactly the same factual allegations as [Dixon's] fraud claim," *Union Mut. Fire Ins. Co. v. Stand Up MRI of Brooklyn, P.C.*, No. 24-cv-6652, 2025 U.S. Dist. LEXIS 222844, at *19 (E.D.N.Y. Nov. 12, 2025), namely the failure to pay wages, royalties, and publishing income. *Compare* FAC ¶ 171 *with* ¶ 187. Moreover, the "damages available under [Dixon's] unjust enrichment claim would be a strict subset of those available under the fraud claim…." *Union Mut.*, 2025 U.S. Dist. LEXIS 222844, at *19. As such, the Court should dismiss Dixon's unjust enrichment claim. *See Logan v. Playa Bowls, LLC*, No. 25-cv-6640, 2026 U.S. Dist. LEXIS 61199, at *18 (S.D.N.Y. Mar. 23, 2026) (dismissing unjust enrichment claim finding that the claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").

X.     **Dixon Fails To State Plausible Or Timely Claims For Aiding And Abetting Fraud And Wage Theft (Counts VIII and IX)**

There can be no aiding and abetting fraud or wage theft claims without an underlying fraud or wage theft claim. *See Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405, 424 (S.D.N.Y. 2022) (plaintiff "cannot plead…aiding and abetting fraud" where it failed to sufficiently "plead a common law fraud claim"). Because Dixon's fraud and wage theft claims should be dismissed, *see* Sections I and VIII, above, the Court should also dismiss Dixon's aiding and abetting claims. Further, as discussed in Roc Nation's Motion to Dismiss at Section III.A, there is no cause of action for aiding and abetting wage theft.

As for Dixon's claim that Jospitre aided and abetted the alleged fraud, Dixon only alleges that he messaged Jospitre about a royalty dispute and Jospitre asked about Dixon's claim and replied that Dixon should reach out to Moreira. FAC ¶¶ 190, 192. This cannot constitute substantial

43

assistance. *See EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, 724 F. Supp. 3d 340, 362 (S.D.N.Y. 2024) ("Awareness and approval, standing alone, do not constitute substantial assistance."). Jospitre is not alleged to have done anything to advance any alleged fraud and, in fact, is merely alleged to have told Dixon to contact someone else. Moreover, as for Dixon's allegation that Jospitre reassured him that his financial issues "would be 'fixed,'" FAC ¶ 194, Dixon would have known shortly after any such statement was made whether those issues were resolved to his satisfaction and, therefore, the allegation cannot support a claim of substantial assistance. Dixon's claim against Jospitre is facially deficient.

## XI.    Dixon Fails to State a Plausible or Timely Civil Assault Claim (Count XI)

Dixon alleges civil assault against Defendants Torres and Cartagena (although only Torres is listed in the heading to Count XI). Dixon claims that Torres and Cartagena, either directly or through individuals associated with Torres, made a series of threats against Dixon, often over Instagram and in a purported recorded telephone conversation. These allegations, however, are not only largely untimely as to Torres and completely untimely as to Cartagena, but on their face, fail to state a claim.

### A.    Most of Dixon's Civil Assault Claims are Barred by the Statute of Limitations

As a threshold matter, almost all of Dixon's assault allegations are barred by the one-year statute of limitations for assault. *See Cohen v. Am. Airlines, Inc.,* 13 F.4th 240, 247 (2d Cir. 2021). Even if the Court relates the claim back to the original Complaint filed on June 19, 2025, any assault claim based on conduct before June 14, 2024 is time-barred. That encompasses many of the allegations against Torres and all of the allegations against Cartagena, namely:

- Torres's alleged June 2019 in-person threat (Compl. ¶ 237);

- Cartagena's alleged in-person statements between 2014 and 2018 (*id.* ¶ 253-54); and

44

- The alleged statements Torres and Cartagena made as part of the alleged forced labor and sex trafficking violations, which could have only been made on or before the end of 2020, given that Dixon alleges he no longer performed with Cartagena after 2020. FAC ¶ 30.  These can be found in:

    o Paragraphs 239 and 243 against Torres (compare with ¶ 108 in the forced labor count); and

    o Paragraphs 256-260 against Cartagena (compare with ¶¶ 61, 108, 110 in the forced labor allegations and count).

- One allegation is alleged to have happened on both May 19, <u>2023</u> ***and*** May 19, <u>2025</u>. Compare ¶¶ 72 and 245. This alleged assault allegation should also be dismissed as time-barred because, "where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true…." *Lenart*, 131 F. Supp. 3d at 67.

Dixon's invocation of the "continuing tort doctrine," FAC ¶ 267, cannot save these claims. Civil assault is a discrete tort that accrues when the plaintiff is placed in apprehension of imminent harm; it is not a continuing tort that resets with each new communication. *See Lettis v. United States Postal Serv.*, 39 F. Supp. 2d 181, 204 (E.D.N.Y. 1998) ("Causes of action for assault and battery accrue immediately upon the occurrence of the tortious act and thus, are not appropriate for the continuing violation exception."). Further, "[t]he doctrine of equitable tolling applies when a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action." *Shoreham Hills, LLC v. Sagaponak Dream House, LLC*, No. 613802-19, 2020 N.Y. Misc. LEXIS 1023, at *6 (Sup. Ct. NY Mar. 4, 2020). Dixon cannot allege that he was not aware of each alleged assault when it occurred.

In sum, the assault allegations in Paragraphs 237-239, 243, and 245 of the Amended Complaint against Torres and all assault allegations alleged against Cartagena should be dismissed with prejudice as time-barred, leaving only the allegations in Paragraphs 240-242 and 244 against Torres. However, as shown below, these allegations fail to state a plausible claim for assault.

45

### B.    None of Dixon's Allegations State a Claim for Civil Assault

"Under New York law, assault is the intentional placing of another person in apprehension of imminent harmful or offensive contact." *Castro v. Local 1199*, 964 F. Supp. 719, 732 (S.D.N.Y. 1997); *see also Farash v. Cont'l Airlines, Inc.,* 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008), *aff'd,* 337 F. App'x 7 (2d Cir. 2009) ("a civil assault action lies where there is 'an intentional attempt or threat to do [physical] injury or commit a battery,' … thereby placing an individual in reasonable apprehension of bodily harm."). Critically, "[w]ith respect to verbal threats, 'words not accompanied by circumstances inducing a reasonable apprehension of bodily harm, such as movements of drawing back a fist, aiming a blow, or the show of a weapon, do not constitute an assault.'" *Castro*, 964 F. Supp. at 732; *see also Bouveng v. NYG Cap. LLC*, No. 14-cv-5474, 2015 U.S. Dist. LEXIS 70976, at *27 (S.D.N.Y. June 1, 2015) ("[h]arsh words or verbal threats, standing alone, do not constitute assault"). Indeed, "[a] threat alone cannot support a claim for assault." *Ma v. Zhou*, No. 23-cv-4616, 2024 U.S. Dist. LEXIS 192874, at *7 (E.D.N.Y. Oct. 23, 2024). A threat, even a death threat, must be accompanied by circumstances that place a person in fear or reasonable apprehension of imminent bodily injury. *Id*. (dismissing assault claim where defendant made death threats accompanied by a throat-slitting hand gesture, because even those allegations conveyed only "a potential for future, non-imminent harm"). Moreover, "[a] threat of future force does not constitute an assault." *Zheng v. Rivera,* No. 157108/14, 2014 N.Y. Misc. LEXIS 5399, at *4-5 (N.Y. Sup. Ct. Dec. 9, 2014). Thus, "[i]f the parties are so far apart as to make immediate contact impossible, there is no assault." *Id*. For that reason, "telephoned threats and those made over the Internet do not suffice to constitute a valid claim for assault." *Id*.; *see also Brown v. Montefiore Med. Ctr.,* No. 18-cv-03861, 2019 U.S. Dist. LEXIS 78915, at *32-35 (S.D.N.Y. May 8, 2019) (dismissing assault claim where the defendant allegedly stood near the plaintiff yelling "You'll see. You're going to get yours."); *Silver v. Kuehbeck*, No. 05-cv-35, 2005 U.S. Dist.

46

LEXIS 26956, at *38-39 (S.D.N.Y. Nov. 7, 2005) (dismissing assault claim where the defendant allegedly approached the defendant saying as the defendant was walking away "I'm going to have you taken care of.").

Here, none of Dixon's assault allegations satisfy the standards set forth above, as the allegations are mere threats, with no other gestures or conduct, are forward-looking, reference future harm rather than an immediate application of force, and many were over the telephone or internet. Each allegation of assault should be dismissed.

### 1.    None of Dixon's allegations against Torres state a claim for civil assault

The only allegations against Defendant Torres that can survive the statute of limitations do not meet the elements of assault. Dixon alleges that, in Instagram messages, Torres told Dixon "I'm telling u what I'm going to do to u so beware… I'm going to give it to u for sure." FAC ¶ 240; "You could have Jesus with you… you food we gonna eat," *id*. ¶ 241; and "You put that video up and imma make u pay in the worst way," *id*. ¶ 242. These, however, are mere threats made on social media, not face-to-face, with no gestures or circumstances that would give rise to a reasonable fear of imminent bodily harm. Indeed, these statements are uniformly forward-looking, each conditioning future harm on Dixon's future conduct. In fact, Dixon pleads that he understood these three specific messages as threats of harm "***if he continued to speak publicly about Defendants [sic] exploitation***." FAC ¶ 70 (emphasis added). The same analysis applies to the alleged statement attributed to an individual acting in concert with Torres: "for real ta they will hurt you I know who you are and where you live at… leave that situation alone… raise your kids… I don't want anything to happen to you." *Id*. ¶ 244. This is a mere threat of future harm if Dixon does not change his behavior. Moreover, Dixon alleges this person "sent [Dixon] a message," *id*. ¶ 244, which implies that they were not face-to-face.

As for the statements barred by the statute of limitations, the alleged June 2019 statement, "[i]f you don't get on that plane, we'll have people waiting for you back in the Bronx," FAC ¶ 237, is, by its own terms, a warning about the future, not a threat of immediate physical contact. The alleged Instagram message Torres sent between 2023 and 2025, "[y]ou got 48 hrs to fall back yap, you been warned son," *id*. ¶ 239, is also by Instagram and, on its face, not imminent, which Dixon admits by pleading that he understood this to mean that he would be harmed "***if he continued to speak publicly about Defendants [sic] exploitation***." FAC ¶ 70 (emphasis added). The same goes for the alleged "buck 50" message attributed to Torres's associate, *id*. ¶ 243, which was a remote message, not face-to-face, and Dixon admits he understood this as a threat "***if he continued to assert his rights or speak publicly***." *Id*. ¶ 108 (emphasis added). And, finally, the alleged recorded telephone conversation in which Torres allegedly stated "in substance" that "my hood is gonna bring it right over there," that anyone who "violated" Cartagena "gotta get… hands on," and that other people "had been 'pounded out' for perceived disloyalty," *id*. ¶ 245, contained alleged telephone threats, which cannot rise to civil assault, as they are mere threats of future harm not accompanied by anything that would give rise to a reasonable fear of imminent harm.

Because all of the alleged assault allegations against Torres are either barred by the statute of limitations and/or do not rise to the level of civil assault, the civil assault claim against Torres should be dismissed in full.

> **2.    None of Dixon's allegations against Cartagena state a claim for civil assault**

As noted above, all of the assault allegations against Cartagena are time-barred. They also do not meet the requirements of a civil assault allegation.

Cartagena's alleged in-person statements between 2014 and 2018 that "people would handle you in the street" if Plaintiff went against him, FAC ¶¶ 253-54, are quintessentially forward-

looking—they warn of consequences for potential future disloyalty and are not threats of imminent harm. Similarly, the alleged statements Cartagena made via an Instagram account or through a message also would not, even if proven true, rise to the level of assault. The messages—"Don't u think people gotta be made an example of?" FAC ¶ 256; "If u do this door is closed... but don't worry ups is hiring," *id*. ¶ 257; "Be very careful… we let you live," *id*. ¶ 258; "U love ur family right," *id*. ¶ 259; and the boast that Cartagena did not "need to lift a finger" because "everyone [is] willing to do it for me," *id*. ¶ 260—are not only remote messages, which, as shown above, cannot give rise to an assault claim, but they describe threats of future violence, not an imminent application of force.

Because the assault allegations against Cartagena are time-barred and fail to plead civil assault, the assault claim against Cartagena should be dismissed with prejudice.

## XII. Dixon's Fraudulent Conveyance Claim (Count XII) Fails To State A Plausible Claim And Is Time-Barred

In Count XII, Dixon asserts a fraudulent conveyance claim against Cartagena, Slate, Inc., and "Transferee Defendants" that are not named, under Sections 273-276 of the former New York Debtor & Creditor Law ("NYDCL"),[16] which was in effect until April 4, 2020. *See Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020) (Summary Order). Dixon alleges he is a creditor because he holds claims for unpaid wages and damages as alleged in the Amended Complaint, FAC ¶ 270, and that, after Dixon began asserting his rights, "[u]pon information and belief," Cartagena caused transfers to be made. *Id*. ¶ 272. He claims that there are "fraudulent transfers described in paragraph 133" of the Amended Complaint, when there are no such allegations. The only allegations of actual transfers are three alleged transfers described in Paragraph 274 of the Amended Complaint, one in

---

[16] The NYDCL is attached as Exhibit C to the Siev Declaration.

49

2019, one in 2025, and one undated transfer of PPP loan proceeds. Each of these alleged transfers, however, is both time-barred or not covered by the NYDCL and fail to state a claim.

>    A.    **Each of the Alleged Fraudulent Transfers Are Either Time-Barred or Not Covered By the NYDCL**

The former NYDCL had a six-year statute of limitations. *See Ray v. Ray*, No. 20-cv-6720, 2021 U.S. Dist. LEXIS 56990, at *6 (S.D.N.Y. Mar. 25, 2021), *aff'd* 22 F.4th 69 (2d Cir. 2021). Moreover, the fraudulent conveyance claim does not relate back to the original Complaint. Under FRCP 15(c)(1)(B), claims relate back where "facts provable under the amended complaint arose out of the conduct alleged in the original complaint" or "out of the same set of operative facts." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228-29 (2d Cir. 2006). Because there were no fraudulent conveyance allegations in the original complaint, only transfers within six years of March 26, 2026, the date of the Amended Complaint, survive. Thus, the allegation regarding the alleged 2019 transfer fails. FAC ¶ 274(a).

Additionally, the NYDCL only applies to transactions ***prior to*** April 4, 2020. *See Ray*, 799 F. App'x at 31 n.1 (Summary Order). Thus, the alleged transfer in 2025, FAC ¶ 274(b), is not covered by the NYDCL. The same is true for the alleged transfer of PPP loan proceeds (*id*. ¶ (274(c)); the U.S. government only began accepting PPP loan applications April 3, 2020, *see* U.S. Small Business Administration, *SBA's Paycheck Protection Program for Small Businesses Affected by the Coronavirus Pandemic Launches*, https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-affected-coronavirus-pandemic-launches (Apr. 3,

2020),[17] and it is not plausible to believe that Sneaker Addict made an application, received the loan, and transferred it to Cartagena all on April 3, 2020.

The Court should dismiss Dixon's fraudulent conveyance claim with prejudice.

**B.      Dixon's Claim Under Sections 273, 273-1, 274, and 275 Fail Because Dixon Fails to Allege Any Facts That Would Imply That the Alleged Transfers Were Made Without Consideration**

Sections 273, 273-a, 274, and 275 require that any transfer be "without a fair consideration." Siev Decl., Ex. C. Dixon's allegations in this regard, however, are purely conclusory without any facts from which the Court can infer that the transfers were made without consideration, which is insufficient to state a claim. *See Waite v. Schoenbach,* No. 10-cv-3439, 2010 U.S. Dist. LEXIS 115470, at *17 (S.D.N.Y. Oct. 29, 2010) (holding that allegations such as "transfers were made without fair consideration" are conclusory and cannot survive a motion to dismiss). The alleged 2019 transfer is alleged to be "for no documented consideration," FAC ¶ 274(a), which is conclusory. The alleged 2025 transfer is alleged to have been made "for little or no fair consideration," *id.* ¶ 272, which also is conclusory, and also "for consideration," *id.* ¶ 274(b), which is inconsistent. *See Lenart*, 131 F. Supp. 3d at 67 ("[W]here a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true…."). And the PPP loan proceeds are not alleged to have been transferred to Cartagena without fair consideration. FAC ¶ 274(c). Thus, the fraudulent conveyance claims brought under Sections 273, 273-1, 274, and 275 should be dismissed.

---

[17] The Court can take judicial notice of this fact. *See Office Solution Grp., LLC v. Nat'l Fire Ins. Co.*, 544 F. Supp. 3d 405, 412 (S.D.N.Y. 2021) (allowing judicial notice of documents publicly accessible on a government website).

**C.     Dixon's Claim Under Section 273 Fails Because He Has Failed to Plead Any Facts That Would Establish Insolvency at the Time of Transfers or That the Transfers Rendered Any Person or Entity Insolvent**

Section 273 requires that the conveyance have been "incurred by a person who is or will be thereby rendered insolvent." Siev Decl., Ex. C. Dixon, however, does not allege that any transfers met this requirement, pleading only that "***to the extent*** the transfers rendered Cartagena insolvent or occurred while he was insolvent," they would meet Section 273. FAC ¶ 275 (emphasis added). To adequately plead insolvency, a plaintiff must plead "sort of 'balance sheet'...information...that the Court can use to infer that the corporation's liabilities exceeded their assets ***at the time the transfers took place***." *In re Trinsum Group, Inc.*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011) (emphasis added). Conclusory allegations of insolvency are insufficient. *See Waite*, 2010 U.S. Dist. LEXIS 115470, at *17 (allegations that "transfers were made without fair consideration" and "rendered Defendants insolvent" found insufficient). Similarly, to plead that the transfer would render an entity insolvent requires facts that would establish that a party "would be unable to pay because of the cash transfer(s)." *Ornrat Keawsri v. Ramen-Ya Inc.*, No. 17-cv-2406, 2019 U.S. Dist. LEXIS 232625, at *13 (S.D.N.Y. Aug. 5, 2019). Here, Dixon's conclusory allegation of insolvency fails to state a claim and the Court should dismiss the Section 273 fraudulent conveyance claim.

**D.     Dixon's claim under Section 273-a Fails Because He Has Failed to Plead That a Judgment Has Been Entered In His Favor and Not Paid**

Section 273-a only applies "when the person making [the transfer] is a defendant in an action for money damages or a judgment in such action has been docketed against him," and "after final judgment for the plaintiff, the defendant fails to satisfy the judgment." Siev Decl., Ex. C. Because there has been no judgment against any Defendant, the claim under Section 273-a fails. *See Frybergh v. Weissman*, 536 N.Y.S.2d 465, 466 (2d Dep't 1988) (affirming dismissal of

52

plaintiff's DCL 273-a claim because plaintiff "obtained no judgment against any of the defendants").

> **E.    Dixon's Claims Under Sections 274 and 275, to the Extent He Intended to Make Them, Fail Because He Does Not Mention These Statutes in the Body of the Amended Complaint and He Pleads No Facts to Support Them**

Dixon does not mention Sections 274 or 275 in the body of his fraudulent conveyance count, and there is no reason to believe he intended to assert claims under these Sections. Section 274 covers a conveyance without receiving fair consideration that left a defendant with "an unreasonably small capital" as a result. Siev Decl., Ex. C. Dixon, however, fails to plead that any Defendant was left with "unreasonably small capital" following any conveyance. Section 275 requires that Dixon allege that the transferor had a "subjective intent or belief that [he] will incur debt [he] cannot pay at maturity," *Innovative Custom Brands, Inc. v. Minor*, No. 15-cv-2955, 2016 U.S. Dist. LEXIS 8354, at *9 (S.D.N.Y. Jan. 25, 2016*)*, yet Dixon fails to plead facts relating to the transferor's subjective intent as to a debt. The Court should dismiss the fraudulent conveyance count to the extent it intends to assert a claim under either Section 274 or 275.

> **F.    Dixon Has Failed to Plead Fraud With Particularity and, Therefore, His Claim Under Section 276 Fails**

Section 276 requires an "actual intent . . . to hinder, delay, or defraud either present or future creditors." In contrast to other Sections, Section 276 is concerned with "actual fraud" and thus focuses on the transferor's intent. *See Geo-Group Comms., Inc. v. Chopra*, No. 15-cv-1756, 2016 U.S. Dist. LEXIS 98716, at *11-12 (S.D.N.Y. July 27, 2016). For this reason, any claim under Section 276 must meet the heightened pleading requirements of Rule 9(b). *See In re Sharp Intern. Corp.*, 403 F.3d 43, 56 (2d Cir. 2005). In other words, the complaint must state with particularity the circumstances constituting fraud. *Nantong Sanhai Garment Co. v. Fab Mill Inc.*, No. 21-cv-859, 2022 U.S. Dist. LEXIS 32975, at *6-7 (S.D.N.Y. Feb. 23, 2022).

Here, Dixon has failed to plead the transfers with any specificity. For the alleged transfer from 2025, FAC ¶ 274(b), Dixon fails to identify the date, amount, or recipient of the transfer, which is insufficient to state a claim under Section 276. *In re Fabrikant & Sons, Inc.*, 394 B.R. 721, 734 (Bankr. S.D.N.Y. 2008) (dismissing intentional fraudulent conveyance claim where the amended complaint failed to "identify any specific transfer…transferee, or date of transfer"). Similarly, for the alleged transfer of PPP loan proceeds, *id*. ¶ 274(c), Dixon fails to identify the date (or even the year) or amount of the transfer, which is "fatal" to the claim. *In re Fabrikant & Sons, Inc.*, 480 B.R. at 491. As for the alleged 2019 transfer, *id*. ¶ 274(a), Dixon asserts only that it occurred "[o]n or about 2019," which is too vague to meet the Rule 9(b) standard. *See Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 646 (E.D.N.Y. 2003).

As for intent to defraud, "[t]o survive a motion to dismiss, the facts supporting general allegations of 'actual intent to hinder delay, or defraud' must be 'pled with specificity.'" *Ray*, 799 F. App'x at 31-32. Moreover, "[T]he plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent…." *Id*. (*quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004)) (emphasis in original). "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors," the Second Circuit allows the pleader "to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *In re Sharp*, 403 F. 3d at 56. These include "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business, inadequacy of the consideration;…and retention of control of the property by the transferor after the conveyance." *Id*. Dixon, however, fails to plead any badges of fraud "with sufficient specificity to survive a motion to dismiss." *Ray*, 799 F. App'x at 32. Dixon pleads that the transferees were insiders but the 2025 transfer is alleged to have been

54

made "to a third-party catalog purchaser for consideration." FAC ¶ 274(b). He also pleads "the lack of fair consideration," which is conclusory, as well as "Cartagena's knowledge of [Dixon's] claims at the time of the transfer," and that the alleged transfers were in "close proximity to [Dixon's] demands and anticipated litigation," which makes no sense for the pre-2025 alleged transfers. *Id*. ¶ 273. Put simply, Dixon pleads nothing that leads to a strong inference of fraudulent intent. *See Ray*, 799 F. App'x at 32-33 (affirming the district court's finding that plaintiff had not pled intent "with sufficient specificity"). Dismissal is warranted.[18]

## XIII. Dixon Should Not Be Allowed To Replead His Fundamentally Flawed Complaint

Dismissal with prejudice is warranted because Dixon has been afforded an opportunity to cure the deficiencies in his original Complaint but failed to cure them. *See Elgalad v. N.Y.C Dep't of Educ.*, No. 17-cv-4849, 2019 U.S. Dist. LEXIS 170211, at *23 (S.D.N.Y. Sept. 30, 2019) (denying leave to amend where the plaintiff did not cure deficiencies in light of a motion to dismiss and provided no attempt at showing facts it would plead that would remedy the defects); *West v. Sambazon, Inc.*, 750 F. Supp. 3d 356, 376 (S.D.N.Y. 2024) (same).

Moreover, granting leave to amend would only serve to prolong what has been a calculated campaign of defamation, extortion, and malicious harassment designed to destroy Defendants' reputations and businesses. Dixon's Complaint contains knowingly false and outrageous allegations, including unspeakable false accusations of forced labor and sex trafficking. Defendants should not be forced to continue living under the cloud of these baseless accusations while Dixon attempts to salvage claims he could not properly plead twice. Every day these

---

[18] "In an action to set aside an alleged fraudulent conveyance, the transferee of the subject property is a necessary party." *Alvaro v. Faracco*, 927 N.Y.S.2d 366, 367 (2d Dep't 2011). Defendants reserve their rights to argue that Dixon has failed to join indispensable parties, namely the transferees of the alleged 2019 and 2025 transfers.

allegations remain pending causes ongoing reputational harm to Defendants that no eventual dismissal can fully remedy. If the Court grants leave to amend and Dixon files yet another deficient complaint, Defendants will be forced to brief another round of motions to dismiss, further prolonging this abusive litigation, all while Dixon's meritless and salacious allegations linger in the public record.

## **CONCLUSION**

For these reasons, Defendants request that the Court dismiss the Amended Complaint with prejudice.

Dated:    May 15, 2026
          New York, New York

By:    */s/ Jordan W. Siev*

Jordan W. Siev
**REED SMITH LLP**
599 Lexington, 22nd Floor
New York, New York 10022
jsiev@reedsmith.com
212-205-6085

Joseph Tacopina
Chad Seigel
**TACOPINA SEIGEL & DEOREO**
275 Madison Avenue, 35th Floor
New York, New York 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
212-227-8877

*Attorneys for Defendants Joseph
Antonio Cartagena, Slate, Inc.,
Sneaker Addict Touring LLC*

By:    */s/ David H. Wollmuth*

David H. Wollmuth
Adam M. Bialek
Phillip R. Schatz
Russell B. Filip
**WOLLMUTH MAHER &
DEUTSCH LLP**
500 Fifth Avenue
New York, NY 10110
dwollmuth@wmd-law.com
abialek@wmd-law.com
pschatz@wmd-law.com
rfilip@wmd-law.com

*Attorneys for Defendants Richard
Jospitre and Peter Torres*

By:    */s/ Reed Brodsky*

Reed Brodsky
Michael L. Nadler
**GIBSON, DUNN & CRUTCHER
LLP**
200 Park Avenue
New York, NY 10166
rbrodsky@gibsondunn.com
mnadler@gibsondunn.com

*Attorneys for Defendant Erica
Juliana Moreira*

56

## **WORD CERTIFICATION**

I hereby certify that the word count of this Memorandum of Law complies with the word limit of Local Civil Rule 7.1(c), as modified by the Court's October 15, 2025 Order. According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Rule 7.1(c), is 18,009 words.

Dated: New York, New York

May 15, 2026

*/s/ Jordan W. Siev*
Jordan W. Siev