# EXHIBIT B



# T. A. BLACKBURN LAW

### TYRONE A. BLACKBURN

MEMBER OF
NY, DC & NJ BAR

FEDERAL MEMBERSHIP
EDNY, NDNY, SDNY & DNJ

1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

March 23, 2025

Joseph Antonio Cartagena
Professionally known as "Fat Joe"
c/o Rich Jospitre aka "Rich Player"
[Business Address if known]

**Re:** Representation of Terrance Dixon aka "TA"
Uncompensated Contributions to Musical Works

Dear Mr. Cartagena:

Please be advised that this firm represents Terrance Dixon, professionally known as "TA," in connection with his authorship, performance, production, and other creative contributions to numerous musical works released by or affiliated with you.

This letter serves as formal Notice of Representation and a demand for immediate corrective action related to Mr. Dixon's copyright interests, unpaid royalties, and unlawful omission from proper crediting and registration of works under the U.S. Copyright Act of 1976, as amended (17 U.S.C. §§ 101 et seq.).

## I.      BACKGROUND AND WORKS AT ISSUE

Terrance Dixon (also known as "TA") is a New York resident and longtime musical collaborator of Joseph "Fat Joe" Cartagena. For over 16 years, Mr. Dixon contributed extensively as a lyricist and vocalist to numerous commercially successful songs and albums by Fat Joe – in fact, Dixon estimates he wrote or co-wrote approximately 80–90% of the lyrics on multiple Fat Joe albums. These contributions spanned recording sessions in New York (Mr. Dixon's home state) and Miami, Florida. Despite Dixon's substantial creative input, no written contract was ever executed between Dixon and Fat Joe. To date, Mr. Dixon has never been credited or compensated for his authorship and vocal contributions. Fat Joe and related entities have garnered significant profits and industry acclaim from the songs Dixon worked on, while Dixon himself has received nothing.



📞 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com



Confidential

CARTAGENA_0000626



## T. A. BLACKBURN LAW

Mr. Dixon's role was essentially that of a ghostwriter and uncredited vocalist, relying on trust and repeated assurances that he would eventually "be taken care of." Over the years, Dixon sought recognition and payment for the hit songs he helped create, but those requests have been ignored or denied. Fat Joe has continued to exploit the songs (through album sales, streaming, live performances, etc.) without providing Dixon any share of the royalties or credit for his work. Given the absence of a formal contract, Mr. Dixon intends to rely on New York's tort and equity law to recover the compensation and recognition he is due. This memorandum outlines the legal doctrines and precedents under New York law that support Mr. Dixon's claims, and sets forth a demand for an amicable resolution, failing which Mr. Dixon will pursue litigation (including a request for a full audit of music royalties).

II. **LEGAL DOCTRINES SUPPORTING DIXON'S CLAIMS (NO CONTRACT SCENARIO)**

In New York, even without a written contract, several common-law (tort and quasi-contract) theories can provide relief to someone in Mr. Dixon's position. The key applicable doctrines are unjust enrichment, quantum meruit, constructive trust, and conversion, as well as statutory protections for one's persona and deceptive business practices. Each is addressed below, with relevant law and case examples.

1. **Unjust Enrichment**

Unjust enrichment is a broad equitable doctrine that prevents one party from unfairly benefitting at another's expense. New York's highest court has made clear that *"the law of unjust enrichment prohibits [a] defendant from profiting at [the] plaintiff's expense without providing fair and reasonable compensation."* In other words, "unjust enrichment occurs when one party profits from another's work without proper compensation."

Here, Fat Joe undeniably benefitted from Dixon's songwriting and vocals – these creative works contributed immensely to Fat Joe's commercial success – yet Dixon was never paid or credited.

New York courts will impose an obligation to pay restitution in such circumstances to remedy the injustice. The elements of an unjust enrichment claim are: (a) the defendant was enriched, (b) at the plaintiff's expense, and (c) it is against equity and good conscience to permit the defendant to retain that benefit without paying.

 

Confidential





## T. A. BLACKBURN LAW

All these elements are present: Fat Joe received financial benefits (album sales, streaming revenue, etc.) attributable in large part to Dixon's contributions, and it would be inequitable for Fat Joe to retain those profits while Dixon receives nothing.   Notably, the lack of a formal contract actually strengthens an unjust enrichment claim. Courts have emphasized that an unjust enrichment claim is viable especially when no valid contract governs the subject matter (since if a contract existed, one would sue for breach instead).

In a 2024 New York Appellate case, the court reaffirmed that unjust enrichment applies where a defendant "retains a benefit that rightfully belongs to the plaintiff and fails to equitably compensate them for their contributions."

Here, Dixon's creative contributions rightfully entitle him to a share of the rewards. Thus, unjust enrichment is a strong cause of action for Dixon to recover the reasonable value of the benefit conferred on Fat Joe.

> *(Case example:* In a recent song authorship dispute, a songwriter who contributed to tracks without a contract sued a recording artist for unjust enrichment and other claims. The court noted that if the plaintiff is indeed an uncredited co-author, the artist has been unjustly enriched by exploiting the works without proper payment. The court allowed the unjust enrichment claim to proceed, ordering that if proven, the artist must disgorge profits earned from the songs.)*

2. **Quantum Meruit (Reasonable Value of Services)**

Closely related to unjust enrichment is a claim for quantum meruit, which allows recovery of the reasonable value of services rendered in the absence of a contract. Under New York law, *"the performance and acceptance of services gives rise to the inference of an implied contract to pay for the reasonable value of such services."*

In other words, if Person A knowingly accepts valuable services from Person B, the law implies a promise that Person A will pay Person B what those services are worth, even if no express agreement was made.

To establish quantum meruit in New York, a plaintiff must show: (1) performance of services in good faith, (2) the defendant accepted or used those services, (3) the plaintiff expected to be compensated, and (4) the reasonable value of the services.



📞 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com

Confidential



# T. A. BLACKBURN LAW

Mr. Dixon can readily satisfy these elements: he devoted years of creative labor (lyrics and vocals) in good faith, Fat Joe knowingly accepted and used Dixon's work in recordings and performances, Dixon had a clear expectation of compensation (as is customary in the industry for songwriters/vocalists), and Dixon can demonstrate the market value of his contributions (e.g. by pointing to royalty rates or songwriter fee standards in the music industry).

New York courts have allowed quantum meruit claims to proceed for artists and collaborators in similar situations. For example, one New York court held that an artist who contributed to a music and performance project without a finalized contract could seek quantum meruit payment for his role in the project's success. The court reasoned that the claim was "not preempted" by copyright law because the plaintiff was *not* alleging unauthorized use of his work, but rather authorized use without proper payment – essentially a breach of an implied promise to pay for services.

Likewise, Mr. Dixon is not accusing Fat Joe of "stealing" his lyrics (Dixon willingly contributed them), but of accepting his work and then failing to pay the agreed or expected share. Quantum meruit ensures Dixon can recover the fair value of the songwriting and vocal services he provided.

### 3. Constructive Trust (Disgorging Royalties in Equity)

A constructive trust is an equitable remedy that a court can impose to prevent unjust enrichment in situations where someone has obtained or holds property that rightfully belongs to another. The classic elements for a constructive trust under New York law are: (1) a confidential or fiduciary relationship, (2) a promise (express or implied), (3) a transfer of property made in reliance on that promise, and (4) resulting unjust enrichment (see *Sharp v. Kosmalski*, 40 N.Y.2d 119 (1976)). Unlike simple damages claim, a constructive trust can actually declare that certain property or profits are held in trust for the plaintiff – effectively transferring ownership to prevent the defendant from being unjustly enriched.

In Dixon's case, the "property" at issue would be the royalties, licensing fees, and other earnings derived from the songs to which Dixon contributed. A court could find that Fat Joe (and related entities) hold a portion of those earnings in constructive trust for Mr. Dixon's benefit. The relationship here – a long-term collaboration in which Dixon placed trust in Fat Joe to

 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com

CARTAGENA_0000629



# T. A. BLACKBURN LAW

credit/compensate him – may be viewed as a confidential relationship or at least a relationship of trust and reliance. Dixon effectively "transferred" his creative work (lyrics, vocal performances) to Fat Joe based on an implied promise that Dixon would share in the success. Allowing Fat Joe to retain 100% of the royalties would unjustly enrich him; thus, a constructive trust is an appropriate remedy to allocate to Dixon his equitable share of the profits.

Courts do not rigidly require every element of constructive trust to be proven if the overall circumstances show an unjust enrichment that cannot be remedied by legal damages alone. It is a flexible doctrine employed when necessary to achieve equity. Here, if Fat Joe were to claim that Dixon has no legal right to royalties because of the lack of contract or formal credit, a court of equity could respond by imposing a constructive trust on the royalty stream to prevent Fat Joe from profiting at Dixon's expense. Essentially, Fat Joe would be deemed an involuntary trustee holding part of the music earnings for Dixon. This could also empower the court to order an accounting of the profits (see Section 5 below on audit/accounting rights).

> *(Illustrative precedent:* New York courts have imposed constructive trusts in entertainment and joint venture settings where one party's assets or profits rightfully should belong to another. In *Marini v. Lombardo* (N.Y. App. Div. 2018), for example, a songwriter who was denied contractual royalties pursued a constructive trust over the royalty fund, claiming a long-standing relationship of trust with the artist and unjust enrichment. The courts recognize that "equity regards as done that which ought to be done," and will not allow a defendant to keep money that in good conscience belongs to the plaintiff.)*

4. **Conversion**

Conversion is a tort that involves the unauthorized exercise of dominion or control over someone else's property, in a manner that interferes with the rightful owner's possession. In New York, *"Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."*

Put simply, if person A wrongfully takes or retains person B's property as if it were his own, person B can sue for conversion to recover the property or its value.

Applying this to Dixon's situation requires identifying the "property" at issue. Unlike a physical object, Dixon's contributions are intellectual property (song lyrics and vocal



📞 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com

Confidential

CARTAGENA_0000630



# T. A. BLACKBURN LAW

performances). Generally, pure ideas or artistic contributions are protected by copyright law; one usually wouldn't sue in tort for "conversion" of a copyright. However, Dixon can argue that what has been converted is his share of the tangible benefits and proceeds generated by his intellectual contributions. For example, each time royalties are paid out for a song Dixon co-wrote, there is an identifiable fund of money in which Dixon has an ownership stake (as an intended co-author) – Fat Joe's retention of 100% of those royalties could be viewed as exercising ownership over money that rightfully belongs to Dixon.

New York law does recognize conversion of money, but generally only if the money constitutes a specifically identifiable fund or account, and there is an obligation to return that specific money to the plaintiff. Here, if evidence shows that a certain percentage of song royalties was understood to belong to Dixon, those monies can be deemed a specific fund for Dixon's benefit. By not transferring any share to Dixon, Fat Joe has effectively assumed ownership of Dixon's property, satisfying the elements of conversion. Additionally, if Dixon can establish a form of joint authorship, his *intellectual property rights* in the compositions have been treated by Fat Joe as exclusively his – a wrongful exercise of ownership over Dixon's property interest.

It should be noted that some courts caution against using conversion claims for intangible property in a way that overlaps with copyright law. Indeed, federal cases have held that when the core issue is unauthorized reproduction of a copyrighted work, a conversion claim may be preempted by the Copyright Act.

However, Dixon's claim can be distinguished: this is not a case of infringement (Dixon willingly gave the contributions), but a case of refusal to acknowledge Dixon's ownership and share profits. There is precedent for conversion in such contexts – for instance, where a defendant withholds specific royalty payments or misdirects funds belonging to a co-creator. In *State of New York v. Seventh Regiment Fund*, 98 N.Y.2d 249 (2002), the Court of Appeals allowed a conversion claim for funds that rightfully belonged to another party.

Similarly, Dixon's "property" (royalty shares, songwriter credits) have been treated as Fat Joe's alone, which a court could find to be a conversion. This provides another legal theory under which Dixon can seek return of his property or its value (i.e., the value of the royalties that should have been paid to him).



📞 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com

Confidential

CARTAGENA_0000631



## T. A. BLACKBURN LAW

5. **Right of Publicity / Misappropriation of Name or Likeness**

New York law also protects individuals from the unauthorized commercial use of their name, image, or persona. Unlike some states, New York's right of publicity is governed by statute (there is no common-law right of publicity in NY). New York Civil Rights Law §§ 50–51 make it unlawful to use a person's "name, portrait, picture, or voice" for advertising or trade purposes without written consent. If such unauthorized use occurs, the person may sue for an injunction and damages.

In Mr. Dixon's case, this right might be tangentially relevant if any aspect of his persona was used by Fat Joe in a commercial way. For instance, if Fat Joe used Dixon's stage name or recognizable voice in promotions or products without permission, that could violate §51. Dixon was not publicly credited (which means Fat Joe did *not* overtly use Dixon's name in advertising); however, Dixon did contribute vocals to songs. If Dixon's voice is featured in the released tracks (even uncredited), one could argue his voice was used for trade purposes (the sale and streaming of the music) without his consent or compensation. New York's statute explicitly covers a person's "voice" against unauthorized commercial use.

That said, the typical application of §§50–51 is in scenarios like using a person's name or image in an advertisement or merchandise. Using an uncredited vocalist's performance in a song might not fit neatly, because Dixon voluntarily provided his voice in the recording sessions (albeit with expectation of payment). There wasn't a public-facing misappropriation of his identity (the public didn't know it was Dixon's voice). Thus, this claim is a bit more nuanced. If evidence shows that Dixon's distinctive voice or likeness was leveraged (for example, if any marketing touted contributions that were actually Dixon's work, or if Dixon's identity was appropriated in some way behind the scenes), a misappropriation claim could be considered. Otherwise, right of publicity might not be the strongest standalone claim here. *(In summary, §§50–51 establish Dixon's right to control the commercial use of his persona. Fat Joe's camp should be aware that using any aspect of Dixon (his alias "TA," his image, or his vocals) for profit without permission is illegal in NY. At minimum, this underscores the principle that a person's contribution to a business endeavor (like a song) cannot be exploited for solely another's gain without consent.)*

6. **Deceptive Business Practices (NY General Business Law § 349)**

 

Confidential

CARTAGENA_0000632



## T. A. BLACKBURN LAW

Another angle to consider is New York's statute against deceptive business practices, NY General Business Law § 349. This law provides that consumer-oriented deceptive acts or practices are unlawful, and it gives a right of action to any person injured by such deception. While §349 is generally used to protect consumers from fraud, it has been invoked in entertainment disputes where the public was misled in a manner that caused someone harm.

In the context of Mr. Dixon's claims, one could argue that Fat Joe (and his record labels) engaged in a form of deception by holding out the music as solely his own creation, thereby misrepresenting authorship to the public and industry. The deception (if any) would be that consumers were led to believe Fat Joe wrote all his lyrics, enhancing his brand at Dixon's expense. In a recent case, a songwriter in Dixon's position included a GBL § 349 claim, alleging that the defendants' intentional misrepresentation of authorship in commerce was a deceptive practice. The complaint argued that by concealing the plaintiff's contributions and presenting the works as entirely the defendants', the defendants engaged in deception that could affect consumers (who value authenticity in music).

For a §349 claim, Dixon would need to show the conduct was consumer-oriented and misleading in a material way. This can be challenging (courts might view this as more of a private dispute). However, the mere threat of such a claim adds pressure, as §349 allows recovery of actual damages, can award treble damages up to $1,000 and attorneys' fees, and does not require a contract. It's worth noting in our demand that Dixon is evaluating all possible claims, including deceptive practices under GBL § 349.

7. **NYC "Freelance Isn't Free" Act (NYC Admin. Code § 20-927 et seq.)**

Finally, because Mr. Dixon performed much of his work in New York City as an independent contractor, he is protected by NYC's "Freelance Isn't Free Act" (NYC Administrative Code § 20-927 *et seq.*). This local law, effective May 15, 2017, gives freelancers like Dixon specific rights and remedies. First, any freelance work arrangement over $800 must be in a written contract.

Fat Joe's failure to provide Dixon with a written agreement for years of work (far exceeding $800 in value) is itself a violation of this law. Second, freelancers must be paid in full and on time – no later than 30 days after the services are completed, unless a different schedule is in a



📞 347-342-7432 ✉ tblackburn@tablackburnlaw.com 🌐 TABlackburnlaw.com

CARTAGENA_0000633



written contract. Dixon has not been paid at all, which is a blatant breach of this requirement. Third, the law prohibits any retaliation against a freelancer for seeking payment under the Act.

The enforcement of the Freelance Isn't Free Act is significant. A prevailing freelancer can recover not only the value of the fees owed, but also statutory damages, double damages, and attorneys' fees. Specifically, if no written contract was in place, the freelancer is entitled to a statutory penalty of $250. If the freelancer was not paid on time, he can recover double the amount of the late payment as damages, in addition to the underlying fee, plus attorney's fees and costs. The Act shifts the burden of legal fees to the hiring party and provides for liquidated damages as a deterrent. In short, Fat Joe's treatment of Dixon as an unpaid "freelancer" violates NYC law, entitling Dixon to substantial additional remedies.

It's important to note this NYC law because it underscores that Dixon *should have had* a written contract and timely compensation for his work. The absence of a contract and non-payment isn't just unjust – it's illegal under local law. We will pursue these statutory damages if necessary. Fat Joe may also face a complaint from the NYC Office of Labor Policy (which enforces the freelance law) in addition to civil litigation.

## III.    RIGHT TO AN AUDIT OR ACCOUNTING OF ROYALTIES

Given the long period of collaboration and the multitude of revenue streams generated by Dixon's contributions (album sales, streaming royalties, concert performances of the songs, merchandising, licensing for films/TV, etc.), Mr. Dixon is also seeking a full accounting of all earnings derived from the works to which he contributed. Under New York law, in the absence of a contract, a formal audit or accounting is typically obtained through equitable relief in a lawsuit (for example, via a cause of action for an accounting, or as part of a constructive trust or partnership claim). Courts will order an accounting when one party has a clear right to a portion of funds held by another – often requiring some fiduciary or confidential relationship, or joint enterprise. Here, Dixon's role as an effective co-author/joint venturer in the music can justify an accounting.

If Dixon is recognized (either legally or equitably) as a co-owner of the songs or an intended profit-sharer, the law entitles him to an accounting of profits. For instance, joint authors of a copyrighted work are considered tenants-in-common of the copyright, and one co-

 347-342-7432     tblackburn@tablackburnlaw.com     TABlackburnlaw.com

    CARTAGENA_0000634



# T. A. BLACKBURN LAW

owner must account to the other for profits from licensing the work. Even outside of copyright, New York courts have broad power in equity to compel a forensic audit of a defendant's revenue streams to determine the extent of unjust enrichment.

In a recent federal case, a plaintiff in a similar ghostwriting situation explicitly requested that the court *"issue a full forensic audit of all defendants' revenue streams related to the works to determine the full extent of financial gains derived from the misappropriated content."*

The court can grant such relief to ensure that all royalties, licensing fees, and other income attributable to Dixon's work are accounted for and surrendered as needed to prevent ongoing injustice.

Under New York's CPLR (civil procedure rules), Dixon can also seek pre-trial discovery of royalty statements, contracts, and financial records once litigation is filed. Thus, while Dixon does not have an immediate statutory "right to audit" absent a contract, he will have the right through litigation to examine Fat Joe's books regarding the songs in question. We will insist on full transparency of all income earned from Dixon's creations. This demand for an audit is customary in entertainment industry disputes — if a resolution cannot be reached, a court-ordered accounting is the likely next step. Fat Joe should be prepared to divulge all financial data related to these songs under oath if this proceeds to court. It is in both parties' interest to resolve this matter before it gets to that stage.

## IV.    DEMAND FOR RELIEF AND SETTLEMENT PROPOSAL

In light of the foregoing, Mr. Dixon hereby demands that Joseph "Fat Joe" Cartagena and all relevant affiliated entities (record labels, publishers, etc.) remedy these violations immediately. At a minimum, Mr. Dixon seeks:

- <u>Fair Compensation</u>: Payment to Mr. Dixon of his rightful share of all royalties, advances, and other earnings from the songs to which he contributed. This includes retroactive compensation dating back to his first contributions (subject to applicable statutes of limitation, which we believe many of Dixon's claims fall within, given the ongoing nature of royalties and the recent discovery of the extent of exploitation). We are prepared to quantify Dixon's contributions

 

Confidential                                                                    CARTAGENA_0000635



## T. A. BLACKBURN LAW

song-by-song and compute an appropriate percentage of past and future royalties that should be allocated to him.

- Credit: Formal public acknowledgment/credit of Mr. Dixon's authorship contributions where feasible (e.g., retroactive songwriting credits on registrations, album liner notes for digital platforms, etc.). While financial compensation is paramount, Dixon's right of attribution has been denied, impacting his career. Rectifying this (even informally or in future press statements) is part of the equity Dixon seeks.

- Audit/Accounting: Agreement to open the books on the songs in question. We propose an independent auditor review the royalty accounts for these works to verify the total revenues to be shared. This could be done confidentially as part of settlement. (If not, we will request a court-supervised audit in litigation, as noted.)

- Miscellaneous: Compliance with the NYC Freelance Isn't Free Act (which may entail statutory damages and attorney's fees) and any other applicable statutory payments (for example, if any withholding or pension contributions were required for such session work, etc.).

We encourage you to consider the significant exposure and liability outlined above. The legal doctrines of unjust enrichment and quantum meruit alone could result in Fat Joe being ordered to disgorge a substantial portion of the profits earned over more than a decade of album sales and other exploitations.

In addition, willful violation of the freelancer law can lead to paying double damages and our attorney's fees. This is not even accounting for the public relations impact of a lawsuit that will draw attention to the fact that many of Fat Joe's biggest hits were authored (in large part) by an uncredited writer.

Settlement Opportunity: Mr. Dixon is, however, prepared to resolve this matter amicably without immediate court intervention. In the spirit of a fair and swift resolution, we invite you to engage in settlement discussions. Any settlement must provide Mr. Dixon with appropriate monetary compensation and other relief as outlined. We are open to creative solutions (such as a lump-sum payment reflecting past royalties plus an ongoing royalty percentage on future earnings,

 347-342-7432  tblackburn@tablackburnlaw.com TABlackburnlaw.com



# T. A. BLACKBURN LAW

or songwriting credits on new works going forward, etc.). Our goal is to correct the injustice without protracted litigation, if possible.

Reservation of Rights: Nothing in this letter shall be deemed a waiver of any of Mr. Dixon's rights or remedies, all of which are expressly reserved. If we do not receive a satisfactory response to this demand within 14 days, Mr. Dixon will have no choice but to pursue all available legal remedies. That will include filing a civil lawsuit in New York asserting causes of action for unjust enrichment, quantum meruit, constructive trust, conversion, and related claims discussed above. In that lawsuit, we will seek not only compensatory damages for the value of Dixon's contributions, but also disgorgement of profits, punitive damages (if fraud or bad faith is shown), statutory damages under NY GBL § 349 and the NYC Admin Code, and recovery of attorney's fees where provided by law. We will also ask the court to impose a constructive trust on the relevant royalty streams and to order a full forensic audit of all earnings related to the songs in question.

Be advised that once litigation is filed, we will also explore potential copyright claims in federal court (e.g., a claim that Dixon is a co-author of these compositions under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*, which would entitle him to co-ownership of the copyrights and profits). Although we have focused on state law tort remedies here, Dixon's contributions likely qualify him as an *author* of the lyrics. This letter does not waive those federal claims; we have highlighted state law claims to give your client an opportunity to resolve this matter privately and efficiently.

In closing, we urge you to share this letter with your client and counsel. Fat Joe can no longer ignore Mr. Dixon's rights in the shadows. The law is squarely on Mr. Dixon's side that one "should not be permitted to profit from the beneficial services provided by another without offering compensation."

We are confident that, if required, a court will vindicate Mr. Dixon's claims. However, we hope to avoid litigation and its inevitable costs, and instead reach a fair settlement that recognizes Mr. Dixon's vital contributions to Fat Joe's career.

Please respond by [date 14 days from now] with your availability to discuss a resolution. If we do not hear from you, we will proceed accordingly.

 347-342-7432    tblackburn@tablackburnlaw.com    TABlackburnlaw.com

Confidential

CARTAGENA_0000637



## T. A. BLACKBURN LAW

Thank you for your attention to this serious matter.

### V.    PRESERVATION NOTICE

This matter may result in litigation between Mr. Dixon and the Respondents. Therefore, we are providing Respondents with this Preservation Notice.

The terms "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the Respondents and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel, and third-party vendors.

From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information set forth hereafter.

If you cause any such alteration, destruction, change, or allow it to occur, you may be charged with discovery violations, for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

Electronically Stored Information (ESI)

You are directed to prevent any destructive, alterative, or other changes to any electronically stored information (ESI), including but not limited to:
- Web pages and virtual profiles
- Social media accounts (e.g., Facebook, Instagram, X/Twitter, LinkedIn, TikTok, Snapchat, etc.)
- Emails, voice messages, text messages, instant messages, chat/messaging systems
- Digital audio/video recordings
- Temporary memory, memory sticks, USB/portable drives, CDs, DVDs
- Laptops, computers, mobile phones, servers
- Databases, spreadsheets, activity logs, cookies, internet browsing history
- Backups and archival files
- Imaging, fax files, metadata, and file fragments
- Calendars (including Outlook, Google, or Apple Calendar), notes, memos, and reminders
- Any other contact or relationship management data

You are specifically directed not to modify, alter, delete, compress, or optimize any such data. This includes processes such as disk defragmentation or recycling of backup tapes. You must preserve all:
- Passwords
- Decryption tools
- Network access codes



📞 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com

Confidential

CARTAGENA_0000638



## T. A. BLACKBURN LAW

- Manuals, instructions, or tutorials
- Compression/decompression or reconstruction software
- Any other means needed to access and view the original electronic content

Paper Documentation
In addition to ESI, you must also preserve all physical documents, including but not limited to:
- Emails
- Memoranda
- Reports, notes, and logs
- Text message screenshots
- Photographs
- Correspondence or internal communications
- Performance or royalty statements
- Contracts, invoices, receipts, and any hard-copy evidence
- Any written communications or documents related to the controversy, parties, or witnesses

Independent Obligation to Preserve
Please be advised that this preservation duty arises independently of any court order. Through discovery, we expect to obtain a wide range of information, including text messages, emails, photographs, and other data stored on electronic devices, servers, and cloud platforms.

Even where paper copies exist, we will seek the original digital version (including all metadata). Where applicable, we will also request paper printouts that contain unique handwritten annotations or elements not reflected electronically.

The laws and rules governing spoliation apply equally to electronic data. Because ESI is easily destroyed or corrupted, you are expected to take all reasonable steps to preserve it, including but not limited to suspending data deletion, device reformatting, and backup tape recycling policies.

With respect to all electronic or physical data created after the date of this notice, you are directed to take immediate action to preserve that evidence as well.
If any aspect of this preservation directive is unclear or requires clarification, please contact me immediately. Your failure to preserve relevant evidence may result in court-imposed sanctions, adverse inferences, and legal liability.

Respectfully submitted,

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

 347-342-7432   ✉ tblackburn@tablackburnlaw.com   🌐 TABlackburnlaw.com

Confidential                                                        CARTAGENA_0000639