**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH CARTAGENA, <br><br> Plaintiff, <br><br> v. <br><br> TERRANCE DIXON, TYRONE BLACKBURN, and T.A. BLACKBURN LAW, PLLC, <br><br> Defendants. | No. 25-CV-03552-JLR-JW |
| TERRANCE DIXON, a/k/a "TA," <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH ANTONIO CARTAGENA p/k/a "FAT JOE," PETER "PISTOL PETE" TORRES, RICHARD "RICH PLAYER" JOSPITRE, ERICA JULIANA MOREIRA, SNEAKER ADDICT TOURING LLC, SLATE, INC., ROC NATION, LLC, JOHN DOES 1-10, JANE DOES 1-10, AND ABC CORPORATIONS 1-10, <br><br> Defendants. | No. 25-CV-05144-JLR-JW |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROC NATION, LLC'S**
**<u>MOTION FOR SANCTIONS</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................................1

FACTUAL BACKGROUND ..............................................................................................................2

    A.    Mr. Blackburn's prefiling threats and filing of the Complaint ...............................2

    B.    The Blackburn Email and Roc Nation's first sanctions motion ..............................3

    C.    The FAC and Roc Nation's current sanctions motion................................................4

    D.    Mr. Blackburn's history of vexatious litigation conduct.........................................5

LEGAL STANDARD .........................................................................................................................7

    A.    Rule 11 ..............................................................................................................................7

    B.    28 U.S.C. § 1927.............................................................................................................8

    C.    The Court's inherent power to sanction ......................................................................8

ARGUMENT .......................................................................................................................................9

I.    MR. BLACKBURN AND PLAINTIFF'S CONDUCT IS SANCTIONABLE
UNDER RULE 11................................................................................................................9

    A.    Mr. Blackburn and Plaintiff violated Rule 11(b)(1) by filing the original
Complaint for an improper purpose...........................................................................9

        1.    *On its face, the original Complaint was frivolous.* ............................................10

        2.    *Abandoning the RICO claim confirms the Rule 11(b)(1) violation.* ....................11

    B.    Plaintiff and Mr. Blackburn violated Rule 11(b)(1) by filing the FAC. ................14

        1.    *Plaintiff's TVPRA claim remains frivolous.* ........................................................14

        2.    *Plaintiff and Mr. Blackburn knowingly asserted baseless NYLL claims.*............15

    C.    Mr. Blackburn violated Rules 11(b)(2) and (b)(3) by failing to conduct a
reasonable inquiry into the facts and the law. .........................................................17

        1.    *Mr. Blackburn failed to conduct an adequate prefiling inquiry into the
facts before asserting the TVPRA claim and the NYLL-related claims.*...............17

        2.    *Mr. Blackburn failed to conduct an adequate prefiling inquiry into the
law before asserting the TVPRA claim and the NYLL-related claims.* ...............20

II.    MR. BLACKBURN AND PLAINTIFF'S CONDUCT IS SANCTIONABLE
UNDER SECTION 1927 AND THE COURT'S INHERENT AUTHORITY .................22

    A.    Mr. Blackburn and Plaintiff's conduct amounts to bad faith. ...............................22

    B.    Sanctions are required to deter Mr. Blackburn's pattern of abusing the
judicial system. ............................................................................................................23

III.    THE COURT SHOULD AWARD ROC NATION ITS COSTS AND
ATTORNEY'S FEES AND DISMISS THE FAC WITH PREJUDICE .........................24

CONCLUSION.............................................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### Cases

*In re 60 E. 80th St. Equities, Inc.*,
218 F.3d 109 (2d Cir. 2000) ...............................................................................................8

*AJ Energy LLC v. Woori Bank*,
2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) ..............................................................20

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010).............................................................. 11, 12, 20

*Baiul v. NBC Sports*,
708 F. App'x 710 (2d Cir. 2017)....................................................................................23

*Broidy v. Glob. Risk Advisors LLC*,
2023 WL 5447267 (S.D.N.Y. Aug. 24, 2023)................................................................22

*Bryant v. Brookyln Barbecue Corp.*,
932 F.2d 697 (8th Cir. 1991) ..........................................................................................24

*Byrne v. Nezhat*,
261 F.3d 1075 (11th Cir. 2001), *abrogated on other grounds by Bridge v.*
*Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ......................................................13

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........................................................................................................8, 9

*Colliton v. Cravath, Swaine & Moore LLP*,
2008 WL 4386764 (S.D.N.Y. Sept. 4, 2008) ................................................................20

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) .............................................................................................. 7, 11, 12

*Cox v. German Kitchen Ctr. LLC*,
2023 WL 8648839 (S.D.N.Y. Dec. 14, 2023) ...............................................................18

*Dover Steel Co. v. Hartford Acc. & Indem. Co.*,
151 F.R.D. 570 (E.D. Pa. 1993) .....................................................................................16

*Gaffney v. Muhammad Ali Enters. LLC*,
2021 WL 3542256 (S.D.N.Y. Aug. 10, 2021)................................................................12

*Gissendaner v. Credit Corp Sols., Inc.*,
358 F. Supp. 3d 213 (W.D.N.Y. 2019) .........................................................................9, 22

*Gong v. Sarnoff,*
   2023 WL 5372473 (S.D.N.Y. Aug. 22, 2023)....................................................11, 13, 14, 15, 21

*Gustafson v. Bell Atl. Corp.,*
   171 F. Supp. 2d 311 (S.D.N.Y. 2001) ................................................................................21

*Jones v. Combs,*
   759 F. Supp. 3d 534 (S.D.N.Y.) ......................................................................................6, 8

*Jones v. Combs,*
   2025 WL 896829 (S.D.N.Y. Mar. 24, 2025) ..........................................................................6,

*Katzman v. Victoria's Secret Catalogue,*
   167 F.R.D. 649 (S.D.N.Y. 1996)...................................................................................10, 24

*Keister v. PPL Corp.,*
   318 F.R.D. 247 (M.D. Pa. 2015) ........................................................................................13

*LCS Grp. v. Shire LLC,*
   2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019), *aff'd*, 2022 WL 1217961 (2d Cir.
   Apr. 26, 2022).....................................................................................................................13

*Levine v. F.D.I.C.,*
   2 F.3d 476 (2d Cir. 1993).....................................................................................................18

*Mueller v. Deutsche Bank Aktiengesellschaft,*
   777 F. Supp. 3d 329 (S.D.N.Y. 2025)................................................................................21

*Oliveri v. Thompson,*
   803 F.2d 1265 (2d Cir. 1986) ...............................................................................................8

*Revson v. Cinque & Cinque, P.C.,*
   221 F.3d 71 (2d Cir. 2000)....................................................................................................8

*Rossbach v. Montefiore Med. Ctr.,*
   81 F.4th 124 (2d Cir. 2023) ..................................................................................................8

*Saltz v. City of New York,*
   129 F. Supp. 2d 642 (S.D.N.Y. 2001)..................................................................................8

*Smith v. Westchester Cnty. Dep't of Corr.,*
   2013 WL 5192751 (S.D.N.Y. Sept. 16, 2013), *aff'd*, 577 F. App'x 17 (2d Cir.
   2014)....................................................................................................................................19

*Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.,*
   194 F.R.D. 378 (D. Mass. 2000) .........................................................................................11

iv

*United States v. Int'l Bhd. of Teamsters*,
   948 F.2d 1338 (2d Cir. 1991) ......................................................................................7

*Usherson v. Bandshell Artist Mgmt.*,
   2020 WL 3483661 (S.D.N.Y. June 26, 2020), *aff'd sub nom. Liebowitz v.
   Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. June 25, 2021), *aff'd*, 6
   F.4th 287 (2d Cir.) .............................................................................................17, 23

*Vista Acquisitions, LLC v. W. Shore Walden LLC*,
   2023 WL 2145515 (N.D. Ga. Feb. 21, 2023) .............................................................25

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
   564 F.3d 110 (2d Cir. 2009) .........................................................................................8

*Zunzurovski v. Fisher*,
   2024 WL 1434076 (S.D.N.Y. Apr. 3, 2024) .................................................................6

## Case Filings

Decl. of T. Blackburn, *Jones v. Combs*, No. 24-cv-01457 (S.D.N.Y. May 14,
   2024), Dkt. No. 49-1 .....................................................................................................6

Mem. Order, *Jakes v. Youngblood*, No. 2:24-cv-01608 (W.D. Pa. June 26, 2025),
   Dkt. No. 53 ..................................................................................................................23

Pl.'s Opp. to Def.'s Mot. to Dismiss, *Jakes v. Youngblood*, No. 2:24-cv-01608
   (W.D. Pa. May 27, 2025), Dkt. No. 45 .........................................................................7

## Rules/Statutes

28 U.S.C. § 1927.................................................................................................... *passim*

Fed. R. Civ. P. 11.................................................................................................... *passim*

New York Labor Law............................................................................................... *passim*

Racketeer Influenced and Corrupt Organizations Act............................................. *passim*

Trafficking Victims Protection Reauthorization Act ............................................... *passim*

## Other Authorities

Anna Kaufman, *Fat Joe Faces Explosive Sex Trafficking Lawsuit from Former
   Hype Man*, USA Today (last updated June 20, 2025, at 1:38 PM),
   https://www.usatoday.com/story/entertainment/celebrities/2025/06/20/fat-joe
   terrence-dixon-lawsuit/84284003007/ ...........................................................................3

Fisher Jack, *Fat Joe Hit with Explosive $20 Million Lawsuit from Former Hypeman*, Eurweb (June 19, 2025), https://eurweb.com/2025/fat-joe-sued-in 20m-lawsuit-by-ex-hypeman-terrance-dixon/ ...................................................................3

Nolan Strong, *Fat Joe Hit With $20M Civil RICO Lawsuit Alleging Money Laundering, Recording Sex Acts, PPP Scam*, All HipHop (June 19, 2025), https://allhiphop.com/news/fat-joe-20-million-rico-lawsuit-pp-scam-money-laundering-tax-evasion/ ...................................................................3

Rachel Scharf, *Fat Joe Lawsuit: Roc Nation Wants Out of Case, Says It Has 'Nothing to Do With Any of This,'* Billboard (June 23, 2025), https://www.billboard.com/pro/fat-joe-lawsuit-roc-nation-dismissed defendant-case/ ...................................................................3

Defendant Roc Nation, LLC respectfully submits this memorandum of law in support of its motion for sanctions against Plaintiff Terrance Dixon and his counsel (T.A. Blackburn Law, PLLC and Tyrone Blackburn), pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority. Roc Nation requests dismissal of Plaintiff's claims against it with prejudice and attorney's fees and costs.

## PRELIMINARY STATEMENT

Every claim that Plaintiff Terrance Dixon and his counsel Tyrone Blackburn have levied against Roc Nation has been baseless. That was true when they filed the original Complaint, asserting a time-barred Racketeer Influenced and Corrupt Organizations Act ("RICO") claim and a frivolous Trafficking Victims Protection Reauthorization Act ("TVPRA") claim and remains true now. Their decision to drop the headline-grabbing RICO claim in the First Amended Complaint ("FAC") after nine months on the docket dispelled any doubt that the claim was meritless. Their inability to identify a single additional fact that would warrant the assertion of venture participant liability under the TVPRA confirmed that no such facts exist. And the assertion of New York Labor Law ("NYLL") claims—under a manufactured joint employer theory and less than a year after admitting Plaintiff is an independent contractor—confirms that Plaintiff and Mr. Blackburn knowingly asserted frivolous claims in the FAC in a desperate effort to keep Roc Nation in this lawsuit. The pattern is clear: the FAC and its predecessor were filed for an improper purpose and without an adequate inquiry into the facts or the law. The FAC does not cure the initial Rule 11 violations—it compounds them. As this Court recently observed, "the warnings and sanctions by the [other] courts, as well as the CLE courses, did not have an appreciable impact on Blackburn." (No. 25-cv-3552, Dkt. No. 161 at 11.)

Rule 11, Section 1927, and the Court's inherent authority exist precisely for this type of conduct. The Court should impose sanctions, dismiss the FAC with prejudice, and award Roc Nation its attorney's fees and costs in defending itself and prosecuting its Rule 11 motions.

## FACTUAL BACKGROUND

Plaintiff was Mr. Cartagena's hype-man between approximately 2005 and 2020. (Dkt. No. 85 ("FAC") ¶ 8.) After 15 years, their working relationship fell apart. Three years later, in June 2023, Plaintiff waged a sustained social media campaign against Mr. Cartagena for two years. Amended Complaint ¶¶ 32-54, *Cartagena v. Dixon*, No. 25-cv-03552 (S.D.N.Y. May 1, 2025), Dkt. No. 14.

### A.    Mr. Blackburn's prefiling threats and filing of the Complaint

Plaintiff's efforts to tear down Mr. Cartagena publicly and professionally did not end on social media. After attacking Mr. Cartagena for two years, Plaintiff retained Tyrone Blackburn.

On March 23, 2025, Mr. Blackburn sent Mr. Cartagena a letter demanding compensation for purported unpaid wages to Plaintiff. (FAC ¶ 63; No. 25-cv-03552 Dkt. No. 196-2.) Additional demand letters to, and conversations with, Mr. Cartagena's counsel followed over the course of a month. With each successive communication, Mr. Blackburn ratcheted up the pressure, making increasingly outrageous allegations and identifying new claims over time. Ultimately, he claimed that if Mr. Cartagena did not capitulate to his client's $20 million settlement demand, he would file a lawsuit asserting RICO and TVPRA claims against a wide range of Defendants. No. 25-cv-03552, Dkt. No. 14 ¶¶ 8-9, 11, 60-69. Rather than cede to Plaintiff's demands, Mr. Cartagena filed a lawsuit against him and Mr. Blackburn for defamation on April 29, 2025.

Mr. Blackburn and Plaintiff followed through on their threats on June 19, 2025, when they filed the initial complaint, which asserted claims under RICO, the TVPRA, and several state laws against Mr. Cartagena and numerous defendants, including Roc Nation. (*See* Compl., Dkt. No. 3.)

2

And precisely what Mr. Blackburn intended to happen, happened:  the outrageous and scandalous allegations garnered significant media attention.  Numerous media outlets reported on the lawsuit, including the *Los Angeles Times*, *USA Today*, *NBC News*, *Variety*, *Billboard*, *All HipHop*, and others.  Each of them described its "explosive" allegations and called it a "bombshell racketeering case."[1]  Mr. Blackburn went on his own media tour, publicly professing to having "three additional pages of predicated acts which we are itching to disclose if the defendants call our bluff."[2]

**B.**    **The Blackburn Email and Roc Nation's first sanctions motion**

Roc Nation did just that.  Before the ink on the Complaint even dried, it moved for dismissal.  (Dkt. Nos. 9-10.)  Mr. Blackburn then sent an unsolicited email to counsel—within hours of Roc Nation's filing, two business days after the filing of the Complaint—and admitted that neither he nor his client believed Roc Nation had any role to play in the alleged misconduct contained in the Complaint.  Indeed, Mr. Blackburn expressed that:  (1) he and his client "think it is evident from the evidence that [Roc Nation] may have been defrauded by [Mr. Cartagena]"; (2)  he was "certain" Roc Nation "may have been caught off guard by [Mr. Cartagena's] lack of

---

[1]  *See, e.g.*, Rachel Scharf, *Fat Joe Lawsuit: Roc Nation Wants Out of Case, Says It Has 'Nothing to Do With Any of This,'* Billboard (June 23, 2025), https://www.billboard.com/pro/fat-joe-lawsuit-roc-nation-dismissed-defendant-case/ (describing "explosive new lawsuit" "framed as a racketeering enterprise abetted by Roc Nation"); *see also, e.g.*, Nolan Strong, *Fat Joe Hit With $20M Civil RICO Lawsuit Alleging Money Laundering, Recording Sex Acts, PPP Scam*, All HipHop (June 19, 2025), https://allhiphop.com/news/fat-joe-20-million-rico-lawsuit-pp-scam-money-laundering-tax-evasion/ (lawsuit targets Roc Nation, "which Dixon says played a role in concealing his work and facilitating the alleged misconduct"); Fisher Jack, *Fat Joe Hit with Explosive $20 Million Lawsuit from Former Hypeman*, Eurweb (June 19, 2025), https://eurweb.com/2025/fat-joe-sued-in-20m-lawsuit-by-ex-hypeman-terrance-dixon/    ("Roc Nation Named in the Lawsuit for Alleged Complicity" for "helping to conceal Dixon's rights and pressuring him to stay silent" and "enabling the culture of abuse").

[2]  Anna Kaufman, *Fat Joe Faces Explosive Sex Trafficking Lawsuit from Former Hype Man*,    USA    Today    (last    updated    June    20,    2025,    at    1:38    PM), https://www.usatoday.com/story/entertainment/celebrities/2025/06/20/fat-joe    terrence-dixon-lawsuit/84284003007/

transparency and honesty"; and (3) he was "sure" that Roc Nation "did not and would not have approved of [Mr. Cartagena] sending threats via Instagram." (Dkt. No. 16-1 ("Blackburn Email").) In light of these claim-undermining admissions, Roc Nation served a notice of motion for sanctions on Mr. Blackburn requesting voluntary dismissal of the claims against Roc Nation. But instead of withdrawing them, he doubled down, opposing Roc Nation's motion to dismiss and insisting the claims had merit. (Dkt. Nos. 11-12.) On July 22, 2025, Roc Nation moved for sanctions, which Roc Nation incorporates here by reference. (Dkt. Nos. 14-16.) Mr. Blackburn opposed that motion on August 8, 2025, proclaiming to have conducted an "extensive" and "substantial" prefiling inquiry into both the facts and law underlying his client's RICO and TVPRA claims. But unable to defend the admissions in the Blackburn Email—let alone square them with the supposed viability of his client's claims—Mr. Blackburn ignored it entirely. (Dkt. Nos. 11-12.)

### C.    The FAC and Roc Nation's current sanctions motion

On March 12, 2026—over a month after he missed his deadline to oppose the remaining Defendants' motion to dismiss—Plaintiff belatedly sought leave to amend the Complaint to "cure alleged pleading deficiencies" with his RICO and TVPRA claims. (Dkt. No. 79 at 3.) Plaintiff asserted that the FAC would (1) "respond *directly* to the issues raised in Defendants' motions," (2) "will add targeted factual detail drawn from evidence already in Plaintiff's possession" for the purpose of substantiating his claim of venture participant liability under the TVPRA and "clarify[ing] the structure and operation of the alleged RICO enterprise," and (3) elucidate his claim for equitable tolling of the statute of limitations. (*Id.* at 2.) The Court granted leave to amend on March 18, 2026, noting Plaintiff's "inexplicable" nine-month delay in seeking leave and warning Plaintiff that if the amended complaint did not resolve the issues identified in the Defendants' motions to dismiss, further amendment would not be permitted. (Dkt. No. 83 at 9.) On March 26, 2026, Plaintiff filed the FAC, entirely reframing this case. That pleading abandoned

4

the RICO claim—without warning or an explanation for this retreat—reasserted the thinly-pleaded TVPRA claim, and raised five new NYLL-based claims that Plaintiff never sought leave to plead.

To lend credence to his belated assertion of these NYLL-related claims, Plaintiff alleged that he sent a prelitigation demand letter to the "Defendants" in March 2025 "asserting his rights under the NYLL and demanding payment of unpaid wages and statutory wages." (FAC ¶¶ 63,159.) But that's untrue. For starters, Mr. Blackburn sent that letter to Mr. Cartagena, not Roc Nation or any other Defendant. 25-cv-3552, Dkt. No. 196-2. Moreover, the letter did not mention the NYLL whatsoever, let alone assert any purported rights under that statute. *Id.* at 9-10. It alleged—contrary to the claims in the FAC—that Plaintiff was an ***independent contractor***, and it asserted purported claims under New York's "Freelance Isn't Free Act." *Id.* The March 2025 prelitigation demand letter cannot be reconciled with the FAC. It shows that Plaintiff has no legal or factual basis to seek relief under the NYLL. Roc Nation thus served a second notice of motion for sanctions on Mr. Blackburn on May 5, 2026, requesting withdrawal of the FAC's claims. Neither Plaintiff nor Mr. Blackburn has sought to withdraw the FAC within Rule 11's 21-day safe-harbor period.

### D.    Mr. Blackburn's history of vexatious litigation conduct

The Court is now aware of Mr. Blackburn's tarnished history of litigation tactics and unethical behavior. It recently provided a "lengthy historic recitation" of that very misconduct "to serve as a public admonition aimed to deter future misconduct," observing that "the warnings and sanctions by [other] courts, as well as the CLE courses, did not have an appreciable impact on Blackburn." (No. 25-cv-3552, Dkt. No. 161 at 11; *see also* Dkt. No. 191). Roc Nation will not belabor that history. But several of the cases underlying that recitation parallel Mr. Blackburn's misconduct here and underscore why sanctions are warranted.

*First*, Mr. Blackburn has already been referred to the Grievance Committee once for his pattern of "improperly fil[ing] cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly." *Zunzurovski v. Fisher*, 2024 WL 1434076, *5 (S.D.N.Y. Apr. 3, 2024). In *Zunzurovski*, he even admitted that he had "filed th[e] case in federal court" to "make the press more likely to pick up on it"—a tactic he replicated in this case. *Id.*

*Second*, Mr. Blackburn has a documented pattern of asserting blockbuster claims laden with sordid allegations against high-profile individuals and companies to leverage media attention in pursuit of a quick pay day. For example, in *Jones v. Combs*, he brought TVPRA and RICO claims against Sean Combs and included the record label Universal Music Group ("UMG") as a defendant on the basis that it had a licensing agreement with Mr. Combs—a theory reminiscent of his RICO and TVPRA claims against Roc Nation. 759 F. Supp. 3d 534, 528-42 (S.D.N.Y. 2024). When faced with sanctions, Mr. Blackburn voluntarily dismissed as to UMG, attesting he had "concluded that there is no legal basis for the claims and allegations that were made against the UMG Defendants." Decl. of T. Blackburn ¶ 3, *Jones*, No. 24-cv-01457 (S.D.N.Y. May 14, 2024), Dkt. No. 49-1. The Honorable J. Paul Oetken also issued a warning—that Mr. Blackburn apparently has not heeded—that he would be subject to future sanctions if he continued to submit filings "replete with inaccurate statements of law, conclusory accusations, and inappropriate ad hominem attacks," and "irrelevant insults, misstatements, and exaggerations." *Jones v. Combs*, 2025 WL 896829, *3-4 (S.D.N.Y. Mar. 24, 2025).

*Finally*, in *Jakes v. Youngblood*—a case with a history strikingly similar to this one—Mr. Blackburn's client waged a social media campaign alleging sexual abuse by a respected clergyman and then "dispatched" Mr. Blackburn "to demand $6 million from Bishop Jakes or else he would

6

sue for unspecified nonexistent tort claims."  Pl.'s Opp. to Def.'s Mot. to Dismiss at 11, *Jakes v. Youngblood*, No. 2:24-cv-01608 (W.D. Pa. May 27, 2025), Dkt. No. 45.

Mr. Blackburn's playbook is now clear:  when extortionate prelitigation demands fail, lean on outrageous and salacious RICO and TVPRA claims, capture the headlines, and hope that someone with deep pockets buckles.  Prior warnings that this conduct will not be tolerated have not been sufficient.

## LEGAL STANDARD

The Court is empowered to issue sanctions under Rule 11, 28 U.S.C. § 1927, and its inherent authority.  These bases can all be raised in the same motion.  *E.g.*, *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1343 (2d Cir. 1991).[3]

### A.    Rule 11

The "central purpose of Rule 11 is to deter baseless filings."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  Rule 11(b) thus requires any attorney presenting a pleading, written motion, or other paper to the Court to certify that, to the best of their knowledge, information, and belief formed after a reasonable inquiry, the paper (1) "is not being presented for any improper purpose, such as to harass"; (2) "the claims, defenses, and other legal contentions are warranted by existing law"; and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1)-(3).  "[I]f all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal

---

[3]    Unless otherwise indicated, this memorandum omits from quotations and citations all internal quotation marks, alterations, footnotes, and citations.

7

otherwise, he has not satisfied his [Rule 11] obligation." *Saltz v. City of New York*, 129 F. Supp. 2d 642, 646 (S.D.N.Y. 2001).

### B.     28 U.S.C. § 1927

Section 1927 provides that "[a]ny attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927. To obtain sanctions there must be "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000).  Completely meritless actions give rise to an inference of bad faith.  *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (Section 1927 sanctions appropriate where "attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose").

### C.     The Court's inherent power to sanction

"A federal court may [also] exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023).  The imposition of such sanctions serves the dual role of "vindicating judicial authority" and providing redress for litigants who bear the brunt of a party's bad-faith acts.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (Rule 11 does not "displace[] the inherent power to impose sanctions for...bad-faith conduct").

As with Section 1927, courts may impose sanctions pursuant to their inherent authority where "(1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Jones*, 759 F. Supp. 3d at 539; *see also Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (affirming sanctions for claims "entirely without color" and

8

"motivated by improper purposes").  But the reach of the Court's inherent authority to sanction is broader than under Section 1927:  "the inherent power extends to a full range of litigation abuses" and works "to fill in the interstices" left by existing rules and statutes.  *Chambers*, 501 U.S. at 46; *see also Gissendaner v. Credit Corp Sols., Inc.*, 358 F. Supp. 3d 213, 223–24 (W.D.N.Y. 2019) (noting that Section 1927 authorizes sanctions against an attorney, while courts' inherent authority enables sanctions against "an attorney, a party, or both").

## ARGUMENT

### I.    MR. BLACKBURN AND PLAINTIFF'S CONDUCT IS SANCTIONABLE UNDER RULE 11

The original Complaint asserted RICO and TVPRA claims against Roc Nation that were frivolous on their face.  Days after signing that pleading, Mr. Blackburn admitted in writing that Roc Nation did not belong in this case.  He then publicly defended those baseless claims (both in the press and in opposition to Roc Nation's motions) while they languished on the docket.  Just two months ago, on behalf of Plaintiff, he filed an FAC that dropped the RICO claim without explanation, failed to cure the TVPRA claim's deficiencies, and added baseless NYLL-related claims he never sought leave to plead.  The FAC, however, does not moot the Rule 11 violations of the original pleading—and like its predecessor, it is meritless and brought for an improper purpose.

### A.    Mr. Blackburn and Plaintiff violated Rule 11(b)(1) by filing the original Complaint for an improper purpose.

The original Complaint was filed for the improper purpose of garnering media attention in an effort to extract an outsized settlement—a page from Mr. Blackburn's well-worn playbook. The abandonment of the RICO claim in the FAC only confirms that it was baseless from the start.

9

### 1. On its face, the original Complaint was frivolous.

The original Complaint asserted RICO and TVPRA claims based entirely on Roc Nation's artist-management relationship with Mr. Cartagena. From there, Plaintiff begged the inference that Roc Nation must have known about and participated in all of Mr. Cartagena's alleged conduct. (*See generally* Dkt. Nos. 10, 13.) But that position is so devoid of logic, common sense, and any legal basis that it suggests Plaintiff had an ulterior motive in suing Roc Nation. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 661 (S.D.N.Y. 1996) ("The total lack of substance [of a complaint] gives rise to the inference that the action was filed for improper purposes.").

Indeed, the prelitigation history reveals that Plaintiff did not even consider suing Roc Nation until his efforts to obtain a settlement from Mr. Cartagena failed. In the two years before Plaintiff retained Mr. Blackburn, he made negative social media posts about Mr. Cartagena, not Roc Nation. Mr. Blackburn sent prelitigation demand letters to Mr. Cartagena, not Roc Nation. And while he was threatening Mr. Cartagena with an ever-growing lawsuit, he engaged with counsel for Mr. Cartagena, not Roc Nation. That makes sense, because Roc Nation has no direct relationship with Plaintiff, nothing to do with his work, and nothing to do with his private wage dispute with Mr. Cartagena.

Mr. Blackburn's post-filing statements confirmed the original Complaint's improper purpose. Once Roc Nation challenged the Complaint, Mr. Blackburn made several admissions that undermined his own client's claims. (Dkt. No. 16-1.) In his unsolicited email, Mr. Blackburn conceded, among other things, that he: (1) believed it was "evident from the evidence" that Roc Nation was a victim of Mr. Cartagena; (2) believed that Mr. Cartagena was less than "transparen[t] and honest[]" with Roc Nation; and (3) was "sure" Roc Nation "would not have approved of" the type of conduct Plaintiff had alleged, including "sending threats via Instagram." (*Id.*) He also referenced new, violent predicate acts that he "assume[d] Roc Nation knew nothing about." (*Id.*)

These statements cannot be reconciled with Plaintiff's allegations that Roc Nation knowingly participated in racketeering and human trafficking and illuminate the Rule 11 violation. *See, e.g.*, *China AI Cap. Ltd.*, 2023 WL 5016492, *8 (S.D.N.Y. July 28, 2023) (granting Rule 11 sanctions against plaintiff and its counsel where neither "could have reasonably believed that the allegations in the Complaint…had [any] evidentiary support").

Nevertheless, Plaintiff opposed Roc Nation's motion to dismiss, insisting his RICO claim was adequately pleaded, and his headline-grabbing RICO and TVPRA allegations against Roc Nation then lingered in the press for nine months before he sought leave to amend, increasing Roc Nation's harm. *See, e.g.*, *Gong v. Sarnoff*, 2023 WL 5372473, *10 (S.D.N.Y. Aug. 22, 2023) ("The longer a frivolous and harassing complaint remains outstanding the greater the harm.").

> 2.    *Abandoning the RICO claim confirms the Rule 11(b)(1) violation.*

Mr. Blackburn and Plaintiff cannot sidestep their initial Rule 11 violation of asserting a baseless RICO claim against Roc Nation by abandoning it in the amended pleading. If anything, the abandonment of that claim, but not the entire case, is further evidence of their misconduct.

A "[b]aseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay." *Cooter & Gell*, 496 U.S. at 398. As such, a "Rule 11 violation is complete upon the 'present[ation]' of an offensive pleading to the court." *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 266 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 11(b)); *see also, e.g.*, *Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.*, 194 F.R.D. 378, 382 (D. Mass. 2000) (Rule 11 violation attendant to "filing of the original complaint is not cured by the filing of an amended complaint"); *Gong*, 2023 WL 5372473, *9 (sanctions motion "was not mooted by Plaintiff's filing of the Amended Complaint"). That makes sense—"[i]f a litigant could purge his violation of Rule 11" merely by filing an amended complaint or voluntarily dismissing a claim, "he would lose all incentive to 'stop, think and investigate more

11

carefully before serving and filing papers.'" *Cooter & Gell*, 496 U.S. at 398; *see also Gaffney v. Muhammad Ali Enters. LLC*, 2021 WL 3542256, *3 (S.D.N.Y. Aug. 10, 2021) ("Rule 15(a) amendment eliminating a claim is the same as a Rule 41(a) voluntary dismissal of the claim.").

*In re Australia* is instructive. There, an investor filed a complaint on behalf of a putative class of shareholders who purchased securities based on defendants' alleged misrepresentations. *In re Australia*, 712 F. Supp. 2d at 258–59. The plaintiffs asserted that those misrepresentations—which were the lynchpin of their fraud claims—were contained in a series of internal emails from March of 2007 ("Paragraph 25"). *Id.* at 259. Shortly thereafter, the plaintiffs filed an amended complaint, omitting the allegations in Paragraph 25 without explanation. *Id.* at 260. After filing a motion to dismiss, the defendants sought sanctions arguing that the inclusion of Paragraph 25 violated Rule 11(b)(3). *Id.* at 261. Thereafter, the plaintiffs' counsel explained that they had misread a news article that discussed the purported emails and, upon determining the allegations in the article were erroneous, omitted Paragraph 25 in the amended complaint. *Id.* at 261–62. The plaintiffs argued that the mistake was "inadvertent, not intentional" and the amended complaint "effectively cured the error by superseding the original pleading," so sanctions were not warranted. *Id.* at 262, 266. The court disagreed. *Id.* at 266. In imposing sanctions, it reiterated that a "Rule 11 violation is complete upon the 'presentation' of an offensive pleading to the court," irrespective of the signer's subjective intent. *Id.* (quoting Fed. R. Civ. P. 11).

Plaintiff and Mr. Blackburn's conduct is far worse. Despite their (1) insistence that the RICO claim was properly pleaded and (2) representations to the Court that an FAC would correct any of its deficiencies, the FAC abandons it entirely. The logical inference is that the claim was baseless from the start, Plaintiff and Mr. Blackburn knew it, and they asserted it anyway. Had they believed the claim was viable, they would have lived up to their representation that an amendment

12

would "clarify the structure and operation of the alleged RICO enterprise by more precisely describing the association-in-fact enterprise, the roles played by each defendant, and the manner in which the enterprise functioned as a coordinated organization over time." (Dkt. No. 79 at 2.) And they would have included "additional allegations supporting equitable tolling." (*Id.*) They did not do so, because they are unable to. That the claim they dropped was for civil RICO only compounds the seriousness of the violation: RICO is "the litigation equivalent of a thermonuclear device" whose "commencement … has an almost inevitable stigmatizing effect on those named as defendants," making Rule 11 "particularly significant" in this context. *LCS Grp. v. Shire LLC*, 2019 WL 1234848, *15 (S.D.N.Y. Mar. 8, 2019), *aff'd*, 2022 WL 1217961 (2d Cir. Apr. 26, 2022). Plaintiff and Mr. Blackburn should not be permitted to escape the consequences of their initial Rule 11 violation by quietly dropped his RICO claim.

Mr. Blackburn's prelitigation behavior and his concessions—within days of signing the Complaint, as an officer of the Court—that Roc Nation is not a proper party to this action coupled with the abandonment on the RICO claim bring the baselessness of the Complaint into sharp focus. *See Gong*, 2023 WL 5372473, *13 ("[A] court may infer an improper purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit."). Sanctions are appropriate for this initial Rule 11 violation. *Byrne v. Nezhat*, 261 F.3d 1075, 1115–17, 1122 (11th Cir. 2001) (affirming sanctions under Rule 11, Section 1927, and the court's inherent authority where plaintiff "expanded the scope of this litigation" from "a garden variety medical malpractice claim" into a suit including "RICO [and] … other baseless claims," demonstrating she had "filed a frivolous lawsuit, in bad faith, for the purpose of extorting a settlement from the defendants"), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Keister v. PPL Corp.*, 318 F.R.D.

13

247, 270-71 (M.D. Pa. 2015) (sanctions "necessary" to forestall "consistently vexatious litigation tactics" where defects in the filings and "underlying weakness" of the substantive claims was "reflective of [the attorney's] larger pattern of litigation").

**B.    Plaintiff and Mr. Blackburn violated Rule 11(b)(1) by filing the FAC.**

The FAC proves that this lawsuit was originally filed—and is now being maintained—for an improper purpose.

*1.    Plaintiff's TVPRA claim remains frivolous.*

Plaintiff's failure to remedy the infirmities underlying his TVPRA claim in the FAC amounts to a Rule 11(b)(1) violation. Where an "offending party fails to correct a pleading whose defects have been identified to him, the offending party is not entitled to relief from a Rule 11 sanction. *Gong*, 2023 WL 5372473, *10. "The damage has been done and remains." *Id.*

*Gong* is on point. There, the original complaint alleged that defendants violated the Foreign Agents Registration Act ("FARA") and conspired to and did violate the plaintiff's constitutional rights. *Id.* at *1. Under pressure of a motion to dismiss, the plaintiff amended the complaint but "did not add any factual allegations." *Id.* at *3. Instead, he merely levelled the "same allegations that Moving Defendants participated in civil rights violations and a violation of FARA." *Id.* The defendants sought sanctions, arguing the claims were legally and factually frivolous and brought for an improper purpose. *Id.* at *9. The Court had "no difficulty" finding that the pleading violated Rule 11(b)(1) because it contained "no non-conclusory allegations that either Moving Defendant was present at the scene when the offending conduct occurred or that [the offenders were] acting at the direction of the Moving Defendants." *Id.* at *13. The court also cited plaintiff's "history of lawsuits" which removed "any doubt of the harassing purpose of th[e] lawsuit." *Id.* at *14. Ultimately, the court reasoned that the amended complaint's "very filing—

14

and its failure to address the deficiencies of the Complaint—compounded the claimed injury to Moving Defendants." *Id.* at *9.

That is precisely the case here. The original Complaint asserted that Mr. Cartagena controlled and exploited him (*see, e.g.*, Compl. ¶¶ 138, 145, 171-73, 495-99; FAC ¶¶ 104, 107-09) and, as Mr. Cartagena's management company, Roc Nation knew of and participated in a TVPRA venture, allegedly giving rise to venture participant liability against it. But as Roc Nation has demonstrated across two motions to dismiss, there is no basis to infer that Roc Nation (1) knew of any purported TVPRA violations, (2) participated in a TVPRA venture, or (3) received a benefit from a TVPRA venture. (Dkt. No. 10 at 14-18; Dkt. No. 94 at 6-10.) Despite being on notice of these defects, Plaintiff's FAC rehashes the same allegations from the original Complaint. On the fringes, Plaintiff asserts a few additional facts—*e.g.* that his purported "direct supervisory contact" at Roc Nation was Mr. Castillo, he complained to Mr. Castillo at unspecified times about alleged "underpayment, mistreatment, and exploitative conditions," and Mr. Castillo had—"upon information and belief"—"actual or constructive authority" to relay those complaints to others within Roc Nation (FAC ¶¶ 21, 77-80, 140, 209-10, 227-28.) But none of these allegations moves the needle on venture participant liability. And Plaintiff asserts no new facts that can. As in *Gong*, the filing of the FAC "and its failure to address the deficiencies of the Complaint—compounded" the injury to Roc Nation. 2023 WL 5372473, at *9. Sanctions are appropriate.

           2.       *Plaintiff and Mr. Blackburn knowingly asserted baseless NYLL claims.*

Plaintiff's belated inclusion of five employment-based claims—for alleged wage theft (Count I), failure to provide wage notices (Count II), and retaliation (Count V) under the NYLL, and purported claims for aiding and abetting wage theft (Count IX) and "joint employer liability" (Count X)—also violates Rule 11(b)(1).

15

For starters, Plaintiff did not seek—and was not granted—leave to plead NYLL claims. Plaintiff's application for leave to amend was narrow. As relevant here, Mr. Blackburn represented to the Court that the FAC would cure the deficiencies in the RICO and TVPRA claims that Roc Nation had already identified in its motion to dismiss. (Dkt. No. 79 at 3.) Based on those representations, the Court granted leave to amend, but cautioned that further amendment would not be permitted if the FAC did not resolve the deficiencies identified. (Dkt. No. 83 at 9.) Mr. Blackburn's decision to file an FAC that exceeded the scope of the permission granted is itself a violation of Rule 11. *See Dover Steel Co. v. Hartford Acc. & Indem. Co*., 151 F.R.D. 570, 574–75 (E.D. Pa. 1993) (amended complaint that added defendant, five new counts, and new legal theories was "grossly different" from proposed complaint, violating Rule 11).

Notwithstanding Plaintiff and his counsel's failure to obtain the Court's permission to include these claims, the relevant factual and procedural history exposes their true motive for asserting them: to keep this case alive and Roc Nation in it. As explained in Roc Nation's pending motion to dismiss, these claims suffer from myriad deficiencies and contradict Mr. Blackburn's own prelitigation admissions that his client is an independent contractor. The timing is telling. Mr. Blackburn never breathed a word about NYLL claims before he filed the FAC: not in his prelitigation demand letters to Mr. Cartagena, not in the original Complaint or in opposition to either of Roc Nation's motions, and not even in his application to the Court seeking leave to amend. He raised them for the first time in the FAC. The eleventh-hour assertion of the NYLL claims was not an afterthought: it was a hedge—fact-intensive claims designed to survive a motion to dismiss long enough to maintain settlement leverage even as the substantive RICO and TVPRA claims collapsed.

16

There is no legitimate dispute that Plaintiff and his counsel filed frivolous RICO and TVPRA claims and expanded this lawsuit to include equally baseless NYLL claims against Roc Nation to garner media attention in hopes of extorting a quick settlement.  This is a textbook violation of Rule 11(b)(1).  Prior warnings to Mr. Blackburn to refrain from engaging in this unethical behavior have not deterred him.  Sanctions are appropriate.  *See Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, *18 (S.D.N.Y. June 26, 2020) (sanctions warranted where counsel "maintain[ed] the lawsuit" without "any investigation" indicating "broad[] strategy to use the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits"), *aff'd sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. June 25, 2021), *aff'd*, 6 F.4th 287 (2d Cir.).

**C.**    **Mr. Blackburn violated Rules 11(b)(2) and (b)(3) by failing to conduct a reasonable inquiry into the facts and the law.**

The FAC, like its predecessor, confirms Mr. Blackburn either failed to investigate the law and the facts with respect to the claims against Roc Nation or willfully ignored them, in violation of Rule 11(b)(2) and (b)(3).

*1.    Mr. Blackburn failed to conduct an adequate prefiling inquiry into the facts before asserting the TVPRA claim and the NYLL-related claims.*

**The TVPRA claim:**  The FAC, like its predecessor, fails to allege any facts that suggest Roc Nation had knowledge of, participated in, or knowingly profited from any TVPRA venture. What it does allege reflects nothing more than an ordinary course business relationship between Mr. Cartagena and Roc Nation.  Mr. Blackburn's own admission, made days after filing the original Complaint, says it all and rings true today:  "it is evident from the evidence [Roc Nation] may have been defrauded by Fat Joe as well."  (Dkt. No. 16-1.)  Plaintiff had an opportunity to replead.  He added nothing of substance.  The FAC's nearly identical TVPRA allegations confirm that Mr. Blackburn failed to conduct an adequate prefiling inquiry into the facts before filing the

17

original Complaint and has learned nothing new since. Reasserting a meritless claim notwithstanding its deficiencies is not a pleading error—it is a knowing violation.

*Levine* is apposite here. There, the Second Circuit affirmed the imposition of sanctions on plaintiff's counsel after filing an amended complaint adding a new defendant even though counsel was aware of deposition testimony (including from the plaintiff) that contradicted any theory of jurisdiction over the defendant. *Levine v. F.D.I.C.*, 2 F.3d 476, 477–78 (2d Cir. 1993). The court determined sanctions were "amply warranted," noting counsel's "blatant disregard of the[se] facts" and holding that the "creativity of an attorney may not transcend the facts of a given case." *Id.* at 479. Mr. Blackburn's "creativity" in reasserting a factually identical TVPRA claim after a full round of briefing on both a motion to dismiss and a motion for sanctions and an explicit judicial warning that further amendment would not be permitted if its deficiencies were not cured likewise "transcends" the facts. *Id.*

***NYLL-based claims:*** Plaintiff's NYLL claims are incoherent. Mr. Blackburn's own prefiling demand letter undermines them and they otherwise rest on self-contradictory allegations.

Recovery under the NYLL is available to employees, not independent contractors. *See, e.g., Cox v. German Kitchen Ctr. LLC*, 2023 WL 8648839, *4 (S.D.N.Y. Dec. 14, 2023) (NYLL only "appl[ies] to 'employee[s],' not independent contractors"); N.Y.L.L. § 651. Plaintiff now alleges that he was an employee and that Roc Nation was his "joint employer." But his own counsel concluded otherwise over a year ago. In Mr. Blackburn's March 23, 2025 prelitigation demand letter to Mr. Cartagena, he described Plaintiff as a "freelancer" and "independent contractor" who purportedly had viable claims under New York's "Freelance Isn't Free Act," a statute that protects independent contractors, not employees. *See* No. 25-cv-3552, Dkt. No. 196-2 at 9-10. In opposition to Roc Nation's original sanctions motion, Mr. Blackburn professed to

18

conducting a "substantial" and "extensive" prefiling inquiry—one thorough enough he was purportedly prepared to file suit within 14 days of sending the March 2025 demand letter. (*See* Dkt. No. 44 at 5, 8.)  Mr. Blackburn's self-described "extensive" prefiling inquiry led him to the conclusion that his client was an independent contractor, who has no basis to assert claims under the NYLL.  Perhaps that is why he asserted no such claims in the original Complaint.  The FAC's own allegations are consistent with that conclusion:  far from alleging that Plaintiff was owed a salary (which would be consistent with employee status), the FAC asserted that he was a freelance touring performer who received a "per-show rate" on a show-by-show basis (FAC ¶¶ 29, 35, 38), as any independent contractor would.  Mr. Blackburn's pivot nine months after sending the March 2025 letter—while discovery was stayed—suggests that he knew all along that his client was an independent contractor, yet he knowingly asserted baseless NYLL claims anyway.  *Smith v. Westchester Cnty. Dep't of Corr.*, 2013 WL 5192751, *4 (S.D.N.Y. Sept. 16, 2013) (granting sanctions where "it is patently clear that [the NYLL] claim[s] ha[ve] absolutely no chance of success."), *aff'd*, 577 F. App'x 17 (2d Cir. 2014).

*Galasso v. Eisman, Zucker, Klein & Ruttenberg* is instructive.  310 F. Supp. 2d 569 (S.D.N.Y. 2004).  There, plaintiff asserted NYLL and FLSA claims that were meritless on the face of the statute—the NYLL exempted plaintiff by his professional status as a Certified Public Accountant and FLSA prohibited plaintiff's claims for vacation and holiday pay.  *Id.* at 577.  The court sanctioned counsel, explaining: "[t]here can be no excuse for filing claims that are statutorily barred."  *Id.*  The same is true here.

But Mr. Blackburn's Rule 11(b)(3) violation did not stop there.  In the FAC, Mr. Blackburn asserts that in March 2025, he sent a prelitigation demand letter to "Defendants" which "asserted rights under the NYLL."  (FAC ¶¶ 63, 159.)  That is demonstrably false.  That letter was sent to

19

Mr. Cartagena only.  And it does not even mention the NYLL, let alone "assert[] rights under" it. No. 25-cv-3552, Dkt. No. 196-2 at 9-10.  That is sanctionable.  *In re Australia*, 712 F. Supp. 2d at 263 ("erroneous statement of fact … can give rise to the imposition of sanctions ... when the particular allegation is utterly lacking in support").

The NYLL claims are also independently sanctionable because they rest on self-contradictory allegations.  As described more fully in Roc Nation's motion to dismiss (Dkt. No. 94 at 10-17), almost none of Plaintiff's allegations about Roc Nation are entitled to a presumption of truth, because they are either wholly conclusory and made upon information and belief, or flatly contradicted by his allegations against other Defendants.  For example, the FAC asserts that Mr. Cartagena had "***exclusive*** control over Plaintiff's professional opportunities and compensation" (*id.* ¶ 12) and "exercised ***sole control*** over contracts, budgets, tour management, licensing, and credit attribution" (*id.* ¶ 15) (emphases added).  That is antithetical to a joint employer theory of liability.  Plaintiff had no factual basis to assert the NYLL claims but did so anyway, in violation of Rule 11(b)(3).  *AJ Energy LLC v. Woori Bank*, 2019 WL 4688629, *10-11 (S.D.N.Y. Sept. 26, 2019) ("[s]elf-contradictory assertions" in amended complaint "clearly lack reasonable evidentiary support, in violation of Rule 11(b)(3)"); *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, *13 (S.D.N.Y. Sept. 4, 2008) (awarding Rule 11 sanctions where plaintiff "filed an amended complaint consisting of self-contradictory allegations without legal or factual support" that contradicted original complaint and appeared "concocted" to "plead around" legal defenses raised, including statute of limitations).

> 2.    *Mr. Blackburn failed to conduct an adequate prefiling inquiry into the law before asserting the TVPRA claim and the NYLL-related claims.*

**TVPRA claims:**  Plaintiff's TVPRA claim has never had a basis in the law, among other reasons, because Roc Nation's receipt of compensation for its ordinary-course services to Mr.

20

Cartagena is insufficient as a matter of law for liability.  *See Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 338–40 (S.D.N.Y. 2025) (dismissing TVPRA claim based on similar allegations of routine financial services).

***NYLL claims.*** Plaintiff's NYLL claims (Counts I, II, and V) and the purported claims for aiding and abetting a NYLL violation (Count IX) and joint employer liability (Count X) are also not grounded in the law.

Plaintiff's NYLL claims are premised on conduct that allegedly occurred prior to 2020; as such, they are barred by the NYLL's six-year statute of limitations.  Although the FAC repackages the equitable tolling allegations from the original Complaint, it invokes the "continuing violations doctrine," which does not apply to Plaintiff's NYLL claims.  *See, e.g.*, *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 322 (S.D.N.Y. 2001) (explaining that each paycheck constitutes a discrete, individual wrong and separate cause of action "for which suit must be brought within the [limitations] period" and rejecting same argument).  Relatedly, as detailed in Roc Nation's motion to dismiss (Dkt. No. 94 at 11, 23-24), the NYLL does not provide for aider-and-abettor liability and "joint employer liability" is a theory of liability, not a standalone cause of action.  The most rudimentary legal research would have confirmed that Plaintiff's NYLL claims are untimely and cannot be cured by the continuing-violations doctrine.  It also would have revealed that the aiding and abetting and "joint employer liability" claims are not cognizable as a matter of law.  Mr. Blackburn's failure to conduct even the most basic inquiry into these issues is a violation of Rule 11(b)(2).  *Galasso*, 310 F. Supp. 2d at 577 ("counsel is charged with doing a modicum of legal research before bringing a lawsuit"); *Gong*, 2023 WL 5372473, *11 ("Plaintiff's assertion that the Court was free to imply that Congress intended to fashion a private right of action … only

21

highlights counsel's abject failure to do any research into the basis of his claim before he filed it."). Sanctions are appropriate.

## II. MR. BLACKBURN AND PLAINTIFF'S CONDUCT IS SANCTIONABLE UNDER SECTION 1927 AND THE COURT'S INHERENT AUTHORITY

Sanctions are also warranted against Plaintiff under the Court's inherent authority and against Mr. Blackburn under both Section 1927 and the Court's inherent authority. *See Gissendaner*, 358 F. Supp. 3d at 224 ("requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry").

### A. Mr. Blackburn and Plaintiff's conduct amounts to bad faith.

Filing a frivolous complaint in June 2025 was Plaintiff and Mr. Blackburn's first bad-faith act. But it didn't stop there. After admitting that they believed it was "evident from the evidence" that Roc Nation had no involvement in the alleged conduct, they doubled down and opposed Roc Nation's first motion to dismiss, tacking on a frivolous Rule 12(f) motion even though a cursory review of that rule would have shown that it does not apply to motion papers. *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 5447267, *2 (S.D.N.Y. Aug. 24, 2023) ("[M]otions, … briefs, and other documents outside the pleadings are not subject to Rule 12(f)."). The FAC is their latest attempt to vexatiously multiply these proceedings and has forced Roc Nation to prepare a second motion to dismiss addressing five new frivolous claims under the NYLL and this, second sanctions motion.

This is textbook bad faith. For example, in *Craig v. UMG Recordings, Inc.*, the Honorable J. Paul Oetken imposed sanctions under Section 1927 and the court's inherent authority, inferring bad faith based on a motion's obvious lack of merit and counsel's omission of critical details that were fatal to the motion "under a basic understanding of the applicable law." 380 F. Sup. 3d 324, 339 (S.D.N.Y. 2019). Like in *Craig*, Plaintiff and Mr. Blackburn's conduct has improperly forced

Roc Nation to expend resources on multiple rounds of motion practice. *Id.* (noting counsel's conduct "forced [d]efendants to prepare papers opposing [the] motion" and "required the [c]ourt to hold a wasteful evidentiary hearing"). This Court, too, should sanction Plaintiff and his counsel under its inherent authority and Mr. Blackburn under Section 1927, particularly now that it is clear they were "aware of the meritless nature of [plaintiff's] claims, yet continued to pursue litigation" anyway. *See, e.g.*, *Baiul v. NBC Sports*, 708 F. App'x 710, 715 (2d Cir. 2017) (finding bad faith on this basis).

### B.    Sanctions are required to deter Mr. Blackburn's pattern of abusing the judicial system.

Roc Nation does not make this second request for sanctions lightly. Mr. Blackburn's history of unethical conduct and this and other courts' efforts to deter his misconduct obviously have not been sufficient—as this Court has recognized. Mr. Blackburn must face the "repercussions of his actions," be held accountable, and be deterred from abusing the courts to harass innocent defendants. Mem. Order at 8, *Jakes v. Youngblood*, No. 2:24-cv-1608 (W.D. Pa. June 26, 2025), Dkt. No. 53.

*Usherson* is instructive. There, the Honorable Jesse M. Furman issued sanctions based on the attorney's misconduct and history. 2020 WL 3483661, *19. Like Mr. Blackburn, the attorney in *Usherson* had been "repeatedly chastised, warned, ordered to complete ethics courses, fined, and even referred to the Grievance Committee" in "scores of cases," yet he continually evaded the worst consequences of his actions by voluntarily dismissing cases. *Id.* at *1. In light of "the scope of [his] misconduct," overall record, and a case "fatally flawed…from its inception," Judge Furman imposed sanctions to "deter repetition of the misconduct or comparable conduct by others." *Id*. at *20–21. Mr. Blackburn is precisely the type of "similarly situated persons" Judge Furman's decision meant to deter. Section 1927 sanctions should be imposed.

23

**III.    THE COURT SHOULD AWARD ROC NATION ITS COSTS AND ATTORNEY'S FEES AND DISMISS THE FAC WITH PREJUDICE**

Roc Nation respectfully requests terminating sanctions, along with attorney's fees and costs. Mr. Blackburn admitted nearly a year ago that neither he nor his client have a valid basis to include Roc Nation in this litigation. And months before filing the Complaint, Mr. Blackburn acknowledged his client's status as an independent contractor, precluding his recently pleaded NYLL-based claims. Yet Plaintiff and his counsel have continued to needlessly and baselessly subject Roc Nation to intense public scrutiny, embarrassment, and reputational harm. The FAC, which somehow adds five new claims and almost no new facts, compounded that harm and forced Roc Nation to continue expending resources defending itself against these fabricated claims. The just and fair remedy is dismissal of those claims with prejudice and payment of the attorney's fees and costs Roc Nation has incurred to defend against them. Under the circumstances, this type of severe sanction is appropriate. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 661 (S.D.N.Y. 1996) (awarding attorneys' fees and costs where defendants were "made to respond to a patently meritless complaint and to suffer unwarranted adverse publicity," related to a RICO claim that suffered from a "total lack of substance …giv[ing] rise to the inference that the action was filed for improper purposes"), *aff'd*, 113 F.3d 1229 (2d Cir. 1997); *Bryant v. Brookyln Barbecue Corp.*, 932 F.2d 697 (8th Cir. 1991) (affirming district court's award of attorneys' fees and costs pursuant to Rule 11 where "'reasonable inquiry' … [was conducted] only *after* the

24

original complaint had been filed," which pleading was brought for the improper purpose of "attract[ing] publicity and to harass the defendants").[4]

## CONCLUSION

For the reasons stated above, this Court should impose sanctions under Rule 11, 28 U.S.C. § 1927, or its inherent authority.  Should the Court conclude that an award of fees and costs is appropriate, Roc Nation respectfully requests that the Court direct the parties to confer regarding a briefing schedule for the calculation of that award.

DATED:  June 1 2026  
       New York, New York

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:    */s/ Alex Spiro*  
      Alex Spiro  
      Joanna E. Menillo  
      295 5th Avenue, 9th Floor  
      New York, New York 10016  
      Phone:  (212) 849-7000  
      alexspiro@quinnemanuel.com  
      joannamenillo@quinnemanuel.com

*Attorneys for Defendant Roc Nation, LLC*

---

[4]   *See also Vista Acquisitions, LLC v. W. Shore Walden LLC*, 2023 WL 2145515, *17 (N.D. Ga. Feb. 21, 2023) (awarding attorney's fees where "no reasonable attorney could have thought Plaintiff's claims had any chance to succeed" and plaintiff threatened to "file a civil RICO suit only 11 days after an unsuccessful attempt at reaching an out-of-court resolution," which "ma[de] it clear Plaintiff intended only to force Defendants to spend money to defend this case and to pressure them to drop their challenge to the City's zoning decision").

**<u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>**

I, Alex Spiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule III(C) of Hon. Jennifer L. Rochon Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 7,863 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule III(C) of Judge Rochon's Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this first day of June, 2026 in New York, New York.

*/s/ Alex Spiro*
Alex Spiro
