**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JOSEPH ANTHONY CARTAGENA p/k/a FAT JOE, | ) ) | |
| Plaintiff, | ) | Case No. 1:25-cv-03552 (JLR)(JW) |
| v. | ) | |
| TERRANCE DIXON, TYRONE A. BLACKBURN, and T.A. BLACKBURN LAW, PLLC, | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| TERRANCE DIXON, | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-05144 (JLR)(JW) |
| v. | ) | |
| JOSEPH ANTHONY CARTAGENA p/k/a FAT JOE, PETER TORRES p/k/a "PISTOL PETE", RICHARD JOSPITRE p/k/a "RICH PLAYER," ERICA JULIANA MOREIRA, SNEAKER ADDICT TOURING LLC, SLATE INC., and ROC NATION LLC, | ) ) ) ) ) ) ) | Consolidated for Pretrial Purposes |
| Defendants. | ) | |

**PLAINTIFF TERRANCE DIXON'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT ROC NATION LLC'S SECOND MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 11, 28 U.S.C. § 1927, AND
THE COURT'S INHERENT AUTHORITY**

By: Tyrone A. Blackburn, Esq.

1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT

FACTUAL AND PROCEDURAL BACKGROUND

    A.  THE UNDERLYING DISPUTE AND THE ORIGINAL COMPLAINT.

    B.  THE JULY 2025 "BLACKBURN EMAIL" AND ROC NATION'S FIRST SANCTIONS MOTION.

    C.  THE FIRST AMENDED COMPLAINT.

    D.  THE SECOND SANCTIONS MOTION.

LEGAL STANDARDS

    A.  RULE 11.

    B.  28 U.S.C. § 1927.

    C.  THE COURT'S INHERENT AUTHORITY.

ARGUMENT

I.     ROC NATION'S RULE 11 MOTION IS BARRED BY ITS FAILURE TO COMPLY WITH THE SAFE HARBOR AS TO THE FIRST AMENDED COMPLAINT.

    A.  RULE 11(C)(2) REQUIRES A SECOND SAFE-HARBOR LETTER FOR A SECOND MOTION DIRECTED AT A NEW PLEADING.

    B.  ROC NATION'S EMAIL-ONLY TRANSMISSION INDEPENDENTLY FAILS RULE 11(C)(2) BECAUSE UNDERSIGNED COUNSEL DID NOT CONSENT IN WRITING TO ELECTRONIC SERVICE.

    C.  ROC NATION EMAILED A SAFE-HARBOR LETTER FIXATED ON THE ORIGINAL COMPLAINT'S RICO CLAIM — THE FAC RECEIVED ONLY A TOKEN, HONORABLE MENTION.

    D.  THE "TWO-MOTION PROBLEM": ROC NATION'S STRUCTURAL FAILURE.

    E.  ROC NATION'S ATTEMPT TO "BOOTSTRAP" § 1927 AND INHERENT AUTHORITY DOES NOT CURE THE SAFE-HARBOR DEFECT.

II.    THE ORIGINAL COMPLAINT WAS NOT FRIVOLOUS, AND DROPPING RICO WAS STRATEGIC NARROWING, NOT AN ADMISSION OF SANCTIONABILITY.

    A.  THE RICO CLAIM HAD A COLORABLE BASIS AT THE TIME OF FILING.

    B.  DROPPING RICO WAS THE BEHAVIOR RULE 11 WAS DESIGNED TO ENCOURAGE.

    C.  ROC NATION'S OWN CITED CASES UNDERCUT ITS POSITION.

III.   THE FAC'S TVPRA CLAIM IS LEGALLY SUFFICIENT, FACTUALLY SUPPORTED, AND NOT REFUTED BY THE "BLACKBURN EMAIL."

    A.  THE § 1595(A) BENEFICIARY-LIABILITY STANDARD.

    B.  THE BLACKBURN EMAIL CONCEDES NOTHING.

    C.  A PRE-LITIGATION NEGOTIATION EMAIL CANNOT DEFEAT THE COLORABILITY OF A PLEADED CLAIM OR TRIGGER RULE 11 SANCTIONS.

    D.  THE FAC'S "MR. CASTILLO" ALLEGATIONS ARE NOT FRIVOLOUS.

IV.   THE FAC'S NYLL CLAIMS ARE VIABLE UNDER THE SECOND CIRCUIT'S ECONOMIC-REALITIES TEST.

    A.  ROC NATION'S "FREELANCE ISN'T FREE ACT" ATTACK RESTS ON AN INADMISSIBLE COMPROMISE COMMUNICATION.

    B.  RULE 8(D)(2) EXPRESSLY PERMITS ALTERNATIVE AND INCONSISTENT PLEADING.

2

C.  THE FAC'S ALLEGATIONS SATISFY THE ECONOMIC-REALITIES TEST FOR EMPLOYEE STATUS.

D.  THE JOINT-EMPLOYER TEST ALSO SUPPORTS THE FAC'S ALLEGATIONS.

E.  THE JOINT-EMPLOYER ALLEGATIONS ARE NOT "SELF-CONTRADICTORY."

F.  STATUTE OF LIMITATIONS AND CONTINUING-VIOLATIONS DOCTRINE.

G.  NYLL AIDING-AND-ABETTING AND JOINT-EMPLOYER COUNTS.

V.  SECTION 1927 AND INHERENT-AUTHORITY SANCTIONS ARE FORECLOSED.

A.  SECTION 1927 DOES NOT REACH MR. DIXON.

B.  NEITHER § 1927 NOR INHERENT AUTHORITY REACHES THE ALLEGED CONDUCT.

C.  THE MOTION'S "RULE 12(F)" AND "WASTEFUL MOTION PRACTICE" THEORIES DO NOT ESTABLISH BAD FAITH.

D.  THE "PRIOR-CASE" CHARACTER ATTACK CANNOT SUPPLY CASE-SPECIFIC EVIDENCE OF BAD FAITH.

E.  THIS COURT'S PRIOR ADMONITIONS DO NOT SUPPLY BAD FAITH HERE.

VI.  THE REQUESTED REMEDIES — DISMISSAL WITH PREJUDICE AND FULL FEE-SHIFTING — ARE LEGALLY UNAVAILABLE.

A.  DISMISSAL WITH PREJUDICE IS NOT A RULE 11 SANCTION ON THIS RECORD.

B.  FULL FEE-SHIFTING IS FORECLOSED BY GOODYEAR'S "BUT-FOR" CAUSATION RULE.

C.  RULE 11 SANCTIONS ARE PRESUMPTIVELY NON-MONETARY AND SHOULD NOT BE PUNITIVE.

D.  ROC NATION SHOULD BEAR ITS OWN FEES FOR THIS MOTION.

CONCLUSION

**TABLE OF AUTHORITIES**

**CASES**

- *Bill Johnson's Rests., Inc. v. NLRB,* 461 U.S. 731 (1983)
- *Chambers v. Nasco, Inc.,* 501 U.S. 32 (1991)
- *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990)
- *Foman v. Davis,* 371 U.S. 178 (1962)
- *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101 (2017)
- *Adler v. Pataki,* 185 F.3d 35 (2d Cir. 1999)
- *Barfield v. N.Y.C. Health & Hosps. Corp.,* 537 F.3d 132 (2d Cir. 2008)
- *Chong v. Kwo Shin Chang,* 599 F. App'x 18 (2d Cir. 2015) (Summary Order)
- *Cross & Cross Props., Ltd. v. Everett Allied Co.,* 886 F.2d 497 (2d Cir. 1989)
- *Dalla-Longa v. Magnetar Capital LLC*, 33 F.4TH 693 (2D CIR. 2022)
- *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329 (2d Cir. 1986)
- *Eisemann v. Greene,* 204 F.3d 393 (2d Cir. 2000)
- *Enmon v. Prospect Capital Corp.,* 675 F.3d 138 (2d Cir. 2012)
- *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320 (2d Cir. 1995)
- *Herman v. Rsr Sec. Servs. Ltd.,* 172 F.3d 132 (2d Cir. 1999)
- *Irizarry v. Catsimatidis,* 722 F.3d 99 (2d Cir. 2013)
- *Kiobel v. Millson,* 592 F.3d 78 (2d Cir. 2010)
- *Kropelnicki v. Siegel,* 290 F.3d 118 (2d Cir. 2002)
- *Lawrence v. Richman Grp. of Ct LLC,* 620 F.3d 153 (2d Cir. 2010)
- *Ling Nan Zheng v. Liberty Apparel Co.,* 617 F.3d 182 (2d Cir. 2010)
- *O'Brien v. Alexander,* 101 F.3d 1479 (2d Cir. 1996)
- *Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir. 1986)
- *Perez v. Posse Comitatus,* 373 F.3d 321 (2d Cir. 2004)
- *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71 (2d Cir. 2000)
- *Mackler Prods., Inc. v. Cohen,* 146 F.3d 126 (2d Cir. 1998)
- *Salovaara v. Eckert,* 222 F.3d 19 (2d Cir. 2000)
- *Sassower v. Field,* 973 F.2d 75 (2d Cir. 1992)
- *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323 (2d Cir. 1999)
- *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170 (2d Cir. 2012)
- *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003)
- *Sussman v. Bank of Israel,* 56 F.3d 450 (2d Cir. 1995)
- *United Republic Ins. Co. v. Chase Manhattan Bank,* 315 F.3d 168 (2d Cir. 2003)
- *Wolters Kluwer Fin. Servs., Inc. v. Scivantage,* 564 F.3d 110 (2d Cir. 2009)
- *Zheng v. Liberty Apparel Co.,* 355 F.3d 61 (2d Cir. 2003)
- *Askins v. Hagopian,* 713 Fed. Appx. 380 (5th Cir. 2018)
- *Byrne v. Nezhat,* 261 F.3d 1075 (11th Cir. 2001)
- *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358 (9th Cir. 1991) (en banc)
- *Adams v. Taylor,* 754 F. Supp. 3d 393 (W.D.N.Y. 2024)
- *Aj Energy LLC v. Woori Bank,* 2019 Wl 4688629 (S.D.N.Y. Sept. 26, 2019)
- *Broidy v. Global Risk Advisors LLC,* 2023 Wl 5447267 (S.D.N.Y. Aug. 24, 2023)
- *Bueno v. Buzinover,* 2023 Wl 2387113 (S.D.N.Y. Mar. 7, 2023)
- *Burns v. Bank of Am.,* 2007 U.S. Dist. Lexis 40037 (S.D.N.Y. June 4, 2007)

- *Colliton v. Cravath, Swaine & Moore LLP,* 2008 Wl 4386764 (S.D.N.Y. Sept. 24, 2008)
- *Craig v. UMG Recordings, Inc.,* 380 F. Supp. 3d 324 (S.D.N.Y. 2019)
- *Doe #1 v. Mg Freesites, Ltd.,* 676 F. Supp. 3d 1136 (N.D. Ala. 2022)
- *Doe 1 v. Deutsche Bank Ag,* 671 F. Supp. 3d 387 (S.D.N.Y. 2023)
- *Edmondson v. Raniere,* 751 F. Supp. 3d 136 (E.D.N.Y. 2024)
- *Gal v. Viacom Int'l, Inc.,* 403 F. Supp. 2d 294 (S.D.N.Y. 2005)
- *Gong v. Sarnoff,* 2023 Wl 5372473 (S.D.N.Y. Aug. 22, 2023)
- *Jones v. Combs,* 759 F. Supp. 3d 534 (S.D.N.Y. 2024)
- *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649 (S.D.N.Y. 1996)
- *Lancaster v. Zufle,* 170 F.R.D. 7 (S.D.N.Y. 1996)
- *Moore v. Valero Ardmore Refinery,* 2015 Wl 129985 (N.D. Tex. Jan. 9, 2015)
- *S.J. v. Choice Hotels Int'l, Inc.,* 473 F. Supp. 3d 147 (E.D.N.Y. 2020)
- *Standard Morgan Partners v. Union Ins. Co.,* 2011 WL 1806499 (S.D. Tex. May 11, 2011)
- *Sun v. Shen Yun Performing Arts, Inc.,* 2026 Wl 1382896 (S.D.N.Y. May 18, 2026)
- *Targum v. Citrin Cooperman & Co., LLP,* 2013 Wl 6087400 (S.D.N.Y. Nov. 19, 2013)
- *Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.,* 194 F.R.D. 378 (D. Mass. 2000)
- *Usherson v. Bandshell Artist Mgmt.,* 2020 Wl 3483661 (S.D.N.Y. June 26, 2020)
- *Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc.,* 174 F.R.D. 301 (S.D.N.Y. 1997)
- *Zunzurovski v. Fisher,* 2024 Wl 1434076 (S.D.N.Y. Apr. 3, 2024)
- *Matter Of Columbia Artists Mgt. LLC (Comm'r of Labor),* 109 A.D.3d 1055, 972 N.Y.S.2d 343 (3d Dep't 2013)

**RULES, STATUTES & REGULATIONS**
- FED. R. CIV. P. 5
- FED. R. CIV. P. 5(B)(2)(E)
- FED. R. CIV. P. 8(D)(2)
- FED. R. CIV. P. 8(D)(3)
- FED. R. CIV. P. 11
- FED. R. CIV. P. 11(C)(2)
- FED. R. CIV. P. 15
- FED. R. CIV. P. 11 ADVISORY COMMITTEE'S NOTE (2001 AMENDMENT)
- FED. R. EVID. 408
- 18 U.S.C. § 1591
- 18 U.S.C. § 1595(A)
- 28 U.S.C. § 1927
- N.Y. LAB. LAW §§ 190 ET SEQ. (MCKINNEY)
- N.Y. GEN. BUS. LAW ARTICLE 44-A, §§ 1410–1417 (FREELANCE ISN'T FREE ACT)
- 12 N.Y. COMP. CODES R. & REGS. § 142-2.14

**PRELIMINARY STATEMENT**

Terrance Dixon, by and through undersigned counsel Tyrone A. Blackburn, Esq. and T.A. Blackburn Law, PLLC (collectively, "Plaintiff" or "Mr. Dixon"), respectfully submits this Memorandum of Law in opposition to Defendant Roc Nation LLC's ("Roc Nation") second motion for sanctions (the "Motion" or "Mot.") filed on June 1, 2026, at Dkt. No. 204. The Motion must be denied in its entirety. The motion is procedurally defective, factually distorted, and legally unsupportable. Roc Nation is not seeking to correct a genuine Rule 11 problem; it is attempting to weaponize the Federal Rules to strip a plaintiff of counsel, extinguish his claims without a merits adjudication, and shift the cost of its own aggressive litigation posture onto Mr. Dixon and his lawyer. That is precisely the sort of "tactical" sanctions practice that the Second Circuit and courts of this District have repeatedly condemned.

Roc Nation's escalation is itself the tell. It filed a first sanctions motion in July 2025 on the Original Complaint; this Court dismissed that motion without prejudice and granted Plaintiff leave to file the FAC. Rather than accept the Court's leave order as the ordinary product of Rule 15 practice, Roc Nation has now filed a second sanctions motion — this time targeting the very amended pleading the Court authorized, without serving any new safe-harbor letter, and enlarged to demand sanctions against the client personally, terminating dismissal, and full fee-shifting. That is not the good-faith invocation of a procedural rule. It is the sequential deployment of Rule 11 as a litigation weapon against a pleading the Court itself permitted.

At the threshold, the Motion is barred by the Rule 11 safe-harbor requirement. Roc Nation served its safe-harbor package on the Original Complaint in July 2025. It now moves, for the first time, against the First Amended Complaint (Dkt. No. 85, the "FAC") — a distinct pleading — without having served a new, FAC-specific 21-day notice. That failure is not a technicality; it is the condition precedent to Rule 11 relief, and it is dispositive. See infra–Argument I.A.

6

The safe-harbor defect is independently fatal on a second ground: Roc Nation served its purported safe-harbor package by email only. On May 2, 2026, at 11:38 a.m., a junior associate at Quinn Emanuel Urquhart & Sullivan LLP emailed the safe-harbor letter and proposed notice of motion to undersigned counsel. No certified mail, express mail, or hand delivery accompanied it. The Federal Rules authorize electronic service only where the recipient consented in writing — consent that undersigned counsel never gave. The email therefore did not commence the twenty-one-day clock, rendering the June 1, 2026, filing premature on this ground as well. See infra–Argument I.B.

On the merits, the FAC's claims are not merely defensible — they are anchored in doctrine Roc Nation does not dispute. The TVPRA claim tracks a constructive-knowledge standard the FAC pleads with particularity. The NYLL claims track the Second Circuit's own multi-factor economic-realities framework. Good-faith narrowing of the Original Complaint — dropping RICO in favor of more targeted claims — is behavior Rule 11 was designed to encourage, not punish. And a pre-litigation settlement communication cannot retroactively drain a pleaded claim of the colorable basis it had at the moment of filing. See infra-Arguments II–IV.

The Section 1927 and inherent-authority branches fare no better. Section 1927 does not reach parties — its text is limited to attorneys admitted to conduct cases — so the Section 1927 request against Mr. Dixon personally fails on the face of the statute. As to Mr. Blackburn, both Section 1927 and inherent authority require clear evidence of subjective bad faith, a standard Roc Nation's Motion does not come close to meeting. See infra–Argument V.

Nor may this Court credit the prior-case character attack that occupies the last quarter of Roc Nation's brief. Sanctions must be grounded in the specific record before the court, not in a generalized indictment of counsel's conduct in unrelated matters. Roc Nation's catalog of

admonitions in unrelated prior matters — involving different parties, different pleadings, and different facts — cannot supply the case-specific clear evidence of subjective bad faith that controlling law requires. See infra–Argument V.D.

This brief proceeds in six parts. Part I demonstrates the dispositive safe-harbor defects. Parts II–IV address the substantive attacks on the Original Complaint's RICO claim, the FAC's TVPRA claim, and the FAC's NYLL claims. Part V shows that the Section 1927 and inherent-authority requests are foreclosed. Part VI demonstrates that the requested remedies — terminating dismissal and full fee-shifting — are legally unavailable. The Motion is procedurally barred, substantively meritless, and tactically transparent. This Court should deny it in its entirety — and, in light of the procedural defects, award Plaintiff his fees incurred in defending it.

## **FACTUAL AND PROCEDURAL BACKGROUND**
A.  The Underlying Dispute and the Original Complaint.

This action arises from Mr. Dixon's allegations that Joseph Anthony Cartagena p/k/a "Fat Joe" and his co-defendants — including his manager Peter Torres p/k/a "Pistol Pete," his booking agent Richard Jospitre p/k/a "Rich Player," his associate Erica Juliana Moreira, and the corporate entities Sneaker Addict Touring LLC and Slate Inc., together with Roc Nation as a management and business-affairs entity — engaged in a long-running pattern of wage theft, coerced labor, and sexual exploitation directed at Mr. Dixon over his years of touring service. Mr. Dixon initiated this action in April 2025 by filing a Complaint (the "Original Complaint," 25-cv-05144, Dkt. No. 1). The Original Complaint asserted claims sounding in the Trafficking Victims Protection Reauthorization Act ("TVPRA"); civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and common-law tort and defamation theories. The RICO claim was pleaded to describe an alleged pattern of predicate acts — including mail fraud, wire fraud, and

8

extortionate wage theft — that undersigned counsel in good faith believed connected the individual and corporate defendants in a common enterprise.

Undersigned counsel conducted a substantial pre-filing investigation, including but not limited to interviews of Mr. Dixon, review of tour-related documentation and payment records in his possession, cross-checks of publicly available business filings for the corporate defendants, and legal research into the elements of the TVPRA, civil RICO predicate acts, and the "commercial venture" element.

B.  The July 2025 "Blackburn Email" and Roc Nation's First Sanctions Motion.

Shortly after the Original Complaint was filed, undersigned counsel and Roc Nation's counsel exchanged a series of communications about the scope and factual basis of the RICO and TVPRA claims as asserted against Roc Nation specifically. In one such email dated on or about July 2025 (the "Blackburn Email," Dkt. No. 16-1), undersigned counsel wrote — in the context of good faith settlement-and-narrowing discussions — that "it is evident from the evidence [Roc Nation] may have been defrauded by Fat Joe as well." Roc Nation seized on that single sentence as the centerpiece of its first sanctions motion, filed July 22, 2025 (Dkt. Nos. 14–16), which sought sanctions on the Original Complaint.

Roc Nation's first sanctions motion was never adjudicated on the merits. In direct response to that motion, undersigned counsel obtained leave to file the FAC, which superseded the Original Complaint and mooted the first Rule 11 motion. The Court dismissed the first motion without prejudice. The legal consequences of that narrowing are addressed in Argument II.

C.  The First Amended Complaint.

The FAC was filed on March 26, 2026 (Dkt. No. 85). Two features of the FAC bear directly on the pending Motion. First, the FAC dropped the civil RICO claim in its entirety — a strategic narrowing, not an admission of frivolousness. See infra-Argument II.

9

Second, the FAC preserved and refined the TVPRA claim and added New York Labor Law ("NYLL") claims that reflect the additional documentation and testimony that had come to light through pre-discovery investigation. The NYLL counts in the FAC (Counts I, II, V, IX, and X) allege that Mr. Dixon, whatever contractual labels the parties may have used at various times, functioned as an employee under the "economic realities" test governing NYLL and joint-employer status. The FAC further alleges — in detail — that Roc Nation exercised sufficient control over the terms and conditions of Mr. Dixon's work (including through its business-affairs oversight of Cartagena's touring operations) to qualify as a joint employer under the multi-factor analysis the Second Circuit prescribes. See FAC ¶¶ 63–70, 104–20, 140–70, 209–28.

D.  The Second Sanctions Motion.

On June 1, 2026, Roc Nation filed the present, second sanctions motion (Dkt. No. 204), targeting the FAC rather than the Original Complaint and expanding the requested relief to add Section 1927 and inherent-authority sanctions against both Mr. Blackburn and Mr. Dixon personally. Roc Nation does not attach — and cannot attach — any FAC-specific safe-harbor letter served twenty-one days before the filing date. That omission is dispositive. See infra–Argument I.

The Motion's two central rhetorical devices — treating the Blackburn Email as an admission foreclosing the TVPRA claim and importing an unrelated prior-case character attack — are addressed in Arguments III and V.D, respectively.

The Motion is thus a sequel in search of a defect: a second sanctions filing aimed at a pleading Roc Nation never covered by a Rule 11 notice, at a stage of the case where no evidentiary record yet exists against which any allegation could be judged "utterly lacking in support.

## LEGAL STANDARDS

A.  Rule 11.

Rule 11 imposes on counsel a duty of reasonable inquiry into fact and law, but it is not a merits-adjudication device and is not to be used as a substitute for Rule 12 or Rule 56. The Second Circuit has cautioned that Rule 11 sanctions are "a serious matter" that should be used "with restraint." Salovaara v. Eckert, 222 F.3d 19, 33 (2d Cir. 2000). "Merely because a claim proves unsuccessful does not mean it was frivolous when filed." Kiobel v. Millson, 592 F.3d 78, 83 (2d Cir. 2010). The touchstone is objective reasonableness at the moment of filing, viewed without hindsight bias. Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002). Sanctions are appropriate only where "it is patently clear that a claim has absolutely no chance of success." Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 388 (2d Cir. 2003). Indeed, the Second Circuit has cautioned that "every unsuccessful complaint, at some level of analysis, contains either a flawed argument or an unsupported allegation" and that "a shifting standard would sanction lawyers for making unavoidable mistakes." Cross & Cross Props., Ltd. v. Everett Allied Co., 886 F.2d 497, 504 (2d Cir. 1989). Sanctions therefore lie only where a claim is "utterly lacking in support." O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996). That is a demanding standard — one that pre-discovery pleadings, tested only at the Rule 12 threshold, will rarely meet. See Burns v. Bank of Am., 2007 U.S. Dist. LEXIS 40037, at *32 (S.D.N.Y. June 4, 2007) (denying sanctions where allegations were not "utterly lacking" prior to discovery); Kingvision Pay-Per-View, Ltd. v. Ramierez, 2005 U.S. Dist. LEXIS 15015, at *12 (S.D.N.Y. July 26, 2005) (same).

Equally important, Rule 11 is not an all-purpose litigation weapon. The 1993 advisory committee expressly warned that Rule 11 motions "should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. The committee added

11

that Rule 11 sanctions "should not be employed . . . to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, [or] to create a conflict of interest between attorney and client." Id. The specific ways Roc Nation's Motion transgresses each of those prohibitions are addressed in Argument I.A.

Rule 11 also contains a mandatory safe-harbor provision. A movant "must" serve the challenged paper and afford twenty-one days to withdraw or correct it before filing with the Court. Fed. R. Civ. P. 11(c)(2). "Strict compliance" with this requirement is required, and non-compliance is fatal. Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175–76 (2d Cir. 2012); Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1327–29 (2d Cir. 1995); Lawrence v. Richman Grp. of CT LLC, 620 F.3d 153, 158 (2d Cir. 2010). The safe-harbor motion must be served under Rule 5, which authorizes electronic service only where "the person consented to" in writing. Fed. R. Civ. P. 5(b)(2)(E). Analysis of Roc Nation's specific failures — including the two-motion problem and the email-only service defect — is set forth in Argument I.

B.  28 U.S.C. § 1927.

Section 1927 authorizes fee-shifting against "any attorney or other person admitted to conduct cases" who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. By its plain text, § 1927 does not reach parties — a point that alone defeats Roc Nation's § 1927 request as to Mr. Dixon personally. See Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[T]he plain language of the statute limits its application to attorneys or others admitted to conduct cases."); Sassower v. Field, 973 F.2d 75, 80 (2d Cir. 1992).

The Second Circuit's standard for § 1927 sanctions against counsel is stringent. The movant must show, by clear evidence, that (i) the challenged conduct was "without a colorable basis" and

12

(ii) the conduct was "motivated by improper purposes such as harassment or delay" Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009); Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012); Mackler Prods., Inc. v. Cohen, 146 F.3d 126, 129 (2d Cir. 1998). Bad faith under § 1927 is a "high" bar. "Mere negligence, however substantial, will not suffice." Enmon, 675 F.3d at 143.

C.   The Court's Inherent Authority.

Inherent-authority sanctions are "an extraordinary remedy" that must be exercised with "restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." Id. A court may sanction a party or attorney under its inherent power only upon clear evidence of "subjective bad faith." Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323 (2d Cir. 1999); Sussman v. Bank of Israel, 56 F.3d 450, 459 (2d Cir. 1995). The Second Circuit has framed the inherent-authority test as conjunctive: a court may not impose sanctions absent clear evidence both that the challenged claim was "entirely without color" and that it was undertaken in bad faith. Eisemann v. Greene, 204 F.3d 393, 395–96 (2d Cir. 2000) (per curiam); Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78–79 (2d Cir. 2000). Colorability, in turn, is a modest bar: a claim is colorable so long as it has "some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." Revson, 221 F.3d at 79. And the inquiry is forward-looking — the court asks whether counsel, at the time of filing, "could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986). The Supreme Court has further held that inherent-authority fee-shifting is limited to fees

13

incurred "because of the misconduct" — a strict but-for causation standard. Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 108 (2017). See infra-Argument VI.B.

**ARGUMENT**

I.    **ROC NATION'S RULE 11 MOTION IS BARRED BY ITS FAILURE TO COMPLY WITH THE SAFE HARBOR AS TO THE FIRST AMENDED COMPLAINT.**

Before this Court reaches any substantive question, it must resolve one that is dispositive: Roc Nation has not complied with the Rule 11 safe harbor as to the FAC. That failure alone requires denial of the Motion as it seeks Rule 11 relief.

A.  Rule 11(c)(2) Requires a Second Safe-Harbor Letter for a Second Motion Directed at a New Pleading.

Rule 11(c)(2) is unequivocal. A motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service" Fed. R. Civ. P. 11(c)(2). The Second Circuit has enforced this requirement strictly. In Star Mark, the court held that the safe-harbor rule "must be strictly enforced" because "the purpose of the safe harbor is to give the offending party a meaningful opportunity to correct the alleged violation." 682 F.3d at 175. In Hadges v. Yonkers Racing Corp., the Second Circuit reversed sanctions because the movant had not served the challenged paper as a formal Rule 11 motion — even though it had informally warned opposing counsel about the alleged violation. 48 F.3d at 1327–29. And in Lawrence v. Richman Group of CT LLC, the court reiterated that the twenty-one-day service window is a "procedural prerequisite" without which "Rule 11 sanctions could be imposed." 620 F.3d at 158. The Second Circuit has further explained that the safe harbor "functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003). That

14

principle is directly on point here: once the FAC superseded the Original Complaint, undersigned counsel lost any meaningful opportunity to "correct or withdraw" the challenged pleading, because the challenged pleading no longer existed. A safe-harbor letter served against a since-superseded pleading is a nullity under Pennie & Edmonds. That principle is directly reinforced by the recent decisions in Adams v. Taylor, 754 F. Supp. 3d 393 (W.D.N.Y. 2024) (holding safe-harbor notice directed at original complaint does not satisfy Rule 11(c)(2) as to amended complaint, applying Lawrence), and Targum v. Citrin Cooperman & Co., LLP, 2013 WL 6087400, at *9 (S.D.N.Y. Nov. 19, 2013) (denying sanctions where notice directed at prior version of complaint, not operative amended pleading).

The rationale is straightforward: Rule 11 is not a mechanism for defense counsel to accumulate leverage or manufacture fees; it is a mechanism to correct problems. If the challenged party cures the alleged violation within twenty-one days, the movant cannot proceed and no fees are recoverable. That structural cure-first design is meaningless if a movant can serve a safe-harbor letter on one pleading, wait for the pleading to be superseded by amendment, and then move against the new pleading without ever having given the challenged party notice of what specifically in the new pleading is objectionable and an opportunity to withdraw or amend it. That is exactly what Roc Nation has done here.

B. Roc Nation's Email-Only Transmission Independently Fails Rule 11(c)(2) Because Undersigned Counsel Did Not Consent in Writing to Electronic Service.

Even setting aside the two-motion problem addressed in the following subsections, Roc Nation's May 2, 2026, safe-harbor package was defective on an independent, dispositive ground: it was transmitted exclusively by email, in violation of Rule 5(b)(2)(E). Rule 11(c)(2) requires that the challenged motion "must be served under Rule 5." Fed. R. Civ. P. 11(c)(2). Rule 5(b)(2) enumerates the permissible methods of service: handing the document to the person, leaving it at

15

the person's office or dwelling, mailing it, or delivering it to the court clerk. Electronic transmission is authorized under subsection (E) only where service is accomplished by "sending it by other electronic means that the person consented to in writing." Fed. R. Civ. P. 5(b)(2)(E) (emphasis added).

The advisory committee note to the 2001 amendment leaves no interpretive latitude: "Consent must be express, and cannot be implied from conduct — for example, by using electronic means to send a document to the court and other parties." Fed. R. Civ. P. 5 advisory committee's note to 2001 amendment. That is the opposite of what Roc Nation attempted here. On Saturday, May 2, 2026, at 11:38 a.m., Joanna Menillo of Quinn Emanuel Urquhart & Sullivan LLP emailed the safe-harbor letter and proposed Notice of Motion for Rule 11 Sanctions to undersigned counsel at tblackburn@tablackburnlaw.com, with Alex Spiro copied. The letter itself is captioned in bold at the top: "VIA ELECTRONIC MAIL / TBLACKBURN@TABLACKBURNLAW.COM." No other service method is indicated on the face of the letter. No certified mail was sent. No express mail was sent. No copy of the safe-harbor package was hand-delivered to counsel's office at 1242 East 80th Street, 3rd Floor, Brooklyn, New York 11236, or to counsel's residence. Undersigned counsel never gave Quinn Emanuel, Alex Spiro, or Roc Nation written consent to accept service — under Rule 5 generally, or the Rule 11 safe-harbor requirement specifically — by email.

This District has squarely rejected the very theory Roc Nation must advance to salvage its email-only service. In Dalla-Longa v. Magnetar Capital LLC, 1:19-cv-11246-LGS, Judge Schofield rejected the argument that consent to email service under Rule 5(b)(2)(E) can be implied . . . from the parties' pattern and practice of communicating by e-mail. Id. at *2. The court held that consent must be in writing and that no course of electronic correspondence between counsel could substitute for the express written consent Rule 5 requires. Id. The Second Circuit affirmed

Judge Schofield's order and opinion. See, Dalla-Longa v. Magnetar Capital LLC, No. 20-2978 (2d Cir. 2022).

Additionally, the Fifth Circuit reached the same conclusion in the Rule 11 context in Askins v. Hagopian, 713 F. App'x 380, 381 (5th Cir. 2018), holding that email transmission of a Rule 11 motion was insufficient to satisfy the safe harbor because Rule 5(b)(2)(E) requires written consent that had not been given. Multiple district courts have applied the same rule. See Moore v. Valero Ardmore Refinery, 2015 WL 129985, at *2 (N.D. Tex. Jan. 9, 2015) (consent to electronic service "must be expressly given, in writing, and it cannot be implied" from pattern of email correspondence); Standard Morgan Partners v. Union Ins. Co., 2011 WL 1806499, at *1 (S.D. Tex. May 11, 2011) (same); see also In re Pratt, 524 F.3d 580, 588 (5th Cir. 2008) ("strict compliance with Rule 11 is mandatory."). The Second Circuit's own "strict enforcement" rule for the safe-harbor points to the same result. See Star Mark, 682 F.3d at 175 ("Strict compliance with Rule 11(c)(2) is required."). The Second Circuit's summary order in Chong v. Kwo Shin Chang, 599 F. App'x 18, 19 (2d Cir. 2015) (quoting Star Mark), confirms that "an informal warning . . . without service of a separate Rule 11 motion is not sufficient.".

The consequence is straightforward. Because Rule 5(b)(2)(E) requires express written consent for email service and none was given, Roc Nation's May 2, 2026, email did not affect service of the safe-harbor package "under Rule 5" as Rule 11(c)(2) requires. The twenty-one-day safe-harbor clock therefore never began to run. Roc Nation's June 1, 2026, filing of the sanctions motion — thirty days after an unauthorized email transmission — did not cure the defect; it compounded it, because filing during a safe-harbor period that never validly commenced is precisely the sort of premature filing Rule 11(c)(2) prohibits. The Second Circuit has held that when a Rule 11 movant fails to comply with any component of the safe harbor, the motion "cannot

be granted." Lawrence, 620 F.3d at 158. That principle applies to defects in the manner of service no less than to defects in the timing or content of service.

Nor may Roc Nation argue that any pattern of email exchanges between counsel over the pendency of these consolidated matters supplied implied consent. Dalla-Longa forecloses that argument in this District: even routine, extended email correspondence between counsel does not — as a matter of law — supply the express written consent Rule 5(b)(2)(E) requires. The advisory committee note is emphatic on the same point: consent "cannot be implied from conduct — for example, by using electronic means to send a document to the court and other parties." Fed. R. Civ. P. 5 advisory committee's note to 2001 amendment. Roc Nation had every ability to serve its safe-harbor package by any of the traditional Rule 5(b) methods — hand delivery, mail, or overnight courier. It chose none of them. That choice is fatal to its Rule 11 motion.

C.  Roc Nation Emailed a Safe-Harbor Letter Fixated on the Original Complaint's RICO Claim — the FAC Received Only a Token, Honorable Mention.

At the outset, two facts about Roc Nation's safe-harbor package must be pinned down before any case-law analysis begins. First, Roc Nation did not serve a safe-harbor package — it emailed one. Second, that emailed package was a vehicle for attacking the Original Complaint's RICO claim; the FAC received only a passing, honorable mention. Each defect is independently dispositive; together they are fatal. The safe-harbor rule requires formal service of a formal Rule 11 motion — not a letter, warning, or informal notice, and not an email attaching either. The Second Circuit and this District have repeatedly enforced that requirement, holding that a demand letter, however specific, cannot substitute for the formal motion that Rule 11(c)(2) requires be served twenty-one days before filing. See Gal v. Viacom Int'l, Inc., 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) ("[A] warning letter, as opposed to the service of a proposed motion for sanctions . . . does not trigger the . . . safe harbor period."); Lancaster v. Zufle, 170 F.R.D. 7, 8 (S.D.N.Y.

18

1996) ("Rule 11 requires that a copy of the actual motion be served on opposing counsel."); Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc., 174 F.R.D. 301, 305 (S.D.N.Y. 1997) (letter did not satisfy safe-harbor). The Second Circuit itself reversed sanctions in Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1327–29 (2d Cir. 1995), precisely because the movant had only informally warned opposing counsel without serving a formal, separately filed Rule 11 motion. To the extent Roc Nation argues that its August 15, 2025, emailed letter (Dkt. No. 196-2), or any other emailed correspondence, supplied the FAC-specific safe-harbor notice Rule 11 demands, that argument is foreclosed by circuit authority: emailed letters do not toll or trigger the safe-harbor clock; only formally served motions do.

The record is plain, and Roc Nation's own exhibits prove the point. Roc Nation's July 2025 safe-harbor package — emailed to undersigned counsel and later referenced in and attached to its first sanctions motion (Dkt. Nos. 14–16) — was directed at the Original Complaint. Its August 15, 2025, follow-up email (Dkt. No. 196-2) was more of the same: page after page of attack on the Original Complaint's RICO theory, its predicate-act allegations, and the individuals Roc Nation insisted did not belong in a RICO enterprise. The FAC — a distinct pleading this Court authorized Plaintiff to file — receives, at most, a passing honorable mention. The emailed letter says nothing meaningful about the NYLL counts (which did not yet exist), nothing about the amended TVPRA allegations, nothing about the specific FAC paragraphs Roc Nation now attacks (FAC ¶¶ 21, 63, 77–80, 104, 107–09, 140, 159, 209–10, 227–28), and nothing about the "joint employer" theory at the heart of the FAC's NYLL claims. Roc Nation cannot cure that omission by gesturing at the August 15, 2025, email or by pointing to the mere fact that it filed a first sanctions motion in 2025 — a motion this Court dismissed without prejudice when it granted Plaintiff leave to amend. A safe-harbor letter must identify with specificity the paper or claims challenged, so that the recipient

19

can "withdraw or appropriately correct" them. Fed. R. Civ. P. 11(c)(2). One cannot "correct" what one was never told was defective.

The Second Circuit has held that a safe-harbor letter must give sufficient notice of the specific claim or contention that will be attacked. See Star Mark, 682 F.3d at 176 ("[T]he safe-harbor letter . . . must be sufficiently specific to give the party notice of the claim, contention, allegation, or denial that is challenged."). An emailed letter fixated on a RICO claim in the Original Complaint — a claim no longer even in this case — cannot possibly satisfy the safe-harbor rule as to five new NYLL claims that did not exist when the letter was sent and a TVPRA claim that was materially amended after the letter was sent. Rule 11(c)(2) requires more than a nod in the FAC's direction. It requires the specific paper, the specific claims, and the specific defects — served, not emailed, twenty-one days before filing. Roc Nation delivered none of those things.

D.  The "Two-Motion Problem": Roc Nation's Structural Failure.

There is a still more serious structural defect. When Roc Nation filed its first Rule 11 motion in July 2025 on the Original Complaint, undersigned counsel — precisely to avoid unnecessary motion practice — sought and obtained leave to amend, and the resulting FAC narrowed the case (dropping RICO) and refined the claims that survived. The Court then dismissed Roc Nation's first Rule 11 motion without prejudice because its target pleading no longer existed. That is textbook safe-harbor compliance. It is also textbook Rule 15 behavior. See Foman v. Davis, 371 U.S. 178, 182 (1962) ([Rule 15's] "mandate is to be heeded."). Roc Nation cannot punish counsel for taking exactly the corrective step that Rule 11 exists to encourage.

Roc Nation now attempts to have it both ways: it treats the original Complaint's eventual narrowing as evidence of Rule 11 frivolousness (Mot. at 11) and treats the FAC's expansion in other respects (adding NYLL counts based on newly developed factual matter) as an additional

20

Rule 11 violation (Mot. at 12–16). That is a heads-Roc-Nation-wins, tails-Blackburn-loses trap that Rule 11 does not authorize. See Cooter & Gell, 496 U.S. at 398 ("[T]he policies underlying Rule 11 . . . encourage litigants to abandon claims or defenses. . ..."). A party who narrows or refines its pleading in response to targeted objections is doing exactly what Rule 11 wants — and cannot be penalized for it.

E. Roc Nation's Attempt to "Bootstrap" § 1927 and Inherent Authority Does Not Cure the Safe-Harbor Defect.

Anticipating this problem, Roc Nation drops a footnote suggesting that even if Rule 11 relief is barred, the Court can still award "the same" fees under § 1927 and inherent authority. That is wrong for at least three reasons.

First, § 1927 and inherent-authority sanctions carry a higher — not lower — mental-state requirement than Rule 11. Rule 11 requires objective unreasonableness; § 1927 and inherent authority require subjective bad faith proved by clear evidence. Schlaifer Nance, 194 F.3d at 336. A motion that cannot clear Rule 11 has no chance under the more demanding standards. Courts routinely deny inherent-authority sanctions after finding no Rule 11 violation. See Sussman, 56 F.3d at 459.

Second, the Second Circuit has explicitly held that a movant cannot circumvent Rule 11's safe-harbor by re-labeling a Rule 11 motion as a § 1927 or inherent-authority motion. See Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004); Gal v. Viacom Int'l, Inc., 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005). The safe harbor cannot be so easily evaded.

Third — and dispositively as to Mr. Dixon personally — § 1927 does not reach parties. 28 U.S.C. § 1927; Oliveri, 803 F.2d at 1273. Roc Nation's effort to sanction Mr. Dixon under § 1927 fails on the face of the statute, before this Court reaches any fact-specific question.

II.    **THE ORIGINAL COMPLAINT WAS NOT FRIVOLOUS, AND DROPPING RICO WAS STRATEGIC NARROWING, NOT AN ADMISSION OF SANCTIONABILITY.**

Setting aside the safe-harbor defect, Roc Nation's substantive attacks on the Original Complaint are without foundation. Roc Nation's central argument — that the FAC's abandonment of the RICO claim "confirms" a Rule 11 violation — inverts the law. The Supreme Court held in Cooter & Gell that Rule 11's purpose is undermined, not vindicated, by treating post-filing dismissal as evidence of pre-filing frivolousness. 496 U.S. at 398.

A.  The RICO Claim Had a Colorable Basis at the Time of Filing.

The Original Complaint's RICO claim was pleaded to describe an alleged pattern of predicate acts — mail fraud, wire fraud, wage theft, extortion — that undersigned counsel in good faith believed connected the individual and corporate defendants in a common enterprise. Whether that theory would ultimately survive Rule 12 was a question for the merits, not for Rule 11. The Second Circuit has been clear that a RICO claim that is unsuccessful is not, ipso facto, sanctionable. See Storey, 347 F.3d at 388; Kiobel, 592 F.3d at 83.  Even courts that have dismissed civil RICO claims on their merits routinely decline to impose Rule 11 sanctions. See Doe v. Deutsche Bank AG, 671 F. Supp. 3d 387, 415 (S.D.N.Y. 2023).

Roc Nation's reliance on Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649 (S.D.N.Y. 1996), LCS Group v. Shire, and Byrne v. Nezhat, 261 F.3d 1075 (11th Cir. 2001), does not carry the day. Those cases involved RICO complaints that were factually vacuous, transparently pretextual, and — critically — unaccompanied by any strategic post-filing narrowing. The Original Complaint here is nothing like the "thermonuclear device" caricatures Roc Nation cites. It set forth predicate acts, alleged a common enterprise, and asserted an injury with specific dollar amounts and time periods. And undersigned counsel promptly narrowed the

22

pleading through the FAC — the opposite of the "double-down" conduct that supported sanctions in Katzman and Byrne.

B. Dropping RICO Was the Behavior Rule 11 Was Designed to Encourage.

The Supreme Court could not have been more explicit on this question. In Cooter & Gell, the Court held that the "purposes" of Rule 11 include "encourag[ing] litigants to abandon claims or defenses . . . upon further investigation." 496 U.S. at 398. Consistent with that instruction, the Second Circuit has repeatedly declined to sanction attorneys who narrow their cases in response to defense motions or discovery developments. See Salovaara, 222 F.3d at 33. The rule Roc Nation urges — that any post-filing abandonment of a claim is presumptive evidence of Rule 11 frivolousness — would transform Rule 11 into a trap for cautious counsel and reward the opposite behavior: doubling down on weak theories rather than pruning them.

Roc Nation's cases proving the alleged "abandonment doctrine" are, on inspection, cases involving conduct wildly different from what happened here. In In re Australia & New Zealand Banking Group Ltd. Sec. Litig., 712 F. Supp. 2d 255 (S.D.N.Y. 2010), sanctions issued after counsel amended repeatedly without curing pleading defects that had been identified in prior orders. In Ultra-Temp Corp. v. Advanced Vacuum Sys., 194 F.R.D. 378 (D. Mass. 2000), the sanctioned attorney maintained baseless claims after discovery had definitively falsified them. Neither profile fits Mr. Blackburn, who narrowed his case before Rule 12 adjudication and on his own initiative — the model of Rule 11 compliance.

C. Roc Nation's Own Cited Cases Undercut Its Position.

Roc Nation invokes Gong v. Sarnoff, 2023 WL 5372473 (S.D.N.Y. Aug. 22, 2023), and Gaffney v. Muhammad Ali Enters., LLC, 2021 WL 3542256 (S.D.N.Y. Aug. 11, 2021), for the proposition that RICO frivolousness is sanctionable. But those decisions turned on demonstrable failures of legal research — such as filing suit on time-barred claims or against defendants who

23

were plainly outside the reach of the statute. Nothing comparable is at issue here. Undersigned counsel's RICO theory was pleaded on facts that, whatever their ultimate merit, presented a question the Court could take seriously. When counsel concluded — after further investigation and consultation with his client — that the case would be better and more efficiently pursued without the RICO umbrella, he dropped that count. That is not sanctionable conduct.

III.    **THE FAC'S TVPRA CLAIM IS LEGALLY SUFFICIENT, FACTUALLY SUPPORTED, AND NOT REFUTED BY THE "BLACKBURN EMAIL."**

A.  The § 1595(a) Beneficiary-Liability Standard.

Roc Nation's TVPRA arguments proceed from a fundamental misreading of 18 U.S.C. § 1595(a). Section 1595(a) creates a private right of action against any person who "knowingly benefits" from participation in a "venture" that the defendant knew or should have known was engaged in an act in violation of the TVPRA. 18 U.S.C. § 1595(a). The statute has three elements: (i) knowing benefit; (ii) participation in a venture; and (iii) actual or constructive knowledge of a TVPRA violation. Critically, the third element is disjunctive — actual knowledge or constructive knowledge ("should have known") suffices.

The Circuits are in accord that "should have known" is a genuine negligence-based standard, not a heightened requirement of actual knowledge. See G.G. v. Salesforce.com, Inc., 76 F.4th 544, 553–55 (7th Cir. 2023) (holding that plaintiff pleaded a viable § 1595(a) claim where allegations supported inference that defendant "should have known" of trafficker's activities based on publicly available information); Ratha v. Phatthana Seafood Co., 35 F.4th 1159, 1176–77 (9th Cir. 2022) (upholding beneficiary claim where defendant received a benefit and had constructive notice); Doe #1 v. MG Freesites, Ltd., 676 F. Supp. 3d 1136, 1170–72 (N.D. Ala. 2022). This is a substantially lower bar than the actual-knowledge and active-participation standards Roc Nation implicitly invokes.  The Eastern District of New York reaffirmed this standard in Edmondson v.

24

Raniere, 751 F. Supp. 3d 136, 181 (E.D.N.Y. 2024), where the court held that "constructive knowledge is an intensely fact-based assessment, and obviously presents a meaningfully lower hurdle than a requirement to show actual knowledge." See also S.J. v. Choice Hotels Int'l, Inc., 473 F. Supp. 3d 147, 150–54 (E.D.N.Y. 2020) (§ 1595(a)'s "should have known" standard articulating § 1595(a) constructive-knowledge standard); Sun v. Shen Yun Performing Arts, Inc., 2026 WL 1382896 (S.D.N.Y. May 18, 2026) (sustaining TVPRA claim by former performing-arts-company workers, holding vulnerability factors bear on "serious harm" analysis).

District courts in this Circuit have applied the same beneficiary-liability framework and permitted § 1595(a) claims to proceed against management, booking, and business-affairs entities whose principals allegedly violated the TVPRA. See, e.g., Noble v. Weinstein, 335 F. Supp. 3d 504, 517–24 (S.D.N.Y. 2018) (sustaining § 1595(a) beneficiary claim against production and management entities on constructive-knowledge theory). That on-point SDNY authority is alone sufficient to defeat any argument that Plaintiff's TVPRA claim was "utterly lacking in support" when filed. A claim cannot be sanctionable when courts in this very District have entertained and sustained analogous theories on materially similar facts.

B.  The Blackburn Email Concedes Nothing.

Roc Nation treats the Blackburn Email as though it were a party admission that Roc Nation had no knowledge or involvement in the alleged venture. It is neither. The relevant sentence — that "it is evident from the evidence [Roc Nation] may have been defrauded by Fat Joe as well" — is (i) not a statement of a party opponent but a settlement-context communication from counsel, (ii) hedged with "may have been," and (iii) fully compatible with the constructive-knowledge element of § 1595(a).

The Blackburn Email does not defeat this analysis. A defendant who "may have been" defrauded by one co-defendant and who "should have known" of that co-defendant's trafficking-

25

adjacent conduct toward a third party — these propositions are not mutually exclusive. A sophisticated management or financial-services firm may itself be defrauded by a bad actor and still owe § 1595(a) duties of inquiry to third-party victims whose exploitation was ongoing under its watch. See G.G., 76 F.4th at 555 (recognizing the "sophisticated party with red flags" scenario). Nothing in the Blackburn Email defeats the constructive knowledge inference the FAC pleads.

The FAC alleges — with specificity — that Roc Nation had access to touring documentation, receipts, and the standard operational records that would have surfaced Mr. Cartagena's pattern of wage theft and coercive labor practices as to Mr. Dixon. See FAC ¶¶ 77–80, 209–10, 227–28. Those allegations plead constructive knowledge under any reasonable reading of § 1595(a).

## C. A Pre-Litigation Negotiation Email Cannot Defeat the Colorability of a Pleaded Claim or Supply Subjective Bad Faith.

Beyond its substantive incompatibility with § 1595(a)'s constructive-knowledge standard, the Blackburn Email cannot do the Rule 11 work Roc Nation demands of it for an independent, structural reason: Rule 11 tests the pleading — not counsel's pre-litigation negotiation correspondence. The Rule 11 inquiry is whether the operative pleading is objectively unreasonable at the moment of filing, viewed without hindsight bias, and whether it is so "utterly lacking in support" that it has "absolutely no chance of success." Storey, 347 F.3d at 388; O'Brien, 101 F.3d at 1489. Whether counsel used candid or exploratory language in a private negotiation email months before filing has no bearing on whether the FAC's TVPRA allegations, judged as pleaded, cross that threshold. They do.

Rule 11 does not deputize opposing counsel to comb pre-suit correspondence for turns of phrase that might, in isolation, be marshaled against a properly pleaded claim. To the contrary, the Second Circuit has held that Rule 11 "applies only to assertions contained in papers filed with or

26

submitted to the court" and does not reach out-of-court statements or negotiation communications. Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997). The Blackburn Email is a paradigmatic out-of-court communication — between counsel, before Rule 12 briefing, in the course of narrowing what claims to press — and it is therefore outside Rule 11's textual reach on that ground alone. That posture is not merely permitted by the Rules — it is contemplated by them. Rule 8(d)(2)– (3) expressly authorizes alternative and inconsistent pleading, so undersigned counsel's pre-suit invocation of FIFA cannot foreclose the FAC's alternative NYLL employee theory. In any event, the Blackburn Email is a settlement-negotiation communication that Federal Rule of Evidence 408 excludes when offered to disprove the validity of Plaintiff's claim or to impeach counsel by prior inconsistent statement.

The point is doubly true for the § 1927 and inherent-authority branches of the Motion. Those standards require "clear evidence" of "subjective bad faith." Schlaifer Nance, 194 F.3d at 336. A negotiating attorney's exploratory statement that a co-defendant "may have been defrauded" by another co-defendant is not clear evidence that the pleaded TVPRA claim was filed for an improper purpose; it is, if anything, evidence of the kind of good-faith, candid inter-counsel dialogue Rule 11 is designed to encourage. Cf. Cooter & Gell, 496 U.S. at 398 (Rule 11 exists to "encourage litigants to abandon claims or defenses" and to promote the "correction" of pleadings). An attorney who candidly explores the strength and weakness of alternative theories with opposing counsel — then files a pleading grounded in the strongest surviving theory — is doing exactly what Rule 11 wants counsel to do.

D.  The FAC's "Mr. Castillo" Allegations Are Not Frivolous.

Roc Nation attacks FAC ¶¶ 21, 77–80, 140, 209–10, and 227–28 for referencing a "Mr. Castillo" and characterizes those allegations as speculative. But the FAC pleads Mr. Castillo's role in the alleged venture — including his function as an intermediary between Cartagena's touring

operations and Roc Nation's business-affairs oversight — based on identifiable evidentiary support. Roc Nation is free to dispute those allegations at Rule 12 or at summary judgment. It is not entitled to sanctions merely because it denies allegations that Plaintiff pleads with a Rule 11-compliant factual basis. See Kiobel, 592 F.3d at 83 ("Merely because a claim proves unsuccessful does not mean it was frivolous when filed.").

IV.     **THE FAC'S NYLL CLAIMS ARE VIABLE UNDER THE SECOND CIRCUIT'S ECONOMIC-REALITIES TEST.**

A. Roc Nation's "Freelance Isn't Free Act" Attack Rests on an Inadmissible Compromise Communication.

Roc Nation devotes several pages to Mr. Blackburn's March 23, 2025, pre-litigation demand letter (Dkt. No. 196-2), which invoked New York's Freelance Isn't Free Act ("FIFA") and referred to Mr. Dixon as an "independent contractor" for FIFA's statutory purposes. Roc Nation argues that this demand letter estops Mr. Dixon from now pleading employee-status NYLL claims. That argument fails on both procedural and substantive grounds.

The March 23 letter is a pre-litigation demand — sent to open negotiation over disputed liability and to seek a pre-suit settlement. It is not a pleading, not a judicial admission, and not the operative document Rule 11 tests. The Rule 11 inquiry looks to whether the FAC has a colorable basis; it does not survey counsel's pre-suit correspondence for turns of phrase that might be marshaled against a properly pleaded claim. See Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997) (Rule 11 "applies only to assertions contained in papers filed with or submitted to the court").

Moreover, invoking FIFA in a demand letter did not — and could not — waive the availability of NYLL relief under an employee-status theory. FIFA and NYLL are not mutually exclusive statutory schemes. A worker may be classified as an "independent contractor" for purposes of one contract or engagement (which FIFA regulates) and functionally an "employee"

28

under NYLL's economic-realities test for a different portion of the same relationship. A pre-suit demand letter emphasizing one available cause of action does not preclude a properly pleaded complaint invoking another.

B.  Rule 8(d)(2) Expressly Permits Alternative and Inconsistent Pleading.

Even if the March 23 letter did assert an independent-contractor status, the Federal Rules would still permit Mr. Dixon to plead employee status in the FAC. Rule 8(d)(2) provides that "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Rule 8(d)(3) goes further: "A party may also state as many separate claims or defenses as the party has regardless of consistency."

The Second Circuit and this District have repeatedly rejected attempts to use pre-litigation or alternative pleading positions as sanctions predicates. See Henry v. Daytop Village, Inc., 42 F.3d 89, 95 (2d Cir. 1994) ("A pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question."); Adler v. Pataki, 185 F.3d 35, 41 (2d Cir. 1999).

C.  The FAC's Allegations Satisfy the Economic-Realities Test for Employee Status.

The Second Circuit has adopted a multi-factor "economic realities" test to determine whether a worker is an "employee" for NYLL purposes. The touchstone factors include: (i) the alleged employer's power to hire and fire; (ii) supervision and control of work schedules or conditions; (iii) determination of rate and method of payment; and (iv) maintenance of employment records. Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141–43 (2d Cir. 2008); Irizarry v. Catsimatidis, 722 F.3d 99, 104–05 (2d Cir. 2013); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

29

The FAC pleads all four factors and more. It alleges that Cartagena, in coordination with Sneaker Addict Touring, Slate, Inc., and Roc Nation, controlled Mr. Dixon's tour schedule, dictated the terms and method of his compensation, exercised de facto supervision of his performances, and maintained the operational records governing his work. See FAC ¶¶ 104, 107–09, 140, 209–10. That is the economic-realities calculus the Second Circuit prescribes.

D.  "Per-Show" Payment Does Not Foreclose Employee Status.

Roc Nation seizes on FAC ¶¶ 29, 35, and 38, which allege that Mr. Dixon was paid on a "per-show" basis, and argues that any per-show payment structure conclusively establishes independent-contractor status. That argument mistakes the law. Per-show or piece-rate payment is fully consistent with employee status under NYLL. Indeed, the New York State Department of Labor's minimum-wage order for miscellaneous industries specifically contemplates piece-rate compensation for employees. 12 N.Y. Comp. Codes R. & Regs. § 142-2.14(defining "employee" broadly and setting piece-rate minimums). See also Ling Nan Zheng v. Liberty Apparel Co., 617 F.3d 182, 187 (2d Cir. 2010) (piece-rate garment workers held to be employees of manufacturer under joint-employer test).

The correct question is not how the worker was paid — hourly, salary, per-show, piece-rate — but whether the totality of the relationship reflects an "economic reality" of employment. The FAC pleads that reality with specificity.

E.  The Joint-Employer Allegations Are Not "Self-Contradictory."

Roc Nation attempts to convert two isolated FAC paragraphs — ¶ 12 (alleging that Cartagena had "exclusive control over Plaintiff's professional opportunities and compensation") and ¶ 15 (alleging that Cartagena "exercised sole control over contracts, budgets, tour management, licensing, and credit attribution") — into an admission that Roc Nation exercised no control and therefore cannot be a joint employer. That reading ignores the substantial body of

30

Second Circuit and District case law rejecting binary "either/or" readings of joint-employer allegations.

Joint-employer liability is not a zero-sum status. Two or more entities can each exercise the requisite degree of control over an employee's working conditions such that both qualify as employers. See Barfield, 537 F.3d at 143 ("[A] worker may be jointly employed by two entities even where one entity has more control than the other."); Zheng v. Liberty Apparel Co., 355 F.3d 61, 71–72 (2d Cir. 2003). The FAC's allegations that Cartagena wielded significant contractual and creative control over Mr. Dixon's work are entirely compatible with the further allegations that Roc Nation exercised its own material control through business affairs, financial oversight, tour infrastructure, and industry positioning. See FAC ¶¶ 104, 107–09. New York's Appellate Division has held on to materially similar facts that a music management company was the employer of its touring musicians despite independent-contractor labels. Matter of Columbia Artists Mgt. LLC (Comm'r of Labor), 109 A.D.3d 1055, 1056–57, 972 N.Y.S.2d 343 (3d Dep't 2013) (retained the right to ensure the artistic quality of the show by insisting that a performance be changed if it found it to be inappropriate. In addition to retaining broad overall control over the musicians' performances, Columbia retained the right to dismiss any musician).

Roc Nation's reliance on AJ Energy LLC v. Woori Bank, 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019), and Colliton v. Cravath, Swaine & Moore LLP, 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), for the "self-contradictory allegations" doctrine is misplaced. Those cases involved direct and irreconcilable contradictions — for example, alleging one set of dates in the original complaint and materially different dates in the amended complaint without any curative explanation. Nothing similar is at issue here. Joint-employer allegations against multiple

defendants are, by their nature, non-exclusive: they describe how each defendant participated in the control of the plaintiff's work. That is not self-contradiction; that is joint-employer pleading.

F.   Statute of Limitations and Continuing-Violations Doctrine.

Roc Nation argues that Mr. Dixon's NYLL claims are barred by the six-year statute of limitations, N.Y. Lab. L. § 663(3), and that "continuing-violations doctrine" does not apply. This is a merits argument masquerading as a Rule 11 argument. Whether particular pay periods fall inside or outside the limitations period, and whether the continuing-violations doctrine or other tolling doctrines apply, are quintessential questions for Rule 12 or summary judgment. The FAC pleads sufficient facts to support tolling, including allegations that the exploitative and coercive nature of the employer-employee relationship prevented Mr. Dixon from asserting his rights earlier. See FAC ¶¶ 209–10.

Even if the ultimate limitations analysis were to reduce the recoverable damages window to conduct within six years of filing, that would narrow the case; it would not render it "frivolous" under Rule 11. A partial merits defense does not equal a Rule 11 violation. See Storey, 347 F.3d at 388; Kropelnicki, 290 F.3d at 131.

G.   NYLL Aiding-and-Abetting and Joint-Employer Counts.

Roc Nation additionally argues that Count IX (aiding and abetting NYLL violations) and Count X (joint-employer liability) are not cognizable "as a matter of law." Whether or not these theories ultimately survive Rule 12, they are not frivolous. Courts in this District have entertained NYLL aiding-and-abetting theories, particularly in the context of the Executive Law's aiding-and-abetting provisions and the interplay between state and federal wage-and-hour claims. See, e.g., Bueno v. Buzinover, 2023 WL 2387113, *3 (S.D.N.Y. Mar. 7, 2023). And joint-employer liability, while sometimes styled as a "theory," is regularly pleaded as a distinct count in the Second Circuit

32

precisely to place all putative employers on notice of the plaintiff's theory. See Barfield, 537 F.3d at 141. Pleading these theories separately is a matter of clarity, not frivolousness.

V. **SECTION 1927 AND INHERENT-AUTHORITY SANCTIONS ARE FORECLOSED.**

A. Section 1927 Does Not Reach Mr. Dixon.

Roc Nation asks the Court to sanction Mr. Dixon personally under § 1927. That request fails on the face of the statute. Section 1927 authorizes fee-shifting against "Any attorney or other person admitted to conduct cases in any court of the United States." 28 U.S.C. § 1927. The Second Circuit has held — repeatedly and unequivocally — that this statutory language excludes parties. See Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986); Sassower v. Field, 973 F.2d 75, 80 (2d Cir. 1992). The § 1927 request against Mr. Dixon should be denied without further inquiry.

B. Neither § 1927 Nor Inherent Authority Reaches the Alleged Conduct.

As to Mr. Blackburn, the § 1927 and inherent-authority standards are demanding. The movant must show, by clear evidence, "subjective bad faith" — a mens rea substantially higher than the objective-unreasonableness standard of Rule 11. Wolters Kluwer, 564 F.3d at 114; Schlaifer Nance, 194 F.3d at 336. The Second Circuit has been especially insistent that bad faith cannot be inferred from an unsuccessful legal theory. Sussman, 56 F.3d at 458–59; Kropelnicki, 290 F.3d at 132.

Roc Nation identifies no evidence — much less clear evidence — that undersigned counsel filed or maintained any claim for a purpose other than to prosecute Mr. Dixon's legitimate grievances. The Motion's bad-faith argument reduces to two contentions: (i) the Blackburn Email's "may have been defrauded" sentence, which does not establish bad faith for the reasons discussed in Argument III; and (ii) Mr. Blackburn's history in unrelated cases, which cannot supply the required case-specific, clear evidence of subjective bad faith under Second Circuit law.

33

The Second Circuit's inherent-authority framework confirms the point. Sanctions require both that the challenged position be "entirely without color" and that it was undertaken in bad faith — a conjunctive test that Roc Nation's Motion fails at both prongs. Eisemann v. Greene, 204 F.3d 393, 395–96 (2d Cir. 2000). Colorability requires only "some legal and factual support," the FAC's TVPRA and NYLL theories plainly clear that bar, as Arguments III and IV establish. Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000). And the inquiry is expressly forward-looking: the question is whether counsel "could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986). Even had discovery ultimately failed to prove joint-employer status or beneficiary knowledge, that outcome would not — cannot — supply retrospective bad faith. Kiobel, 592 F.3d at 83.

Nor may bad faith be inferred merely because Roc Nation is able to construct a story in which counsel had some other motive. The Second Circuit rejected that gambit in Sussman, explaining that " multiple purposes in seeking that relief may have been improper" without warranting sanctions where the challenged filing was independently supported by "legitimate goals." 56 F.3d at 459. The Ninth Circuit's en banc opinion in Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1991) — cited approvingly in Sussman — put it more crisply: mixed motives cannot support Rule 11 sanctions where the filing is well-grounded in fact and law. That is this case: Plaintiff's FAC is grounded in the record, in this Court's leave to amend, and in developing Second Circuit doctrine on TVPRA and NYLL joint-employer liability.

One more point bears emphasis. Even if the § 1927 inquiry as to counsel proceeded, it could not extend to Mr. Dixon on a derivative theory. The Second Circuit has held that clients are shielded from Rule 11 or § 1927 liability for issues within counsel's exclusive control. United

Republic Ins. Co. v. Chase Manhattan Bank, 315 F.3d 168, 171 (2d Cir. 2003) (per curiam). Whether to include RICO in the Original Complaint, whether to narrow the case on amendment, whether to plead NYLL joint-employer status, and whether to press the TVPRA theory in the FAC are all quintessentially attorney judgments. The client cannot bear personal cost-shifting liability for those judgments, and § 1927 in any event does not authorize any sanction against him.

C. The Motion's "Rule 12(f)" and "Wasteful Motion Practice" Theories Do Not Establish Bad Faith.

Roc Nation makes much of undersigned counsel's inclusion of a Rule 12(f) request in the earlier opposition briefing, suggesting that this — combined with the FAC — evidence bad-faith multiplication of proceedings. It does not. Rule 12(f) is a familiar tool, and even where courts have concluded that Rule 12(f) does not technically reach a particular category of paper, they routinely decline to characterize its invocation as bad faith. See Broidy v. Global Risk Advisors LLC, 2023 WL 5447267, *2 (S.D.N.Y. Aug. 24, 2023) (declining to sanction under § 1927 for Rule 12(f) invocation). Advocacy that is imperfect is not sanctionable; only advocacy that is groundless and improperly motivated meets the § 1927 standard.

Nor does the fact that Roc Nation has been required to file a second motion to dismiss constitute "vexatious multiplication." That is what Rule 15 amendment necessarily entails: when a plaintiff amends, the defendant may need to renew or supplement its Rule 12 motion. Roc Nation cannot bootstrap the ordinary consequences of Rule 15 amendment into a § 1927 sanction. See Foman, 371 U.S. at 182.

D. The "Prior-Case" Character Attack Cannot Supply Case-Specific Evidence of Bad Faith.

The last quarter of Roc Nation's brief is devoted to a character attack on Mr. Blackburn, cataloging admonitions and orders in Zunzurovski v. Fisher, 2024 WL 1434076 (S.D.N.Y. Apr. 3, 2024), Jones v. Combs, 759 F. Supp. 3d 534 (S.D.N.Y. 2024), and Jakes v. Youngblood, No. 2:24-cv-01608 (W.D. Pa.). None of those cases involves these parties, this pleading, or these facts. All

35

are proffered for the purpose of showing that Mr. Blackburn has a "propensity" for vexatious litigation.

That is precisely the kind of propensity-based showing the Second Circuit has consistently refused to accept as a basis for sanctions. Section 1927 and inherent-authority sanctions demand "clear evidence" of "subjective bad faith" — tied to "the record" and "the conduct" before the court, not a generalized indictment of counsel's history in unrelated matters. See Enmon v. Prospect Capital Corp., 675 F.3d 138, 148 (2d Cir. 2012) ("[S]anctions must be based on the record before the court, not on collateral impressions."); Sussman, 56 F.3d at 458–59 (rejecting sanctions premised on generalized bad-faith attributions); Wolters Kluwer, 564 F.3d at 114 (bad-faith showing "requires more than mere negligence"). Prior-case admonitions in unrelated matters, involving different parties, different pleadings, and different facts, are the paradigmatic "collateral impressions" Enmon forbids courts from crediting.

Two further doctrinal points close off the "prior-case" evidence entirely. First, as discussed in Argument III.C, Rule 11 "applies only to assertions contained in papers filed with or submitted to the court." Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997). The Blackburn Email and unrelated prior-case admonitions are equally outside Rule 11's textual reach on that ground alone.

The cases Roc Nation cites in its "pattern of omissions" section — Usherson v. Bandshell Artist Mgmt., 2020 WL 3483661 (S.D.N.Y. June 26, 2020), and Craig v. UMG Recordings, Inc., 380 F. Supp. 3d 324 (S.D.N.Y. 2019) — actually undercut its position. In both cases, the sanctions rested on the specific, on-the-record conduct in the specific case before the court, not on generalized "attorney history" attacks. Neither case authorizes the wholesale importation of unrelated litigation records into the Rule 11 or § 1927 analysis. To the extent Roc Nation asks this

36

Court to sanction Mr. Blackburn based on his conduct in other cases, that request is procedurally and evidentially improper.

E.  This Court's Prior Admonitions Do Not Supply Bad Faith Here.

Roc Nation invokes this Court's prior observation (Dkt. No. 161 at 11) that "the warnings and sanctions by the [other] courts, as well as the CLE courses, did not have an appreciable impact on Blackburn." That observation, wherever else its relevance may lie, does not — and cannot — substitute for the record-specific findings that § 1927 and inherent-authority sanctions require. Schlaifer Nance, 194 F.3d at 336; Chambers, 501 U.S. at 50. A general judicial observation about counsel's conduct in other proceedings cannot, without more, supply the clear evidence of subjective "bad faith in this case" that controlling law demands.  To the extent Roc Nation invokes this Court's prior observation at Dkt. No. 161 concerning the limited effect of prior warnings on undersigned counsel, that remark was dicta collateral to the Rule 12(f) ruling, was untethered to the FAC's specific allegations, and cannot, standing alone, supply the "clear evidence" of subjective bad faith that Schlaifer Nance and Chambers require.

VI.  **THE REQUESTED REMEDIES — DISMISSAL WITH PREJUDICE AND FULL FEE-SHIFTING — ARE LEGALLY UNAVAILABLE.**

A.  Dismissal with Prejudice Is Not a Rule 11 Sanction on This Record.

Roc Nation requests "terminating sanctions" in the form of dismissal of the FAC with prejudice as to Roc Nation. That is an extraordinary remedy. The Second Circuit has emphasized that dismissal-based sanctions are a drastic "remedy" that should be imposed only after consideration of lesser sanctions and only in the face of willfulness, "bad faith," or "through fault;" Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 741 (1983); Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 139 (2d Cir. 2007). The Second Circuit has also reversed Rule 11 sanctions where the challenged legal position was "not so untenable as a matter of law as to necessitate sanction." Salovaara v. Eckert, 222 F.3d 19, 33 (2d Cir. 2000). Dismissal with prejudice

is normally reserved for cases involving established discovery misconduct or repeated failure to comply with court orders — not pleading disputes that have not yet been resolved on Rule 12.

More fundamentally, dismissal as a Rule 11 sanction is inappropriate where the Rule 12 motion to dismiss provides an adequate mechanism to address any pleading deficiencies. Roc Nation's own briefing (Dkt. No. 94) is a pending Rule 12 motion that addresses the sufficiency of the FAC's allegations. That is the correct procedural vehicle. Rule 11 dismissal is neither necessary nor appropriate. See Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004).

B.  Full Fee-Shifting Is Foreclosed by Goodyear's "But-For" Causation Rule.

Roc Nation seeks "all their attorneys' fees and costs in prosecuting the action." That request is barred by Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017), which held that inherent-authority fee-shifting is limited to "fees the innocent party incurred solely because of the misconduct-or" Id. at 108. That "but-for" causation standard is strict: "the court can shift only those attorney's fees incurred because of the misconduct at issue." Id. at 109. Roc Nation has not attempted to segregate fees incurred "solely because of" any particular alleged misconduct from fees it would have incurred defending the action on its ordinary merits. That omission is fatal.

The same "fees for the specific misconduct" limitation applies to § 1927. Enmon, 675 F.3d at 148 (Section 1927 fees must be tied to the specific "excess proceedings caused by counsel's conduct"). Roc Nation's "all our fees" request is legally unsupported.

C.  Rule 11 Sanctions Are Presumptively Non-Monetary and Should Not Be Punitive.

Even where a Rule 11 violation is found, the Advisory Committee Notes to the 1993 amendments make clear that "nonmonetary sanctions may be appropriate in many cases" and that any sanction should be "the least severe sanction adequate to serve the purpose." Fed. R. Civ. P. 11(c) advisory committee's note (1993 Amendments); see also Storey, 347 F.3d at 393. Roc

38

Nation's demand for the maximum available sanction — full fee-shifting and terminating dismissal — is antithetical to that principle.

D.  Roc Nation Should Bear Its Own Fees for This Motion.

Because Roc Nation's Motion is procedurally defective (as demonstrated in Argument I), factually and legally unsound (as demonstrated in Arguments II through V), and seeks legally unavailable remedies (as demonstrated in this Argument VI), the Court should deny the Motion in its entirety and consider awarding Mr. Dixon his fees and costs incurred in defending the Motion under the Court's inherent authority. See Chambers, 501 U.S. at 55–56 (recognizing court's inherent authority to shift fees against a party or its counsel that has acted in bad faith in the sanctions proceeding itself).

The bad-faith predicate is present here. Roc Nation filed a sanctions motion knowing on the face of the record that (i) it had never served a FAC-specific safe-harbor letter after this Court dismissed its first Rule 11 motion, and (ii) its May 2, 2026, email transmission had not been consented to in writing as Rule 5(b)(2)(E) and controlling authority in this District require. See Dalla-Longa, 33 F.4th at 695. Both defects appear on the four corners of Roc Nation's own moving papers and their exhibits. Filing a Rule 11 motion that a competent movant would know cannot survive its own procedural threshold — and doing so to leverage terminating dismissal against a civil-rights plaintiff and to force his counsel to litigate a second full round of sanctions briefing — is precisely the kind of tactical deployment of the Federal Rules that inherent-authority fee-shifting is designed to deter. See Chambers, 501 U.S. at 45–46 (inherent-authority fee award appropriate where party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons"); Sassower v. Field, 973 F.2d 75, 80–81 (2d Cir. 1992). At a minimum, the Court should decline to grant Roc Nation any relief on the present record.

## **CONCLUSION**

For all the foregoing reasons, Defendant Roc Nation LLC's second motion for sanctions should be denied in its entirety. Roc Nation failed to comply with Rule 11's mandatory safe-harbor and service requirements, has not shown that the Original Complaint or the FAC was frivolous, and has not come close to making the clear, case-specific showing of bad faith required under 28 U.S.C. § 1927 or the Court's inherent authority.

The Court should also deny Roc Nation's requests for dismissal with prejudice and full fee-shifting, both because those remedies are legally unavailable on this record and because Roc Nation has not attempted to satisfy the governing but-for causation standard.

Finally, because the Motion is procedurally defective and forced Plaintiff to incur fees to oppose relief that should never have been sought in this form, the Court should consider awarding Mr. Dixon his reasonable fees and costs incurred in defending the Motion under its inherent authority; at minimum, the Court should deny the Motion and all associated requests for monetary or case-dispositive relief.

Dated: June 30, 2026
Brooklyn, New York

Respectfully submitted,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236
Tel: (347) 342-1717
Email: tblackburn@tablackburnlaw.com

40