Exhibit F

```
-------------------------------------x

 THE PEOPLE OF THE STATE OF NEW YORK :


                     PLAINTIFF,    :


          against                  :  3558 / 2025


 TYRONE BLACKBURN,                 :


                     DEFENDANT,    :
-------------------------------------x


               OCTOBER 16, 2025
```

ERIC GONZALEZ, ESQ., DISTRICT ATTORNEY, KINGS COUNTY

SALVATORE PRINCE, ESQ., Assistant District Attorney


                    GABRIELLA CROOMS

               ASSOCIATE REPORTER/STENOGRAPHER



GC

I N D E X


WITNESS                                          PAGES

DETECTIVE JASON SHARP                              6


E X H I B I T S

NUMBER              DESCRIPTION                   PAGE



N O N E



JURY      CHARGE



PAGE: 14

6

DETECTIVE JASON SHARP

Q.   Good morning, detective.

A.   Good morning.

Q.   If you could please state your name, shield and command?

A.   Detective Jason Sharp, S-H-A-R-P, shield 3276 of the 69 Detective Squad.

Q.   How long have you worked for the NYPD?

A.   A little over twenty-one years.

Q.   How long have you been a detective with the 69 Squad?

A.   January will be eleven years.

Q.   And what are your duties and responsibilities as a detective with the 69 Squad?

A.   Investigate all sorts of complaints that come into the precinct.  It can range anywhere from petit larceny to homicide.

Q.   Did there come a time where you were assigned to investigate an alleged assault that occurred on May 12, 2025, in front of 1242 East 80 Street?

A.   Yes.

Q.   At part of your investigation, did you speak with any witnesses?

A.   I did.

Q.   Who did you speak with?

A.   James Hunt.

Q.   As part of your investigation, did you have an occasion to collect video?

A.   I did.

Q.   Where did you collect video from?

A.   1240 East 80 Street.

Q.   Where is 1240 East 80 Street in relation to 1242 East 80 Street?

A.   1240 East 80 Street, it's like a building with attached homes.  So basically you will have one wall that's part of 1242 residence and 1240 residence. So 1240 is the next -- basically the next house over.

Q.   But to be clear, 1240 and 1242, are they apart of the same building?

A.   Yes, they are attached.

Q.   So how did you go about collecting video from 1240 East 80 Street?

A.   I knocked on the door, identified who I was. I explained to the owner of the residence the cameras that I observed, asked him if I could look at the cameras, he invited me in.  We observed the cameras and I downloaded the footage.

Q.   Now, when you downloaded the footage, did you have the opportunity to observe a live feed on the video

player?

A.   Yes, I did.

Q.   Was the time that was displayed on that video surveillance accurate to realtime?

A.   It was not.

Q.   How off was the timestamp?

A.   The timestamp on the video itself from 1240 East 80 Street was approximately 1 hour and 6 minutes slow.

Q.   When you say 1 hour and 6 minutes slow, does that mean it's behind realtime?

A.   Yes.

Q.   So to obtain the realtime using the timestamp on the video, how would you go about doing that?

A.   I observed the live footage, observe the date and time on that.  I then compare it to my NYPD department phone which has the live time on it, the accurate time and then I do the math from there.

MR. PRINCE:  I'm going to publish People's 1, specifically the three video files contained within the folder labeled video surveillance 1240 East 80 Street. I'm going to start with the first video.


( Whereupon the video is played and paused. )

9

Q.   So we're paused right here at the beginning of the first video.  Detective Sharp, can you see the frame here on the wall?

A.   I can.

Q.   And the date that's depicted at the top of the frame, is that accurate?

A.   Yes.

Q.   And the time displayed, is that the time that you said had a discrepancy about 1 hour and 6 minutes?

A.   Yes, that's the time discrepancy.

Q.   When the time depicted here is 5:09 p.m., what would the actual time be?

A.   The actual time would be 6:15 p.m.

MR. PRINCE:  I'm now going to play the first file. The first video had played in its entirety.


( Whereupon the video is played.)


( Whereupon the video stopped. )


MR. PRINCE:  I'm now going to play the second video.

( Whereupon the video is played. )

( Whereupon the video stopped. )

MR. PRINCE:  The second video was played in its entirety.

I will play the third and final video.

( Whereupon the video is played. )

( Whereupon the video is paused. )

MR. PRINCE:  I have paused the third video at 1 minute and 7 seconds.

Now closing out the video.

( Whereupon the video is stopped. )

11

Q.   Now detective, did there come a point in time in your investigation where you arranged six photographs?

A.   Yes.

Q.   Was Tyrone Blackburn's photograph placed within those six photos?

A.   It was.

Q.   In what position was his photograph placed?

A.   In number four.

Q.   And was James Hunt given an opportunity to look at that series of photographs?

A.   Yes, he was.

Q.   Now was an arrest ultimately made in regards to this investigation?

A.   Yes.

Q.   Who was placed under arrest?

A.   Tyrone Blackburn.

Q.   When did that take place?

A.   I remember June 25.

Q.   Of this year, sir?

A.   Yes, of this year 2025.

Q.   I have no further questions.

Thank you.

A.   Thank you.

C E R T I F I C A T I O N

I, Gabriella Crooms, a Grand Jury Reporter within and for the State of New York, County of Kings, do hereby certify: that to the best of my ability the foregoing is a true and accurate transcript of the original stenographic minutes that I took of the grand jury proceeding conducted in the above matter.

IN WITNESS WHEREOF, I have hereunto set my hand on __10___/__20____/ 2025.

Associate Reporter/Stenographer

30