**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSEPH CARTAGENA**, <br><br> *Plaintiff*, <br><br> v. <br><br> **TERRANCE DIXON, TYRONE BLACKBURN, and T.A. BLACKBURN LAW, PLLC,** <br><br> *Defendants*. | Civil Action No. 25-cv-03552 |
| **TERRANCE DIXON, a/k/a "TA,"** <br><br> *Plaintiff*, <br><br> v. <br><br> **JOSEPH ANTONIO CARTAGENA p/k/a "FAT JOE," PETER "PISTOL PETE" TORRES, RICHARD "RICH PLAYER" JOSPITRE, ERICA JULIANA MOREIRA, SNEAKER ADDICT TOURING LLC, SLATE, INC., ROC NATION, LLC, JOHN DOES 1-10, JANE DOES 1-10, AND ABC CORPORATIONS 1-10,** <br><br> *Defendants*. | Civil Action No. 25-cv-05144 <br><br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS JOSEPH CARTAGENA, PETER TORRES. RICHARD JOSPITRE, ERICA MOREIRA, SNEAKER ADDICT TOURING LLC, AND SLATE INC.'S OMNIBUS REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF TERRANCE DIXON'S AMENDED COMPLAINT**

JOSEPH TACOPINA, ESQ
CHAD D. SEIGEL, ESQ.
MATTHEW G. DeOREO, ESQ
Tacopina Seigel & DeOreo
275 Madison Avenue, 35th Floor
New York, New York 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
mdeoreo@tacopinalaw.com
Tel: 212-227-8877
Fax: 212-619-1028


JORDAN W. SIEV, ESQ.
IAN M. TURETSKY, ESQ.
Reed Smith LLP
599 Lexington, 22nd Floor
New York, New York 10022
jsiev@reedsmith.com
Tel: 212-205-6085

*Attorneys for Defendants Joseph*
*Antonio Cartagena, Slate, Inc.,*
*and Sneaker Addict Touring, LLC.*

REED BRODSKY, EDQ.
MICHAEL L. NADLER, ESQ.
Gibson, Dunn & Crutcher LLP         .
200 Park Avenue
New York, New York 10166
rbrodsky@gibsondunn.com
mnadler@gibsondunn.com


*Attorneys for Defendant Erica Moreira*


DAVID H. WOLLMUTH, ESQ.
ADAM M. BIALEK, ESQ.
PHILLIP R. SCHATZ, ESQ.
RUSSELL B. FILIP, ESQ.
Wollmuth Maher & Deutsch, LLP
500 Fifth Avenue
New York, New York 10110
dwollmuth@wmd-law.com
abialek@wmd-law.com
pschatz@wmd-law.com
rfilip@wmd-law.com

*Attorneys for Defendants Richard Jospitre*
*and Peter Torres*

**TABLE OF CONTENTS**

ARGUMENT...................................................................................................................1

POINT I     DIXON'S CLAIMS UNDER THE NYLL (COUNTS I, II , AND V) FAIL BECAUSE HE WAS AN INDEPENDENT CONTRACTOR........................1

    A.    PLAINTIFF EXPRESSLY CONCEDED THAT HE WAS AN INDEPENDENT CONTRACTOR...............................................................1

    B.    PLAINTIFF'S MERITLESS RULE 8 ARGUMENT.....................................2

    C.    PLAINTIFF'S ALLEGATIONS AS TO HIS ALLEGED EMPLOYEE STATUS ARE CONCLUSORY.......................................................................4

    D.    THERE IS NO NYLL STATUTORY PRESUMPTION AS TO PERFORMING ARTISTS.................................................................................5

POINT II     NYLL SECTIONS 193 AND 198 DO NOT APPLY RETROACTIVELY AS TO FAILURE TO PAY WAGE CLAIMS...........................................6

POINT III    DIXON'S NYLL § 195(1) CLAIM SHOULD BE DISMISSED.....................8

    A.    DIXON CONCEDES THAT HIS NYLL SECTION 195(1) CLAIM IS TIME-BARRED......................................................................................8

    B.    DIXON HAS NO STANDING TO ASSERT A SECTION 195(1) CLAIM...................................................................................................8

POINT IV    DIXON'S NYLL § 195(3) CLAIM SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM...................................................10

POINT V     DIXON'S RETALIATION CLAIM (COUNT V) DOES NOT STATE A PLAUSIBLE CLAIM AND SHOULD BE DISMISSED..............................11

POINT VI    DIXON'S TVPA CLAIM (COUNT III) DOES NOT STATE A PLAUSIBLE CLAIM AND SHOULD BE DISMISSED.......................................12

    A.    THE FAC FAILS TO STATE A DIRECT § 1589 AND §1591 CLAIM AGAINST TORRES, JOSPITRE, MOREIRA, SNEAKER ADDICT OR SLATE.....................................................................................................12

    B.    THE FAC DOES NOT ALLEGE A COMMERCIAL SEX ACT WITHIN THE MEANING OF § 1591..........................................................13

C.    DIXON FAILS TO STATE A PLAUSIBLE FORCED LABOR VIOLATION (COUNT III)..................................................................................14

POINT VII    DIXON'S COPYRIGHT CLAIM (COUNT IV) SHOULD BE DISMISSED.........................................................................................17

A.    COUNT IV IS TIME-BARRED IN ITS ENTIRETY BECAUSE IT IS A SINGLE COPYRIGHT CO-OWNERSHIP CLAIM.....................................17

B.    DIXON LACKS STANDING TO BRING HIS ALTERNATIVE CLAIM OF INFRINGEMENT......................................................................21

C.    SNEAKER ADDICT AND SLATE ARE NOT PROPER DEFENDANTS FOR THE COPYRIGHT CLAIMS.................................................21

POINT VIII    DIXON'S FRAUDULENT CONCEALMENT CLAIM (COUNT VI) SHOULD BE DISMISSED, AND DIXON MAY NOT RELY ON GENERALIZED ALLEGATIONS OF FRAUDULENT CONCEALMENT TO TOLL THE STATUTE OF LIMITATIONS...........................................22

A.    DIXON FAILS TO SUFFICIENTLY PLEAD THE EXISTENCE OF A DUTY TO DISCLOSE.....................................................................22

B.    DIXON FAILS TO COMPLY WITH FED. R. CIV. P. 9(b).........................23

POINT IX    DIXON'S UNJUST ENRICHMENT CLAIM (COUNT VII) FAILS TO PLEAD A PLAUSIBLE CLAIM AND IS TIME-BARRED.........................25

A.    DIXON'S UNJUST ENRICHMENT CLAIM IS DUPLICATIVE OF HIS FRAUDULENT CONCEALMENT CLAIM..................................................25

B.    DIXON'S UNJUST ENRICHMENT CLAIM RELATING TO HIS ALLEGED CONTRIBUTIONS TO CARTAGENA'S MUSIC IS PREEMPTED BY THE COPYRIGHT ACT.................................................25

C.    DIXON'S UNJUST ENRICHMENT CLAIM RELATING TO MUSICAL WORKS IS TIME-BARRED.........................................................25

D.    DIXON FAILS TO PLEAD ANY BASIS FOR UNJUST ENRICHMENT OTHER THAN A CONTRACT..................................................26

E.    DIXON'S UNJUST ENRICHMENT COUNT RELATING TO HIS ALLEGED FAILURE TO RECEIVE HIS FULL PERFORMANCE FEES IS BARRED BY THE STATUTE OF LIMITATIONS...............................26

ii

POINT X      DIXON FAILS TO STATE PLAUSIBLE CLAIMS FOR AIDING AND ABETTING FRAUD AND WAGE THEFT (COUNTS VIII AND IX)........27

POINT XI      DIXON FAILS TO STATE A PLAUSIBLE OR TIMELY CIVIL ASSAULT CLAIM (COUNT XI).................................................................28

      A.      MOST OF DIXON'S ASSAULT ALLEGATIONS ARE TIME-BARRED...........................................................................................28

      B.      TIMELY ALLEGATIONS, IF ANY, FAIL TO PLEAD IMMINENT APPREHENSION OF HARMFUL OR OFFENSIVE CONTACT...............29

      1.      DIXON'S CRIMINAL AUTHORITIES DO NOT GOVERN THE CIVIL TORT OF ASSAULT..............................................29

      2.      ANY REMAINING TIMELY ALLEGATIONS FAIL TO PLEAD IMMINENT APPREHENSION OF HARMFUL OR OFFENSIVE CONTACT....................................................................30

      C.      DIXON'S ASSAULT CLAIMS AGAINST MR. CARTAGENA ARE UNTIMELY, INADEQUATE AND WAIVED..............................................31

POINT XII      DIXON'S FRAUDULENT CONVEYANCE CLAIM (COUNT XII) FAILS TO STATE A PLAUSIBLE CLAIM AND IS TIME-BARRED...................32

POINT XIII      DIXON SHOULD NOT BE GRANTED LEAVE TO AMEND....................33

CONCLUSION....................................................................................................................35

WORD CERTIFICATION...................................................................................................36

## TABLE OF AUTHORITIES

**CASES:**

*380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F.Supp.2d 199 (S.D.N.Y. 2008)...........................1

*A.A. v. Omnicom Grp., Inc.*, No. 25-CV-3389 (JMF), 2026 WL 504904
(S.D.N.Y. Feb. 24, 2026).......................................................................................................15

*Aguilar v. New Dairydel, Inc.*, No. 22 CIV. 3700 (NSR), 2023 WL 5835829
(S.D.N.Y. Sept. 8, 2023).........................................................................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................................11

*Barberan v. Nationpoint*, 706 F. Supp. 2d 408 (S.D.N.Y. 2010)....................................................28

*Bridgeport Music Inc. v. TufAmerica Inc.*, No. 23-7386-CV, 2024 WL 4929257
(2d Cir. Dec. 2, 2024)..................................................................................................17, 18, 20

*Broad. Music, Inc. v. Roger Miller Music, Inc.,* 396 F.3d 762 (6th Cir. 2005).............................20

*Brumley v. Albert E. Brumley & Sons, Inc.*, 822 F.3d 926 (6th Cir. 2016)....................................20

*Bunker v. Testa*, 234 A.D.2d 1004 (4th Dep't 1996)........................................................................31

*Butala v. Agashiwala*, 916 F. Supp. 314 (S.D.N.Y. 1996).............................................................24

*BYD Co. Ltd. v. VICE Media LLC,* 531 F. Supp. 3d 810 (S.D.N.Y. 2021)
aff'd, 2022 WL 598973 (2d Cir. Mar. 1, 2022)..............................................................................31

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*,
510 F.3d 77, (1st Cir. 2007)......................................................................................................19

*Castro v. Loc. 1199*, 964 F. Supp. 719 (S.D.N.Y. 1997)...............................................................30

*C.C. v. Rashid*, No. 2:23-cv-02056, 2025 U.S. Dist. LEXIS 122420 (D. Nev. June 26, 2025)....13

*Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284 (S.D.N.Y. Aug. 15, 2014)...................34

*Cohen v. Am. Airlines, Inc.*, 13 F.4th 240 (2d Cir. 2021).............................................................28

*Dixon v. Cartagena*, No. 1:25-CV-05144, 2026 WL 762368 (S.D.N.Y. Mar. 18, 2026)..............33

*Elgalad v. N.Y.C. Dep't of Educ.*, No. 17-CV-4849 (VSB), 2019 WL 4805669
(S.D.N.Y. Sept. 30, 2019)......................................................................................................34

*Elliott v. City of New York*, 723 F. Supp. 3d 249 (S.D.N.Y. 2024)..................................29

*Espinoza v. La Oficina Bar Corp.*, No. 20-CV-1237 (MKB), 2022 WL 987429
(E.D.N.Y. Mar. 1, 2022)............................................................................................................4

*Fisher v. Hudson Hall LLC*, 246 A.D.3d 434 (1st Dep't 2026)..........................................6

*Foman v. Davis,* 371 U.S. 178 (1962)..................................................................................33

*Fouchecourt v. Metro. Opera Ass'n*, 537 F. Supp. 2d 629 (S.D.N.Y. 2008)...................5

*Franco v. Jubilee First Ave. Corp,* No. 14 Civ. 7729, 2016 WL 4487788
(S.D.N.Y. Aug. 25, 2016)..........................................................................................................8

*Goldrich v. Masco Corp.*, No. 22-CV-3769 (KMK), 2023 WL 2649049
(S.D.N.Y. Mar. 27, 2023)....................................................................................................23-24

*Griffs Glob. Corp. v. Comm'r of Lab.*, 210 A.D.3d 1349 (3rd Dep't 2022)....................5

*Gunthorpes v. IM. Grp., LLC*, No. 21 CV 5140 (ARR)(RML), 2024 WL 2031191
(E.D.N.Y. Apr. 11, 2024)..........................................................................................................7

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024).......................................7

*Harris v. Mills,* 572 F.3d 66 (2d Cir. 2009)........................................................................11

*Hernandez Technology, Inc. v. Rivera*, 237 N.Y.S.3d 317 (4th Dep't 2025)...................6

*In re Mid Am. Prods. Inc.*, 267 A.D.2d 656, 699 N.Y.S.2d 556 (1999)..........................5

*Jian Zhong Li v. Oliver King Enters., Inc.*, No. 14-CV-9293 VEC, 2015 WL 4643145
(S.D.N.Y. Aug. 4, 2015)......................................................................................................11-12

*Johnson v. Town of Greece*, No. 6:23-CV-06441 EAW, 2024 WL 4026199,
(W.D.N.Y. Sept. 3, 2024)........................................................................................................16

*Kaufman v. Cohen*, 307 A.D.2d 113 (1st Dep't 2003)....................................................................22

*Khalid v. DJ Shirley 1 Inc.*, No. 15-5926, 2019 WL 325127 (E.D.N.Y. Jan. 25, 2019)...............11

*Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011)..........................................................................17, 19

*Lepore v. NL Brand Holdings LLC*, No. 16 CIV. 08115 (GBD), 2017 WL 4712633
(S.D.N.Y. Sept. 28, 2017)...............................................................................................................24

*Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181 (E.D.N.Y. 1998)............................................28, 29

*Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645 (S.D.N.Y. 2024).........................................14

*Lipton v. County of Orange, NY,* 315 F. Supp. 2d 434 (S.D.N.Y. 2004)..................................31-32

*Mahan v. Roc Nation, LLC*, No. 14 CIV. 5075 LGS, 2015 WL 1782095
(S.D.N.Y. Apr. 15, 2015)..............................................................................................................18-19

*Makarova v. United States*, No. 97 CIV. 4748 (LAP), 1999 WL 58693
S.D.N.Y. Feb. 5, 1999).......................................................................................................................5

*Marciniak-Domingues v. Massachusetts Inst. of Tech.*, No. 1:22-CV-10959, 2024 WL 4350826,
(S.D.N.Y. Sept. 30, 2024).............................................................................................................14-15

*Matusovsky v. Merrill Lynch*, 186 F.Supp.2d 397 (S.D.N.Y. 2002)................................................1

*Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996)...........................................................................18, 19

*Morgan v. Nassau Cnty.*, No. 03CV5109SLTWDW, 2009 WL 2882823
(E.D.N.Y. Sept. 2, 2009)....................................................................................................................3

*Napoli v. Deluxe Corp.*, No. 17CV6956SJFSIL, 2019 WL 2579133
(E.D.N.Y. June 21, 2019)...................................................................................................................4

*Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, No. 20-CV-5428 (JMF), 2022 WL 4448621
(S.D.N.Y. Sept. 23, 2022).................................................................................................................22

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 175 F. Supp. 2d 489
(S.D.N.Y. 2000)...................................................................................................................................3

*Nesbeth v. New York City Mgmt. LLC*, No. 17 CIV. 8650 (JGK), 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019*)*..................................................................................................24

*Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817 (2016)...............................................23

*Pawlicki v. City of Ithaca*, 993 F.Supp. 140 (N.D.N.Y. 1998)........................................................30

*Pawlowski v. Kitchen Expressions Inc.*, No. 17-CV-2943-ARR-VMS, 2017 WL 10259773 (E.D.N.Y. Dec. 15, 2017)...............................................................................................11

*People v. Bowes*, 206 A.D.3d 1260 (3d Dep't 2022)...............................................................28, 29

*People v. Guerrero*, 150 A.D.3d 883 (2d Dep't 2017)............................................................28, 29

*Rapp v. Fowler*, 2022 WL 1997176 (S.D.N.Y. June 6, 2022)..................................................29-30

*Robles v. Cox & Co.*, 841 F. Supp. 2d 615 (E.D.N.Y. 2012)..........................................................29

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)......................................................33, 34

*Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025)..........................................................33

*Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572 (2d Cir. 2010).............................26-27

*Stillwell v. Fashion Nova, LLC*, No. CV 21-7040-GW-MARX, 2022 WL 2965394 (C.D. Cal. Jan. 28, 2022)..........................................................................................15, 16

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 49  (2d Cir. 2014)..........................................33, 34

*Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283 (S.D.N.Y. 2010)...............................18

*Van Brunt v. Rauschenberg*, 799 F. Supp. 1467 (S.D.N.Y. 1992)..................................................27

*Vesterman v. New York City Dep't of Educ.*, No. 25-2731-CV, 2026 WL 1580250 (2d Cir. June 3, 2026)...................................................................................................9

*Wilson v. Dynatone Publishing Co.*, 892 F.3d 112 (2d Cir. 2018).............................................19-20

*Women's Project & Prods., Inc. v. Comm'r of Lab.*, 182 A.D.3d 944 (3rd Dep't 2020).................5

*Zheng v. Rivera*, 2014 WL 7001528 (Sup. Ct. NY Co. Dec. 9, 2014)......................................30-31

**STATUTES / RULES**

17 U.S.C. § 302.................................................................................................................20

17 U.S.C. § 507.................................................................................................................17

18 U.S.C. § 1589.......................................................................................................12-13, 14

18 U.S.C. § 1591..........................................................................................................12-13

C.P.L.R. 215...................................................................................................................28

Executive Order No. 202.8..................................................................................................6-7

Fed. R. Civ. P. 8..............................................................................................................2-3

Fed. R. Civ. P. 9...........................................................................................................23-24

Fed. R. Civ. P. 15.........................................................................................................33, 34

New York Civil Rights Law §70............................................................................................11

New York Penal Law § 20.00.........................................................................................28, 29

New York Penal Law § 120.07..............................................................................................29

NWTLA.......................................................................................................................6, 7

NY Worker's Compensation Law § 2.......................................................................................5

NYLL § 193.............................................................................................................5, 6, 7

NYLL § 195..................................................................................................5, 8-9, 10, 12

NYLL § 198.............................................................................................................5, 6, 7

NYLL § 215....................................................................................................................5

NYLL § 511....................................................................................................................5

Defendants Joseph Cartagena, Peter Torres, Richard Jospitre, Erica Moreira, Sneaker Addict Touring LLC and Slate, Inc. ("Defendants") submit this Omnibus Reply Memorandum of Law in further support of their motion to dismiss Plaintiff Terrance Dixon's Amended Complaint, dated March 26, 2026 ("Amended Complaint" or "FAC").

## ARGUMENT

### POINT I

### DIXON'S CLAIMS UNDER THE NYLL (COUNTS I, II, AND V) FAIL BECAUSE HE WAS AN INDEPENDENT CONTRACTOR

**A.    Plaintiff Expressly Concedes that He Was an Independent Contractor**

Plaintiff does not meaningfully address Defendants' principal argument: the FAC incorporates his March 23, 2025 demand letter (*see infra* Point I(B)), in which he identifies himself as an "independent contractor." (FAC ¶ 159; Siev Decl., Ex. B, at 8).  Thus, the NYLL provisions he invokes do not apply.  Plaintiff neither disputes the FAC's reference to the letter or its authenticity, claims Defendants quoted it out of context, nor explains why he called himself an independent contractor before this litigation but now alleges an employment relationship.

Plaintiff likewise does not dispute that courts may consider documents attached to, incorporated into, or integral to a complaint, and that such documents control over conflicting allegations.  *See 380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F.Supp.2d 199, 215 (S.D.N.Y. 2008) ("Where the plaintiff's allegations are contradicted by a document that the complaint incorporates by reference, the document controls."); *Matusovsky v. Merrill Lynch*, 186 F.Supp.2d 397, 400 (S.D.N.Y. 2002) ("If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss.").

1

Plaintiff instead invokes the economic-realities test, but that misses the point. He cannot plausibly allege employee status while incorporating a document identifying himself as an independent contractor without facts reconciling that contradiction.

Plaintiff cites no authority permitting allegations that contradict an incorporated document or disavow its factual admissions. He thus cannot reconcile the FAC with his pre-suit representation that he was an independent contractor.[1]

Accordingly, because the FAC incorporates Plaintiff's pre-suit representation that he was an independent contractor without reconciling it with his contrary employment allegations, the FAC fails to plausibly allege employee status.

## B.    **Plaintiff's Meritless Rule 8 Argument**

Dixon's reliance on Rule 8 is misplaced. Rule 8 permits inconsistent legal theories, Fed. R. Civ. P. 8(d)(2)-(3), not unexplained factual allegations contradicting an incorporated document.

Here, Dixon expressly incorporated his March 23, 2025 demand letter into the FAC (FAC ¶ 159), which identifies him as an "independent contractor." Rule 8 does not permit him to disregard that incorporated fact because it undermines his new claim of employee status.

Nor does Rule 8 override the rule that incorporated documents may be considered on dismissal and control over conflicting allegations. Dixon therefore cannot contradict his incorporated statements without facts reconciling them, which he fails to allege.

Rule 8 also permits inconsistent allegations only when pleaded in the alternative. Dixon does not alternatively allege employee or independent-contractor status, and the FAC alleges he

---

[1] Plaintiff's silence is telling. He does not claim the demand letter was mischaracterized, quoted out of context, mistaken, or imprecise. Instead, he admits calling himself an "independent contractor" was a "litigation strategy" to preserve his options. (Dixon MOL at 26).

2

was an employee while incorporating his statements that he was an independent contractor. These are irreconcilable contradictions, not alternative allegations.

Rule 8 does not authorize a plaintiff to plead one set of operative facts in the complaint while incorporating a document asserting the exact opposite. *See, e.g., Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 175 F. Supp. 2d 489, 492 (S.D.N.Y. 2000) ("[W]hile the Rule 8(e)(2) clearly allows pleading of inconsistent theories or statements of a claim, there is no authority for the proposition that within a statement of a given claim a party may assert as fact two assertions that directly contradict each other. Such clashing factual assertions, stated in the context of the same claim rather than as conceptually distinct alternative theories of liability, may be deemed judicial admissions."); *Morgan v. Nassau Cnty.*, No. 03CV5109SLTWDW, 2009 WL 2882823, at *17 (E.D.N.Y. Sept. 2, 2009) (holding same).

Moreover, Dixon neither alleges that the demand letter was mistaken or used "independent contractor" differently nor explains his contrary pre-suit characterization. Having incorporated the letter, he cannot evade its factual assertions by invoking Rule 8.

If Dixon believed the demand letter inaccurate, he should not have incorporated it. Having done so, he cannot selectively embrace favorable portions while disavowing unfavorable ones. An incorporated document becomes part of the complaint in its entirety.

Accordingly, Rule 8 provides no basis for disregarding the factual admissions contained in Dixon's incorporated demand letter.

3

**C.**      **Plaintiff's Allegations as to His Alleged Employee Status are Conclusory**

Even aside from Plaintiff's concession that he was an independent contractor, his allegations of employee status under the economic-realities test are conclusory.

"[T]he Second Circuit's economic realities test, … considers whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Aguilar v. New Dairydel, Inc.*, No. 22 CIV. 3700 (NSR), 2023 WL 5835829, at *3 (S.D.N.Y. Sept. 8, 2023) (quotations omitted).

Conclusory recitation of the economic-realities factors, without supporting facts, fails federal pleading standards and cannot survive dismissal.  *See Aguilar v. New Dairydel, Inc.*, No. 22 CIV. 3700 (NSR), 2023 WL 5835829, at *3 (S.D.N.Y. Sept. 8, 2023) ("Plaintiff Aguilar fails to raise allegations adequate to support any of the four factors set forth in the economic realities test. Instead, conclusory statements from Plaintiff's Complaint, when strung together, merely mirror these factors. Such threadbare recitals of the elements to establish employer liability do not suffice to state a plausible claim for relief.") (citations omitted); *Espinoza v. La Oficina Bar Corp.*, No. 20-CV-1237 (MKB), 2022 WL 987429, at *12 (E.D.N.Y. Mar. 1, 2022) (holding same); *Napoli v. Deluxe Corp.*, No. 17CV6956SJFSIL, 2019 WL 2579133, at *5 (E.D.N.Y. June 21, 2019) (holding same).

Here, the FAC only alleges in pure conclusory fashion – mere boilerplate recitations –  that: "At all relevant times, Cartagena, acting through Sneaker Addict Touring LLC and Slate, Inc., exercised the power to hire and fire Plaintiff, supervised and controlled his work schedule and conditions of employment, determined his rate and method of payment, and maintained employment records concerning his work." (FAC ¶ 31) (quotations omitted).  Indeed, paragraph

31 of the FAC ends with a quotation mark, which only shows that Dixon cut and pasted the boilerplate standard from case law and forgot to remove that punctuation symbol.  *See also* conclusory and boilerplate allegations at FAC ¶ 91 ("Cartagena, Sneaker Addict Touring LLC, Slate, Inc., and Roc Nation exercised control over Plaintiff's work by dictating performance schedules, locations, and conditions; controlling compensation and payment methods; and integrating Plaintiff's services into their core touring and recording operations.").

Accordingly, Plaintiff's conclusory recitation of the economic-realities factors fails to plausibly allege employee status.

**D.    There is No NYLL Statutory Presumption as to Performing Artists**

Dixon cites five cases for a purported NYLL presumption that performing artists are employees of the paying entity.  None supports that proposition.  *See Griffs Glob. Corp. v. Comm'r of Lab.*, 210 A.D.3d 1349 (3rd Dep't 2022); *Women's Project & Prods., Inc. v. Comm'r of Lab.*, 182 A.D.3d 944 (3rd Dep't 2020); *Fouchecourt v. Metro. Opera Ass'n*, 537 F. Supp. 2d 629 (S.D.N.Y. 2008); *In re Mid Am. Prods. Inc.*, 267 A.D.2d 656, 699 N.Y.S.2d 556 (1999); *Makarova v. United States*, No. 97 CIV. 4748 (LAP), 1999 WL 58693, at *1 (S.D.N.Y. Feb. 5, 1999).

These cases do not address NYLL §§ 193, 195, 198, or 215, and each concerns workers' compensation or unemployment insurance under distinct statutory schemes irrelevant to Dixon's wage-and-hour claims.

Furthermore, the presumption to which Dixon cites only applies to "services … for a television or radio station or network, a film production, a theatre, hotel, restaurant, night club or similar establishment." N.Y. Lab. Law § 511(1-a); N.Y. Workers' Compensation Law § 2(4).

Dixon does not – and cannot – allege Defendants are "a television or radio station or network, a film production, a theatre, hotel, restaurant, night club or similar establishment."  The

5

presumption therefore does not apply and, regardless, arises under a distinct statutory scheme irrelevant to his NYLL claims.

* * *

Plaintiff thus fails to plausibly allege employment, a prerequisite to his NYLL claims, requiring dismissal of Counts I, II, and V.

<b><u>POINT II</u></b>

<b>NYLL SECTIONS 193 AND 198 DO NOT APPLY RETROACTIVELY<br><u>AS TO FAILURE TO PAY WAGE CLAIMS</u></b>

Dixon does not dispute that: (a) the overwhelming weight of New York and federal authority holds that the No Wage Theft Loophole Act ("NWTLA"), which extended New York Labor Law §§ 193 and 198 to failure-to-pay-wages claims, does not apply retroactively to purportedly withheld wages earned before its 2021 enactment[2]; (b) the lone outlier case[3] neither distinguishes nor even acknowledges the numerous prior decisions holding that the Legislature did not intend the NWTLA to apply retroactively; (c) statutes are presumed to operate prospectively absent a clear legislative directive to the contrary; and (d) the FAC alleges that "[f]rom approximately 2005 through 2020, Plaintiff performed ... as part of Fat Joe's touring operation." (FAC ¶ 30; *see also id.* at top of p. 2 ["From approximately 2005 through 2020 …."], ¶ 8 ["From approximately 2005 through 2020 …."]).

Dixon argues that Executive Order No. 202.8's 228-day COVID toll retroactively advances the No Wage Theft Loophole Act's effective date. (Dixon MOL at 18).  He cites no authority, and

---

[2] Indeed, earlier this year, the First Department held: "the Act does not apply retroactively." *Fisher v. Hudson Hall LLC*, 246 A.D.3d 434, 434 (1st Dep't 2026); *see also* multiple cases cited on this point in Defendants' opening memorandum (pp. 13-14).
[3] *Hernandez Technology, Inc. v. Rivera*, 237 N.Y.S.3d 317 (4th Dep't 2025); *see also* Defendants' opening memorandum (pp. 13-14), wherein Defendants distinguish *Hernandez*.

6

none exists.  Tolling extends the time to sue; it does not alter a statute's effective date or make it retroactive.

Additionally, even assuming, arguendo, that the 228-day COVID-19 tolling period somehow created a retroactive look-back period (which it plainly does not), Dixon's argument still fails.  The NWTLA became effective on August 19, 2021, and 228 days before that date is January 3, 2021 – *after* Dixon claims he should have allegedly been paid wages.  *See Gunthorpes v. IM. Grp., LLC*, No. 21 CV 5140 (ARR)(RML), 2024 WL 2031191, at *5 (E.D.N.Y. Apr. 11, 2024) ("The No Wage Theft Loophole Act only became effective upon its signing, one week after the time period relevant to this action. See https://perma.cc/P9KN-ENSD (indicating that the No Wage Loophole Act was signed on Aug. 19, 2021.)."), abrogated on other grounds by *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024).

Critically, Dixon does not allege that Defendants withheld any wages after 2020.  Because New York Labor Law §§ 193 and 198 do not apply retroactively, those provisions have no application to Dixon's claims.

Accordingly, Count I should be dismissed with prejudice.

## POINT III

## DIXON'S NYLL § 195(1) CLAIM SHOULD BE DISMISED

**A.      Dixon Concedes that His NYLL Section 195(1) Claim is Time-Barred**

Defendants established that Dixon's § 195(1) claim accrued when he was allegedly hired in 2005 and is barred by the six-year limitations period. (Defs. MOL at 16–17).  Dixon disputes neither point, relying only on the 228-day COVID toll.  Even with that toll, his claim expired no later than August 15, 2012—nearly thirteen years before he sued on June 19, 2025.

Accordingly, because Dixon's claim under NYLL § 195(1) accrued in 2005 and is untimely as a matter of law, Count II should be dismissed with prejudice.

**B.      Dixon Has No Standing to Assert a Section 195(1) Claim**

Defendants showed that § 195(1) applies only to employees hired on or after April 9, 2011. (Defs. MOL at 16–17). Dixon relies solely on *Franco v. Jubilee First Ave. Corp.*, arguing his employment was "restructured" after 2011 when Roc Nation became involved and a different payroll system was used. (Dixon MOL at 21).

Plaintiff's reliance on *Franco*, No. 14 Civ. 7729, 2016 WL 4487788 (S.D.N.Y. Aug. 25, 2016), is misplaced.  Far from supporting Plaintiff's position, *Franco* confirms Defendants' argument that New York Labor Law § 195(1) is triggered only "at the time of hiring." *Id*. at 13 ("Employees who began working before the WTPA took effect on April 9, 2011 . . . are not entitled to bring a claim for an employer's failure to provide notice as required under NYLL § 195(1)(a)."). Nothing in *Franco* suggests an employee is rehired when another entity becomes involved or payroll changes.  Rather, *Franco* confirms that § 195(1) turns on the initial hiring, not later changes to the employment relationship or payroll.

8

Dixon's interpretation would rewrite § 195(1), making any change in management, business involvement, or payroll a new hiring requiring another wage notice. Neither § 195(1) nor its case law supports that construction.

Finally, Dixon argues Defendants violated § 195(1) by failing to provide written notice of the alleged 2019 change from $3,000 per show to Paychex salary. (Dixon MOL at 22). This fails for two reasons.

First, § 195(1) requires notice only "at the time of hiring," not whenever compensation later changes.

Second, the FAC does not allege lack of written notice; rather, Dixon alleges his June 21, 2019 pay statement reflected compensation different from his alleged $3,000-per-performance rate. (FAC ¶ 33). His own allegations thus foreclose this theory.[4]

Consequently, Dixon's claim under § 195(1) (Count II) fails as a matter of law and should be dismissed with prejudice.

---

[4] In this regard, "a party is not entitled to amend its complaint through statements made in motion papers." *Vesterman v. New York City Dep't of Educ.*, No. 25-2731-CV, 2026 WL 1580250, at *2 (2d Cir. June 3, 2026) (quotations omitted).

## POINT IV

### DIXON'S NYLL § 195(3) CLAIM SHOULD BE DISMISED
### BECAUSE IT FAILS TO STATE A CLAIM

Dixon's claim under New York Labor Law § 195(3) (Count III) rests entirely on a single Paychex wage statement for the pay period ending June 21, 2019 (Check No. 200073), which he alleges "constitutes a facially non-compliant wage statement under § 195(3) in that it lists all federal and FICA withholding amounts as 'XXXX,' rendering the statement false on its face." (FAC ¶ 99.)  The FAC identifies no other wage statement as violating § 195(3).

Defendants established that Dixon's § 195(3) claim fails because the June 21, 2019 Paychex statement reproduced in the original Complaint (ECF No. 3 at ¶ 365) shows identical gross and net pay, establishing no deductions or withholdings. (Defs. MOL at 17–18).  Thus, the "XXXX" entries for federal and FICA withholdings could not make the statement inaccurate because none existed to report.

Dixon identifies no inaccurate withholding information, alleges no withholdings were actually deducted, and identifies none that should have been reported.  Because gross and net pay were identical, no withholdings existed to report.

Instead, Dixon asks the Court to "credit" his legal conclusion that the statement was "facially non-compliant and injurious," (Dixon MOL at 21) over his own factual allegations.  He alleges no deductions were withheld or inaccurately reported, but instead claims the "XXXX" entries concealed unspecified information.  That misses the point: absent any alleged withholding, he cannot plausibly claim the statement inaccurately reported withholdings.

Accordingly, Dixon has failed to state a claim under § 195(3), and Count II should be dismissed with prejudice.

10

## POINT V

## DIXON'S RETALIATION CLAIM (COUNT V) DOES NOT STATE A PLAUSIBLE CLAIM AND SHOULD BE DISMISSED

Dixon alleges three retaliatory acts: (1) Cartagena's lawsuit; (2) social-media threats; and (3) threatened and actual withholding of payments.

As Defendants established, a lawsuit is not retaliatory absent facts showing it was brought in bad faith or objectively baseless, which the FAC simply does not allege in nonconclusory fashion. (Defs. MOL at 19). Dixon merely labels Cartagena's suit "[b]ad faith or groundless litigation" (Dixon MOL at 23), while the FAC calls it "retaliatory." (FAC ¶¶ 64, 160). Such conclusory labels are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

Indeed, the Court denied Dixon's motion to dismiss Cartagena's suit and his requests for fees under N.Y. Civil Rights Law § 70-a and sanctions. (ECF No. 161, Case No. 25-cv-3552). Those rulings further undermine his conclusory claim that the suit was brought in bad faith or objectively baseless.[5]

As to the alleged social-media threats and withholding of wages, Defendants established that post-employment[6] retaliation is actionable only if it involves bad-faith litigation or employment-related harm directly affecting future employment prospects. (Def. MOL at 19).[7] The

---

[5] *See Khalid v. DJ Shirley 1 Inc.*, No. 15-5926, 2019 WL 325127, at *2 (E.D.N.Y. Jan. 25, 2019)("Plaintiffs have not alleged that the subject state court actions have been dismissed as baseless. Without the benefit of that determination, the Plaintiffs cannot allege, at this juncture, that the state court actions constitute an adverse employment action."); *Pawlowski v. Kitchen Expressions Inc.*, No. 17-CV-2943-ARR-VMS, 2017 WL 10259773, at *5 (E.D.N.Y. Dec. 15, 2017) (holding same).

[6] The alleged retaliation followed Dixon's March 2025 demand letters, while his services for Defendants allegedly ended by 2020. (FAC at 2, ¶¶ 8, 30, 158).

[7] *See, e.g., Jian Zhong Li v. Oliver King Enters., Inc.*, No. 14-CV-9293 VEC, 2015 WL 4643145, at *3–4 (S.D.N.Y. Aug. 4, 2015) ("The scope of post-employment conduct that does not have a

FAC alleges no retaliatory conduct directly affecting Dixon's future employment prospects.  Thus, the alleged post-employment social-media threats and withholding or threatened withholding of payments are not actionable under the NYLL.

Accordingly, Dixon's NYLL Section 195(3) claim (Count V) fails to state a claim and should be dismissed with prejudice.

**POINT VI**

**DIXON'S TVPA CLAIM (COUNT III) DOES NOT STATE A PLAUSIBLE CLAIM AND SHOULD BE DISMISSED**

**A.    The FAC Fails to State a Direct §§ 1589 and 1591 Claim Against Torres, Jospitre, Moreira, Sneaker Addict, or Slate**

Defendants showed that Count III alleges no facts that Jospitre, Moreira, Sneaker Addict, or Slate violated the TVPA by recruiting, enticing, harboring, transporting, providing, obtaining, maintaining, patronizing, or soliciting Dixon for a commercial sex act.

Dixon never meaningfully disputes that point.

Instead, Dixon argues that (a) Jospitre allegedly "controlled or routed payment flows, reinforced coercive pressure with legal-process threats, and communicated about unpaid compensation"; (b) Moreira allegedly "maintained the payroll and financial opacity"; (c) Sneaker Addict and Slate allegedly served as the "corporate vehicles" through which revenues were routed;

---

direct connection to the former employee's employment prospects that has been recognized in this Circuit as potential unlawful retaliation under FLSA is, nonetheless, relatively narrow. Courts have held that instituting bad faith or groundless counterclaims or instituting bad faith litigation against the employee constitutes actionable retaliation. *** Plaintiff has not cited a single post-employment retaliation case from this Circuit or elsewhere that did not involve either employment-related harm or a threatened legal claim against the plaintiff, and the Court has found none.").

12

and (d) Torres allegedly "enforced threats, including the June 2019 plane threat and later violent threats." (Dixon MOL at 43-44).

Even accepted as true, these allegations do not establish direct § 1591 liability. Jospitre, Moreira, Sneaker Addict, and Slate allegedly performed only administrative or business functions, none constituting a statutory act.  As to Torres, alleged threats alone do not satisfy any statutory act, and Dixon cites no authority otherwise.  *See, e.g., C.C. v. Rashid*, No. 2:23-cv-02056, 2025 U.S. Dist. LEXIS 122420, at *31-33 (D. Nev. June 26, 2025) (the "first element of direct violator perpetrator liability" is not shown where complaint is devoid of any allegation that defendants "knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained" the plaintiff).

Accordingly, Dixon has not plausibly alleged that Jospitre, Moreira, Sneaker Addict, Slate or Torres engaged in any of the conduct prescribed by Sections 1589 and 1591.

**B.**    **The FAC Does Not Allege a Commercial Sex Act Within the Meaning of § 1591**

Dixon identifies no allegation satisfying the threshold requirement of a commercial sex act. Instead, he argues that transportation, continued employment, performance fees, and avoiding physical or economic harm are "things of value," sidestepping whether the FAC plausibly alleges any commercial sex act at all. (Dixon MOL at 38–39).

Section 1591 does not prohibit the mere provision of things of value.  Rather, it prohibits causing a person to engage in a commercial sex act, defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

Thus, before the Court reaches whether something qualifies as a "thing of value," Dixon must plausibly allege that Defendants caused him to engage in a commercial sex act in exchange for that thing of value.   The FAC never does so.

13

Instead, Dixon simply asserts in conclusory fashion that transportation, continued touring, and performance fees were "conditioned on compliance." (Dixon MOL at pp. 38-40).  Yet neither the opposition nor the FAC identifies facts plausibly alleging: (a) what commercial sex act Defendants allegedly demanded in exchange for return transportation; (b) what commercial sex act Defendants allegedly demanded in exchange for continued tour participation; (c) what commercial sex act Defendants allegedly demanded in exchange for performance fees; (d) who gave or received the alleged thing of value on account of that commercial sex act; or (e) that Defendants knowingly used force, fraud, or coercion to cause that commercial sex act.  *See Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 667 (S.D.N.Y. 2024) ("Plaintiffs' allegations that they were subjected to sexual assault and forced to perform sex acts …  are mere conclusory statements unsupported by factual allegations.").

Boiled to its essentials, the FAC does not plausibly allege that force, fraud, or coercion was used to *cause a commercial sex act*, as the statute expressly requires.  Those omissions are fatal and the Court should dismiss Dixon's TVPA sex trafficking Claim (Count III) with prejudice.

**C.**    **Dixon Fails to State a Plausible Forced Labor Violation (Count III)**

Defendants established that Dixon does not allege Moreira, Torres, Sneaker Addict, or Slate obtained his labor or services, requiring dismissal of the forced-labor claim against them. (Defs. MOL at 25).  *See* 18 U.S.C. § 1589 ("Whoever knowingly provides or obtains the labor or services of a person …."). Dixon ignores this argument, asserting only conclusory venture liability.

That theory fails because participation in Cartagena's music business does not plausibly allege knowing participation in a venture that obtained Dixon's labor through prohibited coercion. *See Marciniak-Domingues v. Massachusetts Inst. of Tech.*, No. 1:22-CV-10959, 2024 WL

14

4350826, at *17 (S.D.N.Y. Sept. 30, 2024) ("Marciniak does not allege that Defendants knowingly benefitted nor that Defendants understood the connection between any purported benefits and any alleged trafficking scheme. Marciniak also does not sufficiently allege that Defendants participated in any overt acts in furtherance of any alleged trafficking scheme. Therefore, these facts fail to plead a TVPA claim."); *A.A. v. Omnicom Grp., Inc.*, No. 25-CV-3389 (JMF), 2026 WL 504904, at *12 (S.D.N.Y. Feb. 24, 2026) (holding same).

Defendants also established that many alleged threats occurred after Dixon stopped performing with Cartagena in 2020 and thus could not have compelled his labor or services. (Defs. MOL at 25).  Dixon does not dispute this.

Defendants further established that the alleged threats concerned Dixon bringing a claim, not compelling his labor or services. (Defs. MOL at 25–26).  *See Stillwell v. Fashion Nova, LLC*, No. CV 21-7040-GW-MARX, 2022 WL 2965394, at *13 (C.D. Cal. Jan. 28, 2022) ("Even if the threats allegedly made to Plaintiff were sufficient to overcome a reasonable person of her background, *they were not threats made to compel her to continue providing labor or services* ….") (emphasis in the original).  Dixon does not respond to this argument.

Defendants additionally established that the alleged social-media threats are vague and unrelated to compelling Dixon's labor or services. (Defs. MOL at 26).  Dixon identifies no allegation establishing such a connection.

Moreover, Defendants argue in their opening Memorandum (pp. 27-28) that no reasonable person would have been compelled to work in response to the alleged threats or mistreatment. *See Stillwell*, 2022 WL 2965394, at *11 ("The 'harm' Plaintiff alleges she faced would not compel a 'reasonable person' of her 'background' to continue a working relationship ….").

15

Defendants cited multiple examples where the FAC conceded that Dixon was not being compelled to provide services to Defendants because of alleged threats and mistreatment. Specifically, Dixon: (a) does not allege that he had no other way of making an income; (b) pleads in his fraudulent concealment claim that he could have left Defendants alleged employ at any time (FAC ¶ 168(2)[8]); (c) "continued to perform on tour through 2020 without retaining independent counsel or asserting formal wage claims" because of concealed facts, not threats (FAC at ¶ 169); (d) asserts that Cartagena told him to "look for work at UPS" (FAC at ¶ 110), meaning Cartagena was not forcing Dixon to continue performing with him; and (e) alleges that he stopped working for Cartagena in or after 2020, but does not identify any change in circumstances that suddenly enabled him to leave at that time, which necessarily means he was free to leave the alleged employ of Defendants at *any* time (Def. MOL pp. 27-28).  *See Stillwell*, 2022 WL 2965394, at * 11-13 (dismissing TVPA forced labor claim by a registered nurse and law school graduate, finding that a reasonable person in her circumstances would have walked away, filed a claim, and/or found other employment); *Johnson v. Town of Greece*, No. 6:23-CV-06441 EAW, 2024 WL 4026199, at *7 (W.D.N.Y. Sept. 3, 2024) ("Plaintiff's allegation that he would have lost his job at the Town had he refused to comply with Reilich's and Marini's demands that he perform additional services for them is accordingly insufficient to constitute serious harm for purposes of the TVPA. A holding to the contrary would improperly broaden the TVPA to potentially encompass every situation in which an employee stays in a job he no longer wishes to perform because he does not want to lose his paycheck.").

---

[8] Dixon alleges that, if facts had not been concealed from him, "he would have ceased performing on tour and contributing to recordings no later than 2011-2012." (FAC ¶ 168(2)).

Dixon does not dispute that he made any of these concessions in the FAC or address their significance.

* * *

Consequently, Plaintiff has failed to plausibly allege a sex trafficking or forced labor claim (Count III), and the Court should dismiss that claim with prejudice.

## POINT VII

### DIXON'S COPYRIGHT CLAIM (COUNT IV) SHOULD BE DISMISSED

**A.    Count IV Is Time-Barred in Its Entirety Because It Is a Single Copyright Co-Ownership Claim**

Dixon wrongly treats Count IV as three claims – copyright co-ownership, declaratory judgment, and accounting – with separate limitations periods.  In reality, the FAC asserts one co-ownership claim seeking two dependent remedies: a declaration of co-authorship and co-ownership and an accounting of resulting royalties. (FAC ¶¶ 41–46, 88(d), 146–155).  Because the co-ownership claim is untimely, both remedies fail.

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The Second Circuit has consistently held that a copyright "ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)); *see also Bridgeport Music Inc. v. TufAmerica Inc.*, No. 23-7386-CV, 2024 WL 4929257, at *3 (2d Cir. Dec. 2, 2024) (holding same).

17

The FAC alleges repeated repudiation. By 2014, Defendants registered copyrights excluding Dixon (FAC ¶¶ 41–46; *see also* Siev Decl. ¶ 2 & Ex. A), commercially exploited the works while claiming ownership, and paid Dixon no royalties. (FAC ¶¶ 41–49). The works also appeared on Cartagena albums released in 2009 and 2010, nearly 15 years before suit. (*Id.* ¶ 41).[9]

Additionally, Dixon alleges he worked closely with Cartagena from 2005–2020 as a songwriter, co-author, vocalist, and creative contributor, making it implausible that he was unaware of unpaid royalties by 2009–2014. (FAC at ¶ 8).

Thus, Dixon's allegation of Defendants' asserted ownership is inconsistent with his alleged co-ownership, which establishes that he knew or should have known of their exclusive ownership claim years before suit. *See Bridgeport Music Inc. v. TufAmerica Inc.*, No. 23-7386-CV, 2024 WL 4929257, at *3 (2d Cir. Dec. 2, 2024) ("As we have previously held, 'learning that another [ ] is exploiting [a] work is sufficient notice that royalties are due,' and when a party has 'knowledge of an entitlement to royalties that are not being paid,' a copyright ownership claim accrues. *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 319 (2d Cir. 2013).").

Furthermore, it makes no difference that Dixon seeks declaratory or accounting relief: "A co-author knows that he or she jointly created a work from the moment of its creation. …. We hold that plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996); *see also Mahan v. Roc Nation, LLC*, No. 14 CIV. 5075 LGS, 2015 WL 1782095, at *3 (S.D.N.Y. Apr. 15, 2015)

---

[9] The creation and publication dates of the relevant works appear on the face of the associated copyright records. *See* Siev Decl., Ex. A. It is well-established that the Court may properly take judicial notice of official records of the United States Copyright Office. *See Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 287 n. 3 (S.D.N.Y. 2010).

("Plaintiff's declaratory judgment claims must be dismissed as time barred, as it is clear from the face of the Amended Complaint and the parties' submissions that these claims accrued more than three years before this action was commenced. …. Plaintiff's claims are time barred as a result of Roc–A–Fella's registrations with the United States Copyright Office …. [and] the absence of any royalties sent to Plaintiff also gave him reason to know of his injury."); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 81 (1st Cir. 2007) ("Plaintiff may not assert the state-law claims for accounting or equitable trust without establishing that it is a co-owner. Whether Cambridge is a co-owner in turn depends, on the facts of this case, upon the federal Copyright Act. This in turn requires that Cambridge have asserted its ownership claims within that statute's limitations period. The congressional intent that the Act's limitations period applies to claims of ownership under the Act may not be undercut by Cambridge's subterfuge.").

Furthermore, in a meritless attempt to avoid the inescapable reality that Count IV is nothing more than an untimely co-ownership claim, Dixon cites to *Wilson v. Dynatone Publishing Co.*, 892 F.3d 112 (2d Cir. 2018). His reliance on *Wilson* is misplaced. *Wilson* did not overrule *Merchant*, *Kwan*, or the Second Circuit's longstanding repudiation rule.[10] Rather, *Wilson* reaffirmed that ownership claims accrue upon repudiation and its holding only applied to a dispute involving *renewal-term* copyrights,[11] which are not at issue here (*see* discussion below). Disputes

---

[10] *Wilson*, 892 F.3d at 118 ("This Court has identified at least three types of events that can put a potential plaintiff on notice and thereby trigger the accrual of an ownership claim: public repudiation; private repudiation in communications between the parties; and implicit repudiation 'by conspicuously exploiting the copyright without paying royalties.'").

[11] *Id.* at 115 & 117 ("The district court granted Defendants' motion to dismiss pursuant to Rule 12(b)(6). The court reasoned that the claims were time-barred because the Defendants had repudiated Plaintiffs' claims of copyright ownership many years earlier, during the initial copyright terms. The district court erred in concluding that a repudiation of Plaintiffs' claims with respect to the original terms constitutes a repudiation of the renewal terms. *** On appeal, Plaintiffs contend that the district court erred in granting Rule 12(b)(6) dismissal of (1) their claims to renewal term copyrights in the composition and sound recording of Sho' Nuff and (2)

concerning renewal-term copyrights accrue independently because a renewal creates new rights independent of the original copyright. *See id.* at 117 ("Congress intended the renewal term to give authors an opportunity to renegotiate with patrons after their work has been tested in the market. *See Stewart v. Abend*, 495 U.S. 207, 218–19, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). Accordingly, the renewal term is a 'new estate ... clear of all rights, interests or licenses granted under the original copyright.' *PC Films Corp. v. MGM/UA Home Video Inc.*, 138 F.3d 453, 457 (2d Cir. 1998).").

Here, renewal of copyrights cannot be an issue because Dixon alleged that the songs at issue were created and registered between 2009 and 2014, and that he did not provide any services to Cartagena until 2005. (FAC ¶¶ 8, 29-30, 41-42). Musical works created and first published after January 1, 1978 are governed by 17 U.S.C. § 302(a), which provides a single copyright term and does not provide for renewal copyrights. *See Broad. Music, Inc. v. Roger Miller Music, Inc.,* 396 F.3d 762, 772 (6th Cir. 2005) ("copyrights created on or after January 1, 1978, are not subject to the renewal scheme, [17 U.S.C.] § 302(a)"); *Brumley v. Albert E. Brumley & Sons, Inc.*, 822 F.3d 926, 928 (6th Cir. 2016) ("the 1976 Act abolished the copyright renewal provision").

Unlike *Wilson*, no factual uncertainty exists. Dixon alleges that, by 2014, Defendants excluded him from copyright registrations, publicly claimed and exploited the works, denied his ownership, and paid no ownership royalties. (FAC ¶¶ 41–49, 146–155; Siev Decl. ¶ 2 & Ex. A). This constituted express repudiation, triggering the three-year limitations period. *See Bridgeport Music*, 2024 WL 4929257, at *3.

---

their accounting claims. They do not challenge the district court's dismissal of their claims to the original term copyrights or their demand for a declaratory judgment invalidating the June 26, 1974 copyright registration for the Sho' Nuff composition by Unichappell's predecessor, Chappell & Co.")

20

Because Dixon sued more than three years after his ownership claim accrued, Count IV and its requested declaratory and accounting relief are time-barred.

**B.      Dixon Lacks Standing to Bring His Alternative Claim of Infringement**

Dixon does not dispute that he lacks standing to assert infringement because he alleges no copyright registration.  He argues only that nonregistration does not bar his co-ownership claims. (Dixon MOL at 49).  But, as shown above, those claims are time-barred.

**C.      Sneaker Addict and Slate Are Not Proper Defendants for the Copyright Claims**

Defendants established that co-authorship claims lie only against copyright owners and that Sneaker Addict and Slate own none of the twelve works at issue. (Defs. MOL at 32).  Dixon does not dispute their lack of ownership.

Instead, Dixon argues they received or benefited from revenues derived from his works and that Slate concealed or held related income and proceeds through affiliated entities. (Dixon MOL at 49–50).

Dixon cites no authority supporting this theory and, as shown above, his co-ownership claims should be dismissed.

* * *

Consequently, Dixon has failed to plausibly allege a copyright claim (Count IV), and the Court should dismiss that claim with prejudice.

21

## POINT VIII

## DIXON'S FRAUDULENT CONCEALMENT CLAIM (COUNT VI) SHOULD BE DISMISSED, AND DIXON MAY NOT RELY ON GENERALIZED ALLEGATIONS OF FRAUDULENT CONCEALMENT TO TOLL THE STATUTE OF LIMITATIONS

### A.    Dixon Fails to Sufficiently Plead the Existence of a Duty to Disclose

In their opening Memorandum (pp. 34–36), Defendants argue, supported by controlling case law, that no duty to disclose arose from: (a) Defendants' alleged superior knowledge, because the parties were not engaged in negotiations for the formation of a contract at the time of the alleged concealment; (b) Defendants' alleged control over the accounting, corporate, and intellectual property "interfaces" with third parties; (c) the parties' alleged employment relationship; (d) Defendants' alleged collection of royalties purportedly owed to Dixon; or (e) Defendants' alleged statements that Dixon was "family."

Dixon neither addresses Defendants' arguments nor distinguishes their authorities, instead repeating conclusory allegations and citing inapposite cases. *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, No. 20-CV-5428 (JMF), 2022 WL 4448621, at *1 (S.D.N.Y. Sept. 23, 2022), involved neither a substantive fraudulent concealment claim nor a duty to disclose. *Kaufman v. Cohen*, 307 A.D.2d 113 (1st Dep't 2003), involved formal partners in an actual partnership, unlike here.

Therefore, Dixon has failed to plausibly allege a duty to disclose.

22

**B.**     <u>Dixon Fails to Comply with Fed. R. Civ. P. 9(b)</u>

Defendants established that the FAC fails Rule 9(b) because it does not identify the alleged omissions, who failed to disclose them, their context or how they misled Dixon, or what Defendants obtained through the alleged fraud. (Defs. MOL at 37–38).

Dixon responds only that the omissions involved copyright filings excluding him, the June 2019 pay statement's "XXXX" entries, and statements that Defendants were investigating his withheld-compensation claims.  He still fails to plead with Rule 9(b) particularity how these omissions misled him or what Defendants thereby obtained.

The FAC also does not allege that *he* reviewed and *he* was misled by copyright filings provided *to a third party* (*i.e.* the Copyright Office) in 2011. (FAC ¶ 166(3)).  *See Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 & 829 (2016) ("The elements of a fraud cause of action consist of a misrepresentation *or a material omission* of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, *justifiable reliance* of the other party on the misrepresentation or material omission, and injury. ***We … decline to extend the reliance element of fraud to include a claim based on the reliance of a third party, rather than the plaintiff.") (brackets and quotations omitted; emphasis supplied).

Nor does the FAC explain how the "XXXX" federal and FICA fields omitted material facts when, because no withholdings existed, the entries were not inaccurate. (*See supra* Point IV).

Nor does the FAC plead how Jospitre's statements – made at unspecified locations and times between 2015 and 2020 – that Defendants were reviewing Dixon's claims, "numbers are being fixed," and "Erica is handling it" constituted material omissions. (FAC ¶ 166(3)).  Such generalized allegations over five years fail Rule 9(b). *See e.g. Goldrich v. Masco Corp.*, No. 22-

23

CV-3769 (KMK), 2023 WL 2649049, at *9 (S.D.N.Y. Mar. 27, 2023) ("Plaintiff does not plead with any particularity at all when and where this omission occurred.").

Likewise, the FAC's generalized allegations that Cartagena, Moreira, and Jospitre (improper group pleading[12]) concealed certain agreements, payment receipts, and split sheets from Dixon (without identifying which Defendant allegedly withheld which information) at unspecified times and locations (FAC ¶ 167) fail to satisfy Rule 9(b)'s particularity requirement.

Finally, because Dixon fails to plead fraudulent concealment under Rule 9(b), those allegations cannot toll the limitations period for any of his claims. *See e.g. Butala v. Agashiwala*, 916 F. Supp. 314, 319 (S.D.N.Y. 1996) ("Under the doctrine of fraudulent concealment, the statute of limitations will be tolled if the plaintiff pleads, with particularity, the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim. For each of the three elements, the plaintiff must comply with the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure in pleading fraudulent concealment.") (citations omitted).

* * *

Accordingly, Count VI should be dismissed, and Dixon cannot invoke fraudulent concealment to toll the limitations period for any of his claims.

---

[12] *See Nesbeth v. New York City Mgmt. LLC*, No. 17 CIV. 8650 (JGK), 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019); *Lepore v. NL Brand Holdings LLC*, No. 16 CIV. 08115 (GBD), 2017 WL 4712633, at *6–7 (S.D.N.Y. Sept. 28, 2017).

## POINT IX

### DIXON'S UNJUST ENRICHMENT CLAIM (COUNT VII) FAILS TO PLEAD A PLAUSIBLE CLAIM AND IS TIME-BARRED

**A.     Dixon's Unjust Enrichment Claim is Duplicative of His Fraudulent Concealment Claim**

Defendants established that Count VII duplicates Dixon's fraudulent concealment claim. (Defs. MOL at 43).  Dixon does not respond or distinguish Defendants' authorities, thereby conceding the argument.  Thus, Count VII should be dismissed with prejudice.

**B.     Dixon's Unjust Enrichment Claim Relating to His Alleged Contributions to Cartagena's Music Is Preempted by The Copyright Act**

Defendants established that Dixon's unjust enrichment claim based on alleged authorship and unpaid royalties, publishing income, and catalog-sale proceeds is Copyright Act-preempted. (Defs. MOL at 38–41).  Dixon does not respond or distinguish Defendants' authorities, instead invoking unrelated "non-copyright benefits." (Dixon MOL at 55–56).  He thus concedes preemption, requiring dismissal of Count VII to the extent based on his alleged copyright interests.

**C.     Dixon's Unjust Enrichment Claim Relating to Musical Works Is Time- Barred**

Defendants also established that Dixon's unjust enrichment claim based on alleged co-authorship and retained royalties, publishing income, and related proceeds is time-barred. (Defs. MOL at 41–42).  Dixon does not respond, address accrual, or distinguish Defendants' authorities.

Under New York law, unjust enrichment claims have a six-year limitations period for equitable relief and three years for money damages. (Defs. MOL at 40).

Dixon does not dispute these principles or Defendants' authorities, arguing only that Defendants continued exploiting the works and retaining revenues. (Dixon MOL at 57).  But unjust enrichment accrues upon the wrongful act creating the duty of restitution, not each subsequent receipt of revenue. (Defs. MOL at 40).

The alleged wrongful acts – copyright registrations excluding Dixon – occurred in September 2011 and January 2014. (FAC ¶¶ 41–46).  Both fall outside even the six-year period. Because unjust enrichment accrues upon the wrongful act, later royalties, licensing, streaming, or catalog-sale proceeds do not restart limitations. (Defs. MOL at 40).

Therefore, this claim relating to musical works is time-barred.

### D.    Dixon Fails to Plead Any Basis for Unjust Enrichment Other Than a Contract

Defendants established that Dixon's unjust enrichment claim for live-performance compensation rests entirely on the alleged $3,000-per-show agreement. (Defs. MOL at 41–42; FAC ¶¶ 35–40, 179, 183, 198).  Dixon does not respond and again relies on that agreement. (Dixon MOL at 55).  Indeed, the FAC itself demonstrates that his alleged entitlement to additional performance compensation is derived exclusively from the purported agreement requiring Defendants to pay him at least $3,000 per show. (FAC ¶¶ 35-40, 179, 183 & 198).  Labeling Count VII "alternative" (FAC ¶ 173) does not cure the absence of any independent basis for unjust enrichment.

Thus, Count VII should be dismissed.

### E.    Dixon's Unjust Enrichment Count Relating to His Alleged Failure To Receive His Full Performance Fees Is Barred by The Statute of Limitations

Defendants established that Count VII's claim for unpaid performance fees is barred by the three-year limitations period. (Defs. MOL at 42).  Dixon invokes a six-year period for constructive trust and restitution but does not distinguish Defendants' authorities applying three years to unjust enrichment claims seeking monetary relief.

Dixon also cannot obtain a constructive trust because he pleads no confidential or nonconclusory fiduciary relationship, and does not address these requirements in opposition. (Defs. MOL at 35).  *See Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572, 578 (2d Cir.

26

2010) ("[T]o impose a constructive trust, the law demands … a confidential or fiduciary relationship …."); *Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1474 (S.D.N.Y. 1992) (holding same).

* * *

Accordingly, Dixon's unjust enrichment claim (Count VII) should be dismissed with prejudice.

**POINT X**

**DIXON FAILS TO STATE PLAUSIBLE CLAIMS FOR AIDING AND ABETTING FRAUD AND WAGE THEFT (COUNTS VIII AND IX)**

Dixon's opposition does not salvage Counts VIII or IX. He merely repeats conclusory allegations of Cartagena's "underlying fraud." (Dixon MOL at 57). Because he fails to plead actionable fraud or wage theft, his derivative aiding-and-abetting claims also fail. (Defs. MOL at 43).

Nor does Dixon address that New York recognizes no standalone claim for aiding and abetting wage theft. Instead, he seeks *yet another* amendment to allege "direct employer, agent, officer, or joint-employer liability," without explaining how such a claim could be pleaded or citing supporting authority. (Dixon MOL at 59).

Dixon also alleges no particularized facts showing Moreira or Jospitre knew of, advanced, or concealed Cartagena's alleged fraud, thus conceding no substantial assistance.

Counts VIII and IX therefore fail and should be dismissed with prejudice.

27

## POINT XI

### DIXON FAILS TO STATE A PLAUSIBLE OR TIMELY
### CIVIL ASSAULT CLAIM (COUNT XI)

Dixon does not dispute the governing standard.  He concedes that civil assault requires "intentional conduct placing another in reasonable apprehension of imminent harmful of offensive contact."  (Dixon MOL at 59).  He nonetheless contends that Instagram and telephone threats clear that bar because Mr. Torres purportedly had the "present ability" to carry them out through a "network of associates" who knew Dixon's location, and because a "48 hrs" deadline and a reference to a "buck 50" facial slashing made the threatened harm immediate. (*Id*. at 59-60).  For that proposition, he relies on two criminal accessorial-liability decisions (*People v. Guerrero* and *People v. Bowes*) and on Penal Law § 20.00.  (*Id*. at 60).  He further argues that older, admittedly time-barred threats supply "context" for the timely ones and that a "continuing course of conduct" renews his apprehension with each new message.  (*Id.* at 60-61). None of these rescues the claim.  The assault claims are untimely and inadequately pleaded.

### A.      Most of Dixon's Assault Allegations Are Time Barred

Civil assault has a one-year statute of limitations. C.P.L.R. 215(3); *Lettis v. U.S. Postal Serv.*, 39 F.Supp.2d 181, 204 (E.D.N.Y. 1998); *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 247 (2d Cir. 2021)(same, in dicta).  Dixon filed suit on June 19, 2025.  (Dkt. 3 (Compl.) at p. 154). Accordingly, only conduct on or after June 19, 2024 is actionable.  Dixon's pleadings are inconsistent; sometimes he asserts the alleged threats occurred in May 2023 (which would be time barred), (FAC at ¶¶ 67-75), and sometimes May 2025 (*id.* at ¶ 245; Dixon MOL at 61). This Court need not credit allegations "contradicted . . .  by statements in the complaint itself."  *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 424 (S.D.N.Y. 2010).

Dixon argues that his time-barred claims are salvaged by the continuing tort doctrine. (FAC at ¶ 267). However, the continuing tort doctrine does not apply to a civil assault claim, which "accrue[s] immediately upon the occurrence of the tortious act and thus, [is] *not appropriate for the continuing violation exception*." *Elliott v. City of New York*, 723 F. Supp. 3d 249, 261 (S.D.N.Y. 2024) (emphasis added; quotation omitted); *see also Lettis*, 39 F. Supp. 2d at 204-205 (holding same). Dixon's reliance on *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 631 (E.D.N.Y. 2012), is misplaced. *Robles* was an employment discrimination case that discussed the continuing tort doctrine in connection with *an intentional infliction of emotional distress claim*, not assault.

**B.      Timely Allegations, if Any, Fail to Plead Imminent Apprehension of Harmful or Offensive Contact**.

*1.   Dixon's criminal authorities do not govern the civil tort of assault*

Dixon's authorities address criminal, not civil, liability, and cannot justify Dixon's position that the essential element of imminent action can be met if defendant's associates had the ability to carry out the threat. *People v. Guerrero* is a criminal appeal affirming first-degree assault and gang assault convictions on an acting-in-concert theory under Penal Law §§ 20.00 and 120.07, where the defendant personally joined an ongoing knife attack armed with a metal pipe and a bottle. 150 A.D.3d 883, 884 (2d Dep't 2017). *People v. Bowes* is a criminal appeal affirming a drug possession and manufacturing conviction on a theory of accessorial liability under § 20.00; it has nothing to do with assault at all. 206 A.D.3d 1260, 1260-61 (3d Dep't 2022). Dixon's statutory citation, N.Y. Penal Law § 20.00 (McKinney 1965) concerns *criminal* liability on one who aids another's commission of an "offense." Those provisions do not define a civil assault tort. "New York's Penal Law provisions concerning the crime of assault do not mirror the law of civil liability for the tort of assault." *Rapp v. Fowler*, 2022 WL 1997176, at *3 n.9 (S.D.N.Y. June

6, 2022) (quotation omitted).  Dixon cites no civil assault decision holding that a defendant's supposed ability to direct associates to inflict future harm satisfies the imminence element.

> 2. *Any remaining timely allegations fail to plead imminent apprehension of harmful or offensive contact.*

Even taken as true, any surviving allegations plead threats of future, conditional harm conveyed by Instagram or telephone – not the imminent physical menace the tort requires.  As set forth in Defendants' opening brief, to constitute actionable assault, threats must be "accompanied by circumstances inducing a reasonable apprehension of bodily harm, such as movements of drawing back a fist, aiming a blow, or the show of a weapon." *Castro v. Loc. 1199*, 964 F. Supp. 719, 732 (S.D.N.Y. 1997) (quotation omitted).  Threats alone cannot constitute assault. *Id.* And the apprehension of bodily harm must be *imminent*; a threat of future force does not constitute an assault. *See Zheng v. Rivera*, 2014 WL 7001528, at *2 (Sup. Ct. NY Co. Dec. 9, 2014).  So, even if a text message contains a threat, "the lack of imminence precludes a cause of action for assault." *Id.* at *3.  Accordingly, "telephoned threats and those made over the Internet do not suffice to constitute a valid claim for assault." *Id.* at *2.

Dixon's allegations are of this forbidden kind. They are Instagram and telephone messages – "I'm going to give it to u for sure," "you food we gonna eat," "imma make u pay in the worst way," and an associate's message that "they will hurt you."  (FAC ¶¶ 70, 240-242, 244).  Dixon pleads that he understood these statements as threats of harm "if he continued to speak publicly" about Defendants.  (FAC ¶ 70).  A threat contingent on the plaintiff's future conduct is the antithesis of imminence.  New York Courts routinely dismiss far more pointed threats for want of imminence. *See e.g., Pawlicki v. City of Ithaca*, 993 F.Supp. 140, 145 (N.D.N.Y. 1998) (summary judgement of claim based on oral threat "I will hunt you down" delivered with a hand placed on his gun belt several times); *Zheng*, 2014 WL 7001528, at *1-3 (dismissed assault case where

30

defendant texted a photograph of himself masked and armed with a gun, captioned, "you're next"). Internet and telephone threats "do not suffice to constitute a valid claim for assault," because "if the parties are so far apart as to make immediate contact impossible, there is no assault." *Zheng,* 2014 WL 7001528, at *2.

Plaintiff's assertion that Mr. Torres's associates knew where Dixon lived in Florida (FAC ¶¶71, 246) does not cure these defects. In *Bunker v. Testa*, 234 A.D.2d 1004, 1004-5 (4th Dep't 1996), the defendant allegedly "follow[ed] [plaintiff's] children and family around and [told] her that he knew where the children went to school and when they got out of school," which was not "imminent apprehension" of "harmful or offensive contact." *Id.* Knowledge of a plaintiff's whereabouts simply does not make physical contact imminent. Because Dixon's timely allegations plead only conditional, future, remotely delivered threats, the assault claim against Mr. Torres should be dismissed.

**C.     Dixon's assault claims against Mr. Cartagena are Untimely, Inadequate and Waived**

Dixon's meandering assault claims against Mr. Cartagena concern conduct between 2014 and 2018 (FAC at ¶¶ 253–265), and are time-barred for the reasons above. Defendants' opening brief showed that these claims are untimely (Defs MOL at 44); that tolling does not apply (*id.* at 45); and that Plaintiff's allegations against Mr. Cartagena fail to state a valid claim for assault (*id.* at 45-47).

Dixon's opposition failed to respond to any of these arguments and as a result has waived any assault claim against Mr. Cartagena. *See BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 821 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.") (quotation omitted); *see also Lipton v. County of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y.

31

2004) ("[A] [c]ourt may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").

## POINT XII

### DIXON'S FRAUDULENT CONVEYANCE CLAIM (COUNT XII) FAILS TO STATE A PLAUSIBLE CLAIM AND IS TIME-BARRED

Dixon's opposition does not rebut any of the multiple independent grounds requiring dismissal of Count XII.   Rather than explain how the FAC states any claim for fraudulent conveyance, Dixon concedes its deficiencies by requesting leave to amend the claim.   Notably absent from Dixon's opposition is any response to Defendants' statute of limitations arguments or any recitation of facts to save such time-barred claims.   Likewise, Dixon does not highlight any facts showing that any transfer was made without fair consideration, that any transfer rendered a transferor insolvent or occurred while insolvent, or that any judgment exists.

Accordingly, Count XII should be dismissed in its entirety.

## POINT XIII

## DIXON SHOULD NOT BE GRANTED LEAVE TO AMEND

Although Rule 15(a)(2) favors amendment, leave may be denied for repeated failure to cure deficiencies, futility, undue delay, or prejudice. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Second Circuit likewise affirms denial where a plaintiff already had a meaningful opportunity to cure. *See, e.g., Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 56 (2d Cir. 2025) ; *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493 (2d Cir. 2014); *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008).

That is precisely the case here. Defendants' motions to dismiss the original Complaint identified numerous deficiencies. (ECF Nos. 9–10, 61–66). In granting leave to amend, the Court warned that Dixon had "ample time" to consider those arguments and that further amendment "will likely not be permitted" to cure previously identified deficiencies. *Dixon v. Cartagena*, No. 1:25-CV-05144, 2026 WL 762368, at *4 (S.D.N.Y. Mar. 18, 2026).

The core allegations remain unchanged: Defendants allegedly failed to compensate Dixon for his labor and deprived him of ownership interests and proceeds from songs to which he claims to have contributed.[13] Likewise, both pleadings assert TVPA claims for coerced sex and threats based on the same alleged conduct from approximately 2005 through 2020.[14] Thus, Dixon has had two opportunities to plead claims arising from the same core facts.

---

[13] *Compare* ECF No. 3 ¶¶ 1-22, 53-55, 58-62, 78-120, 365-370, 379-464, 614-625, 752-755, 761, 764, with ECF No. 85 ¶¶ 29-49, 76-87, 90-101, 146-233, 270-278.

[14] *Compare* ECF No. 3 at ¶¶ 23-29, 56-57, 174-177, 209-216, 227-261, 293-299, 328-335, 341-382, 475-482, 504-516, 700-717, 728-737, 763 with ECF No. 85 at ¶¶ 16-17, 53-75, 103-144, 235-268.

Nor does Plaintiff identify any newly discovered facts that were unavailable when he filed the FAC. Instead, the FAC simply repackages the same underlying factual dispute through the same or different legal theories.

Rule 15 does not require courts to permit serial amendments until a plaintiff successfully states a claim. *See TechnoMarine*, 758 F.3d at 505-06 (affirming denial of leave where plaintiff failed to explain how another amendment would cure the deficiencies); *Ruotolo*, 514 F.3d at 191-92 (affirming denial of leave after plaintiff had already been afforded opportunities to amend); *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("Plaintiff's failure to fix the deficiencies in his previous pleading, after being provided full notice of the deficiencies, is alone sufficient ground to deny leave to amend *sua sponte*."); *Elgalad v. N.Y.C. Dep't of Educ.*, No. 17-CV-4849 (VSB), 2019 WL 4805669, at *10 (S.D.N.Y. Sept. 30, 2019) ("Defendants motions to dismiss gave Plaintiff ample notice of the deficiencies in his pleading, but he failed to take advantage of his opportunities to cure or attempt to cure them. Now, once again, Plaintiff has made his request to amend his pleading without making any attempt at showing what facts he would plead to remedy the deficiencies identified by the Court.").

Accordingly, leave to amend should be denied.

## CONCLUSION

For these reasons, Defendants request that the Court dismiss the Amended Complaint with prejudice.

Dated:    August 14, 2026
New York, New York

By:    /s/ Joseph Tacopina
Joseph Tacopina
Chad Seigel
Matthew G. DeOreo
**TACOPINA SEIGEL & DEOREO**
275 Madison Avenue, 35th Floor
New York, New York 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
mdeoreo@tacopinalaw.com
212-227-8877

Jordan W. Siev
**REED SMITH LLP**
599 Lexington, 22nd Floor
New York, New York 10022
jsiev@reedsmith.com
212-205-6085

*Attorneys for Defendants Joseph Antonio Cartagena, Slate, Inc., Sneaker Addict Touring LLC*

By:    /s/ David H. Wollmuth
David H. Wollmuth
Adam M. Bialek
Phillip R. Schatz
Russell B. Filip
**WOLLMUTH MAHER & DEUTSCH LLP**
500 Fifth Avenue
New York, NY 10110
dwollmuth@wmd-law.com
abialek@wmd-law.com
pschatz@wmd-law.com
rfilip@wmd-law.com

*Attorneys for Defendants Richard Jospitre and Peter Torres*

By:    /s/ Reed Brodsky
Reed Brodsky
Seton Hartnett O'Brien

**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
rbrodsky@gibsondunn.com
sobrien@gibsondunn.com

*Attorneys for Defendant Erica Juliana Moreira*

35

**<u>WORD CERTIFICATION</u>**

I hereby certify that the word count of this Reply Memorandum of Law complies with the word limit of Local Civil Rule 7.1(c), as modified by the Court's April 7, 2026 Order. According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Rule 7.1(c), is 9,395 words.

Dated: New York, New York
       August 14, 2026

*/s/ Joseph Tacopina*
Joseph Tacopina

36