Tacopina Seigel Trial Lawyers
TACOPINA SEIGEL & DEOREO

**JOSEPH TACOPINA**
EMAIL: jtacopina@tacopinalaw.com
www.tacopinalaw.com

275 Madison Avenue, 35th Floor
New York, NY 10016
Telephone (212) 227-8877
Facsimile (212) 619-1028

September 16, 2026

**VIA ECF**

Hon. Jennifer E. Willis
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

**Re:** ***Cartagena v. Dixon, et al.*, No. 1:25-cv-3552 (JLR)(JW)**
***Dixon v. Cartagena, et al.*, No. 25-cv-5144 (JLR)(JW)**

Your Honor:

Joseph Cartagena, Sneaker Addict Touring LLC, and Slate, Inc. (collectively "Mr. Cartagena") respectfully submit this response to the Second Motion of Attorney Tyrone A. Blackburn and T.A. Blackburn Law, PLLC, to withdraw as counsel of record for Terrance Dixon in *Cartagena v. Dixon*, No. 1:25-cv-3552 (JLR), and *Dixon v. Cartagena*, No. 1:25-cv-5144 (JLR) ("Second Motion").

Mr. Cartagena previously responded to Mr. Blackburn's initial withdrawal motion by letter dated July 14, 2026, filed at Docket No. 225 ("July 14 Letter"). Mr. Cartagena respectfully incorporates that submission in its entirety. The Second Motion does not materially alter Mr. Blackburn's grounds for withdrawal: it again relies on the same claimed personal-interest conflict, asserted advocate-witness problem, and professed hostility toward Plaintiff's counsel. The positions set forth in the July 14 Letter therefore apply equally here.[1]

There is, however, an additional issue: Mr. Blackburn's repeated failure to comply with the Court's subsequent orders governing the refiling of his motion.

On August 3, 2026, the Court ordered Mr. Blackburn to refile without former Exhibit J or references to the *ex parte* deposition, to do so by August 17, and to serve Mr. Dixon with the refiled motion, affidavit, exhibits, and the Court's Order. *See* Dkt. No. 230. He neither met that deadline nor served Mr. Dixon. On August 21, the Court noted the failure, extended the deadline to August 26, again directed service, and warned that "[a]ny further untimeliness" would "not be

[1] The Docket references herein refer to the filings in Case No. 1:25-cv-3552.

tolerated" and could result in "further sanctions." *See* Dkt. No. 233. Mr. Blackburn missed that deadline as well, filing his next extension request on August 27, after the deadline had expired. *See* Dkt. No. 234. In that request, Mr. Blackburn attributed his failure to file to a hard-drive problem and represented that the drive was "currently with a data-recovery vendor" that had advised him the data could be extracted. *Id.*

On August 28, the Court granted another extension, while stating that it was "appalled at the lack of professionalism and diligence displayed" and that a "technological issue [was] not a valid excuse for missing yet another Court deadline…." The Court extended the deadline to September 2 and ordered Mr. Blackburn, by that date, to "submit documentation to corroborate the described hard drive issues and data recovery efforts." *See* Dkt. No. 235. He again did not fully comply.

First, the Second Motion was filed on September 3—one day late—even though Mr. Blackburn's declaration states that it was "[e]xecuted on *August 3*, 2026…." *See* Dkt. No. 236 (emphasis added).

Second, Mr. Blackburn's September 4 letter ("September 4 Letter") (Dkt. No. 237) does not corroborate the critical timing of the representations underlying his extension request. As noted above, on August 27, he represented that his hard drive was "currently with a data-recovery vendor" that had advised him the data could be extracted. *See* Dkt. No. 234. Yet the September 4 Letter contains no communication, invoice, report, declaration, or other documentation from that vendor corroborating that the claimed hard-drive problem existed on or before August 26 or that the drive was with a recovery vendor by August 27.

The exhibits instead suggest that the recovery efforts may not have begun until after the Court's August 28 corroboration order. The Jean Computer Repair exhibit is undated and refers only to "Saturday," while the Micro Center messages likewise reflect "Saturday" and "Sunday" communications and bear service-order number SV**260829**1297, consistent with an August 29, 2026 service date (*i.e.*, 26-08-29). *See* Exs. A–B to Dkt. No. 237 (emphasis added). Notably, August 29—the day after the Court ordered corroboration—was a Saturday.

Exhibit C does not cure the timing problem. It is a September 3 email, with identifying information and the substance of the email redacted, forwarding a September 1 receipt for Disk Drill software. Mr. Blackburn offers no explanation for the redactions. The September 1 purchase further supports the inference that data-recovery efforts began only after the August 28 Order. If the hard-drive problem existed on or before August 26 and the drive was already with a vendor before August 28, the September 4 Letter does not explain why the documentation begins only afterward. At minimum, it fails to substantiate Mr. Blackburn's representation in his August 27 extension request that the drive was already "with a data-recovery vendor."

Third, nothing on the docket establishes compliance with the Court's express direction to serve Mr. Dixon with the Second Motion, declaration, exhibits, and the Court's Order. Docket Nos. 230 and 233 expressly required service, yet no filing demonstrates that Mr. Dixon received those materials. That omission is particularly significant because Judge Rochon previously required Mr. Blackburn to serve the original withdrawal papers and scheduling Order and to file proof of service. *See* Dkt. No. 219.

Finally, Mr. Blackburn has had nearly two months since his July 7 withdrawal motion to narrow his submission. Yet his September 3 filing again devotes six paragraphs of his Declaration (Dkt. No. 236-1 ¶¶ 19–24) and three exhibits—including irrelevant, inflammatory factual assertions from more than thirteen years ago—to the detective in his prior criminal matter. The detective is not mentioned once in Mr. Blackburn's Memorandum of Law (Dkt. No. 236), confirming that these materials have no bearing on the legal basis for withdrawal and appear instead to be designed to publicly attack the detective. This Court already cautioned that Mr. Blackburn appeared to be "attempting to use the Court as a vehicle to communicate with the media," that "[s]uch behavior will not be indulged," and that "[t]here is very little material in any of the exhibits attached by Blackburn" necessary to decide the withdrawal motion.[2] Another court likewise criticized Mr. Blackburn for filing "irrelevant and scandalous accusations."[3] His decision to retain this collateral material despite ample time to revise his papers reflects the same misuse of court filings previously identified by multiple courts and serves only to broaden and weaponize what should be a narrow motion to withdraw.

In sum, Mr. Cartagena continues not to oppose Mr. Blackburn's withdrawal as counsel for Mr. Dixon, subject to the qualifications and reservations stated in the July 14 Letter. Mr. Cartagena respectfully requests that any Order granting withdrawal make clear that: (1) his non-opposition does not constitute acceptance of the factual allegations in Mr. Blackburn's papers; (2) withdrawal does not affect or delay the Court's continuing jurisdiction over Mr. Blackburn personally with respect to sanctions, contempt, or other matters relating to his own conduct; and (3) any stay afforded to Mr. Dixon does not stay proceedings or applications directed personally to Mr. Blackburn or T.A. Blackburn Law, PLLC.

Your Honor's consideration in this matter is greatly appreciated.

Respectfully submitted,

Joseph Tacopina

cc: All counsel by ECF

---

[2] *Dixon v. Cartagena*, No. 25-CV-3552 (JLR) (JW), 2026 WL 2225183, at *2 (S.D.N.Y. Aug. 3, 2026).
[3] *Zunzurovski v. Fisher*, No. 23CV10881(DLC), 2024 WL 1434076, at *5 (S.D.N.Y. Apr. 3, 2024).