UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Cartagena,<br>Plaintiff,<br>-against-<br>Terrance Dixon, et al.,<br>Defendants. | Civil Action No. 25-cv-3552 (JLR) (JW)<br><br>Objections to the Magistrate Judge's June 23, 2026, Order<br>Oral Argument Requested |

OBJECTIONS OF TYRONE A. BLACKBURN AND T.A. BLACKBURN LAW, PLLC TO THE MAGISTRATE JUDGE'S JUNE 23, 2026, ORDER (DKT. NO. 206) AND REQUEST FOR RECONSIDERATION PURSUANT TO FED. R. CIV. P. 72(a) AND 28 U.S.C. § 636(b)(1)(A)

By: Tyrone Blackburn

**<u>TABLE OF CONTENTS</u>**


PROCEDURAL POSTURE AND STANDARD OF REVIEW

A. The Order Is Not Final as to the Relief It Contemplates

B. Basis and Timing of These Objections

C. The Applicable Standard of Review Is Unsettled for Sanctions of This Character

RELEVANT BACKGROUND

ARGUMENT

**<u>POINT I</u>**: THE ORDER RESTS ON AN EVIDENTIARY GAP THE BLACKBURN DEFENDANTS WERE REFUSED LEAVE TO CURE

A. The Fifth Amendment Requires a Meaningful Opportunity to Be Heard on the Specific Factual Predicate of a Sanction

B. The Order Identified Three Specific Evidentiary Deficiencies and the Blackburn Defendants Were Denied the Means to Address Them

C. The Court Faulted Mr. Blackburn for Precisely the Omission It Had Refused to Let Him Cure, and Converted the Resulting Gap into an Adverse Credibility Finding

D. The Referral Rests in Part on Conduct No Party Asked the Court to Sanction, and the Order Does Not Identify the Authority for the Referral

**<u>POINT II</u>**: THE AGGREGATE SANCTION WARRANTS RECONSIDERATION FOR PROPORTIONALITY AND CALIBRATION

A. Litigation History Cannot Substitute for the Conduct-Focused Inquiry

B. The Comparison Rested on an Unsworn Representation on One Side and a Refused Offer of Proof on the Other

C. The Comparative Severity Assessment Began from an Acknowledged Partial Review, and the Order Contains a Material Error Concerning the Deposition at Which Plaintiff's Counsel's Conduct Occurred

D. The Comparative Assessment Did Not Address Plaintiff's Counsel's Questioning Concerning Mr. Blackburn's Medical Procedure

E. The Court Made the Same Threshold Finding as to Both Attorneys and Sanctioned Only One

F. Mr. Tacopina Did Not Appear at the Argument on the Conduct Attributed to Him

G. The Order Treated Provocation and Medication as Mutually Exclusive

H. The Inference Drawn from Mr. Blackburn's Calendar Does Not Reflect What Actually Occurred at the Two Identified Depositions

I. The Court Acknowledged Mr. Blackburn's Apology on the Record and the Order Does Not Weigh It

J. Lesser Measures Were Available and Not Addressed

**<u>POINT III</u>**: ANY REFERRED RECONSIDERATION SHOULD PROCEED BEFORE A DIFFERENT MAGISTRATE JUDGE ON A COMPLETE RECORD

CONCLUSION

# TABLE OF AUTHORITIES

Cases


- Chambers v. NASCO, Inc., 501 U.S. 32 (1991)
- DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124 (2d Cir. 1998)
- Ferring Pharmaceuticals Inc. v. Serenity Pharmaceuticals, LLC, 331 F.R.D. 75 (S.D.N.Y. 2019)
- Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 103-04 (2017)
- In re Ames Department Stores, Inc., 76 F.3d 66 (2d Cir. 1996)
- In re Pennie & Edmonds LLP, 323 F.3d 86 (2d Cir. 2003)
- Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir. 2012) (summary order)
- Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123 (1951)
- Keach v. County of Schenectady, 593 F.3d 218 (2d Cir. 2010)
- Kiobel v. Millson, 592 F.3d 78 (2d Cir. 2010)
- Mackler Productions, Inc. v. Cohen, 225 F.3d 136 (2d Cir. 2000)
- Milltex Industries Corp. v. Jacquard Lace Co., 55 F.3d 34 (2d Cir. 1995)
- Parchem Trading Ltd. v. DePersia, No. 17 Civ. 1618 (KMK) (PED), 2018 WL 11468670 (S.D.N.Y. Dec. 27, 2018)
- R.F.M.A.S., Inc. v. So, 271 F.R.D. 13 (S.D.N.Y. 2010)
- Sakon v. Andreo, 119 F.3d 109 (2d Cir. 1997)
- Satcorp International Group v. China National Silk Import & Export Corp., 101 F.3d 3 (2d Cir. 1996) (per curiam)
- Ted Lapidus, S.A. v. Vann, 112 F.3d 91 (2d Cir. 1997)
- The Fashion Exchange LLC v. Hybrid Promotions, LLC, 333 F.R.D. 302 (S.D.N.Y. 2019)
- United States v. Abuhamra, 389 F.3d 309 (2d Cir. 2004)
- United States v. Robin, 553 F.2d 8 (2d Cir. 1977) (en banc)
- Wilson v. Citigroup, N.A., 702 F.3d 720 (2d Cir. 2012)


Constitutional Provisions


- U.S. Const. amend. V


Statutes


- 28 U.S.C. § 636(b)(1)
- 28 U.S.C. § 636(b)(1)(A)
- 28 U.S.C. § 636(b)(1)(B)


Rules


- Fed. R. Civ. P. 11
- Fed. R. Civ. P. 11(c)(1)(A)
- Fed. R. Civ. P. 30(c)(2)
- Fed. R. Civ. P. 30(d)(2)
- Fed. R. Civ. P. 72(a)
- Fed. R. Civ. P. 72(b)
- Fed. R. Evid. 103(a)(2)

## PROCEDURAL POSTURE AND STANDARD OF REVIEW

Tyrone A. Blackburn, appearing pro se, and T.A. Blackburn Law, PLLC (together, the "Blackburn Defendants") respectfully object to the portions of the Order dated June 23, 2026 (Dkt. No. 206) (the "Order") that impose sanctions on the Blackburn Defendants and refer Mr. Blackburn to the Grievance Committee of this District. These objections are directed to the District Court and present constitutional, procedural, evidentiary, and proportionality objections to the Order. They concern the process by which the material factual findings supporting the sanctions and the disciplinary referral were made, the calibration of the aggregate sanction, and the manner in which any further proceedings should be structured. The Blackburn Defendants do not ask the Court in this memorandum to adjudicate a separate recusal motion.

The central procedural defect is straightforward. At the May 18, 2026, argument, the Court identified the absence of evidence showing that Mr. Blackburn remained on prescribed medication during the February 24 and March 6 depositions. Mr. Blackburn immediately offered to provide the prescription, offered again to supplement the record, and, when the Court identified an inconsistency between 90 days and six to eight weeks, offered the prescription a third time. **Tr.[1] 55:12-14, 55:25-56:3, 63:6-21**. Each offer was declined. The Order then relied on that same evidentiary absence, finding absolutely nothing before me from a medical professional concerning medication-related memory effects and concluding that the record lacked corroboration that Mr. Blackburn remained on medication on the relevant dates. **Tr. 93:11-13; Order at 10, 12**. A ruling may rest on a failure of proof. The objection here is that the identified failure of proof was one Mr. Blackburn offered to cure when the Court identified it and was not permitted to do so.

The supplemental physician evidence annexed to these objections addresses the precise deficiencies the Order identified: the duration of the prescribed medication, its overlap with both depositions, and its recognized cognitive and behavioral effects. The challenged findings should be reconsidered on that complete record, and the calibration of the aggregate sanction should be reconsidered in light of the mitigation the Court acknowledged at argument and the remedial measures already imposed. The relief requested is set forth in the Conclusion.

A. <u>The Order Is Not Final as to the Relief It Contemplates</u>

The Order granted Plaintiff's request for costs and fees but fixed no amount. **Order at 13**. It directed Plaintiff to email the Magistrate Judge an excel sheet detailing the attorney's costs and

[1] Transcript of May 18, 2026, hearing.

fees, with opposing counsel cc'd, and to file a letter on the docket confirming the date and time of transmission, by July 7, 2026. **Order at 18**.

Plaintiff made that submission on July 7, 2026. Dkt. No. 211. On September 10, 2026, the Magistrate Judge found the submission insufficient to determine reasonable attorney's fees, describing it as extremely high-level and noting that the Court could not glean from it who performed what tasks and for how long, their position at the firm, the hourly rate(s) charged to the client, or the nature of the work performed. Dkt. No. 238 at 2. The Court directed Plaintiff to supplement the spreadsheet by September 17, 2026. Id. at 3. Plaintiff served a supplemental submission on that date, claiming $277,533.29 in attorneys' fees and costs across 216.1 hours billed by two firms.

The monetary component therefore remains unresolved. No amount has been determined, no judgment has entered, and the fee application remains pending. No response schedule has yet afforded the Blackburn Defendants an opportunity to address the reasonableness or scope of the fees sought, and they preserve those issues for the fee proceeding. These objections are filed protectively and address the applicable standard of review without treating the unresolved fee component as final.

B. Basis and Timing of These Objections

The Order was entered on June 23, 2026. These objections invoke the district judge's reconsideration authority under 28 U.S.C. § 636(b)(1)(A), which provides that [a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. The circumstances supporting the exercise of that authority now are limited but substantial: the monetary sanction remains undetermined and the fee application pending; the Order includes a Grievance Committee referral with possible consequences beyond this action; the principal objection is constitutional; and review at this stage need not delay the prospective relief already ordered. The Blackburn Defendants state these objections expressly so that the constitutional, procedural, evidentiary, and proportionality issues presented by the sanctions proceeding and the disciplinary referral are preserved for any further review that may become available.

C. The Applicable Standard of Review Is Unsettled for Sanctions of This Character

Under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), a district judge reviews a magistrate judge's determination of a nondispositive pretrial matter to determine whether it is clearly erroneous or contrary to law. Under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b), a

magistrate judge's recommended disposition of a matter beyond that grant is reviewed de novo as to any properly objected-to portion.

The Second Circuit has not resolved which framework governs a magistrate judge's imposition of Rule 11 sanctions on an attorney absent the parties' consent. In Kiobel v. Millson, 592 F.3d 78 (2d Cir. 2010), the panel divided: one judge concluded that magistrate judges have authority to impose such sanctions, id. at 84 (Cabranes, J., concurring); a second concluded that they do not, id. at 98 (Leval, J., concurring); and the third declined to resolve the question, id. at 79-80. Because the panel reversed on separate grounds, the question remains open. Courts in this District have since described the bounds of a magistrate judge's authority to resolve motions for sanctions as far from clear, R.F.M.A.S., Inc. v. So, 271 F.R.D. 13 (S.D.N.Y. 2010), and magistrate judges accordingly proceed at times by report and recommendation rather than by order. See Jean-Laurent v. Wilkerson, 461 F. App'x 18, 25 (2d Cir. 2012) (summary order).

Two features of the Order bear on that question here. The Order does not merely allocate the costs of a discovery proceeding; it rests in part on the Court's inherent authority to sanction conduct abusing the judicial process, **Order at 8** (citing Parchem Trading Ltd. v. DePersia, No. 17 Civ. 1618 (KMK) (PED), 2018 WL 11468670, at *5 (S.D.N.Y. Dec. 27, 2018)); see DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 135-36 (2d Cir. 1998) (describing the well-acknowledged inherent power to levy sanctions in response to abusive litigation practices). And it refers an attorney to the Grievance Committee of this District, **Order at 17**. A referral of that kind is not a case-management ruling directed at the efficient progress of discovery. The Second Circuit has distinguished, for purposes of appealability, between judicial criticism unaccompanied by any finding of misconduct and an order that imposes a tangible sanction or makes an express finding that a lawyer committed specific acts of professional misconduct. See Keach v. County of Schenectady, 593 F.3d 218, 225-26 (2d Cir. 2010). The Order does both.

The Blackburn Defendants respectfully submit that de novo review is appropriate as to the inherent-authority findings and the referral. Should this Court conclude that Rule 72(a) governs, the Blackburn Defendants submit that the Order is contrary to law for the reasons stated in Point I, because a ruling that rests on an evidentiary gap the objecting party was refused leave to fill does not satisfy the due process the law requires.

## RELEVANT BACKGROUND

On February 10, 2026, at a conference before Judge Rochon, Mr. Blackburn advised the Court that he had undergone a medical procedure on January 23, 2026, and a follow-up procedure on February 3, 2026, that he remained on medication, and that he would be more than happy to provide the Court with detailed information from his provider regarding his medical situation. **Order at 2** (citing Dkt. No. 148 at 11:4-13). The record does not reflect that the Court took up that offer or directed any particular medical submission at that time. Judge Rochon scheduled the depositions for February 24 and March 6, 2026. **Order at 2-3**.

In opposing Plaintiff's earlier sanctions motion, Mr. Blackburn submitted a letter from his treating physician dated February 27, 2026. Dkt. No. 150-2. The letter confirmed procedures on January 23 and February 3, 2026, confirmed local anesthesia and prescribed medications including antibiotics, narcotic pain relievers, and antiemetics, and stated that Mr. Blackburn was advised to refrain from work for 2 weeks for recovery and pain management. Id. On April 24, 2026, Judge Rochon declined to impose the full extent of the sanctions then requested because of the medical issues cited by Defendant Blackburn. **Order at 6** (citing Dkt. No. 191 at 3).

Plaintiff filed the sanctions motion resulting in the Order on March 24, 2026. Dkt. No. 168. The Magistrate Judge heard oral argument on May 18, 2026. **Order at 7**.

At the May 18 argument, the Court first framed the evidentiary question in colloquy with Plaintiff's counsel, asking whether the basis for the claim that the medication explanation was unsupported was that the February 27 letter only speaks about dates of two procedures and needing to, sort of, refrain from work for two weeks, and obviously doesn't make reference to the idea that there might be prescription pain medication for six to eight weeks. **Tr. 22:2-8**. Plaintiff's counsel confirmed: That's exactly what I mean. **Tr. 22:9-10**.

The Court then turned to Mr. Blackburn and invited him to respond to the argument that the medication explanation should not be credited because there was no corroboration, other than your word, about the medications. **Tr. 54:9-23**. He offered to produce the prescription, offered to supplement his filing, and, after the Court identified an arithmetical inconsistency in the stated duration of the medication, offered the prescription a third time. **Tr. 55:12-14, 55:25, 63:17-18**. The Court declined each offer, stating that it had what it had before it and that Mr. Blackburn had had his opportunity to provide whatever he wanted to provide. **Tr. 55:20-21, 56:2-3, 63:19-21**. The colloquy is set out in full at Point I.B below.

Mr. Blackburn also stated at the argument that he had been prescribed 90 days of this medication and that [i]t was a narcotic, **Tr. 36:5-7**, a figure he corrected later in the same argument to six to eight weeks. **Tr. 63:9-18**.

The Court also inquired into Plaintiff's contention that Mr. Blackburn's other professional commitments during the same week were inconsistent with impairment. It asked whether two depositions Mr. Blackburn had identified at the February 10 conference, preplanned for February 26 and February 27, had gone forward. **Tr. 56:17-23**. Consulting his calendar, Mr. Blackburn answered that the February 26 deposition did not happen, **Tr. 57:1**, and that the February 27 deposition was defended by his California co-counsel while he was just reading, **Tr. 57:4-10**. Asked why the February 26 deposition had not proceeded, he answered, I wasn't feeling well. **Tr. 57:11-14**.

In its oral ruling, the Court found that there's been inconsistent representations by Mr. Blackburn. There was a discussion that perhaps it was 90 days' worth of medication and, no, maybe it was actually only 60 days. It is not clear to this Court. **Tr. 92:24-93:3**. It further found that it had "*absolutely nothing before me from a medical professional that would substantiate that such a thing is even possible*" as to medication-related memory effects. **Tr. 93:11-13**. It further identified the course Mr. Blackburn should have followed. The Court added that "*If it turned out, in truth, that he was still taking medication, still suffering the aftereffects of that medication, the appropriate course would have been, in advance of that deposition*" **Tr. 94:14-17**. As to inability to pay, the Court found nothing on the record before the Court that speaks to that and absolutely nothing provided by way of declaration. **Tr. 95:9-19**.

As to Plaintiff's counsel, the Court found the "clown" remarks inappropriate irrespective of provocation, **Tr. 102:4-7, 104:1-5**, but declined to impose sanctions. The Court declined to sanction Plaintiff's counsel, and its stated reasons were reasons of record rather than of conduct: "*I am not, however, going to be sanctioning Mr. Tacopina, and the reason is because I have before me a sort of, narrow band of behavior from him which I find to be inappropriate. I do not have a pattern. I do not have a record of prior judges cautioning him, telling him.*" **Tr. 103:11-16**. The Court directed that its ruling and the transcript be relayed to him instead. **Tr. 103:23-25**.

The Order issued on June 23, 2026. As to the February 24 deposition, it found that [t]he medical record does not support Blackburn's assertion that his unconscionable behavior at the February 24th deposition was due to medication he was taking, reasoning that the February 27

letter says nothing to indicate Blackburn would still be on medication by February 24th, three weeks after the second procedure. **Order at 10**. As to the March 6 deposition, it found that the record is devoid of corroborating evidence that Blackburn was still on medication on March 6th, and that assuming arguendo, he was on medication, there is no evidence in the record that the medication would have caused the selective amnesia that was on display. **Order at 12**.

The Order granted a second two-hour deposition of Dixon, granted costs and fees in an amount to be determined, denied the appointment of a special master, denied the Blackburn Defendants' cross-motion, and referred Mr. Blackburn to the Grievance Committee of this District. **Order at 11-18**.

Mr. Blackburn has since obtained a supplemental letter from his treating physician, Jason Emer, M.D., dated July 29, 2026, annexed hereto as **Exhibit C**. Dr. Emer states that the course of postoperative medication would have been expected to extend through approximately March 20, 2026, that the prescribed opioid commonly causes drowsiness, fatigue, slowed thinking, reduced alertness, impaired concentration, and delayed reaction time, that the prescribed sedative commonly produces residual next-morning sedation and reduced alertness, that the combined effects may be additive and may include diminished short-term memory, and that a patient may appear awake, converse appropriately, and perform routine activities while nevertheless experiencing meaningful impairment. Ex. **C**.

The Blackburn Defendants disclose, as Dr. Emer's letter itself discloses, that Dr. Emer is represented by Mr. Blackburn on a pro bono basis in an unrelated civil matter, an engagement that began on or about April 29, 2026, after the conduct at issue and after the May 18, 2026, argument. The disclosure is made so that the Court may weigh the letter with full knowledge of the relationship. The statements in the letter concern the pharmacology of the medications prescribed and the expected duration of the course, matters susceptible of independent verification from the prescription records and the product labeling.

## ARGUMENT

### **POINT I**: THE ORDER RESTS ON AN EVIDENTIARY GAP THE BLACKBURN DEFENDANTS WERE REFUSED LEAVE TO CURE

A. The Fifth Amendment Requires a Meaningful Opportunity to Be Heard on the Specific Factual Predicate of a Sanction

The Blackburn Defendants invoke the Due Process Clause of the Fifth Amendment. The Order threatens two interests the Clause protects: it imposes a monetary sanction on Mr. Blackburn and on his law firm in an amount to be determined, **Order at 13**, and it refers Mr. Blackburn to

the Grievance Committee of this District, **Order at 17**, placing at risk his license to practice law and therefore his right to pursue his chosen occupation. The Blackburn Defendants contend that the procedure by which the factual predicate for both was established did not satisfy the Due Process Clause, and that the defect is of constitutional dimension and not merely an error in the application of the Federal Rules.

Due process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions. Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96-97 (2d Cir. 1997) (quoting In re Ames Dep't Stores, Inc., 76 F.3d 66, 70 (2d Cir. 1996)). The requirement is not satisfied by generic notice that sanctions are under consideration. An attorney facing sanctions must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter. Id. The purpose of that particularity is to put counsel . . . on notice as to the particular factors that he must address if he is to avoid sanctions. Id.; see also Mackler Prods., Inc. v. Cohen, 225 F.3d 136, 142 (2d Cir. 2000) (vacating the portion of a sanction as to which counsel had not received particularized notice); Wilson v. Citigroup, N.A., 702 F.3d 720, 725 (2d Cir. 2012) (quoting Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997)).

Where a court exercises inherent authority, the same constraint applies to the factual findings that authority requires. A court must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991).

The governing standard for deposition misconduct is Rule 30, not the inherent-power standard for noncolorable claims. Objections during a deposition must be stated concisely and in a nonargumentative, nonsuggestive manner, and the examination ordinarily proceeds with the testimony taken subject to the objection. Ferring Pharm. Inc. v. Serenity Pharms., LLC, 331 F.R.D. 75, 78 (S.D.N.Y. 2019). When a person's conduct impedes, delays, or frustrates the fair examination of the deponent, Rule 30(d)(2) authorizes the Court to impose an appropriate sanction, including costs and attorney's fees, and does not require a showing of bad faith. Fed. R. Civ. P. 30(d)(2); The Fashion Exchange LLC v. Hybrid Promotions, LLC, 333 F.R.D. 302, 305 (S.D.N.Y. 2019). Any sanction imposed must rest on factual findings specific enough to support application of the governing standard, and findings of that character should not rest on a record from which

evidence bearing directly on the sanctioned party's state of mind was excluded after he offered to provide it.

The right to be heard on the particular factors that he must address, Ted Lapidus, 112 F.3d at 96, is not merely a right to argue; it is a right to address the identified factor with evidence. An opportunity to be heard that forecloses the proffered evidence responsive to the Court's stated concern and terminates counsel's attempt to explain that evidence before the factual record is closed is not a meaningful opportunity to address the identified deficiency.

So that the record of the excluded evidence is complete for any further review, the Blackburn Defendants identify its substance here. See Fed. R. Evid. 103(a)(2) (substance of excluded evidence may be preserved by informing the court of it unless the substance is apparent from the context). The substance was apparent from the colloquy itself: Mr. Blackburn expressly offered to provide the prescription in response to the Court's identified evidentiary concern, and the transcript preserves both the substance of each offer and the Court's response. See **Tr. 55:12-21, 55:25-56:3, 63:9-21**.

B. The Order Identified Three Specific Evidentiary Deficiencies and the Blackburn Defendants Were Denied the Means to Address Them

The Order does not reject the medication explanation on credibility grounds after weighing competing evidence. It rejects it for want of proof, and it identifies with precision what proof was missing:

1. Nothing indicating that Mr. Blackburn would still be on medication by February 24th, three weeks after the second procedure. **Order at 10**.
2. A record devoid of corroborating evidence that Blackburn was still on medication on March 6th. **Order at 12**.
3. [N]o evidence in the record that the medication would have caused the selective amnesia that was on display at the March 6th deposition. **Order at 12**.

Each of the three is a matter of medical documentation and physician testimony. None could be supplied by argument. Each is precisely what the supplemental physician letter annexed hereto addresses.

The first two were the subject of express offers to provide the prescription, which the Court declined. When the Court stated that the February 27 letter certainly "*does not say that there is six to eight weeks of pain medication that you would be taking,*" **Tr. 55:9-11**, Mr. Blackburn answered in the next breath: "*I have the prescription. If the Court would like for me to provide a copy of that, I will –*". **Tr. 55:12-14**. The response was, "*I have what I have before me, and before me, I only have the one doctor's letter*." **Tr. 55:20-21**. Mr. Blackburn tried once more: "*I can supplement*

*my filing with the –*". **Tr. 55:25-56:1**. While cutting Mr. Blackburn off, the response was, "*I have what I have before me, sir.*" **Tr. 56:2-3**.

The third offer, some eight transcript pages later, is the most consequential, because by then the Court had told Mr. Blackburn exactly what question the document would answer. The Court had traced an arithmetical inconsistency between the six-to-eight-week figure in the opposition papers, the ninety-day figure Mr. Blackburn had used at the argument, and his statement that he had stopped taking the medication by March 27, 2026. **Tr. 61:15-16, 62:3-6, 62:24-63:5**. The Court then asked him to resolve it: "*So, my question to you is, were you prescribed 90 days of medication or eight weeks of medication? Because those are not the same*." **Tr. 63:6-8**. Mr. Blackburn explained that he may have miscalculated the weeks, said the correct figure was six to eight weeks, and offered the document a third time: "*And, again, I can provide you with the prescription*." **Tr. 63:17-18**. The Court replied, "*you had your opportunity to provide whatever you wanted to. I have the record I have before me. Continue on, please*." **Tr. 63:19-21**. The record thus reflects not merely a refusal to receive the offered documentation, but the termination of Mr. Blackburn's attempts to explain and supplement the evidentiary record concerning the precise deficiency the Court had identified.

A prescription record states the drug, the strength, the quantity dispensed, the date written, the date filled, and the number of refills. It would have answered the Court's question as a matter of arithmetic rather than of belief. That is the document the Court declined.

The Order then held the resulting absence against him as to both depositions and, in the referral, characterized his impairment as merely alleged. **Order at 17**.

The Magistrate Judge's stated ground for declining the offer — that Mr. Blackburn could have submitted whatever you want to -- wanted to in your opposition, **Tr. 55:15-17** — does not answer the difficulty. It would be a sufficient ground for refusing to delay the argument. It is not a sufficient ground for refusing a narrow offer of proof and then resting the ruling on the very absence created by that refusal. Where a court identifies a specific evidentiary deficiency as the reason a party's explanation fails, the party against whom the deficiency is held must have had a genuine opportunity to address it. Ted Lapidus, 112 F.3d at 96 (the purpose of particularized notice is to put counsel . . . on notice as to the particular factors that he must address if he is to avoid sanctions).

The requested cure would have cost the proceeding nothing. A prescription record is a single document. No evidentiary hearing was required, no witness needed to be produced, and no deadline was imperiled: the fee amount remained to be determined, **Order at 13**, and the second Dixon deposition was not to occur until July 31, 2026, **Order at 18**. Against that, the consequences of the refusal include a monetary award of undetermined size and a referral to the Grievance Committee of this District.

C. The Court Faulted Mr. Blackburn for Precisely the Omission It Had Refused to Let Him Cure, and Converted the Resulting Gap into an Adverse Credibility Finding

The difficulty is sharpened by the Court's own articulation of what Mr. Blackburn should have done. Approximately forty transcript pages after declining Mr. Blackburn's offers to provide the prescription, the Court explained that if Mr. Blackburn had in truth still been taking medication, "*the appropriate course would have been, in advance of that deposition, to write to the court and say, I am still taking medication, perhaps supplementing it with another letter from a doctor. We only have the one in this case. He made no attempts to do so*." **Tr. 94:16-21**. The Court likewise found absolutely nothing before me from a medical professional bearing on whether the medication could produce the memory effects at issue. **Tr. 93:11-13**.

The problem is direct: the Court identified the thinness of the medical record as a material deficiency; Mr. Blackburn immediately offered the evidence responsive to that deficiency; the Court declined it three times; and the resulting absence was then used against him. A finding of inadequate proof entered after the offered proof was refused is not the process Ted Lapidus and Mackler require.

The six-to-eight-week figure was not first advanced in response to the sanctions motion. On February 5, 2026, two days after the second procedure and nineteen days before the deposition of Mr. Dixon, Mr. Blackburn filed a letter motion advising the Court that he had undergone procedures on January 23 and February 3, 2026; that he was prescribed multiple medications including narcotics and antibiotics; and that his doctors expected that he would remain on these medications for approximately six to eight weeks. Dkt. No. 137; **Ex. D**. He requested a two-month extension of the discovery deadline and leave for the parties to propose new deposition dates. Id. The request was denied. **Order at 2-3** (quoting Dkt. No. 148 at 15:23-16:5).

Plaintiff's counsel described that submission accurately at the May 18, 2026, argument, stating that Mr. Blackburn was asking to adjourn the depositions for two months and that when

pressed on that, he claimed that he would be taking medications for six to eight weeks. **Tr. 14:7-10**.

The Order found the duration of the prescription unresolved, describing the representations as inconsistent, the record as devoid of corroboration, and the duration of the medication as not clear to this Court. **Order at 10, 12; Tr. 92:24-93:3**. The record contains no inconsistency on the operative figure. The six-to-eight-week period was stated in a filed submission on February 5, 2026, repeated in the opposition papers, and reaffirmed at the argument when the Court asked the question directly. **Tr. 63:9-18**. The single reference to ninety days, **Tr. 36:5-6**, was corrected in the same colloquy, and Mr. Blackburn again offered the prescription. **Tr. 63:17-18**. Dr. Emer's supplemental letter places the expected end of the medication course at approximately March 20, 2026 — approximately eight weeks from the January 23 procedure, and within the range stated to the Court on February 5, 2026, before any sanctions motion had been filed.

The supplemental letter resolves that question. Dr. Emer states that the postoperative medication course would have been expected to extend through approximately March 20, 2026. **Ex. C**. That period encompasses both depositions and corresponds to approximately eight weeks from the January 23 procedure and six and one-half weeks from the February 3 procedure.

The discrepancy therefore was capable of resolution by the very medical documentation Mr. Blackburn offered when the Court raised it. The due-process issue is not whether the Court was entitled to test the accuracy of his explanation; it is whether the Court could refuse the offered proof and then convert the unresolved question into an adverse finding supporting sanctions and a disciplinary referral.

Turning to the cross-motion, the Court stated: "*And here, I am going to -- I need more information. I want a copy of the videotape of the deposition. That can be provided to the court ex parte. It need not be shared. But I do want to see the sort of volume, whether there is table pounding, whether there is yelling*." **Tr. 101:16-21**. Moments later it added that it would have to "*review the transcript again*, *I did, but, frankly, at a bit of a skim*." **Tr. 102:21-23**. The Court then arranged delivery with Plaintiff's counsel and closed the proceeding after counsel undertook to provide the video within 24 hours. **Tr. 104:6-16, 105:18-21**. Mr. Blackburn was asked only whether he had anything else, **Tr. 105:22-23**, and the matter was adjourned.

The Order reflects that the Court received and used the material. It states: This Court has reviewed both the deposition transcripts and relevant portions of the deposition videos. **Order at**

**16**. On the strength of that review the Order made findings of fact, including a finding adverse to Mr. Blackburn on an allegation he had advanced: that Plaintiff's counsel raises his voice but does not at any point pound on the table as Blackburn alleges. Id. A finding that conduct did not occur at any point is not a finding that can be drawn from excerpts; it is a finding drawn from a complete recording, which is what the Court requested after argument had closed.

The constitutional difficulty is not that the Court sought more information. It is that the record was treated as closed when Mr. Blackburn offered evidence and as open when the Court wanted evidence from Plaintiff, and that the material obtained in the second posture was used to resolve a disputed fact against him without affording him any opportunity to address it. The opportunity to be heard must precede the finding, and it must extend to the evidence on which the finding rests. Ted Lapidus, 112 F.3d at 96 (quoting In re Ames Dep't Stores, 76 F.3d at 70). In another due-process context, the Second Circuit has cautioned that evidence received from one side outside the ordinary adversarial process is not tested in the usual adversarial crucible, United States v. Abuhamra, 389 F.3d 309, 329 (2d Cir. 2004), and has emphasized that due process affords each party the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other, because fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. Id. at 322 (quoting Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring)).

D. The Referral Rests in Part on Conduct No Party Asked the Court to Sanction, and the Order Does Not Identify the Authority for the Referral

The Order refers Mr. Blackburn to the Grievance Committee of this District based on his behavior at the February 24th and March 6th depositions and the subsequent Cross Motion for Sanctions. **Order at 17**. The third ground is the filing of the cross-motion itself, which the Order characterizes as "meritless" and as a frivolous filing. Id.

Plaintiff requested a Grievance Committee referral before the cross-motion existed. Plaintiff therefore could not—and did not—request a referral based on the filing of that cross-motion itself. To the extent the Order treats the filing of the later cross-motion as an independent ground for referral, the Court proceeded on that ground sua sponte.

Mr. Blackburn accordingly received no notice that the filing of the cross-motion was itself under consideration as conduct warranting a disciplinary referral, no notice of the standard against which that filing would be judged, and no notice of the authority under which such a referral was

being weighed. He was heard on whether the cross-motion had merit. He was never heard on whether filing it was sanctionable.

Those are not the same thing, and the Second Circuit has treated the difference as one of constitutional significance. An attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, must be forewarned of the authority under which sanctions are being considered, and must be given a chance to defend himself against specific charges. Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997).

The Order also does not state the source of the authority under which the referral is made. It cites Rule 30(c)(2) as the rule Mr. Blackburn's objections violated and invokes the Court's inherent power in connection with the sanctions analysis generally, **Order at 8**, but Section E of the Order identifies no statute, rule, or local rule as the basis for the referral itself. That omission matters. Because the various sources of the court's authority are governed by differing standards, it is imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power, and an award either without reference to any statute, rule, decision, or other authority, or with reference only to a source that is inapplicable will rarely be upheld. Sakon, 119 F.3d at 113; see Satcorp Int'l Grp. v. China Nat'l Silk Import & Export Corp., 101 F.3d 3, 5 (2d Cir. 1996) (per curiam) (district court's failure to make clear the legal basis on which it acted in imposing sanctions may itself warrant remand).

The distinction between a sanction sought by a party and one initiated by the court is also substantive, not merely procedural. Where a court proceeds on its own initiative in circumstances that deny the attorney the procedural protection an adversary motion would have supplied, the Second Circuit has required a heightened showing. *See* In re Pennie & Edmonds LLP, 323 F.3d 86, 87 (2d Cir. 2003) (holding that where a sua sponte Rule 11 sanction denies a lawyer the opportunity to withdraw the challenged document pursuant to the 'safe harbor' provision of Rule 11(c)(1)(A), the appropriate standard is subjective bad faith). And a sanction resting on the court's inherent power will be sustained only when serious misconduct clearly appears on the record. Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 41 (2d Cir. 1995).

**POINT II**: THE AGGREGATE SANCTION WARRANTS RECONSIDERATION FOR PROPORTIONALITY AND CALIBRATION

The arguments in this Point are advanced in the alternative and without conceding that any sanction is warranted. The Blackburn Defendants do not concede that the conduct attributed to Mr. Blackburn was sanctionable, that the findings underlying the Order can stand on the record as it was developed, or that any of the relief the Order grants is appropriate. They address calibration because the Order imposes relief now, and the objections to its amount and severity must be stated to be preserved.

A. Litigation History Cannot Substitute for the Conduct-Focused Inquiry

The Order addressed the conduct of both attorneys at the same depositions. As to Plaintiff's counsel, it found that he twice referred to Mr. Blackburn as a "clown," raised his voice, and mention[ed] the fact that Blackburn has been charged with a crime in an unprofessional and inappropriate manner. **Order at 16**. The Court was emphatic that the conduct was not excused by anything Mr. Blackburn had done: "*It doesn't matter what Mr. Blackburn said, doesn't matter how he was behaving; it is not appropriate for a lawyer, in response, to call him a clown*." **Tr. 102:4-7**; see **Tr. 104:1-3**.

The Court nonetheless declined to sanction that conduct, and its stated reasons were reasons of record rather than of conduct: I have before me a sort of, narrow band of behavior from him which I find to be inappropriate. I do not have a pattern. I do not have a record of prior judges cautioning him. **Tr. 103:12-18**; *see also* **Order at 16**.

Rule 30(d)(2) directs the inquiry to whether conduct impede[d], delay[ed], or frustrate[d] the fair examination of the deponent. An attorney's history in unrelated matters does not determine the effect of conduct at the deposition. Yet the differential treatment here turned substantially on prior history rather than a common assessment of the conduct occurring in the same proceedings.

B. The Comparison Rested on an Unsworn Representation on One Side and a Refused Offer of Proof on the Other

The comparative record was developed under materially different evidentiary standards. In declining to sanction Plaintiff's counsel, the Court accepted his colleagues' representation that he had practiced for thirty years without sanction or discipline. **Tr. 103:19-23**. Mr. Blackburn's offer to produce the prescription itself, by contrast, was declined because the record was deemed closed. **Tr. 55:12-21, 55:25-56:3**. Any comparative calibration should rest on a record developed under consistent evidentiary standards.

C. The Comparative Severity Assessment Began from an Acknowledged Partial Review, and the Order Contains a Material Error Concerning the Deposition at Which Plaintiff's Counsel's Conduct Occurred

The Court also stated that its review of the relevant transcript had been "*at a bit of a skim*" and directed production of the deposition video because it could reveal conduct not apparent from the transcript. **Tr. 102:21-25, 104:18-22**. The Blackburn Defendants ask that any comparative severity assessment rest on the completed review rather than the acknowledged partial one. The need for a completed review is underscored by a material discrepancy in the Order's description of the record. The Order found that counsel for Plaintiff referred to Mr. Blackburn as a "clown" and raised his voice and placed that conduct "*during the Dixon deposition*." **Order at 16**. Mr. Tacopina did not attend the February 24, 2026, deposition of Mr. Dixon. The conduct attributed to him occurred during the deposition of Mr. Blackburn, which commenced on March 6, 2026, and continued on March 27, 2026. **Blackburn Decl.**[2] ¶¶ 7-9.

The Order elsewhere draws the same distinction. It addresses the February 24 proceeding as "Dixon's deposition on February 24th," **Order at 11**; it addresses the March 6 proceeding as one at which Mr. Blackburn was the deponent, **Order at 12**; and it denies one category of fees because "the time spent preparing to depose Blackburn was directed towards the March 27th deposition of Blackburn," **Order at 14**. The argument record reflected the distinction as well: Mr. Blackburn stated that the conduct at the Dixon deposition consisted of "Mr. Seigel's actions, not Mr. Tacopina's actions," **Tr. 42:2-3**, and the Court responded, "sorry if I attributed that to the wrong attorney," **Tr. 42:7-9**. Only one deposition of Mr. Dixon has taken place. The finding at page 16 therefore attributes conduct to a proceeding at which the attorney in question was not present.

The Court reported locating the disputed remark at pages 188 and 308 of a single transcript. **Tr. 102:11-15**. The comparative severity assessment on which the denial of the cross-motion rests should be made on a completed review of the correct record.

D. The Comparative Assessment Did Not Address Plaintiff's Counsel's Questioning Concerning Mr. Blackburn's Medical Procedure

The comparative assessment also does not address a separate category of conduct by Plaintiff's counsel reflected in the deposition record. During the March 27, 2026, deposition of Mr. Blackburn, Plaintiff's counsel devoted questioning to Dr. Jason Emer's business and to the nature

[2] Declaration of Tyrone A. Blackburn, dated September 21, 2026.

of the medical procedure Mr. Blackburn had undergone. That questioning did not concern any claim or defense at issue in the action; it instead concerned Mr. Blackburn's personal medical treatment and the nature of the procedure performed by his physician.

The significance of that questioning is reinforced by the Court's own assessment at the May 18 argument. The Court stated that "whatever kind of procedure someone has, whether it is mandatory or elective, is really no concern of the Court's," that "[w]hat procedure it was is of no concern to the Court" and was "totally irrelevant," and that Plaintiff's characterization of the procedure as "cosmetic" was "unnecessary." **Tr. 47-48**.

Yet the Order's comparative assessment does not address Plaintiff's counsel's questioning concerning that subject. This omission is material because the Court represented that it had reviewed the deposition transcripts and relevant portions of the deposition videos before making its comparative findings. **Order at 16**. The issue is not whether questioning about an irrelevant subject independently required sanctions. The issue is whether the comparative assessment of counsel's conduct accounted for the complete record when determining the relative nature and severity of each attorney's conduct.

The omission also bears on context. The Order treated Mr. Blackburn's reliance on provocation as undermining his medication explanation, but the record included questioning directed to the nature of his personal medical procedure — a subject the Court itself characterized as "totally irrelevant." That conduct formed part of the deposition context against which Mr. Blackburn's reactions were evaluated.

E. <u>The Court Made the Same Threshold Finding as to Both Attorneys and Sanctioned Only One</u>

The Order and the argument reflect a single threshold finding applied to both attorneys: that the conduct at issue was not justified by anything the other had said or done. As to Mr. Blackburn, the Court stated that it did not believe that anything that could have been said could have provoked or justified his comments. **Tr. 64:16-18**. As to Mr. Tacopina, the Court made the same finding and added that Mr. Blackburn's own conduct does not justify Mr. Tacopina responding in kind. **Tr. 103:9-10**. The Order records that conclusion as well, describing plaintiff's counsel's conduct as "inappropriate and unprofessional." **Order at 16**.

Although the Court made the same threshold determination that neither attorney's conduct was justified by provocation, the resulting consequences diverged substantially. Mr. Blackburn was ordered to bear the cost of a second deposition, the costs and fees of the March 6 deposition,

and the attorneys' fees for the sanctions motion, and was referred to the Grievance Committee. The measure adopted as to plaintiff's counsel was that the Court wanted its ruling relayed to Mr. Tacopina, with a copy of the order and the transcript provided for him. **Tr. 103:23-25**. The Blackburn Defendants do not contend that identical findings require identical sanctions. They contend that, where comparative severity was expressly considered, the resulting disparity should be evaluated on an accurately developed and consistently treated record. For the reasons described above, the records concerning the two attorneys were not developed under equivalent evidentiary conditions.

F. Mr. Tacopina Did Not Appear at the Argument on the Conduct Attributed to Him

Mr. Tacopina did not appear at the May 18, 2026 although the cross-motion was directed at his conduct. **Tr. 2:6-9**. Mr. Blackburn noted the absence on the record. **Tr. 65:6-8**. The transcript and the docket reflects no application for leave to be absent, no affidavit, and no submission of any kind from Mr. Tacopina. The only explanation of record came from the Court, which stated that it understood that plaintiff's counsel's colleague was traveling. **Tr. 101:22-102:3**.

The Blackburn Defendants do not ask the Court to sanction Mr. Tacopina for the absence. They identify it because it completes the evidentiary asymmetry on which the comparative assessment rests. An unsworn, secondhand representation about the whereabouts of the attorney whose conduct was under examination was accepted without inquiry, without documentation, and without any application having been made. In the same proceeding, Mr. Blackburn's offer to produce the prescription addressing an evidentiary deficiency the Court had itself identified was declined.

G. The Order Treated Provocation and Medication as Mutually Exclusive

The Order reasoned that the notion that Blackburn's behavior was due to medication is further belied by Blackburn's statements at the oral argument on the sanctions motions, wherein Blackburn attempted to contextualize his comments by arguing that he was provoked by opposing counsel. **Order at 10**.

Respectfully, the two explanations are complementary rather than contradictory. The claim was not that medication generated the conduct spontaneously. It was that medication impaired the capacity to regulate a response to provocation that was, on the Court's own findings, real. **Order at 16**. Dr. Emer states that it is common during postoperative recovery for patients to experience irritability, emotional lability, reduced frustration tolerance, and increased emotional reactivity, that these symptoms may result from the combined effects of postoperative pain, interrupted sleep,

opioid analgesics, sedative medication, and the physical stress of recovery, and that patients experiencing those combined effects may react more impulsively than they ordinarily would. **Ex. C**.

Treating the invocation of provocation as evidence against the medication explanation rests on an inference the record does not support, and it was drawn on a record from which the pharmacological evidence had been excluded.

H. <u>The Inference Drawn from Mr. Blackburn's Calendar Does Not Reflect What Actually Occurred at the Two Identified Depositions</u>

The Order further reasons that the February 24 and March 6 dates were set in part because Blackburn had several unrelated hearings and depositions for the same week. **Order at 10**. That was a prospective inference drawn on February 10, 2026, from Mr. Blackburn's calendar as it then stood. The record made at the May 18, 2026, argument established what in fact occurred.

The Court inquired directly whether the two preplanned depositions Mr. Blackburn had identified for February 26 and February 27, 2026, had gone forward. **Tr. 56:16-23**. Mr. Blackburn answered that the February 26 deposition did not go forward because he wasn't feeling well, **Tr. 57:1, 57:13-14**, and that the February 27 deposition went forward but was defended by his California co-counsel while he was present and "just reading." **Tr. 57:4-10**. Plaintiff did not contest either answer. Blackburn Decl. ¶ 10.

The inference of capacity therefore rests on two events, one of which did not occur because Mr. Blackburn was not feeling well and the other of which was handled by separate counsel. Neither supports an inference that Mr. Blackburn was functioning without impairment during the week of February 24, 2026.

I. <u>The Court Acknowledged Mr. Blackburn's Apology on the Record and the Order Does Not Weigh It</u>

At the argument, Mr. Blackburn stated: as I said in my papers, I did apologize on March 27th for what I said, and I apologize again here today because I do not believe that the statements that were made and the way in which I was responding . . . I don't think that was appropriate at all. **Tr. 31:23-32:5**. He added that he had apologized to Plaintiff's counsel multiple times. **Tr. 74:5-12**.

The Court expressly acknowledged Mr. Blackburn's apology at argument, yet the written Order does not discuss that mitigation. **Tr. 33:16-20**. Any calibration of sanctions should account for mitigation the Court itself recognized on the record.

J. Lesser Measures Were Available and Not Addressed

The Order imposed, in combination: a second deposition of Dixon at the Blackburn Defendants' expense; costs and fees for the March 6 deposition; attorneys' fees for the preparation, filing, and argument of the sanctions motion; specific prospective conduct directives with a warning that additional sanctions will follow; and a referral to the Grievance Committee. **Order at 12-18**.

The Order does not explain why the prospective conduct directives and the second deposition — which cure the harm to the examination that Rule 30(d)(2) addresses — were insufficient without the referral, or why the fee award needed to extend to the motion practice as well as the deposition costs. The aggregate sanction warrants reconsideration in light of the measures already sufficient to remedy the identified impediment and deter repetition, particularly where the same Order recorded opposing counsel's inappropriate and unprofessional conduct but declined to sanction it, relying on the admonishment delivered at the May 18, 2026, hearing. **Order at 16**.

The scope of any fee award is subject to the same constraint. A fee sanction imposed under a court's inherent authority must be compensatory rather than punitive and is limited to the fees the opposing party would not have incurred but for the sanctioned misconduct. Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 103-04 (2017). The Blackburn Defendants preserve their objections to both the legal basis and the amount of any fee award and reserve the right to address specific entries if and when a schedule for that purpose is set.

**POINT III**: ANY REFERRED RECONSIDERATION SHOULD PROCEED BEFORE A DIFFERENT MAGISTRATE JUDGE ON A COMPLETE RECORD

If the District Court refers any portion of the challenged sanctions determination for reconsideration rather than resolving it itself, the Blackburn Defendants respectfully request that the discrete matter be assigned to a different Magistrate Judge and considered on the complete evidentiary record.

The authority to direct that course lies with the District Court and requires no finding of bias. A pretrial matter referred under 28 U.S.C. § 636(b)(1)(A) remains subject to the district judge's continuing supervision, because the statute provides that [a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). That

continuing authority permits the Court, upon reconsideration of the challenged Order, to determine the appropriate structure of any further proceedings. The request does not ask the District Court to adjudicate a separate recusal motion. It concerns the structure of any further proceeding after review of an Order in which the same judicial officer declined Mr. Blackburn's offered evidence, later received additional evidence from Plaintiff after argument, made factual findings on that expanded record, and issued the disciplinary referral now under review.

In that posture, the considerations the Second Circuit applies in deciding whether further proceedings should occur before a different judicial officer are instructive. The reassignment factors articulated by the Second Circuit in United States v. Robin, 553 F.2d 8, 10 (2d Cir. 1977) (en banc), provide useful guidance by analogy concerning the structure of any further proceeding. The Second Circuit has been explicit that a direction of this kind carries no imputation against the judicial officer. Id. The Blackburn Defendants intend none here. Any referred reconsideration would require a judicial officer to reevaluate findings made on a record whose development is itself challenged here and assigning that discrete task to a different Magistrate Judge would preserve the appearance of fairness while permitting the disputed evidence and objections to be considered without requiring the judicial officer whose procedures and findings are challenged to review those same determinations.

The request is narrow and need not disturb general pretrial supervision. The relevant materials are substantially documentary: the deposition transcripts and videos, the February 27 physician letter, the May 18 transcript, the supplemental medical evidence, and the parties' submissions. A limited referral therefore should entail little duplication.

Whether the District Court resolves the objections itself or refers a discrete issue for reconsideration, the Blackburn Defendants request review on the complete record presented with these objections, including the supplemental letter of Dr. Jason Emer annexed hereto as **Exhibit C**. The Blackburn Defendants further request leave to supplement the record with the forensic assessment of the prescribed medications upon its completion.

## CONCLUSION

For the foregoing reasons, the Blackburn Defendants respectfully request that the District Court: (1) set aside or reconsider the challenged findings and sanctions on the complete record; (2) defer any monetary award until these objections and the fee record are resolved and the Blackburn Defendants have been heard concerning the amount sought; (3) withdraw the

disciplinary referral; (4) if the District Court refers any discrete matter for reconsideration rather than deciding it itself, assign that matter to a different Magistrate Judge; and (5) grant such other and further relief as the Court deems just and proper.

The Blackburn Defendants expressly preserve their constitutional, procedural, evidentiary, and proportionality objections to the sanctions Order and disciplinary referral, including their objections concerning the refusal of offered evidence, the post-hearing receipt and use of additional evidence, the absence of particularized notice concerning the cross-motion as an independent basis for referral, the legal basis for the referral, the comparative treatment of counsel, and the basis and amount of any monetary sanction. Nothing herein waives any challenge to the Order, the referral, or the procedures by which the underlying findings were made.

Dated: Brooklyn, New York
September 21, 2026

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. BLACKBURN LAW, PLLC

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 3.C of the Court's Individual Rules of Practice in Civil Cases and Local Civil Rule 7.1(c), I certify that this memorandum of law complies with the applicable word limit. Exclusive of the caption, table of contents, table of authorities, signature block, and this certificate, the memorandum contains 8,590 words, as counted by the word-processing program used to prepare it. The memorandum is set in 12-point Times New Roman, including footnotes.

Dated: Brooklyn, New York
September 21, 2026

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. BLACKBURN LAW, PLLC